**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**FILED**

Aug 20 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COVER SHEET

***Instructions:*** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

**CASE NAME:**

USA v.   MICHAEL BRENT ROTHENBERG,  a/k/a MIKE ROTHENBERG

**CASE NUMBER:**

CR  CR 20-0266 WHA

| | | | |
|---|---|---|---|
| **Is This Case Under Seal?** | Yes | No ✔ | |
| **Total Number of Defendants:** | 1 ✔ | 2-7 | 8 or more |
| **Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?** | Yes | No ✔ | |
| **Venue (Per Crim. L.R. 18-1):** | SF ✔ | OAK | SJ |
| **Is this a potential high-cost case?** | Yes | No ✔ | |
| **Is any defendant charged with a death-penalty-eligible crime?** | Yes | No ✔ | |
| **Is this a RICO Act gang case?** | Yes | No ✔ | |

**Assigned AUSA
(Lead Attorney):** KYLE WALDINGER, AUSA    **Date Submitted:** 8-20-20

**Comments:**

Nicholas Walsh is also an assigned AUSA on this case

RESET FORM    SAVE PDF

# United States District Court

## FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

# CR 20-266 WHA

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG

| FILED |
| --- |
| Aug 20 2020 |
| SUSAN Y. SOONG |
| CLERK, U.S. DISTRICT COURT |
| NORTHERN DISTRICT OF CALIFORNIA |
| SAN FRANCISCO |

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 1014 – False Statements to a Financial Institution;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1344 – Bank Fraud;
18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified
Unlawful Activity;
18 U.S.C. § 2 – Aiding and Abetting;
18 U.S.C. §§ 981(a)(1)(C) and 982(a);
28 U.S.C. § 2461 – Forfeiture Allegations

A true bill.

_/s/_ Foreperson of the Grand Jury

Foreman

Filed in open court this __20th__ day of

__August, 2020__.

Clerk

_Susan van Keulen_    Bail, $ __no process__

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney

2

3

4

5

6

7

**FILED**

Aug 20 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,           )   CASE NO. CR 20-0266 WHA
                                        )
12          Plaintiff,                  )   VIOLATIONS:
                                        )   18 U.S.C. § 1014 – False Statements to a Financial
13      v.                              )                     Institution;
                                        )   18 U.S.C. § 1343 – Wire Fraud;
14  MICHAEL BRENT ROTHENBERG,           )   18 U.S.C. § 1344 – Bank Fraud;
        a/k/a MIKE ROTHENBERG,          )   18 U.S.C. § 1957 – Engaging in Monetary
15                                      )                     Transactions in Property Derived
            Defendant.                  )                     from Specified Unlawful Activity;
16                                      )   18 U.S.C. § 2      – Aiding and Abetting;
                                        )
17                                      )   18 U.S.C. §§ 981(a)(1)(C) and 982(a);
                                        )   28 U.S.C. § 2461 – Forfeiture Allegations
18                                      )
                                        )   SAN FRANCISCO VENUE
19  _____)

20                            I N D I C T M E N T

21  The Grand Jury charges:

22                          Introductory Allegations

23          At all times relevant to this Indictment, unless otherwise indicated:

24          1.      The defendant MICHAEL BRENT ROTHENBERG, who was also known as Mike

25  Rothenberg, resided in San Francisco, California, in the Northern District of California.  In 2012,

26  ROTHENBERG founded Rothenberg Ventures Management Company, LLC ("RVMC"), a Delaware

27  limited liability company.  RVMC had offices on Folsom Street in San Francisco, California, in the

28  Northern District of California.  In 2016 and 2017, RVMC changed its name to Frontier Technology

INDICTMENT
CR 20-0266 WHA

Venture Capital LLC and then to Rothenberg Ventures LLC, respectively.  In this Indictment, "RVMC" is used to refer to the entity at any relevant time, regardless of the entity's name at that time.

2.      In his business dealings, ROTHENBERG also used the names "Rothenberg Ventures" and "Rothenberg Group," among others, to refer to his business enterprises and affiliates.

The Funds

3.      Through RVMC and other entities, ROTHENBERG managed various investment funds. These investment funds included but were not limited to the following:  Rothenberg Ventures Fund I, LLC (later known as Rothenberg Ventures 2013 Fund, LLC) ("2013 Fund"); Rothenberg Ventures Fund II, LLC (later known as Rothenberg Ventures 2014 Fund, LLC) ("2014 Fund"); Rothenberg Ventures 2015 Fund, LLC ("2015 Fund"); and multiple related funds named Rothenberg Ventures 2016 Fund, LP, Rothenberg Ventures 2016 Feeder Fund, LP, and Rothenberg Ventures 2016 Accredited Fund, LP (collectively the "2016 Fund").

4.      ROTHENBERG on occasion also established "co-investment funds" or "co-funds" targeted at investments in particular companies.  These co-funds also raised money from various investors.

5.       All of the annual funds and co-funds established and managed by ROTHENBERG and RVMC are collectively referred to herein as "the Funds."

6.      In general, RVMC was identified to investors as the manager of the Funds. ROTHENBERG held himself out to investors and was presented to investors as the individual who owned and/or controlled RVMC.  For example, the offering memoranda of the 2013 Fund, 2014 Fund, and 2015 Fund each identified ROTHENBERG as the founder of those annual funds, the owner of RVMC, and the final decision maker for the "strategy, investments, and day-to-day operations of the Fund[s] on behalf of [RVMC]."

7.      ROTHENBERG and RVMC purported to act in the best interests of investors in the Funds.  ROTHENBERG controlled the bank accounts into which the investors' funds were placed.

8.      Between approximately September 2012 and September 2018, ROTHENBERG raised a net amount of approximately $45.9 million from approximately 200 investors and received another approximately $13.0 million from the sale of investment positions and advances from investors.  During

that time, approximately $30.9 million had been invested in various early-stage companies, approximately $6.7 million had been paid to RVMC for management and administrative fees under the terms of RVMC's agreements with the Funds, approximately $1.7 million had been distributed to investors, and approximately $0.7 million remained.  The approximately $58.9 million of inflows, $39.3 million of outflows, and $0.7 million in remaining cash left a shortfall of more than $18 million, which amount ROTHENBERG misappropriated and spent on various business expenses, personal expenses, and legal fees.

River Studios

9.      ROTHENBERG also established Bend Reality, LLC, a Delaware limited liability company that did business as River Studios, among other names.  In or about April 2016, Bend Reality changed its named to River Studios LLC.  In addition, ROTHENBERG also established Bend Reality LLC in California in or about April 2016.  In this Indictment, these Bend Reality and River Studios entities are collectively referred to as "River Studios."

10.     River Studios and other affiliated "River"-branded entities were involved in various commercial projects.  One of River Studios' commercial activities was the creation of so-called "virtual reality" (or "VR") content to be displayed to users of virtual reality helmets and headsets.  River Studios employed numerous individuals in several locations in support of such content creation.

Other Entities and Individuals

11.     Silicon Valley Bank ("SVB") was a financial institution, as that term is defined in Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

12.     The limited liability corporation identified in this Indictment as "P LLC" was registered in the state of Nevada.  One purpose of P LLC was to invest privately held capital in venture capital funds, private companies, and other entities.  In or about early 2016, P LLC created the Nevada limited liability company identified in this Indictment as "T LLC" for the purpose of investing in River Studios. In this Indictment, P LLC and T LLC are collectively referred to as "P LLC."

13.     The California corporation identified in this Indictment as "Software Company" was headquartered in San Francisco, California.  Software Company designed and developed games and

applications. Specifically, Software Company developed a platform for creating games and interactive experiences on various operating systems. The shares of Software Company were not publicly traded. Rather, shares of Software Company were owned by private investors, venture capital firms, Software Company employees, Software Company executives, and other individuals and entities.

14. The company identified in this Indictment as "G Inc." was a Cayman Islands company. One purpose of G Inc. was to invest privately held capital in venture capital funds and in private companies.

15. The entity identified in this Indictment as "B.F. Limited Partnership" was a legal entity registered in the state of Arizona. One purpose of B.F. Limited Partnership was to invest privately held capital in venture capital funds and other entities.

16. "S.K." was an individual who resided in the Northern District of California. S.K. was married to "E.J.," an employee of River Studios.

17. "L.G." and "R.G." were married individuals who resided outside of the state of California.

18. "M.A." was an individual who resided in the Northern District of California.

19. The company identified in this Indictment as "H Corporation" was a consumer electronics company headquartered in Taiwan.

20. The entity identified in this Indictment as "D.F.V. Limited Partnership" was a limited partnership registered in the state of California.

21. "N.M." was an individual who resided in the Northern District of California.

22. The entity identified in this Indictment as "C Capital" was a private equity firm headquartered in China.

23. The entity identified in this Indictment as "A Capital" was a venture capital firm headquartered in China.

24. The entity identified in this Indictment as "K Capital" was a venture capital and private equity firm headquartered in South Korea.

/ / /

/ / /

INDICTMENT
CR 20-0266 WHA                    4

ROTHENBERG's Management of Investors' Funds

25.     During the course of his management of the Funds, ROTHENBERG regularly obtained money from investors after making representations to them about how he would use the investments in particular RVMC-managed Funds.  ROTHENBERG regularly misused these funds in various ways and for various purposes, including to fund his personal business ventures (such as River Studios) and RVMC's substantial business expenditures.  All the while, ROTHENBERG employed various deceptive acts and practices to hide his misappropriation and misuse of investor funds, including by commingling money and by moving money between various entities and bank accounts (including ROTHENBERG's personal accounts) whenever those funds were needed for particular purposes, all without regard to the true ownership of such money.

COUNT ONE:          (18 U.S.C. §§ 1344 & 2 – Bank Fraud and Aiding and Abetting)

26.     The factual allegations in Paragraphs 1 through 25 are re-alleged and incorporated by reference.

27.     Beginning in or about July 2014, and continuing to at least in or about August 2014, in the Northern District of California, and elsewhere, the defendant,

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG,

knowingly, and with intent to defraud, devised and executed a scheme and artifice to defraud SVB as to a material matter and to obtain moneys, funds, credits, assets, and other property owned by, and under the custody or control of, SVB by means of material false and fraudulent pretenses, representations, and promises, and by concealment of material facts.  In sum and substance, ROTHENBERG devised and executed a scheme and artifice to provide SVB with materially false and fraudulent information as part of the application process to obtain two loans from SVB.

The 2014 Scheme and Artifice to Defraud SVB

28.     In furtherance of the scheme to defraud, ROTHENBERG used a variety of means and methods, including the following:

a.      In or about July 2014, ROTHENBERG initiated the process of obtaining two loans from

INDICTMENT
CR 20-0266 WHA                                    5

SVB.  One loan was for the purpose of a "cash out" refinancing of the mortgage on his condominium, which was located on Bryant Street in San Francisco.  The other loan was for the purpose of obtaining approximately $300,000 to be used by ROTHENBERG to help satisfy his capital commitment to the 2014 Fund as a general partner;

b.     As part of the loan application process at SVB, ROTHENBERG submitted various documents to SVB for review by its loan staff in determining whether and on what terms to extend the requested loans to ROTHENBERG, including (i) an original and an updated Uniform Residential Loan Application ("URLA"), (ii) a statement of assets, liabilities, and equity, and (iii) documentation from Merrill Lynch Wealth Management showing balances on a "Merrill Checking" account numbered ending -052 ("-052 CMA Account") and a "Merrill Credit Line" account numbered ending -054 ("-054 LMA Account"), as well as showing the balance on a Bank of America personal checking/savings account numbered ending -2573;

c.     With respect to his mortgage loan application, ROTHENBERG also submitted a Financial Status Affidavit, which was notarized and executed on August 21, 2014.  In that affidavit, ROTHENBERG attested that he understood that SVB was "making the [mortgage] Loan based upon statements and representations contained in, or made in connection with, the residential mortgage loan application" provided by ROTHENBERG.  ROTHENBERG also attested that his "financial status . . . has not changed significantly and accurately reflects [ROTHENBERG's] current financial status";

d.     The Merrill Lynch documentation provided by ROTHENBERG indicated that the account balances shown on the documentation were "As of the Close of Business: 07/31/2014."  That documentation showed that the balance of the -052 CMA Account was approximately $370,000.  The documentation also showed that the outstanding balance of the -054 LMA Account was $0.00, indicating that ROTHENBERG had not drawn against that line of credit;

e.     ROTHENBERG's updated URLA, dated August 21, 2014, listed the approximately $370,000 balance in the -052 CMA Account as an asset.  The updated URLA listed only approximately $73,000 in non-real-estate-related liabilities and did not identify any money owed by ROTHENBERG to Merrill Lynch with respect to the -054 LMA Account;

f.     In truth, and as ROTHENBERG well knew at the time, until approximately July 30,

2014, the outstanding balance on his -054 LMA Account was $350,404.13, meaning that ROTHENBERG had drawn the entire available line of credit of $350,000 and that $404.13 in owed interest had accrued.  As a consequence, a large portion of ROTHENBERG's -052 CMA Account was pledged as collateral against the line of credit.  On or about July 29, 2014, ROTHENBERG directed the transfer of $350,404.13 from his personal checking account at Bank of America to the -054 LMA Account in order to pay off the balance.  Once the -054 LMA Account balance was paid off, ROTHENBERG caused the creation of the Merrill Lynch documentation that he later submitted to SVB. On or about August 1, 2014, ROTHENBERG drew down the entire $350,000 available credit line on the -054 LMA Account.  Accordingly, the undisclosed balance of that line of credit account was $350,000 on August 21, 2014, the date that ROTHENBERG signed the updated URLA and Financial Status Affidavit; and

     g.     Through the scheme and artifice to defraud described above, ROTHENBERG obtained (i) a personal loan from SVB of approximately $300,000 on or about August 12, 2014, and (ii) a mortgage loan from SVB of approximately $1,480,000 on or about August 27, 2014, which loan resulted in a payment of more than $600,000 to him out of escrow.  On or about August 28, 2014, ROTHENBERG used at least some of these funds to pay off the -054 LMA Account balance of approximately $350,992.45.

     All in violation of Title 18, United States Code, Sections 1344 and 2.

COUNT TWO:     (18 U.S.C. §§ 1014 & 2 – False Statements to a Financial Institution and Aiding and Abetting)

     29.     The factual allegations in Paragraphs 1 through 28 are re-alleged and incorporated by reference.

     30.     On or about August 21, 2014, in the Northern District of California, and elsewhere, the defendant,

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG,

knowingly made false statements for the purpose of influencing the actions of SVB, which was a

financial institution insured by the FDIC, in connection with his application for a mortgage loan, to wit, ROTHENBERG knowingly made what he knew were false statements and representations to SVB regarding his assets and liabilities including by representing to SVB in his updated URLA that he had only $73,000 in non-real-estate-related liabilities when, in truth, ROTHENBERG then had a liability of $350,000 to Merrill Lynch, constituting the outstanding balance on the -054 LMA Account.

All in violation of Title 18, United States Code, Sections 1014 and 2.

COUNT THREE:     (18 U.S.C. §§ 1344 & 2 – Bank Fraud and Aiding and Abetting)

31.     The factual allegations in Paragraphs 1 through 30 are re-alleged and incorporated by reference.

32.     In or about December 2015, in the Northern District of California, and elsewhere, the defendant,

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG,

knowingly, and with intent to defraud, devised and executed a scheme and artifice to defraud SVB as to a material matter and to obtain moneys, funds, credits, assets, and other property owned by, and under the custody or control of, SVB by means of material false and fraudulent pretenses, representations, and promises, and by concealment of material facts.  In sum and substance, ROTHENBERG devised and executed a scheme and artifice to provide SVB with materially false and fraudulent information as part of the application process to obtain a $4 million line of credit from SVB, all for the purpose of inducing SVB to provide that line of credit.

The 2015 Scheme and Artifice to Defraud Silicon Valley Bank

33.     In furtherance of the scheme to defraud, ROTHENBERG used a variety of means and methods, including the following:

a.     In or about December 2015, ROTHENBERG initiated the process of obtaining a line of credit with SVB for RVMC.  As part of the loan application process, ROTHENBERG represented to SVB employees that investors in the 2015 Fund had prepaid their future management and administrative fees due to RVMC.  ROTHENBERG told SVB employees that he wished to use those prepaid fees as

collateral for a line of credit so that RVMC could draw against those prepaid fees;

b.      On or about December 28, 2015, ROTHENBERG represented to SVB employees that he believed that the amount of prepaid fees was approximately $5.192 million.  ROTHENBERG represented to the SVB employees that he was basing this calculation on a "$23.6m fund." ROTHENBERG later reduced the amount of prepaid fees against which he wished to borrow to $4.25 million.  In truth, however, ROTHENBERG knew that less than $13.5 million had been raised by the 2015 Fund and that, even assuming investments that could be made at that time by the 2016 Fund into the 2015 Fund, only a total of approximately $18.345 million had been raised between those funds, meaning that the total amount of management and administrative fees due to RVMC was less than the $5.192 million in prepaid fees ROTHENBERG told SVB he was owed from the Fund and less than the $4.25 million of those supposed fees he proposed to, and ultimately did, pledge as collateral to SVB;

c.      ROTHENBERG also misled SVB employees to believe that RVMC had not already taken all of the management and administrative fees that it was due over the entire life of the 2015 Fund based on the amount of money then invested.  In truth, and as ROTHENBERG well knew at that time, RVMC had already taken more than $6 million in fees from the 2015 Fund.  Indeed, ROTHENBERG knew that one purpose of obtaining the line of credit from SVB was to obtain funds to place in the 2015 Fund's bank account so that he could have RVMC issue year-end Schedule K-1s to 2015 Fund investors that falsely led those investors to believe that RVMC had not taken funds in excess of those authorized under the 2015 Fund's operating agreements; and

d.      ROTHENBERG ultimately requested and obtained a $4 million line of credit from SVB. As part of the application process for the line of credit, ROTHENBERG agreed to secure that line of credit with $4.25 million in cash, which ROTHENBERG misled SVB employees to believe represented the prepaid fees from investors in the 2015 Fund.  In truth, and as ROTHENBERG well knew at that time, a large portion of the monies used to fund the collateral account were derived from the bank accounts of the 2013 Fund and the 2014 Fund and from the capital contributions of recent investors to the 2015 Fund and the 2016 Fund.  ROTHENBERG drew down the entire line of credit on or about December 30, 2015.

All in violation of Title 18, United States Code, Sections 1344 and 2.

INDICTMENT
CR 20-0266 WHA                         9

COUNT FOUR:          (18 U.S.C. §§ 1014 & 2 – False Statements to a Financial Institution and Aiding and Abetting)

34.    The factual allegations in Paragraphs 1 through 33 are re-alleged and incorporated by reference.

35.    Between on or about December 23, 2015, and on or about December 30, 2015, in the Northern District of California, and elsewhere, the defendant,

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG,

knowingly made false statements for the purpose of influencing the actions of SVB, which was a financial institution insured by the FDIC, in connection with RVMC's application for a line of credit, to wit, ROTHENBERG knowingly made what he knew were false statements and representations to SVB regarding the amount of fees that RVMC was due over the life of the 2015 Fund based on capital contributions that had then been made, the amount of fees that RVMC had already taken from the 2015 Fund, and the source of collateral funds provided to SVB, as set forth in more detail in Paragraph 33 of this Indictment.

All in violation of Title 18, United States Code, Sections 1014 and 2.

COUNTS FIVE THROUGH SEVEN:          (18 U.S.C. §§ 1343 & 2 – Wire Fraud and Aiding and Abetting)

36.    The factual allegations in Paragraphs 1 through 35 are re-alleged and incorporated by reference.

### The Scheme and Artifice to Defraud P LLC

37.    Beginning in or about October 2015, and continuing to a date unknown to the United States Attorney, but to at least August 2016, in the Northern District of California, and elsewhere, ROTHENBERG knowingly devised and executed a scheme and artifice to defraud P LLC as to a material matter and to obtain money and property belonging to or controlled by P LLC by means of material false and fraudulent pretenses, representations, and promises, and by concealment of material facts. ROTHENBERG executed the scheme and artifice by, among other things, inducing P LLC (through T LLC) to invest $2,000,000 in River Studios by way of a convertible promissory note.

38.   In furtherance of the scheme and artifice, ROTHENBERG used a variety of means and methods, including the following:

a.   Beginning no later than in or about October 2015, ROTHENBERG engaged at least one third party – the individual identified here as "D.F." – to solicit investments into River Studios and into the Funds.  ROTHENBERG provided information to D.F. regarding himself and River Studios, including false information, for D.F. to provide to potential investors.  Based on the information that ROTHENBERG provided to him, D.F. represented to potential investors, including to P LLC, that ROTHENBERG had "incubated" or "bootstrapped" River Studios "out of his own pocket." Furthermore, ROTHENBERG provided "pitch decks" to D.F., which D.F. in turn provided to potential investors, including to P LLC.  Among the representations contained in these pitch decks included the representation that the primary use of capital raised by River Studios would be to "fund the premium content opportunities in the pipeline and to roll up M&A talent in VR";

b.   In early January 2016, ROTHENBERG met with representatives of P LLC in Las Vegas, Nevada, for the purpose of soliciting investments from P LLC in River Studios or the Funds.  After this meeting, a representative from P LLC informed ROTHENBERG that P LLC wanted to begin the so-called "due diligence" process with respect to an investment into River Studios.  As part of this process, the P LLC representative requested information from ROTHENBERG, including information regarding "percentage ownership," "[a]ll contracts, understandings and arrangements between the company and any present or former affiliates, including but not limited to agreements among shareholders," and "financial statements";

c.   In the course of his interactions with representatives from P LLC in January and February 2016, ROTHENBERG confirmed, falsely, to those representatives that he had self-funded River Studios, leading the P LLC representatives to conclude that that there were no outside investors in River Studios and that the operating expenses of River Studios had been funded by that company's revenue and by ROTHENBERG with his own assets;

d.   In the course of interactions with representatives from P LLC in January and February 2016, ROTHENBERG also represented that River Studios was in need of capital to fund production of content and to fund acquisitions of other companies, and that, therefore, any capital invested by P LLC

would be used for these purposes; and

e.     In truth, and as ROTHENBERG well knew at the time, he had more pressing needs for any money that would be invested by P LLC.  For example, as discussed above in Paragraphs 31 through 35, in December 2015, ROTHENBERG had arranged for RVMC to obtain a $4 million line of credit from SVB, which he purported to SVB corresponded to some of the management and other fees that RVMC had not yet earned from the 2015 Fund.  In order to obtain that line of credit, RVMC was required to provide SVB with $4.25 million to be held in a collateral account.  Because neither RVMC nor the 2015 Fund had the cash on hand to fund that collateral account, ROTHENBERG assembled funds from various sources, including from the bank accounts held in the names of the 2013 Fund and the 2014 Fund.  ROTHENBERG knew that these withdrawals from the 2013 Fund and the 2014 Fund were inappropriate and that he therefore needed to repay the funds he had taken from the 2013 Fund's and 2014 Fund's bank accounts.  In January and February 2016, ROTHENBERG knew that any funds that River Studios received from P LLC would be used to make these repayments.  Indeed, on the same day that River Studios received P LLC's $2 million investment, ROTHENBERG caused those funds to be used to repay in part or in full the funds that he had taken from the 2013 Fund and the 2014 Fund bank accounts in December 2015.

39.     On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG,

having knowingly, and with intent to defraud, devised and intended to devise a scheme and artifice to defraud P LLC as to a material matter and to obtain money and property from P LLC by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing such scheme and artifice and attempting to do so, did transmit, and cause to be transmitted, by means of wire communication in interstate commerce, certain writings,

/ / /

/ / /

/ / /

INDICTMENT
CR 20-0266 WHA                               12

signs, signals, pictures, and sounds, namely, the following:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| FIVE | February 17, 2016 | Email from ROTHENBERG in California to P LLC representatives outside of California attaching PDF document containing representations regarding the uses to which capital raised would be put by River Studios |
| SIX | February 24, 2016 | Email from ROTHENBERG in California to P LLC representatives outside of California, stating that ROTHENBERG had "self-funded" River Studios |
| SEVEN | February 25, 2016 | Wire transfer of $2,000,000 from bank account of T LLC, at U.S. Trust Bank of America Private Wealth Management in Nevada to bank account of Bend Reality, LLC, numbered ending -9185, at SVB in the Northern District of California, which transfer was processed through Federal Reserve system computers in New Jersey and Texas |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS EIGHT THROUGH ELEVEN:     (18 U.S.C. §§ 1957 & 2 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity and Aiding and Abetting)

40.     The factual allegations in Paragraphs 1 through 39 are re-alleged and incorporated by reference.

41.     Among other transactions, on or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG,

knowingly engaged in a monetary transaction by, through, and to a financial institution, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, such funds having been derived from the specified unlawful activity of wire fraud, to wit, the wire fraud scheme pertaining to P LLC alleged in Counts Five through Seven.

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| EIGHT | February 25, 2016 | Transfer of $560,000 from RVMC's SVB account numbered ending -8931 to the 2013 Fund's SVB account numbered ending -2623 |

INDICTMENT
CR 20-0266 WHA                    13

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| NINE | February 25, 2016 | Transfer of $840,000 from RVMC's SVB account numbered ending -8931 to the 2014 Fund's SVB account numbered ending -7483 |
| TEN | February 25, 2016 | Transfer of $80,000 from RVMC's SVB account numbered ending -8931 to ROTHENBERG's personal bank account at Bank of America numbered ending -2573 |
| ELEVEN | February 26, 2016 | Posting of check #0189 in the amount of $27,447.92 in the SVB account numbered ending -7429, constituting the mortgage payment on ROTHENBERG's Folsom Street office |

Each in violation of Title 18, United States Code, Sections 1957 and 2.

COUNTS TWELVE THROUGH FIFTEEN:          (18 U.S.C. §§ 1343 & 2 – Wire Fraud and Aiding and Abetting)

42.     The factual allegations in Paragraphs 1 through 41 are re-alleged and incorporated by reference.

The Scheme and Artifice to Defraud Certain Potential Investors
into a "Co-Fund" Intended for the Purchase of Shares of Software Company

43.     Beginning in or about July 2016, and continuing through at least in or about September 2016, ROTHENBERG knowingly devised and executed a scheme and artifice to defraud potential investors in Software Company (including G Inc. and its directors, B.F. Limited Partnership and its representatives, S.K. and E.J., and R.G. and L.G.) as to a material matter and to obtain money and property from those potential investors by means of material false and fraudulent pretenses, representations, and promises, and by omitting and concealing material facts with a duty to disclose. ROTHENBERG executed the scheme and artifice by, among other things, inducing these investors to contribute capital through false and misleading representations about the use to which ROTHENBERG would make of that capital.  In sum and substance, ROTHENBERG fraudulently solicited, obtained, and retained approximately $1.3 million in investors' funds based on false representations that the funds would be invested in the untraded, privately-held stock of Software Company, when ROTHENBERG intended to and did spend and take those funds for other purposes, and not for the benefit of the potential

investors in Software Company.

44.     In furtherance of the scheme and artifice, ROTHENBERG used a variety of means and methods, including the following:

a.     In July 2016, ROTHENBERG, personally and through others acting at his direction, represented to at least five investors that he could and would invest their funds in Software Company. Specifically, Rothenberg told investors that RVMC had the opportunity to purchase the untraded, privately-held shares of Software Company;

b.     In July 2016, ROTHENBERG, personally and through others acting at his direction, represented to various individuals and entities that he and RVMC were willing to allow them to "co-invest" with RVMC in the purchase of the untraded, privately-held shares of Software Company;

c.     ROTHENBERG caused at least one employee to send certain potential investors a document titled "Rothenberg Ventures 2016 Fund Co-Fund [Software Company] LLC Summary of Principal Terms" ("Summary of Principal Terms").  This document purported to be a summary of the terms of the Operating Agreement of Rothenberg Ventures 2016 Co-Fund [Software Company] LLC ("Software Company Co-Fund").  The Summary of Principal Terms stated that the Software Company Co-Fund "will invest in a special purpose vehicle that will purchase equity securities of [Software Company]";

d.     ROTHENBERG, personally and through others acting at his direction, made statements to certain potential investors in the Software Company Co-Fund that there was only a short time frame during which those investors could take advantage of the co-investment opportunity in Software Company.  For example, in an email dated July 14, 2016, ROTHENBERG told a G Inc. director, "You can secure your spot if we receive your wire in our account before the weekend."  Also for example, in emails dated July 12 and July 14, 2016, ROTHENBERG told L.G. and R.G. and a B.F. Limited Partnership representative, respectively, that he wanted to provide them with the opportunity to take advantage of a "valuable co-invest opportunity . . . with a bit of a short fuse";

e.     Upon receiving investments intended for the Software Company Co-Fund, ROTHENBERG immediately caused those funds to be used for other purposes and never used those funds to purchase Software Company stock.  For example, on or about July 15, 2016 (the same day G

Inc. invested $1 million in the Software Company Co-Fund), ROTHENBERG caused the transfer of G Inc.'s $1 million investment from a segregated bank account titled "Rothenberg Ventures Co-Fund 1, LLC" at SVB (numbered ending -2235) to RVMC's main bank account at SVB (numbered ending -8931).  The funds were then used by ROTHENBERG and RVMC to pay a variety of expenses on behalf of RVMC and the Funds, among other expenses; and

      f.     It was further part of the scheme and artifice that ROTHENBERG later lulled certain investors who asked about the status of the Software Company transaction, the location of their invested funds, or the return of their investment by falsely telling them that their funds had been invested in the 2016 Fund, when ROTHENBERG knew the reason he could not pay them back was because he had spent their funds.

      45.     On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG,

having knowingly, and with intent to defraud, devised and intended to devise a scheme and artifice to defraud potential investors in Software Company as to a material matter and to obtain money and property from potential investors in Software Company by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts with a duty to disclose, and, for the purpose of executing such scheme and artifice and attempting to do so, did transmit, and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, namely, the following:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
| --- | --- | --- |
| TWELVE | July 15, 2016 | Wire transfer of $1,000,000 from G Inc. to the bank account of Rothenberg Ventures Co-Fund 1,  LLC, numbered ending -2235 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| THIRTEEN | July 19, 2016 | Wire transfer of $100,000 from B.F. Limited Partnership to the bank account of Rothenberg Ventures Co-Fund 1, LLC, numbered ending -2235 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| FOURTEEN | July 21, 2016 | Wire transfer of $50,000 from S.K. to the bank account of Rothenberg Ventures Co-Fund 1, LLC, numbered ending -2235 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| FIFTEEN | July 21, 2016 | Wire transfer of $100,000 from R.G. to the bank account of Rothenberg Ventures Co-Fund 1, LLC, numbered ending -2235 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS SIXTEEN THROUGH TWENTY-THREE:          (18 U.S.C. §§ 1343 & 2 – Wire Fraud and Aiding and Abetting)

46.     The factual allegations in Paragraphs 1 through 45 are re-alleged and incorporated by reference.

The Scheme and Artifice to Defraud the 2015 Fund and the 2016 Fund
and Certain Investors in the 2015 Fund and the 2016 Fund

47.     Beginning on a date unknown to the United States Attorney, but by no later than in or about April 2015, and continuing to at least in or about August 2016, ROTHENBERG knowingly devised and executed a scheme and artifice to defraud the 2015 Fund and the 2016 Fund, and certain investors in the 2015 Fund and the 2016 Fund, as to a material matter and to obtain money and property from those Funds and those investors by means of material false and fraudulent pretenses, representations, and promises, and by omitting and concealing material facts with a duty to disclose.

48.     In furtherance of the scheme and artifice, ROTHENBERG used a variety of means and

/ / /

methods, including the following:

a.      ROTHENBERG induced certain investors to contribute capital through false and misleading representations about the use to which ROTHENBERG would make of that capital, chiefly that ROTHENBERG would invest the capital in early-stage technology companies with an eye toward obtaining significant profits.  ROTHENBERG made these misrepresentations in part by providing operating agreements and other documentation to investors in the 2015 Fund and the 2016 Fund that set forth the types of investments that would be made with the capital and the fees that RVMC was entitled to take.  In truth, and as ROTHENBERG well knew, he regularly took more money from the 2015 Fund and the 2016 Fund than he was entitled to take under the terms of the operating agreements, and he failed to disclose and otherwise concealed this fact from the investors in these Funds and from potential investors;

b.      ROTHENBERG did not use funds provided to RVMC by certain investors for the purposes that those funds were intended, and, instead, used such funds for RVMC's purposes, for the benefit of other investors, and for his own purposes.  For example, on or about July 31, 2015, H Corporation invested $2 million in the 2015 Fund.  The same day, ROTHENBERG caused nearly that entire amount to be transferred from the bank account of the 2015 Fund to RVMC's main bank account. From that account, ROTHENBERG largely used those funds for various purposes not directly related to investments in the 2015 Fund's portfolio companies.  For example, again on July 31, 2015, ROTHENBERG caused $1 million to be transferred to his personal bank account, which he then used, through a series of transfers between his personal bank accounts, to make credit card payments, loan payments, Internal Revenue Service payments, and similar payments;

c.      ROTHENBERG also did not use certain funds existing in the 2015 Fund's and 2016 Fund's bank accounts, or returned to one of those Funds from a portfolio company, for proper purposes, and instead, used such funds for RVMC's purposes, for the benefit of other investors, for the benefit of other entities he controlled, and for his own purposes.  For example, in October 2016, a 2016 Fund portfolio company re-purchased its shares from the 2016 Fund and wired $500,000 back to the 2016 Fund.  ROTHENBERG caused approximately one-half of this amount to be sent to the bank account of River Studios and then sent more than $115,000 of that amount to be transferred to the account of an

INDICTMENT

entity named River Operations.  The majority of those funds were used to make several months of mortgage payments on ROTHENBERG's Folsom Street office; and

        d.      ROTHENBERG omitted to tell, and concealed from, certain investors in the 2016 Fund that he was not using their investments for the purposes that the investors intended.  For example, instead of using their money for investments, ROTHENBERG used all or part of the funds provided by several 2016 Fund investors in late 2015 to fund the collateral account that he had established at SVB in December 2015, as described in Paragraph 33, which secured the 2015 Fund and was not an investment set out in the documents ROTHENBERG and RVMC provided to the investors.

        49.      On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

MICHAEL BRENT ROTHENBERG,
a/k/a MIKE ROTHENBERG,

having knowingly, and with intent to defraud, devised and intended to devise a scheme and artifice to defraud the 2015 Fund and the 2016 Fund, and certain investors in the 2015 Fund and the 2016 Fund, as to a material matter and to obtain money and property from those Funds and those investors by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts with a duty to disclose, and, for the purpose of executing such scheme and artifice and attempting to do so, did transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, namely, the following wire transfers of funds in the following approximate amounts:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| SIXTEEN | April 6, 2015 | Wire transfer of $1,250,000 from the account of an LLC controlled by M.A. to the bank account of the 2015 Fund numbered ending -3208 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| SEVENTEEN | April 28, 2015 | Wire transfer of $1,000,000 from the account of G Inc. to the bank account of the 2015 Fund numbered ending -3208 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| EIGHTEEN | July 31, 2015 | Wire transfer of $1,999,975 from the account of H Corporation to the bank account of the 2015 Fund numbered ending -3208 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| NINETEEN | December 17, 2015 | Wire transfer of $500,000 from the account of D.F.V. Limited Partnership to the bank account of the 2016 Fund numbered ending -0574 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| TWENTY | December 24, 2015 | Wire transfer of $100,000 from the account of N.M. to the bank account of the 2015 Fund numbered ending -3208 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| TWENTY-ONE | December 24, 2015 | Wire transfer of $625,000 from the account of C Capital to the bank account of the 2016 Fund numbered ending -0574 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| TWENTY-TWO | December 28, 2015 | Wire transfer of $3,000,000 from the account of A Capital to the bank account of the 2016 Fund numbered ending -0574 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |
| TWENTY-THREE | July 27, 2016 | Wire transfer of $1,800,000 from the account of K Capital to the bank account of the 2016 Fund numbered ending -0574 at SVB in the Northern District of California, which wire transfer was processed through Federal Reserve system computers in New Jersey and Texas |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

FORFEITURE ALLEGATIONS:          (18 U.S.C. §§ 981(a)(1)(C), 982(a) & 982(b)(1) & 28 U.S.C. § 2461)

50.    The factual allegations in Paragraphs 1 through 49 are re-alleged and incorporated by reference for the purpose of alleging forfeiture.

INDICTMENT
CR 20-0266 WHA                        20

51.     Upon conviction of any of the offenses alleged in Counts One through Seven and Twelve through Twenty-Three, the defendant,

**MICHAEL BRENT ROTHENBERG,**
**a/k/a MIKE ROTHENBERG,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a), and Title 28, United States Code, Section 2461, any property, real and personal, which constitutes or is derived from proceeds traceable to said violations, including but not limited to a forfeiture money judgment in the amount of such proceeds.

52.     If, as a result of any act or omission of the defendant, any of said property

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to or deposited with a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property, which cannot be divided without difficulty; the United States shall, pursuant to 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b)(1)), seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

53.     Upon a conviction for the offenses alleged in Counts Eight through Eleven of this Indictment, the defendant,

**MICHAEL BRENT ROTHENBERG,**
**a/k/a MIKE ROTHENBERG,**

shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) all property, real and personal, involved in said violations, or any property traceable to such property, including but not limited to a forfeiture money judgment in the amount of the financial transactions alleged in Counts Eight though Eleven.

54.     If, as a result of any act or omission of the defendant, any of said property identified above:

a.      cannot be located upon the exercise of due diligence;

INDICTMENT
CR 20-0266 WHA                              21

1      b.      has been transferred or sold to, or deposited with, a third person;

2      c.      has been placed beyond the jurisdiction of the Court;

3      d.      has been substantially diminished in value; or

4      e.      has been commingled with other property that cannot be divided without difficulty;

5  the United States shall, pursuant to 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b)(1)), seek

6  forfeiture of any other property of said defendant up to the value of the forfeitable property described

7  above.

8          All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a), and 982(b)(1), Title

9  28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

10

11  DATED:  August 20, 2020                          A TRUE BILL.

12                                                        /s/

13                                                  _____

14                                                  FOREPERSON

15  DAVID L. ANDERSON
    United States Attorney

16

17

18  NICHOLAS J. WALSH
    KYLE F. WALDINGER

19  Assistant United States Attorneys

20

21

22

23

24

25

26

27

28

INDICTMENT
CR 20-0266 WHA                          22

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT    ☐ INFORMATION    ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

See Attachment

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:    See Attachment

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

### DEFENDANT - U.S

► Michael Brent Rothenberg, a/k/a Mike Rothenberg

DISTRICT COURT NUMBER

CR 20-0266 WHA

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

FBI and IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY    ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

3-20-70834 MAG

Name and Office of Person Furnishing Information on this form    David L. Anderson

☒ U.S. Attorney    ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Nicholas Walsh/Kyle Waldinger

### DEFENDANT

#### IS *NOT* IN CUSTODY

1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

#### IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

} ☐ Federal    ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?    ☐ Yes    ☐ No

} If "Yes" give date filed

DATE OF ARREST    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY    Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☐ SUMMONS    ☒ NO PROCESS*    ☐ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment    ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:                    Before Judge:

Comments:

**ATTACHMENT**

**Counts 1 and 3: Bank Fraud, 18 U.S.C. §§ 1344 and 2**

- Maximum Sentence: 30 years
- Maximum Length of Supervised Release: 5 years
- Maximum Fine: $1,000,000.00 or twice the gross gain or loss
- Restitution
- Special Assessment of $100 per felony count
- Forfeiture

**Counts 2 and 4: False Statements to a Financial Institution, 18 U.S.C. §§ 1014 and 2**

- Maximum Sentence: 30 years
- Maximum Length of Supervised Release: 5 years
- Maximum Fine: $1,000,000.00 or twice the gross gain or loss
- Restitution
- Special Assessment of $100 per felony count
- Forfeiture

**Counts 5 to 7, 12 to 23: Wire Fraud, 18 U.S.C. §§ 1343 and 2**

- Maximum Sentence: 20 years
- Maximum Length of Supervised Release: 3 years
- Maximum Fine: $250,000.00 or twice the gross gain or loss
- Restitution
- Special Assessment of $100 per felony count
- Forfeiture

**Counts 8 to 11: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, 18 U.S.C. §§ 1957 and 2**

- Maximum Sentence: 10 years
- Maximum Length of Supervised Release: 3 years
- Maximum Fine: $250,000.00 or twice the amount of the criminally derived property involved in the transaction
- Restitution
- Special Assessment of $100 per felony count
- Forfeiture