STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

BENJAMIN KINGSLEY (CABN 314192)
Acting Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
NICHOLAS J. WALSH (CABN 314290)
Assistant United States Attorneys

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     Fax: (415) 436-7234
     Email: Kyle.Waldinger@usdoj.gov
     Email: Nicholas.Walsh@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 20-0266 JST |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR INTRADISTRICT VENUE TRANSFER |
| v. | |
| MICHAEL BRENT ROTHENBERG, a/k/a MIKE ROTHENBERG, | Hearing Date:    August 13, 2021 Hearing Time:    9:30 am |
| Defendant. | |

1

## <u>TABLE OF CONTENTS</u>

RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND ........................................1

I.       THE SEC CASE. ..............................................................................................................1

II.      THE CRIMINAL CASE. .................................................................................................1

         A.       The Criminal Complaint, Information, and Indictment. ....................................1

         B.       The Unites States' Notice of Related Case. .......................................................2

         C.       Rothenberg's Two Motions to Dismiss. .............................................................3

LEGAL STANDARD ........................................................................................................................3

I.       THE COURT'S BROAD DISCRETION IN RULING ON MOTIONS FOR
         INTRADISTRICT TRANSFER IS REVIEWED FOR ABUSE OF THAT
         DISCRETION. ...................................................................................................................3

II.      COURTS CONSIDER NUMEROUS FACTORS, INCLUDING JUDICIAL
         EFFICIENCY, IN RULING ON MOTIONS FOR INTRADISTRICT TRANSFER. ...................4

ARGUMENT .....................................................................................................................................6

I.       FOCUSING ON THE FACTS OF THIS CRIMINAL CASE DEMONSTRATES THAT
         OAKLAND IS THE APPROPRIATE VENUE BECAUSE IT PROMOTES JUDICIAL
         EFFICIENCY. ...................................................................................................................6

         A.       There is Substantial Factual Overlap Between This Case and the SEC Civil
                  Case.......................................................................................................................6

         B.       Previous Motion Practice in the SEC Civil Case Familiarized this Court with
                  Many of the Facts of the Case..............................................................................7

         C.       Previous Motion Practice in the Criminal Case Familiarized this Court with
                  Additional Facts of the Case. ...............................................................................8

II.      NO OTHER VENUE CONSIDERATION WEIGHS IN FAVOR OF TRANSFER.....................9

         A.       Oakland and San Francisco are Similarly Convenient to the Defendant.............9

         B.       Both Oakland and San Francisco are Convenient to the Victims and
                  Witnesses. ............................................................................................................11

         C.       Both Oakland and San Francisco Equally Satisfy the Remaining
                  Considerations......................................................................................................12

CONCLUSION................................................................................................................................13

1

# <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

Cases

4

*Platt v. Minnesota Min. & Mfg. Co.*,
   376 U.S. 240 (1964).......................................................................................... 5, 9

5

*United States v. Afflerbach*,
   754 F.2d 866 (10th Cir. 1985) .............................................................................. 9

6

*United States v. Alvarado*,
   647 F.2d 537 (5th Cir. 1981) ................................................................................ 4

7

*United States v. Balistrieri*,
   778 F.2d 1226 (7th Cir. 1985) .............................................................................. 4

8

*United States v. Betancourt*,
   734 F.2d 750 (11th Cir. 1984) .............................................................................. 3

9

*United States v. Chitolie*,
   2010 WL 2384550 (D.V.I. June 8, 2010) ............................................................ 4

10

*United States v. Clark*,
   416 F.2d 63 (9th Cir. 1969) ................................................................................ 10

11

*United States v. Contreras-Ceballos*,
   999 F.2d 432 (9th Cir. 1993) .............................................................................. 10

12

*United States v. Erwin*,
   155 F.3d 818 (6th Cir. 1998) ................................................................................ 3

13

14

*United States v. Flores-Elias*,
   650 F.2d 1149 (9th Cir. 1981) .............................................................................. 4

15

*United States v. Forlani*,
   2012 WL 3524751 (N.D. Ohio Aug. 14, 2012) ................................................. 10

16

*United States v. Garza*,
   593 F.3d 385 (5th Cir. 2010) .............................................................................. 11

17

*United States v. Joyce*,
   2008 WL 2367307 (W.D. Pa. June 10, 2008)....................................................... 4

18

*United States v. Lipscomb*,
   299 F.3d 303 (5th Cir. 2002) ............................................................... 4, 5, 7, 9, 11

19

20

*United States v. Montemayor*,
   2013 WL 4459056 (S.D. Tex. Aug. 16, 2013) ................................................... 11

21

*United States v. Schock*,
   2016 WL 7156461 (C.D. Ill. Dec. 7, 2016) ................................................. 10, 12

22

*United States v. Scholl*,
   166 F.3d 964 (9th Cir. 1999) ............................................................................ 4, 8

23

*United States v. Scott-Emuakpor*,
   2000 WL 288443 (W.D. Mich. Jan. 25, 2000) ................................................ 9, 10

24

*United States v. Tettleton*,
   2009 WL 1307888 (W.D. La. May 8, 2009) ...................................................... 10

25

*United States v. Thomas*,
   2019 WL 3307043 (D.V.I. July 23, 2019).................................................... 5, 10

26

27

28

Statutes

28 U.S.C. § 84 ................................................................................................................... 4
28 U.S.C. § 137 ................................................................................................................. 8

The United States respectfully submits its Opposition to defendant Michael Rothenberg's Motion for Intradistrict Venue Transfer. *See* Dkt. 68. As set out below, the scant difference between the current Oakland venue and the proposed San Francisco venue does not support transfer, particularly in the face of the substantial work already completed by this Court on this matter and the related SEC civil matter. Thus, the Court should deny the defendant's motion.

## RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### I.     THE SEC CASE.

On August 20, 2018, the Securities and Exchange Commission ("SEC") filed a complaint against both Rothenberg and his company. *SEC v. Rothenberg*, CV 18-05080 JST, Dkt. 1. In sum, the SEC's complaint alleged that the defendant had misappropriated millions of dollars of investors' funds and had engaged in deceptive practices to conceal that misappropriation. *See, e.g.*, *id.*, ¶¶ 37-80. Among other allegations, the SEC's complaint contended that Rothenberg had not adequately disclosed to investors that the venture capital funds that he managed would invest in so-called "River brand" companies that he owned and controlled, such as River Studios. *Id.*, ¶¶ 19 & 33.

On October 17, 2018, Rothenberg consented to an entry of judgment of permanent injunction, in which he agreed to pay disgorgement of ill-gotten gains, prejudgment interest, and a civil penalty. *Id.*, Dkt. 20. The SEC later filed a Motion for Disgorgement and Penalties as to Rothenberg. *Id.*, Dkts. 83-86 (motion, supporting declarations & exhibits). After full briefing on the SEC's Motion for Disgorgement, *see, e.g.*, *id.*, Dkt. 90 (defendant's opposition & exhibits), this Court filed its Order Granting Plaintiff's Motion for Disgorgement and Penalties on December 20, 2019. In that ruling, the Court ordered Rothenberg to pay disgorgement of $18,776,800, along with prejudgment interest of $3,663,323.47 and a fine of $9,000,000. *Id.*, Dkt. 100.

### II.    THE CRIMINAL CASE.

#### A.     The Criminal Complaint, Information, and Indictment.

On June 24, 2020, a criminal complaint was issued by Magistrate Judge Thomas S. Hixson at the request of the United States, charging the defendant with wire fraud. Dkt. 1. The United States filed an Information the next day, June 25, 2020, which was file stamped on June 26, 2020. Dkt. 2. That matter was assigned to the Honorable William Alsup. The Grand Jury later returned an Indictment on August

UNITED STATES' OPP. DEF.'S MTN. INTRADISTRICT VENUE TRANS.

20, 2020, which contained virtually the same allegations as the Information.  Dkt. 15.  The Information and the later Indictment allege that Rothenberg engaged in various schemes to defraud beginning in 2014.  The largest of the schemes to defraud pertains to investments in certain venture capital funds managed or proposed to be managed by the defendant and his management company, parallel to the allegations in the SEC case.  Another scheme to defraud pertains to a "co-fund" investment into a software company, again parallel to the SEC case.  An additional scheme to defraud pertains to a $2 million investment the defendant obtained into River Studios. Finally, the remaining two schemes to defraud pertain to the defendant's separate schemes to defraud Silicon Valley Bank.

**B.     The Unites States' Notice of Related Case.**

The United States filed a Notice of Related Case in a Criminal Action on July 6, 2020.  Dkt. 7; *see also SEC v. Rothenberg*, CV 18-05080 JST, Dkt. 103.  On July 15, 2020, this Court issued a notice in the SEC case setting the deadline to respond to the government's notice of a related case for seven days after either a lawyer was appointed in the criminal case or it was determined that Rothenberg would be proceeding *in propria persona.  See id.*, Dkt. 104.

On October 21, 2020, acting *pro se*, Rothenberg filed his Notice of Defendant's Objection to Plaintiff's Related Case Designation.  Dkt. 22.  In that pleading, the defendant argued that the "only appropriate venue" was San Francisco, based on the facts of the case, the location of the witnesses, and the convenience to the defendant.  *Id.* at 2-3.  In addition, the defendant argued that, for a number of reasons, this criminal case and the SEC case "are not related," and further argued that the government was "judge-shopping" in order "to benefit the prosecution at the potential detriment of Mr. Rothenberg." *Id.* at 3-4.  Specifically, the defendant argued that "the only potential applications of the SEC Case to the USAO Case [*i.e.*, the criminal case] would be (a) to consider how severely the government has already punished Mr. Rothenberg for what the government purports to be the same set of activities, and (b) to review the relevant transactional accounting through the lens of pre-determined liability against Mr. Rothenberg, which severely prejudices his defense in the USAO Case."  *Id.* at 4:13-18.

On November 16, 2020, after several appearances in magistrate court, counsel was appointed to represent the defendant.  At that time, AFPD Angela Chuang was the appointed counsel. Dkt. 30.  On November 20, 2020, this Court issued an order in the SEC case providing Rothenberg's criminal counsel

1   14 days to file an additional response to the notice of related case.  *SEC v. Rothenberg*, CV 18-05080

2   JST, Dkt. 105.  Rothenberg's counsel filed no response to the government's related case notice.[1]

3   Thereafter, on December 8, 2020, this Court issued its Related Case Order finding that the SEC case and

4   the criminal case were "related within the meaning of Crim. L.R. 8-1(b)."  Dkt. 32.

5           **C.      Rothenberg's Two Motions to Dismiss.**

6           Prior to the filing of the related case notice, the defendant filed his Motion to Dismiss the

7   Information with Prejudice on July 2, 2020.  Dkt. 8.  Judge Alsup ordered the United States to respond

8   on July 21, 2020.  Dkt. 11.  The United States filed its Opposition to the defendant's motion to dismiss

9   on August 4, 2020, Dkt. 13, and the defendant filed his reply brief on August 26, 2020, Dkts. 16 & 17.

10  Judge Alsup never ruled on the defendant's motion to dismiss the Information.  Rather, after this case

11  was reassigned to this Court, this Court considered the issues raised by the defendant and issued its

12  Order Denying Motion to Dismiss as Moot.  Dkt. 46.

13          Next, the defendant filed a motion to dismiss three counts of the Indictment as time barred.  Dkt.

14  52.  After full briefing on the motion, *see* Dkts. 54-55, this Court held oral argument on that motion to

15  dismiss on June 11, 2021.  Dkt. 56.  The Court took the motion under consideration on that date.

16                          **LEGAL STANDARD**

17  **I.      THE COURT'S BROAD DISCRETION IN RULING ON MOTIONS FOR
            INTRADISTRICT TRANSFER IS REVIEWED FOR ABUSE OF THAT DISCRETION.**

18

19          As the defendant correctly notes, there is no constitutional right to a trial within a particular

20  division of, or courthouse in, a federal judicial district.  *See, e.g.*, *United States v. Erwin*, 155 F.3d 818,

21  824 (6th Cir. 1998); *United States v. Betancourt*, 734 F.2d 750, 756 (11th Cir. 1984).  Rather, the

22  Constitution provides only that an accused be tried in "the State and district wherein the crime shall have

23  been committed."  U.S. Const., amend. VI; *see also* U.S. Const., art. III, § 2, cls. 3 ("The Trial of all

24  Crimes . . . shall be held in the State where the said Crimes shall have been committed"); *see also*

25  *Betancourt*, 734 F.2d at 756 ("A division of a federal judicial district is not a unit of venue in criminal

26

27          [1]  Although the Court's November 20 Order was filed only in the SEC case, the ECF notice
28  pertaining to that Order indicates it was served on Rothenberg himself.  In addition, the government
    provided the Order to his appointed counsel.

1  cases.").[2]   Accordingly, determining whether an intradistrict transfer of venue is warranted is left to the

2  broad discretion of the district courts.  *See United States v. Balistrieri*, 778 F.2d 1226, 1229 (7th Cir.

3  1985); *United States v. Alvarado*, 647 F.2d 537, 539 (5th Cir. 1981); *cf. also United States v. Flores-*

4  *Elias*, 650 F.2d 1149 (9th Cir. 1981) ("A trial judge is granted broad discretion in ruling on a change of

5  venue motion [under Rule 21] . . . .").  The Ninth Circuit has held that a district court's denial of a

6  motion for change of venue pursuant to Federal Rule of Criminal Procedure 18 is reviewed for an abuse

7  of discretion.  *See United States v. Scholl*, 166 F.3d 964, 969 (9th Cir. 1999).

8  ## II.   COURTS CONSIDER NUMEROUS FACTORS, INCLUDING JUDICIAL EFFICIENCY, IN RULING ON MOTIONS FOR INTRADISTRICT TRANSFER.

9

10       Federal Rule of Criminal Procedure 18 provides, in relevant part: "The court shall fix the place

11  of trial within the district with due regard to the convenience of the defendant and the witnesses and the

12  prompt administration of justice."  The Fifth Circuit has interpreted the Rule and held that, "[a]lthough

13  the text of Rule 18 refers only to convenience and prompt administration, the district court may consider

14  other factors."  *United States v. Lipscomb*, 299 F.3d 303, 340 (5th Cir. 2002).  Such factors "commonly

15  include, but are not necessarily limited to, docket management, courthouse space and security, and . . .

16  pretrial publicity."  *Id.* at 342.

17       Similarly, many courts apply the factors relevant to Rule 21 motions for *inter*district transfers to

18  guide their consideration of Rule 18 motions for *intra*district transfer.  *See, e.g.*, *United States v. Joyce*,

19  2008 WL 2367307, at *2 (W.D. Pa. June 10, 2008) ("[G]enerally the same principles involved in

20  deciding whether to transfer a case to another district are relevant to the decision of where within the

21  district to set the trial."); *see also United States v. Chitolie*, 2010 WL 2384550, at *4-6 (D.V.I. June 8,

22  2010) (listing cases).  The Supreme Court has established ten factors relevant to the Rule 21 analysis:

23       (1) location of the defendant; (2) location of possible witnesses; (3) location of events
         likely to be in issue; (4) location of documents and records likely to be involved;
24       (5) disruption of defendant's business if case not transferred; (6) expenses of the parties;
         (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of
25       each potential district; and (10) any other special elements which might affect the transfer.

26

27       [2]  In any event, the Northern District of California is not divided into statutory "divisions."
     Rather, Congress has merely provided that "[c]ourt for the Northern District shall be held at Eureka,
28   Oakland, San Francisco, and San Jose."  *See* 28 U.S.C. § 84(a); *compare id.* § 84(c) (providing for
     division of Central District into three divisions).

1   *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 244 (1964).  Using this framework allows courts to

2   fix the place of trial within a district based on a consideration of multiple factors, not just on whether

3   there may be slight inconveniences to the parties and witnesses.  *See United States v. Thomas*, 2019 WL

4   3307043, at *4-*6 (D.V.I. July 23, 2019) (applying and weighing multiple *Platt* factors in granting

5   government's motion for transfer of venue for sentencing hearing).

6          By extension, the defendant's argument that Local Rule 8-1 conflicts with Rule 18 because it

7   considers factors not explicitly set forth in Rule 18 must fail.  *See* Dkt. 68, at 7:2-4 ("To the extent Local

8   Rule 8-1 looks beyond those [Rule 18] factors—at least in deciding to assign a criminal case to a

9   different division—there is a clear conflict with [Rule 18].").  In this regard, the defendant's reliance on

10  the Fifth Circuit's decision in *Lipscomb* is misplaced.  *See id.* at 7:4-8.  In *Lipscomb*, the district court

11  *sua sponte* ordered transfer of venue (from Dallas to Amarillo, a distance of 300 miles), based on its

12  concerns about pretrial publicity in the Dallas/Fort Worth area.  *Lipscomb*, 299 F.3d at 337-38.  As an

13  initial matter, when *Lipscomb* held that the district court had committed legal error when it "perceived

14  from past transfers a generalized but informal policy regarding transfers as a matter of course" from one

15  courthouse to another, the Fifth Circuit was merely ruling that it was improper to justify the transfer of a

16  case based solely on historical practice rather than relying on "other legitimate factors."  *Id.* at 341

17  ("Such reference to the [district] court's prior venue practice verges on circularity and runs the risk of

18  creating a *per se* rule that violates Rule 18's *focus on the facts* of each case." (second emphasis added)).

19         Here, the Local Rule 8-1 inquiry that resulted in reassignment to this Court was necessarily

20  "focus[ed] on the facts" of this case, a practice *condoned* by *Lipscomb*.  *See, e.g.*, *Lipscomb*, 299 F.3d at

21  340 n.179 ("'There is now substantial authority for the proposition that the court . . . may take into

22  account numerous factors appearing in the particular case.'") (quoting Wright, *Federal Practice and*

23  *Procedure*).  Indeed, as noted at the outset of this subsection, the *Lipscomb* court *specifically authorized*

24  courts to look beyond the explicit text of Rule 18 and to consider other legitimate factors when

25  considering motions for intradistrict transfer.  *Id.* at 340 ("Although the text of Rule 18 refers only to

26  convenience and prompt administration, the district court may consider other factors.").  Thus, as set

27  forth in more detail below, *Lipscomb* and all the factors in this case provide substantial support for

28  maintaining venue before this Court and for denying the defendant's motion.

UNITED STATES' OPP. DEF.'S MTN. INTRADISTRICT VENUE TRANS.
CR 20-0266 JST                                      5

**ARGUMENT**

**I.    FOCUSING ON THE FACTS OF THIS CRIMINAL CASE DEMONSTRATES THAT OAKLAND IS THE APPROPRIATE VENUE BECAUSE IT PROMOTES JUDICIAL EFFICIENCY.**

Despite the defendant's protestations to the contrary, this criminal case is indeed related to the SEC civil case, this Court has already delved into the facts of the case, and this Court has already undertaken substantial work in the criminal case itself.  As described below, transferring venue could very well require another Court to duplicate this effort, which is needless, especially when every other venue consideration is neutral or negligible.

**A.    There is Substantial Factual Overlap Between This Case and the SEC Civil Case.**

The current criminal case is in fact related to the SEC civil case, which is why this Court already signed an order relating the two cases.  *See* Dkt. 32.  Although the conduct alleged in the criminal case may be broader than that at issue in the SEC civil case, the facts easily satisfy both criteria of Criminal Local Rule 8-1(b) (even though they need satisfy only one).

First, the criminal case contains "one or more of the same defendant(s)" and "one or more . . . of the same alleged events, occurrences, transactions or property" as the SEC case.  Crim. L.R. 8-1(b)(1).  As noted in the government's Notice of Related Case, *see* Dkt. 7, ¶ 7, at 3, two of the schemes to defraud alleged in this case (Counts Twelve through Twenty-Three) relate directly to allegations in the SEC's Complaint.  For example, Counts Twelve to Fifteen of the Indictment concern the same scheme to defraud investors in a particular software company.  *Compare United States v. Rothenberg*, Indictment, ¶¶ 12-13, 42-45 & Cts. 12-15 (related to "co-fund" investment in "Software Company") *with SEC v. Rothenberg*, Compl., ¶¶ 48-64 (related to "co-fund" investment in "Private Company").  Likewise, Counts Sixteen to Twenty-Three of the Indictment concern particular investors in two of the defendant's investment funds that form the basis of the SEC civil case complaint.  *Compare United States v. Rothenberg*, Indictment, ¶¶ 3-10, 14-25, 47-49 & Cts. 16-23 (related to scheme to defraud regarding two funds and investors to those funds) *with SEC v. Rothenberg*, Compl., ¶¶ 16-18, 20-36, 41-47, 65-80 (related to overall scheme to defraud investors in same two funds).  Furthermore, a third scheme in the criminal case, involving the obtaining of a loan from Silicon Valley Bank, as laid out in Counts Three and Four of the Indictment, appears in the SEC civil case as a means of concealing the

1   above schemes from investors.  *Compare United States v. Rothenberg*, Indictment, ¶¶ 31-35 & Cts. 3-4

2   (related to bank fraud scheme to obtain loan) *with SEC v. Rothenberg*, Compl., ¶¶ 72-74 (related to

3   scheme to obtain loan to conceal misuse of investor funds).

4          Second, the facts of the case are extensive and cover significant material that exists in both cases,

5   as noted above.  Because this Court has already issued a ruling pertaining to some of these shared facts,

6   transferring the criminal case to San Francisco would likely "entail substantial duplication of labor if

7   heard by different Judges."  Crim. L.R. 8-1(b)(2).  Moreover, this Court's work may not yet be finished

8   in the SEC case.  Although the defendant's appeal of the Court's disgorgement order was dismissed by

9   the Ninth Circuit for failure to prosecute, the SEC case is not over.  Specifically, the government has

10  learned that the SEC served the defendant with discovery requests in March 2021 aimed at determining

11  the assets he has available to pay the judgment against, that the defendant has failed to respond to those

12  requests, and that the SEC may thus return to this Court with respect to obtaining a motion to compel

13  discovery responses and, later, enforcing the judgment it obtained.  Such proceedings "might create

14  conflicts and unnecessary expenses if conducted before different Judges."  *Id.*

15         **B.     Previous Motion Practice in the SEC Civil Case Familiarized this Court with Many
               of the Facts of the Case.**

16

17         The defendant's claim that the SEC case involved no factual development or pretrial motion

18  practice is not entirely correct.  *See* Dkt. 68, at 6:6-8 ("[The SEC case was concluded without any

19  factual development . . . ."); *see also id.* at 1 ("There was no motion practice . . . in the civil suit . . . .").

20  As the defendant notes elsewhere, the SEC filed a motion for disgorgement and penalties, *see* Dkt. 83,

21  which was 19 pages long.  The SEC's motion was supported by several declarations and exhibits,

22  including the declaration of and expert report by Deloitte accountant Gerald Fujimoto.  *See* Dkt. 84.

23  Fujimoto's declaration was about 15 pages long, and it attached his expert report of over 45 pages.

24  Furthermore, the declaration of SEC attorney Eric Brooks attached more than 70 pages of exhibits.

25  Moreover, Rothenberg himself filed a 28-page opposition to the SEC's motion, *see* Dkt. 90, to which he

26  appended seven exhibits totaling more than 300 pages.

27         This Court had to conduct a fact-intensive review of all the submissions referenced above and

28  had to become familiar with the law and the facts in order to issue its nine-page disgorgement order.  *See*

UNITED STATES' OPP. DEF.'S MTN. INTRADISTRICT VENUE TRANS.

1   Dkt. 100.  This process obviously took considerable time and effort.  Transferring the case to another

2   judge may require that that judge repeat this labor, effectively disrupting the "prompt administration of

3   justice," not just for Mr. Rothenberg but also for other cases on that judge's docket.  *See Scholl*, 166

4   F.3d at 970 (finding that district court did not abuse its discretion in denying motion to transfer venue

5   from Phoenix back to Tucson, where district court relied on "the *efficiency* to be gained by not

6   transferring the matter to another judge," among other factors (emphasis added)).  More importantly, the

7   fact that this Court has already become familiar with at least a portion of the issues that will likely arise

8   in the criminal case will be *beneficial* to both parties because that familiarity gives the Court a head start

9   regarding substantive issues related to the alleged criminal conduct.  And contrary to the assertions that

10  the defendant made in his *pro se* objection to the related case notice, *see* Dkt. 22, such familiarity

11  certainly works no unfair prejudice on the defendant.

12       Given the factual and legal overlap between the SEC case and this criminal case, it is entirely

13  appropriate that this District's Local Rules provide for the assignment of both cases to a single judge.

14  Such assignment of related cases is both appropriate under Rule 18 and related jurisprudence pertaining

15  to that Rule and authorized by Congress.  *See* 28 U.S.C. § 137 ("The business of a court having more

16  than one judge shall be divided among the judges as provided by the rules and orders of the court.").

17       **C.     Previous Motion Practice in the Criminal Case Familiarized this Court with
                   Additional Facts of the Case.**

18

19       Furthermore, in his Motion for Intradistrict Venue Transfer, the defendant simply skips over the

20  fact that he has twice required this Court to consider motions to dismiss in the criminal case.  As noted

21  above, there was full briefing on the defendant's Motion to Dismiss the Information with Prejudice.  *See*

22  Dkts. 8, 13, 16, and 17.  In issuing its Order Denying Motion to Dismiss as Moot, Dkt. 46, this Court

23  had to wade through the numerous allegations in the motion, familiarizing itself with the procedural

24  history of this criminal case.

25       The defendant's second motion to dismiss, this time limited to only three counts of the

26  Indictment, Dkt. 52, is currently under consideration by the Court.  That motion too was fully briefed,

27  *see* Dkts. 54-55, and this Court held oral argument on it on June 11, 2021.  Dkt. 56.  Whatever the

28  outcome of the motion, the Court has had to grapple with, at the least, additional facts about the criminal

UNITED STATES' OPP. DEF.'S MTN. INTRADISTRICT VENUE TRANS.

1  case's procedural history in detail and expend considerable time adjudicating the motion.

2         In conclusion, the significant time this Court has spent both with the related SEC civil case and

3  this criminal case have immersed the Court in the procedural and factual underpinnings of much of the

4  criminal case.  Furthermore, as noted above, the Court's work may not be done in the SEC civil case to

5  the extent that the SEC takes actions to compel discovery responses from the defendant, or other actions

6  to enforce its judgment.  As discussed below, because the other remaining venue considerations have no

7  or minimal weight, the need to reduce judicial duplication of labor should control.

8  **II.    NO OTHER VENUE CONSIDERATION WEIGHS IN FAVOR OF TRANSFER.**

9         As discussed above, the universe of venue factors the Court may consider is broad.  Federal Rule

10 of Criminal Procedure 18 focuses on "the convenience of the defendant and the witnesses and the

11 prompt administration of justice."  *Lipscomb* adds factors such as "docket management, courthouse

12 space and security, and . . . pretrial publicity."  299 F.3d at 342.  The Supreme Court enumerated factors

13 in *Platt* such as:

14         (1) location of the defendant; (2) location of possible witnesses; (3) location of events
           likely to be in issue; (4) location of documents and records likely to be involved;
15         (5) disruption of defendant's business if case not transferred; (6) expenses of the parties;
           (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of
16         each potential district; and (10) any other special elements which might affect the
           transfer.
17

18 376 U.S. at 244 (in the context of Fed. R. Crim. P. 21).  Examining these factors in the context of this

19 criminal case establishes that they are all neutral or negligible as to transfer of venue.

20         **A.    Oakland and San Francisco are Similarly Convenient to the Defendant.**

21         The defendant lives within such proximity to the Oakland courthouse that travel to that location

22 poses essentially no inconvenience whatsoever.  That the defendant can walk to the San Francisco

23 courthouse is of little consequence; the primary consideration is the objective burden on the defendant of

24 traveling to the venue in question.  *See United States v. Afflerbach*, 754 F.2d 866, 869 (10th Cir. 1985)

25 ("[T]he mere fact that a defendant's home is nearer one trial site than another is insufficient to merit

26 transfer."); *United States v. Scott-Emuakpor*, 2000 WL 288443, at *13 (W.D. Mich. Jan. 25, 2000)

27 ("Rule 18 does not mandate absolute convenience to a defendant.").  In this case, the San Francisco and

28 Oakland courthouses are separated by a drive of about 12 miles, a distance that courts routinely consider

UNITED STATES' OPP. DEF.'S MTN. INTRADISTRICT VENUE TRANS.
CR 20-0266 JST                                    9

to be minimal (regardless of how close the defendant may live to one of the courthouses in question).

*See, e.g.*, *United States v. Forlani*, 2012 WL 3524751, at *3 (N.D. Ohio Aug. 14, 2012) (finding that

two courthouses in question were separated by only 15 miles, and that this difference in travel time

between the locations was "minimal"); *United States v. Cooper*, 2006 U.S. Dist. LEXIS 92483, at *3

(E.D. Tenn. Dec. 20, 2006) (finding that additional travel time of 17 minutes did not support change in

venue); *Thomas*, 2019 WL 3307043, at *4 (finding that there was little inconvenience to venue in

question because commute was "short 20 minute flight").  Moreover, the Oakland courthouse is situated

extremely close to BART mass transit (the 12th Street/Civic Center station).[3]

Indeed, the Ninth Circuit and other courts routinely find significantly greater distances to be

acceptably small inconveniences to a defendant.  *See, e.g.*, *United States v. Clark*, 416 F.2d 63, 64 (9th

Cir. 1969) (ruling that district court's decision to set a second trial 90 miles away after the first trial

ended in mistrial was not abuse of discretion); *United States v. Schock*, 2016 WL 7156461, at *4 (C.D.

Ill. Dec. 7, 2016) ("While the Peoria Division would be more convenient to defendant because he

resides there, that convenience does not outweigh the other factors, particularly in light of the fact that

defendant does not have a constitutional right to be tried in a particular division and the Springfield

Division is only 73 miles from Peoria."); *United States v. Tettleton*, 2009 WL 1307888, at *2 (W.D. La.

May 8, 2009) (finding that, although the defendant's preferred division would be more convenient, the

inconvenience of the selected division was slight because the distance between the two cities could be

traveled in less than two hours); *Scott-Emuakpor*, 2000 WL 288443, at *13 (finding that one hour of

additional travel time by interstate highway did not weigh strongly in favor of venue transfer); *cf. also*

*United States v. Contreras-Ceballos*, 999 F.2d 432 (9th Cir. 1993) (affirming conviction where district

court denied motion to transfer venue 500+ miles from Anchorage to Juneau despite defendant's

contentions that the events happened closer to Juneau, that the jury should be "familiar with local

conditions," and venue in Juneau might help defendant locate and interview witnesses, where there was

---

[3]  The defendant contends that he currently resides in San Francisco.  The government does not
dispute this assertion, but does note its understanding that defendant's mortgage is currently being
foreclosed upon by the victim Silicon Valley Bank and that he may soon be evicted from his residence.
It is unclear to the government where the defendant will be residing at the time of trial.  At this point, it
is entirely likely that he could end up residing in the East Bay, or even move to his parents' home in
Texas.

1   "no allegation or indication that [defendant] was prejudiced").

2         Although inconvenience to the defendant based on travel distance can be a factor in determining

3   a Rule 18 motion, the distances in question are usually an order of magnitude larger. *See, e.g.*, *United*

4   *States v. Montemayor*, 2013 WL 4459056, at *3 (S.D. Tex. Aug. 16, 2013) (noting that traveling 350

5   miles between Laredo and Houston was serious inconvenience); *see also United States v. Garza*, 593

6   F.3d 385, 387 (5th Cir. 2010) (noting that traveling 300 miles from Del Rio to Waco was serious

7   inconvenience that would prevent defendant's family and friends from attending trial); *Lipscomb*, 299

8   F.3d at 241-42 (finding *sua sponte* transfer to another division 300 miles away was abuse of discretion).

9   The inconvenience for the defendant to travel an extra 12 miles is trivial compared with these other

10  cases and is much more in line with smaller distances that are routinely outweighed by other valid

11  considerations.

12        **B.     Both Oakland and San Francisco are Convenient to the Victims and Witnesses.**

13        The victims in this case face minimal or no inconvenience by traveling to Oakland, as opposed to

14  San Francisco, for many of the same reasons that apply to the defendant.  Additionally, the defendant's

15  argument that "[s]everal of the alleged victims are companies not headquartered in California, or even

16  the United States at all," and that therefore "there is no added inconvenience to the victims to relocate

17  the case from Oakland to San Francisco," actually cuts *against* granting a transfer to San Francisco if

18  there are other considerations that favor Oakland as the venue.  In this case, many of the victims reside

19  or are headquartered outside of both the Oakland and San Francisco venues of this District.  For

20  example, Silicon Valley Bank (the victim in Counts One through Four) is headquartered in Santa Clara

21  County (which falls within the San Jose venue).  Furthermore, the victims at issue in the scheme to

22  defraud that encompasses Counts Five through Eleven – identified in the Indictment as "P LLC" and "T

23  LLC" – are Nevada limited liability companies with offices in Las Vegas.  Similarly, the victims in

24  Counts Twelve through Twenty-Three include organizational victims headquartered or domiciled, or

25  individual victims residing, in Massachusetts, Arizona, the Cayman Islands, Hong Kong/China, Taiwan,

26  and South Korea, in addition to San Francisco and other locations in Northern California.  The defendant

27  is essentially conceding that there is effectively no comparative inconvenience between the two

28  locations in question for these victims and therefore the convenience of the victims does not weigh in

UNITED STATES' OPP. DEF.'S MTN. INTRADISTRICT VENUE TRANS.

1    favor of granting the defendant's requested venue transfer.

2        Similarly, the non-victim witnesses in this case face minimal or no inconvenience by traveling to

3    Oakland instead of San Francisco.  While the defendant claims that the witnesses were in San Francisco

4    at the time of the Indictment, he does not even assert that they are all still in San Francisco at this time,

5    nor does he suggest that the witnesses will be unable or unwilling to testify in Oakland.  Dkt. 68, at 5.

6    This type of standalone claim about the location of the witnesses, without any specific allegations of the

7    consequences the given venue might have on their participation in the trial, generally receives little

8    weight in determining a Rule 18 motion.  *See, e.g.*, *Schock*, 2016 WL 7156461, at *2-4 (noting that

9    defendant did not "identify specific witnesses or the subject of their testimony," and concluding that

10   "Defendant has failed to make a sufficient showing that a transfer to the Peoria Division for trial would

11   be more convenient to the witnesses").  In any event, the government believes that witnesses or potential

12   witnesses in this case (including victim-witnesses) are living, among other locations, in the California

13   cities of Alameda, Albany, Mill Valley, St. Helena, San Mateo, Menlo Park, Los Gatos, Carlsbad, San

14   Diego, and (as the defendant points out) San Francisco.  There are also witnesses or potential witnesses

15   who reside in or near Chicago, Denver, Las Vegas, Phoenix, and Boston, as well as many outside the

16   country, including in China and South Korea.  For such witnesses and potential witnesses, the Oakland

17   courthouse poses little or no inconvenience in comparison to the San Francisco courthouse.

18       **C.    Both Oakland and San Francisco Equally Satisfy the Remaining Considerations.**

19       The remaining set of considerations are generally inapplicable to the facts of this case or equally

20   satisfied by Oakland and San Francisco.  For example, the United States is unaware of anything

21   distinguishing Oakland and San Francisco – and the defendant has not identified any in his motion – on

22   matters such as courthouse space and security, pretrial publicity, expenses of the parties, location of

23   counsel (defense counsel is located in Oakland), relative accessibility of place of trial, and disruption of

24   the defendant's business.  Further, on the facts of this case, the location of events likely to be at issue

25   and the location of documents and records likely to be involved also do not distinguish between Oakland

26   and San Francisco.  That is because this corporate fraud case does not require knowledge of a location:

27   most if not all locations of events are meetings and presentations in restaurants, hotels, offices, and

28   conference rooms in San Francisco, Las Vegas, and Asia; what occurred in them will not require a view

by the jury or knowledge of the area.  Likewise, the documents and records in this case are digital and can be reviewed anywhere.

Thus, when everything is considered, the only factor that weighs strongly on the issue of venue is the need to reduce judicial duplication of labor and to promote judicial efficiency, and that factor favors the Oakland venue.

## CONCLUSION

Due consideration of the relevant factors to be contemplated under Rule 18 demonstrates that the benefit to judicial efficiency of staying in Oakland outweighs all other factors regarding moving the venue a mere 12 miles to San Francisco.  The United States therefore respectfully opposes the defendant's Motion for Intradistrict Venue Transfer.


DATED:  July 23, 2021                                    Respectfully submitted,

                                                         STEPHANIE M. HINDS
                                                         Acting United States Attorney


                                                         _____/s/_____
                                                         KYLE F. WALDINGER
                                                         NICHOLAS J. WALSH
                                                         Assistant United States Attorneys

UNITED STATES' OPP. DEF.'S MTN. INTRADISTRICT VENUE TRANS.
CR 20-0266 JST                                    13