1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2
   BENJAMIN KINGSLEY (CABN 314192)
3  Acting Criminal Chief

4  KYLE F. WALDINGER (CABN 298752)
   NICHOLAS J. WALSH (CABN 314290)
5  Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-7200
         Fax: (415) 436-7234
8        Email: Kyle.Waldinger@usdoj.gov
         Email: Nicholas.Walsh@usdoj.gov
9
   Attorneys for the United States of America
10

11               UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                    OAKLAND DIVISION

14  UNITED STATES OF AMERICA,            )   CASE NO. CR 20-0266 JST
                                         )
15        Plaintiff,                     )   UNITED STATES' OPPOSITION TO
                                         )   DEFENDANT'S MOTION TO DISMISS COUNTS
16    v.                                 )   1, 3, AND 5-23 FOR FAILURE TO STATE AN
                                         )   OFFENSE OR ALTERNATIVELY TO STRIKE
17  MICHAEL BRENT ROTHENBERG,            )   THE OMISSIONS THEORY AS INSUFFICIENTLY
         a/k/a MIKE ROTHENBERG,          )   PLEADED
18                                       )
          Defendant.                     )   Hearing Date:    October 22, 2021
19                                       )   Hearing Time:    9:30 am.
                                         )
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**RELEVANT ALLEGATIONS OF THE INDICTMENT** ..................................................................1

I.     OVERVIEW OF THE STRUCTURE AND ALLEGATIONS IN THE INDICTMENT.................................................................................................................1

II.    THE INDICTMENT WAS CAREFULLY DRAFTED TO ALLEGE MATERIAL OMISSIONS ONLY WHEN IT ALLEGED ROTHENBERG HAD A DUTY TO DISCLOSE .........................................................................................................3

**ARGUMENT** .....................................................................................................................5

I.     THE INDICTMENT PROPERLY STATES THE OFFENSES OF BANK FRAUD AND WIRE FRAUD ........................................................................................5

    A.    Pleading Standards Require Only a Plain, Concise, and Definite Written Statement of the Essential Facts in an Indictment ................................5

    B.    The Indictment Comports with the Applicable Pleading Standards ...................6

II.    THE DEFENDANT MISUNDERSTANDS THE ALLEGATIONS OF THE VARIOUS SCHEMES AND THE EFFECT OF NINTH CIRCUIT FRAUD LAW ...................9

    A.    The Ninth Circuit Distinguishes Misrepresentation Fraud from Omissions Fraud ...............................................................................................10

    B.    Counts Twelve through Twenty-Three are Carefully Pleaded to Include Fraud by Omission ...........................................................................................12

    C.    Count One, Count Three, and Counts Five through Seven are not Pleaded to Include Fraud by Omission and the Government will not Prove those Counts in that Manner ...........................................................................................13

**CONCLUSION** .................................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Cacy v. United States*,
   298 F.2d 227 (9th Cir. 1961) ........................................................................................... 11

*Costello v. United States*,
   350 U.S. 359 (1956) ......................................................................................................... 5

*Eller v. EquiTrust Life Ins. Co.*,
   778 F.3d 1089 (9th Cir. 2015) .................................................................................. 10, 11

*Guam v. Muna*,
   999 F.2d 397 (9th Cir. 1993) ........................................................................................... 5

*Hamling v. United States*,
   418 U.S. 87 (1974) ........................................................................................................... 6

*Little v. First California Co.*,
   532 F.2d 1302 (9th Cir. 1976) ....................................................................................... 13

*Lustiger v. United States*,
   386 F.2d 132 (9th Cir. 1967) ......................................................................................... 11

*Neder v. United States*,
   527 U.S. 1 (1999) ........................................................................................................... 13

*Pasquantino v. United States*,
   544 U.S. 349 (2005) ....................................................................................................... 10

*Stewart v. Wyoming Cattle-Ranche Co.*,
   128 U.S. 383 (1888) ....................................................................................................... 10

*United States v. Anderson*,
   391 F.3d 970 (9th Cir. 2004) ........................................................................................... 7

*United States v. Beecroft*,
   608 F.2d 753 (9th Cir. 1979) ......................................................................................... 10

*United States v. Benny*,
   786 F.2d 1410 (9th Cir. 1986) .................................................................................. 10, 14

*United States v. Boren*,
   278 F.3d 911 (9th Cir. 2002) ........................................................................................... 6

*United States v. Cecil*,
   608 F.2d 1294 (9th Cir. 1979) ......................................................................................... 9

*United States v. Dowling*,
   739 F.2d 1445 (9th Cir. 1984) ....................................................................................... 11

*United States v. Duarte*,
   2010 WL 2734631 (D. Hi. July 7, 2020) ................................................................... 4, 15

*United States v. DuBo*,
   186 F.3d 1177 (9th Cir. 1999) ......................................................................................... 8

*United States v. Farrace*,
   805 Fed. App'x 470 (9th Cir. 2020) .............................................................................. 14

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) ......................................................................................... 6

*United States v. Galloway*,
   2016 WL 4269961 (N.D. Cal. Aug. 15, 2016) ........................................................ 15, 16

*United States v. Givens,*
   767 F.2d 574 (9th Cir. 1985) .................................................................................. 6, 8
*United States v. Holmes,*
   2020 WL 666563 (N.D. Cal. Feb. 11, 2020) .......................................................... 12
*United States v. Inunza,*
   638 F.3d 1006 (9th Cir. 2011) ..................................................................................... 8
*United States v. Jackson,*
   72 F.3d 1370 (9th Cir. 1995) ....................................................................................... 6
*United States v. Jinian,*
   725 F.3d 954 (9th Cir. 2013) ....................................................................................... 6
*United States v. Laurienti,*
   611 F.3d 530 (9th Cir. 2010) ..................................................................................... 11
*United States v. Lloyd,*
   807 F.3d 1128 (9th Cir. 2015) ................................................................................... 14
*United States v. Lonich,*
   2016 WL 324039 (N.D. Cal. Jan. 27, 2016) ............................................................ 12
*United States v. Loughrin,*
   573 U.S. 351 (2014) ...................................................................................................... 7
*United States v. Marchese,*
   838 F. Supp. 1424 (D. Colo. 1993) .............................................................................. 9
*United States v. Milovanovic,*
   678 F.3d 713 (9th Cir. 2012) ....................................................................................... 8
*United States v. Molinaro,*
   11 F.3d 853 (9th Cir. 1993) ....................................................................................... 14
*United States v. Rizk,*
   660 F.3d 1125 (9th Cir. 2011) ..................................................................................... 7
*United States v. Rogers,*
   751 F.2d 1074 (9th Cir. 1985) ..................................................................................... 5
*United States v. Sharp,*
   749 F.3d 1267 (10th Cir. 2014) ................................................................................. 10
*United States v. Shields,*
   844 F.3d 819 (9th Cir. 2016) ..................................................................... 4, 10, 11, 14
*United States v. Spanier,*
   744 F. App'x 351 (9th Cir. 2018) ........................................................................ 14, 15
*United States v. Steffen,*
   687 F.3d 1104 (8th Cir. 2012) ................................................................................... 12
*United States v. Sumeru,*
   449 Fed. App'x 617 (9th Cir. 2011) .......................................................................... 15
*United States v. Tavelman,*
   650 F.2d 1133 (9th Cir. 1981) ..................................................................................... 6
*United States v. Weimert,*
   819 F.3d 351 (7th Cir. 2016) ..................................................................................... 10
*United States v. Woodruff,*
   50 F.3d 673 (9th Cir. 1995) ......................................................................................... 6
*United States v. Woods,*
   335 F.3d 993 (9th Cir. 2003) ..................................................................................... 10
*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
   136 S. Ct. 1989 (2016) ................................................................................ 10, 13, 14, 15

**Statutes**

18 U.S.C. § 1014 ............................................................................................................. 1
18 U.S.C. § 1343 ............................................................................................................. 1
18 U.S.C. § 1344 ............................................................................................................. 1
18 U.S.C. § 1957 ............................................................................................................. 1

**Rules**

Fed. R. Crim. P. 12(b)(3)(B) ........................................................................................... 6
Fed. R. Crim. P. 7 ................................................................................................... 5, 6, 9

The United States respectfully submits its Opposition to defendant Michael Rothenberg's Motion to Dismiss Counts 1, 3, and 5-23 for Failure to State an Offense or Alternatively to Strike the Omissions Theory as Insufficiently Pleaded.  Dkt. 85.  For the reasons set forth below, the Court should deny the motion in its entirety.

**RELEVANT ALLEGATIONS OF THE INDICTMENT**

**I.     OVERVIEW OF THE STRUCTURE AND ALLEGATIONS IN THE INDICTMENT**

The Indictment in this case alleges that defendant Michael Rothenberg engaged in a course of conduct between 2013 and 2016 to defraud the investors in various Funds Rothenberg managed through Rothenberg Ventures Management Company ("RVMC"), his venture capital management company. Paragraph 25 of the Indictment describes Rothenberg's overall conduct by explaining that he regularly obtained money from investors after making representations to them about how he would use the investments in particular RVMC-managed Funds.  As set out in Paragraph 25, the United States alleges that Rothenberg regularly misused investor funds and employed various deceptive acts and practices to hide his misappropriation and misuse, including by commingling funds and by moving money between various accounts (including his personal accounts) whenever those funds were needed for particular purposes, all without regard to the true ownership of such money.  As a result of those actions, the Indictment charges Rothenberg with four types of crimes: (1) bank fraud, in violation of 18 U.S.C. § 1344 (Counts One and Three); (2) making false statements to a financial institution, in violation of 18 U.S.C. § 1014 (Counts Two and Four); (3) wire fraud, in violation of 18 U.S.C. § 1343 (Counts Five through Seven and Counts Twelve through Twenty-Three); and (4) money laundering, in violation of 18 U.S.C. § 1957 (Counts Eight through Eleven).  The Indictment organizes Rothenberg's fraudulent behavior into five interrelated schemes to defraud and includes a detailed description of the manner and means of each of those schemes.  Those interrelated schemes to defraud are summarized below.

The first scheme is embodied in Counts One and Two, which allege that Rothenberg engaged in a scheme to defraud Silicon Valley Bank ("SVB") in 2014 related to two loans that Rothenberg applied for and received from that bank.  One of those loans was a $1.48 million "cash out" mortgage refinancing loan regarding Rothenberg's condominium in San Francisco.  The other loan was a $300,000 cash loan intended to help Rothenberg satisfy his capital commitment to one of the venture

capital funds he managed, which commitment arose pursuant to Rothenberg's role as that fund's general partner. *See* Indict. ¶¶ 28.a & 28.g.  Among other things, Count One alleges that Rothenberg misrepresented his liabilities and assets to SVB.  *See id.* ¶¶ 28.d-28.f.  These misrepresentations were accomplished through the submission of an updated loan application, *see id.* ¶ 28.e; through an affidavit affirming that the financial status that Rothenberg had previously represented had not changed, *see id.* ¶ 28.c; and by virtue of Rothenberg's movement of funds between accounts to make it appear that he had more unrestricted assets and fewer liabilities than he actually had, *see id.* ¶¶ 28.d & 28.f.

The second scheme to defraud is embodied in Counts Three and Four, which allege that Rothenberg engaged in a scheme to defraud SVB in 2015 related to a $4 million line of credit that his management company RVMC applied for and received from SVB.  That line of credit was secured by $4.25 million in cash, which Rothenberg led SVB employees to believe represented the fees prepaid by investors in the 2015 Fund managed by RVMC.  *See* Indict. ¶ 33.d.  Among other things, Count Three alleges that Rothenberg misrepresented the amount of fees that RVMC was due to receive from that fund, *see id.* ¶ 33.b; misled SVB employees to believe that RVMC had not already taken all of the fees it was due from the fund, *see id.* ¶ 33.c; and misled SVB employees to believe that the cash collateral that RVMC was posting to secure the line of credit represented prepaid fees from fund investors, *id.* ¶ 33.d.[1]

Counts Five through Seven represent separate executions of the third scheme.  The Indictment alleges that Rothenberg engaged in a scheme to defraud P LLC, a Nevada company, to invest $2,000,000 through a convertible promissory note in River Studios, a company he controlled.  *See* Indict. ¶ 37.  It alleges that Rothenberg made misrepresentations to P LLC about the uses to which River Studios would put any capital raised and about how River Studios' operations had been funded in the past.  *See id.* ¶¶ 38.a, 38.c & 38.d.  Counts Five through Seven are interstate wire transmissions that are alleged to be separate executions of this third scheme.  These interstate wires consist of two emails sent by Rothenberg to the alleged victim and the wire transfer of funds sent by the alleged victim.[2]

---

[1]  The bank fraud counts in the Indictment are each accompanied by charges that Rothenberg made false statements to SVB.  *See* Indict. Counts 2 & 4.

[2]  As the defendant correctly notes in his motion, the Indictment's money laundering charges in Counts Eight through Eleven pertain to the proceeds of the so-called "specified unlawful activity" embodied in Counts Five through Seven.

Counts Twelve through Fifteen are alleged executions of the fourth scheme to defraud. The Indictment alleges that Rothenberg engaged in a scheme to defraud potential investors in a "co-fund," the intended purpose of which was to purchase pre-IPO shares of a software company. The Indictment alleges that Rothenberg ultimately fraudulently obtained about $1.3 million of investor money based on false representations that the investors' money would be used to purchase such shares. *See* Indict. ¶ 43. The Indictment goes on to allege that, instead of using the funds as had been represented, Rothenberg used those funds for other purposes. *Id.* The Indictment contains a description of a variety of means and methods that Rothenberg employed to execute this scheme and to lull investors. *See id.* ¶¶ 44.a-44.f. Counts Twelve through Fifteen are wire transmissions in interstate commerce that are alleged to be separate executions of the fourth scheme to defraud. These wire transmissions consist of transfers of funds from four alleged victims to a Rothenberg Ventures bank account.

The fifth scheme to defraud is captured in Counts Sixteen through Twenty-Three. Similar to the fourth scheme, this scheme alleges that Rothenberg engaged in a scheme to defraud two of the venture capital funds managed by RVMC as well as certain investors in those funds. In short, Rothenberg is alleged to have defrauded the funds and investors by making misrepresentations about the uses to which he would put capital invested in the funds. *See* Indict. ¶ 48.a. The Indictment provides examples of how Rothenberg misused investor funds. *Id.* ¶¶ 48.b-48.d. Counts Sixteen through Twenty-Three are wire transmissions in interstate and/or foreign commerce that are alleged to be separate executions of this scheme. All of these wire communications are transfers of funds from investors to a Rothenberg Ventures bank account.

## II. THE INDICTMENT WAS CAREFULLY DRAFTED TO ALLEGE MATERIAL OMISSIONS ONLY WHEN IT ALLEGED ROTHENBERG HAD A DUTY TO DISCLOSE

As the defendant points out in his Motion, the Indictment's various counts contain allegations that Rothenberg furthered his schemes to defraud through material false and fraudulent pretenses, representations, and promises, as well as "concealment" of material facts and "omissions" of material facts. The government pled these allegations regarding "concealment" and "omissions" – as well as the allegations about Rothenberg's "duty to disclose" – deliberately and carefully. As set forth in more detail herein, an individual's "duty to disclose" material facts (and, thus, his fraud liability for "material

omissions") arises in circumstances when an individual purports to act for the benefit of others in a fiduciary-like relationship, such as the relationship Rothenberg had with the investors in his Funds.  The Indictment was thus drafted taking into account the factual situations in which Rothenberg did, and did not, have a fiduciary-like relationship and thus a duty to disclose material facts.

Accordingly, with respect to the charges set out in the first three schemes to defraud that allege Rothenberg "concealed" material facts, the government intends to show that Rothenberg accomplished that concealment by taking affirmative acts of concealment or making affirmative statements that served to conceal material facts and to mislead the victims (such as statements involving half-truths).  In other words, the government understands the "concealment" allegations of Count One, Count Three, and Counts Five through Seven merely to reflect the jurisprudence defining the full scope of schemes involving false statements, which may involve affirmative statements, half-truths, and concealment of facts.  *See, e.g.*, *United States v. Duarte*, 2010 WL 2734631, at *1 (D. Hi. July 7, 2020) (denying post-trial motions where jury was instructed that "term 'false representations or statements' includes actual, direct false statements as well as half-truths, and *includes the knowing concealment of facts* that are material") (emphasis added).  With respect to these counts, and consistent with the other allegations in those counts, the government also intends to present evidence that Rothenberg deceived the victims by devising schemes reasonably calculated to deceive those victims.

With respect to the charges set out in the fourth and fifth schemes that allege Rothenberg accomplished the frauds was by "omitting and concealing material facts" from investors as to whom he had a "duty to disclose," the government intends to present evidence that one way that Rothenberg defrauded investors was by *omitting* to tell them certain facts when he had a duty to provide that information.  Because fraud liability for such "pure omissions" requires proof of a duty of trust and confidence, as articulated in *United States v. Shields*, 844 F.3d 819 (9th Cir. 2016), the Indictment includes "duty to disclose" allegations as to these counts.  *See* Indict. ¶¶ 43, 45, 47 & 49.  With respect to these counts, and consistent with the other allegations in those counts, the government also intends to present evidence that Rothenberg deceived investors by making affirmative false statements – including statements of half-truths – and by devising schemes reasonably calculated to deceive investors.

Accordingly, the Indictment deliberately and carefully pleads Counts One and Three without

allegations regarding Rothenberg's "omissions" or any "duty to disclose" because individuals who obtain loans from financial institutions have no fiduciary-like relationship with the lenders. The transaction at issue in Counts Five through Seven was an investment by a Nevada company in River Studios in the form of a "convertible promissory note." Because the government understands this transaction to have been akin to a loan, it did not to include "omissions" and "duty to disclose" allegations as to this transaction in the Indictment. Counts Twelve through Twenty-Three, in contrast, contain allegations regarding "omissions" and Rothenberg's "duty to disclose" because an individual managing the investments of others has a fiduciary or fiduciary-like relationship with his investors.

## ARGUMENT

### I.  THE INDICTMENT PROPERLY STATES THE OFFENSES OF BANK FRAUD AND WIRE FRAUD

#### A.  Pleading Standards Require Only a Plain, Concise, and Definite Written Statement of the Essential Facts in an Indictment

The defendant has moved to dismiss all but two counts of the Indictment under Federal Rule of Criminal Procedure 7 and the Fifth and Sixth Amendments to the United States Constitution. However, "[d]ismissal of an indictment is considered a 'drastic step' and is generally disfavored as a remedy." *Guam v. Muna*, 999 F.2d 397, 399 (9th Cir. 1993) (quoting *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985)). Rather, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).

As a general matter, review of an indictment on a motion to dismiss before trial is governed by Rule 7(c)(1), which requires only that "[t]he indictment or information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *See also* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."); U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."). In order to be legally sufficient, an indictment must contain the elements of the offense charged, fairly inform the defendant of the charge, and enable the defendant to plead double jeopardy as a defense to future prosecution for the same offense. *See Hamling v. United States*, 418 U.S. 87, 117 (1974).

The Ninth Circuit has "held that an indictment setting forth the elements of the offense is generally sufficient." *United States v. Fernandez*, 388 F.3d 1199, 1220 (9th Cir. 2004); *see also United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("In the Ninth Circuit, the use of a 'bare bones' in[dictment] – that is one employing the statutory language alone – is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.") (internal quotation and editing marks omitted).  Thus, in the Ninth Circuit, an indictment need do little more than track the language of the statute, include "implied, necessary elements, not present in the statutory language," and state the approximate time and place of the alleged crime.  *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995); *United States v. Tavelman*, 650 F.2d 1133, 1137 (9th Cir. 1981).

When evaluating a "pre-trial motion to dismiss for failure to state an offense, the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  Nevertheless, "[t]he indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985).

Accordingly, a court's review of a pretrial motion to dismiss is a narrow, limited analysis geared towards ensuring that legally deficient charges do not go to the jury.  *See* Fed. R. Crim. P. 12(b)(3)(B) (describing "defect[s] in the indictment" that may warrant dismissal).

## B.      The Indictment Comports with the Applicable Pleading Standards

As set out in more detail below, the Indictment here alleges each of the elements of bank fraud and wire fraud, provides far more detail than required in the Ninth Circuit, and sets out facts that adequately inform the defendant of the specific offenses with which he is charged.  For these reasons, the Indictment is sufficient under Rule 7(c).

The Ninth Circuit has stated that the essential elements of a wire fraud offense are "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013).

The essential elements of bank fraud are similar: (1) the defendant knowingly executed or

attempted to execute a scheme to defraud (a) a financial institution as to a material matter *or* (b) to

obtain any of the moneys or other property owned by, or under the custody or control of, a financial

institution by means of material false or fraudulent pretenses, representations, or promises that the

defendant knew were false; (2) the defendant acted with the intent to defraud; and (3) the financial

institution was insured by the Federal Deposit Insurance Corporation ("FDIC").  *See United States v.*

*Loughrin*, 573 U.S. 351, 356 (2014) (§ 1344(2)); *United States v. Rizk*, 660 F.3d 1125, 1135 (9th Cir.

2011) (§ 1344(1)); *United States v. Anderson*, 391 F.3d 970, 976 (9th Cir. 2004) (§ 1344(2)); 9th Cir.

Model Jury Instr. 8.125 (§ 1344(1)) and 8.127 (§ 1344(2)).

In this case, the Indictment clearly alleges each essential element of wire fraud and bank fraud.

*First*, for each scheme, the Indictment alleges that, beginning on or about a certain date and

continuing to on or about another date, the defendant devised and executed the particular scheme.  *See*

Indict. ¶¶ 27, 32, 37, 39, 43, 45, 47 & 49.  The Indictment then goes on to describe the general means

and methods of each scheme.  These "means and methods" allegations provide additional factual details

beyond the essential elements of the offenses and describe some of the various actions that the defendant

took as part of each scheme.  *See* Indict. ¶¶ 28, 33, 38, 44 & 48.  Accordingly, the Indictment

sufficiently sets out the first essential element of each offense.

*Second*, with respect to the wire fraud schemes alleged in Counts Five through Seven (as to the

victim P LLC) and in Counts Twelve through Twenty-Three (as to investors), the Indictment generally

alleges that Rothenberg transmitted wire communications in interstate commerce for the purpose of

executing each scheme.  *See* Indict. ¶¶ 39, 45 & 49 (alleging that Rothenberg "did transmit, and cause to

be transmitted, by means of wire communication in interstate [and foreign] commerce, certain writings,

signs, signals, pictures, and sounds").  Furthermore, in alleging the substantive counts, the Indictment

specifies a total of 12 wire communications that the defendant caused for the purpose of executing each

respective wire fraud scheme.  *See id.* Counts 5-7 (Table) & Counts 12-23 (Tables).  These allegations

satisfy the second essential element of the wire fraud offense articulated above.

*Third*, the Indictment further alleges that Rothenberg acted with the intent to defraud.  *See* Indict.

¶¶ 27, 32, 39, 45 & 49.  These allegations satisfy the third essential element of the wire fraud offense

articulated above and the second essential element of the bank fraud offense articulated above.

1    *Finally*, the Indictment alleges that the financial institution at issue in the bank fraud offenses

2    alleged in Counts One and Three – Silicon Valley Bank – was insured by the FDIC.  *See* Indict. ¶ 11.

3    This allegation satisfies the third essential element of the bank fraud offense.

4         As explained in greater detail in Section II, *infra*, the government intends to rely on an

5    "omissions theory" *only* with respect to the fraud schemes alleged in Counts Twelve through Fifteen and

6    Counts Sixteen through Twenty-Three, and it is only those counts that use the term "omission."

7    Therefore, it is *only* those counts that allege a "duty to disclose" on Rothenberg's behalf.  But these

8    "duty to disclose" allegations are not required, and the defendant has cited no Ninth Circuit Court of

9    Appeals case *requiring that an indictment allege* a defendant had a duty to disclose omitted information,

10   let alone a Ninth Circuit case holding that an indictment must allege the *factual basis* giving rise to such

11   a duty.  Rather, the cases cited by the defendant merely discuss (1) whether the jury must be instructed

12   that it needs to find the existence of a duty before it may rely on a defendant's material omissions and

13   (2) when it is appropriate for the government to rely on a "pure omissions" theory.  But these are

14   different questions than the question of what allegations must be in an indictment.  And although the

15   defendant refers to the jurisprudence requiring that indictments alleged "implied, necessary elements,

16   not present in the statutory language," Dkt. 85, at 3:1-2 (citing *United States v. DuBo*, 186 F.3d 1177,

17   1179 (9th Cir. 1999)), he has cited no Ninth Circuit authority stating that a defendant's "duty to

18   disclose" is an "implied, necessary element" that must be included in an indictment.

19        Like the defendant, the government has not located any Ninth Circuit appellate cases that require

20   that an indictment allege either a duty to disclose or the factual basis for such a duty.  There are good

21   reasons why there do not appear to be any Ninth Circuit cases adopting this position.  One important

22   reason is because that court has broadly rejected that kind of specificity in indictments.  *See, e.g.*, *United*

23   *States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985) ("An indictment which tracks the words of the

24   statute charging the offense is sufficient so long as the words unambiguously set forth all elements

25   necessary to constitute the offense."); *see also United States v. Milovanovic*, 678 F.3d 713, 728-29 (9th

26   Cir. 2012) (holding that honest services fraud indictment tracking statutory language was sufficient,

27   despite fact that "the word 'fiduciary' [was] not mentioned" in indictment); *United States v. Inunza*, 638

28   F.3d 1006 (9th Cir. 2011) (rejecting argument that indictment was defective for failing to allege

UNITED STATES' OPP. MTN. DISMISS
CR 20-0266 JST                                    8

"implied elements" of honest services fraud); *accord United States v. Marchese*, 838 F. Supp. 1424, 1428 (D. Colo. 1993) ("[T]he indictment sufficiently alleges all of the elements of mail fraud necessary to sustain the indictment.  The indictment need not specifically allege that Marchese breached his fiduciary duty to his customers.").

The allegations of the Indictment in this case well inform the defendant of the "specific offenses with which [he was] charged."  *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979).  Moreover, the filing of this very motion makes clear that the Indictment has put the defendant on notice that the government may proceed in part on an omissions-based fraud theory at trial with respect to those counts in which he had a "duty to disclose."  For these reasons, and for all of the reasons set forth above, there can be no doubt that the Indictment comports with the requirements of Rule 7(c) and the Fifth and Sixth Amendments.  Because the Indictment comports with the Federal Rules and the Constitution, this Court should deny the defendant's motion to dismiss the subject counts for that reason alone.[3]

## II.   THE DEFENDANT MISUNDERSTANDS THE ALLEGATIONS OF THE VARIOUS SCHEMES AND THE EFFECT OF NINTH CIRCUIT FRAUD LAW

The defendant misunderstands the allegations of the Indictment and confuses the Ninth Circuit case law regarding "omissions fraud" on the one hand and those cases based on "misrepresentation fraud" on the other hand.  As set forth in more detail below, only the charges in Counts Twelve through Twenty-Three implicate "omissions fraud."  With respect to those counts, the Indictment sufficiently alleges Rothenberg's duty to disclose (even though such allegations are not required) and, moreover, alleges facts forming the basis of such a duty (even though such allegations are not required).  In contrast, Counts One, Three, and Five through Seven are alleged to involve only "misrepresentation fraud," which can consist not only of affirmative misrepresentations, but also half-truths and

---

[3]  The defendant has also moved to strike the "omissions theory allegations" in the Indictment. Dkt. 85, at 5: 13-15.  The defendant presents no additional argument regarding this request.  Rather, Rothenberg's request to strike the omissions allegations is simply an alternative prayer for relief that is based on the same grounds as his motion to dismiss.  Accordingly, the Court should deny the motion to strike on the same grounds as it denies his motion to dismiss.

To the extent that the defendant may argue that the "concealment" allegations in Count One, Count Three, and Counts Five through Seven are improper because he had no "duty" to disclose the concealed facts, the government refers the Court to Section II, *infra*.  As set forth therein, those counts pertain to "misrepresentation fraud" and not "omissions fraud."

1  concealment of material facts.

2  **A.     The Ninth Circuit Distinguishes Misrepresentation Fraud from Omissions Fraud**

3      The principal criminal statutes in this case are bank fraud and wire fraud.  Broadly speaking,

4  each statute embodies two theories: (1) a scheme or plan to defraud and (2) a scheme or plan to obtain

5  money or property by means of false representations.

6      Bank fraud and wire fraud prohibit a number of different types of fraud.  One type is fraud by

7  misrepresentation ("misrepresentation fraud").  This type of fraud involves misleading a victim using

8  false statements, half-truths, or concealment.  *See Universal Health Servs., Inc. v. United States ex rel.*

9  *Escobar*, 136 S. Ct. 1989, 1999-2001 (2016) (False Claims Act); *Pasquantino v. United States*, 544 U.S.

10  349, 357 (2005); *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986) (government may offer

11  "[p]roof of an affirmative, material misrepresentation"); *United States v. Woods*, 335 F.3d 993, 998 (9th

12  Cir. 2003) ("deceitful statements of half truths or the concealment of material facts") (quotation

13  omitted); *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979) ("Deceitful statements of half-

14  truths or the concealment of material facts is actual fraud under the statute."); *see also United States v.*

15  *Weimert*, 819 F.3d 351, 355 (7th Cir. 2016) (misrepresentation in fraud statute "can also include the

16  omission or concealment of material information, even absent an affirmative duty to disclose"); *United*

17  *States v. Sharp*, 749 F.3d 1267, 1281 (10th Cir. 2014) (upholding finding that "deceitful concealment of

18  material facts" is mid-way between affirmative misrepresentation and mere non-disclosure).

19      The government uses misrepresentation fraud when it argues that the defendant "fraudulently

20  produc[ed] a false impression upon the mind" of a victim, no matter how the defendant creates the

21  misleading impression: "it is unimportant whether the means of accomplishing it are words or acts of the

22  defendant, or his concealment or suppression of material facts."  *Stewart v. Wyoming Cattle-Ranche Co.*,

23  128 U.S. 383, 388 (1888).

24      Misrepresentation fraud is distinct from fraud accomplished by a defendant's silence or failure to

25  disclose material information; that type of fraud is known as fraud by omission or material non-

26  disclosure.  Such "omissions fraud" requires proof of a statutory duty or special trust relationship

27  between the fraudster and the victim.  *See Shields*, 844 F.3d at 822-24; *Eller v. EquiTrust Life Ins. Co.*,

28  778 F.3d 1089, 1092-93 (9th Cir. 2015).

Accordingly, conduct amounting to "fraud" under federal law can come in a variety of forms. But only a single type of fraudulent conduct – *i.e.*, conduct purely involving material omissions – is subject to a "duty" exception. That is, a pure nondisclosure of a material fact can support a fraud charge, but only if there existed a duty to disclose that was breached by the person so charged. *Shields*, 844 F.3d at 822-23 (holding that "jury . . . must find a relationship creating a duty to disclose before it could conclude that a material non-disclosure supports a wire fraud charge"); *Eller*, 778 F.3d at 1092 ("A non-disclosure, however, can support a fraud charge only 'when there exists an independent duty that has been breached by the person so charged.'" (quoting *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984))). The Ninth Circuit has said that such a duty can arise either out of a "formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." *Shields*, 844 F.3d at 823 (internal quotation marks and citation omitted); *see also United States v. Laurienti*, 611 F.3d 530, 543 (9th Cir. 2010) (where government presents theory based on pure "failure to disclose," jury must be instructed "on the government's burden to prove a trust relationship between Defendants and their clients").

It is true, then, that in certain contexts, a defendant must have an identifiable duty to disclose before fraud based purely on omissions can support a conviction. However, no fiduciary-like duty or relationship of trust and confidence is necessary when a defendant uses half-truths or other means to give deceptive appearances. As the Ninth Circuit explained long ago, "deception need not be premised upon verbalized words alone. The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance." *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967); *see also Cacy v. United States*, 298 F.2d 227, 229 (9th Cir. 1961) ("Deceitful concealment of material facts is not constructive fraud but actual fraud.").[4]

As set forth below, all of the fraud charges in the Indictment include "misrepresentation fraud,"

---

[4] *Shields* spoke generally about a "duty to disclose," but the only examples it gave of when such a duty arose were in the context of fiduciary or trusting relationships. *Shields* did not cite or consider the large body of Ninth Circuit law pertaining to misrepresentations, half-truths, and concealment of material facts, as enunciated in *Woods*, *Lustiger*, and *Beecroft*. Based on these facts, it seems clear that *Shields*' "duty to disclose" holding was not meant to disturb the rules enunciated in *Woods*, *Lustiger*, and *Beecroft*.

1  but only the charges in Counts Twelve through Twenty-Three also include "omissions fraud."

2  **B.    Counts Twelve through Twenty-Three are Carefully Pleaded to Include Fraud by Omission**

3

4  As set forth above, the government intends to establish the defendant's culpability for the wire

5  fraud charges set forth in Counts Twelve through Twenty-Three by adducing evidence that the

6  defendant engaged in a scheme to defraud; which was reasonably calculated to deceive; that he made

7  affirmative misrepresentations and delivered half-truths; and, furthermore, that he omitted telling

8  investors certain facts that he had a duty to disclose to them because he had a fiduciary or fiduciary-like

9  relationship with those investors.  Because Ninth Circuit law will require the Court to instruct the jury

10  that it must find such a relationship in order to convict the defendant based solely on pure omissions, *see*

11  *United States v. Shields*, and because other judges in this District have required such allegations in

12  indictments, *see United States v. Lonich*, 2016 WL 324039, at *8 (N.D. Cal. Jan. 27, 2016) (Illston, J.)

13  and *United States v. Holmes*, 2020 WL 666563, at *14 (N.D. Cal. Feb. 11, 2020) (Davila, J.) (citing

14  *Lonich*), allegations regarding Rothenberg's "duty to disclose" to investors were included in the

15  *Rothenberg* Indictment with respect to those charges that related to alleged fraud against Rothenberg's

16  fund investors.  This was done out of an abundance of caution, and those "duty to disclose" allegations

17  were included because the government anticipates that, at trial, it will seek to have the Court give the

18  portion of the Ninth Circuit Model Instruction that states:

19
20
21
22
> To convict defendant[s] of wire fraud based on omission[s] of material fact[s], you must find that defendant[s] had a duty to disclose the omitted fact[s] arising out of a relationship of trust.  That duty can arise either out of a formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise.

23  9th Cir. Model Instr. 8.124.  That being said, there do not appear to be any cases in the Ninth Circuit or

24  in this District that have dismissed an indictment or stricken "duty to disclose" allegations after finding

25  that the indictment had inadequately alleged the *factual basis* for the alleged duty.  *But see United States*

26  *v. Steffen*, 687 F.3d 1104 (8th Cir. 2012) (holding that indictment failed to set forth facts alleging

27  scheme based on omissions arising from independent legal duty to disclose material information, where

28  indictment alleged only omissions indistinguishable from breaches of defendant's contractual duties).

In any event, the Indictment here alleges that Rothenberg "managed various investment funds" and that he and his company RVMC "purported to act in the best interests of investors" in those funds. Indict., ¶¶ 3 & 7.  The charges in Counts Twelve through Twenty-Three allege that the defendant schemed to defraud investors in those funds (as well as two of the funds themselves).  Accordingly, even if the factual basis of Rothenberg's duty to disclose *were* required to be alleged in the Indictment, the government submits that this Indictment's allegations are sufficient in that regard because it alleges that Rothenberg took peoples' money and purported to be acting in their best interests regarding those funds.

C. **Count One, Count Three, and Counts Five through Seven are not Pleaded to Include Fraud by Omission and the Government will not Prove those Counts in that Manner**

With respect to Count One, Count Three, and Counts Five through Seven, the government intends to pursue only "misrepresentation fraud" at trial.  For example, with respect to Count One, the government intends to prove that Rothenberg tricked SVB into thinking that he had greater assets and fewer liabilities than he actually did have.  The government intends to focus, not on Rothenberg's silence, but on how he created a misleading impression to SVB through his affirmative statements, half-truths, and concealment of facts.  So, too, for the schemes alleged in Count Three and Counts Five through Seven.

But the fact that the government's proof in these counts may include Rothenberg's *concealment* of material facts does not mean that those counts relate to "omissions fraud."  Such concealment has been the nature of half-truths cases since the common law: misrepresentation involves "stating the truth so far as it goes" when the defendant "knows or believes [the statements] to be materially misleading because of his failure to state additional or qualifying matter."  *Escobar*, 136 S. Ct. at 1999; *see also Neder v. United States*, 527 U.S. 1, 22 (1999) ("well-settled meaning at common law . . . of 'fraud' required a misrepresentation or concealment of *material* fact") (emphasis in original).

It is true that any half-truth is in some sense an omission, "at least to the extent that there is a failure to disclose which facts in the representation are not true."  *Little v. First California Co.*, 532 F.2d 1302, 1305 n.4 (9th Cir. 1976).  Thus, it is not the *withholding* of information that distinguishes misrepresentation fraud from fraud by omission – some element of withholding is common to each.  The key is whether the government accuses the defendant of speaking only some truth while withholding or

concealing the rest in order to create a false impression. *See Escobar*, 136 S. Ct. at 1999-2000. (Fraud by omission would involve the government accusing the defendant simply of withholding information, and not affirmatively creating a false construct.) That is what occurred here with respect to Count One, Count Three, and Counts Five through Seven. Concealing information in a misleading way is part of a half-truths misrepresentation fraud, not a signal of fraud by omission. *See United States v. Molinaro*, 11 F.3d 853, 857 (9th Cir. 1993) (upholding bank fraud conviction where evidence showed that defendants concealed defendant Mangano's role as purchaser of failing condominium project).

The Ninth Circuit's decision in *United States v. Farrace*, 805 Fed. App'x 470 (9th Cir. 2020), is instructive. In that case, the defendant was convicted of wire fraud regarding the short sale or attempted short sale of his real properties to himself through a shell company. On appeal, the defendant apparently argued that the district court should have given a jury instruction regarding "fraud by omission" pursuant to the court of appeals' decisions in *Shields*, 844 F.3d 819, and *United States v. Spanier*, 744 F. App'x 351 (9th Cir. 2018). In its decision, the *Farrace* court acknowledged that, where a wire fraud case was "premised on a material omission," the jury must be instructed that it had to "find that the defendant had an independent duty to the defrauded party to disclose the omitted information." *Farrace*, 805 Fed. App'x at 473 (citing *Shields*). But it rejected Farrace's argument that such an instruction was required in the case before it, noting that "in fraud cases premised on misrepresentations, including those that involve half-truths, the government is not required to prove such a duty." *Id.* (citing *United States v. Lloyd*, 807 F.3d 1128, 1153 (9th Cir. 2015) and *Benny*, 786 F.2d at 1418); *see also Lloyd*, 807 F.3d at 1163 (noting that indictment included allegations of "*concealment* of material facts") (emphasis added). And while the *Farrace* indictment "contain[ed] language alluding to both misrepresentations and omissions fraud," the Ninth Circuit noted that the government did not proceed on the omission theory and focused at trial on how Farrace "created a misleading impression." *Farrace*, 805 Fed. App'x at 473. In reaching its holding, the *Farrace* court cited the Supreme Court's decision in *Escobar*, 136 S. Ct. at 1989. In that case, the Supreme Court had discussed what constituted a "false or fraudulent" claim under the False Claims Act, noting that "fraudulent misrepresentations . . . include certain misleading omissions," specifically, those that "render the defendant's representations misleading." *Id.* at 1999; *id.* at 2001 ("A statement that misleadingly omits critical facts is a

1  misrepresentation irrespective of whether the other party has expressly signaled the importance of the

2  qualifying information.").

3     Similarly, in *United States v. Sumeru*, 449 Fed. App'x 617 (9th Cir. 2011), the defendants were

4  convicted of wire fraud.  The jury was instructed that it could find the defendants "guilty of wire fraud

5  on the basis of 'actual, direct false statements,' 'half-truths,' or '*the knowing concealment of facts.*'"  *Id.*

6  at 621 (emphasis added).  On appeal, the defendants contended that the government's theory of

7  conviction was invalid because it "argued in closing that a few pieces of evidence represented material

8  omissions," despite its failure to "prov[e] the existence of a trust or fiduciary relationship."  *Id.* at 621-

9  22.  The *Sumeru* panel held that, "because the jury was instructed on a 'half-truth' theory, the

10  government was not required to prove the existence of a trust or fiduciary relationship between the

11  defendants and [the victim investors]."  *Id.* at 622.  Other courts appear to agree that "concealment" of

12  material facts falls under the category of "misrepresentation fraud" rather than "omissions fraud."  *See,*

13  *e.g.*, *Duarte*, 2010 WL 2734631, at *1 (denying post-trial motions in case where jury was instructed that

14  "term 'false representations or statements' includes actual, direct false statements as well as half-truths,

15  and *includes the knowing concealment of facts* that are material") (emphasis added).  *But see United*

16  *States v. Galloway*, 2016 WL 4269961 (N.D. Cal. Aug. 15, 2016) (Hamilton, C.J.) (in a bid-rigging

17  case, finding "no meaningful distinction between 'omission,' 'non-disclosure,' and 'concealment'").

18     The defendant's reliance on *Spanier* is misplaced.  In that case, the Ninth Circuit stated that,

19  "[w]hen the government bases a fraud charge on material non-disclosures, the trial court must instruct

20  the jury that a non-disclosure can only support a fraud charge when the defendant has a duty to disclose

21  the omitted information."  744 Fed. App'x 351, 353 (9th Cir. 2018).  After reviewing the record, the

22  Ninth Circuit concluded that "the government's fraud case was based on affirmative misrepresentations,

23  half-truths, *and* omissions."  *Id.* at 353-54.  Because the government relied on an "omissions" theory, the

24  *Spanier* court concluded that the district court should have instructed the jury that it had to find that the

25  defendant had a duty to disclose the omitted information.  Here, however, the government *agrees* that

26  the Court must give the Ninth Circuit Model Instruction 8.124 that directs the jury the find a duty to

27  disclose for counts as to which the government is relying at least in part on "pure omissions" (*i.e.*,

28  Counts Twelve through Twenty-Three).  But as set forth above, such a "duty to disclose" finding by the

1   jury is not required with respect to the remaining fraud counts, where the government is not proceeding

2   on a "pure omissions" theory.[5]

### CONCLUSION

4   For all of the reasons set forth above, the Court should reject the defendant's argument that the

5   subject counts of the Indictment fail to state an offense and should deny his motion to dismiss those

6   counts.  All of the counts in question meet and exceed the applicable pleading requirements.  In addition,

7   the Court should also deny the defendant's alternative motion to strike the "concealment" and

8   "omission" allegations in the Indictment.  Those allegations are all well-supported by federal

9   jurisprudence regarding "misrepresentation fraud" and "omissions fraud" and the allegations have been

10  carefully crafted to reflect the likely evidence at trial and Rothenberg's differing relationship with each

11  set of victims.

13  DATED:  October 1, 2021                          Respectfully submitted,

14                                                   STEPHANIE M. HINDS
                                                     Acting United States Attorney

16                                                          /s/

17                                                   _____
                                                     KYLE F. WALDINGER
18                                                   NICHOLAS J. WALSH
                                                     Assistant United States Attorneys

---

24      [5]  Significantly, a review of the record in *Spanier* demonstrates that Spanier's complaint on appeal related in part to the district court's refusal to give a "half truths" instruction [similar to that given in *Sumeru*] that would have given guidance to the jury regarding how to consider the evidence of non-disclosures.  *See United States v. Spanier*, 2017 WL 4050097, at *45 (Appellant's Opening Brief) ("Spanier proposed an instruction specifically asking the jury to make the distinction between omissions and half-truths, but the government opposed it and the district court rejected it.  The jury, then, did not receive the tools to decide an omission versus a misrepresentation, so there is no way to determine that the jury convicted Spanier 'of telling fraudulent half-truths.'"); *id.* at *27 (text of Spanier's proposed "half truths" instruction stating that "fraud conviction cannot be based on omissions or non-disclosures alone, unless they rise to the level of deliberate misrepresentations or half-truths with the intent to defraud").