1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2
   BENJAMIN KINGSLEY (CABN 314192)
3  Acting Criminal Chief

4  KYLE F. WALDINGER (CABN 298752)
   NICHOLAS J. WALSH (CABN 314290)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       Fax: (415) 436-7234
8      Email: Kyle.Waldinger@usdoj.gov
       Email: Nicholas.Walsh@usdoj.gov
9
   Attorneys for the United States of America
10

11                     UNITED STATES DISTRICT COURT

12                     NORTHERN DISTRICT OF CALIFORNIA

13                             OAKLAND DIVISION

14 | UNITED STATES OF AMERICA,            ) CASE NO. 20-CR-00266 JST
                                          )
15 |     Plaintiff,                       ) UNITED STATES' OPPOSITION TO
                                          ) DEFENDANT'S MOTION TO SEVER
16 |  v.                                  ) COUNTS 1 TO 4
                                          )
17 | MICHAEL BRENT ROTHENBERG,            ) Hearing Date:  October 22, 2021
         a/k/a MIKE ROTHENBERG,           ) Hearing Time:  9:30 a.m.
18 |                                      )
       Defendant.                         )
19 |_____)

# TABLE OF CONTENTS

**RELEVANT PROCEDURAL HISTORY** ...................................................................................1

**ARGUMENT** .................................................................................................................................1

I. ALL COUNTS IN THE INDICTMENT ARE PROPERLY JOINED UNDER RULE 8. .............1

    A. The Legal Standard for Joinder Favors Joinder of Counts. ..................................1

    B. Every Count In The Indictment – Including the Four Rothenberg Seeks To Sever – Are Part Of Rothenberg's Overarching Plan To Defraud Investors In The Funds He Managed. ...................................................................................................................2

    C. Every Count In The Indictment – Including the Four Rothenberg Seeks To Sever – Are Of The Same Or Similar Character To One Another. ...............................5

    D. Counts 3 and 4 Are Based On The Same Acts or Transactions as Counts 19 to 22. ...........8

II. NO COUNTS IN THE INDICTMENT SHOULD BE SEVERED UNDER RULE 14. ..............10

    A. The Legal Standard Is Severance Only for Manifest Prejudice. .........................10

    B. Rothenberg's "Garden Variety" Concern About Spillover Because Of The Number Of Counts Does Not Establish Prejudice. ............................................................11

    C. Rothenberg's Undeveloped Concerns About The Improper Admission Of Evidence Do Not Establish Prejudice. ...................................................................................11

    D. Rothenberg's Musings About Whether He Might Testify Do Not Establish Prejudice. ................................................................................................................................13

**CONCLUSION** ....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Edwards v. Squier*,
    178 F.2d 758 (9th Cir. 1949) .................................................................................................. 6
*Parker v. United States*,
    404 F.2d 1193 (9th Cir. 1968) ................................................................................................ 10
*United States v. Anderson*,
    642 F.2d 281 (9th Cir. 1981) ............................................................................................ 8, 12
*United States v. Bronco,*
    597 F.2d 1300 (9th Cir.1979) ................................................................................................ 10
*United States v. Butler*,
    429 F.3d 140 (5th Cir. 2005) ................................................................................................. 11
*United States v. Edgar*,
    82 F.3d 499 (1st Cir. 1996) ................................................................................................... 11
*United States v. Fiorillo*,
    186 F.3d 1136 (9th Cir. 1999) ................................................................................................ 6
*United States v. Ford*,
    632 F.2d 1354 (9th Cir. 1980) ................................................................................................ 2
*United States v. Friedman*,
    445 F.2d 1076 (9th Cir. 1971) ............................................................................................ 1, 9
*United States v. Irvine,*
    756 F.2d 708 (9th Cir. 1985) ................................................................................................. 10
*United States v. Jawara*,
    474 F.3d 565 (9th Cir. 2007) ............................................................................ 2, 3, 5, 7, 9, 10
*United States v. Johnson*,
    820 F.2d 1065 (9th Cir. 1987) ......................................................................................... 10, 13
*United States v. Kaplan*,
    895 F.2d 618 (9th Cir. 1990) .................................................................................................. 6
*United States v. Lane*,
    474 U.S. 438 (1986) .......................................................................................................... 2, 14
*United States v. Lewis*,
    787 F.2d 1318 (9th Cir.) ........................................................................................................ 10
*United States v. Lewis*,
    798 F.2d 1250 (9th Cir. 1986) ............................................................................................... 10
*United States v. McGrath*,
    558 F.2d 1102 (2d Cir. 1977) .................................................................................................. 2
*United States v. Monteiro*,
    871 F.3d 99 (1st Cir.  2017) ................................................................................................... 13
*United States v. Nash*,
    115 F.3d 1431 (9th Cir. 1997) ................................................................................................. 7
*United States v. Prigge*,
    830 F.3d 1094 (9th Cir. 2016) ............................................................................................... 10
*United States v. Roselli*,
    432 F.2d 879 (9th Cir. 1970) ................................................................................................... 8
*United States v. Seifert*,
    648 F.2d 557 (9th Cir. 1980) ................................................................................................. 10

*United States v. Terry*,
   911 F.2d 272 (9th Cir. 1990) .................................................................................................. 2, 6
*United States v. VonWillie*,
   59 F.3d 922 (9th Cir. 1995) ......................................................................................................... 2
*United States v. Zimny*,
   873 F.3d 38 (1st Cir. 2017) ........................................................................................................ 11

**Rules**

Federal Rule of Criminal Procedure 8(a)............................................................................ 1, 2, 3, 5, 8, 9, 10
Federal Rule of Criminal Procedure 14 ....................................................................................... 10, 11, 13
Federal Rule of Evidence 404(b) ................................................................................................................ 12

The United States respectfully submits its Opposition to defendant Michael Rothenberg's Motion to Sever Counts 1 to 4.  *See* Dkt. 87.  For the reasons set forth below, the Court should deny the motion.

**RELEVANT PROCEDURAL HISTORY**

The United States relies on the facts set forth in the Indictment returned in this matter.  *See* Dkt. 15.  The Indictment was returned on August 20, 2020, charging defendant Michael Rothenberg with 23 counts of bank fraud, false statements to a bank, wire fraud, and money laundering.  *See id.*

On September 13, 2021, Rothenberg filed a Motion to Sever Counts 1 to 4.  *See* Dkt. 87.  Pursuant to an order of the Court setting an amended briefing schedule, the United States' response is due October 1, 2021.  *See* Dkt. 82.  This Opposition is thus timely filed.

**ARGUMENT**

**I.   ALL COUNTS IN THE INDICTMENT ARE PROPERLY JOINED UNDER RULE 8.**

As the Indictment spells out in detail, Rothenberg was engaged in an overarching plan to defraud the investors in his various Funds between 2013 and 2016.  Every count in the Indictment goes to this overarching "common scheme or plan," including counts 1 through 4.  Accordingly, counts 1 to 4 of the Indictment are properly joined with the remaining counts in the Indictment.  Likewise, counts 1 to 4 are linked to the other counts because they are, as described below, of "the same or similar character" as the other counts.  Finally, counts 3 and 4, in addition to the above reasons, are properly joined to the remaining counts in the Indictment because they are "based on the same act or transaction" as counts 19 to 22.

**A.   The Legal Standard for Joinder Favors Joinder of Counts.**

Federal Rule of Criminal Procedure 8(a) provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Rule 8 has been "broadly construed in favor of initial joinder...." *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir. 1971).  Rule 8 provides a liberal standard for joinder since "[m]ultiple trials are

UNITED STATES' OPP. DEF'S MTN. SEVER     1
20-CR-00266 JST

unfair to both the government and the accused," because "[a] prosecution is expensive and time-consuming, for the government and the court," and "the defendant is put to the expense and embarrassment of two or more trials." *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977). The Supreme Court "has long recognized that joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986) (internal quotation marks and citation omitted).

While the propriety of joinder is primarily concerned with what is pleaded in the indictment itself, *see United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995) ("In making our assessment, we examine only the allegations in the indictment"), the Ninth Circuit does not require that all the similarities justifying joinder be pled on the face of the indictment. *See United States v. Ford*, 632 F.2d 1354 (9th Cir. 1980).  For example, during an initial joinder inquiry under Rule 8, the Ninth Circuit considers factors such as the elements of statutory offenses, temporal proximity of acts, likelihood and extent of evidentiary overlap, physical location of acts, modus operandi of crimes, and identity of victims in assessing whether an indictment meets the "same or similar character" prong of Rule 8(a). *See United States v. Jawara*, 474 F.3d 565, 579 (9th Cir. 2007).  In that analysis, weight given to particular factor will depend on the specific context of the case and the allegations in the indictment, and "the bottom line is that the similar character of joined offenses should be ascertainable—either readily apparent or reasonably inferred—from the face of indictment." *Id.*

Misjoinder of charges under Rule 8(a) is a question of law reviewed *de novo*.  *See United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990).

**B.  Every Count In The Indictment – Including the Four Rothenberg Seeks To Sever – Are Part Of Rothenberg's Overarching Plan To Defraud Investors In The Funds He Managed.**

The Indictment is crafted to provide notice to Rothenberg of the type and nature of charges against him and is structured in a logical fashion.  The Indictment first sets out the various people and entities relevant to substantive allegations that will be forthcoming.  *See* Dkt. 15 ¶¶ 1-24.  It then describes Rothenberg's overarching plan to defraud his investors, *see id.* ¶ 25, before describing specific instances of that overarching plan in rough chronological order and alleging 23 charges.  *See id.* ¶¶ 26-49.  Finally, the Indictment lays out the forfeiture provisions at the end.  *See id.* ¶¶ 50-54.

Directly relevant to the issue of whether under Rule 8(a) counts 1 to 4 are misjoined with counts 5 to 23 is the Indictment's description of Rothenberg's overarching plan to defraud. Paragraph 25 of the Indictment provides in full:

> During the course of his management of the Funds, ROTHENBERG regularly obtained money from investors after making representations to them about how he would use the investments in particular RVMC-managed Funds. ROTHENBERG regularly misused these funds in various ways and for various purposes, including to fund his personal business ventures (such as River Studios) and RVMC's substantial business expenditures. All the while, ROTHENBERG employed various deceptive acts and practices to hide his misappropriation and misuse of investor funds, including by commingling money and by moving money between various entities and bank accounts (including ROTHENBERG's personal accounts) whenever those funds were needed for particular purposes, all without regard to the true ownership of such money.

Following the outline of the Indictment, the Indictment then alleges various specific instances and accompanying counts that are parts of Rothenberg's plan to defraud. Counts 1 to 4 (and indeed, counts 5 to 23) describe specific instances of Rothenberg employing "various deceptive acts and practices to hide his misappropriation and misuse of investor funds, including by commingling money and by moving money between various entities and bank accounts (including ROTHENBERG's personal accounts)." Dkt. 15, ¶ 25.

Specifically, counts 1 and 2, as laid out in the Indictment, allege that Rothenberg defrauded Silicon Valley Bank in 2014 "by moving money between various entities and bank accounts (including ROTHENBERG's personal accounts)" to create bank statements that gave Silicon Valley Bank the impression that Rothenberg had personal wealth sufficient to justify issuing Rothenberg two loans. Dkt. 15, ¶¶ 25; 28 (setting out transactions between various of Rothenberg's personal bank accounts). One of those two loans was specifically meant to be used to continue Rothenberg's overarching plan to defraud investors in his four annual funds by generating money "to help satisfy his capital commitment to the 2014 Fund as a general partner." *Id.* ¶ 28.a. Therefore, the Indictment indicates that, in 2014, Rothenberg was unable to keep at least the 2014 Fund operating (through his general partner contribution) without resorting to the type of actions alleged in Paragraph 25 of the Indictment. It is thus both "readily apparent" and "reasonably inferred" from the face of Indictment that Counts 1 and 2 are part of Rothenberg's overarching plan to defraud. *Jawara*, 474 F.3d at 579.

Counts 3 and 4 are also clearly part of Rothenberg's plan to defraud investors in his various Funds. These counts allege that Rothenberg defrauded Silicon Valley Bank a second time in 2015, and those allegations clearly show that this was part of his overarching plan to defraud investors in his various annual Funds. In particular, the Indictment's allegations show that Rothenberg facilitated his overarching plan to defraud by obtaining a $4 million line of credit secured by $4.25 million as cash collateral purportedly obtained from prepaid fees to Rothenberg's management company from investors in the 2015 Fund. *See* Dkt. 15, ¶ 33 (describing Rothenberg's acts and misrepresentations).

The Indictment alleges that the cash collateral in fact came from money investors gave Rothenberg believing it would be invested in the 2013, 2014, 2015, and 2016 Funds. *See id.* The Indictment makes clear that Rothenberg cobbled together the $4.25 million cash collateral "from the bank accounts of the 2013 Fund and the 2014 Fund and from the capital contributions of recent investors to the 2015 Fund and the 2016 Fund." *Id.* ¶ 33.d. Furthermore, as the Indictment alleges, beyond backfilling the $6 million Rothenberg had inappropriately taken out of the 2015 Fund, "one purpose of obtaining the line of credit from SVB was to obtain funds to place in the 2015 Fund's bank account so that he could have RVMC issue year-end Schedule K-1s to 2015 Fund investors that falsely led those investors to believe that RVMC had not taken funds in excess of those authorized under the 2015 Fund's operating agreements." *Id.* ¶ 33.c.

Finally, the Indictment alleges that Rothenberg later paid back the 2013 Fund and the 2014 Fund bank accounts drawn down to form part of the $4.25 million cash collateral by defrauding another victim, as set out in counts 5 through 9 of the Indictment. *See* Dkt. 15 ¶ 38 (describing Rothenberg's acts and misrepresentations). In particular, the Indictment alleges that in January and February 2016, Rothenberg solicited funds from P LLC purportedly for investment in River Studios. *See id.* ¶ 38.a and d. It further alleges that "Because neither RVMC nor the 2015 Fund had the cash on hand to fund [the $4.25 million] collateral account, ROTHENBERG assembled funds from various sources, including from the bank accounts held in the names of the 2013 Fund and the 2014 Fund." *Id.* ¶ 38.e. This repeats what has been described above with respect to how counts 3 and 4 are part of Rothenberg's overall scheme to defraud. However, the Indictment goes further, noting that:

> ROTHENBERG knew that these withdrawals from the 2013 Fund and the 2014 Fund were inappropriate and that he therefore needed to repay the funds he had taken from the 2013 Fund's and 2014 Fund's bank accounts. In January and February 2016, ROTHENBERG knew that any funds that River Studios received from P LLC would be used to make these repayments. Indeed, on the same day that River Studios received P LLC's $2 million investment, ROTHENBERG caused those funds to be used to repay in part or in full the funds that he had taken from the 2013 Fund and the 2014 Fund bank accounts in December 2015.

*Id.* The Indictment then alleges counts 5 to 7 based on this part of Rothenberg's scheme, and in counts 8 and 9, the actual repayments of the misappropriations from the 2013 Fund and the 2014 Fund (that form part of counts 3 and 4) are charged. *See id.* ¶¶ 39-41.

These acts and misrepresentations are specific instances of Rothenberg employing "various deceptive acts and practices to hide his misappropriation and misuse of investor funds, including by commingling money and by moving money between various entities and bank accounts (including ROTHENBERG's personal accounts)." *Id.* ¶ 25. It is thus both "readily apparent" and "reasonably inferred" from the face of Indictment that Counts 3 and 4 are part of Rothenberg's overarching plan to defraud. *Jawara*, 474 F.3d at 579.

Accordingly, because counts 1 to 4, as well as counts 5 to 23, all "constitute parts of a common scheme or plan," Fed. R. Crim. P. 8(a), joinder of every count in the Indictment is proper. For this reason alone, Rothenberg's Motion to Sever should be denied. But, as described below, there are additional compelling reasons to deny Rothenberg's motion.

**C.   Every Count In The Indictment – Including the Four Rothenberg Seeks To Sever – Are Of The Same Or Similar Character To One Another.**

The second way counts can be properly joined is if they are "of the same or similar character" as other counts in an indictment. Fed. R. Crim. P. 8(a). In making such a determination, the parties agree that the Ninth Circuit has adopted a "comprehensive review" that looks at "the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims." *Jawara*, 474 F.3d at 578. These factors weigh in favor of joinder.

To begin, the statutory offenses charged and their elements are "of the same or similar character." Fed. R. Crim. P. 8(a). All of the counts alleged are variants of fraud. Even though the

counts address slightly different types of fraudulent conduct, there is no meaningful difference in character between bank fraud, false statements to a bank, wire fraud, and money laundering.  All relate to the acquisition of money through the making of false or misleading statements (or omissions, as appropriate), or to transactions involving ill-gotten money after it has been so obtained.  This case is not like cases in which a court found misjoinder of disparate counts, such as with, for example, a firearm charge and a drug charge, charges which share no overlap.  *See, e.g., Terry*, 911 F.2d at 276 ("The drug crimes referred to in Counts I and II are wholly different from the possession of a firearm charge in Count III.").  In fact, the Ninth Circuit has upheld the joinder of statutes with less in common than the fraud statutes charged here.  *See, e.g., United States v. Fiorillo*, 186 F.3d 1136, 1145 (9th Cir. 1999) (per curiam) (joinder of charges relating to wire fraud, improper hazardous waste practices in violation of the Resource Conservation and Recovery Act, and improper receipt of explosives); *United States v. Kaplan*, 895 F.2d 618, 621 (9th Cir. 1990) (joinder of counts relating to physician-defendant's controlled substance prescription practices and the filing of false insurance claims); *Edwards v. Squier*, 178 F.2d 758, 759 (9th Cir. 1949) (joinder of counts relating to transport of a stolen vehicle, in violation of the Motor Vehicle Theft Act, and transport of stolen securities, in violation of National Stolen Property Act, that occurred on the same day).

As to the elements of the crimes, Rothenberg, to his credit, acknowledges that "wire and bank fraud have the same general elements," and yet argues that because wire fraud requires a wire and bank fraud requires an FDIC-insured bank that they should be severed.  Dkt. 87 at 4-5.  Surely those two elements – often stipulated to by the defense in criminal trials because of the incontrovertible nature of the proof on such elements – cannot override the main thrust of each charge set out in the other core elements: a scheme to defraud, the specific intent to defraud, and material misrepresentations.  To do otherwise would "fail to give effect to the word 'similar' succeeding the word 'same' [in the phrase 'of the same or similar character,'] and thus violate an elementary rule of statutory construction."  *Edwards*, 178 F.2d at 759.  It is correct to note the elements are not exactly the same; it is incorrect to determine they are not similar.

So too with Rothenberg's attempt to distinguish between the bank fraud and false statements to a bank charges because they have different elements, including as to materiality.  *See* Dkt. 87 at 4 (*citing*

*United States v. Nash*, 115 F.3d 1431, 1438 (9th Cir. 1997) ("Although there are probably few cases of bank fraud that do not involve making a false statement to a federally insured institution, section 1014 requires that the statement be made to influence action on a loan. The bank fraud statute, which is written more broadly, technically does not.")). Rothenberg's implausible argument with regard to these counts would lead to a requirement of separate trials for counts 1 and 2, even though counts 1 and 2 are based on the exact same set of facts. And then again for counts 3 and 4, which are also based on their own exact same set of facts. Rothenberg's argument should fail.

Next, the factual assessments that the Ninth Circuit has considered when assessing whether counts are "of the same or similar character" – the temporal proximity of the acts, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims – when weighed are neutral as to joinder. *See Jawara*, 474 F.3d at 578. Foremost, the United States acknowledges that the physical location of the acts does vary between all of the charges in the Indictment, although there are some commonalities: many of Rothenberg's acts were undertaken at either Rothenberg's home or his company's headquarters. *See* Dkt. 15 ¶¶ 1, 3. Second, the United States acknowledges that the identity of the victims varies as well, although Silicon Valley Bank is a victim in counts 1 through 4 and is a material and important witness to counts 19 through 23. *See id.* ¶¶ 26-35; 46-49. The modus operandi of the crimes alleged in counts 1 through 4 mirror one another, linking them together to some extent. In both instances, as set out in the Indictment, Rothenberg showed a strong desire to have an end-of-month and an end-of-year bank statement show figures he wished to use to further his fraudulent schemes, and the Indictment alleges the considerable steps Rothenberg took to do so for Counts 1 to 4. *See id.* ¶¶ 28-35.

Finally, as to temporal proximity of the acts alleged in the various counts, as set out in the Indictment, they are overlapping. It is true that the acts forming the basis for counts 1 and 2 took place in July and August 2014. *See id.* ¶¶ 26-30. The acts alleged in counts 3 and 4 in December 2015 are perfectly in sync with counts 19 to 22, which are also in December 2015, as these were part of the same acts and transactions. *See id.* ¶¶ 30-35; 46-49; *see infra* Section D below. Counts 5 to 11 occurred in February 2016, but the predicate acts, as alleged in the Indictment, began in October 2015, before the dates set out for counts 3 and 4 and 19 to 22. *See id.* ¶¶ 36-41; 26-35; 46-49. Counts 12 to 15 take place

UNITED STATES' OPP. DEF'S MTN. SEVER     7
20-CR-00266 JST

in July 2016.  *See id.* ¶¶ 42-45.  Counts 16 to 18 reach back to April and July 2015, again overlapping with counts 3 to 15.  *See id.* ¶¶ 46-49.  Finally, count 23, the most recent of the charges, occurred in July 2016.  See id.  All told, the Indictment sets out a pattern of allegedly fraudulent behavior every few months by Rothenberg beginning in July 2014 and continuing for two years to July 2016.  There is no requirement that joined counts be on the same date; it is enough that they are similar and sensible in the context of a pattern of conduct.  *See, e.g., United States v. Anderson*, 642 F.2d 281 (9th Cir. 1981) (holding joinder of narcotics conspiracy count and tax counts over at least two tax years was proper because they were "based on the same series of events.  The narcotics conspiracy generated a large income.  The discrepancy between Anderson's actual income and his reported income for 1976 and 1977 created the deficiency which formed the basis for Counts II and III, and supplied a logical relationship between the counts."); *United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970) (upholding joinder of counts charging racketeering and securities fraud with counts charging income tax fraud spread out over four years).

      In sum, the factors set out by the Ninth Circuit to determine whether counts are "of the same or similar character" under Rule 8(a) as other counts in the Indictment leads to a balancing exercise.  On the one hand, the charges in the Indictment and the elements of those charges weigh in favor of joinder.  On the other hand, the series of factual contentions conflict with one another and are therefore neutral as to joinder.  Such a balancing, in the view of the United States, leads to the conclusion that all of the counts in the Indictment are "of the same or similar character" as other counts in the Indictment, and that they are therefore properly joined under Rule 8(a).  For this reason alone, Rothenberg's Motion to Sever should be denied.  But, as described below, there are additional compelling reasons to deny Rothenberg's motion.

      **D.**    **Counts 3 and 4 Are Based On The Same Acts or Transactions as Counts 19 to 22.**

      In addition to everything described above, counts 3 and 4 in particular are also clearly "based on the same act or transaction" alleged in counts 19 to 22.  Fed. R. Crim P. 8(a).  As noted above, counts 3 and 4 allege that Rothenberg defrauded Silicon Valley Bank a second time as part of his overarching plan to defraud investors in his various Funds.  In particular, the Indictment alleges that Rothenberg facilitated his overarching scheme to defraud by obtaining a $4 million line of credit secured by $4.25

UNITED STATES' OPP. DEF'S MTN. SEVER    8
20-CR-00266 JST

million in cash as collateral that was purportedly obtained from prepaid fees to Rothenberg's management company from investors in the 2015 Fund.  *See* Dkt. 15 ¶ 33 (describing Rothenberg's acts and misrepresentations).  The Indictment makes clear that Rothenberg cobbled together the $4.25 million cash collateral "from the bank accounts of the 2013 Fund and the 2014 Fund and from the capital contributions of recent investors to the 2015 Fund and the 2016 Fund."  *Id.* ¶ 33.d.

The "recent investors of the 2015 Fund and the 2016 Fund" are those investors described in counts 19 to 22.  As the Indictment spells out, "instead of using their money for investments, ROTHENBERG used all or part of the funds provided by several 2016 Fund investors in late 2015 to fund the collateral account that he had established at SVB in December 2015, *as described in Paragraph 33*, which secured the 2015 Fund and was not an investment set out in the documents ROTHENBERG and RVMC provided to the investors."  *Id.* ¶ 48.d (emphasis added).  In particular, counts 19 to 22 set out transactions related to the particular victims whose money was commingled with money from the 2013 and 2014 Funds to form the $4.25 million cash collateral used to secure the $4 million line of credit from Silicon Valley Bank described in counts 3 and 4.  It is thus both "readily apparent" and "reasonably inferred" from the face of Indictment that counts 3 and 4 are based on the same acts or transactions alleged in counts 19 to 22.  *Jawara*, 474 F.3d at 579.

Accordingly, because counts 3 and 4 are "based on the same act or transaction" alleged in counts 19 to 22, Fed. R. Crim. P. 8(a), joinder of these counts in the Indictment is proper.  For this reason alone, Rothenberg's Motion to Sever should be denied.

Finally, aggregating all of the above analysis shows the propriety of joinder of all of the counts in the Indictment, particularly in light of the fact that Rule 8 has been "broadly construed in favor of initial joinder...."  *Friedman*, 445 F.2d 1082.  Counts 1 to 4 are part of a common scheme or plan with counts 5 to 23; all of the counts in the Indictment are also of the "of the same or similar character"; and counts 3 and 4 specifically are "based on the same act or transaction" as counts 19 to 22.  Rothenberg's Motion to Sever should therefore be denied.

## II. NO COUNTS IN THE INDICTMENT SHOULD BE SEVERED UNDER RULE 14.

Even if counts are correctly joined initially under Federal Rule of Criminal Procedure 8(a), a court may still sever the counts under Federal Rule of Criminal Procedure 14. In his motion, Rothenberg readily admits that he has not fully assessed whether he might suffer any prejudice from the joinder of the counts in the Indictment. *See* Dkt. 87 at 6. It is the position of the United States that Rothenberg's motion should be denied without prejudice as to Rule 14 on that ground alone, in that it does not squarely present a comprehensive Rule 14 argument for the United States to respond to nor does it present information sufficient for the Court to make a decision. Nonetheless, to the extent that Rothenberg's motion does present a Rule 14 argument, the United States asserts that it is unavailing, as described below, and therefore the Motion to Sever should be denied in its entirety.

### A. The Legal Standard Is Severance Only for Manifest Prejudice.

Pursuant to Federal Rule of Criminal Procedure 14, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Accordingly, "although claims under Rule 8(a) and Rule 14 present different questions, it is clear that there is no error under either rule if joinder was not prejudicial." *United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016).

The Ninth Circuit has interpreted Rule 14 to allow a court to sever charges only if the joinder is "manifestly prejudicial." *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987) (quoting *United States v. Seifert*, 648 F.2d 557, 563 (9th Cir. 1980)). "The prejudice must have been of such magnitude that the defendant's right to a fair trial was abridged." *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir.), *opinion amended on denial of reh'g,* 798 F.2d 1250 (9th Cir. 1986). The defendant has the burden of proving that the joint trial was manifestly prejudicial. *See United States v. Irvine,* 756 F.2d 708, 712 (9th Cir. 1985) (per curiam); *United States v. Bronco,* 597 F.2d 1300, 1302 (9th Cir.1979).

A trial judge's refusal to sever under Rule 14 is reviewed for abuse of discretion. *See Jawara*, 474 F.3d at 572; *Parker v. United States*, 404 F.2d 1193, 1194 (9th Cir. 1968).

### B. Rothenberg's "Garden Variety" Concern About Spillover Because Of The Number Of Counts Does Not Establish Prejudice.

Rothenberg argues that because he is charged with 23 counts in the Indictment, he is at risk of having the jury consider him to be bad and thus convict him improperly. *See* Dkt. 87 at 5-6. He then predicts that a jury would not heed the Ninth Circuit's Model Instruction 3.11 concerning separate consideration of multiple counts and concludes that he will therefore be prejudiced. *See id.* at 6. Rothenberg has not established prejudice on these conclusory allegations.

The First Circuit recently addressed arguments similar to Rothenberg's in *United States v. Zimny*, 873 F.3d 38 (1st Cir. 2017). In that case, the defendant was charged with a similar panoply of charges as Rothenberg: counts 1 through 5 charged Zimny with wire fraud; counts 6 through 10 charged Zimny with engaging in unlawful monetary transactions; counts 11 and 12 charged Zimny with filing false tax returns; and counts 13 and 14 charged Zimny with bank fraud. *See id.* at 58. He moved to sever just the bank fraud counts, and his motion was denied. After trial and conviction on some counts, he contended on appeal that severance was improperly denied to him under Rule 14 because "the government's decision to present 'a general course of fraudulent conduct by Zimny[ ] creat[ed] an unacceptable likelihood that his conviction on the other counts [was] influenced by propensity evidence and arguments.'" *Id.* at 61. But the First Circuit made clear that that generic allegation will not establish prejudice: "such '[g]arden-variety arguments of spillover ... without more, are insufficient to require severance.'" *Id.* (quoting *United States v. Edgar*, 82 F.3d 499, 505 (1st Cir. 1996)). Rothenberg's allegation of prejudice because he is charged with 23 counts is precisely the "garden variety" type of spillover argument that should be rejected. *See, e.g., United States v. Butler*, 429 F.3d 140, 147 (5th Cir. 2005) (holding that the fact that defendant was charged with 69 counts in the indictment is not so prejudicial in and of itself to warrant severance of offenses).

### C. Rothenberg's Undeveloped Concerns About The Improper Admission Of Evidence Do Not Establish Prejudice.

Rothenberg also speculates that the concern of inadmissible proof of one offense being admitted through another joined offense is "potentially implicated" in this case, although he acknowledges that "defense counsel is still reviewing the voluminous discovery and determining a potential trial strategy." Dkt. 87 at 6. As an initial point, the United States contends that Rothenberg's presentation of this

UNITED STATES' OPP. DEF'S MTN. SEVER    11
20-CR-00266 JST

potential prejudice is so undeveloped that it is difficult to rebut and thus should be denied.

Nonetheless, it is the United States' position that most or all of the evidence that would be introduced in a trial of just counts 5 to 23 would also be admissible in a trial of counts 1 to 4, and vice versa. This position is based on the fact that the events and circumstances of all of the counts are inextricably intertwined with one another, and that presenting a case against Rothenberg necessarily will require discussing most or all of his alleged wrongdoings over the two-year period set out in the Indictment. For example, the Indictment alleges that one of Rothenberg's motives in committing the crimes described in counts 5 to 7 was to repay the money he had misappropriated in the bank fraud scheme described in counts 3 and 4, and that Rothenberg in fact took the money he obtained from the victim in counts 5 to 7 and repaid the 2013 and 2014 Fund bank accounts partially emptied in counts 3 and 4. Thus, evidence as to all of those acts would be introduced in each trial. There are many more similar examples of this principle.

In the alternative, even if some slight evidence might be shaved off of the United States' case-in-chief in each trial by splitting the trials, the United States believes that a significant amount of that evidence would nonetheless be admitted in both of the two proposed trials under Federal Rule of Evidence 404(b). The fact that Rothenberg took many of the acts described in the Indictment would go proving motive, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, as the case may be for each piece of evidence.

The United States further asserts that at least some of the same witnesses would have to testify in both trials. For example, representatives from Silicon Valley Bank would be required for both trials (as victims in counts 1 to 4 and as witnesses for counts 5 to 7 and 19 to 22). Similarly, the victims outlined in counts 19 to 22 would likely testify as witnesses in a trial of counts 1 to 4. Further, the corporate victim's representatives who would be required to testify as to counts 5 to 7 might testify as witnesses in a trial of counts 1 to 4. Law enforcement agents, forensic accounting experts, and depending on Rothenberg's trial strategy, possibly many bank representatives would be required to testify in both trials as well.

Rothenberg may well disagree. However, it is clear that "[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." *Anderson*, 642 F.2d at

284. And for purposes of Rule 14, it is also clear that joinder is not prejudicial where "all of the evidence of the separate count would [still] be admissible upon severance." *Johnson*, 820 F.2d at 1070.

### D. Rothenberg's Musings About Whether He Might Testify Do Not Establish Prejudice.

Rothenberg also speculates that he might wish to testify on one count but not others if counts 1 to 4 remain joined to counts 5 to 23 of the Indictment, although he acknowledges that "defense counsel is still reviewing the voluminous discovery and determining a potential trial strategy." Dkt. 87 at 6. At present, however, Rothenberg has not made a sufficient showing to raise this issue. To justify severance on the grounds that a defendant wished to testify as to one count and remain silent as to another, "a defendant must make a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. To meet this standard, a defendant must present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine as well as to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." *United States v. Monteiro*, 871 F.3d 99, 108 (1st Cir. 2017) (internal quotation marks and citations omitted). Rothenberg has taken none of these steps. Furthermore, depending on the state of the evidence in each trial, it is not clear whether Rothenberg could successfully limit his testimony, in that the United States would unquestionably subject Rothenberg to cross examination about the full range of criminal acts of which he has been accused. Rothenberg thus cannot establish prejudice.

Since Rothenberg has not established prejudice of any kind, his Motion to Sever under Rule 14 should be denied.

### CONCLUSION

For all of the reasons stated above, the United States respectfully opposes the defendant's Motion to Sever Counts 1 to 4. All of the counts in the Indictment are intertwined and form an interrelated course of Rothenberg's fraudulent behavior between 2013 and 2016. The counts are all properly joined in the Indictment, Rothenberg will suffer no prejudice in a single trial, and severing any counts to create two duplicative trials would undermine the Court's interest in judicial economy and

effective use of governmental resources. The Supreme Court "has long recognized that joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *Lane*, 474 U.S. at 449. This Court should heed the federal system's preference for a single trial and deny Rothenberg's Motion to Sever in its entirety.

DATED: October 1, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

/s/
_____
KYLE F. WALDINGER
NICHOLAS J. WALSH
Assistant United States Attorneys