**Pages 1 - 28**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

```
UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
  VS.                            )    NO. CR 20-00266-JST
                                 )
MICHAEL BRENT ROTHENBERG,        )
                                 )
            Defendant.           )
_____ )
```

Oakland, California
Friday, October 22, 2021

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES:</u>**

For Plaintiff:

OFFICE OF THE UNITED STATES ATTORNEY
450 Golden Gate Avenue
San Francisco, California  94102
BY:  **KYLE F. WALDINGER**
**NICHOLAS J. WALSH**
**ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:

MOEEL LAH FAKHOURY LLP
1300 Clay Street, Suite 600
Oakland, CA  94612
BY:  **HANNI M. FAKHOURY, ESQUIRE**

Reported By:  Pamela Batalo-Hebel, CSR No. 3953, RMR, FCRR
Official Reporter

<u>**Friday - October 22, 2021**</u>                                    <u>**9:47 a.m.**</u>

**P R O C E E D I N G S**

**---oOo---**

**THE CLERK:**  We're now calling Criminal Action 20-0266, United States vs. Michael Brent Rothenberg.

Counsel, starting with the Plaintiff, please state your appearance for the record.

**MR. WALDINGER:**  Good morning, Your Honor.  Kyle Waldinger for the United States.

**MR. WALSH:**  Nicholas Walsh for the United States, Your Honor.

**MR. FAKHOURY:**  Good morning, Your Honor.  Hanni Fakhoury on behalf of Mr. Rothenberg.  He is present.  He's out of custody, Your Honor.

**THE COURT:**  Good morning.  We have several motions on calendar this morning.

It will take me just a second for my computer to finish booting up.

Anyway, there is a motion to sever Counts 1 and 4.  There is a motion to strike surplusage from the Indictment or alternatively for a bill of particulars.  There is a motion to dismiss Counts 1, 3, and 5 through 23 for failure to state an offense or alternatively to strike the omissions theory as insufficiently pleaded.

I'm happy to take argument on any or all of those motions.

1    It's really up to you.  I have read the papers thoroughly, and

2    so as I say, it's up to you.

3            **MR. FAKHOURY:**  Thank you, Your Honor.

4        Well, I guess I'll -- just to make a record here, I -- and

5    I can start -- I'll just start with the first one which was the

6    omissions theory motion that I raised, Your Honor.  And

7    effectively, I think the Government has conceded that it's

8    relying on an omissions theory for sort of like the second half

9    of the charges in the Indictment, whereas the first half, if we

10   could kind of split it that way -- I'm sort of using shorthand,

11   but I know the Court has read the papers so it's familiar with

12   the specific counts.

13       But the -- kind of the first tranche, if you will, of

14   charges, the Government is disclaiming an omissions-based

15   theory -- they've said that in their reply brief or their

16   opposition brief -- but are effectively saying half-truths and

17   omissions can still be the basis of a misrepresentation fraud.

18   And I think that is splitting hairs of a pretty fine degree.

19       And ultimately, Your Honor, I think that to the extent

20   that the -- again, sort of looking at the first half of the

21   Indictment -- to the extent that they are relying on

22   half-truths or incomplete information as opposed to an

23   affirmative misrepresentation, the Indictment needed to allege

24   a duty to disclose, which the Government admits it has not

25   alleged, and thus it's either the -- the Government just, quite

1    frankly, does not get to rely on an omissions theory to the

2    extent it's relying on one on those counts as the Indictment is

3    currently written, and alternatively, if the Court disagrees

4    with that and allows them to proceed that way -- and this is

5    maybe a conversation for a later day -- I feel the jury would

6    need to be, you know, instructed on a duty to disclose, but,

7    again, we can touch upon that later.

8            **THE COURT:**  I think there is no dispute between these

9    parties that there needs to be an appropriate jury instruction.

10           A very long time ago, I clerked for a federal judge.  He

11   was a Court of Appeals judge in Birmingham, Alabama.  And I

12   wrote a bench memo for him in a case, and I started by telling

13   him that there wasn't any authority in the Eleventh Circuit on

14   a particular point of law.  And he started that hearing, when

15   it got to be the appellee's turn, by saying, "Counsel, what's

16   your best case," knowing that there wasn't one.

17           I find myself in a similar situation right now.  So I just

18   want to ask you, what's your best case?

19           **MR. FAKHOURY:**  Absolutely, Your Honor.

20           My best case is -- I would say is *Shields* and *Spanier*.

21   *Shields* is the Ninth Circuit case that says a duty to disclose

22   is a prerequisite to an omissions-based theory of wire fraud or

23   any fraud statute under the federal code.  And in *Spanier*, the

24   Ninth Circuit said that that rule is not limited to cases where

25   the Government is relying solely on an omissions theory.  It

means in a case where the Government is alleging both misrepresentations and omissions, that duty to disclose is an element, period.  And so that's my best case, Your Honor.

In this Indictment with respect to Counts 1, 3 and 5 through 7, where the Indictment sort of hints at concealment of material facts -- that's the phrase it uses -- and the Government disclaims an omissions theory and it is clear that a duty to disclose is required, our view is, as to those counts, that concealment of material fact should be stricken from the Indictment, and at trial, if there is one in this case, the Government cannot rely on an omissions-based theory of fraud to prosecute on those counts.

**THE COURT:**  All right.

Mr. Waldinger?

**MR. WALDINGER:**  Yes, Your Honor.

I think it's true that we're splitting hairs because the cases split hairs, and I think that there are two lines of authority in the Ninth Circuit and elsewhere that define what fraud can be.

If you asked me what the Government's best cases are, I would also include *Shields* and *Spanier*, as well as the other unpublished decisions that we cited, *Farrace* and *Sumeru*, as well as *Woods*, *Beecroft*, and *Lustiger*.

The reason I start with *Shields* and *Spanier* is that *Shields*, as the Government noted in its footnote, didn't cite

1    the large body of law about schemes reasonably calculated to

2    deceive that are embodied *Lustiger*, *Beecroft*, and *Woods*, and

3    all of that line of cases shows that when a defendant makes

4    material misrepresentations, makes half-truths, and actively

5    conceals facts, that is affirmative fraud.

6          What *Shields* was dealing with and what the court in

7    *Spanier* was dealing with was something when the -- when the

8    defendant is not creating a scheme calculated to deceive

9    through affirmative actions or half-truths but simply failing

10   to act.  The Ninth Circuit has amended its wire fraud and mail

11   fraud instructions after the *Shields* case, and it talks about

12   there having to be a fiduciary or a trust-like relationship.

13         The other thing that I would say is that it sort of feels

14   like we're having a jury instruction conference right now in

15   terms of -- before the Court has heard the evidence.  And I

16   think what this motion really comes down to is what the

17   Indictment needs to say, and that's why the Government started

18   with the pleading standards in a case like this.

19         Under Ninth Circuit law, we're required to plead the

20   elements of the offense.  The fact that there may have to be a

21   required instruction regarding the duty to disclose does not

22   mean that all of the language in the instruction needs to be in

23   the Indictment.

24         I think here there's no doubt that the Government in each

25   of these counts has alleged each element of the wire fraud

1    offenses and each element of the bank fraud offenses, and there

2    is no Ninth Circuit case that says that we either have to

3    allege a duty to disclose or the factual basis for it.

4         The best cases that the Defendant has for having to allege

5    a duty to disclose are district court cases, and that primarily

6    is Judge Illston's decision in -- I'm not sure how they

7    captioned it at that time, the *Lonich* case or the *Cutting* case,

8    in which she required the Government to allege a duty to

9    disclose.

10        Based on that, the fact that Judge Illston made that order

11   in that case, out of an abundance of caution, we included "duty

12   to disclose" instructions or allegations in those counts in

13   which we believe that Mr. Rothenberg had a fiduciary or

14   trusting-like relationship.

15        The next question is whether we have to allege the basis

16   for that duty.  Again, no case in this circuit, no district

17   court case that's been cited, except for a case, I think, from

18   the Tenth Circuit, said that you have to allege the basis of

19   the duty.

20        In any event, we've done that.  The Indictment alleges

21   that Mr. Rothenberg purported to act in the best interests of

22   investors.  So we've done that here with respect to the

23   investment fraud counts that I think are Counts 12 through 23.

24        So unless Your Honor has any additional questions, I think

25   that's my presentation.

1    **THE COURT:**  I don't.  Thanks.

2    **MR. FAKHOURY:**  Your Honor, I will make one brief

3    reply, and then I'll move to the next motion.  And I think this

4    goes to the -- Mr. Waldinger's comment about this sort of being

5    a jury instruction battle.  I certainly think we are going to

6    have some jury instruction battles, but I actually think if we

7    take a step back -- and all of the motions, I think, have this

8    kind of common theme running through them which is that

9    ultimately the goal here is to get more clarity on what the

10   Government's case is.

11      Now, I -- it's a lengthy Indictment.  It's not a mystery

12   here what we're talking about.  The flip side of that is, as

13   the Government has acknowledged in other pleadings, there is

14   half a million documents in this case.  There is numerous

15   investors, numerous people identified in the Indictment, and so

16   part of this whole exercise is to get as clear as possible --

17      **THE COURT:**  You're going to have a little better luck

18   on that motion.

19      **MR. FAKHOURY:**  I appreciate that, Your Honor.

20      And so, you know, to the extent that the concerns on that

21   motion, which was about requesting a bill of particulars, I

22   think some of those themes carry through into this motion.

23   Again, the idea is, look --

24      **THE COURT:**  Are we doing that motion now?

25      **MR. FAKHOURY:**  We can --

1    **THE COURT:**  I'm just asking.  You're the one making

2    the argument.  You said you had more to say on this motion to

3    dismiss and then you wanted to talk about another motion.  I

4    just want to make sure I'm following the bouncing ball.

5    Just to be clear, the question I'm asking myself is not

6    what would be a good idea.  The question I'm asking myself is

7    what are the thresholds set by the Ninth Circuit.  The

8    Government has to meet a certain threshold.  It's kind of a

9    pass/fail thing.  If they meet it, then that's it.  Then

10   they've satisfied their obligations.

11   **MR. FAKHOURY:**  Well, on the omissions theory, I think

12   they've failed, at least with respect to Counts 1, 3, and 5

13   through 7 because they suggest an omissions theory but don't

14   allege the duty, and I think they've got to give more detail on

15   that, or if they truly are disclaiming reliance on it, abandon

16   it altogether.

17   I'll move to the other motion, Your Honor, that we've been

18   alluding to, which is the request to strike surplusage or for a

19   bill of particulars, and here I think the underlying issue is

20   we're dealing with a very complex case here with almost, as the

21   Government acknowledged -- almost half a million documents.

22   There's lengthy proceedings prior to us being before

23   Your Honor.  There is other proceedings before Your Honor in

24   the civil suit.

25   And so the -- I've made two specific requests.  One is

that to the extent that the Indictment is alleging aiding and

abetting, that the Government either identify who

Mr. Rothenberg aided and abetted or that they, again, can't

rely on that theory.  And then secondly with respect to

references in the Indictment to, quote/unquote, certain

investors, that they identify who those, quote/unquote, certain

investors are.

And in other parts of the Indictment, they speak with very

clear -- they clearly identify particular individuals alleged

to have been defrauded in the case.  And I can take that

Indictment, I can review it with Mr. Rothenberg, we can go

through the discovery, I can look for these corporations, these

limited partnerships and prepare a defense.  The problem is

then there is this other open universe of folks that I'm not

sure -- you know, are they an unindicted co-conspirator, are

they the person Mr. Rothenberg alleged -- allegedly aided and

abetted, and, of course, you know, for aiding and abetting, the

aider or abettor has to have the specific intent to defraud.

So the Indictment is not clear about that, and given -- as

I said in my reply brief, if this was a simple case with a

hundred pages of discovery, it may be unnecessary for more

particularity.  I think in this kind of case where even the

Government has alluded to in a footnote four different civil

lawsuits in state court as well as the discovery they've

produced as well as the civil SEC suit, I need more clarity,

1    and I think Mr. Rothenberg is entitled to more clarity as to

2    what specific actors he has to investigate, prepare for, deal

3    with, and the Government has that information.  It can provide

4    that information.  And if they don't want to provide that

5    information, then so be it, but then they should disclaim an

6    aiding and abetting liability and they should not be permitted

7    to introduce evidence regarding, quote/unquote, certain

8    investors without identifying who those investors are.

9              **THE COURT:**  Give me just one moment.

10                   (Pause in proceedings.)

11             **THE COURT:**  Mr. Waldinger, in *Loayza*, the Fourth

12   Circuit held that an Indictment provided enough information

13   about unnamed victims where the Indictment included the number

14   of unnamed investors that had been defrauded, the amount of

15   money involved, the dates and amounts of the checks, and the

16   identification of the investment company that sent the checks.

17   In *Lonich*, which is the case you were referring to a moment

18   ago, they didn't have all that, and those cases turned out

19   differently from each other, I think for that reason.

20        With regard to the "certain investors" or "potential

21   investors" part of the Indictment, aren't you kind of in *Lonich*

22   territory?

23             **MR. WALDINGER:**  In terms of -- Your Honor, in terms of

24   needing to have greater specificity?  Is that what you're

25   talking about?

1      **THE COURT:**  Well, I'll determine whether there is a

2  need but right now there isn't.  That's my question.  Doesn't

3  your Indictment on this issue resemble the pleading in *Lonich*?

4      **MR. WALDINGER:**  The pleading in *Lonich* was related to

5  duty to disclose, and I'm not familiar with the part of *Lonich*

6  where they were talking about needing to identify investors.

7      **THE COURT:**  Well, maybe it's an error in my notes.

8  Let me find it.  There could also be more than one *Lonich*.

9  That's possible.

10     The one I'm looking at was decided on January 27, 2016.

11  It is an unpublished case.  It appears at 2016 WL 324039.

12     **MR. WALDINGER:**  I'm sorry.  I didn't print that one

13  out, Your Honor.

14     **THE COURT:**  That's all right.  It sounds like I

15  created some confusion.

16     Anyway, Judge Illston says here, "Counts 1 and 3 through 8

17  charge that defendants engaged in a material scheme to defraud

18  Sonoma Valley Bank and others." and it was the phrase "and

19  others" that was at issue, "and to obtain money from Sonoma

20  Valley Bank and others.  Unlike the Indictment in *Loayza*, which

21  charged mail fraud related to 11 investors, the Indictment here

22  is open-ended and unclear as to the number of victims.  The

23  Court finds that under these circumstances, it is appropriate

24  to strike 'and others' from these portions of the Indictment.

25  If the Government wishes to supplement the Indictment with

1  additional information about the victims, it may do so.  The

2  Court notes that the Government may add more information about

3  the victims without identifying them by name as the Indictment

4  did in *Loayza*."

5          **MR. WALDINGER:**  Right.  I see, Your Honor.

6          **THE COURT:**  I'm sure there is going to come a day when

7  I'm going to disagree with something that Judge Illston has

8  written, but it hasn't happened yet.

9          **MR. WALDINGER:**  Right.  I mean, I don't have, you

10 know -- I have to fall back on what the pleading standards are

11 here and the fact that, you know, we have produced what we have

12 in terms of the solicitations that Mr. Rothenberg sent out to

13 investors.  I would say --

14         **THE COURT:**  Let's do like a high/low.  "Like" is not a

15 very judicial word.  Let's do a high/low.  Let's assume, to

16 pick up on Mr. Fakhoury's hypothetical, that the discovery

17 consisted of a hundred pages and in it was identified one

18 victim.

19         First of all, you would have already repeated that fact

20 four times to me in your argument.  And the -- but the reason

21 you would have done that is because that's a winner set of

22 facts for you, and it emphasizes the point that the Government

23 always makes in these fights, which is "we've provided enough

24 discovery to the defendant to allow them to defend this case so

25 leave us alone."

1    Now, I don't know the number of potential victims that are

2  identified in the discovery in this case.  There doesn't seem

3  to be any dispute about the size of the discovery.  It seems to

4  be very large.  So hypothetically, let's say that there were --

5  that there were outward communication, either from the

6  Mr. Rothenberg or from one of his entities, to 700 potential

7  investors.  One might wonder whether simply providing a lot of

8  discovery to his lawyer was adequate to allow him to defend the

9  trial, but since I actually have no idea what the number of

10  potential investors is, I can't even get that far in the

11  analysis.  So Judge Illston's reasoning has some appeal to me.

12          **MR. WALDINGER:**  I understand where Your Honor is

13  going.  What I would say is the Indictment alleges -- I think

14  it's around 12 or 13 investors --

15          **THE COURT:**  It does.

16          **MR. WALDINGER:**  -- who were victims.  The intent of --

17  certainly the allegation regarding certain investors applies to

18  them, applies to the ones who have been named, and, frankly,

19  the -- the allegation of -- about certain investors was meant

20  to make sure that we were able to present evidence.

21    Maybe it's not going to be testimony from investors.  It's

22  going to be testimony of what went out to investors.  But I --

23  you know, I think this Indictment has a large level of

24  specificity with respect to particular misrepresentations that

25  are made to particular investors, and that's often -- it's

1    found in paragraphs 44, 47, 48.

2            **THE COURT:**  Are you able to say this morning how many

3    certain investors or potential investors are contained within

4    the discovery that has been provided to the Defendant?

5            **MR. WALDINGER:**  I'm sorry.  I did not do that

6    preparation.

7            **THE COURT:**  Even at an order of magnitude?

8            **MR. WALDINGER:**  I mean, we're talking probably a

9    couple of hundred.

10           **THE COURT:**  Yeah.  Okay.

11           **MR. WALDINGER:**  So it's a lot.

12       I mean, one of the things -- I'm not trying to play coy

13   with Your Honor, but one of the things that I'm concerned about

14   is that we have our Indictment, but the rules don't require us

15   to have finished our investigation before we get the Indictment

16   from the grand jury.

17           **THE COURT:**  They also don't prohibit you from amending

18   the Indictment.

19           **MR. WALDINGER:**  That's true.  But the case is charged

20   in such a way that we continue our investigation, and so, for

21   example, we've interviewed an investor who we didn't talk to

22   until after the Indictment, and we've produced that report, and

23   we are going to be continuing to do that.  So I'm reticent --

24   if we are talking about a bill of particulars here, I'm

25   reticent about the Government identifying a bunch of investors

1    and then we go out and talk to another investor in three months

2    and we get an argument from counsel that well, that guy was not

3    in your bill of particulars.

4              **THE COURT:**  Do you have a trial date in this case?

5              **MR. WALDINGER:**  We don't.

6              **THE COURT:**  And I fail -- I'm just not seeing what the

7    problem is.  You're not in a position to be what I would call

8    "finally specific" yet.  The Defendant is -- has no idea who

9    the certain investors are or potential investors are nor has

10   anybody suggested that he could make that determination easily

11   from the discovery.  I don't know if that representation could

12   be made with a straight face, but no one is making it.

13       The Government is continuing its investigation.  It will

14   have the opportunity to file a Superseding Indictment.  There

15   is no trial date in this case.  If they did that, I'm at a loss

16   to understand what prejudice argument Mr. Fakhoury could make.

17   And so I just see this as a narrowing process going forward.

18       I mean, I sort of -- I don't mean to belabor the point

19   because I've already indicated where the Court is tentatively,

20   but to the extent -- I guess what I would say is to the extent

21   the Government knows who those people are, as Judge Illston

22   said, it doesn't have to identify them by name, it can provide

23   the Defendant with an opportunity to identify the particular

24   transactions because if the Court never imposes that

25   obligation, then it's not until the eve of trial when the

1    Government discloses its witness list that the Defendant

2    finally learns what other transactions are at issue beyond

3    those involving the victims identified, for example, in Counts

4    5 through 7 or 12 through 15 -- as you've said, some of the

5    victims are identified.  And then all that's going to happen is

6    the Defendant will file a motion to continue.

7         **MR. WALDINGER:**  I -- I get all that, Your Honor.

8    Again, my concern is about being jammed up and being

9    pigeonholed into a position.  If Your Honor is saying,

10   "Government, tell Mr. Fakhoury who you're thinking about when

11   you're talking about investors and certain investors and

12   potential investors," we can do that.  Of course, I didn't get

13   that question before this motion was filed, and so I'm

14   defending this, maybe incorrectly in Your Honor's view, under

15   what the law is and what we -- what we need to do.

16        **THE COURT:**  I think what Judge Illston says is what

17   the law is, at least in this district.  So -- okay.

18        **MR. WALDINGER:**  So there are two parts of that motion,

19   Your Honor.  If you want to --

20        **THE COURT:**  You notice I have been very light on you

21   on the other part of the motion.

22        **MR. WALDINGER:**  Yes.

23        **THE COURT:**  You can say -- you can respond, if you

24   like.

25        **MR. WALDINGER:**  I think the black letter law is for

1  us.  I think one of the things that you don't hear from the

2  Defense is the "causing" prong of the aiding and abetting

3  statute, and that's primarily what I think the Government is

4  going to rely on here.

5       In any event, we've done what the law requires, which is

6  to let Mr. Fakhoury know what our theories are, and it could be

7  causing liability, aiding and abetting, liability under (2)(a)

8  or as principal liability.

9       The Indictment -- the Indictment is clear of the different

10  ways that Mr. Rothenberg acted.  I think eight times I counted

11  the Indictment alleges that he caused or directed things to

12  happen and three times alleges that he either did things

13  personally or through others acting in his direction.

14       So I think the Government's theory is quite clear.  He ran

15  a business.  He is not going to do everything himself, and so

16  Mr. Fakhoury is well on notice that some of the things that

17  happened in this case happened because other people did what

18  Mr. Rothenberg told them to do.

19          **THE COURT:**  I think you sort of had me at "the black

20  letter law" --

21          **MR. WALDINGER:**  Okay.

22          **THE COURT:**  -- "is for me," which I'm tentatively

23  inclined to agree with.

24          **MR. FAKHOURY:**  Can I --

25          **THE COURT:**  Mr. Fakhoury, anything on -- you're going

1   to win the "certain and other investors" thing so you don't

2   need to talk about that further.

3        Do you want to talk about aiding and abetting?

4        **MR. FAKHOURY:**  Yes, I do.

5        On that point, all I would say is I understand the

6   Government's point about causing, and I understand that if the

7   Indictment alleges that Mr. Rothenberg -- let's use a

8   hypothetical -- Mr. Rothenberg submitted documentation to

9   Silicon Valley Bank, for example, and I understand that perhaps

10  the evidence will show that it wasn't Mr. Rothenberg, it was

11  someone else in the organization.  I don't necessarily have an

12  issue with that.

13       My issue is that this is a specific intent crime, and it

14  requires the intent to defraud, and aiding and abetting under

15  either prong requires the aider and abettor to have the same

16  specific intent of the underlying principle.  And if that's the

17  case, then whoever is acting -- submitting the documents to the

18  bank or to the investor has to necessarily have the same

19  specific intent of Mr. Rothenberg, which is the specific intent

20  to defraud, and that's a different sort of universe than a --

21  perhaps a general intent crime or a crime with no specific --

22  with no *mens rea* at all, which is pretty rare, but there are a

23  few.  And so that's the issue.

24       So I think for the same reasons that I have concerns about

25  who certain investors are, given the volume of material in the

1    case, I have the same concerns about aiders and abettors, and

2    that is specifically called out in the Indictment.

3        I understand that every Indictment assumes aiding and

4    abetting liability.  I don't -- that's the law.  It is what it

5    is.  But we don't typically see it delineated -- statutorily

6    listed in every Indictment.  In fact, in preparing this motion,

7    I went through all the other fraud cases I had, and not a

8    single one of them had a reference to 18 U.S.C. 2 or aiding and

9    abetting liability.  This one is different.

10       And while I appreciate the Government pointing that out a

11   little more -- a little more specific than they do in other

12   cases, given, again, the complexity of the case and the volume

13   of materials, I think this is a situation where "aiders and

14   abettors" is more like "certain investors" than it would be in

15   a more run-of-the-mill case.

16            **THE COURT:**  All right.

17            **MR. WALDINGER:**  Submitted, Your Honor.

18            **THE COURT:**  Very good.

19       Let's go to the last motion which is a motion to sever

20   Counts 1 through 4.

21       People always talk about splitting things as being

22   Solomonic.  That's actually not what King Solomon did.  He

23   threatened physical harm in order to figure out who the real

24   mother was.

25       But I think I'm likely to grant this motion as to Counts 1

1   and 2.  Those counts do not allege the use of these bank monies

2   in connection with the larger schemes to defraud that are

3   alleged against Mr. Rothenberg.  I think Counts 3 and 4 do tie

4   into those schemes.

5       I would just say as a side note, it's kind of interesting

6   to the Court because one of the other motions breaks out the

7   schemes a little differently, and so I'm not sure that the --

8   all the various briefs in their entirety are singing from the

9   same sheet of music.

10      But, anyway, that's the Court's tentative so I don't know

11  who wants to go first.  It's your motion, Mr. Fakhoury.  You

12  can go first.

13          **MR. FAKHOURY:**  Sure, Your Honor.  I'll be brief.

14      I obviously have nothing to add with regard to Counts 1

15  and 2.  I would just say if the Court is inclined to sever 1

16  and 2 from the remainder, I would ask the Court to include 3

17  and 4, at least to the extent that it includes overlap

18  regarding the identity of the victim, which is Silicon Valley

19  Bank, and to the extent that there is going to be overlapping

20  witnesses and all that.

21      One of --

22          **THE COURT:**  Can I say something about that because,

23  you know, I certainly went back and forth about this.  That

24  street really runs two ways.  On the one hand, you say in your

25  papers -- on the one hand, the Government is very clear about

1   the connection between Counts 3 and 4 and the other scheme, and
2   it's a good argument.  And then in your papers, you say, "Oh,
3   1, 2, 3, and 4 are very, very closely connected."  And there
4   was a decision path that I walked down for a little while that
5   said well, if 3 and 4 are clearly connected to the other counts
6   and the Defendant is conceding that 1 and 2 are connected to 3
7   and 4, maybe I shouldn't sever any of them.  So I say that --
8   obviously I could have gone the other way, too.  I could have
9   say 1, 2, 3, and 4 also are severed.
10      The Court has to decide which are the important
11  connections.  How important is that Silicon Valley Bank
12  connection?  I'm taking too long to make this point.  The only
13  point is it goes both ways.
14          MR. FAKHOURY:  And I'll say -- the only thing I will
15  say is I hear you, Your Honor, and I will submit on my briefs.
16  Thank you.
17          MR. WALSH:  Your Honor, that is where the Government
18  is at.
19          THE COURT:  Would you restate your name for the
20  record?
21          MR. WALSH:  Nicholas Walsh for the United States.
22          THE COURT:  Mr. Walsh.
23          MR. WALSH:  Your Honor, that is where the Government
24  is at.  Three and 4 are inextricably intertwined with the rest
25  of the counts, right?  That the victims in Counts 19 to 22 are

1   the ones that are funding the collateral for Counts 3 and 4.

2   As Your Honor has already identified, 3 and 4 are well-tied,

3   absolutely could not, I don't believe, be rationally separated.

4       And so where the Government's at is, yes, 1 and 2 are

5   loosely tied, but they are tied through all of the things you

6   were just saying, Your Honor.  That is where we are at.  It's

7   sort of a chain where this part of the chain is all

8   interlinked, and when you add that 3 and 4 chain, 1 and 2

9   should come with it, that those two counts do end up being part

10  of the overarching scheme.

11      The Indictment alleges that 1 and 2 -- Mr. Rothenberg

12  undertook 1 and 2 in order to make a payment, his general

13  partner contribution, into the funds, which are the subject of

14  the rest of the Complaint.  And so we do have the same victim,

15  you know, everything that Your Honor has already walked down,

16  and we urge Your Honor to revisit that thought process

17  because it really is --

18          THE COURT:  My focus -- I mean, this is very similar

19  to what I was saying to Mr. Fakhoury.  If I focus on Silicon

20  Valley Bank as the victim, that's actually not that great for

21  you.

22          MR. WALSH:  It's a factor.  It's not the totality of

23  the factors, I agree, Your Honor, but it is a situation in

24  which 3 and 4 are so clearly joined that we have to -- and when

25  there is a presumption in favor of joinder, whether there is a

benefit to severing those counts.  And here, as Your Honor

probably sees, with regard to Rule 14, the allegation of

prejudice is just not there.

As I see this determination, Your Honor, it's is there a

good reason to sever them?  Is there a good reason to keep them

together?  And there just is a good reason to keep them

together and there is not a good reason to separate them at

root.  It's not the legal standard, but that is sort of where

the cases come out, right?

This is not a case where we've charged a bunch of bank

fraud counts and then two counts of, you know, drug crime or

child pornography that are just wildly different and it would

prejudice the circumstance.  These are all of a kind, they're

all related to the same entities that are over a two-year span,

and they all do go together, and there is just no reason to

have more than one trial given the presumption in favor of

joinder.

MR. FAKHOURY:  Your Honor, the only thing I will add

is I think the Court's -- I think the Court's tentative is

right on, you know, listening to what the Court's saying,

right, and in the sense that 1 and 2 allege a scheme that

predates the other schemes alleged in the Indictment.

THE COURT:  By more than a year.

MR. FAKHOURY:  Correct.  And so I do not see at all

the link between 1 and 2 and everything else that comes after

1   it.  I have some -- 3 and 4 I hear the Court saying could go

2   either way so I'll just back off on that claim, but I think

3   with respect to -- the Government's suggestion of you walking

4   back your tentative, I think it's very clear 1 and 2 are very

5   discrete, separate, predates everything else that came after

6   it.

7        And so with that, Your Honor, I have nothing further to

8   add on that point.

9           **THE COURT:**  Mr. Walsh?

10          **MR. WALSH:**  Something has to happen first, right?  You

11  could have a similar argument, the last counts are the end and

12  they're not -- they're, of course, the last ones, right?  So

13  something has to begin, and in this case, those were the ones.

14  We presented the counts in chronological order.  We could have

15  presented them more intermingled but the dates are all over the

16  place and then the counts wouldn't line up so nicely.

17       Here we just went in chronological order, and the fact

18  that that time period is -- that the first counts happened

19  first is not somehow magical.  It's just that's the order of

20  what happened.

21       And I don't believe that that separation of time matters

22  in a case like this where the allegations are between 2013 and

23  2016.  There are a series of acts by the Defendant.  These

24  Counts 1 and 2 happen to be the first ones, but that's no

25  different than 16 and 23 happen to be the last ones.

1    With that, Your Honor, submitted.

2         **THE COURT:**  All right.  I'm going to take these

3    motions under submission.

4    Mr. Walsh, have you argued a motion to me before?

5         **MR. WALSH:**  I have not, Your Honor.

6         **THE COURT:**  I didn't think so.  Welcome.

7         **MR. WALSH:**  Thank you.

8         **THE COURT:**  I like this case.  It's a good case.  I

9    have already had lots of opportunity to hear from Mr. Fakhoury.

10   Mr. Waldinger and I are well-acquainted also.

11   So I'm likely to adopt these tentatives, but nothing is

12   final until it's issued in writing.  I will try to get

13   something out next week.

14   Can we set a next date in this case?  Do we have a next

15   date?

16        **MR. WALSH:**  We do not have a next date, Your Honor.

17        **THE COURT:**  Let's do that.

18        **MR. FAKHOURY:**  Your Honor, we had been speaking before

19   court about setting a status in either December or January.  My

20   preference would be January, and I think we were -- I would

21   propose January 21st.  I know the Government needed some time

22   to think through if that worked for them.

23        **THE COURT:**  I believe I'm free every Friday in

24   January.

25        **THE CLERK:**  You're correct.

1    **THE COURT:**  And on a status, it doesn't matter how

2  crowded the calendar is so you could pick any day.

3    **MR. FAKHOURY:**  And to explain why to ask for a little

4  bit more time, as the Court is well aware, there is --

5    **THE COURT:**  You had me at half a million pages of

6  discovery.  You can take the time you need.  You've got to be

7  ready to defend this case.

8    **MR. FAKHOURY:**  I appreciate that.

9    **THE COURT:**  I don't think -- any reviewing court would

10  give you whatever time you thought was reasonable.

11    **MR. FAKHOURY:**  Thank you, Your Honor.

12    **MR. WALDINGER:**  So January 21st is fine with the

13  Government, Your Honor.  Of course we would like an exclusion

14  of time.

15    **MR. FAKHOURY:**  And there is no objection to that.

16    **THE COURT:**  I think Mr. Fakhoury is going to be

17  reading all that discovery so I think that's appropriate for

18  effective preparation of counsel.

19    **MR. FAKHOURY:**  I totally agree, Your Honor.  Thank

20  you.

21    **MR. WALDINGER:**  I can't remember.  Does Your Honor

22  need a Speedy Trial Order on that --

23    **THE COURT:**  I do.

24    **MR. WALDINGER:**  Okay.

25    **THE COURT:**  Yes, please.

1        **MR. WALDINGER:**  I will do that as a stipulation with
2   Mr. Fakhoury.
3        **THE COURT:**  Okay.  Very good.
4       So January 21st at 9:30 a.m.
5       Mr. Garcia, is that Zoom or in-person date?
6        **THE CLERK:**  That is an in-person date.
7        **THE COURT:**  Very good.
8       Mr. Rothenberg, you are ordered to be personally present,
9   and I will look forward to seeing everyone then, and if I don't
10  see you before that, have a Happy Holidays.
11              (Proceedings adjourned at 10:26 a.m.)

1

2

3                          <u>CERTIFICATE OF REPORTER</u>

4              I certify that the foregoing is a correct transcript

5      from the record of proceedings in the above-entitled matter.

6

7      DATE:    Monday, December 6, 2021

8

9      *Pamela Batalo Hebel*

       _____
10     Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
       U.S. Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25