Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable JON S. TIGAR, Judge**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | No. Cr-20-266 JST |
| | ) | |
| VS. | ) | Friday, June 11, 2021 |
| | ) | |
| Michael Brent Rothenberg, | ) | Oakland, California |
| | ) | |
| | ) | MOTION TO DISMISS |
| Defendant. | ) | |
| _____ | ) | |

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

For Plaintiff:     **STEPHANIE HINDS, ESQUIRE**
Acting United States Attorney
1301 Clay Street, Suite 340S
Oakland, California  94612
**BY:  KYLE F. WALDINGER,**
**NICHOLAS WALSH,**
**Assistant United States Attorneys**


For Defendant:     MOEEL LAH FAKHOURY LLP
1300 Clay Street, Suite 600
Oakland, California 94612
**BY:  HANNI FAKHOURY, ESQUIRE**


Reported By:     Diane E. Skillman, CSR 4909, RPR, FCRR
Official Court Reporter


TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

| | |
|---|---|
| 1 | Friday, June 11, 2021                       10:08 a.m. |

```
 1   Friday, June 11, 2021                          10:08 a.m.

 2                    P R O C E E D I N G S

 3                            o0o

 4        THE CLERK:  Your Honor, now calling Criminal matter

 5   20-266 United States of America v. Michael Brent Rothenberg.

 6      If counsel could please state their appearances for the

 7   record, starting with the government.

 8        MR. WALDINGER:  Good morning, Your Honor.  Kyle

 9   Waldinger on behalf of the government.

10        MR. WALSH:  Good morning, Your Honor.  Nicholas Walsh

11   on behalf of the government as well.

12        MR. FAKHOURY:  Good morning, Your Honor.  Hanni

13   Fakhoury on behalf of Mr. Rothenberg.  He is present on the

14   Zoom, Your Honor.  I just think he has his video off and his

15   audio off, but he is present and he consents to a video

16   appearance this morning.

17        THE COURT:  All right.  Very good.

18      The Court will proceed by video.  I find that it is in the

19   interest of justice to do that.  We are still in the midst of

20   the COVID pandemic.  We are not able to conduct all of our

21   proceedings in person because of the number of people that

22   would be -- that we would have to bring to the courthouse to

23   do that.  That would present an unacceptable risk to the

24   parties, the lawyers, the Court, the staff, and the general

25   public, so we are going to proceed by video this morning.
```

```
 1        Mr. Rothenberg did raise his hand.  Mr. Rothenberg, I'm
 2   not sure why you raised your hand, but I would invite you to
 3   turn your microphone on and your video, and then I would
 4   actually confirm that you could hear me.
 5                  (Pause in the proceedings.)
 6        THE COURT:  Good morning, Mr. Rothenberg.  Can you
 7   hear me okay?
 8        THE DEFENDANT:  Yes, sir, I can.
 9        THE COURT:  Very good.
10   You had your hand up.  Is there something -- were you
11   having an issue of some kind?
12        THE DEFENDANT:  I was just, you know, joining to
13   watch -- or, you know, I'm just present.
14        THE COURT:  I see.  Very good.  Welcome to the
15   hearing.
16   The matter is on calendar this morning for the motion to
17   dismiss certain counts in the indictment.  I've read the
18   papers thoroughly.  Very well briefed on both sides I have to
19   say.  I actually enjoyed reading the papers, and I have not
20   confronted an issue exactly like this before.
21   Who will be arguing for the government this morning?
22        MR. WALDINGER:  That would be me, Your Honor,
23   Mr. Waldinger.
24        THE COURT:  Very good.  Good morning again,
25   Mr. Waldinger.
```

4

1      So, Mr. Fakhoury, I'll let you go first, and then I'll

2   hear from Mr. Waldinger, and then I'll let Mr. Fakhoury go

3   last because it's his burden on this motion.  And this

4   reflects the order of the briefs that were filed.

5      I'm going to ask you all to be relatively brief.  I'm not

6   going to set time limits.  I may interrupt you if I feel the

7   need to do that, but hopefully not.  And that's only because I

8   have so many other things on calendar this morning.

9      And, actually, I need a second.  I made some notes to

10   myself.  I am realizing now I don't have them up on my screen.

11   If you will give me a second.  These are my notes from last

12   night.

13           (Pause in the proceedings.)

14      Okay.  I think I'm ready.  Mr. Fakhoury.

15      **MR. FAKHOURY:**  Thank you, Your Honor.  I appreciate

16   that.

17      So I think as the Court sort of already indicated, this is

18   sort of an unprecedented situation in terms of the legal

19   issue.  And I know the Court said it never confronted this

20   issue before.  The Ninth Circuit doesn't seem to have

21   confronted the issue before, and to be frank --

22      **THE COURT:**  That's not exactly true.  There is a

23   memorandum disposition by the name of *Avery* that appears at

24   747 Federal Appendix 482 from 2018.  And it's a memorandum

25   disposition, so it's very summary in form.  But in that case

the Ninth Circuit held that an indictment was timely because

it related back to an earlier information, and the defendant

had quote, "received notice of the charges against him and

knew he would be called to account for certain activities and

should prepare a defense."

And the gist of that very short memorandum disposition,

which treats several topics and treats this one in just a few

sentences, is very similar to Judge Davila's order in the

*Holmes* case, so it's the same kind of reasoning.

Anyway, we did find that case in the Ninth Circuit.

**MR. FAKHOURY:**  Well, I wish I had found that.  It

would have made my job a little bit easier.  But in any event,

it is unpublished so obviously the Court will have to sort of

confront it on its own.  And, you know, I have read through

Judge Davila's opinion.  I've read through *Burdix-Dana*, the

Seventh Circuit opinion.

And I think what I would start by saying is, it's

unprecedented, at least in the sense that within the district,

prior to 2020 this seems to have not been done before in the

district.  Since Mr. Rothenberg's situation, it has not been

done in the district since.

And I start with that because I think it sort of shows we

are dealing with something that's sort of an outlier.

The other thing I would start by noting and I think it's

important is, in contrast to Judge Davila's case in the *Holmes*

1    decision as well as the case in front of Judge Chen, *Abouammo*,

2    in this specific case, the superseding -- well, the

3    information, the waiverless information, there was no original

4    indictment that had been filed previously.  So both in *Holmes*

5    and *Abouammo*, the government had obtained an indictment to

6    initiate the criminal prosecution, and then later, during the

7    pandemic at the time that the General Order had suspended

8    grand jury proceedings, sought a superceding information to

9    add additional counts to the indictment.

10       And that is not what happened here because, number one,

11   there was no original indictment at the time the information

12   was filed.  And number two, at the time the waiverless

13   information was filed, the grand jury was sitting and the

14   government could have indicted the case if it had chosen to do

15   so.

16       So those are, I think, important distinguishers from the

17   other cases in the District where -- the three instances in

18   the District where this has happened.  Again, I would point

19   out that this hasn't happened since then.

20       Now, as to the legal issue, I think we all agree that if

21   the waiverless information is invalid, count 16 and 17 are

22   late.  And so that's really the crux of the dispute.

23       And in terms of whether the waiverless information is

24   valid, again, we all sort of agree that it all hinges on what

25   does the word "initiate" [sic] mean for purposes of

Section 3282.

             **THE COURT:**   Institute.

             **MR. FAKHOURY:**   I'm sorry, Your Honor?

             **THE COURT:**   Institute.

             **MR. FAKHOURY:**   Institute.  Yes.  Sorry for saying that wrong.  What does the word "institute" mean?

    Really I think the heart of the debate is the government argues that to institute something means to file it, and then sort of it stays on hold to some degree.  And we believe that the word "institute" means you file something for the purpose of actually starting the criminal prosecution process.

    As we pointed out in the briefs, if Congress had wanted the statute of limitations to be tolled by the mere filing of a charging document, they would have in 3282 to match other statutes of limitation that use the word "filing" instead of "initiate."  And I think of the word "initiate" to be broader than the word "filed."

    Obviously something has to get filed, whether it's a complaint, an indictment, or an information, but once it is filed, the word "initiate" contemplates the broader process.  The defendant is brought to Court.  He has an attorney.  You know, deadlines are set.  Exclusions of time are placed on the record.  Bond conditions are agreed to.  The actual prosecution starts.

    The government's interpretation has the practical effect

1    of basically allowing it to unilaterally extend the statute of

2    limitations whenever it wants, for any reason whatsoever even

3    though Congress has carefully delineated statute of

4    limitation, and has provided processes by which the statute of

5    limitations can be tolled through a tolling agreement, which

6    there was one in this case.

7        And then the final point, Your Honor, is the other sort of

8    implication of the government's approach is that not only does

9    it get to unilaterally extend the statute of limitations

10   beyond what Congress contemplated, it also sort of gets to go

11   through the process of initiating and starting a criminal

12   prosecution without that kind of additional oversight that is

13   supposed to be attendant to any criminal prosecution through

14   any other means.

15       What do I mean by that?  Well, if the government files a

16   criminal complaint, there has to be --

17           **THE COURT:**  That's only true -- the thing that you

18   just said is only true if the government files an information

19   on the saddle of the statute of limitations.  Right?

20       Let's say it's a five-year statute.  The alleged crime is

21   committed on day one and the government files an information

22   on day 15.  Not incredibly realistic, I recognize that, but it

23   serves to make a point, which is the government then has four

24   years 350 days to do the lack of supervision thing that you

25   just said.  Right?

1          **MR. FAKHOURY:**  Well, yes, that would prove my point.

2     That would be that the statute of limitations doesn't get

3     tolled by the filing of the information.

4          **THE COURT:**  Well --

5          **MR. FAKHOURY:**  And that's really the problem.

6          **THE COURT:**  All -- this whole exercise that we are

7     undertaking this morning begs the question of what are the

8     daunting purposes of the statute of limitations, really and

9     making -- I want to make sure that I stay focused on what are

10    the true purposes of the statute of limitation and what are

11    sort of the collateral consequences of enforcing or not

12    enforcing the statute of limitation because the former is

13    going to have to be more important to the Court's analysis

14    than the latter, I think.

15       So let's talk about what I think we all agree is the core

16    purpose of the statute of limitations, and that is notice to

17    the defendant of what the crimes charged against him are so

18    that he can begin to prepare a defense and so memories don't

19    get stale and that sort of thing.

20       Now, in this case, I'm going to ask you whether something

21    makes a difference.  And the something is the fact that the

22    information in this case, as I understand it, was not filed

23    under seal.  And in *Sharma* and *Machado*, in both instances it

24    was filed under seal.  And in one of those cases, at least

25    one, I forget which one, the Court says, that's a problem

1    because the defendant is not actually on notice of the charges

2    against them.

3        And I think Mr. Rothenberg finds himself in a slightly

4    different situation.  So my question is, does that matter?

5            **MR. FAKHOURY:**  That -- does it matter that the

6    information was not filed under seal?

7            **THE COURT:**  Yes.

8            **MR. FAKHOURY:**  Just to clarify --

9            **THE COURT:**  Does it matter -- should it matter to the

10   Court's analysis that the information here was not filed under

11   seal?

12           **MR. FAKHOURY:**  No.  I don't think it should.  The

13   reason I say that is I certain recognize that notice is an

14   important purpose of the statute of limitations, but that is

15   not the only purpose of the statute of limitations.

16       Statute of limitations is also designed to ensure beyond

17   notice that a claim or a prosecution happens in a timely

18   manner so the defendant is not prejudiced because of concerns

19   over memory recollection, the destruction of evidence.  So

20   notice is obviously important, but it's not the determinative

21   factor.

22       And I think -- and that's why Congress sets forth clear

23   limits.  It says, look, you've got this much amount of time to

24   bring the case.  If you are outside of that time limit or you

25   are unable to extend it through viable means, too bad.

1      And that's exactly the problem here.  So it's not really a

2  notice issue.  It is more of a fairness issue.  And that's

3  also why -- I'm sorry, Your Honor.

4          **THE COURT:**  But for the statute of limitations, is

5  there no way for the defendant to get the government to file

6  an indictment once an information has been filed?

7          **MR. FAKHOURY:**  Well, if the defendant waives his

8  right -- if the defendant consents to the filing of an

9  information we wouldn't be here.

10          **THE COURT:**  I'm not including -- I'm not including

11  that.  Because that's the defendant giving something up.

12      So I'm asking -- so but for the statute of limitations, I

13  hear you saying, once the government files an information,

14  there is no way for the defendant to cause the government to

15  file an indictment within any particular time.

16      Is that true?

17          **MR. FAKHOURY:**  Well, I would say the answer to that

18  would be -- the defendant can't force the government to indict

19  him, but I think the flip side of that is, if the government

20  filed an information without the defendant's consent, then the

21  clock is ticking.  In other words, they are going to have to

22  do something to cure the -- if they are about to run up

23  against the statute of limitations, they are going to have to

24  do something, meaning file the indictment or get the

25  defendant's agreement to proceed by information so that the

1    statute is stopped.  And I think that's the point.

2        I think the other key to that, Your Honor, is, you know,

3    ultimately, in every step in a criminal process, it is not the

4    government acting unilaterally.  If the government files a

5    complaint, the -- there has to be a preliminary hearing and a

6    finding by the Magistrate Judge for the case to proceed.  If

7    the government seeks an indictment, that means the grand jury

8    is authorizing the prosecution.

9        If, in the normal course, which typically happens, if the

10   defendant consents to the filing of the information, then the

11   defendant is consenting to the prosecution and the government

12   proceeding.

13       So what happens with a waiverless information is, we

14   basically eliminate all of that.  And I think really

15   problematically we are allowing the prosecutor's office to

16   basically say, well, Congress set a five-year statute of

17   limitations.  We don't really care about that.  We are going

18   to file an information, we will do nothing on it, we will say

19   we didn't initiate a prosecution, we filed it, then we get an

20   open-ended extension of the statute of limitations for as long

21   as we want.

22       And that is not at all what Congress contemplated, and it

23   would defeat the entire purpose of a statute of limitations --

24       **THE COURT:**  -- about the deficiencies in my criminal

25   procedure knowledge.  I'm just going to have to get over it

1    because I will have to admit these deficiencies regularly on

2    Friday mornings.

3        Is it correct that under the Speedy Trial Act of 1974,

4    once the information is filed, regardless of whether there's

5    an indictment, the defendant can require the government to

6    bring the case to trial within 70 days?

7            **MR. FAKHOURY:**  Yes.

8            **THE COURT:**  So what is it about the filing of an

9    indictment that -- what is it about -- what's special about --

10   what do I want to say?

11       I understand the argument to be that it's not just notice

12   to the defendant.  That's not -- so that he can prepare a

13   defense, that's not sufficient.  The other interest in play --

14   another interest in play is that the case itself has to move

15   forward so that it can be resolved within a particular time.

16   That's another right that the defendant has.

17       But if my reading of the Speedy Trial Act is correct, you

18   don't actually need this particular mechanism to serve that

19   interest.  Because once the information has been filed, unless

20   the defendant waives his speedy trial rights, he can compel

21   the government to go to trial within two and a half months.

22       Am I missing something?

23           **MR. FAKHOURY:**  Well, I think if you are looking at

24   the Speedy Trial Act in a vacuum, that might be true.  But we

25   can't look at it in a vacuum.

1        An information -- so, first of all, the government can

2   file an information for a defendant charged in a misdemeanor,

3   for example.  Okay?  They don't need the defendant's consent

4   to do that.  Right?

5        If a misdemeanor information is filed, that would still

6   trigger the same Speedy Trial Act.  The issue is, for a felony

7   to be charged by information, it requires the defendant's

8   consent.

9        And so when I read the word "information" in a Speedy

10  Trial Act, as well as when I read the word "information"

11  anywhere else in the Federal Criminal Code, I think the

12  correct interpretation is an information either charging a

13  misdemeanor that does not require defendant's approval or a

14  felony information where the defendant has consented to

15  proceed by information.  And those are the two -- that's sort

16  of how I kind of bridge the gap between these other statutes.

17       So, in other words, the term "information" does not merely

18  mean the four corners of the information which is a piece of

19  paper, it means the process that comes before that.  If it's a

20  misdemeanor information, all that needs to be done is the

21  government's office files the information.  If it's a felony

22  information, however, it requires the defendant's consent.

23       And the two District Court cases *Sharma* -- I forgot the

24  other name.

25            **THE COURT:**  *Machado.*

1        **MR. FAKHOURY:**  *Machado*.  There we go.  Thank you,

2   Your Honor.

3        In both of those cases, the district courts recognize

4   there is a jurisdictional problem when an information charging

5   a felony is not accompanied by a waiver, that is just null and

6   void.

7        I think that is exactly the case here.  Because, again,

8   when we are talking about an information, we are contemplating

9   either a misdemeanor that doesn't require defendant's consent

10  or if it is a felony, which is the case here, the defendant's

11  consent.  When that's missing, then that information is not

12  information under federal law.

13       And I think that's how you can bridge the gap between all

14  these different statutes.  That is how you create harmony with

15  all of these different statutes.

16       And, again, I think it goes to show how unprecedented of a

17  situation we are dealing with here.  Like I said at the

18  beginning, I really wish I caught that Ninth Circuit case.  I

19  will have to go back and read it, but it is not a common thing

20  that happens.

21       One thing the government said in its opposition was, it's

22  routine in the district for the government to file an

23  information before the defendant executes the waiver.

24       And I'll say from my own experience, and I cited to

25  numerous examples.  In fact, the last two sentencing hearings

1    I had before Your Honor proceeded in exactly that manner.

2    Sure, the government filed an information and then a few days

3    later the waiver was executed in Court.

4        What happened in those cases --

5        **THE COURT:**  I am not going to resolve this or

6    probably any other issue on the basis of what people told me

7    what the custom of the house is on a collateral issue.  That's

8    just not -- I can't imagine typing those words.  I wouldn't

9    worry about that.

10        **MR. FAKHOURY:**  Understood.

11       And so I'll just end by saying, I think, again, legally

12   speaking, the idea that an information could be filed but that

13   does not initiate a criminal prosecution, that it's enough to

14   unilaterally pull the statute of limitations beyond what

15   Congress set.  It's just -- it's not -- it's not supported by

16   the plain text of 3282.  It's not supported by the statutory

17   context.  It's not supported by -- I know the Court is not

18   going to rely on it, but I'll state it anyway, the custom of

19   the courthouse, or the custom of the Circuit Court.

20       If this was a commonly accepted practice, I think we would

21   see more than an unpublished Ninth Circuit opinion on it and

22   one 20-year-old Seventh Circuit opinion on it.  We would see

23   this all the time.

24       Instead, what more commonly happens is you get a tolling

25   agreement, which is exactly what happened in this case prior

1    to the filing of the information.  And I'm not going to speak

2    about custom, I'll just say it one last time, but which is

3    also a custom in this courthouse.

4        I think, again, the issue is very clear.  If the

5    waiverless information is null and void, 16 and 17 are out.

6    If the waiverless information tolled it, then those counts

7    stay.  And in our view it didn't toll it, and count 16 and 17

8    should be dismissed.

9        **THE COURT:**  Thank you, Mr. Fakhoury.

10       Mr. Waldinger.

11       **MR. WALDINGER:**  Your Honor, I will try to be brief.

12       I think Mr. Fakhoury is absolutely correct.  It's

13   ultimately a narrow issue, but it's one that I'll have to read

14   the case that Your Honor found, but I think *Burdix-Dana* from

15   the Seventh Circuit is the closest authority that's out of

16   this circuit.

17       I do want to respond to this idea that the government, by

18   filing an information within the statute of limitations

19   period, now gets an open ended statute of limitations and can

20   bring a case whenever.  I think it comes back to the questions

21   that Your Honor was asking about the Speedy Trial Act, which

22   is that, if in this case if the government did file the

23   information, the government can't go forward with a trial on

24   that information.  And --

25       **THE COURT:**  Am I wrong, by the way?  I wasn't -- I

wasn't being falsely modest a moment ago about my criminal
procedure chops. Am I wrong that I am imagining -- so let me
back up.

If the information is filed under seal and the defendant
is unaware of it, obviously the defendant can't do anything to
perfect his Speedy Trial right -- Speedy Trial Act rights
because he's not aware of the information.

So let's -- let me also be clear, if I do wind up ruling
in the government's favor on this motion, I think I need to
leave open the possibility in the future that the issue could
go the other way in at least two circumstances:  One is where
the information is filed under seal and the other is where the
indictment charges conduct that's materially different from
the conduct in the information.

As I understand it, neither of those conditions is present
here. So we really do have kind of the plutonic form of the
question because the notice -- we don't have this problem of
notice to the defendant that has appeared in some of the other
cases.

But anyway -- so let's say we are not in that world.  The
information is not filed under seal, and the defendant is
aware of the filing of the information.  Am I correct that the
defendant has the ability to compel the government to give him
or her a trial within 70 days, and obviously the government
needs then to file an indictment in order to be able to do

1    that.

2        But is that right?  Am I right about that?

3        **MR. WALDINGER:**  As I read the Speedy Trial Act, it

4    says that -- and I can't remember, it's the filing of the

5    indictment or the date in which the defendant appears on the

6    charge, whichever last occurs, from whatever of those dates,

7    the government has 70 days to bring the case to trial.

8    Because the government, under the Fifth Amendment, can't try

9    the defendant on a felony in a trial, I think that that -- it

10   would really bring the case to an inflection point, and the

11   case would either have to be charged by an indictment or

12   dismissed.

13       The point is it is not an open-ended extension of the

14   statute of limitations unless the defendant doesn't require

15   the government to go to trial.

16       **THE COURT:**  Okay.

17       I interrupted your argument.  Go ahead.

18       **MR. WALDINGER:**  Well, that was the point that I was

19   trying to make, Your Honor.  And I would just go back to the

20   cases.  I think the weight of authority does support the

21   conclusion that to institute an information is not the same as

22   instituting a prosecution.

23       I understand that the language used in 3288 in terms of an

24   indictment being found and an information being instituted are

25   different than the other statute of limitations that are out

1    there.   As Mr. Fakhoury noted, the other statute of

2    limitations talk about the filing of an information.   Yes, it

3    is different, but the weight of authority, the cases that look

4    at it have said that institute does not mean prosecution.

5         And, in fact, in one of the District Court cases that goes

6    the opposite way, the *Machado* case, the Court in that case

7    looked at the definition of "prosecute" from Black's Law

8    Dictionary, and in each of the definitions that it cited, the

9    "commencing an institution" were only part of the overall

10   definition.   For example, it cited a definition that said that

11   prosecution meant to commence and carry out and another

12   definition that said prosecution means to institute and

13   pursue.

14        I think that those definitions cited by the *Machado* court

15   actually support the government here because those definitions

16   recognize that institute does not equal prosecution.   It is

17   the subset.   It is half of a prosecution.   And I think that's

18   what we did here.

19        Again, as Your Honor noted, one of the interests that's

20   being vindicated by the statute of limitations is notice to

21   the defendant.   And that was accomplished here by the filing

22   of the information.   The indictment is, as Your Honor noted,

23   essentially the same as the information in terms of the

24   charges that are being brought.   And it put the -- the

25   information put the defendant on notice of what the government

1    was alleging had happened.  And within two months or so, the

2    government obtained the indictment on which we are proceeding

3    now.

4        So unless Your Honor has any other questions, we would

5    rest on our papers.  That is --

6            **THE COURT:**  Just give me a moment to look at my

7    notes.

8                    (Pause in the proceedings.)

9            **THE COURT:**  No, thanks, Mr. Waldinger.  I don't think

10   I have any more questions for you.

11       Mr. Fakhoury, the last word?

12           **MR. FAKHOURY:**  Quickly, Your Honor.

13       You know, while -- I pulled up the *Avery* -- the case you

14   cited, and the opinion itself doesn't -- unpublished

15   memorandum doesn't give a lot of flavor so I pulled up the

16   brief on Westlaw.

17       What it looks like happened in that case was the defendant

18   had pled guilty to an information, which I assume he -- it was

19   a plea agreement where he was a cooperator which I would take

20   means he waived his right to be indicted and then he later

21   withdrew his guilty plea to the information after the Supreme

22   Court decided *Skilling*, and then challenged the indictment as

23   being untimely, and the Court found it related back to the

24   original information, which I think given -- again, it's not

25   clear, entirely clear from the briefs, but I assume sort of

1    given custom, he consented to filing -- the filing of an

2    information if he entered a guilty plea to it.  That would be

3    my assumption.  So I'm not sure how much weight to give to the

4    *Avery* case.

5        And then in terms --

6            **THE COURT:**  Don't you think notwithstanding the

7    summary or the -- yeah, summary nature of the discussion that

8    if the basis of the Court's opinion was that the defendant had

9    consented to the filing of the information they would have

10   said he consented?

11           **MR. FAKHOURY:**  It may not have been an issue.  I

12   mean, this is unfortunately -- and as a defense attorney who

13   looks for whatever he can, although I missed this one,

14   sometimes you latch onto an unpublished memorandum disposition

15   just because it's got a word or two that helps you.

16       I think in this case, I think it's likely that it doesn't

17   come up in the case.  I would say that based on the procedural

18   history of that case from the briefs, including the

19   government's brief which is where I got most of the

20   information, I would assume that in that case the defendant

21   consented to the filing of the information because he pled

22   guilty to it and agreed to cooperate with the government.

23       I think the other point is, on Mr. Waldinger's point about

24   the difference between filing and initiate, and it's sort of

25   like -- I think he used the word "half-step" or "half of the

1    process."  I mean, we don't have half processes in Federal

2    Court.

3        When a case is filed, that initiates it and starts the

4    process and starts the prosecution ball rolling.  And initial

5    appearances are made, attorneys are appointed or retained,

6    discovery is exchanged, a court date is set.  That is how it's

7    done.  And this idea that you can just sort of half start the

8    process is -- that's not what is contemplated in the Federal

9    Rules of Criminal Procedure.  That's not what's contemplated

10   in the Fifth Amendment.  That's not what's contemplated in the

11   custom of the courthouse.  That's not generally how things are

12   done.  And so I don't -- I wouldn't put a lot of weight into

13   that.

14       I think ultimately at the end of the day, again, there are

15   concerns about notice, but it is not just notice.  It is the

16   idea that the prosecutor has a certain set amount of time to

17   bring the case, to get independent approval of the process,

18   either through a Magistrate Judge, grand jury, or the

19   defendant, him or herself.

20       And in this case, that is not what happened.  It hasn't

21   been done before.  It hasn't really been done before the three

22   cases that we discussed briefly in the district.  It hasn't

23   been done since.  To me that's an indicator that the

24   government's legal interpretation, whether it's in this

25   specific case or relying on *Burdix-Dana* out of the Seventh

1    Circuit is a stretch.  Otherwise I think we would see it a lot

2    more.

3        I think counts 16 and 17 are time barred.  I don't think

4    the waiverless information satisfies the statute of

5    limitations, and I would ask the Court to dismiss those

6    counts.

7        **THE COURT:**  All right.  Thank you all.  Those are

8    very good arguments.  I'm going to take the motion under

9    submission.

10       If you were listening, you heard me say to an earlier case

11   I would have their order out today.  I'm not making that

12   statement in this case.  I think I have a little more thinking

13   and reading to do.  I am hopeful I can get an order out,

14   though, either next week or the week following.  So I don't

15   think it will take that long.

16       Looking at the docket, it looks to me like we don't have a

17   next date set in this case.  I think we need to set a next

18   date.  My suggestion would be that we set it after the time I

19   think the Court will have an order out on this so you know

20   what case you are looking at.

21       And I don't know if there's more motion practice in the

22   case or sort of what the future holds, whether it would be

23   appropriate for the next hearing to be a trial setting

24   hearing?  I don't know what the status of discovery is.

25   Actually, maybe we can have a few minutes on status just so I

1    can hear from the parties where they think the case is.

2        Mr. Waldinger, let me start with you.

3        **MR. WALDINGER:**  Your Honor, we have produced a large

4    amount of discovery.  And I apologize for not having counted

5    up the pages.  It's certainly tens of thousands if not

6    hundreds of thousands of pages.  So I think -- and even though

7    Mr. Fakhoury has been working hard on the case, I don't know

8    he has looked at everything.  I think he needs more time.

9        The other thing that I know we discussed is Mr. Fakhoury

10   does anticipate filing more motions.  And we had emailed back

11   and forth about that.  I anticipate that summer vacations, if

12   they'll happen this year, may enter -- the briefing schedule

13   might need to be pushed out a little bit.  We were talking

14   about a date in September to come back for a motions' hearing.

15   And I see Your Honor is not available on September 10th --

16       **THE COURT:**  Let me jump in and say, first, in a big

17   case like this, the defendant is out of custody.  We have

18   all -- I think we can be human for a moment and acknowledge

19   that the last year and a quarter has been very difficult on

20   people.

21       My recollection is that at least one of you is a family

22   man and, yes, by all means, let's have a summer that enables

23   people to do the work on their desk and also do the ordinary

24   incidents of their life.

25       So -- and given the very large amount of discovery that I

1    now understand from Mr. Waldinger has been produced, my

2    suggestion would be this:  Let's set a next hearing that isn't

3    the motions' hearing, so I don't know if that's September or

4    when it is.  It's not the motions' hearing, it's a hearing

5    before which all the following things have occurred:

6    Mr. Fakhoury has had a chance to go through the discovery,

7    he's identified the motions he wants to bring, he has let the

8    government know what the motions are, everyone has worked out

9    a briefing schedule and a hearing schedule that gives all of

10   you adequate time to get your briefs on file and also gives

11   the Court adequate time to read whatever the briefs are so I

12   can conduct a hearing in a prepared way, and then we come back

13   and we set that schedule.

14       And if the motion practice actually turns out to be very

15   modest, maybe we set a trial date at that time also.  If the

16   motion practice turns out to be a little more robust, then

17   maybe we don't do that, we just set a motions' schedule on the

18   theory that once those motions have been heard, then we will

19   set a trial.

20       My point is, let's have enough time for not just

21   Mr. Fakhoury but also the government to think big picture, and

22   then when we come back, we can have a big-picture discussion,

23   if that makes sense.

24           **MR. WALDINGER:**  That makes sense.

25       Mr. Fakhoury, what's your pleasure here?

1          **MR. FAKHOURY:**  Thank you.

2      So, to echo what Mr. Waldinger said, the discovery is

3  voluminous.  And I have been in the process of having it

4  processed and organized and indexed.  And I have a paralegal

5  and I've gotten some help from the National Litigation Support

6  Desk of the AO to help with it.  So that's been useful.

7      I just got back a hard drive earlier this week and there's

8  also a 300-gigabyte hard drive the government produced that I

9  haven't scratched the surface.  It is going to take me some

10  time.

11      As Mr. Waldinger indicated, there will be additional

12  motion practice.  What we had discussed over email was to set

13  a hearing on September 24th where -- and the idea behind that

14  hearing would be both a status but also a motion hearing.

15      And perhaps what would probably make more sense is if we

16  can go offline and me, Mr. Waldinger and Mr. Walsh can agree

17  on a briefing schedule that we submit to the Court with the

18  understanding that if there are any motions filed under that

19  briefing schedule would be heard on the 24th.  Then when we

20  come back on the 24th, we could argue the motions and then set

21  further proceedings.

22      I cannot make a commitment that I will have gone through

23  hundreds of thousands of pages of discovery by September 24th,

24  but I think I'll have a much better grasp on it.  I'll tell

25  you the kind of the motions that I am contemplating working on

1    in this time frame would be motions that are sort of geared

2    toward the face of the indictment.

3        So, what I am trying -- basically what I am trying to do

4    is get through motions that don't necessarily require a

5    significant amount of factual development so that I can work

6    on the motions while the paralegal works on the factual

7    development and then there may be later --

8        **THE COURT:**  Let me suggest -- can I suggest

9    October 1st instead of September 24th?

10       **MR. FAKHOURY:**  That's fine, Your Honor.

11       **THE COURT:**  Mr. Waldinger?

12       You are on mute.

13       **MR. WALDINGER:**  That is fine for me.

14       Mr. Walsh?

15       **MR. WALSH:**  That also works with me.

16       **THE COURT:**  All right.

17       So, I think I want to wrap this up so I can move on to the

18   other things on my calendar.  It sounds like we have a pretty

19   good roadmap in place.  I am assuming that things -- all kinds

20   of things can change once Mr. Fakhoury has had a chance to

21   actually go through more of this discovery.

22       For one thing he can provide some advice to Mr. Rothenberg

23   about the disposition of the case that he's not in a position

24   to give him now.  He needs a chance to go through the

25   material.  He'll have more clarity about motion practice, not

1    just the face of the indictment, but some other things.

2        My point here is that, you know, the roadmap is very much

3    a rough draft.  So I'll go ahead and set this on October 1st

4    at 9:30 a.m.  I'll order Mr. Rothenberg to be present.  We may

5    at that time still be proceeding by video, maybe in person.

6    There will be a notice on the docket about what kind of

7    hearing is appropriate.

8        I would like to exclude time until then for the effective

9    preparation of counsel so that Mr. Fakhoury can get through

10   this discovery unless there's an objection.  If there's no

11   objection, I would ask the government to prepare a time

12   exclusion order.

13       Does anyone object?

14       MR. WALDINGER:  No objection from the government,

15   Your Honor.

16       MR. FAKHOURY:  No objection, Your Honor.

17       THE COURT:  Okay.  That will be the Court's order.

18       And if anything comes up in the meantime and you want to

19   get back on calendar, it's very easy.  Just send a joint email

20   to Ms. Lee and she'll add you to the calendar.

21       MR. WALDINGER:  We will speak offline to Mr. Fakhoury

22   and perhaps submit a stipulation also on the briefing

23   schedule.  And perhaps we will try to do that in the time

24   exclusion order if that works for the Court and Mr. Fakhoury.

25       THE COURT:  That's fine.  We happily accept

1  stipulations at all hours of the day and night, seven days a

2  week.  We like stipulations.

3          MR. FAKHOURY:  That's fine with me, Your Honor.

4  Thank you.

5          THE COURT:  Okay.  Very good.  Thank you all.

6          MR. WALDINGER:  That's it.  Thank you, Your Honor.

7          THE COURT:  Ms. Lee, let's stand in recess for 13

8  minutes, until 11 a.m.  I need to take a little break.

9          THE CLERK:  Yes, sir.  Thank you.

10

11          (Proceedings adjourned at 10:47 a.m.)

12

13                   **CERTIFICATE OF REPORTER**

14          I, Diane E. Skillman, Official Reporter for the

15  United States Court, Northern District of California, hereby

16  certify that the foregoing is a correct transcript from the

17  record of proceedings in the above-entitled matter.

18

19          *Diane E. Skillman*

20          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

21               Monday, January 10, 2022

22

23

24

25