UNITED STATES DISTRICT COURT   **ORIGINAL**

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable JON S. TIGAR, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Motion for Intradistrict Venue Transfer** |
| Plaintiff, | ) | |
| vs. | ) | NO. CR 20-00266JST |
| Michael Brent Rothenberg, a/k/a MIKE ROTHENBERG, | ) | Pages 1 - 15 |
| Defendant. | ) | Oakland, California |
| _____ | ) | Friday, August 13, 2021 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:	David L. Anderson, Esq.
		United States Attorney
		1301 Clay Street, Suite 340S
		Oakland, California  94612
	BY:	KYLE F. WALDINGER,
		ASSISTANT UNITED STATES ATTORNEY

For Defendant:	Moeel Lah Fakhoury LLP
		1300 Clay Street, Suite 600
		Oakland, California  94612-1427
	BY:	HANNI M. FAKHOURY, ATTORNEY AT LAW

Reported By:	Raynee H. Mercado
		CSR. No. 8258

Proceedings reported by electronic/mechanical stenography; transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1   Friday, August 13, 2021                              10:03 a.m.
 2                       P R O C E E D I N G S
 3          THE CLERK:  Your Honor, now calling criminal matter
 4   20266, United States of America v. Michael Brent Rothenberg.
 5      If counsel could please come forward and state their
 6   appearances for the record starting with the government.
 7          MR. WALDINGER:  Good morning, Your Honor.  Kyle
 8   Waldinger for the United States.
 9          THE COURT:  Morning.
10          MR. FAKHOURY:  And good morning, Your Honor.  Hanni
11   Fakhoury on behalf of Mr. Rothenberg.  He's present before the
12   court, Your Honor.
13          THE COURT:  Good morning.  Good morning,
14   Mr. Rothenberg.
15          THE DEFENDANT:  Morning.
16          THE COURT:  If you'll hold on just one second, I'm
17   going to bring the docket up on my computer.
18                    (Pause in the proceedings.)
19          THE COURT:  All right.  This is on calendar for the
20   defendant's motion for intra-district venue transfer away from
21   this strange locality.
22      Mr. Fakhoury --
23          MR. FAKHOURY:  Thank you.
24          THE COURT:  -- you have the floor.
25          MR. FAKHOURY:  Thank you, Your Honor.  I appreciate
```

1      it.
2          And the situation is sort of a unique one in that the
3      reason we're here in Oakland is sort of two-pronged, the first
4      being that this case was related -- the criminal case was
5      related to the SEC case, which was filed and venued in
6      San Francisco.  And then obviously, the court itself moved
7      from San Francisco to Oakland, so we're sort of in a -- in an
8      odd posture in this case.  And I think this may be one of the
9      few, if -- if not the only cases in the district where
10     there -- the criminal case is related to the civil case but
11     they're in different courthouses on opposite ends of the Bay
12     Bridge, so I'll start by saying I acknowledge that this is
13     an -- sort of an odd situation.
14         Nevertheless, at the end of the day, the inquiry, whether
15     you look at it under Rule 18 or Rule 21 as the government
16     suggests, when you look at all the factors the court has to
17     consider, I think those factors weigh in favor of the venue
18     being in San Francisco.
19         And you know, if we look at Rule 18, which specifically
20     governs intra-district venue transfers, it looks at the
21     convenience to the defendant, the convenience to other
22     witnesses, and the prompt administration of justice.
23         And, you know, sort of taking that middle one out of the
24     equation because the government and its opposition acknowledge
25     that in terms of the other witnesses, there's no real

1    inconvenience to them to be in San Francisco as opposed to
2    Oakland.  If we sort of remove that from the equation,
3    particularly at -- because both the criminal case and the
4    civil case were venued in San Francisco originally, and that's
5    where the bulk of the conduct at issue took place in both the
6    SEC case and the criminal case.  So that factor is -- is a
7    wash, which my view, mean it's really errs on the side of
8    San Francisco being the proper venue.
9            **THE COURT:**  How does that work?  How is it the case
10   that it's a wash and it helps you?
11           **MR. FAKHOURY:**  Well --
12           **THE COURT:**  Legally, how did that work?
13           **MR. FAKHOURY:**  Okay.
14           **THE COURT:**  The reason I ask you that question is
15   because I am working on a draft order and -- and my current
16   thinking is this is sort of irrelevant.
17       You understand what I'm saying?
18           **MR. FAKHOURY:**  I hear the court.
19           **THE COURT:**  You sort of had me at the word "wash."
20   That's what I mean.
21           **MR. FAKHOURY:**  Well, let me rephrase it.  I think I
22   said that inartfully, so let me walk that back a little bit.
23   I think what I meant to say was there's no inconvenience to
24   anyone -- in that -- in terms of that factors, meaning others
25   witnesses, the event of the locations -- all of that is either

1    in San Francisco or for witnesses who are neither in
2    San Francisco or in Oakland because they're in Las Vegas or
3    China or South Korea, there's no added inconvenience in being
4    in San Francisco versus Oakland.
5         And so I said "a wash."  I shouldn't have said that.  I
6    take that back.  What I meant to say -- what I should have
7    said was it -- that factor weighs for San Francisco.
8         In terms of convenience to Mr. Rothenberg, it is certainly
9    more convenient for him to be in San Francisco versus Oakland.
10   He lives in San Francisco.  He has limited means to get around
11   and to cross the bridge or to take public transit during the
12   middle of a pandemic.
13        And, you know, I know it's 12 miles.  It's -- first blush,
14   it sort of seems inconvenient -- not -- well, at first blush,
15   it may seem not like a huge ordeal to get from one end of the
16   Bay Bridge to the other end of the Bay Bridge.  But
17   ultimately, the legal standard looks at the -- and there's a
18   strong policy preference for a defendant being tried in the
19   venue where he resides and where the bulk of the criminal
20   conduct at issue is alleged to have taken place.  And in this
21   case, both of those align with San Francisco.
22        So even though it's 12 miles, at first blush doesn't seem
23   like a huge deal, it is still -- again, the -- the both Rule
24   18 and Rule 21 and Wright & Miller -- all the commentary talks
25   about the idea of now having to hail a defendant from outside

1  of his home venue or home intra-district venue in order to
2  answer to charges, you know, somewhere else.
3      And then in terms of the third factor, which is the
4  administration of justice, I think this is where the bulk of
5  the disagreement exists.  And, you know, I'll start by noting
6  that the government suggests, well, you know, there's a --
7  we're saving sort of a duplication of labor and it's more
8  efficient to have the case venued here because there's already
9  been work done in the SEC case.  And I certainly understand
10 that view.
11     I'd say, though, that that's not necessarily the proper
12 inquiry because if that was the criteria, then no case would
13 ever be moved for any reason or -- or rather, you know, the --
14         **THE COURT:**  No parallel criminal case would ever be
15 moved, right.
16         **MR. FAKHOURY:**  Yes, exactly.  Exactly.
17     But that's obviously not what the rules contemplate, that
18 there are situations where it is proper to have a case
19 transferred even if it means a -- the receiving district --
20 whether it's in a different district or it's in the same
21 district but a different venue, whether -- even if that means
22 that there's going to be a little bit of extra work added on.
23 And I think, again, this is one of those cases.
24     And I'd add that, yes, there -- some of the material at
25 issue in the SEC matter is at issue in this criminal case.

1    But ultimately, the criminal case is actually substantially
2    broader than the SEC case.  And there are other allegations
3    raised in the criminal case not at all at issue in the SEC
4    case.  And to the extent that the SEC case was litigated,
5    the -- the issues that were litigated in that case are sort of
6    limited to a disgorgement order, penalties and interest, and
7    those are not necessarily the issues that would be ultimately
8    litigated in a criminal case.
9         Those issues are sort of moot in terms of criminal
10   liability.  You know, they may came -- they may come up later
11   in the day if there's a conviction, for example, and we're
12   debating what the proper restitution amount or forfeiture or
13   the sentencing guidelines, but that's sort of well after the
14   fact.
15        That's -- you know, in terms of the actual mechanics of
16   motion practice that's fact based, which we haven't gone into
17   yet, or a potential jury trial, if one happens, we -- what has
18   been done in the SEC case is really just a very small tip of a
19   much larger iceberg, and I think that the amount of work put
20   into the case so far -- I don't mean to minimize the amount --
21   I know the court's put in a lot of work for it, and I've read
22   through the materials in the SEC case, so I know that there
23   was work done, obviously.
24        But I don't think it's so far down -- and we're talking
25   about jury trials and a month of testimony and witnesses and

1  summary judgment motions -- it wasn't at that level that
2  moving the criminal case back to San Francisco, which was
3  where the SEC cases was originally venued and where this
4  criminal case was originally venued when filed, would be
5  prejudicial.  It -- well, would -- would thwart the prompt
6  administration of justice.
7     And so that is the request, Your Honor, that the case be
8  transferred back to San Francisco, which is the most
9  convenient venue for Mr. Rothenberg.  And -- and, again, I
10 understand the situation's sort of unique.
11    I know the court may feel like it's sort of a minor point
12 or maybe it doesn't really matter in the grand scheme of
13 things, but to that point, I'll say I think it matters a great
14 deal to Mr. Rothenberg, to be able to walk to the courthouse
15 to have court hearings or whatever needs to be done in a case
16 to -- to feel like he's in a -- in a locale that he's able to
17 get around in, that he has familiarity with.
18    Again, I understand.  The -- I've crossed the Bay Bridge a
19 million times in my life, and it can seem a lot longer than 12
20 miles when you're stuck in bumper-to-bumper traffic or on the
21 BART tunnel, stuck in the Tube, in the Transbay Tube.  But the
22 bottom line is his home venue --
23         **THE COURT:**  It's no a proper consideration for this
24 motion, but I did change courthouses because of the commute.
25         **MR. FAKHOURY:**  So -- absolutely and -- and when I was

1   at the Federal Public Defender's Office, I very much enjoyed
2   being in Oakland rather than San Francisco for that reason,
3   too.
4       So there is some -- some inconvenience built into that,
5   separate and apart from the fact that ultimately at the end of
6   the day, Mr. Rothenberg's in San Francisco, the criminal
7   case -- the allegations took place -- or the criminal
8   conducted allegedly took place in San Francisco.
9   San Francisco was where the SEC case was venued.
10  San Francisco was where the criminal complaint was venued.
11  San Francisco was where the criminal waiver-less information
12  and the indictment were ultimately venued before it was
13  related to the SEC case.
14      And so San Francisco is the proper forum for this -- this
15  case, Your Honor.  Thank you.
16          **THE COURT:**  Thank you, Mr. Fakhoury.
17      Mr. Waldinger.
18          **MR. WALDINGER:**  I think that Mr. Fakhoury's right,
19  that the -- the key considerations here and what the court
20  needs to balance are the convenience or inconvenience --
21              (Off-the-record discussion.)
22          **THE COURT:**  Actually, if you were to speak closer to
23  the microphone, that would probably be helpful.
24          **MR. WALDINGER:**  And not hit it with my hand.
25      -- that the key considerations are the inconvenience to

the defendant versus the due administration of justice and the -- and the efficiency.  And I -- I want to start with, you know, when Your Honor called the case, referred to the Oakland courthouse as a -- as a "strange venue," and -- and Mr. Fakhoury talked about --

**THE COURT:**  It was the court's weak attempt as a joke.  As I'm sure everyone knows, I was just referring to some language in one of the cases that the parties cited to me.

**MR. WALDINGER:**  And I agree with -- with the fact that it's to the -- my point would be it's not a strange venue.  And Mr. Fakhoury talked about hailing the defendant in to the Oakland courthouse.

As the government said in its brief, it is only 12 miles.  The court itself considers it such a non-strange venue that the court's jury plan pulls jurors for both Oakland trials and San Francisco trials from the same identical counties.  So, like -- from the court's perspective, you know, we bring, we bring the same jury pools to both courthouses.

If you look at the cases where courts have transferred venue under Rule 18 based on the convenience to the defendant, or have reversed the failure to do so, the amount of distance is much -- is much greater.  It's on the -- on the magnitude of hundreds of miles, whereas the cases that have found that the transfer should not be taken are along the lines of what

```
 1   we're talking about.
 2        Here, this is -- is actually one of the places in the
 3   country where they have two courthouses within a district are
 4   probably closer together than anywhere else in the country.
 5   And so I don't -- I really think that the inconvenience to the
 6   defendant is quite minimal.
 7        As Mr. Fakhoury said, the witnesses are all over the
 8   country, all over the world.  Some are in San Francisco.  But
 9   they're also around the Bay Area, and so I think it's equally
10   convenient or inconvenient for witnesses to come to Oakland or
11   San Francisco.
12        And I do think that the cases support the conclusion --
13   and this includes the Ninth Circuit's case in Scholl, that
14   this court can look at efficiency, among other reasons, in
15   determining whether to grant or deny a defendant's motion.
16        The cases also say that Rule 18 does not mandate absolute
17   convenience to the defendant.  It's not convenient to be
18   charged in a criminal case, and -- in the first instance.
19        And so I -- I believe that, you know, the difference
20   between San Francisco and Oakland here is not something that
21   warrants transfer, particularly I -- I don't think we've seen
22   a real demonstration of what the prejudice to Mr. Rothenberg
23   would be.
24        And so unless Your Honor has any questions, I'll submit.
25             THE COURT:  I don't.
```

1           Mr. Fakhoury, it's your motion so you can have the last
2  word if you want.
3           **MR. FAKHOURY:**  Thank you, Your Honor.
4      On the -- I guess I would just add one last thing, which
5  is, you know, again, the -- the inconvenience is going back to
6  the case law, the inconvenience is about -- and a court made a
7  joke -- about it, about the sort of this idea of the strange
8  locale, and I'm not --
9           **THE COURT:**  Well, it was a -- it was a joke about
10 the -- anyway, never mind.
11          **MR. FAKHOURY:**  Well, what I was trying to say is
12 that, ultimately, at the end of the day, the whole point of
13 venue as a legal concept, whether you're talking about it
14 under the rules or even the Constitution, which I know is not
15 at issue and I'm not making a constitutional claim, but just
16 to talk more generally for a minute about venue overall, the
17 whole kind of policy behind venue is that a defendant who has
18 to deal with the inconvenience of a criminal case, which is a
19 signi- -- significantly inconvenient because it is a
20 significant disruptor in your life and it overtakes your life,
21 and it has overtaken Mr. Rothenberg's life.
22      So in order to sort of account for that, the idea is we're
23 not also going to make it more difficult by bringing him
24 somewhere that has no connection whatsoever to the criminal
25 conduct that's alleged or to the location of where he resides

1   or -- and where the witnesses are and -- and all that.
2       And -- and that's the bottom line.  The bottom line is --
3       **THE COURT:**  What's the difference -- I mean, one of
4   the things I really, really, really like about you,
5   Mr. Fakhoury, is you don't leave anything in the locker room
6   ever.  And I know that if you are representing a client, you
7   are going to litigate every potentially meritorious issue, and
8   the briefing will be great, and you will find -- you will find
9   a voice that lets you make an in-court argument that requires
10  the court to take the issue seriously.  That's all good.
11      But at the level of reality in the Bay Area, given way the
12  Bay Area is put together -- let's say the conduct in question
13  happened in Pacific Heights.  I don't know where it happened,
14  okay?  But let's just say.  What really is the difference
15  between Glen Park in San Francisco and North Oakland, really?
16  You know what I'm saying?
17      So when we talk about this kind of right of attachment,
18  which is -- which is the label I would put on this argument,
19  it's -- you got a tough row to hoe.
20      **MR. FAKHOURY:**  Well, I -- first of all, I appreciate
21  the compliment, Your Honor.  It's always -- that's always
22  gratifying.
23      I would say that I think there is a difference.  And I
24  know -- you know, we could talk anecdotally about it, and we
25  could talk legally about it, and I'll do both.  Anecdotally

```
 1   the practical point of view, I actually somewhat disagree with
 2   the court.  I think there's a huge difference between Pacific
 3   Heights and North Oakland in terms of all sorts of things,
 4   whether we're talking about culture, cuisine, demographics --
 5           THE COURT:  Well, I could adjust the metrics and
 6   eventually I'd satisfy you.  Right?
 7           MR. FAKHOURY:  Well --
 8           THE COURT:  I mean, you got to give me that one.
 9           MR. FAKHOURY:  I think -- I guess what I would say --
10           THE COURT:  How about Hunter's Point and Piedmont?
11           MR. FAKHOURY:  Well, we could back and forth all day.
12   I'm from the East Bay, and -- and I can sometimes feel like
13   San Francisco can be a world apart, but I think the bottom
14   line is this, Your Honor, at the end of the day -- I said
15   there was sort a practical point of view and a legal point of
16   view, and in terms of the legal point of view, I think
17   ultimately, the bottom line is this case would be in
18   San Francisco -- everyone would agree that it would be in
19   San Francisco but for the -- the court changing its chambers.
20       And I completely -- I'm glad the court has a shorter
21   commute.  I -- having done that commute, I can appreciate the
22   extra time to not be stuck on the Bay Bridge or on BART, but
23   that's the sole reason we're here.  And that cannot be the
24   basis of moving venue from the -- what would otherwise be the
25   proper intra-district locale to another locale.
```

1       That is not a criteria specified in Rule 18 and Rule 21.
2  And I do not mean that in any sort of disrespectful way,
3  obviously.
4       But I -- I have to think through what Mr. Rothenberg's
5  rights are and his right is to be tried in the venue where he
6  lives, where the criminal conduct took place, and where
7  everyone including the government itself who prosecuted the
8  case and prosecuted the SEC case agreed that the venue was
9  proper there.
10      And I think that's the ultimate point I would make on
11 that, Your Honor.
12          **THE COURT:**  Very good.  Thank you.
13      The motion's now under submission.  I anticipate getting
14 an order out on this motion and the one that's under
15 submissions very shortly.
16          **MR. WALDINGER:**  Thank you, Your Honor.
17          **MR. FAKHOURY:**  Thank you, Your Honor.
18              (Proceedings were concluded at 10:23 A.M.)
19                             --o0o--

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____*Raynee H. Mercado*_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Sunday, March 6, 2022