1

MOEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)

2

1300 Clay Street, Suite 600
Oakland, CA 94612

3

Telephone:   (510) 500-9994
Email:       hanni@mlf-llp.com

4

5

Attorneys for Michael Rothenberg

6

7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

OAKLAND DIVISION

10

11

| UNITED STATES OF AMERICA, | **Case No.:** 3:20-CR-00266-JST |
|---|---|
| Plaintiff, | **DEFENDANT'S MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF TEXAS** |
| v. | |
| MICHAEL ROTHENBERG, | **Court:** Courtroom 6, 2nd Floor |
| Defendant. | **Hearing Date:** June 24, 2022 |
| | **Hearing Time:** 9:30 a.m. |

12

13

14

15

16

17

**TO: STEPHANIE M. HINDS, ACTING UNITED STATES ATTORNEY;
KYLE F. WALDINGER, ASSISTANT UNITED STATES ATTORNEY; AND
NICHOLAS J. WALSH, ASSISTANT UNITED STATES ATTORNEY.**

18

19

PLEASE TAKE NOTICE that Defendant Michael Rothenberg hereby moves this Court for an

20

order transferring venue of this case to the Western District of Texas. This motion is based upon this

21

memorandum of points and authorities and accompanying exhibits, Federal Rule of Criminal

22

Procedure 21, and all other applicable constitutional, statutory, and case authority, and all evidence

23

and argument that may be presented at the hearing of this motion, to be held on June 24, 2022, at 9:30

24

a.m. in Courtroom 6 on the 2nd floor of the Oakland Courthouse.

25

26

27

28

## INTRODUCTION

Pursuant to Federal Rule of Criminal Procedure 21, Michael Rothenberg moves this Court to transfer his criminal case to the Western District of Texas ("WDTX"). This motion is based upon the fact that on April 27, 2022, Mr. Rothenberg received an eviction notice from the San Francisco County Sheriff directing him to vacate his home. Mr. Rothenberg has since filed for bankruptcy. Because Mr. Rothenberg is indigent and unable to pay for or secure a residence in the Northern District of California ("NDCA"), he is moving in with his extended family, specifically his older brother, who lives outside of Austin, Texas, which is in the Western District of Texas. Mr. Rothenberg's familial support system, including his parents, siblings, nieces, nephews, aunts and uncles live in that district as well.

This Court previously denied Mr. Rothenberg's request for an intradistrict venue transfer to San Francisco under Federal Rule of Criminal Procedure 18, finding that the prompt administration of justice outweighed the "limited convenience" factors to Mr. Rothenberg given the proximity of the Oakland courthouse to Mr. Rothenberg's residence in San Francisco. That dynamic has now changed given Mr. Rothenberg's financial situation and living situation, as well as the fact he will face two separate jury trials, one of which the government estimates will take approximately one month to try. Thus, Mr. Rothenberg requests this Court transfer this case to the WDTX where Mr. Rothenberg expects to reside for the near future.

## STATEMENT OF FACTS

A.    **Court proceedings against Mr. Rothenberg.**

Mr. Rothenberg managed Rothenberg Ventures Management Company, LLC ("RVMC"), a venture capital fund. On August 20, 2018, the Securities and Exchange Commission ("SEC") filed a civil complaint against Mr. Rothenberg and RVMC, alleging Mr. Rothenberg "misappropriate[d] fund and fund investor money," "create[d] the false appearance that the money was used for legitimate fund expenses or investments or had otherwise been paid back," and "used the misappropriated funds to finance Rothenberg's personal business ventures." *SEC v. Rothenberg*, 4:18-CV-05080-JST, Dkt. 1, Complaint at ¶ 1. The civil case concluded with the entry of a consent judgment, and this Court ultimately entered a disgorgement and penalties order of almost $31 million

1  over Mr. Rothenberg's objection. *SEC v. Rothenberg*, 4:18-CV-05080-JST, Dkt. 100.

2      On June 25, 2020, a criminal complaint was filed against Mr. Rothenberg, charging him with

3  wire fraud in violation of 18 U.S.C. § 1343. The complaint alleged a fraudulent scheme—referenced

4  in the SEC civil suit—allegedly taking place in July 2016 in San Francisco involving the purchase of

5  shares in a San Francisco software company. Dkt. 1, Complaint at 1. A waiverless Information was

6  filed on June 26, 2020. Dkt. 2.

7      Mr. Rothenberg made his initial appearance on June 26, 2020. Dkt. 5. At that appearance, the

8  Assistant U.S. Attorney informed the magistrate judge that "we understand that Mr. Rothenberg may

9  be very shortly losing his house to foreclosure and may then be relocating." Dkt. 64 at 10:12-14. The

10  attorney appearing with Mr. Rothenberg at the time elaborated that "there's going to be a foreclosure

11  proceeding and auction and consequently, Mr. Rothenberg will—will likely—not clear yet—likely

12  wind up residing back in Texas with his family or maybe even in Southern California." Dkt. 64 at

13  10:19-23. As a result, and without objection from the government, the magistrate judge did not

14  impose any travel restrictions on Mr. Rothenberg's bond. *Id.* at 11:11-15.

15      On August 20, 2020, the operative 23-count superseding indictment was filed charging Mr.

16  Rothenberg with a variety of crimes. Dkt. 15. Mr. Rothenberg has filed several pretrial motions, two

17  of which are relevant to this specific motion.

18      On July 2, 2021, Mr. Rothenberg filed a motion for intradistrict venue transfer under Federal

19  Rule of Criminal Procedure 18, asking this Court to transfer the case from the Oakland courthouse to

20  the San Francisco courthouse, as Mr. Rothenberg lived in San Francisco and most of the events at

21  issue in the case took place in San Francisco. Dkt. 68. This Court denied the request, finding that

22  "While [Mr.] Rothenberg may live closer to the San Francisco courthouse, there is no meaningful

23  inconvenience in requiring him to travel to Oakland." Dkt. 80 at 3. Second, it found San Francisco

24  and Oakland "equally convenient" venues because many of the alleged victims are companies not

25  headquartered in California or the United States, and because there was only "minimal inconvenience

26  in requiring any San Francisco-based victims or witnesses to travel to Oakland." *Id.* at 3-4. Finally,

27  this Court found a transfer "could negatively impact the 'prompt administration of justice' given the

28  time and effort the Court has already devoted to understanding the fact of this case." *Id.* at 4.

Then on September 13, 2021, Mr. Rothenberg filed a motion to sever counts 1-4 of the superseding indictment from the remaining counts. Dkt. 87. This Court granted that motion in part, severing counts 1 and 2 from the remaining counts in the superseding indictment. Dkt. 101. Jury trial on the first two counts, which is estimated to take one week, is currently set to being on October 31, 2022. Dkt. 120. No jury trial date has been set on the remaining counts of the indictment, which the government estimates will take one month to try. A case management conference is currently set for June 24, 2022, and no motions in limine, proposed verdict forms or jury instructions, or any pre-trial litigation has taken place as of this filing.

**B.    The San Francisco Sheriff orders Mr. Rothenberg to vacate his residence.**

From the moment of Mr. Rothenberg's initial appearance in court in June 2020, the parties anticipated that Mr. Rothenberg would potentially be evicted from his home in San Francisco and possibly relocate to Texas.

The potential became a reality on April 27, 2022, when Mr. Rothenberg was served a notice to vacate by the San Francisco Sheriff, directing him to vacate his San Francisco residence by May 4, 2022. *See* Exh. A. Because Mr. Rothenberg has filed for bankruptcy, the physical eviction has not yet occurred, but Mr. Rothenberg anticipates the Sheriff may return to his residence in San Francisco at any moment to physically eject him from the house. Because Mr. Rothenberg has a $31 million judgment issued against him and has filed for bankruptcy, he is insolvent and unable to afford his own residence. Thus, as anticipated in June 2020, Mr. Rothenberg expects to leave San Francisco shortly upon eviction to live outside of Austin, Texas with his family.

## ARGUMENT

Federal Rule of Criminal Procedure 21(b) states "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). In assessing a Rule 21(b) motion, courts must consider ten factors:

> (1) Where the defendant resides; (2) where possible witnesses reside; (3) where the relevant events happened; (4) where relevant documents and records are; (5) potential disruption to a defendant's business if transfer is denied; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket congestion; and (10) other special considerations.

*United States v. Prasad*, 2:16-CR-00244-KJM, 2018 WL 3706836, at *3 (E.D. Cal. Aug. 3, 2018) (citing *Platt v. Minn. Mining & Manuf. Co.*, 376 U.S. 240, 243-44 (1964)). "[C]ourts treat no single factor as dispositive, but instead aim to 'strike a balance and determine which factors are of greatest importance.'" *Prasad*, 2018 WL 3706836, at *3 (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990)). A Rule 21(b) "analysis is more defendant-friendly than…the civil transfer rule under 28 U.S.C. § 1404(a)" because "only the defendant can bring the motion whereas either side can bring it civilly," and because "there is no presumption in criminal cases in favor of the government's choice of forum." *United States v. Fritts*, 3:05-CR-00216-WHA, 2005 WL 3299834, at *2 (N.D. Cal. Dec. 6, 2005).

Considering these factors, venue should be moved to the Western District of Texas.

**A.    Mr. Rothenberg's location.**

When Mr. Rothenberg resided in San Francisco, there was no concern with the case and trial proceeding in the Northern District of California. But now that Mr. Rothenberg will be residing in the WDTX out of financial necessity, that calculus has changed. "The idea that the trial should occur either where the crime occurred or where the defendant resides is 'a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place.'" *Prasad*, 2018 WL 3706836, at *3 (quoting *Platt*, 376 U.S. at 245). Requiring Mr. Rothenberg to travel back and forth from Texas to California for two jury trials when he is insolvent and has limited financial means is precisely the "unfairness and hardship" Rule 21 is designed to alleviate.

This factor weighs heavily in favor of transfer.

**B.    Location of possible witnesses.**

"Not all witnesses…have equal value in this venue-transfer analysis." *Fritts*, 2005 WL 3299834, at *3. Agents and other government employees who "are effectively part of the prosecution team…will be paid for their inconvenience." *Id.* Additionally, "custodians of records sometimes are not called at trial because the parties stipulate to the authenticity of and foundation for the records." *Id.*

In the litigation concerning intradistrict venue, the government noted that its potential witnesses are scattered across the United States and abroad. It explained "many of the victims reside or are

1    headquartered outside of both the Oakland and San Francisco venues of this District" noting

2    specifically, "Silicon Valley Bank (the victim in Counts One through Four) is headquartered in Santa

3    Clara County (which falls within the San Jose venue)," as "the victims at issue in the scheme to

4    defraud that encompasses Counts Five through Eleven – identified in the Indictment as 'P LLC' and

5    'T LLC' – are Nevada limited liability companies with offices in Las Vegas" and "the victims in

6    Counts Twelve through Twenty-Three include organizational victims headquartered or domiciled, or

7    individual victims residing, in Massachusetts, Arizona, the Cayman Islands, Hong Kong/China,

8    Taiwan, and South Korea, in addition to San Francisco and other locations in Northern California."

9    Dkt. 73 at 11. It elaborated "that witnesses or potential witnesses in this case (including victim-

10   witnesses) are living, among other locations, in the California cities of Alameda, Albany, Mill Valley,

11   St. Helena, San Mateo, Menlo Park, Los Gatos, Carlsbad, San Diego, and…San Francisco. There are

12   also witnesses or potential witnesses who reside in or near Chicago, Denver, Las Vegas, Phoenix, and

13   Boston, as well as many outside the country, including in China and South Korea." *Id.* at 12. The

14   government believed "the Oakland courthouse poses little or no inconvenience in comparison to the

15   San Francisco courthouse." *Id.*

16          The same would be true if the case were transferred to the WDTX. Requiring government

17   witnesses to travel to Texas instead of California is not inconvenient, particularly considering the fact

18   the government will pay for their accommodations and any trial testimony they provide will likely be

19   for a limited duration.

20          As for defense witnesses, Mr. Rothenberg is still in the process of preparing his defense and is

21   unsure who, if any, witnesses he will call. Because Mr. Rothenberg is indigent, he can request the

22   government bear witness costs under Federal Rule of Criminal Procedure 17(b), which alleviates any

23   travel inconvenience for defense witnesses Mr. Rothenberg may wish to call.

24          This factor thus does not weigh against transfer and is, at most, neutral.

25   **C.    Where relevant events happened.**

26          Although Mr. Rothenberg lived in San Francisco during the events at issue in this case, and

27   although RVMC was headquartered there, the government has already acknowledged that "this

28   corporate fraud case does not require knowledge of a location: most if not all locations of events are

---

DEFENDANT'S MOTION TO TRANSFER VENUE
*United States v. Rothenberg*, 3:20-CR-00266-JST

1    meetings and presentations in restaurants, hotels, offices, and conference rooms in San Francisco, Las

2    Vegas, and Asia; what occurred in them will not require a view by the jury or knowledge of the area."

3    Dkt. 73 at 12-13.

4         This factor does not weigh against transfer and is, at most, neutral.

5    **D.**   **Location of relevant documents and records.**

6         "Because documents in the electronic age can be 'easily transported,' their location is weighed

7    only slightly in a venue transfer analysis." *Prasad*, 2018 WL 3706836, at *5 (quoting *United States v.*

8    *Robinson*, 2010 WL 3087446, at *5 (D. N. Mar. Is. July 29, 2010)). The government has already

9    admitted that "the documents and records in this case are digital and can be reviewed anywhere."

10   Dkt. 73 at 13.

11        To the extent the government may assert that venue should remain in the Northern District of

12   California because this electronic discovery was produced here, Judge Breyer has already noted "[i]t

13   makes little sense to have venue turn on the original location of documents and records that have

14   already been produced to the respective parties." *United States v. Napoli*, 3:10-CR-00642-CRB, 2011

15   WL 1303571, at *2 (N.D. Cal. Apr. 5, 2011).

16        The location of documents does not weigh against transfer and is, at most, a neutral factor.

17   **E.**   **Disruption to Mr. Rothenberg's business.**

18        Because Mr. Rothenberg will be residing in the Western District of Texas, any work he does

19   will necessarily be in that venue. Because it would be disruptive to his business to keep venue in the

20   Northern District of California when he no longer lives in this District, this factor weighs in favor of

21   transfer.

22   **F.**   **Expense to the parties.**

23        "[I]n a motion to transfer, which primarily focuses on minimizing inconvenience for the

24   defense, each party's ability to shoulder the expense matters more than the existence or size of that

25   expense." *Prasad*, 2018 WL 3706836, at *6.

26        Mr. Rothenberg simply cannot shoulder the expense of travelling back and forth between Texas

27   and California for two jury trials and ancillary court proceedings. Mr. Rothenberg is indigent,

28   insolvent and relying on his family for financial support. And it is not just travel for two lengthy

1  trials; it would be an additional burden to travel back and forth to meet with local counsel to prepare

2  for these two trials. While the last two years have demonstrated that Zoom is an acceptable substitute

3  for in person contact when absolutely necessary because of a public health emergency, it is also clear

4  that video meetings have their limits and there are crucial aspects of the criminal justice system that

5  require in person attendance. Thus, the inability to meet face to face with his attorney on a regular

6  basis given geographical distance is not just a factor that weighs in favor of transfer, it puts

7  significant strain on his Sixth Amendment right to counsel.

8        On the other side of the ledger is the federal government. "Courts have concluded that 'for all

9  practical purposes' the prosecution has 'unlimited financial resources to bring to bear' in pursuing its

10  case." *Prasad*, 2018 WL 3706836, at *6 (quoting *Robinson*, 2010 WL 3087446, at *6).

11        This factor weighs heavily in favor of transfer.

12  **G.   Location of counsel.**

13        Mr. Rothenberg is indigent and was previously represented by the Federal Public Defender's

14  Office, and then by undersigned counsel under the CJA when he left the Federal Public Defender's

15  Office. If the case is transferred to the WDTX, Mr. Rothenberg would likely be represented by the

16  Federal Public Defender there, which has several offices throughout the District including in Austin.

17        As for government counsel, the assigned prosecutors here may choose to try the case in the

18  WDTX or may choose to have the U.S. Attorney's Office for that District try the case. Either way,

19  given the government's "'unlimited financial resources to bring to bear' in pursuing its case," there is

20  no hardship on the government's ability to secure counsel. *Prasad*, 2018 WL 3706836, at *6 (quoting

21  *Robinson*, 2010 WL 3087446, at *6).

22        Because transfer works no hardship on either the defense or the government, this factor is at

23  most neutral.

24  **H.   Accessibility of place of trial.**

25        Both Oakland and Austin are equally accessible. Austin is the capital of Texas and has a major

26  international airport ten miles away from the federal courthouse. This factor is thus neutral.

27  **I.   Docket congestion.**

28        Statistics from the Administrative Office of the U.S. Courts demonstrates that the WDTX has a

1  less congested docket, disposes of cases quicker, and conducts trial faster than the NDCA. *See* Exh.

2  B, Administrative Office of the U.S. Courts, Federal Court Management Statistics, December 2021.[1]

3      The NDCA has seen an increase in the number of filings each year for the last five years, while

4  the WDTX has, at times, seen a decrease in filings. For the period ending December 31, 2020, the

5  NDCA saw a 6.6% increase in total filings in the current year over the year earlier; in the WDTX,

6  that increase was only 2.2 percent. *Id.* Partly as a result of the increase in filings, as of December 31,

7  2021, there were 13,012 pending civil and criminal cases in the NDCA compared to 9,909 pending

8  civil and criminal cases in the WDTX. *Id*. The NDCA has four times as many civil cases over three

9  years old (1,050) than the WDTX (227).

10      The fact the WDTX "terminates" more cases each year (11,197 in 2021) than the NDCA

11  (10,987 in 2021) helps explain how the WDTX maintains a less congested docket despite the fact

12  there are more filings per year in the WDTX (12,584 civil and criminal cases in 2021) than in the

13  NDCA (10,990 civil and criminal in 2021).[2]

14      Given the higher number of pending civil and cases per judgeship in the NDCA (929)

15  compared to the WDTX (762), it is unsurprising that the WDTX has a shorter median time from

16  filing to disposition of a felony criminal case (5.6 months) compared to the NDCA (16.1 months), or

17  that the WDTX conducted more trials per judgeship (26 in 2021) compared to the NDCA (8 in

18  2021).[3]

19      This factor thus weighs in favor of transfer. It would not meaningfully impose a burden on the

21  [1] *Available at*
22  https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2021.pdf.

23  [2] It is likely that part of the reason there are significantly more criminal cases in the WDTX (518
    criminal felony cases per judgeship in 2021) than the NDCA (36 criminal felony cases per judgeship
24  in 2021) is that much of the WDTX straddles the international border with Mexico, leading to an
    increase in illegal reentry after deportation cases and other border smuggling crimes in that district,
25  which typically get resolved quicker than the kinds of criminal cases prosecuted in the NDCA. *See
    United States v. Shayota*, 5:15-CR-00264-LHK, 2015 WL 9311922, at *6 (N.D. Cal. Dec. 23, 2015)
26  ("the Southern District [of California's] criminal immigration caseload helps explain this seeming
    discrepancy: such cases increase the volume of the Southern District's criminal docket, but are
27  relatively quicker to resolve than non-immigration cases.").

28  [3] This Court itself has already commented "I have 300 cases" and "in general in all my cases, civil
    and criminal, things are now taking a little longer to resolve sometimes than I want…it's just a
    function of how much work there is on the plate." Dkt. 121 at 8:20, 9:6-11.

DEFENDANT'S MOTION TO TRANSFER VENUE
*United States v. Rothenberg*, 3:20-CR-00266-JST

8

WDTX and would help to alleviate the congestion in this District. *See Prasad*, 2018 WL 3706836, at *6 (noting that "it is no secret that the Eastern District of California carries one of the most congested dockets in the country" as factor favoring transfer from Eastern District to Northern District of California).

**J.    Other special considerations.**

Two other considerations warrant transfer. First, it is still relatively early in the trial process. Jury trial on the first two counts is not set to begin for five more months, and there has not been extensive pretrial litigation outside of pure legal challenges to the indictment, and a request for a bill of particulars. No witness or exhibit lists, motions in limine or jury instructions have been filed. Moreover, the bulk of the case—counts 3 through 23—have not yet been set for trial. Thus, a transfer would not cause meaningful or burdensome delay.

Second, Mr. Rothenberg's familial support system is in Texas. Courts have recognized the existence of a party's "primary support system, to attend this trial or otherwise support his defense" is a factor weighing in favor of transfer. *Prasad*, 2018 WL 3706836, at *6 (citing *United States v. Radley*, 558 F. Supp. 2d 865, 877 (N.D. Ill. 2008) (finding transfer appropriate in part because more "convenient" for defendants and their families); *United States v. Aronoff,* 463 F. Supp. 454, 454 (S.D.N.Y. 1978) (granting transfer in part because denying it would deny the defendant support from his family and friends). Most of Mr. Rothenberg's family, including his parents, siblings, nieces and nephews, and aunts and uncles live in the Western District of Texas (with other family members living in the Houston area which is in the Southern District of Texas). That factor thus weighs in favor of transfer.

1

## **CONCLUSION**

2    Mr. Rothenberg respectfully requests this Court transfer his case to the Western District of

3  Texas.

4    Dated:    May 17, 2022                    Respectfully submitted,

5                                              MOEEL LAH FAKHOURY LLP

6

7

8                                              Hanni M. Fakhoury
                                               Attorneys for Michael Rothenberg

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28