STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
NICHOLAS J. WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Email: Kyle.Waldinger@usdoj.gov
    Email: Nicholas.Walsh@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 20-CR-00266 JST |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF TEXAS |
| v. | |
| MICHAEL BRENT ROTHENBERG, a/k/a MIKE ROTHENBERG, | Hearing Date:   June 24, 2022 |
| Defendant. | Hearing Time:   9:30 am |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION .................................................................................................................1

RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND .......................................1

    I.      The Criminal Complaint, Information, and Indictment. ....................................1

    II.     The Location of Alleged Victims. ...............................................................2

    III.    The Location of Other Witnesses. ...............................................................3

    IV.    Summary of Litigation to Date. ..................................................................4

LEGAL STANDARD...............................................................................................................4

    I.      Proper Venue in a Criminal Case is Generally in the District Where the
           Offense was Committed. .............................................................................4

    II.     Although a Defendant May Waive His Right to be Tried in the District Where
           the Offense was Committed, Courts Have Broad Discretion in Ruling on
           Motions for Interdistrict Transfer. ..............................................................5

ARGUMENT ......................................................................................................................7

    I.      Rothenberg Should be Tried in the NDCA Where He Allegedly Committed
           His Crimes. ...............................................................................................7

    II.     The Supreme Court's Factors to Balance When Contemplating Transfer
           Weigh Heavily in Favor of Keeping the Case in the NDCA. .............................8

          A.    Location of the Defendant. ..................................................................8

          B.    Location of Possible Witnesses. ..........................................................10

          C.    Location of Events Likely to be in Issue. ..............................................12

          D.    Location of Documents and Records Likely to be Involved. ................13

          E.    Disruption of Defendant's Business if Case Not Transferred. .............13

          F.    Expense of the Parties. ......................................................................14

          G.    Location of Counsel. .........................................................................15

          H.    Relative Accessibility of Place of Trial. ...............................................15

          I.     Docket Conditions of Each Potential District..........................................16

          J.     Any Other Special Elements Which Might Affect the Transfer...............17

CONCLUSION.....................................................................................................................18

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

3

*Jones v. Gasch*,

4
    404 F.2d 1231 (D.C. Cir. 1967) ............................................................................. 6

*Platt v. Minnesota Min. & Mfg. Co.*,

5
    376 U.S. 240 (1964) ............................................................................. 6, 7, 8, 9

6

*Travis v. United States*,

7
    364 U.S. 631 (1961) ............................................................................. 5, 7

8

*United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*,
    2019 WL 1024962 (N.D. Cal. Mar. 4, 2019) ...................................................... 8

9

*United States v. Allen*,

10
    ___ F.4th ___, 2022 WL 1532371 (9th Cir. May 16, 2022) ............................. 7

11

*United States v. Bagnell*,
    679 F.2d 826 (11th Cir. 1982) .......................................................................... 10

12

*United States v. Becker*,

13
    2013 WL 2237853 (D. Idaho May 21, 2013) .............................................. 17-18

14

*United States v. Bittner*,
    728 F.2d 1038 (8th Cir. 1984) ........................................................................... 9

15

*United States v. Bowdoin*,

16
    770 F. Supp. 2d 133 (D.D.C. 2011) .................................................................. 8

17

*United States v. Brockman*,

18
    2021 WL 28374 (N.D. Cal. Jan. 4, 2021) ....................................................... 17

19

*United States v. Cohen*,
    35 F.R.D. 227 (N.D. Cal. 1964) ................................................................. 8, 10

20

*United States v. Cores*,

21
    356 U.S. 405 (1958) ........................................................................................ 6

22

*United States v. Corona*,
    34 F.3d 876 (9th Cir. 1994) .......................................................................... 5, 7

23

24

*United States v. Flores-Elias*,
    650 F.2d 1149 (9th Cir. 1981) ......................................................................... 5

25

*United States v. Fritts*,

26
    2005 WL 3299834 (N.D. Cal. Dec. 6, 2005) .................................................. 8

27

*United States v. Haig*,
    2018 WL 8646839 (D. Nev. Oct. 10, 2018) .................................................. 16

28

*United States v. Hinton,*
  268 F. Supp. 728 (E.D. La. 1967) ................................................................................. 6

*United States v. Johnson,*
  323 U.S. 273 (1944) ....................................................................................................... 8

*United States v. Maldonado-Rivera,*
  922 F.2d 934 (2d Cir. 1990) .......................................................................................... 6

*United States v. McManus*
  Unit, 535 F.2d 460 (8th Cir. 1976) ............................................................................ 8, 9

*United States v. Meyers,*
  847 F.2d 1408 (9th Cir. 1988) ....................................................................................... 5

*United States v. Napoli,*
  2011 WL 1303571 (N.D. Cal. Apr. 5, 2011) ......................................................... 9, 12, 14

*United States v. Polizzi,*
  500 F.2d 856 (9th Cir. 1974) ................................................................................. 5, 9, 17

*United States v. Roberts,*
  618 F.2d 530 (9th Cir. 1980) ......................................................................................... 5

*United States v. Robinson,*
  2010 WL 3087446 (D.N. Mar. Is., July 29, 2010) .................................... 5-6, 13-14, 15-16

*United States v. Rodriguez-Moreno,*
  526 U.S. 275 (1999) ................................................................................................... 4, 5

*United States v. Shayota,*
  2015 WL 9311922 (N.D. Cal. Dec. 23, 2015) ..................................................... 6, 9, 12, 15

*United States v. Sherwood,*
  98 F.3d 402 (9th Cir. 1996) ........................................................................................... 5

*United States v. Testa,*
  548 F.2d 847 (9th Cir. 1977) ................................................................................. 5, 11, 17

*United States v. The Spy Factory,*
  951 F. Supp. 450 (S.D.N.Y. 1997) ................................................................................. 6

*United States v. U.S. Steel Corp.,*
  233 F. Supp. 154 (S.D.N.Y. 1964) ............................................................................ 11-12

*Wagner v. United States,*
  416 F.2d 558 (9th Cir. 1969) ...................................................................................... 5, 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONSTITUTIONS

United States Constitution, art. III, § 2, cl. 3 ......................................................... 4, 7

## STATUTES

18 U.S.C. § 3232 ...................................................................................................... 5

18 U.S.C. § 4285 ...................................................................................................... 9

## RULES

Federal Rule of Criminal Procedure 17 ..................................................... 12, 13, 14

Federal Rule of Criminal Procedure 18 ............................................................ 5, 10

Federal Rule of Criminal Procedure 21 ....................................................... 5, 6, 9, 11

**INTRODUCTION**

The United States respectfully submits its Opposition to Defendant Michael Rothenberg's Motion for Transfer Venue to the Western District of Texas.  *See* Dkt. 128.  As described below, this case is properly in the Northern District of California ("NDCA"), which is plainly where Rothenberg's various alleged crimes took place, where Rothenberg himself has lived for many years, where his former business continues to operate, where the greatest number of witnesses reside, where counsel for both sides live and work, and where the Court itself has expended a significant amount of time learning the case and adjudicating numerous pretrial motions.

The reasons for transfer advanced in Rothenberg's motion do not overcome these commonsense and reasonable reasons for the case to be in the NDCA.  Importantly, Rothenberg should not be allowed to disrupt his prosecution by deciding to relocate to Texas and create purported hardships regarding travel and communication with his attorney.  These types of hardships are easily ameliorated by taking a few simple steps, such as waiving Rothenberg's in-person appearance at hearings and paying for the travel costs associated with preparing and presenting his defense.

In short, just as the Court denied Rothenberg's earlier motion to transfer the case from Oakland to San Francisco due to the supposed hardship on Rothenberg of travelling to Oakland from San Francisco, so too should the Court deny Rothenberg's current motion to transfer.

**RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

**I.    The Criminal Complaint, Information, and Indictment.**

On June 24, 2020, a criminal complaint was issued by NDCA Magistrate Judge Thomas S. Hixson at the request of the United States, charging Rothenberg with wire fraud committed in San Francisco in July 2016.  Dkt. 1.  The United States filed an Information the next day, June 25, 2020, which was file-stamped on June 26, 2020.[1]  Dkt. 2.  The Grand Jury later returned an Indictment on

---

[1] That matter initially was assigned to the Honorable William Alsup.  On July 6, 2020, the United States filed its Notice of Related Case stating that this case was related to a civil case that was previously pending before this Court, *SEC v. Rothenberg*, 18-CV-05080 JST.  Dkt. 7.  On December 8, 2020, this Court issued its Related Case Order finding that the SEC case and this criminal case were "related within the meaning of Crim. L.R. 8-1(b)."  Dkt. 32.  Since that time, the case has proceeded before this Court in the Oakland venue.

August 20, 2020, which contained virtually the same allegations as the Information.  Dkt. 15.

The Indictment alleges that Rothenberg resided in San Francisco and that he had founded Rothenberg Ventures Management Company ("RVMC"), which maintained offices on Folsom Street in San Francisco.  Dkt. 15, ¶ 1.  The Indictment alleges that Rothenberg engaged in five schemes to defraud in the NDCA and elsewhere.  The largest of the schemes to defraud pertains to investments in certain venture capital funds managed or proposed to be managed by Rothenberg and RVMC.  *See id.*, ¶¶ 46-49 (Counts Sixteen through Twenty-Three).  Another scheme to defraud pertains to a "co-fund" investment into a software company.  *See id.*, ¶¶ 42-45 (Counts Twelve through Fifteen).  An additional scheme to defraud pertains to a $2 million investment Rothenberg obtained into River Studios.  *See id.*, ¶¶ 36-39 (Counts Five through Seven).  Finally, the remaining two schemes to defraud pertain to separate schemes to defraud Silicon Valley Bank.  *See id.*, ¶¶ 26-35 (Counts One through Four).

## II.     The Location of Alleged Victims.

As set forth below, many of the entities and individuals alleged to have been victims of Rothenberg's various schemes to defraud are headquartered, have offices, or reside in the NDCA.

*Counts One through Four.*  Silicon Valley Bank is alleged to have been the victim of the fraud and false statement charges alleged in Counts One through Four, which are encompassed by the first two schemes to defraud alleged in the Indictment.  Silicon Valley Bank maintains its headquarters in Santa Clara.  *See* www.svb.com/contact ("Main Office").

*Count Fourteen.*  The individual identified as "S.K." in the Indictment is alleged to have been a victim in Count Fourteen, which describes a wire in execution of the fourth alleged scheme to defraud in the Indictment.  The Indictment alleges that S.K. resided in the NDCA.  Dkt. 15, ¶ 16.  S.K.'s husband "E.J." is alleged to have been employed by one of the companies controlled by Rothenberg, River Studios.[2]  *Id.*  The government believes that both S.K. and E.J. continue to reside in the NDCA.

*Counts Sixteen, Nineteen, and Twenty.*  Two of the victims of the fifth and last scheme to defraud in the Indictment are alleged to reside in the NDCA: "M.A." (Count Sixteen) and "N.M." (Count

---

[2] The Indictment alleges that the River Studios business was also known as "Bend Reality LLC." Dkt. 15, ¶ 9.  Bend Reality's filings with the California Secretary of State list a Folsom Street address in San Francisco as the LLC's location.  *See* Ex. 1; *see also* Dkt. 15, ¶ 1 (alleging that "RVMC had offices on Folsom Street in San Francisco").

Twenty).  Dkt. 15, ¶¶ 18 & 21.  The government believes that those individuals continue to reside in the NDCA.  Moreover, one of the entities that is a victim of the same scheme (the Dolby Family Limited Partnership, *see* Dkt. 15, ¶ 4 & Count Nineteen and Dkt. 118, ¶ 4) is a Delaware limited partnership that maintains offices in San Francisco.  *See* Ex. 2 (California Secretary of State filings).

The remaining individuals and entities identified as victims in the substantive counts of the Indictment reside or have offices in various places outside of the NDCA, as summarized below:

- A Capital [ARChina Capital] is headquartered in China (specifically, in Hong Kong), Dkt. 15, ¶ 23;

- B.F. Limited Partnership [Binns Family Limited Partnership] is registered in Arizona, *id.*, ¶ 15;

- C Capital [CY Capital] is headquartered in China, *id.*, ¶ 22;

- G Inc. [GHF, Inc.] is a Cayman Islands company.  *Id.*, ¶ 14.  The witnesses associated with GHF, Inc., however, are located in Massachusetts and the Bay Area;

- R.G. and L.G. reside outside of California (specifically, in Massachusetts), *id.*, ¶ 17;

- H Corporation [HTC Corporation] is headquartered in Taiwan, *id.*, ¶ 19;

- K Capital [Korean Investment Partners] is headquartered in South Korea, *id.*, ¶ 24.  The company also has an office in Sunnyvale, California; and,

- P LLC [Pilot Grove Management LLC] and T LLC [Transcend VR LLC] are Nevada limited liability companies.  *Id.*, ¶ 12.  The witnesses associated with these LLCs reside in Las Vegas and the Chicago area.

III.   **The Location of Other Witnesses.**

Many of the other witnesses that the United States intends to call at trial are former employees of RVMC, River Studios, or other Rothenberg-controlled entities.  Although some of the individuals are known to now live outside of the NDCA and outside of California, the government believes that many or most of Rothenberg's former employees continue to reside in the Bay Area, within the NDCA.  This includes three employees (Brandon Farwell, Tom Leep, and Tommy Leep) who were also identified as potential investor-witnesses in the United States' Bill of Particulars.  *See* Dkt. 118, ¶¶ 6, 12 & 13.

Other entities and individuals identified in the Bill of Particulars as "additional investors who may be called to testify at trial or as to whom the United States may introduce evidence at trial," Dkt. 118, at 3:19-20, are believed to reside in various locations, including the Bay Area, Southern California, Massachusetts, Washington, Florida, or somewhere other than California.  For purposes of the instant

1    motion, the United States notes that it appears that two of these investors – Mike Balas and Nathanael

2    Hudson – reside in or have ties to Texas.  (A third potential investor-witness identified in the Bill of

3    Particulars – Mark Castleman – moved from Austin to California in mid-2016.)

4    **IV.    Summary of Litigation to Date.**

5         In addition to the facts that the Indictment alleges that the criminal acts took place in the NDCA

6    and that many victims and witnesses reside in the NDCA, the criminal case that has been pending since

7    mid-2020 has engendered significant litigation in the NDCA, including a number of contested motions

8    before this Court.  This litigation includes: (1) Rothenberg's *pro se* Motion to Dismiss; (2) extended

9    appointment-of-counsel proceedings; (3) a Motion to Dismiss based on statute of limitations grounds;

10   (4) a Motion for Intradistrict Venue Transfer; (5) a Motion to Sever; (6) a Motion to Dismiss for failure

11   to state an offense or to strike the omissions theory; and (7) a Motion to Strike Surplusage.

12        In addition to these proceedings and litigation, the United States filed a Bill of Particulars earlier

13   this year and the Court has scheduled a trial date for the severed Counts One and Two.  Moreover, the

14   United States has produced voluminous discovery in this case.  The government estimates that the

15   discovery produced to Rothenberg includes more than 348,000 "hard" Bates-numbered pages or items,

16   as well as a hard drive containing ~300GB of data.  The emails and other records on that hard drive have

17   been produced in "native" form and are "soft" Bates numbered up to 131,257.  The government last

18   made a major production of discovery to Rothenberg in or about April 2021, meaning that defense

19   counsel has invested a year's time in reviewing the discovery universe in this case.

20

21                                **LEGAL STANDARD**

22   **I.    Proper Venue in a Criminal Case is Generally in the District Where the Offense was**
     **Committed.**
23

24        Article III of the United States Constitution requires that "[t]he Trial of all Crimes . . . shall be

25   held in the State where the said Crimes shall have been committed."  This directive is "reinforced by the

26   Sixth Amendment's requirement that '[i]n all criminal prosecutions, the accused shall enjoy the right to

27   a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been

28   committed.'"  *United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999).  The venue statute and the

Federal Rules of Criminal Procedure likewise guarantee that the prosecution of a crime will take place within the state and district where the crime occurred.  18 U.S.C. § 3232; Fed. R. Crim. P. 18.  "Questions of venue in criminal cases are not merely matters of formal legal procedure.  They raise deep issues of public policy." *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994) (quoting *United States v. Barnard*, 490 F.2d 907, 910 (9th Cir. 1973)).

In evaluating the venue of any given prosecution, the court must "initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Rodriguez-Moreno*, 526 U.S. at 279.  The court must be aware that "venue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of 'a tribunal favorable' to it." *Travis v. United States*, 364 U.S. 631, 634 (1961) (quoting *United States v. Johnson*, 323 U.S. 273, 275 (1944)).  Conversely, "[t]he constitutional requirement is as to the locality of the offense, and not the personal presence of the offender." *Id.* (quoting *Armour Packing Co. v. United States*, 209 U.S. 56, 76 (1908)).

## II.   Although a Defendant May Waive His Right to be Tried in the District Where the Offense was Committed, Courts Have Broad Discretion in Ruling on Motions for Interdistrict Transfer.

A defendant may waive his constitutional right to be tried in the district where the crime is alleged to have been committed.  *See United States v. Roberts*, 618 F.2d 530, 537 (9th Cir. 1980) (citation omitted).  Accordingly, Federal Rule of Criminal Procedure 21(b) provides: "For Convenience.  Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim or witness, and in the interest of justice."  The decision to transfer from one district to another lies within the sound discretion of the trial court, and the defendant bears the burden of showing why a transfer is warranted.  *United States v. Polizzi*, 500 F.2d 856, 899 (9th Cir. 1974); *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977); *Wagner v. United States*, 416 F.2d 558, 562 (9th Cir. 1969).  Indeed, a trial court enjoys broad discretion in ruling on a motion to transfer venue for the convenience of the parties pursuant to Rule 21(b) and will only be reversed for an abuse of that discretion.  *See United States v. Sherwood*, 98 F.3d 402, 410 (9th Cir. 1996); *United States v. Meyers*, 847 F.2d 1408, 1411 (9th Cir. 1988); *United States v. Flores-Elias*, 650 F.2d 1149, 1150 (9th Cir. 1981), *cert. denied*, 454 U.S. 904 (1982); *United States v. Robinson*, 2010

WL 3087446, at *3 (D.N. Mar. Is., July 29, 2010). "Only in rare instances have appellate courts

overridden a trial court's decision not to transfer." *United States v. Shayota*, CR 15-00264 LHK, 2015

WL 9311922, at *1 (N.D. Cal. Dec. 23, 2015) (quoting *United States v. Ward*, 878 F.2d 387, *1 (9th Cir.

1989) (Table)).

The Supreme Court has provided that district courts presented with Rule 21(b) transfer requests

should, among other things, consider the following ten factors:

> (1) location of the defendant; (2) location of possible witnesses; (3) location of events
> likely to be in issue; (4) location of documents and records likely to be involved;
> (5) disruption of defendant's business if case not transferred; (6) expenses of the parties;
> (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of
> each potential district; and (10) any other special elements which might affect the transfer.

*Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243-44 (1964). Generally, courts do not treat any of

these factors as being singularly dispositive, but instead aim to "strike a balance and determine which

factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir.

1990) (quotation and alteration omitted); *see also Jones v. Gasch*, 404 F.2d 1231 (D.C. Cir. 1967)

(noting that "some amount of inconvenience – to Government or to petitioner, and perhaps to both – will

inevitably accompany petitioner's trial, wherever it might occur" and that "[t]he judge's challenge was

to strike the balance" between the various factors favoring convenience to one party or the other);

*United States v. The Spy Factory*, 951 F. Supp. 450, 455 (S.D.N.Y. 1997) ("A Court should not give any

one factor preeminent weight nor should it assume that the quantity of factors favoring one party

outweighs the quality of factors in opposition."). In this regard, courts have been clear that, while a

defendant has a constitutional right to be tried in the district where the crime was committed, he has no

corresponding right to be tried in the district where he resides (or, as here, where he intends to reside in

the future). *See Platt*, 376 U.S. at 245; *see also United States v. Hinton*, 268 F. Supp. 728, 731 (E.D. La.

1967) (noting that purpose of Rule 21(b) "is not to insure the defendant a trial in his home, or in any

particular place, but to insure him a fair trial"). As noted above, "questions of venue 'raise deep issues

of public policy,'" and there is a strong preference for holding trial in the original district where charges

are brought. *United States v. Cores*, 356 U.S. 405, 407 (1958) (quoting *United States v. Johnson*, 323

U.S. 273, 276 (1944); *United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964) ("As a

general rule a criminal prosecution should be retained in the original district.")

## ARGUMENT

Rothenberg does not allege that venue in this District is improper.  Indeed, because he resided in the NDCA, maintained an office and managed his venture capital funds in the NDCA, and because he took most of the acts alleged in the Indictment in the NDCA, venue properly lies in this District.  Instead, Rothenberg argues that his case should be transferred to the Western District of Texas ("WDTX"), because he intends to relocate to Austin after being evicted from his home in San Francisco, under the theory that it would be less of a hardship for him to face trial in Austin than in Oakland.  *See, e.g.*, Dkt. 128, at 4:12-19.

Rothenberg's motion should be denied because, as an initial matter, the interests of justice favor trying the case in the district where it was originally brought (*i.e.*, the NDCA) if venue is properly situated in that district.  Rothenberg's motion also should be denied because a careful assessment of the various factors laid out by the Supreme Court in *Platt*, 376 U.S. at 243-44, weigh heavily against transfer.  Both positions are set forth in more detail below.

## I.    Rothenberg Should be Tried in the NDCA Where He Allegedly Committed His Crimes.

As noted above, "[q]uestions of venue in criminal cases are not merely matters of formal legal procedure.  They raise deep issues of public policy."  *Corona*, 34 F.3d at 879.  Part of the policy consideration is the desire to have public trials in the place where crimes were committed so that the affected citizenry can witness the judicial system in action, as the Constitution contemplates.  *See* U.S. CONST. art. III, § 2, cl. 3.  "There is … a societal interest in public observation of trial proceedings because, among other things, such observation gives 'assurance to those not attending trials that others were able to observe the proceedings and enhanced public confidence.'"  *United States v. Allen*, ___ F.4th ___, 2022 WL 1532371, at *3 (9th Cir. May 16, 2022) (quoting *Press-Enterprise Co. v. Superior Ct. of California, Riverside Cty.*, 464 U.S. 501, 507 (1984)).  Thus, "[t]he constitutional requirement is as to the locality of the offense, and not the personal presence of the offender."  *Travis*, 364 U.S. at 634 (citation omitted).  It is in part for these reasons that the government brought charges in the NDCA in the first place.

Rothenberg's motion should therefore be denied because the interests of justice favor trying the case in the NDCA where the government originally brought the case because venue is properly situated

1  here.  *See Wagner v. United States*, 416 F.2d 558, 562 (9th Cir. 1969), *cert. denied*, 397 U.S. 923 (1970)

2  ("It might well have been more convenient to one or more defendants to have had a change of venue to

3  one or more other districts, but that reason is insufficient to require the trial judge to order a change of

4  venue."); *cf. also United States v. McManus*, 535 F.2d 460, 463 (8th Cir. 1976) ("[T]he government's

5  choice of forum is ordinarily to be respected.") (postal obscenity case); *United States v. Cohen*, 35

6  F.R.D. 227, 232 (N.D. Cal. 1964) ("The respective conveniences are [much] too evenly balanced to

7  deny the government the right to proceed in the forum originally chosen.").[3]

8
9  **II.     The Supreme Court's Factors to Balance When Contemplating Transfer Weigh Heavily in Favor of Keeping the Case in the NDCA.**

10         **A.     Location of the Defendant.**

11         Rothenberg currently resides in San Francisco, but he asserts that he is being evicted from his

12  home in San Francisco and intends to relocate to the Austin, Texas area, where his parents and extended

13  family live.  Dkt. 128, at 1:4-8 (noting that defendant intends to reside with his older brother).  Courts

14  have recognized that "it can be a hardship for a defendant to face trial far away from home and from

15  'appropriate facilities for defense.'"  *United States v. Aronoff*, 463, F. Supp. 454, 457 (S.D.N.Y. 1978)

16  (quoting *United States v. Johnson*, 323 U.S. 273, 276 (1944)).  But Rothenberg's future residence near

17  Austin does not in and of itself entitle him to be tried in the WDTX.

18         As an initial matter, a defendant has no constitutional right to be tried in his home district.  *See*

19  *Platt*, 376 U.S. at 245.  The fact that the WDTX encompasses Rothenberg's future home "has no

20  independent significance in determining whether transfer to that district would be 'in the interest of

21
22
23        [3] Rothenberg contends that there "is no presumption in criminal cases in favor of the
government's choice of forum," quoting Judge Alsup's venue transfer order in *United States v. Fritts*,
24  2005 WL 3299834, at *2 (N.D. Cal. Dec. 6, 2005).  Dkt. 128, at 4:7-8.  Although that order does include
the quoted conclusory statement, the court did not cite any legal authority for its assertion.  Rather, it
25  merely cited a civil case in which a plaintiff's choice of forum in a civil case is given deference.  *Id.*
(citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (explaining that "great weight is generally
26  accorded [to] plaintiff's choice of forum")).  Other courts have held that there is a presumption to the
government's choice of forum.  *See, e.g.*, *United States v. Bowdoin*, 770 F. Supp. 2d 133, 138 (D.D.C.
27  2011) ("There is a general presumption that a criminal prosecution should be retained in the original
district.") (citation omitted).  All that being said, the government recognizes that this Court has stated –
28  in the context of *qui tam* actions – that the relator's choice of forum is entitled to less deference where
the United States is the real party in interest.  *See United States ex rel. Tutanes-Luster v. Broker Sols.,
Inc.*, 2019 WL 1024962, at *3 (N.D. Cal. Mar. 4, 2019) (Tigar, J.).

justice,' although it may be considered with reference to such factors as the convenience of records, officers, personnel and counsel." *Id.* at 245-46; *see also Polizzi*, 500 F.2d at 900 ("Appellants' residence was a factor to be considered, but not controlling."); *United States v. Bittner*, 728 F.2d 1038, 1041 (8th Cir. 1984) (defendant's residence in another district "does not in itself entitled him to be tried" in that district); *McManus*, 535 F.2d at 463 ("Criminal defendants have no constitutional right to have a trial in their home districts, nor does the location of the defendant's home have 'independent significance in determining whether transfer to that district would be in the interest of justice.'" (quoting *Platt*, 376 U.S. at 245-46) (internal quotation marks omitted)).

Furthermore, this Court may take steps to minimize or reduce the burden of being prosecuted in the NDCA after Rothenberg moves to Texas.  For example, the Court could allow Rothenberg to waive his presence at non-essential appearances.  At least two other NDCA judges have adopted this approach for defendants who resided outside of the NDCA.  *See United States v. Shayota*, 2015 WL 9311922, at *2 (N.D. Cal. Dec. 23, 2015) (Koh, J.) (noting that court had previously waived defendants' appearances and would "discuss with counsel arrangements to mitigate the future burden imposed upon both the moving Defendants and their counsel"); *United States v. Napoli*, 2011 WL 1303571, at *1 (N.D. Cal. Apr. 5, 2011) (Breyer, J.) ("[B]ecause the Court has waived Defendant Napoli's presence at all non-essential court appearances, the time and financial burden on him has been mitigated.").

Moreover, to the extent that Rothenberg may be able to establish that he is indigent, this Court could further mitigate the burden on him by ordering the government to pay for his travel costs pursuant to 18 U.S.C. § 4285.  *See Shayota*, 2015 WL 9311922, at *2; 18 U.S.C. § 4285 ("Any judge or magistrate judge of the United States . . . may . . . direct the United States marshal to arrange for that person's means of noncustodial transportation or furnish the fare for such transportation to the place where his appearance is required.").

In addition, Rule 21(b) simply provides for the transfer from one district to another, but it says nothing about assignment of a transferred case once it arrives in the transferee district.  Here, the WDTX stretches from Waco to El Paso and from Midland to Del Rio.  It encompasses 68 counties and 93,000 square miles.  *See* www.justice.gov/usao-wdtx/offices-western-district-texas.  The WDTX is comprised of seven divisions, and there are District Judges sitting in that many cities in the district.  *See*

1  www.txwd.uscourts.gov/judges-information/judges-directory-biographies;

2  www.txwd.uscourts.gov/court-information/lcr-introduction.  The WDTX's Local Rules do not give a

3  clear indication as to how the Clerk would assign this case if it were to be transferred to that district.  *See*

4  www.txwd.uscourts.gov/court-information/lcr-criminal-rules.  Rather, it is possible that the case could

5  be assigned, not to a judge in Austin, but to a judge sitting in the nearby cities of Waco or San Antonio,

6  or even in El Paso (a day's drive across the state).  *But cf.* WDTX Rule CR-18 (stating that trial may be

7  held in any division consistent with Rule 18 and providing for transfer from a division if "there exists …

8  so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial"),

9  *available at* www.txwd.uscourts.gov/court-information/lcr-criminal-rules.

10  Finally, the NDCA is not a remote location and is only a four-hour flight from Austin.  There are

11  multiple daily nonstop flights from Austin to either Oakland and San Francisco, and at least one daily

12  nonstop flight from the nearby city of San Antonio.  Rothenberg has lived in San Francisco for many

13  years, and he is presumably well-acquainted and comfortable with the various ways to travel to and from

14  the Bay Area.  *See United States v. Cohen*, 35 F.R.D. 227 (N.D. Cal. 1964) (denying motion to change

15  venue, stating, "[i]t is not difficult to travel from Las Vegas to San Francisco, or vice versa.  The

16  defendant was at one time a resident of San Francisco for many years.").

17  For all of the reasons set forth above, while this factor arguably weighs in favor of transfer, the

18  inconvenience to Rothenberg of a trial in Oakland is not overwhelming and can be mitigated

19  significantly.  *See United States v. Bagnell*, 679 F.2d 826, 832 (11th Cir. 1982) ("the defendant's

20  concerns about the expense and inconvenience of being tried away from him are ordinarily of little

21  relevance to a motion for change of venue").

22  **B.      Location of Possible Witnesses.**

23  As set forth above, several victims are headquartered, have offices, or reside in the NDCA.

24  Other victims are located in China, Taiwan, and Korea.  Several other victims (or witnesses who would

25  testify on behalf of those victims) are located in Arizona, Illinois, Massachusetts, and Nevada.

26  Furthermore, many of Rothenberg's former employees who would likely testify as government

27  witnesses at trial are believed to continue to reside in the NDCA.  Moreover, as the United States noted

28  in its opposition to Rothenberg's Motion for Intradistrict Venue Transfer, there are numerous other

witnesses or potential witnesses who are believed to reside in California, including in "Alameda, Albany, Mill Valley, St. Helena, San Mateo, Menlo Park, Los Gatos, Carlsbad, San Diego, and . . . San Francisco." Dkt. 73, at 12:11-14. And for the trial scheduled for October 2022, the United States anticipates calling witnesses from Silicon Valley Bank (who are believed to reside in the Bay Area and Southern California) and from Merrill Lynch (who are believed to reside in or near Denver).

In contrast, the United States is aware of no victims identified in the Indictment's substantive counts (and no witnesses who would testify on behalf of those victims) who reside in the state of Texas.[4]

In short, many or most of the victims and government witnesses in this case are located in the Bay Area or in California, or are in a location where they could reach the Bay Area on one nonstop flight. Therefore, when trial is held in Oakland, the travel costs for the government's witnesses who live in the NDCA will be minimal and will consist of reimbursement for mileage and parking. As the Ninth Circuit has recognized, "[w]hile Rule 21(b) contemplates minimization of inconvenience to the defense, it has been recognized that some degree of inconvenience is inevitable, and that the government's inconvenience must be considered as well." *United States v. Testa*, 548 F.2d 847, 857 (9th Cir. 1977). Requiring the government to fly all of its witnesses to the WDTX is a great inconvenience which will create logistical issues regarding travel and will cause the government to incur transportation expenses that it would not otherwise have to incur.

For the victim-investors whose representatives would travel to trial from Asia, the Bay Area is undoubtedly a more convenient location than Austin or some other city in the WDTX. Indeed, in this regard, the Bay Area is extremely accessible from anywhere in the United States or the world because it has three major airports that are served by every or nearly every major airline. *See United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 158 (S.D.N.Y. 1964) ("The efficiency of modern air transportation renders rather sterile any argument based upon differences in distances from the respective

---

[4] While it is true that at least two investors identified in the United States' Bill of Particulars as being "additional investors who may be called to testify at trial or as to whom the United States may introduce evidence at trial," Dkt. 118, at 3:19-20, appear to reside in Texas (*i.e.*, Mike Balas and Nathanael Hudson), the other investors on that list are believed to reside in the Bay Area, Southern California, Massachusetts, Washington, Florida, or somewhere other than Texas. And, in any event, the United States has not determined that it will call those individuals as witnesses; it may simply present documentary evidence related to those individuals.

USA'S OPP. TO MTN. TO TRANSFER VENUE TO WDTX
20-CR-00266 JST

courthouses.").  In short, the government's witnesses are easily able to travel to Oakland for trial.
Travel to Austin, San Antonio, or El Paso would be more difficult.  Travel to some other location in the
WDTX (such as Waco, Del Rio, or Midland) would present additional difficulties.

In his motion, Rothenberg makes no proffer regarding the witnesses that he intends to call.
Notably, he does not contend that he will call any witnesses located in the WDTX or anywhere else in
that state.[5]  In any event, if Rothenberg is able to demonstrate that he cannot pay for the transport of his
own witnesses to this District, Rule 17(b) provides that these costs will be borne by the government.  *See*
Fed. R. Crim. P. 17(b) ("Upon a defendant's ex parte application, the court must order that a subpoena
be issued for a named witness if the defendant shows an inability to pay the witness's fees and the
necessity of the witness's presence for an adequate defense.  If the court orders a subpoena to be issued,
the process costs and witness fees will be paid in the same manner as those paid for witnesses the
government subpoenas.").  As the court in *Shayota* noted, "[t]his provision can thus ease the financial
burden upon the [defendant] . . . and assist [him] in presenting an effective defense."  *Shayota*, 2015 WL
9311922, at *2; *see also Napoli*, 2011 WL 1303571, at *1 (noting that Rule 17(b) provides for payment
of defense witness transportation costs upon an appropriate showing by the defendant).

In sum, the fact that a great number of victims and witnesses call the Bay Area and California
home, the relative accessibility of the Bay Area to Asia and other parts of the United States, and the fact
that few if any government or defense witnesses reside in Texas combine to make this factor weigh
heavily against transfer.

### C.   Location of Events Likely to be in Issue.

While it is true that the case is unlikely to turn on whether a particular conference room was used
to deceive investors, as the United States noted in earlier pleadings, it remains the case that the "nerve
center" of the acts alleged in the Indictment is San Francisco, Silicon Valley, and the NDCA.  The
events at issue in this case largely occurred in San Francisco and the Bay Area, as well as in Las Vegas
when Rothenberg traveled there for business.  The government is aware of no significant events at issue

---

[5]  Another judge in this District has noted that a defendant's failure to specify the expected
testimony of witnesses located in the proposed transferee district makes it more difficult to conclude that
the defendant had demonstrated that a transfer was warranted. *See Shayota*, 2015 WL 9311922, at *3
(citing *Testa*).

1  in the Indictment that occurred in the WDTX or anywhere else in Texas.  Indeed, although venue may

2  be proper for some of the offenses alleged in the Indictment in districts other than the NDCA, the

3  government is not aware of any facts that would allow any substantive count of the Indictment to be

4  properly venued in the WDTX absent Rothenberg's waiver.

5       The primacy of the NDCA is particularly true for the two counts severed from the remaining part

6  of the case set before the Court for trial on October 31, 2022.  Those two counts involve allegations that

7  Bay-Area-based Silicon Valley Bank was defrauded by Rothenberg in the refinancing of his home in

8  San Francisco.  Every part of that case is squarely within the NDCA.

9       Accordingly, the vast majority of the events at issue in this case occurred in the NDCA and none

10 occurred in the WDTX.  This factor weighs strongly against transfer.

11      **D.      Location of Documents and Records Likely to be Involved.**

12      The discovery volume in this case is huge, with hundreds of thousands of Bates-numbered

13 documents.  Although it is true that the documents in this case are largely digital, the fact of the matter is

14 that the government's documents and Rothenberg's discovery productions are located in the NDCA.

15 Moreover, RVMC (now known simply as "Rothenberg Ventures") is still managing many or most of the

16 venture capital funds at issue in this case, albeit with different managers and without Rothenberg's

17 participation.  RVMC continues to be located in the NDCA.  Although the government already has a

18 large number of RVMC records in its possession, it is possible that RVMC possesses additional records

19 that either the government or Rothenberg will seek with trial subpoenas.

20      For all of these reasons, this factor weighs against transfer.

21      **E.      Disruption of Defendant's Business if Case Not Transferred.**

22      Rothenberg argues that "any work he does will necessarily be in" the WDTX and that trial in this

23 District would therefore be disruptive.  Dkt. 128, at 6:17-21.  As an initial matter, Rothenberg does not

24 allege that he is employed, or that he currently runs any business, or even that he intends to obtain

25 employment in the WDTX.  On the contrary, he claims to be indigent, *id.* at 1:6, 5:21, 6:27 & 7:13, and

26 the government is unaware of any employment since the outset of this case.[6]  *Robinson*, 2010 WL

27 _____

28      [6] Rothenberg also notes that he has filed for bankruptcy.  Dkt. 128, at 1:5.  However, on June 1,
2022, NDCA United States Bankruptcy Judge Dennis Montali dismissed Rothenberg's case because of
his failure to file the required Statement of Current Monthly Income, Summary of Assets and Liabilities,

USA'S OPP. TO MTN. TO TRANSFER VENUE TO WDTX

20-CR-00266 JST                                                                                          13

1    3087446, at *6 ("The prosecution cogently points out that Robinson does not indicate in his moving

2    papers what 'business' is being disrupted by having venue remain in the CNMI.").  Accordingly, the

3    Court should give little weight to Rothenberg's unsubstantiated assertion that he will have any

4    "business" to be disrupted upon his relocation to the WDTX.

5         Should Rothenberg obtain employment once he moves to Texas, however, the last two years of

6    the pandemic have demonstrated that one no longer need reside where one is employed and that

7    employees are often allowed to be perform their work remotely all or part of the time.  Should

8    Rothenberg get a job upon his move to Texas, it is quite possible that he will be able to accomplish his

9    job duties from San Francisco when he travels here for meetings, appearances, or trial.  Furthermore, in

10   his search for employment, Rothenberg can take into account the fact that he has a pending criminal case

11   in Oakland and should therefore look for employment that allows him to work remotely.  *Cf. United*

12   *States v. Napoli*, 2011 WL 1303571, at *2 (N.D. Cal. Apr. 5, 2011) (Breyer, J.) ("[I]t is not obvious why

13   [defendant's] businesses cannot be looked after in his absence by others and/or why he would not be

14   able to oversee them remotely.").

15        Finally, to the extent that Rothenberg will need to be physically present in the Austin area for

16   business, this Court can take steps to mitigate any disruption by waiving Rothenberg's appearance,

17   conducting telephonic or video appearances, or otherwise accommodating Rothenberg's schedule.

18        Accordingly, this factor weighs against transfer.

19        **F.**     **Expense of the Parties.**

20        As noted above, trial in the WDTX will likely require every single witness in the case to get on a

21   plane and travel to that district for trial.  The costs for transporting those witnesses will be borne by the

22   government and by Rothenberg (or the government again, under Rule 17(b)).  In contrast, the courthouse

23   in Oakland is within commuting distance of a large number of government witnesses.  For those

24   witnesses, the government's expenses above and beyond the daily witness fee will largely be for parking

25

26   ───────────────

27   Statement of Financial Affairs, and other required bankruptcy schedules and documents.  *See In re*
     *Rothenberg*, 22-BK-30220, Dkt. 23 (Bankr. N.D. Cal. June 1, 2022).

28        Despite the fact that Rothenberg never filed detailed financial disclosures in his now-dismissed
     bankruptcy case, it is worth noting that he claimed to have assets of between $100,001 and $500,000 in
     his bankruptcy petition.  *See id.*, Dkt. 1, at 6.

and mileage.  Furthermore, as noted above, the Bay Area's airports make the NDCA at least marginally more accessible than the main courthouse locations in the WDTX (and much more accessible than some of the more remote courthouse locations there).

Even though Rothenberg may be required to expend resources if trial were held in Oakland, transferring the case would force the government and the taxpayers to bear a more significant financial burden.  Accordingly, the factor is either neutral or tips against transfer.

### G.    Location of Counsel.

Both of the lawyers for the government and Rothenberg's appointed counsel are located in the NDCA.  Although government counsel would have support services available to them if the case were transferred to Texas, the fact remains that government counsel's offices and practices are located in the NDCA, not in the WDTX.  Moreover, defense counsel has been working on this case for approximately 1.5 years and maintains an office in Oakland.  If defense counsel does not continue his representation of Rothenberg upon transfer of the case to the WDTX, then new counsel will have to be appointed there. This would create an attendant need for that new counsel to review the voluminous discovery, learn the case, engage in needed investigation, and determine whether to file any additional pretrial motions.  *See Shayota*, 2015 WL 9311922, at *5 ("If this action were transferred, new counsel would need to be appointed . . . .  New counsel would need to familiarize themselves with the voluminous discovery and complexities of this case.").

In short, if current defense counsel stays on the case, this factor weighs against transfer, because all of the lawyers are located in the NDCA.  If current counsel withdraws and new counsel is appointed in the WDTX, then transfer would increase the cost of the case and likely delay resolution. Accordingly, this factor weighs heavily against transfer.

### H.    Relative Accessibility of Place of Trial.

As noted above, the Bay Area has three major airports.  The courthouse locales in the WDTX appear to have airports of varying sizes.  Accordingly, while the Court may conclude that both districts are "accessible" to the parties in the grand sense, it should nevertheless conclude that the NDCA is *more accessible* in light of the fact that the Bay Area is a larger metropolitan area with multiple airports.  *See Robinson*, 2010 WL 3087446, at *7 (noting that while both District of Columbia and Mariana Islands

are "accessible," "the District of Columbia is the more accessible of the two venues").

This factor tips in favor of denying the motion to transfer.

## I.     Docket Conditions of Each Potential District.

As an initial matter, Rothenberg's contention that the WDTX has a "less congested docket" than the NDCA depends on one's perspective.  Rothenberg's motion considers all cases (both criminal and civil), but the WDTX's criminal docket is much larger than the NDCA's.  According to statistical tables published by the Administrative Office of the U.S. Courts, the WDTX had 4,871 pending felony criminal cases at the end of 2021, as opposed to the NDCA's 1,113.[7]  The WDTX's felony criminal cases are heard by, at most, 18 active and senior District Judges, which translates into a caseload of 270 felony criminal case per judge.  In the NDCA, there are approximately 17 active and senior District Judges who hear criminal cases; this results in an average criminal caseload of "only" 65 cases.[8]  Even though the matrix of WDTX cases likely includes a high number of immigration offenses that tend to resolve quickly, the delta between the average caseload in the WDTX and the NDCA is significant.  *See United States v. Haig*, 2018 WL 8646839, at *7 (D. Nev. Oct. 10, 2018) ("[B]ecause the District of Arizona has approximately three (3) times as many pending criminal cases but only two (2) times as many sitting judges, this factor weighs against transfer of venue.").  It seems clear that most judges in the WDTX would not agree with the statement: "I do not have enough criminal cases on my docket."

In any event, other courts have noted that the docket conditions of the two districts in question are of minimal importance.  *See Robinson*, 2010 WL 3087446, at *7 (noting that "relative conditions of the courts' dockets are of minimal significance" in light of Speedy Trial Act) (citing cases).  Indeed, in this case, the Court indicated early this year that it would find a place on its trial calendar to accommodate any trial-date request from the parties.  The Court followed through on that promise at the

---

[7] These figures are from Table D-1 available at the Administrative Office's website.  *See* www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

[8] Government counsel recognize that these average numbers differ from those offered by Rothenberg.  As Rothenberg notes, another data table published by the Administrative Office states that felony "Actions by Judgeship" amount to 518 in the WDTX and 36 in the NDCA.  *See* Dkt. 128, at 8 n.2; United States District Courts — National Judicial Caseload Profile, *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2021.pdf.  It appears that "Judgeship" is the number of active (non-senior) judges in a district.  The government's calculations set forth above in the text are based on the combined number of active and senior judges (counsel has not determined how many of the WDTX's senior judges continue to hear criminal cases).

last appearance by setting the October 31, 2022, trial date for the severed Counts One and Two. Although the government is willing to set a trial date for the remaining charges, the defense has indicated that it is not yet prepared to do that.  In short, there is nothing about the docket conditions in this District and nothing about Rothenberg's (in)ability to get a speedy trial that suggests that this case must be transferred to the WDTX because of relative docket conditions.  This Court's analysis of the docket-condition *Platt* factor should focus on whether a trial is likely to actually be speedier in the WDTX because of its less-crowded docket, not simply whether the WDTX's docket conditions are more favorable.  *But see United States v. Brockman*, 2021 WL 28374, at *6 (N.D. Cal. Jan. 4, 2021) (noting that "this [docket] factor does not turn on the defendant's request [for an early trial date] but on the relative conditions of the dockets") (Alsup, J.).  Here, given that new defense counsel likely will have to be appointed in Texas and given that two counts of the Indictment are already on this Court's trial calendar, it seems clear that the trial of Rothenberg's case is likely to be speedier in this District.

For all of these reasons, the United States submits that this factor is either neutral or tips in favor of keeping the case in the NDCA.

### J.    Any Other Special Elements Which Might Affect the Transfer.

This case has now been pending in the NDCA since mid-2020, and the parties first appeared before this Court in early 2021.  Since that time, Rothenberg has filed multiple motions, both procedural and substantive.  This Court has expended a significant amount of time adjudicating those motions and, in doing so, has become even more acquainted with the facts of the case than it was upon resolution of the parallel SEC civil case against Rothenberg.  Now that he has had most of his motions denied and is facing the prospect of an October 2022 trial, Rothenberg has moved to transfer venue to the WDTX.  As the Ninth Circuit has recognized, it is appropriate for a district court to consider the fact that a defendant has waited to file a motion for a change of venue.  *See Testa*, 548 F.2d at 857 ("[W]e must consider the fact that Epstein moved for change of venue only eight days before trial"); *Polizzi*, 500 F.2d at 901 (proper to require greater showing of inconvenience when transfer sought late in proceedings).  Moreover, when a case has been pending in a district for some time before the defendant files a motion for change of venue, it is fair to consider the court's and the parties' "sunk costs."  For example, the court in *United States v. Becker* denied a defendant's motion to transfer venue from Idaho to Oregon on

1   several grounds, including the fact that the case had been pending for nearly a year and the court had

2   "worked with counsel to find a trial date which works for all involved."  2013 WL 2237853, at *1 (D.

3   Idaho May 21, 2013).  The *Becker* court noted that transferring the case "to the District of Oregon at this

4   point will only delay the trial and inconvenience the District of Oregon." *Id.* So too in this case.  As this

5   Court stated when it denied Rothenberg's Motion for Intradistrict Venue Transfer, transferring this case

6   to another judge "could negatively impact the 'prompt administration of justice' given the time and

7   effort the Court has already devoted to understanding the facts of this case." Dkt. 80, at 4:8-10 (citing

8   *United States v. Scholl*, 166 F.3d 964, 970 (9th Cir. 1999)).

9

10                                          **CONCLUSION**

11          Careful consideration of the various factors in this case shows that Rothenberg's motion to

12   transfer venue to the WDTX should be denied.  The inconvenience to Rothenberg of a trial in Oakland

13   weighed against the inconvenience to the victims, witnesses, and government of a trial in an as-yet-to-

14   be-identified location in the WDTX does not suggest that the case should be transferred.  Moreover, the

15   events in question largely occurred in the NDCA, and the NDCA is the locus and focus of the criminal

16   conduct at issue. *See Becker*, 2013 WL 2237853, at *2 ("[A]lthough trying the case in Idaho will cause

17   some inconvenience to the defendant, when weighed against all the other factors suggesting the case

18   should remain in Idaho, the Court finds that the interests of justice require the case remain in the District

19   of Idaho.").

20          Rothenberg's motion to transfer should therefore be denied, and, if Rothenberg continues to

21   show that he is indigent, accommodations made for his court appearances and travel, as well as

22   reimbursement for travel for any defense witnesses at trial.

23

24   DATED:  June 3, 2022                        STEPHANIE M. HINDS
                                                 United States Attorney
25

26                                               ___/s/_____
                                                 KYLE F. WALDINGER
27                                               NICHOLAS J. WALSH
                                                 Assistant United States Attorneys
28

# Exhibit 1

| LLC-1 | **Articles of Organization**<br>**of a Limited Liability Company (LLC)** |
|---|---|

**2 0 1 6 1 1 2 1 0 2 6 4**

**FILED** <sup>by</sup>
**Secretary of State**
**State of California**



**APR 2 1 2016**

*/ L L*   This Space For Office Use Only

To form a limited liability company in California, you can fill out this form, and submit for filing along with:

– A **$70 filing fee**.
– A separate, non-refundable **$15 service fee** also must be included, if you **drop off** the completed form.

*Important!* LLCs in California may have to pay a minimum $800 yearly tax to the *California Franchise Tax Board. For more information, go to* https://www.ftb.ca.gov.

LLCs may not provide "professional services," as defined by California Corporations Code sections 13401(a) and 13401.3.

Note: *Before submitting the completed form,* you should consult with a private attorney for advice about your specific business needs.

**For questions about this form, go to** *www.sos.ca.gov/business/be/filing-tips.htm.*

**LLC Name**  (List the proposed LLC name exactly as it is to appear on the records of the California Secretary of State.)

① **Bend Reality LLC**
    *Proposed LLC Name*      The name **must** include: LLC, L.L.C., Limited Liability Company, Limited Liability Co., Ltd. Liability Co. or Ltd. Liability Company; and **may not** include: bank, trust, trustee, incorporated, inc., corporation, or corp., insurer, or insurance company.  For general entity name requirements and restrictions, go to www.sos.ca.gov/business/be/name-availability.htm.

**Purpose**

② The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

**LLC Addresses**

③ a. **1062 Folsom Street, San Francisco**      **CA**   **94103**
    *Initial Street Address of Designated Office in CA - Do not list a P.O. Box*     *City (no abbreviations)*    *State*   *Zip*

  b.
    *Initial Mailing Address of LLC, if different from 3a*      *City (no abbreviations)*    *State*   *Zip*

**Service of Process**  (List a California resident or a California registered corporate agent that agrees to be your initial agent to accept service of process in case your LLC is sued.  You may list any adult who lives in California.  You may **not** list an LLC as the agent.  **Do not** list an address if the agent is a California registered corporate agent as the address for service of process is already on file.)

④ a. **David Herzog**
    *Agent's Name*

  b. **248 3rd Street, #609, Oakland**      **CA**   **94607**
    *Agent's Street Address (if agent is **not** a corporation) - Do not list a P.O. Box*     *City (no abbreviations)*    *State*   *Zip*

**Management**  (Check only one.)

⑤ The LLC will be managed by:
    ◉ One Manager     ◯ More Than One Manager     ◯ All Limited Liability Company Member(s)

This form must be signed by each organizer.  If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11").  All attachments are made part of these articles of organization.

▶ *(signature)*          **David Herzog**
  *Organizer • Sign here*          *Print your name here*

| Make check/money order payable to: **Secretary of State** | **By Mail** | **Drop-Off** |
|---|---|---|
| Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | Secretary of State<br>Business Entities, P.O. Box 944228<br>Sacramento, CA 94244-2280 | Secretary of State<br>1500 11th Street, 3rd Floor<br>Sacramento, CA 95814 |

Corporations Code §§ 17701.04, 17701.08, 17701.13, 17702.01, Revenue and Taxation Code § 17941         2014 California Secretary of State
LLC-1 (REV 01/2014)                                                          www.sos.ca.gov/business/be

| Secretary of State Statement of Information (Limited Liability Company) | 90 | LLC-12 | 16-732304 FILED Secretary of State State of California MAY 2 4 2016 |
|---|---|---|---|

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee - $20.00**

Copy Fees - Face Page $1.00 & .50 for each attachment page,
Certification Fee - $5.00

21/20/pc

This Space For Office Use Only

**1.   Limited Liability Company Name**

Bend Reality LLC

| 2.   12-Digit Secretary of State File Number | 3.   State or Place of Organization (only if formed outside of California) |
|---|---|
| 201611210264 | CA |

**4.   Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1602 Folsom Street | San Francisco | CA | 94103 |

| b. Mailing Address of LLC, **if different than item 4a** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | CA | |

**5.   Manager(s) or Member(s)**   If no *managers* have been appointed or elected, provide the name and address of each *member*. At least one name and address must be listed. Attach additional pages, if necessary.

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Michael | | Rothenberg | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1602 Folsom Street | San Francisco | CA | 94103 |

**6.   Agent for Service of Process**   *Item 6a and 6b:* If the agent is an *individual*, the agent must reside in California and Item 6a and 6b must be completed with the agent's name and California address. **Item 6c:** If the agent is a California Registered **Corporate Agent**, a current agent registration certificate must be on file with the California Secretary of State and Item 6c must be completed (leave item 6a-6b blank).

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| David | | Herzog | |

| b. Street Address (if agent is not a corporation) - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 248 3rd Street #609 | Oakland | CA | 94607 |

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete item 6a or 6b |
|---|
| |

**7.   Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Business Holding Company |

**8.   Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9.   The Information contained herein, including any attachments, is true and correct.**

| 05/09/2016 | David Herzog | Attorney | [signature] |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

| Name: | David Herzog |
|---|---|
| Company: | 248 3rd Street #609 |
| Address: | Oakland, CA  94607 |
| City/State/Zip: | |

17-405157



**Secretary of State**
**Statement of Information**
(Limited Liability Company)

**143**   **LLC-12**

**FILED**
Secretary of State
State of California

**JAN 13 2017**

NF

This Space For Office Use Only

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee - $20.00**

Copy Fees - Face Page $1.00 & .50 for each attachment page,
Certification Fee - $5.00

**1.   Limited Liability Company Name**

Bend Reality LLC

| **2.   12-Digit Secretary of State File Number** | **3.   State or Place of Organization** (only if formed outside of California) |
|---|---|
| 201611210264 | CA |

**4.   Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1062 Folsom Street | San Francisco | CA | 94103 |
| b. Mailing Address of LLC, if different than item 4a | City (no abbreviations) | State | Zip Code |
| | | | |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
| | | CA | |

**5.   Manager(s) or Member(s)**   If no *managers* have been appointed or elected, provide the name and address of each *member*. At least one name and address must be listed. Attach additional pages, if necessary.

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Michael | | Rothenberg | |
| b. Address | City (no abbreviations) | State | Zip Code |
| 1062 Folsom Street | San Francisco | CA | 94103 |

**6.   Agent for Service of Process**   Item 6a and 6b: If the agent is an *individual*, the agent must reside in California and Item 6a and 6b must be completed with the agent's name and California address. Item 6c:  If the agent is a California Registered **Corporate** Agent, a current agent registration certificate must be on file with the California Secretary of State and Item 6c must be completed (leave item 6a-6b blank).

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| David | | Herzog | |
| b. Street Address (if agent is not a corporation) - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
| 248 3rd Street #609 | Oakland | CA | 94607 |
| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete item 6a or 6b | | | |
| | | | |

**7.  Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Business Holding Company |

**8.  Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| b. Address | City (no abbreviations) | State | Zip Code |
| | | | |

**9.  The information contained herein, including any attachments, is true and correct.**

| 1/9/17 | David Herzog | Attorney | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed.  SEE INSTRUCTIONS BEFORE COMPLETING.)

| Name: | ⌈ David Herzog | ⌉ |
|---|---|---|
| Company: | 248 3rd Street #609 | |
| Address: | Oakland, CA  94607 | |
| City/State/Zip: | ⌊ | ⌋ |

LLC-12 (REV 05/2016)

2016 California Secretary of State
www.sos.ca.gov/business/be

Exhibit 2

**201511200006**



LP-5   File # _____

## State of California
## Secretary of State

### Foreign Limited Partnership
### Application for Registration



**FILED**
Secretary of State
State of California

APR 16 2015

A $70.00 filing fee AND a certificate of good standing by an authorized public official of the jurisdiction of formation must accompany this form.

IMPORTANT – Read instructions before completing this form.

This Space For Filing Use Only

---

**Entity Name** (See Instructions for name requirements in the State of California.)

1. Name of Foreign Limited Partnership
   Dolby Family Ventures L.P.

2. Alternate Name (if the name in Item 1 does not comply with the requirements of California Corporations Code section 15901.08. See instructions.)

---

**Entity Addresses**

| | City | State | Zip Code |
|---|---|---|---|
| 3a. Street Address of Principal Office<br>2515 Scott Street | San Francisco | CA | 94115 |
| 3b. Mailing Address of Principal Office, if different from Item 3a<br>2515 Scott Street | San Francisco | CA | 94115 |
| 4. Address of Office Required in the Jurisdiction of Formation, if any<br>2711 Centerville Road Suite 400 | Wilmington | DE | 19808 |

---

**Date and Place of Organization**

5. The foreign limited partnership was formed on  04  –  09  –  2014  under the laws of  Delaware
   (MONTH)  (DAY)  (YEAR)  (STATE OR COUNTRY)

---

**Initial Agent for Service of Process in California** (If the initial agent is an individual, the agent must reside in California and both Items 6 and 7 must be completed. If the initial agent is a corporation, the agent must have a certificate pursuant to California Corporations Code section 1505 on file and Item 6 must be completed (leave Item 7 blank).)

6. Name of Initial Agent for Service of Process
   Patrick McCabe, Esq.

| 7. If an individual, Street Address of Initial Agent for Service of Process in CA | City | State | Zip Code |
|---|---|---|---|
| One Maritime Plaza, 18th Floor | San Francisco | CA | 94111 |

---

**General Partners** (Enter the names and addresses of all the general partners. Attach additional pages, if necessary. Attachments, if any, are incorporated herein by this reference and made part of this document.)

| 8a. Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Dolby Family Ventures LLC | 2515 Scott Street | San Francisco | CA | 94115 |
| 8b. Name | Address | City | State | Zip Code |
| | | | | |

---

**Foreign Limited Liability Limited Partnership**

9. ☐ Check this box if the foreign limited partnership is a foreign limited liability limited partnership.

---

**Execution** (This document must be signed by at least one general partner of the foreign limited partnership. If additional signature space is necessary, the signatures may be made on an attachment to this document.)

10. I declare I am the person who executed this instrument, which execution is my act and deed. By signing this document I affirm under penalty of perjury that the stated facts are true.

_____
Signature of General Partner

David Dolby, Manager, Dolby Family Ventures LLC
Type or Print Name of General Partner

LP-5 (REV 01/2013)

APPROVED BY SECRETARY OF STATE

6939627



PAGE  1

## *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "DOLBY FAMILY VENTURES L.P." IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE SIXTEENTH DAY OF APRIL, A.D. 2015.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "DOLBY FAMILY VENTURES L.P." WAS FORMED ON THE NINTH DAY OF APRIL, A.D. 2014.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.

5514007   8300

150519820

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 2296243

DATE: 04-16-15

You may verify this certificate online
at corp.delaware.gov/authver.shtml

201511200006



LP-6

## State of California
### Secretary of State

**Foreign Limited Partnership**
**Amendment to Application for Registration**

A $30.00 filing fee must accompany this form.
**IMPORTANT -- Read instructions before completing this form.**

**FILED**
Secretary of State
State of California

**JUL 2 1 2015**

I co

This Space For Filing Use Only

| **File Number** | **Entity Name** (Enter the exact name of the limited partnership.) |
|---|---|
| 1. CA Secretary of State File Number<br>**201511200006** | 2. Name Under Which the Foreign Limited Partnership Conducts Business in California<br>*Dolby Family Ventures L.P.* |

**Items 3 through 13:** (Complete ONLY the items to be amended or added by this filing. Attach additional pages if necessary. Any other matters to be included may be made on an attachment to this document. Any attachments are incorporated herein by this reference and made part of this document.)

**Entity Name as amended** (Complete Item 3 if the actual name of the foreign limited partnership has changed in the foreign jurisdiction AND include a certificate from an authorized public official in the foreign jurisdiction certifying that the limited partnership is in good standing and that the name was changed according to the laws of that jurisdiction. Complete Item 4 if amending or adding an alternate name in California. See instructions.)

3. Name of Foreign Limited Partnership As Amended in the Foreign Jurisdiction

4. Alternate Name (See instructions before completing Item 4.)

**Entity Addresses**

| | | City | State | Zip Code |
|---|---|---|---|---|
| 5a. Street Address of Principal Office<br>999 Brannan Street, Suite 114 | | San Francisco | CA | 94103 |
| 5b. Mailing Address of Principal Office, if different from Item 5a<br>999 Brannan Street, Suite 114 | | San Francisco | CA | 94103 |
| 6. Address of Office Required in the Jurisdiction of Formation, if any | | City | State | Zip Code |

**Agent for Service of Process** (If the agent is an individual, complete both Items 7 and 8. If the agent is a corporation, complete Item 7 and leave Item 8 blank.)

7. Name of Agent for Service of Process

| | City | State | Zip Code |
|---|---|---|---|
| 8. If an individual, Street Address of Agent for Service of Process in CA | City | CA | Zip Code |

**General Partner Information** (New Partner, Address Change, Name Change, and/or Withdrawn Partner(s))

| | Name | Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 9. New Partner | | | | | |
| 10. Address Change | Name<br>Dolby Family Ventures LLC | Address<br>999 Brannan Street, Suite 114 | City<br>San Francisco | State<br>CA | Zip Code<br>94103 |
| 11. Name Change | From: | | To: | | |
| 12. Withdrawn Partner(s) | Name: | | Name: | | |

**Foreign Limited Liability Limited Partnership**

13. ☐ Check this box if the foreign limited partnership is a foreign limited liability limited partnership.

**Execution** (This document must be signed by at least one general partner of the foreign limited partnership. If additional signature space is necessary the signatures may be made on an attachment to this document.)

14. I declare I am the person who executed this instrument, which execution is my act and deed. By signing this document I affirm under penalty of perjury that the facts stated are true.

_____
Signature of General Partner

David Dolby, Manager of Dolby Family Ventures LLC,
Type or Print Name of General Partner   **General Partner**

LP-6 (REV 12/2014)

LP-6



# State of California
## Secretary of State

**FILED** *AG*
Secretary of State
State of California

**NOV 1 4 2017**

*ICC*

This Space For Filing Use Only

## Foreign Limited Partnership
## Amendment to Application for Registration

**A $30.00 filing fee must accompany this form.**
**IMPORTANT – Read Instructions before completing this form.**

| File Number | Entity Name (Enter the exact name of the limited partnership.) |
|---|---|
| 1.  CA Secretary of State File Number<br>**201511200006** | 2.  Name Under Which the Foreign Limited Partnership Conducts Business in California<br>Dolby Family Ventures L.P. |

**Items 3 through 13:** (Complete ONLY the items to be amended or added by this filing. Attach additional pages, if necessary.  Any other matters to be included may be made on an attachment to this document. Any attachments are incorporated herein by this reference and made part of this document.)

**Entity Name as amended** (Complete Item 3 if the actual name of the foreign limited partnership has changed in the foreign jurisdiction AND include a certificate from an authorized public official in the foreign jurisdiction, certifying that the limited partnership is in good standing and that the name was changed according to the laws of that jurisdiction.  Complete Item 4 if amending or adding an alternate name in California.  See instructions.)

3.   Name of Foreign Limited Partnership As Amended in the Foreign Jurisdiction

4.   Alternate Name (See instructions before completing Item 4.)

**Entity Addresses**

| 5a. Street Address of Principal Office | | City | State | Zip Code |
|---|---|---|---|---|
| 999 Brannan Street, Penthouse | | San Francisco | CA | 94103 |
| 5b. Mailing Address of Principal Office, if different from Item 5a | | City | State | Zip Code |
| 999 Brannan Street, Penthouse | | San Francisco | CA | 94103 |
| 6.  Address of Office Required in the Jurisdiction of Formation, if any | | City | State | Zip Code |

**Agent for Service of Process** (If the agent is an individual, complete both Items 7 and 8.  If the agent is a corporation, complete Item 7 and leave Item 8 blank.)

7.   Name of Agent for Service of Process

| 8.   If an individual, Street Address of Agent for Service of Process in CA | City | State | Zip Code |
|---|---|---|---|
| | | **CA** | |

**General Partner Information** (New Partner, Address Change, Name Change, and/or Withdrawn Partner(s))

| 9.  New Partner | Name | Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 10. Address Change | Name<br>Dolby Family Ventures LLC | Address<br>999 Brannan Street, Penthouse | City<br>San Francisco | State<br>CA | Zip Code<br>94103 |
| 11. Name Change | From: | To: | | | |
| 12. Withdrawn Partner(s) | Name: | Name: | | | |

**Foreign Limited Liability Limited Partnership**

13.  ☐  Check this box if the foreign limited partnership is a foreign limited liability limited partnership.

**Execution** (This document must be signed by at least one general partner of the foreign limited partnership.  If additional signature space is necessary, the signatures may be made on an attachment to this document.)

14. I declare I am the person who executed this instrument, which execution is my act and deed.  By signing this document I affirm under penalty of perjury that the facts stated are true.

_____
Signature of General Partner

David Dolby, Manager of Dolby Family Ventures, LLC
Type or Print Name of General Partner

| LP-6 (REV 12/2014) | #8062514 | APPROVED BY SECRETARY OF STATE |