MOEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone:   (510) 500-9994
Email:      hanni@mlf-llp.com

Attorneys for Michael Rothenberg

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ROTHENBERG,<br><br>Defendant. | **Case No.:** 3:20-CR-00266-JST<br><br>**DEFENDANT'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF TEXAS**<br><br>**Court:**        Courtroom 6, 2nd Floor<br>**Hearing Date:**  June 24, 2022<br>**Hearing Time:**  9:30 a.m. |

1

# <u>TABLE OF CONTENTS</u>

2  TABLE OF AUTHORITIES.................................................................................................ii

3  INTRODUCTION ............................................................................................................1

4  ARGUMENT ....................................................................................................................2

5       A.      Mr. Rothenberg's location. .............................................................................3

6       B.      Location of possible witnesses..........................................................................5

7       C.      Where relevant events happened. ...................................................................8

8       D.      Location of relevant documents and records. ..............................................8

9       E.      Disruption to Mr. Rothenberg's business. ....................................................9

10      F.      Expense to the parties. ......................................................................................9

11      G.      Location of counsel............................................................................................10

12      H.      Accessibility of place of trial. .........................................................................11

13      I.      Docket congestion..............................................................................................11

14      J.      Other special considerations. .........................................................................13

15  CONCLUSION ...............................................................................................................14

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

### Cases

*Platt v. Minn. Mining & Manuf. Co.*, 376 U.S. 240 (1964)..............................................2, 3, 6

*United States ex rel. Haight v. Catholic Healthcare W.*, 01-CV-01202-PJH, 2001 WL 1463792 (N.D. Cal. Nov. 9, 2001)......................................................................................2

*United States ex rel. Tutanes-Luster v. Broker Solutions, Inc.*, 17-CV-04384-JST, 2019 WL 1024962 (N.D. Cal. Mar. 4, 2019)...............................................................................2

*United States v. Aronoff*, 463 F. Supp. 454 (S.D.N.Y. 1978)................................................14

*United States v. Brockman*, 20-CR-00371-WHA, 2021 WL 28374 (N.D. Cal. Jan. 4, 2021).......11, 12

*United States v. Fritts*, 05-CR-00216-WHA, 2005 WL 3299834 (N.D. Cal. Dec. 6, 2005) ............2, 7

*United States v. Gourley*, 06-CR-06011-RHW, 2006 WL 2585027 (E.D. Wash. Sept. 7, 2006)..........9

*United States v. Gundersen*, 978 F.2d 580 (10th Cir. 1992) ....................................................4

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990) .........................................2

*United States v. Napoli*, 10-CR-00642-CRB, 2011 WL 1303571 (N.D. Cal. Apr. 5, 2011) ................8

*United States v. Ng*, 20-CR-00171-JCC-5, 2022 WL 1478541 (W.D. Wash. May 10, 2022)...............4

*United States v. Prasad*, 16-CR-00244-KJM, 2018 WL 3706836 (E.D. Cal. Aug. 3, 2018) .......*passim*

*United States v. Radley*, 558 F. Supp. 2d 865 (N.D. Ill. 2008) ............................................14

*United States v. Robinson*, 2010 WL 3087446 (D. N. Mar. Is. July 29, 2010)................................8, 9

*United States v. Smith-Kilpatrick*, 17-CR-00005, 2017 WL 11573726 (W.D. Mich. Nov. 30, 2017) ..4

*United States v. Testa*, 548 F.2d 847 (9th Cir. 1977) ....................................................7, 13

### Statutes

18 U.S.C. § 4285 ...............................................................................................4, 5

28 U.S.C. § 1404 ...................................................................................................2

### Federal Rules

Federal Rule of Criminal Procedure 17 ...........................................................................7

Federal Rule of Criminal Procedure 21 ...............................................................*passim*

Federal Rule of Evidence 404 ......................................................................................7

1

## Other Authorities

2  Adam Liptak, "Public Defenders Get Better Marks on Salary," *New York Times*, Jul. 14, 2007........10

3  *In re Rothenberg*, 22-BK-30220 (Bankr. N.D. Cal. June 1, 2022) .......................................................10

4  Local Court Rules of the United States District for the Western District of Texas ..............................4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Pursuant to Federal Rule of Criminal Procedure 21, Michael Rothenberg moved to transfer venue in this case from the Northern District of California ("NDCA") to the Western District of Texas ("WDTX") following his eviction from his long-time residence in San Francisco. Dkt. 129, Defendant's Motion to Transfer Venue to the Western District of Texas ("Venue Motion"). The government opposes the motion, claiming the Court should not allow Mr. Rothenberg to "disrupt his prosecution by deciding to relocate to Texas and create purported hardships regarding travel and communication with his attorney," and should deny his motion to transfer "just as the Court denied [Mr.] Rothenberg's earlier motion to transfer the case from Oakland to San Francisco." Dkt. 131, United States' Opposition to Defendant's Motion to Transfer Venue to the Western District of Texas ("Gov. Oppo.") at 1.

The government's premise is flat wrong: Mr. Rothenberg is not "deciding" to relocate by choice but is being forced to relocate to the only place he can stay—a trailer provided by his brother outside of Austin, Texas—because he is insolvent and homeless. He is insolvent after the government sought and obtained a $30 million judgment in the civil SEC case it brought against him, and then indicted him in this complex criminal case. He is homeless after one of the alleged victims in this case, Silicon Valley Bank ("SVB"), aggressively and successfully moved to evict him from his home. SVB's eviction not only leaves Mr. Rothenberg homeless, but places significant strain on his ability to defend himself by forcing him to be 1,700 miles away from his defense attorney and the Courthouse where he will stand for jury trial.

This Court denied Mr. Rothenberg's request to transfer the case from Oakland to San Francisco because "there is no meaningful inconvenience in requiring him to travel to Oakland, a short commute that many individuals residing in both cities make daily with the aid of public transportation." Dkt. 80, Order Denying Motion for Intradistrict Venue Transfer at 3. The situation now is vastly different as travelling back and forth from Austin to Oakland is certainly not a "short commute" for anyone, let alone an indigent defendant like Mr. Rothenberg. Because the balance of the Rule 21 factors favor transfer, this Court should transfer this criminal case to the WDTX.

1

**ARGUMENT**

2

    While venue typically lies in the district where the crime occurred, Federal Rule of Criminal

3

Procedure 21(b) expressly allows "Upon the defendant's motion" a district court to "transfer the

4

proceeding, or one or more counts, against that defendant to another district for the convenience of

5

the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). In

6

assessing a Rule 21(b) motion, this Court must consider ten factors:

7

8

9

> (1) Where the defendant resides; (2) where possible witnesses reside; (3) where the
> relevant events happened; (4) where relevant documents and records are; (5) potential
> disruption to a defendant's business if transfer is denied; (6) expense to the parties; (7)
> location of counsel; (8) relative accessibility of place of trial; (9) docket congestion; and
> (10) other special considerations.

10

11

*United States v. Prasad*, 16-CR-00244-KJM, 2018 WL 3706836, at *3 (E.D. Cal. Aug. 3, 2018)

12

(citing *Platt v. Minn. Mining & Manuf. Co.*, 376 U.S. 240, 243-44 (1964)). "[C]ourts treat no single

13

factor as dispositive, but instead aim to 'strike a balance and determine which factors are of greatest

14

importance.'" *Prasad*, 2018 WL 3706836, at *3 (quoting *United States v. Maldonado-Rivera*, 922

15

F.2d 934, 966 (2d Cir. 1990)).

16

    Rule 21 clearly hinges on convenience and prejudice to the defendant and is not comparable to

17

the civil venue transfer rules. As Judge Alsup has noted, a Rule 21 "analysis is more defendant-

18

friendly than…the civil transfer rule under 28 U.S.C. § 1404(a)" because "only the defendant can

19

bring the motion whereas either side can bring it civilly," and because "there is no presumption in

20

criminal cases in favor of the government's choice of forum." *United States v. Fritts*, 05-CR-00216-

21

WHA, 2005 WL 3299834, at *2 (N.D. Cal. Dec. 6, 2005). As this Court itself has noted—and the

22

government acknowledges—when the plaintiff is the United States, the "weight" afforded the

23

plaintiff's choice of forum is "diminished." *United States ex rel. Tutanes-Luster v. Broker Solutions,*

24

*Inc.*, 17-CV-04384-JST, 2019 WL 1024962, at *3 (N.D. Cal. Mar. 4, 2019) (citing *United States ex*

25

*rel. Haight v. Catholic Healthcare W.*, 01-CV-01202-PJH, 2001 WL 1463792, at *4 (N.D. Cal. Nov.

26

9, 2001) (holding fact that "United States…is the real party in interest ... lessen[s] the deference

27

traditionally accorded the plaintiffs' choice of forum")); *see also* Gov. Oppo. at 8 n. 3.

28

    Considering these factors, venue should be transferred to the WDTX.

## A.    Mr. Rothenberg's location.

There is no question the fact that Mr. Rothenberg will be residing in a trailer provided by his brother in Texas weighs heavily in favor of transfer, and the government does not—because it cannot—suggest otherwise. *See* Gov. Oppo. at 10 (noting Mr. Rothenberg's location in Texas "weighs in favor of transfer"). Instead, the government claims "the inconvenience to Rothenberg of a trial in Oakland is not overwhelming and can be mitigated significantly." *Id.* It is wrong.

"The idea that the trial should occur either where the crime occurred or where the defendant resides is 'a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place.'" *Prasad*, 2018 WL 3706836, at *3 (quoting *Platt*, 376 U.S. at 245). When Mr. Rothenberg resided in San Francisco, prosecution in the NDCA would not result in "unfairness and hardship." But now that he has been evicted and must move to the WDTX, travelling back and forth from Texas to California for two lengthy jury trials when he is insolvent and has limited financial means is precisely the "unfairness and hardship" Rule 21 aims to alleviate.

The government claims the Court can "take steps to minimize or reduce the burden of being prosecuted in the NDCA after [Mr.] Rothenberg moves to Texas" by allowing him to "waive his presence at non-essential appearances." Gov. Oppo. at 9. Rather than outright waiving Mr. Rothenberg's presence, the Court can schedule future status conferences and non-essential court appearances to take place over Zoom so Mr. Rothenberg can participate, albeit remotely. While Zoom has certainly been convenient during the pandemic, there is no escaping the fact that Zoom is ultimately an inadequate substitute for in person court hearings, as reflected by the fact that the Courthouse itself is opening up to more in person court appearances.[1] But even with the ability to hold non-essential proceedings by Zoom or to waive Mr. Rothenberg's presence at non-essential court hearings, the fact remains that Mr. Rothenberg cannot waive his presence at his jury trials, or appear remotely for them. The burden of having to travel back and forth from Austin to Oakland for two separate and lengthy jury trials is a burden on Mr. Rothenberg that cannot be minimized or

---

[1] Incidentally, Zoom is only available as an option for Court proceedings because Congress authorized its use as a temporary measure in the CARES Act. When the temporary measures authorized by the CARES Act lapse, it is likely that Zoom will be unavailable for court appearances.

1  reduced at all.

2    The government claims the Court can order it to pay Mr. Rothenberg's travel expenses

3  pursuant to 18 U.S.C. § 4285. Gov. Oppo. at 9.[2] But that section authorizes only the reimbursement

4  of "transportation to the place where his appearance is required" and an "amount of money for

5  subsistence expenses to his destination, not to exceed the amount authorized as a per diem allowance

6  for travel." 18 U.S.C. § 4285. "[T]he plain language of the statute does not authorize any payment of

7  expenses incurred once a defendant arrives at the destination." *United States v. Smith-Kilpatrick*, 17-

8  CR-00005, 2017 WL 11573726, at *1 (W.D. Mich. Nov. 30, 2017); *see also United States v.*

9  *Gundersen*, 978 F.2d 580, 584 (10th Cir. 1992) ("the statute does not authorize payment of

10  subsistence during the period of trial; it authorizes payment only for the travel to court and

11  subsistence during the period of travel."). Nor does it authorize "travel expenses to return" to the

12  defendant's home district. *United States v. Ng*, 20-CR-00171-JCC-5, 2022 WL 1478541, at *1 (W.D.

13  Wash. May 10, 2022). Section 4285 only authorizes reimbursement of transportation to appear for a

14  scheduled court appearance, and not other ancillary appearances in the district, such as travel to meet

15  a defense attorney in person. Thus, § 4285 will cover a plane ticket for Mr. Rothenberg to fly from

16  Austin to Oakland for a specific court appearance but will not cover any expenses while Mr.

17  Rothenberg is in the NDCA, including lodging during two jury trials estimated to last for more than a

18  month combined, transportation or subsistence within the District during those trials, or travel to the

19  district to meet with his attorney.

20    The government argues that "the WDTX stretches from Waco to El Paso and from Midland to

21  Del Rio" and there is no guarantee that transfer would result in the case being assigned to a judge in

22  Austin. Gov. Oppo. at 10. The WDTX's local rules makes clear that the Austin division encompasses

23  Travis County, which is where the city of Austin is located.[3] This Court could thus transfer the case

24       ————————————

25  [2] To be clear, Mr. Rothenberg established he was indigent on November 16, 2020 when the
26  Honorable Jacqueline S. Corley reviewed his financial affidavit and appointed the Federal Public
   Defender to represent him. *See* Dkt. 30-31; *see also* Gov. Oppo. at 9.

27  [3] *See* Local Court Rules of the United States District for the Western District of Texas ("WDTX
   Local Rules") at vi, available at https://www.txwd.uscourts.gov/wp-
28  content/uploads/Documents/Local%20Court%20Rules/Local%20Court%20Rules%20(Full)%200624
   21.pdf.

to the Austin division of the WDTX. But even if the Court cannot or does not do that, and for some

reason the case is randomly assigned to one of the other divisions of the WDTX, the local rules

permit a case to be transferred to "any division within the district consistent with Federal Rule of

Criminal Procedure 18" or "any other division within the district, if the court is satisfied that there

exists in the division where the prosecution is pending so great a prejudice against the defendant."[4]

Given that this Court would transferring the case to the WDTX necessarily because Mr. Rothenberg

is residing in Travis County, and given the fact the WDTX would likely be less than enthusiastic to

compensate either Mr. Rothenberg, pursuant to 18 U.S.C. § 4285, or an appointed defense attorney,

pursuant to the Criminal Justice Act, for excessive travel all over the state of Texas, it is highly likely

the WDTX would assign the transferred case to the Austin division.

Even if that is not the case, *any* location in the WDTX would be less onerous than requiring

Mr. Rothenberg to travel from Texas to the Bay Area. The Waco federal courthouse is approximately

102 miles away from the Austin federal courthouse; the San Antonio courthouse is 80 miles away

from the Austin federal courthouse, the equivalent of driving from Oakland to Sacramento. While the

El Paso courthouse is 577 miles away from the Austin courthouse, that is ultimately a 90-minute

plane ride from Austin, a far cry from the approximately 1,700-mile distance and four-hour plane ride

to fly from Austin to Oakland.

Thus, contrary to the government's claim otherwise, the inconvenience to Mr. Rothenberg of

standing trial in Oakland is overwhelming and strongly favors transfer to the WDTX.

**B.** <u>**Location of possible witnesses.**</u>

The government notes there are numerous witnesses who reside not only outside the Bay Area,

nor even outside of California, but outside of the United States altogether. That includes witnesses

located in China, Taiwan, Korea, as well as in Arizona, Florida, Illinois, Massachusetts, Nevada,

Washington and—after contradicting itself in its brief—even Texas. *See* Gov. Oppo. at 10, 11 n. 4;

*compare* Gov. Oppo. at 11 (government "is aware of no victims…and no witnesses who would testify

on behalf of those victims" in Texas) *with* Gov. Oppo. at 11 n. 4 (admitting "at least two investors

---

[4] WDTX Local Rule CR-18(a)(2)(B).

1    identified in…Bill of Particulars…appear to reside in Texas"). The existence of these witnesses

2    outside California undercuts the government's argument that NDCA is the only proper venue because

3    that is where the alleged crimes took place. *Id.* at 7. Again, "trial should occur either where the crime

4    occurred or where the defendant resides" as "'a safeguard against the unfairness and hardship

5    involved when an accused is prosecuted in a remote place.'" *Prasad*, 2018 WL 3706836, at *3

6    (quoting *Platt*, 376 U.S. at 245). If an alleged crime takes place in multiple locations, venue is more

7    properly situated where the defendant resides. But to be clear Mr. Rothenberg is not challenging the

8    propriety of venue as a constitutional matter, and if he were not being evicted from his home and

9    forced to move back to Texas with family, there would be no issue with the case proceeding in the

10   NDCA.

11        The fact numerous witnesses are located outside of the NDCA weighs in favor of transferring

12   venue to the WDTX. For witnesses coming from the East Coast, Austin might be *more convenient*

13   because it is closer to them than Oakland. The government asserts that for witnesses travelling from

14   Asia, the Bay Area is "undoubtedly a more convenient location than Austin or some other city in the

15   WDTX" because it has "three major airports." Gov. Oppo. at 11. But that is mere conjecture, and the

16   government cites nothing to support that point. In fact, it is likely the other way around. Texas has

17   two of the largest and busiest airports in the country—Dallas/Fort Worth (DFW) and George Bush

18   Intercontinental Airport in Houston (IAH)—within 200 miles of Austin, and both of those airports are

19   larger and busier than San Francisco International Airport (SFO). While Austin has a smaller and less

20   busy airport (AUS) than DFW and IAH, Austin's airport is both bigger and busier than the airports in

21   Oakland (OAK) and San Jose (SJC).

22        Moreover, the fact that there are multiple potential witnesses from all over the country—and

23   indeed the world—means the government can choose to call witnesses least inconvenienced by

24   travelling to the WDTX. Given the breadth of potential witnesses at the government's disposal—and

25   its concession in a footnote that it may not even call individuals as witnesses and "may simply

26   present documentary evidence related to those individuals"—transferring the case to the WDTX is

27   less burdensome than it would be if the essential witnesses the government must call were all located

28   in the NDCA. *See* Gov. Oppo. at 11 n. 4.

1    The government has already conceded that many of the witnesses for the trial on counts 1 and 2

2    scheduled for October 2022 do not reside in the NDCA; a witness from Merrill Lynch resides in

3    Denver, Colorado—which is closer to Austin than Oakland—and at least one witness from Silicon

4    Valley Bank resides in Southern California. *See* Gov. Oppo. at 11. Moreover, "[n]ot all

5    witnesses…have equal value in this venue-transfer analysis." *Fritts*, 2005 WL 3299834, at *3.

6    Government witnesses from deep pocketed major companies such as Silicon Valley Bank and Merrill

7    Lynch will have their roundtrip travel, meals and lodging reimbursed, a courtesy not extended to the

8    insolvent Mr. Rothenberg as explained earlier.

9          The same is true of witnesses in the NDCA, who again will be extended the courtesy of full

10   reimbursement by the government. The government complains about the "travel costs" it would have

11   to expend to fly witnesses to the WDTX and laments the fact it would only have to reimburse

12   witnesses in the NDCA for "mileage and parking" if the case proceeded in Oakland. Gov. Oppo. at

13   11. Citing *United States v. Testa*, 548 F.2d 847 (9th Cir. 1977), it argues "the government's

14   inconvenience must be considered as well." *Id.* (citing *Testa*, 548 F.2d at 857). But that case

15   highlights how petty the government's complaints are here. In *Testa*, the Ninth Circuit affirmed the

16   district court's decision to not transfer venue under Rule 21(a) when one of two defendants charged

17   in a conspiracy "moved for change of venue only eight days before trial" and when the transfer

18   "would have severed the two defendants' trials." 548 F.2d at 857. A transfer of venue here would do

19   no such thing. Mr. Rothenberg is the sole defendant in the case and moved for the venue transfer

20   immediately after he had been ordered to leave his house—a process he telegraphed to the

21   government was a possibility from his initial appearance two years ago—and well before a jury has

22   been selected, motions *in limine* have been filed, or witnesses have begun to make travel plans to

23   testify at trial.

24         As for defense witnesses, Mr. Rothenberg is still in the process of preparing his defense and is

25   unsure who, if any, witnesses he will call at either trial. But any character witnesses he could

26   theoretically call under Federal Rule of Evidence 404(a) would likely be in the WDTX. For witnesses

27   outside the WDTX, as the government notes, Mr. Rothenberg can invoke Federal Rule of Criminal

28   Procedure 17(b) to have the government bear witness costs. Gov. Oppo. at 12. While the government

1  claims that weighs in favor of keeping the case in the NDCA, that fact equally weighs in favor of

2  transferring the case to the WDTX because regardless of where the trial takes place, Mr. Rothenberg

3  can rely on Rule 17 to ensure he can secure witnesses favorable to his defense.

4  **C.**    **Where relevant events happened.**

5         The government notes "that the case is unlikely to turn on whether a particular conference

6  room was used to deceive investors" and that "venue may be proper for some of the offenses alleged

7  in the Indictment in districts other than the NDCA." Gov. Oppo. at 12, 13. Thus by the government's

8  own admission, this factor does not weigh against transfer.

9         The government asserts that the "primacy of the NDCA is particularly true for the two counts

10  severed from the remaining part of the case" involving a purported scheme to defraud Silicon Valley

11  Bank. Gov. Oppo. at 12. But again, that entire case involves conduct primarily taking place on

12  telephone and by email, with witnesses by the government's own admission residing in Denver and

13  Southern California. The location of the events does not weigh against transfer.

14  **D.**    **Location of relevant documents and records.**

15         The government notes the discovery in this case is "huge" and "largely digital." Gov. Oppo. at

16  13. While it claims, "the government's documents and Rothenberg's discovery productions are

17  located in the NDCA," *id.*, that is no obstacle to transfer "[b]ecause documents in the electronic age

18  can be 'easily transported,'" and so "their location is weighed only slightly in a venue transfer

19  analysis." *Prasad*, 2018 WL 3706836, at *5 (quoting *United States v. Robinson*, 2010 WL 3087446,

20  at *5 (D. N. Mar. Is. July 29, 2010)). Moreover, Judge Breyer has already rejected the government's

21  argument that the location of the documents means a case should stay in the NDCA because "[i]t

22  makes little sense to have venue turn on the original location of documents and records that have

23  already been produced to the respective parties." *United States v. Napoli*, 10-CR-00642-CRB, 2011

24  WL 1303571, at *2 (N.D. Cal. Apr. 5, 2011).

25         Indeed, the government's discovery productions in this case have been entirely digital,

26  accomplished through USAfx, a cloud storage program designed by Box for discovery production, or

27  via external hard drive. Because the documents can be accessible anywhere, this factor does not

28  weigh against transfer.

**E.**   **Disruption to Mr. Rothenberg's business.**

While Mr. Rothenberg is not currently working, any work he finds will necessarily be in the WDTX which is where he will be living. The government claims that because of the pandemic, "employees are often allowed to…perform their work remotely all or part of the time" and thus Mr. Rothenberg should look "for employment that allows him to work remotely." Gov. Oppo. at 14.[5] But given his pending criminal case, the chances of Mr. Rothenberg finding a white-collar job that allows him to work remotely from a computer are non-existent. It is much more likely that any work Mr. Rothenberg finds will be blue collar, manual labor work which may require him to be tied to a specific location. That is ultimately hypothetical at this moment but when Mr. Rothenberg finds work, it will undoubtedly be less disruptive to his work if venue were transferred to the WDTX.

**F.**   **Expense to the parties.**

"[I]n a motion to transfer, which primarily focuses on minimizing inconvenience for the defense, each party's ability to shoulder the expense matters more than the existence or size of that expense." *Prasad*, 2018 WL 3706836, at *6. The government complains "transferring the case would force the government and the taxpayers to bear a more significant financial burden." Gov. Oppo. at 15. But that is wrong. The "United States has the largest and most powerful legal office in the nation, if not the world." *United States v. Gourley*, 06-CR-06011-RHW, 2006 WL 2585027, at *4 (E.D. Wash. Sept. 7, 2006). "'[F]or all practical purposes' the prosecution has 'unlimited financial resources to bring to bear' in pursuing its case." *Prasad*, 2018 WL 3706836, at *6 (quoting *Robinson*, 2010 WL 3087446, at *6). Requiring the government to shoulder the expense of flying witnesses to the WDTX for one or two days at a time is negligible given the government's immense power and financial resources.

On the other side of the ledger is Mr. Rothenberg, who is insolvent and bankrupt[6] and forced to

---

[5] Incidentally, more than two years into the pandemic, many employers are ending remote work or scaling it back considerably. Indeed, neither the U.S. Attorney's Office nor Federal Public Defender's Office allows its employees to work from home all the time anymore.

[6] The government notes Mr. Rothenberg "claimed to have assets of between $100,001 and $500,000 in his bankruptcy petition" that was ultimately dismissed. Gov. Oppo. at 14 n. 6. It fails to note that Mr. Rothenberg also reported liabilities of between $10,000,001 and $50 million, primarily driven by the $30 million SEC judgment this Court issued against him. *See In re Rothenberg*, 22-BK-30220,

1   relocate to Texas and rely on the support of his family. He simply cannot shoulder the expense of

2   travelling back and forth between Texas and California for two jury trials and ancillary court

3   proceedings. This factor weighs heavily in favor of transfer.

4   **G.    Location of counsel.**

5          The government admits that it "would have support services available to them if the case were

6   transferred to Texas." Gov. Oppo. at 15. In other words, the two prosecutors assigned to this case

7   would continue to work on it in the WDTX, an admission that a transfer works no inconvenience for

8   the government at all who, as noted earlier, is the most powerful and well-resourced litigant in court.

9   The government thus spends its entire discussion of this factor speaking about defense counsel,

10  noting that transfer is unwarranted if "current defense counsel stays on the case…because all of the

11  lawyers are located in the NDCA" or, if "current counsel withdraws and new counsel is appointed in

12  the WDTX," transfer is unwarranted because it "would increase the cost of the case and likely delay

13  resolution." *Id.*

14         It is likely that if the case is transferred, current counsel would withdraw and new counsel from

15  Texas—and most likely the Federal Public Defender's Office—would be appointed to represent Mr.

16  Rothenberg. Given the institutional resources available to the Federal Public Defender, it is likely

17  more cost effective for them to assume representation than a new CJA attorney.[7] While it will

18  undoubtedly take some time for a new attorney to get up to speed on the case, much has already been

19  done that will help speed the process along. The case has already been severed into two parts, and the

20  first two counts currently set for trial in October 2022 are discrete, involve a limited set of documents

21  and witnesses, and could theoretically still proceed to trial by the fall even in the WDTX. Numerous

22  legal challenges to the indictment have already been resolved and a bill of particulars has issued to

23  provide significant more detail about the investors at issue in the remainder of the case yet to be set

24  for trial.

25  _____

26  (Bankr. N.D. Cal. 2022), Dkt. 1 at 6 .

27  [7] One study by a Harvard economist comparing Federal Public Defenders to CJA counsel found that
    "appointed lawyers…cost taxpayers $61 million a year more than salaried public defenders would

28  have cost." Adam Liptak, "Public Defenders Get Better Marks on Salary," *New York Times*, Jul. 14,
    2007, *available at* https://www.nytimes.com/2007/07/14/us/14defenders.html.

1    Thus, any delay caused by bringing a new defense attorney up to speed does not weigh against

2    transfer.

3    **H.    Accessibility of place of trial.**

4    Again the government claims without evidence that "the NDCA is *more accessible* in light of

5    the fact that the Bay Area is a larger metropolitan area with multiple airports." Gov. Oppo. at 15

6    (emphasis in original). As noted earlier, two of the largest airports in the country—DFW and IAH,

7    both of which are larger and busier than SFO—located in two of the largest metropolitan areas in the

8    country—Dallas and Houston—are within 200 miles of Austin. The Houston and Dallas metropolitan

9    areas are significantly larger than the San Francisco Bay Area; so is Austin, which is a significantly

10   larger city by population and area than both San Francisco and Oakland. This is not a situation where

11   the case would be transferred to a far flung, rural courthouse in an inaccessible locale.

12   Thus, the fact Mr. Rothenberg seeks transfer to a major federal district located in the state

13   capital of the second largest state in the country is a factor that weighs in favor of transfer, at least

14   does not weigh against transfer. *See United States v. Brockman*, 20-CR-00371-WHA, 2021 WL

15   28374, at *6 (N.D. Cal. Jan. 4, 2021) (in Rule 21 analysis, finding "both Houston and San Francisco

16   constitute major metropolitan areas. This factor remains neutral.").

17   **I.    Docket congestion.**

18   In his opening motion, Mr. Rothenberg provided detailed statistics from the Administrative

19   Office of the U.S. Courts ("AO") that established the WDTX has a less congested docket than the

20   NDCA. Venue Motion at 8; Exh. B. The government argues that conclusion "depends on one's

21   perspective" and that "it seems clear that most judges in the WDTX would not agree with the

22   statement: 'I do not have enough criminal cases on my docket.'" Gov. Oppo. at 16.

23   But that is not the point. It is likely that no federal judge, whether in the NDCA or WDTX or

24   any other federal district, wants more criminal cases (or civil cases for that matter) on their docket.

25   The issue is whether transfer would be burdensome on the transferee district. As demonstrated by the

26   AO statistics, transfer would not be burdensome to the WDTX, which disposes of cases quicker,

27   terminates more cases each year, and has fewer pending cases than the NDCA.

28   For the same reason, the government's emphasis on the fact the Court "followed through" on

DEFENDANT'S REPLY TO U.S. OPPOSITION TO MOTION TO TRANSFER VENUE
*United States v. Rothenberg*, 3:20-CR-00266-JST

1    its "promise" to "accommodate any trial-date request from the parties" is also beside the point. Gov.

2    Oppo. at 16. Mr. Rothenberg is not seeking transfer due to his "(in)ability to get a speedy trial," but

3    because he will be residing in Texas, and travel to California will be burdensome as he is indigent.

4    Gov. Oppo. at 17. Judge Alsup has already rejected the government's argument that a defendant "has

5    not requested an earlier trial date than this district can accommodate" as irrelevant in a Rule 21

6    analysis because the docket conditions "factor does not turn on the defendant's request but on the

7    relative conditions of the dockets." *Brockman*, 2021 WL 28374, at *6. Again, the docket condition

8    issue is merely about whether transferring the case would prejudice the receiving district. Given the

9    uncontroverted evidence that the WDTX has a less congested docket than the NDCA, transfer is not

10   prejudicial to the WDTX. As Judge Mueller in the Eastern District of California has noted, the fact

11   that the transferee district has a less busy docket than the transferor district is a factor *favoring*

12   transfer. *See Prasad*, 2018 WL 3706836, at *6 (noting that "it is no secret that the Eastern District of

13   California carries one of the most congested dockets in the country" as a factor favoring transfer from

14   Eastern District to Northern District of California).

15       Finally, the government argues transfer is not warranted because "the trial of Rothenberg's case

16   is likely to be speedier in this District" at least on the first two counts set for trial on October 31,

17   2022. Gov. Oppo. at 17. Again, while that factor is irrelevant to the Rule 21 analysis, there is also

18   nothing to necessarily support that point particularly given the fact the first two counts are relatively

19   discrete and involve a limited universe of facts. But even if that were true about the first two counts

20   set for trial, that may not be true for the remainder of the case. Again, AO statistics show that the

21   WDTX (1) has a shorter median time from filing to disposition of criminal cases compared to the

22   NDCA, (2) conducted more trials per judgeship per year than the NDCA, and (3) terminates more

23   cases each year than the NDCA. *See* Venue Motion at 9; Exh. B. As Judge Alsup noted in deciding to

24   transfer a case to the Southern District of Texas, "that felony cases progress in the Southern District

25   of Texas at nearly three times the rate here" undermines the government's argument that transfer

26   "will slow the case's progression and offset the benefits of a faster docket." *Brockman*, 2021 WL

27   28374, at *6. The same is true here of a transfer to the WDTX as demonstrated by the AO's statistics.

28       The docket conditions in the WDTX thus favor transfer.

**J.**      **Other special considerations.**

The government suggests that Mr. Rothenberg is seeking a change of venue late in the process, after the Court has "expended a significant amount of time adjudicating" motions and that "it is fair to consider the court's and the parties' 'sunk costs'" in denying a transfer. Gov. Oppo. at 17. But there are two flaws with this argument.

First, Mr. Rothenberg has not moved for a transfer at a late stage in the proceedings. This request is not made eight days before trial, as in *Testa*, but was rather made *five months* before trial on the first two counts, and before the remaining counts in the indictment have even been set for trial, which was unlikely to be set until next year. The government was on notice since Mr. Rothenberg's initial appearance in June 2020 that he may lose his home in San Francisco to foreclosure and may have to relocate to Texas. Dkt. 64 at 10:12-14, 19-23. The only reason this motion was not brought sooner was because Mr. Rothenberg was fighting foreclosure and it was not entirely clear that he would in fact be evicted. It was only until California lifted much of its eviction moratorium on March 31, 2022 that SVB began to aggressively take steps to evict Mr. Rothenberg from his home, resulting in the April 27, 2022 eviction notice served on Mr. Rothenberg by the San Francisco Sheriff. Exh. A. Within three weeks of that notice, Mr. Rothenberg had moved for a change of venue once it finally became clear he could no longer stay in his San Francisco home.

Second, none of the work so far has been a "sunk cost" in the sense that the time and effort spent on the case so far is somehow lost and unrecoverable. The prosecutors assigned to the case have made clear they will continue to work on the case even if transferred to WDTX and so there have been no "sunk cost" on their end. Nor has the time the Court spent on the case been wasted. The pretrial litigation so far has resulted in a severance of the first two counts and a bill of particulars, all of which would carry over into the WDTX. Other legal issues raised by Mr. Rothenberg—such as the statute of limitations challenge which implicated the waiverless Information—have been preserved, are law of the case, and need not be relitigated. Current defense counsel's work has certainly not been wasted; he has raised legal challenges and perfected the ones made by Mr. Rothenberg when he was pro se and attempted to narrow the case and make it more manageable and organized. That work will carry over to whoever represents Mr. Rothenberg in the WDTX, and current counsel will certainly do

1  everything in his power to help bring new defense counsel up to speed quickly and efficiently. Thus,

2  none of those considerations weigh against transfer.

3      Finally, there are other special considerations that weigh in favor of transfer. Mr. Rothenberg's

4  familial support system is in Texas, in both Austin and Houston, and courts have recognized the

5  existence of a party's "primary support system, to attend this trial or otherwise support his defense" is

6  a factor weighing in favor of transfer. *Prasad*, 2018 WL 3706836, at *6 (citing *United States v.*

7  *Radley*, 558 F. Supp. 2d 865, 877 (N.D. Ill. 2008) (finding transfer appropriate in part because more

8  "convenient" for defendants and their families); *United States v. Aronoff*, 463 F. Supp. 454, 454

9  (S.D.N.Y. 1978) (granting transfer in part because denying it would deny the defendant support from

10  his family and friends). That factor thus weighs heavily in favor of transfer.

11                          **<u>CONCLUSION</u>**

12      Mr. Rothenberg respectfully requests this Court transfer his case to the WDTX.

13  Dated:    June 10, 2022                          Respectfully submitted,

14                                                   MOEEL LAH FAKHOURY LLP

15

16

17                                                   Hanni M. Fakhoury
                                                     Attorneys for Michael Rothenberg

18

19

20

21

22

23

24

25

26

27

28