UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL BRENT ROTHENBERG,<br><br>Defendant. | Case No. 20-cr-00266-JST-1<br><br>**ORDER DENYING MOTION TO TRANSFER VENUE**<br><br>Re: ECF No. 128 |

Before the Court is Defendant Michael Brent Rothenberg's motion to transfer venue to the Western District of Texas. ECF No. 128. The Court will deny the motion.

## I. BACKGROUND

The factual and procedural background of the case is summarized in the Court's prior orders. ECF Nos. 79, 80, 101, 114. In sum, Rothenberg is charged with 23 counts of criminal conduct stemming from his alleged fraudulent activities as founder of Rothenberg Ventures Management Company, LLC ("RVMC"). This criminal case has now been pending for two years. *See* ECF No. 1.

The case was originally assigned to Judge William Alsup in San Francisco but was later related to a previously-filed SEC case and assigned to the undersigned. ECF No. 32. The Court has ruled on five substantive motions in this case: (1) a motion to dismiss counts 16, 17, and 18, ECF No. 79, which the Court denied; (2) a motion for intradistrict venue transfer, ECF No. 80, which the Court denied; (3) a motion to sever, ECF No. 101, which the Court granted as to counts 1 and 2 and denied as to counts 3 and 4; (4) a motion to strike surplusage or, in the alternative, for a bill of particulars, ECF No. 109, which the Court granted in part and denied in part; and (5) a motion to dismiss counts 1, 3, and 5-23, ECF No. 114, which the Court denied. In addition, the

1  Court has ruled on administrative matters, held several status conferences with the parties, and set
2  a trial date for the first trial. ECF No. 120. That trial is scheduled to begin on October 31, 2022,
3  approximately four months from today.
4        On May 17, 2022, nearly two years after the filing of the complaint, and approximately a
5  year and a half after the case was transferred to the undersigned, Rothenberg filed the present
6  motion to transfer venue to the Western District of Texas. ECF No. 128. The government
7  opposes the motion. ECF No. 131.

## II. LEGAL STANDARD

Rule 21(b) if the Federal Rules of Criminal Procedure provides, "For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district." Fed. R. Crim. P. 21(b). "A district court has broad discretion in ruling on a motion for change of venue," *United States v. Sherwood*, 98 F.3d 402, 410 (9th Cir. 1996), and the moving party bears the burden of demonstrating that another forum would be more convenient, *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977). In determining a motion to transfer, courts consider the following factors:

> (1) Where the defendant resides; (2) where possible witnesses reside; (3) where the relevant events happened; (4) where relevant documents and records are; (5) potential disruption to a defendant's business if transfer is denied; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket congestion; and (10) other special considerations.

*United States v. Prasad*, No. 16-cr-00244-KJM, 2018 WL 3706836, at *3 (E.D. Cal. Aug. 3, 2018) (citing *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964)). "The Ninth Circuit has cited the *Platt* factors with approval but has not offered detailed guidance for applying them." *Id.* (citing *Testa*, 548 F.2d 847; *United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974)). "[C]ourts treat no single factor as dispositive, but instead aim to 'strike a balance and determine which factors are of greatest importance.'" *Prasad*, 2018 WL 3706836, at *3 (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).

## III. DISCUSSION

### A. Defendant's Location

At the time he filed this motion, Rothenberg lived in San Francisco. He received an eviction notice on April 27, 2022. ECF No. 128 at 2. In the motion, he stated his intention to move in with family near Austin, Texas, because he was unable to afford housing in the Northern District of California. *Id.* At the hearing on the motion, his counsel stated that Rothenberg now lives in Texas. This factor therefore weighs in favor of transfer.

There are ways to mitigate the potential hardships Rothenberg may face litigating his case from Texas. For example, the Court could waive Rothenberg's presence at all non-essential court appearances. *See United States v. Napoli*, No. C 10-00642 CRB, 2011 WL 1303571, at *1 (N.D. Cal. Apr. 5, 2011) (finding the burden of litigating in California had been mitigated "because the Court has waived [d]efendant['s] . . . presence at all non-essential court appearances"); *United States v. Shayota*, No. 15-CR-00264-LHK, 2015 WL 9311922, at *2 (N.D. Cal. Dec. 23, 2015) (same).

Also, the Court notes that the Defendant moved during the pendency of the case. The Court wishes to avoid creating a rule that a Defendant can dictate a change in venue case by moving while the case is pending.

Notwithstanding the foregoing, this factor weighs in favor of transfer.

### B. Location of Possible Witnesses

The government asserts that "there are numerous . . . witnesses or potential witnesses who are believed to reside in California" and for the first trial scheduled, "the United States anticipates calling witnesses from Silicon Valley Bank (who are believed to reside in the Bay Area and Southern California) and from Merrill Lynch (who are believed to reside in or near Denver)." ECF No. 131 at 15-16. As government counsel put it at oral argument, "the most number of witnesses are in the Bay Area." By contrast, only two investors identified in the Bill of Particulars reside in Texas and the government notes that it "has not determined that it will call those

individuals as witnesses." *Id.* at 16 n.4.[1] Thus, if the defendant's motion were granted, it is likely that every witness would need to travel to Texas to testify.

As for the many potential witnesses located across the United States and abroad, "neither side has identified any anticipated witnesses that would be unable to travel" to either venue. *United States v. Dimaria*, No. 17-20898-CR-Moore/Simonton, 2018 WL 1173094, at *6 (S.D. Fla. March 6, 2018); *see also United States v. Estrada*, 880 F. Supp. 2d 478, 483 (S.D.N.Y 2012) (finding that the location of witnesses in Los Angeles did not favor transfer where the defendant could not identify any specific witnesses that were unable to travel to New York to testify and noting "the large number of direct airline flights between New York and Los Angeles each day"); *United States v. Bowdoin*, 770 F. Supp. 2d 133, 139 (D.D.C. 2011) ("The location of witnesses is not dispositive by itself—particularly where, as here, witnesses actually will come from all over.").

Weighing these considerations, the Court finds that this factor weighs against transfer.

**C.     Location of Events**

This factor weighs against transfer. Rothenberg concedes that this case involves "meetings and presentations in restaurants, hotels, offices, and conference rooms in San Francisco, Las Vegas, and Asia." ECF No. 128 at 6-7. In fact, as the government correctly asserts, "the vast majority of the events at issue in this case occurred in the NDCA and none occurred in the [Western District of Texas]." ECF No. 131 at 18.

Although this factor weighs against transfer as to the entire case, it does so particularly as to the two counts scheduled to go to trial this October. Those counts allege that Rothenberg defrauded Bay-Area-based Silicon Valley Bank in the refinancing of his home in San Francisco.

---

[1] Rothenberg states that he is "unsure who, if any, witnesses he will call at either trial." ECF No. 133 at 11. If Rothenberg does decide to call witnesses who are essential to the case and he is unable to pay their fees, he may "request that the Government bear witness costs pursuant to Federal Rule of Criminal Procedure 17(b)." *Shayota*, 2015 WL 9311922, at *3; *see* Fed. R. Crim. P. 17(b) ("Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.").

### D. Location of Documentary Evidence

Because the evidence in this case is "largely digital" and "easily transported," this factor carries minimal weight. ECF No. 131 at 18; *Prasad*, 2018 WL 3706836, at *5. Nonetheless, because RVMC and many witnesses are in California, and only two potential witnesses and no relevant companies are in Texas, this factor slightly weighs against transfer. *See Prasad*, 2018 WL 3706836, at *5 (finding this factor slightly favored transfer to the Northern District of California where the documents, witnesses, and two of the main companies were all located there).

### E. Potential Disruption to Rothenberg's Business

Rothenberg argues that this factor weighs in favor of transfer. He contends that since he "will be residing in the Western District of Texas, any work he does will necessarily be in that venue." ECF No. 128 at 7. But the same could be said of the Northern District of California, where he currently lives – if he obtained employment, a transfer to Texas would disrupt that employment. The fact is that Rothenberg is not working right now, so this factor does not weigh in favor of transferring the case. *See United States v. Robinson*, No. 09-cr-00031, 2010 WL 3087446, at *6 (D. N. Mar. Is. July 29, 2010) (finding this factor did not weigh in favor of transfer because defendant failed to "indicate what business is being disrupted and the court is unaware of any such disruption").

The Court finds that this factor is neutral.

### F. Expense to the Parties

This factor weighs against transfer. "While Rule 21(b) contemplates minimization of inconvenience to the defense, it has been recognized that some degree of inconvenience is inevitable, and that the government's inconvenience must be considered as well." *Testa*, 548 F.2d at 857. Although Rothenberg will have more expenses defending himself here than in the Western District of Texas, transferring the case would require the government to expend significant resources to pay for transportation, lodging, and food for "a large number of government witnesses" who live within commuting distance to the courthouse in Oakland. ECF No. 131 at 19. This burden is not outweighed by the expenses that Rothenberg would have to bear as an individual "travelling back and forth between Texas and California for two jury trials and ancillary

court proceedings." ECF No. 128 at 7; *Napoli*, 2011 WL 1303571, at *2 (finding that this factor weighed against transfer because the defendant's added expenses did not outweigh the government's).

### G. Location of Counsel

Counsel for both parties are located in the Northern District of California. The government agrees that it "would have support services available" if the Court granted the transfer, but also notes that transfer would likely result in the appointment of new counsel for Rothenberg, which could delay resolution of this case. ECF No. 131 at 20. Rothenberg concedes that it "will undoubtedly take some time for a new attorney to get up to speed on the case," but argues that this is mitigated by the fact that the case has been severed, with the first trial "involv[ing] a limited set of documents and witnesses." ECF No. 133 at 14.

Rothenberg's argument ignores the significant work his attorney has expended to date to become familiar with the facts in this case.

> The government estimates that the discovery produced to Rothenberg includes more than 348,000 "hard" Bates-numbered pages or items, as well as a hard drive containing [approximately] 300GB of data. The emails and other records on that hard drive have been produced in "native" form and are "soft" Bates numbered up to 131,257. The government last made a major production of discovery to Rothenberg in or about April 2021, meaning that defense counsel has invested a year's time in reviewing the discovery universe in this case.

ECF No. 131 at 9. The first trial in this case is scheduled to occur in October, approximately four months from today. Transfer of this case to Texas would undoubtedly disrupt that schedule. Thus, this factor weighs against transfer. *See Shayota*, 2015 WL 9311922, at *5 (finding that the location of counsel did not favor transfer because, among other reasons, "[n]ew counsel would need to familiarize themselves with the voluminous discovery and complexities of this case, which could delay resolution of this action"); *Napoli*, 2011 WL 1303571, at *2 (finding this factor did not support transfer away from Northern District of California because defendant's counsel was located in San Francisco).

### H. Relative Accessibility

This factor weighs slightly against transfer because Bay Area airports are likely more

convenient to the preponderance of witnesses than airports in the Western District of Texas. Nonetheless, both areas are easily accessible. *See United States v. Brockman*, No. CR 20-00371 WHA, 2021 WL 28374, at *6 (N.D. Cal. Jan. 4, 2021) (finding this factor neutral because "both Houston and San Francisco constitute major metropolitan areas"); *Shayota*, 2015 WL 9311922, at *5 (finding this factor did not favor transfer because "both San Jose and San Diego are easily accessible").

### I.     Docket Conditions

In 2021, "the median time from case filing to disposition in felony cases took [16.1] months in this district compared with [5.6] months in the [Western] District of Texas." *Brockman*, 2021 WL 28374, at *6; ECF No. 128-3. However, "a number of courts have held that since the adoption of the Speedy Trial Act of 1974, the relative conditions of the courts' dockets are of minimal significance." *Robinson*, 2010 WL 3087446, at *7 (citing cases).

Given that the purpose of this factor is to safeguard the parties' right to an "early trial," *Platt*, 376 U.S. at 242, the relative docket conditions of the two courts are of limited significance. The first of Rothenberg's trials is scheduled four months from now, and it seems unlikely that the Western District of Texas could accommodate an equally early trial date (assuming his new counsel could even be ready by that date). As for Rothenberg's second trial, this Court has told the parties it can set almost any trial date of their choosing in 2023.

The Court concludes this factor either weighs against transfer or is neutral.

### J.     Other Special Considerations

The parties each argue that special considerations favor their position. Rothenberg argues that because his "familial support system is in Texas," this factor weighs in favor of transfer. ECF No. 128 at 10. The Court finds that this factor is subsumed in the Court's consideration of the Defendant's location.

The government points out that this "case has now been pending in the NDCA since mid-2020," the Court has since spent significant time adjudicating motions and familiarizing itself with the facts of the case, and a trial date has already been set. ECF No. 131 at 22-23. This consideration counsels against transfer. *See United States v. Becker*, No. 12-cr-00170-BLW, 2013

WL 2237853 (D. Idaho May 23, 2013) (finding that delay and inconvenience of transferring a complex case that was pending for close to a year weighed against transfer).

## CONCLUSION

On balance, the *Platt* factors do not support transferring this case to the Western District of Texas. Rothenberg's motion to transfer venue is therefore denied.

**IT IS SO ORDERED.**

Dated: June 27, 2022



JON S. TIGAR
United States District Judge