STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
NICHOLAS J. WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Email: Kyle.Waldinger@usdoj.gov
    Email: Nicholas.Walsh@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 20-00266 JST |
| Plaintiff, | UNITED STATES' RESPONSES AND OPPOSITIONS TO DEFENDANT'S MOTIONS *IN LIMINE* |
| v. | |
| MICHAEL BRENT ROTHENBERG, | Trial Date: October 31, 2022, 8:00 a.m. |
| Defendant. | Pretrial Date: October 6, 2022, 9:30 a.m. |
| | Court: Hon. Jon S. Tigar, Courtroom 6 |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

ARGUMENT .......................................................................................................................................1

    I.      DEFENDANT'S MOTION *IN LIMINE* #1: Describing how Rothenberg used loan funds provided by SVB is perfectly permissible and the government will not argue Rothenberg was impoverished. ..........................................................................1

    II.     DEFENDANT'S MOTION *IN LIMINE* #2: The United States does not intend to introduce evidence of SVB's foreclosure process, SVB's eviction of Rothenberg, or SVB's losses unless Rothenberg "opens the door" to those issues. ...................................................................................................................................3

    III.    DEFENDANT'S MOTION *IN LIMINE* #3: The United States agrees that the Court should exclude evidence regarding the fact that there are other criminal charges pending against Rothenberg. .................................................................................4

    IV.    DEFENDANT'S MOTION *IN LIMINE* #4: The United States agrees that the Court should exclude evidence regarding the civil SEC case, as well as evidence regarding the settlement and judgment in that case. ................................................6

    V.     DEFENDANT'S MOTION *IN LIMINE* #5: It is permissible for the government to use the term "victim" to refer to SVB. .......................................................6

    VI.    DEFENDANT'S MOTION *IN LIMINE* #6: The Court should exclude witnesses from the courtroom except for the government's two case agents. .....................8

    VII.   DEFENDANT'S MOTION *IN LIMINE* #7: The government agrees that the Indictment should not be sent to the jury room and the jury should not see a copy of the Indictment. ...................................................................................................11

CONCLUSION .................................................................................................................................11

UNITED STATES' RESPONSES & OPPOSITIONS TO
DEFENDANT'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                                      i

# TABLE OF AUTHORITIES

### Cases

*Shaw v. United States*,
 580 U.S. 63, 137 S. Ct. 462 (2016) ........................................................................................... 3

*United States v. Bazar*,
 747 Fed. Appx. 454 (9th Cir. 2018) ........................................................................................... 7

*United States v. Beltran-Rios*,
 878 F.2d 1208 (9th Cir. 1989) ................................................................................................... 4

*United States v. Benny*,
 786 F.2d 1410 (9th Cir. 1986) ................................................................................................... 3

*United States v. Dee*,
 319 Fed. Appx. 578 (9th Cir. 2009) ........................................................................................... 7

*United States v. Gasperini*,
 No. 16-CR-441, 2017 WL 3140366 (E.D.N.Y. July 21, 2017) ................................................. 6

*United States v. Granbois*,
 119 F. Appx. 35 (9th Cir. 2004) ................................................................................................. 6

*United States v. Heine*,
 No. 3:15-CR-238-SI, 2017 WL 4423408 (D. Or. Oct. 5, 2017) ............................................. 10

*United States v. Loughrin*,
 573 U.S. 351 (2014) ................................................................................................................... 3

*United States v. Lussier*,
 929 F.2d 25 (1st Cir. 1995) ..................................................................................................... 10

*United States v. Lussier*,
 No. 18-CR-281, 2019 WL 2489906 (D. Minn. June 15, 2019) ................................................ 6

*United States v. Mitchell,*
 172 F.3d 1104 (9th Cir. 1999) ................................................................................................... 2

*United States v. Molina*,
 934 F.2d 1440 (9th Cir. 1991) ................................................................................................... 7

*United States v. Moreland*,
 622 F.3d 1147 (9th Cir. 2010) ................................................................................................... 7

*United States v. Namvar*,
 498 Fed. Appx. 749 (9th Cir. 2012) ........................................................................................... 7

*United States v. Phibbs*,
  999 F.2d 1053 (6th Cir. 1993) .................................................................................................... 9

*United States v. Ratfield*,
  342 F. Appx. 510 (11th Cir. 2009) ............................................................................................ 10

*United States v. Ray*,
  No. 20-CR-110 (LJL), 2022 WL 558146 (S.D.N.Y. Feb. 24, 2022) .......................................... 7

*United States v. Romero-Avila*,
  210 F.3d 1017 (9th Cir. 2000) .................................................................................................... 2

*United States v. Sena*,
  No. 19-CR-01432, 2021 WL 4129247 (D.N.M. Sept. 9, 2021) .................................................. 7

*United States v. Shaver*,
  607 F. Supp.2d 1168 (S.D. Cal. 2009) ........................................................................................ 9

*United States v. Simtob*,
  901 F.2d 799 (9th Cir. 1990) ...................................................................................................... 8

*United States v. Unruh*,
  855 F.2d 1363 (9th Cir. 1987) .................................................................................................... 2

**<u>Rules</u>**

Fed. R. Evid. 615 ............................................................................................................................. 9

**<u>Other Authorities</u>**

Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6245 (2d ed.) ........................................................ 9

# INTRODUCTION

The United States respectfully submits the following responses and oppositions to Defendant's Motions *in Limine* regarding the trial of Counts One and Two of the Indictment. *See* Dkt. 144.

As the government stated in its own Motions *in Limine*, Counts One and Two allege that the defendant Michael Rothenberg engaged in a scheme to defraud, and made false statements to, Silicon Valley Bank ("SVB") regarding an August 2014 loan application. The Indictment alleges, and the government expects to prove at trial, that Rothenberg moved money between various personal and business accounts at SVB, Bank of America, and Merrill Lynch in order given SVB a false impression of his assets, liabilities, and net worth to SVB. Significantly, the evidence will show that Rothenberg transferred money back-and-forth from the business accounts of Rothenberg Ventures Management Company LLC and Rothenberg Ventures Fund II LLC, his personal Bank of America accounts, and his personal Merrill Lynch accounts, in order to create this false impression.

Ultimately, SVB funded the requested loans: (a) a $1.48 million "cash out" mortgage refinancing loan for Rothenberg's condominium and (b) a $300,000 cash loan intended to help Rothenberg make a capital contribution to one of the venture capital funds he managed and for which he acted as the general partner. *See* Indict. (Dkt.15) ¶¶ 28.a & 28.g. Rothenberg later defaulted on those loans. As the government explained in its Motions *in Limine*, SVB foreclosed on the mortgage loan in September 2020 and ultimately took possession of the condominium in June 2022. Since the filing of its Motions *in Limine*, the government has learned that SVB has marketed the condominium at $995,000 and that a sale at a purchase price of $950,000 is pending. *See* https://www.compass.com/listing/712-bryant-street-unit-6-san-francisco-ca-94107/1098573215476907465 (accessed on September 13, 2022).

# ARGUMENT

**I.    DEFENDANT'S MOTION *IN LIMINE* #1: Describing how Rothenberg used loan funds provided by SVB is perfectly permissible and the government will not argue Rothenberg was impoverished.**

Rothenberg moves to exclude evidence that Rothenberg had "large cash requirements" in paying his personal accounts, including to American Express. Dkt. 144, at 1-2. Rothenberg misunderstands the type of evidence the United States intends to offer, misconstrues the purpose of introducing the

UNITED STATES' RESPONSES & OPPOSITIONS TO
DEFENDANT'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                              1

evidence, and thus misapplies the law on the issue. His motion should be denied.

To begin, the evidence the United States intends to introduce at trial is simply the tracing of funds. Put simply, the United States will introduce evidence Rothenberg had personal and business bills. He then, the United States contends, moved funds around between bank accounts to deceive SVB into issuing him two loans. Rothenberg used the proceeds of those loans to meet his capital contribution commitment to one of the venture capital funds managed by Rothenberg Ventures Management Company. Rothenberg also used the proceeds of the loans to pay Rothenberg's personal and business bills, such as American Express. All of that evidence is inseparably entangled with and necessary to describe what happened in 2014 and illustrate the basis of the crimes alleged against Rothenberg. The United States intends to introduce that evidence merely as part of its description of the events at issue at trial.

Accordingly, when Rothenberg reads this evidence as somehow indicating that the United States intends to tar him as impoverished, he misunderstands the United States' purpose. The parties agree that the Ninth Circuit has made clear that "evidence of poverty or poor financial condition is inadmissible to prove motive where it is offered to show 'the mere fact that the defendant is poor.'" *United States v. Romero-Avila*, 210 F.3d 1017, 1022 (9th Cir. 2000). Rothenberg was not impoverished in 2014, nor will the United States contend that he was. Instead, it is perfectly permissible for the United States to introduce evidence of what happened and then, in opening or closing, point out how Rothenberg used the money to pay his personal and business debts.

The cases that Rothenberg relies on to attempt to prevent the United States from entering basic evidence as to what happened in 2014 both derive from entirely different factual scenarios: a case in which the government argued that because the defendant filed for bankruptcy, he had motive to import and distribute marijuana, *see Romero-Avila*, 210 F.3d at 1017; and a case in which the government argued a person was poor and thus had motive to rob a bank, *see United States v. Mitchell,* 172 F.3d 1104 (9th Cir. 1999). That is not what is alleged in this case. Instead, the final case Rothenberg cites contains the core concept at issue here, *United States v. Unruh*, 855 F.2d 1363, 1377 (9th Cir. 1987), which held that potentially inflammatory evidence regarding a fur coat and wads of $100 bills "should

UNITED STATES' RESPONSES & OPPOSITIONS TO
DEFENDANT'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                        2

1  not be offered unless clearly connected to specific conspiracy counts or particular loan transactions."
2  That is precisely what the United States proposes to do in this trial – connect Rothenberg's loan
3  transactions with what he used the money for – by entering evidence of bank records, which is clearly
4  not inflammatory and falls outside the scope of Federal Rule of Evidence 403.

5  Rothenberg's motion should be denied.

6  **II.    DEFENDANT'S MOTION *IN LIMINE* #2: The United States does not intend to introduce evidence of SVB's foreclosure process, SVB's eviction of Rothenberg, or SVB's losses unless Rothenberg "opens the door" to those issues.**

8  Rothenberg's second motion *in limine* seeks to exclude references to SVB's foreclosure of the
9  property. As noted in the Introduction, *supra*, and in the United States' Motions *in Limine*, Rothenberg
10 defaulted on the mortgage loan at issue in this case. SVB ultimately foreclosed on the property and took
11 title in September 2020. After taking physical possession of the property from Rothenberg in June 2022,
12 SVB marketed the property, and a sale is now pending. Based on the sales price, the outstanding
13 balance of the mortgage loan, and the costs SVB has incurred in holding and re-possessing the property,
14 it appears that SVB will realize a loss with respect to the loan.

15 The government agrees that proving a scheme to defraud under the bank fraud statute "demands
16 neither a showing of ultimate financial loss nor a showing of intent to cause financial loss." *Shaw v.*
17 *United States*, 580 U.S. 63, ___, 137 S. Ct. 462, 467 (2016); *see also id.* ("We have found no case from
18 this Court interpreting the bank fraud statute as requiring that the victim bank ultimately suffer financial
19 harm, or that the defendant intend that the victim bank suffer such harm."); *United States v. Loughrin*,
20 573 U.S. 351, 366 n.9 (2014) (rejecting argument that risk of financial loss is an element of bank fraud);
21 *cf. United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986) ("While an honest, good-faith belief in
22 the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will
23 be repaid and will sustain no loss is no defense at all."). Although there may be situations in which the
24 facts of a foreclosure of a defaulted home loan or the bank's realized losses would be relevant in a bank
25 fraud prosecution, the government does not intend to offer evidence of the fact that Rothenberg
26 defaulted on either of the loans at issue in this case, that SVB foreclosed on his condo, that SVB
27 ultimately had to file an eviction action to eject him from the property, and that SVB will likely suffer a
28

UNITED STATES' RESPONSES & OPPOSITIONS TO
DEFENDANT'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                  3

loss on the loan – unless Rothenberg makes these issues relevant by opening the door in his opening statement, cross-examination of witnesses, request for jury instructions, or otherwise.

For example, if Rothenberg introduces evidence or testimony that SVB suffered no loss and incurred no unwarranted expenses with respect to his mortgage loan in order to show his lack of intent to deceive or the lack of materiality of his misrepresentations, the government should be allowed to present evidence of the actual consequences of Rothenberg's conduct in this case. *See United States v. Beltran-Rios*, 878 F.2d 1208, 1212 (9th Cir. 1989) (noting that otherwise excludable evidence is admissible when defendant "opens the door" through potentially misleading testimony).

In addition, Rothenberg has previously made allegations about SVB's actions with respect to him personally, as well as with respect to the foreclosure process. For example, he has alleged in the state court unlawful detainer action that "SVB has engaged in a campaign to destroy Mr. Rothenberg's life as retaliation for exposing their fraudulent activity, to silence him, and to avoid the consequences of its actions against the Funds and against Mr. Rothenberg personally." *See* Ex. 1 (Motion to Set Aside Foreclosure Sale), Rothenberg Decl. attached thereto, ¶ 2. Rothenberg also has alleged that the foreclosure auction that SVB conducted in September 2020 was a "sham." *Id.* ¶¶ 4-9. Because of SVB's conduct, Rothenberg has alleged that he was "severely damaged" by the bank's actions to the tune of approximately $750,000. *Id.* ¶ 12. Again, if Rothenberg raises issues about the way that SVB conducted the foreclosure process or the way that SVB dealt with him when he defaulted on his loan, or alleges that SVB witnesses are biased against him and are part of a "campaign to destroy" him, the government should be permitted to introduce facts regarding Rothenberg's default and SVB's foreclosure and eviction.

For the reasons set forth above and with the caveat described, the United States does not oppose Rothenberg's Motion *in Limine* #2.

**III.    DEFENDANT'S MOTION *IN LIMINE* #3: The United States agrees that the Court should exclude evidence regarding the fact that there are other criminal charges pending against Rothenberg.**

Rothenberg has moved to prohibit the government and witnesses from referring to or discussing "any of the allegations or conduct involved in the remaining counts" of the Indictment. Dkt. 144, at 4:1-

2. The United States does not oppose Rothenberg's Motion *in Limine* #3. It agrees that neither party should elicit evidence that Rothenberg has been charged with other criminal conduct in Counts Three through Twenty-Three of the Indictment.

In taking this position, the United States assumes that granting Rothenberg's motion means that SVB witnesses will not be cross-examined by the defense about any matters that relate to the charges in Counts Three through Twenty-Three. The government's concern relates to the fact that Rothenberg filed a civil lawsuit against SVB in state court in 2018, which pertains in part to the loan transaction that is alleged in Counts Three and Four of the Indictment. *See* Dkt. 143-1 (Ex. 1 to USA's Motions *in Limine*), ¶ 1 (complaint alleging SVB's "circumvention of internal controls to engage in an unauthorized financial transaction that resulted in damages to Mr. Rothenberg"). That complaint also alleged that SVB's actions created a "false appearance" that Rothenberg had misappropriated investor funds. *See, e.g., id.*, ¶ 37. Because of these false-appearance-of-misappropriation allegations, Rothenberg's civil complaint relates to Counts Three through Twenty-Three of the Indictment. *Compare id.* (allegations about "false appearance" of misappropriation) *with* Dkt. 15 (Indictment), ¶ 25 (allegations regarding Rothenberg's "misappropriation and misuse of investor funds"). SVB's witnesses should not be cross-examined about any of the bank's interactions with Rothenberg as they pertain to Counts Three through Twenty-Three. The only actions by SVB that are relevant in this case pertain to those it took regarding Rothenberg's loans and loan applications at issue in Counts One and Two.

For all of the reasons set forth above, the government agrees that the Court should exclude evidence regarding the fact that there are other criminal charges pending against Rothenberg.[1]

---

[1] Rothenberg states in his motion *in limine* that the "bank fraud described in counts 1 and 2 does not involve the misuse or misappropriation of investor funds." Dkt. 144, at 4:5-6 (quoting Dkt. 101). The government notes here that, consistent with the allegations of ¶ 28.f of the Indictment, it expects the evidence to show that Rothenberg transferred "$350,404.13 from his personal checking account at Bank of America to the -054 LMA Account [at Merrill Lynch] in order to pay off the balance" of that line of credit, all in order to make it appear that his liabilities were less than they were. *See* Dkt. 15, ¶ 28.f. As noted in the Introduction, the government expects the evidence to show that at least some of that $350,404.13 amount originated from Rothenberg Ventures Management Company LLC and Rothenberg Ventures Fund II LLC – and not from Rothenberg's personal accounts. This evidence regarding the source of the funds is inextricably intertwined with the offenses charged in Counts One and Two.

UNITED STATES' RESPONSES & OPPOSITIONS TO
DEFENDANT'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                   5

IV. **DEFENDANT'S MOTION *IN LIMINE* #4: The United States agrees that the Court should exclude evidence regarding the civil SEC case, as well as evidence regarding the settlement and judgment in that case.**

Rothenberg also has moved to exclude evidence regarding the SEC lawsuit that was filed against Rothenberg in 2018, including any facts related to the disposition of that lawsuit or admissions made by him. *See* Dkt. 144, at 5-6. The United States does not oppose Rothenberg's Motion *in Limine* #4 about the SEC case. It agrees that neither party should elicit evidence regarding the SEC lawsuit that was filed against Rothenberg in 2018, including any facts related to the disposition of that lawsuit or admissions made by Rothenberg in that lawsuit that are irrelevant to the charges in Counts One and Two.

V. **DEFENDANT'S MOTION *IN LIMINE* #5: It is permissible for the government to use the term "victim" to refer to SVB.**

The government opposes Rothenberg's Motion *in Limine* #5 seeking to prohibit the use of the term "victim" to refer to SVB at trial. The Court should deny the motion. Generally, the government anticipates that in questioning witnesses it will refer to SVB as "Silicon Valley Bank," "SVB," "the lender," and "the bank," or by similar terms. Although the United States anticipates that it will use the term "victim" sparingly, if at all, it should not be precluded wholesale from referring to SVB as a victim. In any event, the Court certainly should deny Rothenberg's motion to the extent it seeks to limit the United States' closing argument. These points are set out in more detail below.

As an initial matter, the term "victim" is not inherently or unduly prejudicial. *See, e.g.*, *United States v. Lussier*, No. 18-CR-281, 2019 WL 2489906, at *5 (D. Minn. June 15, 2019) (denying defendant's motion to prohibit government from using the term "victim" during assault trial); *United States v. Gasperini*, No. 16-CR-441, 2017 WL 3140366, at *7 (E.D.N.Y. July 21, 2017) (rejecting defendant's request to exclude terms "victim" and "victimized" in case involving computer intrusion and conspiracy to commit wire fraud and money laundering, because the court did not "view the use of the challenged terms as unduly prejudicial in light of the issues being tried"); *cf. United States v. Granbois*, 119 F. Appx. 35, 38-39 (9th Cir. 2004) ("We reject Granbois's contention that the district court's use of the word 'victim' in the elements instruction severely undermined the presumption of innocence…. Looking at the jury instructions as a whole, the jury could not have been misled into

thinking that the elements instruction's use of the term 'victim' indicated that Granbois was guilty."). *But see United States v. Sena*, No. 19-CR-01432, 2021 WL 4129247, at *2 (D.N.M. Sept. 9, 2021) ("[T]he Court finds that the prejudice resulting from the repeated use of the term 'victim' at trial substantially outweighs the probative value of the term.").

Moreover, the government should be allowed to argue in its closing and rebuttal arguments that the evidence shows that SVB was a victim of Rothenberg's fraud scheme and false statements, as well as to make similar statements about what it expects the evidence will be in its opening statement. *See, e.g.*, *United States v. Bazar*, 747 Fed. Appx. 454, 458 (9th Cir. 2018) ("The prosecutor's use of the term 'victim' merely summarized the government's legitimate theory of the case, following a trial that focused heavily on whether or not women who worked for Bazar were victims of a fraudulent scheme."); *United States v. Namvar*, 498 Fed. Appx. 749, 751 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (Mar. 26, 2013) ("The government's references during closing and rebuttal arguments to 'ripping off' or 'stealing' from the victims, while an unflattering description of Namvar's conduct, rested on reasonable inferences drawn from the evidence."); *United States v. Dee*, 319 Fed. Appx. 578, 580 (9th Cir. 2009) ("The prosecutor's limited references during trial to the victim as 'the victim' do not rise to the level of prosecutorial misconduct."); *accord United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *26 (S.D.N.Y. Feb. 24, 2022) ("[T]he Government is permitted to lay out for the jury in its opening statement what it expects the evidence to prove, including that the complaining witnesses are victims and in its closing statement what it believes that the evidence has proved, again that the witnesses are victims."). While Rothenberg is fully entitled to argue that he did not defraud or make false statements to SVB, and that SVB is not a victim, he is not entitled to gag the United States' ability to describe its own case and make its own arguments to the contrary. *See United States v. Moreland*, 622 F.3d 1147, 1161 (9th Cir. 2010) ("the prosecution must have reasonable latitude to fashion closing arguments") (quoting *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991)).

Rothenberg's argument that SVB should not be referred to as a victim because the bank fraud statute does not require proof that a financial institution lost money as a result of the scheme to defraud misses the point. *See* Dkt. 144, at 6:2-7. Whether or not SVB suffered losses, it was still the victim of

UNITED STATES' RESPONSES & OPPOSITIONS TO
DEFENDANT'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                    7

the alleged fraud scheme and the alleged false statements because it was the entity to whom the fraudulent conduct and false statements were directed and because Rothenberg sought to obtain funds belonging to and in the custody and control of SVB.

Finally, Rothenberg's argument that using the term "victim" constitutes improper "vouching" is without merit. Dkt. 144, at 6:7-14. The government agrees that it "may not vouch for the credibility of its witnesses, either by putting its own prestige behind the witness, or by indicating that extrinsic information not presented in court supports the witness' testimony." *United States v. Simtob*, 901 F.2d 799, 805 (9th Cir. 1990). But referring to a bank in a bank fraud case as the "victim" is not vouching. As set forth above, the Ninth Circuit has rejected arguments that it was improper for the government to use the term "victim" in closing arguments. Rothenberg has cited no controlling case holding that it is vouching for a prosecutor to use the term "victim" in closing arguments.

For all of the reasons set forth above, the Court should deny Rothenberg's Motion *in Limine* #5.

**VI.   DEFENDANT'S MOTION *IN LIMINE* #6: The Court should exclude witnesses from the courtroom except for the government's two case agents.**

Defendant has moved for a sequestration order under Federal Rule of Evidence 615. The government has filed a similar motion. Dkt. 143, at 8-10 (Motion *in Limine* No. 2). The parties' disagreement concerns the presence of the United States' two case agents in the courtroom during trial and before their testimony. The Court should deny Rothenberg's motion and grant the United States' motion. Under Federal Rule of Evidence 615(c), the presence of a second government case agent is essential to the government's presentation of its case-in-chief.

It is true that Federal Rule of Evidence 615 generally requires the court to exclude witnesses from the courtroom. But the rule allows for the presence of certain witnesses. Specifically, the rule does not authorize excluding:

> (a) a party who is a natural person;
>
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
>
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
>
> (d) a person authorized by statute to be present.

UNITED STATES' RESPONSES & OPPOSITIONS TO
DEFENDANT'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                                8

Fed. R. Evid. 615. With respect to subpart (c), "courts have not developed a precise test for what makes a witness's presence essential." Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6245 (2d ed.). Although the party seeking to designate a witness as "essential" under Rule 615(c) must do more than simply show the witness is "important," a party can meet the test by showing that "the witness is needed in the courtroom when that witness is not testifying." *Id.* Factors that courts consider include (1) the case's complexity, (2) the length of the trial, (3) the extent of the witness's knowledge or expertise, (4) the risks posed by not excluding the witness, and (5) whether others are already present or available to help counsel. *Id.*

Here, the government has designated FBI Special Agent Jennifer Barnard as its representative at trial under Rule 615(b). The government intends to have a second case agent present at trial, IRS-CI Special Agent Anthony Ghio, as an essential witness pursuant to Rule 615(c). Among other functions, the government intends to use its second agent to testify toward the end of the trial to summarize certain bank and financial records. (Special Agent Barnard is also expected to testify regarding certain business, bank, and financial records.) Allowing only one case agent to attend trial prior to their testimony would potentially require the government to call one of the agents out of order (or twice).

Importantly, and as noted in the Wright & Miller treatise, one of the considerations is the risks posed by *not* excluding the witness. *Cf. also United States v. Phibbs*, 999 F.2d 1053, 1073 (6th Cir. 1993) (recognizing that one concern of Rule 615 is that witnesses might "parrot each other's testimony"); *United States v. Shaver*, 607 F. Supp.2d 1168, 1174 (S.D. Cal. 2009) ("[The Rule 615] process serves both to reduce the danger that a witness' testimony will be influenced by hearing the testimony of other witnesses, and to increase the likelihood that the witness' testimony will be based on his/her own recollections."). Here, Special Agent Ghio will be testifying about the contents of preexisting records. It is hard to see how Special Agent Ghio's presence in the courtroom before his testimony will in any way increase the risks that his testimony will be unfairly affected by him hearing the testimony of other witnesses. This fact is so especially in light of the fact that, by the time trial commences, both agents will be intimately familiar with the facts of the case and the expected testimony of the witnesses because of their attendance at witness prep sessions, their review of FBI and IRS-CI

UNITED STATES' RESPONSES & OPPOSITIONS TO
DEFENDANT'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                              9

reports, their discussions with government counsel, and their preparations for trial. There is little or no risk that Special Agent Ghio will "parrot" the testimony of other witnesses based on the fact that he has heard their testimony in the courtroom. *See United States v. Heine*, No. 3:15-CR-238-SI, 2017 WL 4423408, at *5 (D. Or. Oct. 5, 2017) ("[B]ecause [FBI Forensic Accountant] Klein's testimony is limited to summarizing voluminous records and providing related background information, there is minimal risk that she will improperly alter her testimony based on hearing what other witness at trial have said before she testifies.").

Moreover, it appears that Rothenberg may not only be asking that Special Agent Ghio be excluded from the courtroom, but that he *also* be prohibited from learning anything about what has occurred in the courtroom prior to his testimony. *See* Dkt. 144, at 7:9-18. Such a restriction unfairly prejudices the government in its case preparation. As the government noted in its own motion *in limine* on this topic, during the course of trial, each agent may be asked to conduct additional investigation or research based on the testimony given by trial witnesses, and it is essential that they be acquainted with that testimony in order to perform that investigation and research. The best way to do that is for both agents to hear the testimony themselves in the courtroom. But barring that, government counsel should not be prohibited from describing the witnesses' testimony to the case agents so that they may assist in the preparation and presentation of the case during trial.

In light of the complexity of the government's case reflected in the defendant's movements of funds between accounts, the numerous exhibits, the fact that both agents will be familiar with the expected testimony, the absence of risk that Special Agent Ghio's testimony about preexisting business records will be unfairly affected by his exposure to witness testimony, and the fact that both agents may be required to learn of witness testimony during trial in order to support the prosecution, Special Agent Ghio should be considered essential and exempt under Rule 615(c). *See United States v. Ratfield*, 342 F. Appx. 510, 512-13 (11th Cir. 2009) (concluding that district court did not err in allowing two IRS agents to attend trial where each testified regarding different aspects of the case); *United States v. Lussier*, 929 F.2d 25, 29 (1st Cir. 1995) (affirming trial court decision allowing second agent to attend trial where "agent testimony was based on, summarized, and was consistent with the evidence presented at trial").

For these reasons, the Court should deny the Rothenberg's motion.

**VII.    DEFENDANT'S MOTION *IN LIMINE* #7: The government agrees that the Indictment should not be sent to the jury room and the jury should not see a copy of the Indictment.**

Rothenberg's seventh motion *in limine* seeks to bar the Indictment from going back to the jury room. The government has no objection to this motion in this case.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court:

1) Deny Rothenberg's Motion *in Limine* #1 in its entirety;

2) Grant as unopposed Rothenberg's Motion *in Limine* #2, and impose the same limitations on Rothenberg;

3) Grant as unopposed Rothenberg's Motion *in Limine* #3, and impose the same limitations on Rothenberg;

4) Grant as unopposed Rothenberg's Motion *in Limine* #4;

5) Deny Rothenberg's Motion *in Limine* #5 in its entirety;

6) Deny Rothenberg's Motion *in Limine* #6 in its entirety; and

7) Grant as unopposed Rothenberg's Motion *in Limine* #7.

DATED:  September 15, 2022               Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/
KYLE F. WALDINGER
NICHOLAS J. WALSH
Assistant United States Attorneys