STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
NICHOLAS J. WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Email: Kyle.Waldinger@usdoj.gov
    Email: Nicholas.Walsh@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 20-CR-00266 JST |
| Plaintiff, | UNITED STATES' BRIEF ON JURY SELECTION PROCESS IN LIGHT OF COVID-19 PANDEMIC |
| v. | |
| MICHAEL BRENT ROTHENBERG, | Trial Date:   October 31, 2022, 8:00 a.m. |
| Defendant. | Court: Hon. Jon S. Tigar, Courtroom 6 |

**INTRODUCTION**

In light of the COVID-19 pandemic, and as the United States indicated it would do at the Pretrial Conference held on October 6, 2022, the United States files this brief to apprise the Court of its position regarding excusing potential jurors who are either unvaccinated or refuse to disclose their vaccination status.

As described below, the Court has the authority to: (1) inquire of prospective jurors whether they are vaccinated and (2) excuse unvaccinated jurors or those who will not divulge their vaccination status. As the Court has indicated it is inclined to take one or both of these acts, the government recommends that the Court make factual findings on the record that doing so is necessary under 28 U.S.C. §

1866(c)(1)–(2) to prevent undue hardship and extreme inconvenience (to the unvaccinated), and/or alternatively on the ground that such jurors would "be likely to disrupt the proceedings." The government does not recommend excusing such jurors for cause, since "challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality." *Swain v. Alabama*, 380 U.S. 202, 220 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79 (1986); *see also United States v. Annigoni*, 96 F.3d 1132, 1138 (9th Cir. 1996), o*verruled on other grounds by Rivera v. Illinois*, 556 U.S. 148 (2009) ("Challenges for cause, while unlimited in number, allow the removal of panel members only 'on a narrowly specified, provable, and legally cognizable basis of partiality,' such as a personal relationship with a party, witness, or attorney in the litigation, or a biased state of mind concerning a party or issue in the case.") (internal citations omitted).

Since the Court has indicated that it is inclined to exercise its power to excuse unvaccinated jurors (and by implication those who refuse to say) over the defendant's objection asserted at the Pretrial Conference, the government respectfully recommends that the Court question potential jurors during voir dire, and, pursuant to 28 U.S.C. § 1866(c), excuse potential jurors on a case-by-case basis if their service on the jury would cause "undue hardship" or be "likely to disrupt the proceedings," and to make specific, factual findings as to each.

## ANALYSIS

To begin, the Court has the discretion under Federal Rule of Criminal Procedure 24(a) to ask the venire or individual jurors about their vaccination status for purposes of protecting the health and safety of potential jurors, litigants, and courtroom staff. *See* Fed. R. Crim. P. 24(a) ("The court may examine prospective jurors."). District courts have broad discretion to conduct voir dire. *See Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). Because a person's COVID-19 vaccine status affects his or her risk of contracting COVID-19 and of transmitting COVID-19, questioning a prospective juror about his or her vaccine status is akin to asking about other medical information that could affect jury service. Accordingly, asking these questions falls firmly within a District Court's discretion.

Next, the Court has the power to excuse potential jurors who are unvaccinated or refuse to say. Pursuant to 28 U.S.C. § 1866(c)(1)-(2), the Court has the power to excuse any summoned potential juror "upon a showing of undue hardship or extreme inconvenience," or to exclude any summoned potential

juror "on the ground that . . . his service as a juror would be likely to disrupt the proceedings." *See* 28 U.S.C. § 1866(c). 28 U.S.C. § 1866(c) gives the Court the power to excuse potential jurors who are unvaccinated or refuse to say. Multiple district courts, including in this District, have relied on this provision to exclude unvaccinated individuals from the venire. *See United States v. Nelson*, 2022 WL 1093661, at *5 (Apr. 12, 2022) (Chen, J.); *United States v. Cole*, 2022 WL 332083, at *5 (N.D. Ohio, Feb. 3, 2022); *United States v. Elias*, 579 F. Supp. 2d 374, 383 (E.D.N.Y. 2022); *United States v. Moses*, 566 F. Supp. 2d 217, 223 (W.D.N.Y. 2021); *United States v. McMillion*, 20-CR-242 JSW, Dkt. 22 (N.D. Cal. Mar. 23, 2022) (White, J.).

Since the Court has indicated that it plans to exclude jurors who are unvaccinated (and, presumably, those whose vaccination status is unknown), the government recommends the Court explain its reasoning on the record. For example, the Court might find that an unvaccinated person's risk of contracting or getting seriously ill from COVID-19 as a result of jury service constitutes an "undue hardship" based on, for example, the incidence of COVID-19 in the community, whether the individual is at increased risk for severe illness, the number of available ICU beds in the area, the length of trial and number of people involved, and whether the jury trial can be conducted consistent with CDC Guidelines.

Whether an individual is vaccinated for COVID-19 matters. Multiple studies have shown that vaccinations do protect individuals from COVID-19, including the Omicron variants. *See* https://www.cidrap.umn.edu/news-perspective/2022/05/3-covid-vaccine-doses-appear-protect-against-omicron-subvariants (accessed October 6, 2022); https://www.cdc.gov/media/releases/2022/s0715-COVID-VE.html ("A third and fourth COVID-19 vaccine dose offered substantial protection among adults with healthy immune systems who were eligible to receive them during Omicron variant evolution in early 2022, according to a new MMWR published today") (accessed October 6, 2022). The CDC has stated that unvaccinated individuals were five times more likely to contract COVID-19 than vaccinated individuals. *See* https://www.cdc.gov/media/releases/2021/s1029-Vaccination-Offers-Higher-Protection.html (accessed October 6, 2022). One Australian study found that unvaccinated individuals were 10 times more likely to contract COVID-19 than those who are fully, or double-dosed vaccinated. *See* https://www.skynews.com.au/australia-news/coronavirus/watch-live-vic-health-

officials-to-provide-covid19-update/news-story/863cdc24d57dd787251a8ccff26b5ec5 (accessed October 6, 2022). And the CDC states that the Omicron variant in particular "spreads more easily than earlier variants of the virus that cause COVID-19, including the Delta variant." *See* https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (accessed October 6, 2022). Given the significantly higher risks that unvaccinated individuals face from the COVID-19 virus, the Court could make specific findings that unvaccinated jurors—particularly those who are over the age of 65 or have underlying conditions—would face "undue hardship" if asked to serve on the jury in this trial, which is scheduled to last approximately two weeks.

Finally, recent studies have shown that unvaccinated individuals increase the risk to *vaccinated individuals* of contracting COVID. https://www.forbes.com/sites/williamhaseltine/2022/05/06/study-shows-unvaccinated-people-are-at-increased-risk-of-infecting-the-vaccinated/?sh=2e8b49e978eb (accessed October 6, 2022). Given this, the Court could determine that an unvaccinated person's risk of transmitting COVID-19 to other people involved in this trial is "likely to disrupt the proceedings" based on either the juror's potential for contracting COVID-19, or the potential for other, vaccinated jurors to decline to serve on a jury with an unvaccinated individual. *See* 28 U.S.C. § 1866(c).

Any COVID-19 infection of a sitting juror would place at risk the health of all trial participants, including other jurors, court personnel, counsel, and spectators. This fact is particularly true given that jurors spend considerable time together indoors during a trial, both in the jury box during proceedings and in the jury room. An infection would likely severely disrupt the proceedings, might require the dismissal of jurors and granting of continuances, and could even possibly lead to a mistrial.

Therefore, the Court could find that any measure that possibly reduces the risk of infection is a vital necessity to avoid disruption of the proceedings. For these reasons, as cited above, multiple District Courts that have recently agreed that excusal of unvaccinated jurors is warranted. For instance, District Judge Valerie Caproni of the Southern District of New York wrote:

> Having unvaccinated individuals on the jury would pose a considerable and unnecessary risk of disruption of the proceedings. An unvaccinated juror would be considerably more likely to contract COVID-19 and to spread it to other jurors. Many jurors may therefore understandably feel unsafe or uncomfortable serving on a jury with unvaccinated individuals. Such anxiety may impair a juror's ability to perform his or her duty by being a distraction from the proceedings, both during trial and during deliberations. Further, if a juror were to be infected with COVID-19, not only would the juror jeopardize the safety of everyone around them, the juror and other jurors with whom the infected juror came

into contact might have been required to quarantine, which could have disrupted the trial or otherwise caused scheduling and other logistical issues.

*Joffe v. King & Spalding LLP*, 2021 WL 5864427, at *5 (S.D.N.Y. Dec. 10, 2021).

Separately, since the Court has indicated that it intends to dismiss unvaccinated potential jurors (and, presumably, those who refuse to share their vaccination status), the Court should make findings that doing so does not inappropriately diminish the ability of the Court to impanel a fair and impartial jury. A very large majority of adult citizens of this District are fully vaccinated. The rate of vaccination of persons 18 years and older in the counties that comprise the Bay Area ranges from a low end of 86.9% in Napa County to a high end of 95% in both Marin and Santa Clara Counties, with rates at 88.6% in San Francisco, 89.7% Alameda County, and 91% in Contra Costa County. *See* https://covid.cdc.gov/covid-data-tracker/#datatracker-home (accessed October 6, 2022). Thus, in every county in the Bay Area where the jury pool is drawn from, about nine in ten adults are fully vaccinated for COVID-19.

The Court should therefore find that its authority to exclude these jurors does not undermine the requirement of empanelment of a jury from a fair cross-section of the community. The Constitution bars only systematic exclusion of a "distinctive" group in the community. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). While the Supreme Court has not specifically defined that term, it has only applied it to groups presenting "some immutable characteristic such as race, gender, or ethnic background," *Lockhart v. McCree*, 476 U.S. 162, 175-76 (1986), holding in *Lockhart* that exclusion from a capital case of jurors fundamentally opposed to imposition of the death penalty did not involve a "distinctive" group under this test. The Court stated that the label did not apply to an attribute within the juror's control, that is, an opinion that the juror may change at some time. *Id.* at 176. "In our view, groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors . . . are not 'distinctive groups' for fair-cross-section purposes." *Id.* at 174.

Those who are unvaccinated, who have made their choice (a choice that may change at any time) based on a myriad of medical, religious, political, and other personal reasons, do not comprise a distinctive group under this analysis. *See Nelson*, 2022 WL 1093661, at *3 ("the 'unvaccinated' do not compose a 'distinctive' group within the meaning of *Duren* because, 'an individual's vaccination status

is within that individual's control, and the status can change in an instant, when the vaccine is taken,'" and because "the unvaccinated population lacks the necessary common attitude, idea, or experience to be considered a distinctive group because there is a 'myriad of reasons' why someone may decline the vaccine"); *see also United States v. Salamone*, 800 F.2d 1216, 1219 (3d Cir. 1986) (having "shared attitudes" does not qualify a group as distinctive; therefore, members of the National Rifle Association did not constitute a distinctive group for fair-cross-section purposes).

Moreover, there is not a monolithic, uniform group of unvaccinated individuals. According to the Kaiser Family Foundation, a nonprofit organization that conducts health polling, there are various distinct subgroups of unvaccinated people—some say they will never get vaccinated, some say they have enough protection, some who say they are too busy, some who don't trust the government, and some who do not believe the vaccines are safe, among other reasons. *See* https://www.kff.org/coronavirus-covid-19/dashboard/kff-covid-19-vaccine-monitor-dashboard/ (accessed October 6, 2022); *see also In re National Prescription Opiate Litigation*, 2022 WL 668434 (N.D. Ohio, Mar.7, 2022), *citing Duren*, 439 U.S. at 364 ("[T]he unvaccinated population is heterogenous. Therefore, the unvaccinated population cannot be deemed a distinctive group within the meaning of *Duren*, and Defendants cannot establish that their fair cross-section right was violated.").

Since the Court has indicated that the Court is inclined to exclude unvaccinated jurors (and, presumably, those who will not say whether they are vaccinated), the Court should make a finding that those who have not yet been vaccinated are not a monolithic, static group, but rather represent all ages, all ethnic backgrounds, gender identities, etc. This makes them very different as a group than one comprised of individuals with an immutable characteristic.

Further, even if a defendant did carry the burden of showing that the selection process systematically excludes a distinct group, there is no constitutional violation if the exclusion is no broader than is necessary to serve a "significant state interest." *Duren*, 439 U.S. at 368 (citing *Taylor v. Louisiana*, 419 U.S. 522, 533-35 (1975)). The interests outlined above plainly present such a significant state interest. *See, e.g.*, *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 485 (1995) (explaining the government "has a significant interest in protecting the health, safety, and welfare of its citizens").

Finally, the government believes that for purposes of this inquiry, the Court can and should treat potential jurors who are unvaccinated and those who will not divulge their vaccination status in the same fashion. While it is possible that a potential juror might be both fully vaccinated and unwilling to say, the Court could make a finding on the record, on a case-by-case basis, that a juror who refuses to say whether they are vaccinated presents a risk of disrupting the proceedings. A juror who will not say whether they are vaccinated presents arguably as great a risk as an unvaccinated juror that they are likely to disrupt the proceedings.

## CONCLUSION

In sum, the Court has the authority to inquire of all prospective jurors as to whether they are fully vaccinated against COVID-19 (and whether they have received boosters). Further, based on relevant statutes and case law, the Court has the power, if it so chooses, to overrule the defendant's objection and excuse from service in the trial any jurors who are not vaccinated or refuse to disclose their vaccination status. The government recommends, since the Court would be taking these steps over the defendant's objection, that the Court state findings on the record consistent with the propositions outlined in this brief. Specifically, the Court should find that, in light of current prevalence of COVID-19 in the community, the need to protect the health and safety of trial participants, and the likelihood of extreme inconvenience to trial participants and disruption of the proceedings caused by infection of a participant with COVID-19, these measures are warranted under Federal Rule of Criminal Procedure 24 and 28 U.S.C. § 1866(c). The Court should further state, on the record, that unvaccinated individuals are not a "distinctive" group in the community akin to those presenting "some immutable characteristic such as race, gender, or ethnic background," and thus excluding unvaccinated individuals from the venire does not deprive defendant of jury pool consisting of a fair cross-section of the community. 28 U.S.C. § 1866(c).

DATED: October 7, 2022                                          Respectfully submitted,

                                                                STEPHANIE M. HINDS
                                                                United States Attorney


                                                                _____/s/_____
                                                                KYLE F. WALDINGER
                                                                NICHOLAS J. WALSH
                                                                Assistant United States Attorneys