MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone:   (510) 500-9994
Email:       hanni@mlf-llp.com

Attorneys for Michael Rothenberg

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL ROTHENBERG,<br><br>   Defendant. | Case No.: 4:20-CR-00266-JST<br><br>**DEFENDANT'S RESPONSE AND OPPOSITION TO UNITED STATES' BRIEF ON JURY SELECTION PROCESS IN LIGHT OF COVID-19 PANDEMIC**<br><br>**Court:**          Courtroom 6, 2nd Floor<br>**Hearing Date:**   October 31, 2022<br>**Hearing Time:**   8:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ii

INTRODUCTION ...............................................................................................................................1

ARGUMENT .......................................................................................................................................2

    A.    Categorical exclusion of unvaccinated or decline to state jurors is unnecessary to protect public health. ..............................................................................................................2

    B.    Excluding all unvaccinated jurors violates Mr. Rothenberg's Sixth Amendment right to be tried by a fair cross-section of the community. ............................................................4

    C.    Excluding all unvaccinated jurors violates the JSSA. .......................................................7

CONCLUSION ..................................................................................................................................12

DEFENDANT'S RESPONSE AND OPPOSITION TO U.S. BRIEF ON JURY SELECTION PROCESS IN LIGHT OF COVID-19 PANDEMIC
*United States v. Rothenberg*, 4:20-CR-00266-JST

i

# TABLE OF AUTHORITIES

## Cases

*Alston v. Manson*, 791 F.2d 255 (2d Cir. 1986) ............................................................................. 5

*Badgerow v. Walters*, 142 S. Ct. 1310 (2022) ............................................................................. 11

*Duren v. Missouri*, 439 U.S. 357 (1979) ................................................................................... 4, 6

*Holland v. Illinois*, 493 U.S. 474 (1990) ....................................................................................... 5

*Lockhart v. McCree*, 476 U.S. 162 (1986) .................................................................................... 5

*Randolph v. People of the State of Cal.*, 380 F.3d 1133 (9th Cir. 2004) ...................................... 7

*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) ............................... 11

*Taylor v. Louisiana*, 419 U.S. 522 (1975) ..................................................................................... 5

*United States v. Branscome*, 529 F. Supp. 556 (E.D. Va. 1982) ................................................ 11

*United States v. Branscome*, 682 F.2d 484 (4th Cir. 1982) (per curiam) ................................... 11

*United States v. Butts*, 514 F. Supp. 1225 (M.D. Fla. 1981) ...................................................... 12

*United States v. Calabrese*, 942 F.2d 218 (3d Cir. 1991) .......................................................... 11

*United States v. Candelaria-Silva*, 166 F.3d 19 (1st Cir. 1999) ................................................. 11

*United States v. Carmichael*, 685 F.2d 903 (4th Cir. 1982) ........................................................ 8

*United States v. Cecil*, 836 F.2d 1431 (4th Cir. 1988) (en banc) .......................................... 8, 11

*United States v. Esquivel*, 88 F.3d 722 (9th Cir. 1996) ............................................................... 5

*United States v. Esquivel*, 88 F.3d 722 (9th Cir. 1996) ............................................................... 6

*United States v. Fletcher*, 965 F.2d 781 (9th Cir. 1992) ............................................................. 5

*United States v. Hernandez-Estrada*, 749 F.3d 1154 (9th Cir. 2014) (en banc) ...................... 6, 7

*United States v. Miller*, 771 F.2d 1219 (9th Cir. 1985) ............................................................... 7

*United States v. Pritchett*, No. CR 18-75-JDW, 2022 WL 606091 (D. Del. Jan. 28, 2022) ........ 7

*United States v. Rodriguez-Lara*, 421 F.3d 932 (9th Cir. 2005) ................................................. 6

*United States v. Sanchez-Lopez*, 879 F.2d 541 (9th Cir. 1989) ................................................... 6

*United States v. Stein*, 985 F.3d 1254 (10th Cir. 2021) ............................................................. 12

*Willis v. Zant*, 720 F.2d 1212 (11th Cir. 1983) ............................................................................ 5

DEFENDANT'S RESPONSE AND OPPOSITION TO U.S. BRIEF ON JURY SELECTION PROCESS IN LIGHT OF COVID-19 PANDEMIC
*United States v. Rothenberg*, 4:20-CR-00266-JST

ii

**Statutes**

28 U.S.C. § 1861 ............................................................................................................... 1, 8, 9

28 U.S.C. § 1862 ................................................................................................................. 8, 9

28 U.S.C. § 1863 ............................................................................................................. 8, 9, 10

28 U.S.C. § 1864 ...................................................................................................................... 10

28 U.S.C. § 1865 ................................................................................................................. 9, 10

28 U.S.C. § 1866 ............................................................................................................. 10, 11, 12

**Other Authorities**

A. Bendix, *Less than 4% of eligible people have gotten updated Covid booster shots, one month into the rollout*, NBC News (Sept. 23, 2022) ......................................................................... 3

Andrejko, et al., *Effectiveness of Face Mask or Respirator Use in Indoor Public Settings for Prevention of SARS-CoV-2 Infection — California, February–December 2021*, CDC Morbidity and Mortality Weekly Report (Feb. 11, 2022) ............................................................... 3

Andrews, et al., *Covid-19 Vaccine Effectiveness against the Omicron (B.1.1.529) Variant*, New England Journal of Medicine (Mar. 2, 2022) ................................................................. 3

BART.gov, "Mask requirement ended 10/2/22; Masks now strongly recommended" (Sept. 22, 2022) ............................................................................................................................. 4

Bernd Debusmann, *Covid-19 pandemic is over in the US - Joe Biden*, BBC News (Sept. 20, 2022) ... 4

CDC, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity* .......................... 2

Centers for Disease Control and Prevention, *Nationwide COVID-19 Infection- and Vaccination-Induced Antibody Seroprevalence* ............................................................................. 2

COVID19.ca.gov, "Vaccination status by vaccine equity metric and other groups" ........................... 6

Institute of Health Metrics and Evaluation, *COVID-19 Results Briefing: United States of America* (July 18, 2022) ........................................................................................................ 2

Jill Cowan, *California will end its indoor mask mandate next week*, New York Times (Feb. 7, 2022) ............................................................................................................................. 4

K. Katella, *Omicron and BA.5: A Guide to What We Know*, Yale Medicine (Sept. 7, 2022) ............... 3

OaklandCA.gov, "Proof of vaccination no longer required to enter indoor public locations in

DEFENDANT'S RESPONSE AND OPPOSITION TO U.S. BRIEF ON JURY SELECTION PROCESS IN LIGHT OF COVID-19 PANDEMIC
*United States v. Rothenberg*, 4:20-CR-00266-JST

iii

Oakland" (May 26, 2022) ..........................................................................................................4

Supreme Court: Press Release (Sept. 28, 2022) ....................................................................3

United States Court of Appeal for the Ninth Circuit: Argument Protocols (Sept. 1, 2022)...................3

DEFENDANT'S RESPONSE AND OPPOSITION TO U.S. BRIEF ON JURY SELECTION PROCESS IN LIGHT OF COVID-19 PANDEMIC
*United States v. Rothenberg*, 4:20-CR-00266-JST

iv

# INTRODUCTION

Jury trial on counts 1 and 2 of the superseding indictment is set to begin on October 31, 2022. At the pretrial conference held on October 6, 2022, the Court indicated it would excuse from jury service potential jurors who had not received a COVID-19 vaccine, as well as potential jurors who refused to indicate their vaccination status. Mr. Rothenberg objected on the record to the exclusion of unvaccinated jurors, as well as objected to other COVID-19 protocols the Court indicated it would take during trial, including calling jurors in groups of twenty during jury selection and requiring witnesses wear clear masks while testifying. The Court noted and overruled Mr. Rothenberg's objections.

On October 7, 2022, the government filed a brief on jury selection procedures in light of the COVID-19 pandemic, specifically arguing the Court could excuse unvaccinated and decline to state jurors. *See* Dkt. 160. Mr. Rothenberg files this brief to ensure there is a complete record on the issue.

As detailed below, exclusion of unvaccinated jurors is no longer necessary to protect public health, as most Americans have now contracted COVID-19, and 95% of Americans have some immunity from the disease through vaccination, infection, or both. Exclusion of such jurors would also violate the Sixth Amendment's fair-cross-section requirement and violates the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1861, *et seq.*

Finally, excluding unvaccinated jurors in this case would distinguish Mr. Rothenberg from other cases tried in the same courthouse where unvaccinated decline to state jurors were not categorically excluded. *See United States v. Makras*, 3:21-CR-00402-RS (N.D. Cal.), Dkt. 120, Transcript of Proceedings on July 27, 2022 at 3 (stating "I don't want to build in a potential appellate issue" and thus "I will not exclude all unvaccinated jurors from the venire."). That includes a case set to begin trial on October 18, 2022, where unvaccinated jurors will not be categorically excluded. *See United States v. Keller*, 3:18-CR-00462-VC (N.D. Cal.), Dkt. 431, Minute Entry of Proceedings on October 4, 2022 ("Unvaccinated and decline to state jurors will not be excluded from the pool of available jurors."). Thus, the Court should not categorically bar unvaccinated jurors from potentially serving on Mr. Rothenberg's jury.

DEFENDANT'S RESPONSE AND OPPOSITION TO U.S. BRIEF ON JURY SELECTION PROCESS IN LIGHT OF COVID-19 PANDEMIC
*United States v. Rothenberg*, 4:20-CR-00266-JST

1

# ARGUMENT

A. **Categorical exclusion of unvaccinated or decline to state jurors is unnecessary to protect public health.**

Since the advent of the COVID-19 pandemic in March 2020, COVID-19 has become less severe, and new evidence about the effectiveness of vaccines in stopping infections has emerged, which counsel against the necessity of excluding unvaccinated jurors on public-health grounds.

First, COVID-19 has now been around for two-and-a-half years, and by now most Americans have been infected with the disease at least once, and have some level of natural immunity from the infection.[1] Furthermore, the CDC currently estimates that "seroprevalence" rate in the United States—*i.e.*, the percentage of those 16 or older who "have developed antibodies against SARS-COV-2" either from vaccination, infection, or both—is now up to 95%.[2] According to the CDC, an unvaccinated person who recovered from a COVID-19 infection in the last six months likely has a higher level of immunity against the virus than someone who was vaccinated more than six months ago.[3] Thus, requiring vaccination—particularly without engaging in a cumbersome and intrusive inquiry about how recently jurors last received a vaccine dose or tested positive for COVID-19—would not meaningfully increase the safety of the proceedings.

Second, it has also become clear that while vaccination against COVID-19 is beneficial to the vaccinated person in preventing severe disease, vaccines are much less effective than initially believed in stopping COVID-19 infection at all, with "breakthrough" cases having become legion since the rise of the Omicron variant, which is proven by the fact that 82% of Americans have already

---

[1] *See, e.g.,* Institute of Health Metrics and Evaluation, *COVID-19 Results Briefing: United States of America* (July 18, 2022), *available at* https://www.healthdata.org/sites/default/files/files/Projects/COVID/2022/102_briefing_United_States_of_America_8.pdf (concluding that as of July 11, 2022, 82% of Americans have been infected at least once with COVID-19).

[2] *See* Centers for Disease Control and Prevention, *Nationwide COVID-19 Infection- and Vaccination-Induced Antibody Seroprevalence*, *available at* https://covid.cdc.gov/covid-data-tracker/#nationwide-blood-donor-seroprevalence.

[3] *See* CDC, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html ("Available evidence shows that fully vaccinated individuals and those previously infected with SARS-CoV-2 each have a low risk of subsequent infection for at least 6 months.").

had at least one bout of COVID.[4] In particular, the BA.4 and BA.5 subvariants, which are now the overwhelming majority of cases within the United States, tend to elude the immunity given by existing COVID-19 vaccines.[5] Mr. Rothenberg thus respectively suggests that requiring mandatory vaccination of jurors at this stage would provide minimal additional safety benefits.[6]

Third, there are other effective measures to protect the health of jurors other than requiring vaccination, such as requiring jurors to wear high-quality masks during proceedings.[7] Additionally rapid antigen tests are inexpensive or free, widely available, and provide a much more reliable method to determine the actual risk any juror poses to other case participants.

Fourth, courts and other government agencies across the country have suspended vaccination or masking requirements. For example, starting on September 1, 2022, the Ninth Circuit reopened all four of its main courthouses to the general public, without any requirement that members of the public or bar visiting the court be vaccinated, or even wear a mask.[8] Likewise, starting this October Term of 2022, the Supreme Court has fully reopened its building to the public, and like the Ninth Circuit has no vaccination requirement, nor even any mask requirement.[9] Local and national public

---

[4] *See, e.g.*, Andrews, et al., *Covid-19 Vaccine Effectiveness against the Omicron (B.1.1.529) Variant*, New England Journal of Medicine (Mar. 2, 2022), *available at* https://www.nejm.org/doi/full/10.1056/NEJMoa2119451#:~:text=Vaccine%20Effectiveness%2C%20Omicron%20Variant,courses%20and%20booster%20doses%20investigated (concluding that primary immunization "provided limited protection against symptomatic disease caused by the omicron variant," and that additional immunity provided by boosters waned over time).

[5] *See* K. Katella, *Omicron and BA.5: A Guide to What We Know*, Yale Medicine (Sept. 7, 2022), available at https://www.yalemedicine.org/news/5-things-to-know-omicron.

[6] While there are now two Omicron-specific bivalent booster vaccines available in the United States, they have only been available since September 1, 2022, and their uptake has been extremely limited. *See* A. Bendix, *Less than 4% of eligible people have gotten updated Covid booster shots, one month into the rollout*, NBC News (Sept. 23, 2022), *available at* https://www.nbcnews.com/health/health-news/updated-covid-booster-shots-doses-administered-cdc-rcna48960.

[7] *See, e.g.*, Andrejko, et al., *Effectiveness of Face Mask or Respirator Use in Indoor Public Settings for Prevention of SARS-CoV-2 Infection — California, February–December 2021*, CDC Morbidity and Mortality Weekly Report (Feb. 11, 2022), *available at* https://www.cdc.gov/mmwr/volumes/71/wr/mm7106e1.htm (wearing N95 or KN95 masks result in an 83% reduction in risk of contracting COVID-19 in real-world settings, as compared to wearing no mask).

[8] *See* United States Court of Appeal for the Ninth Circuit: Argument Protocols (Sept. 1, 2022), *available at* https://cdn.ca9.uscourts.gov/datastore/general/2022/08/18/In-person-protocols-Sept-1-2022.pdf.

[9] *See* Supreme Court: Press Release (Sept. 28, 2022), *available at* https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_09-28-22.

health authorities have also substantially reduced restrictions based on COVID-19. The city of Oakland does not require masking (let alone vaccination) to enter indoor public locations.[10] As of October 2, 2022, both BART and AC Transit eliminated the requirement that riders on their transit systems wear masks.[11] The State of California dropped any indoor mask mandates in February of this year.[12] And President Biden himself recently declared that "the pandemic is over."[13]

Simply put, as COVID-19 becomes less pervasive and less deadly, courts and other government entities across the country are returning to in-person proceedings and dispensing with more severe COVID-19 restrictions such as mask or vaccine mandates. Just as courts do not inquire about a prospective juror's vaccination against the flu, whooping cough, measles, chickenpox, monkeypox, or any number of other endemic infectious diseases, at this stage as COVID-19 moves from pandemic to endemic status, it is inappropriate for the Court to exclude jurors from service based on their private healthcare choices when it is not necessary to protect public health.

### B. Excluding all unvaccinated jurors violates Mr. Rothenberg's Sixth Amendment right to be tried by a fair cross-section of the community.

The Sixth Amendment guarantees criminal defendants the right to "a speedy and public trial, by an impartial jury," U.S. Const. amend. VI, including the right "to a petit jury selected from a fair cross section of the community." *Duren v. Missouri*, 439 U.S. 357, 359 (1979). Under *Duren*,

> to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable

---

[10] *See* OaklandCA.gov, "Proof of vaccination no longer required to enter indoor public locations in Oakland" (May 26, 2022), *available at* https://www.oaklandca.gov/news/2022/proof-of-vaccination-no-longer-required-to-enter-indoor-public-locations-in-oakland.

[11] *See*, BART.gov, "Mask requirement ended 10/2/22; Masks now strongly recommended" (Sept. 22, 2022), *available at* https://www.bart.gov/news/articles/2022/news20220922-0#:~:text=As%20of%20October%202%2C%202022,Masks%20are%20no%20longer%20mandatory; ACTransit.org, "AC Transit lifts onboard face mask requirement on bus lines" (Sept. 30, 2022), *available at* https://www.actransit.org/press-release/ac-transit-lifts-onboard-face-mask-requirement-october-2.

[12] *See* Jill Cowan, *California will end its indoor mask mandate next week*, New York Times (Feb. 7, 2022), *available at* https://www.nytimes.com/2022/02/07/us/california-indoor-mask-mandate.html.

[13] *See* Bernd Debusmann, *Covid-19 pandemic is over in the US - Joe Biden*, BBC News (Sept. 20, 2022), *available at* https://www.bbc.com/news/world-us-canada-62959089.

DEFENDANT'S RESPONSE AND OPPOSITION TO U.S. BRIEF ON JURY SELECTION PROCESS IN LIGHT OF COVID-19 PANDEMIC
*United States v. Rothenberg*, 4:20-CR-00266-JST

> in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. at 364. As to the first element—the "distinctive group" requirement—the Supreme Court has "never attempted to precisely define the term," but noted "that the concept of 'distinctiveness' must be linked to the purposes of the fair-cross-section requirement," including (1) "guard[ing] against the exercise of arbitrary power' and ensuring that the 'commonsense judgment of the community' will act as 'a hedge against the overzealous or mistaken prosecutor,' (2) preserving 'public confidence in the fairness of the criminal justice system,' and (3) implementing our belief that 'sharing in the administration of justice is a phase of civic responsibility.'" *Lockhart v. McCree*, 476 U.S. 162, 174–75 (1986) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 530–31 (1975)).

In the Ninth Circuit, to determine whether a group is distinctive, courts look to the following test:

> (1) that the group is defined and limited by some factor (*i.e.*, that the group has a definite composition such as by race or sex); (2) that a common thread or basic similarity in attitude, ideas, or experience runs through the group; and (3) that there is a community of interests among members of the group such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process.

*United States v. Fletcher*, 965 F.2d 781, 782 (9th Cir. 1992) (quoting *Willis v. Zant*, 720 F.2d 1212, 1216 (11th Cir. 1983)).

A defendant raising a fair-cross-section challenge under the Sixth Amendment need not be a member of the distinctive group whose exclusion is being challenged. *Holland v. Illinois*, 493 U.S. 474, 477 (1990). Further, unlike challenges to jury composition under the Equal Protection Clause, "a prima facie case for establishing a Sixth Amendment, fair cross-section violation does not require the [defendant] to prove discriminatory intent." *United States v. Esquivel*, 88 F.3d 722, 725 (9th Cir. 1996); *see also Alston v. Manson*, 791 F.2d 255, 258–59 (2d Cir. 1986) (noting that unlike the Equal Protection Clause, Sixth Amendment's fair-cross-section requirement "is stricter because it forbids any substantial underrepresentation of minorities, regardless of whether the State's motive is discriminatory"). Appellate courts "review independently and non-deferentially a challenge to the composition of grand and petit juries" under the Sixth Amendment, *United States v. Sanchez-Lopez*,

879 F.2d 541, 546 (9th Cir. 1989), and the denial of the Sixth Amendment right to a jury from a fair cross section of the community is a structural error, requiring automatic reversal. *United States v. Rodriguez-Lara*, 421 F.3d 932, 940–41 (9th Cir. 2005), *overruled on other grounds United States v. Hernandez-Estrada*, 749 F.3d 1154 (9th Cir. 2014) (en banc).

Under the Sixth Amendment, both African Americans and Latinos are "distinctive groups," easily satisfying the first prong of *Duren*. *See, Hernandez-Estrada*, 749 F.3d at 1159 ("African Americans and Hispanics are distinctive groups in the community."). *Duren*'s "second prong 'requires proof, typically statistical data, that the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community.'" *Hernandez-Estrada*, 749 F.3d at 1159 (quoting *United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir. 1996)).

Excluding unvaccinated jurors violates the Sixth Amendment here because there remain substantial racial disparities in vaccination rates, with Asian Americans and whites being vaccinated at substantially higher rates than African Americans and Latinos. In the counties that comprise the San Francisco-Oakland jury division of the Northern District, vaccination rates (meaning a person receiving both a primary vaccine and a booster) by race are as follows:[14]

|  | Asian | Black | Latino | White |
|---|---|---|---|---|
| **Alameda** | 76.1 | 61.9 | 54.5 | 77.5 |
| **Contra Costa** | 77.2 | 61.2 | 54.1 | 73.0 |
| **Marin** | 79.5 | 65.9 | 51.9 | 79.8 |
| **Napa** | 75.1 | 64.9 | 51.5 | 72.7 |
| **San Francisco** | 81.3 | 66.0 | 63.1 | 80.1 |
| **San Mateo** | 81.0 | 68.5 | 59.4 | 77.9 |
| **Sonoma** | 72.6 | 62.6 | 50.8 | 73.4 |

As the data conclusively demonstrates, excluding all unvaccinated jurors from the venire would therefore result in a substantial underrepresentation of African Americans and Latinos from the venire, "establish[ing] a prima facie case that the jury pool does not reflect a fair cross-section of the community." *Hernandez-Estrada*, 749 F.3d at 1165.

Mr. Rothenberg easily satisfies the third prong of the *Duren* test, "that the underrepresentation

---

[14] *See* COVID19.ca.gov, "Vaccination status by vaccine equity metric and other groups" *available at* https://covid19.ca.gov/vaccination-progress-data/#equitably-across-groups.

1  in question 'is due to systematic exclusion of the group in the jury-selection process.'" *Id.* at 1228
2  (quoting *United States v. Miller*, 771 F.2d 1219, 1228 (9th Cir. 1985)). Here, given the differential
3  rates of vaccination by ethnic group, the potential underrepresentation of African Americans or
4  Latinos on the venire would be due precisely due to imposing such a requirement and would amount
5  to a "systematic" exclusion of those distinctive groups from the venire. *See Randolph v. People of the*
6  *State of Cal.*, 380 F.3d 1133, 1141 (9th Cir. 2004) (describing "systematic" exclusions; noting that
7  under *Duren*, "disproportionate exclusion of a distinctive group from the venire need not be
8  intentional to be unconstitutional"). Thus, if the Court were to require all prospective jurors to be
9  vaccinated, it would violate Mr. Rothenberg's Sixth Amendment right to a jury venire that is a
10 representative cross section of the community. *Hernandez-Estrada,* 749 F.3d at 1159.

11         Consistent with Mr. Rothenberg's position, courts have refused to exclude unvaccinated jurors
12 based on the Sixth Amendment's fair-cross-section requirement, citing precisely these sorts of racial
13 disparities in vaccination rates. *See, e.g.*, *United States v. Pritchett*, No. CR 18-75-JDW, 2022 WL
14 606091, at *1–*2 (D. Del. Jan. 28, 2022) (holding government's request to exclude unvaccinated
15 jurors would violate the Sixth Amendment because of disparate impact on minority jurors). Indeed,
16 Chief Judge Seeborg, in a trial held in August 2022, declined to categorically exclude all
17 unvaccinated jurors from the venire, after defense counsel raised similar Sixth Amendment
18 objections, despite a strong preference to avoid seating unvaccinated jurors. *See United States v.*
19 *Makras*, 21-CR-00402-RS, Dkt. 120 at 3 (N.D. Cal. July 27, 2022). Similarly, Judge Chhabria is
20 declining to exclude unvaccinated and decline to state jurors form the jury pool in a case set for trial
21 to begin on October 18, 2022. *See United States v. Keller*, 3:18-CR-00462-VC, Dkt. 431, Minute
22 Entry of Proceedings on October 4, 2022.

23         Given the racially disparate impact of excluding unvaccinated jurors coupled with the lack of
24 public-health justification for doing so, the Court should decline to impose any categorical exclusion
25 of unvaccinated or decline-to-state jurors from the venire.

26 **C.    Excluding all unvaccinated jurors violates the JSSA.**

27         In the JSSA, Congress "declar[ed]" a policy that all juries in federal court—both grand and
28 petit—must be representative of the communities from which they are drawn:

> It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

28 U.S.C. § 1861. The JSSA further provides that "[n]o citizen shall be excluded from service as a grand or petit juror in the district courts of the United States . . . on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862.

In addition to declaring a statement of general policy, the JSSA prescribes detailed procedures for the selection of grand and petit juries in federal court. These procedures are intended to achieve two primary objectives: "random selection of juror[s]" and "determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only." *United States v. Carmichael*, 685 F.2d 903, 911 (4th Cir. 1982); *see also United States v. Cecil*, 836 F.2d 1431, 1445 (4th Cir. 1988) (en banc) (explaining JSSA is designed to "achieve the goal of the Sixth Amendment: . . . assur[ing] a jury pool drawn randomly from a fair cross-section of the community"). Imposing a grand juror vaccination requirement would violate multiple provisions of the JSSA, relating to (1) the limited bases on which courts may exclude jurors, (2) the promulgation of juror questionnaires, and (3) the process by which each federal district court adopts a juror-selection plan.

The JSSA identifies three classes of people who should be screened out of the jury pool: those who are "excused" from, those who are "exempt" from, and those who are "unqualified" for jury service. It further instructs that "[e]ach United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of [the JSSA], and that shall otherwise comply with the provisions of [the JSSA]." 28 U.S.C. § 1863(a). Among other things, each district's plan should identify which people are excused, exempt, or unqualified. First, the JSSA allows certain people to be "excused" from jury service. 28 U.S.C. § 1863(b)(5). In addition to specifically providing that "volunteer safety personnel" are excused, the JSSA empowers each district court to enumerate additional "groups of persons or occupational classes whose members shall, on individual request, therefore, be excused."

28 U.S.C. § 1863(b)(5)(a). Those classes or groups can be excused only if the district court determines "that jury service by such class or group would entail undue hardship or extreme inconvenience to the members thereof, and excuse of members thereof would not be inconsistent" with § 1861 (the JSSA's declaration of policy) and § 1862 (the JSSA's non-discrimination mandate). *Id.* The district court's plan must "state[]" which groups the court has found to satisfy this standard. *Id.*

Second, the JSSA identifies three groups of people who are "exempt" from jury service:

- members in active service in the Armed Forces of the United States;
- members of the fire or police department; and
- public officers in the executive, legislative, or judicial branches of the federal or state government who are actively engaged in the performance of official duties.

28 U.S.C. § 1863(b)(6). Each district's plan must "specify" that these people are exempt. *Id.*

Third, the JSSA deems a person "unqualified" for jury service if he or she:

- is not a United States citizen eighteen years old who has resided for a period of one year within the judicial district;
- is unable to read, write, and understand the English language with reasonable proficiency;
- is unable to speak English;
- is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or
- has a charge pending against him for the commission of, or has been convicted in a state or federal court of, a crime punishable by imprisonment for more than one year, and his civil rights have not been restored.

28 U.S.C. § 1865(b).

The JSSA lays out a specific process for determining who is excused, exempt, or unqualified. According to the JSSA, each district's jury plan should identify the source of prospective jurors within the district, such as the "voter registration lists," the "lists of actual voters," or "some other source or sources of names in addition to voter lists." 28 U.S.C. § 1863(b)(2). It should also "provide

for a master jury wheel" into which the district court clerk places names "randomly selected" from the court's chosen source. 28 U.S.C. § 1863(b)(4). "From time to time," the clerk draws names "at random" from the master jury wheel and mails to each person so selected "a juror qualification form," which asks questions about the recipient's eligibility for jury service. 28 U.S.C. § 1864(a). Based on the answers to those questions, the clerk determines whether prospective jurors are "unqualified for, or exempt, or to be excused from jury service." 28 U.S.C. § 1865(a).

The name of everyone who completes a juror questionnaire, and who is not determined to be exempt, excused, or unqualified, is placed in a "qualified jury wheel." 28 U.S.C. § 1866(a). When the need for a grand or petit jury arises, the clerk draws names "at random" from the qualified wheel and sends summonses to those people. *Id.*

The JSSA instructs that "no person or class of persons shall be disqualified, excluded, excused, or exempt from service as jurors," except for people deemed unqualified under § 1865 and people deemed excused or exempt "as provided . . . in [a] jury selection plan provision adopted pursuant to [§ 1863(b)(5)-(6)]." 28 U.S.C. § 1866(c). But in § 1866(c), the statute creates a limited number of specifically enumerated exceptions to this rule, providing that a "person summoned for jury service" may be:

- "excused by the court . . . upon a showing of undue hardship or extreme inconvenience;" "excluded by the court on the ground that such person may be unable to render impartial jury service or that his service as a juror would be likely to disrupt the proceedings;"
- "excluded upon peremptory challenge as provided by law;"
- "excluded pursuant to the procedure specified by law upon a challenge by any party for good cause shown;" or
- "excluded upon determination by the court that his service as a juror would be likely to threaten the secrecy of the proceedings, or otherwise adversely affect the integrity of jury deliberations."

*Id.* In sum, there are only four categories of people who can be removed from jury service: (1) those who are excused, (2) those who are exempt, (3) those who are unqualified, and (4) those who fall into

a § 1866(c) exception.

Conditioning jury service on COVID-19 vaccination status would violate the JSSA by excluding people from jury service on a basis not specifically authorized by Congress. In addition, the procedural requirements of the JSSA prohibit this Court from unilaterally altering its jury-selection plan to include a vaccination requirement particularly when, as described above, the vaccination requirement is not being applied equally throughout the Courthouse.

As explained above, the JSSA permits a district court to exclude a "person or class of persons" from jury service only if they (1) are excused, (2) are exempt, (3) are unqualified, or (4) fall into one of the exceptions in § 1866(c). Well-settled rules of statutory construction make clear that these bases for screening out jurors are exclusive. "[W]hen a statute designated certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (quotations and citation omitted); *see also Badgerow v. Walters*, 142 S. Ct. 1310, 1318 (2022) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, we generally take the choice to be deliberate.") (quotations and citation omitted). Any basis for juror exclusion not contained in the JSSA, therefore, is not permitted.

Courts have uniformly interpreted the JSSA this way. The JSSA "is designed to confine excusals and exclusions to a limited list of specifically enumerated grounds," and the reasons for exclusion listed in the statute are "exclusive and exhaustive." *United States v. Calabrese*, 942 F.2d 218, 220, 229 (3d Cir. 1991). "The limited grounds for excluding or excusing otherwise qualified persons from jury service were chosen purposefully by Congress." *United States v. Branscome*, 529 F. Supp. 556, 558 (E.D. Va. 1982). Indeed, the House and Senate reports on the JSSA specifically advised that the statute was "designed" to "prohibit" courts from "imposing qualifications above and beyond those specified by Congress." *Id.* at 559 (citations omitted). Thus, it is "improper" for a district court to "creat[e] a new category of exclusions" not contained in the JSSA. *United States v. Candelaria-Silva*, 166 F.3d 19, 33 (1st Cir. 1999). Or, in the Fourth Circuit's words, courts may not impose any "criterion for grand jury service not authorized by the [JSSA]." *United States v. Branscome*, 682 F.2d 484, 485 (4th Cir. 1982) (per curiam); *see also Cecil*, 836 F.2d at 1446

(explaining that "the jury-administering authority" may not "create[] its own group" of people who are excluded from jury service, such as "blue collar workers, chess players, Masons, etc."); *United States v. Stein*, 985 F.3d 1254, 1264 (10th Cir. 2021) (holding district court did not violate JSSA because method of jury selection "did not constitute the creation of a new category of exclusion in violation of the Jury Act"); *United States v. Butts*, 514 F. Supp. 1225, 1235 (M.D. Fla. 1981) (explaining district court may not exclude potential jurors on the basis of "nonstatutory criteria").

The result is that this Court may not impose a vaccination requirement on jury service, as that requirement is not a statutory basis for deeming a potential juror exempt, unqualified, excused, or subject to any § 1866(c) exception.

## CONCLUSION

Mr. Rothenberg respectfully requests the Court not categorically bar unvaccinated and decline to state jurors.

Dated:   October 13, 2022        Respectfully submitted,

                                 MOEEL LAH FAKHOURY LLP

                                 Hanni M. Fakhoury
                                 Attorneys for Michael Rothenberg