MOEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone:   (510) 500-9994
Email:       hanni@mlf-llp.com

Attorneys for Michael Rothenberg

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>MICHAEL ROTHENBERG,<br><br>                Defendant. | **Case No.:** 4:20-CR-00266-JST<br><br>**JOINT REQUEST FOR GUIDANCE RE EVIDENCE OF MOVEMENT OF MONEY**<br><br>**Court:**          Courtroom 6, 2nd Floor<br>**Hearing Date:** November 7, 2022<br>**Hearing Time:** 8:30 a.m. |

The parties have again met and conferred concerning the extent to which the government can elicit testimony and introduce evidence that Mr. Rothenberg allegedly moved money from Rothenberg Ventures Management Company ("RVMC") and Rothenberg Ventures Fund II ("RV Fund II"), and allegedly misrepresented to Silicon Valley Bank that those assets were his. The parties have attempted to come up with a limiting jury instruction but believe at this time, further guidance from the Court about the extent to which this evidence is admissible is necessary. Thus, the parties submit this joint status report detailing each side's respective position.

**DEFENSE POSITION**

Mr. Rothenberg maintains that *any* evidence alleging Mr. Rothenberg's scheme to defraud Silicon Valley Bank ("SVB") and false statements made to that bank concerned his claim that liquid cash he purported belonged to him actually belonged to RVMC or RV Fund II is inadmissible.

By way of background, the superseding indictment in this case alleges in Count 1 that Mr.

Rothenberg committed bank fraud because

> ROTHENBERG's updated URLA, dated August 21, 2014, listed the approximately $370,000 balance in the -052 CMA Account as an asset. The updated URLA listed only approximately $73,000 in non-real-estate-related liabilities and did not identify any money owed by ROTHENBERG to Merrill Lynch with respect to the -054 LMA Account; In truth, and as ROTHENBERG well knew at the time, until approximately July 30, 2014, the outstanding balance on his -054 LMA Account was $350,404.13, meaning that ROTHENBERG had drawn the entire available line of credit of $350,000 and that $404.13 in owed interest had accrued. As a consequence, a large portion of ROTHENBERG's -052 CMA Account was pledged as collateral against the line of credit. On or about July 29, 2014, ROTHENBERG directed the transfer of $350,404.13 from his personal checking account at Bank of America to the -054 LMA Account in order to pay off the balance. Once the -054 LMA Account balance was paid off, ROTHENBERG caused the creation of the Merrill Lynch documentation that he later submitted to SVB. On or about August 1, 2014, ROTHENBERG drew down the entire $350,000 available credit line on the -054 LMA Account. Accordingly, the undisclosed balance of that line of credit account was $350,000 on August 21, 2014, the date that ROTHENBERG signed the updated URLA and Financial Status Affidavit

Dkt. 15, Superseding Indictment at ¶¶ 28(e), (f).

Count Two alleges that Mr. Rothenberg submitted a false statement to the bank "in connection

with his application for a mortgage loan, to wit, ROTHENBERG knowingly made what he knew

were false statements and representations to SVB regarding his assets and liabilities including by

representing to SVB in his updated URLA that he had only $73,000 in non-real-estate-related

liabilities when, in truth, ROTHENBERG then had a liability of $350,000 to Merrill Lynch,

constituting the outstanding balance on the -054 LMA Account."  Dkt. 15, Superseding Indictment at

¶ 30.

On September 13, 2021, Mr. Rothenberg moved to sever counts 1-4 of the superseding

indictment. Dkt. 87. The government opposed the motion. Dkt. 96. On October 25, 2021, the Court

issued an order severing counts 1 and 2 from the remaining counts of the indictment.  Dkt. 101. The

Court found "Counts 3 and 4 are properly joined even though these counts involve different victims

because they were part of Rothenberg's alleged plan to misappropriate and misuse investor funds."

Dkt. 101 at 3. Turning to Counts 1 and 2, however, the Court noted:

> *By contrast, the bank fraud described in counts 1 and 2 does not involve the misuse or misappropriation of investor funds.* The indictment alleges that Rothenberg used one of the loans described in counts 1 and 2 to refinance the mortgage on his condominium, a purpose wholly unrelated to the misuse of investor funds. *See* ECF No. 15 ¶¶ 28.c, 30. Rothenberg obtained the second loan "to help satisfy his capital commitment to the 2014 Fund as a general partner." *Id*. ¶ 28.a. Also, the events in counts 1 and 2 ended

1   more than a year before any of the other counts in the indictment. There is no allegation
2   that the scheme to defraud SVB in order to keep the 2014 Fund operating flowed
3   directly from the scheme to misuse investor funds or that Rothenberg later misused
    investor funds due to the acts described in counts 1 and 2. Because the Government
4   must demonstrate more than "general thematic similarity" of a "plan to defraud," the
    Court finds that counts 1 and 2 may not be joined as part of a "common scheme or
    plan."

5   Dkt. 101 at 3 (emphasis added).  Moreover, the Court found that Counts 3 and 4 specifically alleged

6   that Mr. Rothenberg misrepresented the source of his funds to SVB, but that Counts 1 and 2 did not:

7   Although counts 1 and 2 do share some similarities with counts 3 and 4 – both schemes
    involve the same victim and the same statutory elements – other factors counsel against
8   finding "same or similar character" here. First, Rothenberg is not alleged to have used
    the same modus operandi for both schemes. *Counts 1 and 2 allege that Rothenberg*
9   *defrauded the bank by misrepresenting his current financial status and the balance of*
    *the credit line on one of his accounts.* Counts 3 and 4, on the other hand, allege that
10  Rothenberg defrauded the bank by misrepresenting that investors in the 2015 Fund
    prepaid their future management and administrative fees, the amount of prepaid fees he
11  was owed, and his method of funding the collateral account. Thus, the two schemes do
    not share the same modus operandi.

12

13  *Id.* at 5 (emphasis added). Finally, the Court explained "there is no reason to think that there would be

14  substantial evidentiary overlap for both schemes: the events in counts 1 and 2 occurred more than a

15  year before counts 3 and 4 *and do not contain allegations of overlapping misrepresentations*." *Id.* at

16  6 (emphasis added).  That is, while Counts 3 and 4 involved misrepresentations concerning Mr.

17  Rothenberg's entitlement to investor funds, Counts 1 and 2 did not.

18      In his motions *in limine*, Mr. Rothenberg moved the Court to exclude references to the

19  remaining counts in the indictment, arguing specifically "they were significantly different from the

20  allegations in the remainder of the case" and citing to the Court's pretrial ruling that "the bank fraud

21  described in counts 1 and 2 does not involve the misuse or misappropriation of investor funds."  Dkt.

22  144 at 4 (quoting Dkt. 101 at 4). The government did not oppose the motion *in limine*, agreeing "that

23  neither party should elicit evidence that Rothenberg has been charged with other criminal conduct in

24  Counts Three through Twenty-Three of the Indictment."  Dkt. 145 at 5.

25      Nonetheless, in its opening statement, the government told the jury that funds Mr. Rothenberg

26  represented as his actually belonged to RVMC and RV Fund II. Specifically, it stated:

27      The evidence will show that on these dates, starting on June 17th of 2014, the defendant
        began moving money from the venture capital fund account, *money that was not his*,
28      through the management company to his Bank of America account and ultimately to the
        Merrill Lynch account.

…

> So then how does the defendant come up with a Merrill Lynch printout at the beginning of August of 2014 that shows a zero dollar Merrill Lynch LMA balance? Again, the evidence will show that at the end of July of 2014, the defendant again collected money from various accounts, moving money from Rothenberg Ventures Fund Two to Rothenberg Ventures Management Company, to his personal bank account, to Merrill Lynch

…

> on August 1st, just as you saw in June, the evidence will show that the defendant on August 1st took down, borrowed $350,000 and sent it back from where he borrowed it. *You will hear that he had no authority to borrow money from this account, the Rothenberg Ventures Fund Two account.*

Reporter's Transcript of Proceedings, Vol. 2, 315:23-316:3, 316:14-21, 317:23- 318:3 (emphasis added). Thus, the jury has now been told they will see evidence that Mr. Rothenberg misappropriated investor money.

That conclusion is reinforced by discovery produced by the government on November 4, 2022. As required by Rule 16 and the Jencks Act, the government has been producing memorandums of interviews with its trial witnesses throughout trial. Within the discovery it produced Friday afternoon is an FBI 302 report of investigation summarizing an October 29, 2022 interview with witness Tom Leep, the former CFO of Rothenberg Ventures. *See* Exh. A. In that report—a preview of Leep's trial testimony—Leep stated "Rothenberg interpreted the management and operating agreements in a way in which he could take management fees sooner than the way Leep read the operating agreement," "there were times Leep though Rothenberg took extra management fees," "Leep thought it was ill advised to borrow from the fund, because the fund had other limited partners," "the management and operating agreements did not allow for borrowing from the fund," and "Leep did not believe the movement of money between the fund and the management company was disclosed to Fund II's limited partners." Exh. A at 3. Leep was also shown Exhibit 33—which has not been moved or admitted into evidence—and consists of the Rothenberg Ventures Fund II general ledger.

Thus, it is clear the government is seeking to put before the jury the issue of whether Mr. Rothenberg misappropriated money from RVMC and RV Fund II. This evidence is inadmissible for the reasons found by the Court in severing Counts 1 and 2 from the remaining counts of the

1  indictment; more specifically, such evidence would be irrelevant under Federal Rule of Evidence

2  402, and inadmissible bad character evidence under Federal Rule of Evidence 404(a).

3        Even if this Court disagrees with that point, the evidence should still be excluded under Federal

4  Rule of Evidence 403. If admitted, a potential defense to that claim is that Mr. Rothenberg was in fact

5  entitled to the money in the funds, and thus there was neither a scheme to defraud nor a false

6  statement to SVB predicated on the claim that the cash in the CMA account did not belong to Mr.

7  Rothenberg. That would result in a mini-trial on the misappropriation allegation that all agree should

8  not be at issue in this trial, and would thus run a significant danger of unfair prejudice, confusing the

9  issues, misleading the jury, undue delay and wasting time.

10       Should the Court disagree with the defense and permit the introduction of this evidence, then

11  Mr. Rothenberg requests a limiting jury instruction, specifically Ninth Circuit Model Jury Instruction

12  2.10 before the introduction of any of this evidence each and every time it is referenced by a witness,

13  and Ninth Circuit Model Jury Instructions 2.12 and 3.3 in the final charge to the jury at the end of the

14  case.

### **MODIFIED DISPUTED JURY INSTRUCTION 18**

#### **Other ~~Crimes, Wrongs or~~ Acts of Defendant**

17       You [[are about to hear] [have heard] testimony] and [[are about to see] [have seen]

18  evidence] [are about to see evidence] that the defendant [summarize other act evidence] transferred

19  money from Rothenberg Ventures bank accounts to his Bank of America and Merrill Lynch accounts.

20  This evidence of other acts [was] [will be] admitted only for [a] limited purpose[s].  You may

21  consider this evidence only for the purpose of deciding whether the defendant:

22       [had the state of mind, knowledge, or intent necessary to commit the crime charged in the

23  indictment;]

24       or

25       [had a motive or the opportunity to commit the acts charged in the indictment;]

26       or

27       [was preparing or planning to commit the acts charged in the indictment;]

28       or

1    ~~[acted with a method of operation as evidenced by a unique pattern~~ ~~[describe pattern];]~~

2    or

3    ~~[did not commit the acts for which the defendant is on trial by accident or mistake;]~~

4    or

5    ~~[is the person who committed the crime charged in the indictment.~~  ~~You may consider this~~

6    ~~evidence to help you decide [describe how the evidence will be used to prove identity];]~~

7    ~~or~~

8    ~~[describe other purpose for which other act evidence was admitted.]~~

9    Do not consider this evidence for any other purpose.

10   Of course, it is for you to determine whether you believe this evidence and, if you do believe it,

11   whether you accept it for the purpose offered. You may give it such weight as you feel it deserves,

12   but only for the limited purpose that I described to you.

13   The defendant is not on trial for committing these other acts. You may not consider the

14   evidence of these other acts as a substitute for proof that the defendant committed the crime~~[s]~~

15   charged. You may not consider this evidence as proof that the defendant has a bad character or any

16   propensity to commit crimes. Specifically, you may not use this evidence to conclude that because

17   the defendant may have committed the other act~~[s]~~, ~~[he]~~ ~~[she]~~ must also have committed the act~~[s]~~

18   charged in the indictment.

19   Remember that the defendant is on trial here only for ~~[state charges]~~ <u>bank fraud and for making</u>

20   <u>false statements to a financial institution</u>, not for these other acts.  Do not return a guilty verdict

21   unless the government proves the crime~~[s]~~ charged in the indictment beyond a reasonable doubt.

22                                                    **<u>Authority</u>**

23                            Ninth Circuit Model Jury Instruction (2022) No. 2.10

24

25                            **<u>MODIFIED DISPUTED JURY INSTRUCTION 19</u>**

26                                    **Evidence for Limited Purpose**

27   You ~~are about to~~ <u>have</u> hear<u>d</u> evidence that ~~[describe evidence to be received for limited~~

28   ~~purpose]~~ <u>was received for a limited purpose</u>.  I instruct you that this evidence is admitted only for the

1   limited purpose ~~of [describe purpose]~~ and, therefore, you must consider it only for that limited

2   purpose and not for any other purpose.

**Authority**

Ninth Circuit Model Jury Instruction (2022) No. 2.12

## MODIFIED DISPUTED JURY INSTRUCTION 20

### Other ~~Crimes, Wrongs or~~ Acts of Defendant

You have heard evidence that the defendant committed other ~~[crimes] [wrongs]~~ [acts] not

charged here. You may consider this evidence only for its bearing, if any, on the question of the

defendant's [intent] ~~[motive] [opportunity] [preparation] [plan]~~ [knowledge] ~~[identity] [absence of~~

~~mistake] [absence of accident]~~ and for no other purpose. ~~[You may not consider this evidence as~~

~~evidence of guilt of the crime for which the defendant is now on trial.]~~

**Authority**

Ninth Circuit Model Jury Instruction (2022) No. 3.3

\*\*\*

## GOVERNMENT POSITION

As the United States previewed before trial, the evidence in this case has shown and will show

that the Defendant engaged in "movement[s] of funds between accounts to make it appear that he had

more unrestricted assets and fewer liabilities than he actually had." Dkt. 143, at 2.   The United

States explained that it "expects to prove at trial that Rothenberg took these actions in order to create

bank statements that gave SVB the impression that Rothenberg had personal wealth sufficient to

justify issuing him the two loans under certain terms.  Specifically, the government anticipates that,

among other things, the evidence at trial will show that Rothenberg moved money between various

personal and business accounts at SVB, Bank of America, and Merrill Lynch in order given SVB a

false impression of his assets, liabilities, and net worth." *Id.* at 2-3.  Moreover, the United States

noted that this evidence of movement of funds would show that some of the funds did not originate

from Rothenberg's personal accounts.  Dkt. 145, at 5 n.1 (responding to Defendant's statement that

case did not involve misuse or misappropriation of investor funds by noting that "the government expects the evidence to show that at least some of that $350,404.13 amount originated from Rothenberg Ventures Management Company LLC ("RVMC") and Rothenberg Ventures Fund II LLC ("Fund II") – and not from Rothenberg's personal accounts" and that "evidence regarding the source of the funds is inextricably intertwined with the offenses charged in Counts One and Two")."

From the perspective of the United States, then, the dispute between the parties now centers on what use the government may make of this evidence. As an initial matter, the United States does not believe that the parties' dispute impacts Count Two. This is because, with respect to that count, the United States intends only to argue to the jury that the false statements that the Defendant made to SVB on or about August 21, 2014 were (1) that he had *liquid* assets of $370,000 in his Merrill Lynch CMA (when in truth those assets were encumbered), (2) that he only had about $73,000 in liabilities (when in truth he actually had a Merrill Lynch CMA balance of about $350,000), and (3) that his financial status as set forth in the loan application and associated financial status affidavit had not changed significantly and that the loan application accurately reflected his current financial status (when in truth it had changed since July 29, 2014 and did not accurately reflect his current financial status). With respect to Count Two, the United States does not anticipate arguing that one of the false statements that the Defendant made to SVB on August 21, 2014 related to his *ownership* of the funds in his Merrill Lynch CMA.

Turning then to Count One, the bank fraud count, the United States sees the issue as whether it may rely on the Defendant's conduct in moving money between accounts – including at least one of the venture capital funds he managed (Rothenberg Ventures Fund II) – to prove the existence of a scheme to defraud with respect to that count. As an initial matter, the United States notes that the Indictment alleges *both* a scheme to defraud *and* a scheme to obtain money by means of false and fraudulent pretenses, representations, and promises under both subsections of 18 U.S.C. § 1344. *See* Dkt. 15, ¶ 27. In the United States' view, the Defendant is attempting to limit the United States to only the second half of Count One. The Defendant may not do so.

The dispute framed in this pleading is not the first time that the Defendant has attempted to limit the United States' case. The Defendant's first attempt was in his Disputed Jury Instruction No.

1   2, in which he simply omitted the part of the Indictment that tracked 18 U.S.C. § 1344(1).  *See* Dkt.

2   152 at 52.  The Court rightly denied his request and held that the United States' proposed instruction

3   – which included both prongs of 18 U.S.C. § 1344 – would be given.  *See* Dkt. 161.

4        Now, the Defendant argues that some of the core evidence establishing the scheme to defraud

5   should be excluded: *i.e.*, Rothenberg's movement of money between accounts, which the government

6   will argue was designed and reasonably calculated to deceive SVB into thinking that that he had

7   greater assets and fewer liabilities than he actually did have (in conjunction with the Merrill Lynch

8   statement he gave to SVB listing balances on his CMA and LMA accounts).  These monetary

9   transactions are "evidence of the very acts charged as crimes in the indictment." *United States v.*

10  *Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016).  As the Ninth Circuit has explained, "[t]he crime charged

11  in a wire fraud [or bank fraud] prosecution . . . includes not only the specific executions of the

12  scheme alleged as the second element of the offense but also the overall scheme alleged as the first

13  element of the offense." *Id.* at 1177 ("Rule 404(b) thus does not preclude the government from

14  introducing evidence of uncharged transactions to prove the first element of wire fraud—the

15  existence of a scheme to defraud.") (describing "second element" as "specific executions of the

16  scheme").  Here, the Defendant's movement of funds between accounts (including the "round-

17  tripping" of those funds) is relevant to establish his intent to defraud, his devising of the scheme, his

18  preparations to execute the scheme, and his execution of the scheme, which all go to the existence of

19  a scheme to defraud.

20       In any event, the Defendant's movement of funds between various accounts is admissible

21  because it is inextricably intertwined with the charged conduct.  *See Loftis*, 843 F.3d at 1177

22  ("[E]vidence should not be considered 'other crimes' or 'other act' evidence within the meaning of

23  Rule 404(b) if 'the evidence concerning the "other" act and the evidence concerning the crime

24  charged are inextricably intertwined.'") (citation omitted).  There are two categories of such

25  inextricably intertwined evidence: "First, [the Ninth Circuit] ha[s] sometimes allowed evidence to be

26  admitted because it constitutes a part of the transaction that serves as the basis for the criminal

27  charge." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) ("[W]hen it is clear

28  that particular acts of the defendant are part of, and thus inextricably intertwined with, a single

1 criminal transaction, we have generally held that the admission of evidence regarding those acts does
2 not violate Rule 404(b).").  Second, prior act evidence may "be admitted when it was necessary to do
3 so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the
4 commission of the crime." *Id.* at 1012-13.

5       Here, the Defendant's CMA and LMA balances are part and parcel of the scheme to defraud
6 because the Defendant represented those balances to SVB when he provided the bank with Trial
7 Exhibit 10 in early August 2014.  Evidence regarding how the Defendant was able to achieve the
8 CMA and LMA balances reflected in Trial Exhibit 10 is inextricably intertwined with the charged
9 conduct because, particularly at the end of July 2014, those movements of funds occurred within a
10 few days of the Defendant's creation of Trial Exhibit 10 and because, by the time the Defendant
11 provided Trial Exhibit 10 to SVB, he had already completed the "round-tripping" of funds through
12 additional movements of funds.  Moreover, the United States is entitled to present the evidence in
13 such a way so as not to leave the jury guessing as to where the Defendant obtained the funds to
14 initially fund the CMA in June 2014 and the funds he used to pay off the LMA in late July 2014.

15       Facing this clear and unambiguous Ninth Circuit precedent, the Defendant is forced to retreat to
16 this Court's severance order, in which the Court severed Counts One and Two from the remaining
17 counts on the grounds that: "First, Rothenberg is not alleged to have used the same modus operandi
18 for both schemes;" Dkt. 101 at 5; and "Second, there is no reason to think that there would be
19 substantial evidentiary overlap for both schemes: the events in counts 1 and 2 occurred more than a
20 year before counts 3 and 4 and do not contain allegations of overlapping misrepresentations." *Id.* at
21 6.  That has proven to be true, in the end: the Defendant did not "defraud[] the bank by
22 misrepresenting that investors in the 2015 Fund prepaid their future management and administrative
23 fees, the amount of prepaid fees he was owed, and his method of funding the collateral account." *Id.*
24 at 5.  In contrast, the purpose of the evidence presented and to be presented in this trial is to show that
25 the Defendant schemed to give SVB a false impression of his assets, liabilities, and net worth through
26 the "round-tripping" of money through various accounts.  Furthermore, having occurred during
27 different time periods, none of the transactions at issue in this trial will form a basis of any of the
28 remaining charges in the Indictment.  Thus, the lines drawn in the severance order have been

1   respected at trial.

2       The Defendant focuses on the Court's statement that, "By contrast, the bank fraud described in

3   counts 1 and 2 does not involve the misuse or misappropriation of investor funds."  *Id.* at 3.  The

4   Defendant urges that the sentence be construed to be a flat ban on introduction of any evidence of

5   misuse or misappropriation of investor funds.  But that is not the import or effect of the severance

6   order.  As the Court explains in the same paragraph, "The indictment alleges that Rothenberg used

7   one of the loans described in counts 1 and 2 to refinance the mortgage on his condominium, a

8   purpose wholly unrelated to the misuse of investor funds."  The evidence at trial has been and will be

9   consistent with that conclusion.  Indeed, in that same paragraph of the severance order, the Court

10  found that "the Government must demonstrate more than 'general thematic similarity' of a 'plan to

11  defraud,'" in order to join Counts One and Two to the remainder of the Indictment.  By parallel

12  analogy, in this context, the Defendant cannot demonstrate anything more than "general thematic

13  similarity" of a "plan to defraud" that involved misuse of investor funds in Counts One and Two as

14  compared to the other counts of the Indictment.  In short, the Court's prior order that the Indictment

15  did not plead facts sufficient to conclude that Counts One and Two were properly joined under Rule 8

16  with the counts of the Indictment that pertain more directly to misuse of investor funds does not now

17  mean that the Defendant's use of funds from the bank accounts of his management company and a

18  venture capital fund as part of his scheme to defraud SVB is not part of the instant trial.

19      The United States agrees, however, that limiting instructions should be given.  For example, at

20  the close of the case, the parties have already recommended that the Court give an instruction on

21  "Activities Not Charged."  *See* Dkt. 152, at 43; *see also* Manual of Model Criminal Jury Instructions

22  (2022), No. 6.10 (Activities Not Charged) ("You are here only to determine whether the defendant is

23  guilty or not guilty of the charges in the indictment.  The defendant is not on trial for any conduct or

24  offense not charged in the indictment.").  The United States also proposes modifying the "Evidence

25  for a Limited Purpose" instruction already proposed by the parties, *see* Dkt. 152, at 28, to clarify the

26  exact purposes as to which the evidence of the Defendant's movements of funds can be put.  The

27  United States' proposal is set out below:

28

## MODIFIED DISPUTED JURY INSTRUCTION NO. 19

### EVIDENCE FOR A LIMITED PURPOSE

You are about to hear evidence that [describe evidence to be received for limited purpose] the defendant transferred, or caused to be transferred, money from the bank account of Rothenberg Ventures Fund II, LLC, to the bank account of Rothenberg Ventures Management Company, LLC, and then on to his personal Bank of America and Merrill Lynch accounts [or that the defendant transferred, or caused to be transferred, money from one of his Merrill Lynch accounts to his personal Bank of America account, and then on to the bank account of Rothenberg Ventures Management Company, LLC and the bank account of Rothenberg Ventures Fund II, LLC]. I instruct you that this evidence is admitted only for the limited purpose of showing that the defendant acted with the intent to defraud Silicon Valley Bank, devised a scheme to defraud Silicon Valley Bank, and/or executed a scheme to defraud Silicon Valley Bank [describe purpose] and, therefore, you must consider it only for that limited purpose and not for any other purpose.

### Authority

Ninth Circuit Model Jury Instruction (2022) No. 2.12.

If the Defendant wishes, a modified version of the above instruction could also be given at the end of the case. In any event, the Court should include the bracketed language in paragraph 2 of Stipulated Jury Instruction No. 29 (What Is Not Evidence) when it charges the jury for the purpose of reminding the jury that certain evidence has been admitted for a limited purpose. *See* Dkt. 152, at 39. The government believes that these proposed instructions address the Defendant's concerns, while ensuring that the government's evidence related to the steps that the Defendant took to devise and execute the alleged scheme to defraud are properly put before the jury.

***

Given these differing positions, the parties request the Court issue guidance on whether this evidence is admissible and, if so, what is the appropriate limiting instruction to provide to the jury.

Dated:       November 7, 2022                    Respectfully submitted,


MOEL LAH FAKHOURY LLP

       /S
HANNI M. FAKHOURY
Attorneys for Michael Rothenberg


STEPHANIE M. HINDS
United States Attorney
Northern District of California

       /S
KYLE F. WALDINGER
NICHOLAS J. WALSH
Assistant United States Attorneys