# EXHIBIT A

**TO JOINT REQUEST FOR GUIDANCE RE EVIDENCE OF MOVEMENT OF MONEY**

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**



Date of entry   11/03/2022

THOMAS "TOM" LEEP, previously interviewed, was interviewed by way of video conference. Also present for the interview were LEEP's attorneys, Britt Evangelist and Mary McNamara, and Assistant United States Attorney (AUSA) Kyle Waldinger. LEEP was aware of the identities of the interviewing officials and the nature of the interview. LEEP provided the following information:

LEEP was shown trial exhibit 101. This was the management agreement that was in place in the summer of 2014. It was not common to get disbursements from any of the funds.

LEEP was shown trial exhibit 3. MICHAEL "MIKE" ROTHENBERG put this together. LEEP did not pay much attention to ROTHENBERG's personal financial statement. If ROTHENBERG had not made any capital contributions to Fund II, ROTHENBERG would have zero equity in Fund II. LEEP believed ROTHENBERG had $10,000 of equity in Fund I. ROTHENBERG must have made investments at Audax Equity & Private Holdings. ROTHENBERG once worked for Audax.

LEEP did not know Rothenberg Investments. While LEEP was working for Rothenberg Ventures Management Company (RVMC), ROTHENBERG had some partnerships in Texas and did some business in Texas.

LEEP was aware ROTHENBERG was investing in a building on Folsom Street in San Francisco, California.

LEEP has been to ROTHENBERG's residence at 712 Bryant Street in San Francisco. ROTHENBERG made substantial changes to 712 Bryant Street, to include, changing the stairs and a lot of nice decorating. They worked out of the residence for a couple weeks.

LEEP did not know anything about the $47,500,000 relating to net equity in RVMC, but it would not have been liquid. LEEP imagined it was the total assets summed up, but he did not really know. ROTHENBERG may have sold some equity interest in RVMC to FRAN HAUSER, but LEEP did not recall if he did or not.

---

Investigation on 10/29/2022 at Oakland, California, United States (Other (video conference))

File # 318A-SF-2073308                                    Date drafted 11/02/2022

by Jennifer C. Barnard

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US-FBI-009945

FD-302a (Rev. 5-8-10)

318A-SF-2073308

Continuation of FD-302 of (U) Interview of Thomas "Tom" Leep , On 10/29/2022 , Page 2 of 4

ROTHENBERG had student loans. One time, when ROTHENBERG received some considerable compensation, LEEP told him to pay off his student loans. LEEP thought ROTHENBERG did. The compensation ROTHENBERG received, which he used to pay off his student loans, would have been included in income on ROTHENBERG's K-1.

LEEP was shown trial exhibit 85 pages 26 and 27. LEEP and ROTHENBERG could transfer money between the fund and the management company. LEEP did not believe, in the summer of 2014, anyone else had the ability to do this.

LEEP transferred money for management fees. ROTHENBERG could make the transfers. LEEP did not have knowledge if ROTHENBERG made other transfers.

LEEP logged into the Silicon Valley Bank (SVB) website and found the place that allowed him to make intercompany transfers. "Book Transfer" seemed to LEEP to be something the bank added if there was no description provided. The description management fees was added by the person who made the transfer.

LEEP did not know why the transfer of $225,000 out of the account and then back into the account was done. ROTHENBERG had the ability to make these transfers.

LEEP was shown trial exhibit 33. The transactions would have been entered into Rothenberg Ventures' books. LEEP made all the entries into QuickBooks. ROTHENBERG had access, but ROTHENBERG relied on LEEP to make the entries and report back. LEEP assumed he took the memo description Book Transfer from the notations on the bank statements.

LEEP was shown trial exhibit 33 page 2. The transfers on June 5, 2014, were professional fees. Professional fees and management fees were the same thing. The transfer of $225,000 on June 17, 2014, was booked to other current assets. LEEP did not know the purpose of the transfer so it was booked to other current assets. LEEP was either unaware of the purpose or by the time he made the entry, he knew the money was coming back. The memo description was pulled from the description on the bank statement.

The bank statements were digital. At month end, LEEP reconciled the bank statements and the books.

LEEP had no recollection of talking with ROTHENBERG about the $225,000 transaction.

LEEP did not recall specific conversations, but he did recall general conversations with ROTHENBERG about money. ROTHENBERG spent a lot of money

US-FBI-009946

FD-302a (Rev. 5-8-10)

318A-SF-2073308

Continuation of FD-302 of (U) Interview of Thomas "Tom" Leep , On 10/29/2022 , Page 3 of 4

on marketing activities. ROTHENBERG interpreted the management and operating agreements in a way in which he could take management fees sooner than the way LEEP read the operating agreement. LEEP saw a day when ROTHENBERG would run out of money. LEEP told ROTHENBERG his spending was high. LEEP started telling ROTHENBERG this early in the game.

There were times LEEP thought ROTHENBERG took extra management fees. ROTHENBERG would explain to LEEP why he had not.

LEEP did not recall ROTHENBERG taking money directly from the funds. LEEP did not recall a conversation about taking money from the funds.

LEEP was shown trial exhibit 86 page 111. The ledgers were separate. LEEP did not recall an export feature to transfer the information from the bank statements into QuickBooks. If there was a feature, he did not use it.

Regarding the $310,000 sent to ROTHENBERG, the $310,000 back from ROTHENBERG, and the $225,000 sent to Fund II, LEEP did not recall sending $310,000 to ROTHENBERG. LEEP had no control over ROTHENBERG's personal bank account.

LEEP did not recall the $310,000 being a distribution of income.

LEEP was shown trial exhibit 8. The letter stating ROTHENBERG's compensation from January 1, 2014 through June 30, 2014, was $220,000 was accurate, as of the date of the letter.

The $310,000 was not compensation to ROTHENBERG.

LEEP did not recall there being a loan agreement for three days. ROTHENBERG could borrow from the company. A note would have been the preferred way to document a loan from the management company to the owner. LEEP thought it was appropriate to memorialize a loan with a document.

The $310,000 transaction was a short turn around. A contract does not have to be on paper. ROTHENBERG was agreeing with himself.

LEEP thought it was ill advised to borrow from the fund, because the fund had other limited partners. The management and operating agreements did not allow for borrowing from the fund. LEEP did not believe the movement of money between the fund and the management company was disclosed to Fund II's limited partners.

LEEP was shown a document with Bates number SEC-DOJ-EPROD-000044740. The $310,000 transaction was booked as a current asset, as ROTHENBERG owed money

to the management company. It was a current asset of the management company. The $225,000 transaction was booked as a current liability. It was not characterized as a management fee receivable as it was a liability. It was money owed to Fund II.

LEEP recognized the document as a record of general ledger entries. LEEP would have seen the money come back into the account within a few days. It was possible it was not a fight LEEP wanted to pick with ROTHENBERG, as the money went in and out within days.

ROTHENBERG was smart and remembered things.

LEEP had disagreements with ROTHENBERG on how ROTHENBERG was running his business, to include, spending money beyond an ability that could be sustained, for example, Founders Field Day, football playoff games, and Warriors games. We were always short on cash. The meetings were successful. We met founders and with investors, but at what cost.

When asked if the first Founder's Field Day was in May 2014, LEEP advised that sounded right. Founder's Field Day had sponsors, to include, SVB.

On RVMC's books, management fees were not booked as other current liabilities, carry was not booked as other current liabilities, and reimbursements of expenses were not booked as other current liabilities.

ROTHENBERG was very aware when management fees were due.

LEEP advised the $225,000 transaction on June 17, 2014, was recorded as a current liability not as a current asset as stated earlier in the interview when discussing trial exhibit 33.