UNITED STATES DISTRICT COURT **ORIGINAL**

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable JON S. TIGAR, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Jury Trial** |
| | ) | |
| Plaintiff, | ) | **Volume 11** |
| | ) | |
| vs. | ) | NO. CR 20-00266JST |
| | ) | |
| MICHAEL BRENT ROTHENBERG, | ) | Pages 1585 - 1627 |
| a/k/a MIKE ROTHENBERG, | ) | |
| | ) | |
| Defendant. | ) | Oakland, California |
| _____ | ) | Thursday, November 17, 2022 |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

For Plaintiff:            STEPHANIE M. HINDS, ESQ.
                          United States Attorney
                          1301 Clay Street, Suite 340S
                          Oakland, California  94612
                     BY:  KYLE F. WALDINGER,
                          NICHOLAS J. WALSH,
                          ASSISTANT UNITED STATES ATTORNEYS


For DEFENDANT:            Moeel Lah Fakhoury LLP
                          1300 Clay Street, Suite 600
                          Oakland, California  94612-1427
                     BY:  HANNI M. FAKHOURY, ATTORNEY AT LAW


Reported By:              Raynee H. Mercado
                          CSR. No. 8258


   Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

```
 1   Thursday, November 17, 2022                        8:30 a.m.

 2                       P R O C E E D I N G S

 3                            --o0o--

 4      (Court in recess while the jury deliberates beginning at

 5   8:30 a.m.)

 6                  (Proceedings resumed at 9:45 A.M.)

 7      (The following proceedings were heard out of the presence

 8   of the jury:)

 9         THE COURT:  Good morning.  We're outside the presence

10   of the jury.

11      Mr. Walsh, Mr. Waldinger, Agent Barnard, Mr. Torres,

12   Mr. Rothenberg, and Mr. Fakhoury are all at counsel table.

13      We received a note from the jury.  Ms. Lee is passing that

14   out to you.  I'll wait until you've had a chance to read it.

15                  (Pause in the proceedings.)

16         THE COURT:  Ms. Lee, did you also pass out Ninth

17   Circuit pattern instruction 6.25?

18         THE CLERK:  Yes, sir.

19         THE COURT:  Okay.

20                  (Pause in the proceedings.)

21         THE COURT:  If counsel could simply look up when

22   they're ready to proceed.

23                  (Pause in the proceedings.)

24         THE COURT:  Mr. Fakhoury, are you ready?

25         MR. FAKHOURY:  Yes, Your Honor.
```

 1            **THE COURT:**  All right.

 2        Mr. Waldinger has been gazing at the Court for some time.

 3        Okay.  So the note says -- the note will be made a part of

 4    the record.  But what it says is:

 5        "1.  If we are concerned we may be locked, do you, the

 6    Judge, want to talk with us?

 7        "2.  What is the lasted [sic]" -- that's the word that was

 8    used.

 9        "What is the lasted we should let you know regarding a

10    potential decision or locked status to determine whether the

11    court can convene this coming Friday, November 18?"

12        Let me tell you preliminarily what I propose to do by way

13    of response and then take your comments.

14        I'm going to read -- I intend to read Ninth Circuit

15    pattern instruction 6.25.  I've never given an *Allen*

16    instruction, but my preliminary research this morning and the

17    existence of the pattern instruction convinces me that this

18    one sufficiently is mild that the giving of that instruction

19    once would not have a coercive effect.

20        I don't intend to say anything further to the jurors by

21    way of talking to them, as the first question, to use the

22    phrase their first question uses.

23        I certainly don't intend to find out how they're divided

24    numerically or otherwise.

25        With regard to their second question, I intend to say, my

1    expectation is that if you do not reach a verdict today,

2    you'll deliberate tomorrow.

3        I think at that point, either in the courtroom or later by

4    way of note, the jury will ask how long I intend to make them

5    deliberate.

6        They have asked Ms. Lee that question.  And she has said,

7    "I don't know.  That's up to the Judge."

8        I should also tell you that one of the jurors told Ms. Lee

9    that she has travel plans on Saturday.

10       And Ms. Lee said, "Did you bring that up to the Court

11   during hardships?"

12       And she said, "No."

13       And Ms. Lee said, "Well, then I don't think Judge Tigar is

14   going to consider it.  He was very emphatic to people, you

15   know, that they had to let the Court know about their

16   conflicts during the hardship period."

17       I don't know what juror that is.

18       Ms. Lee, would you tell the parties who that is.

19           **THE CLERK:**  Yes.  Your Honor.  That's Juror 5,

20   Ms. Shak.

21           **THE COURT:**  Okay.

22           **MR. WALSH:**  Ms...?

23           **THE CLERK:**  Shak.  Shak.

24           **THE COURT:**  So does anyone think it would be

25   inappropriate for me not to say this in front of the jury but

1    to start thinking with you out loud about what a reasonable

2    length of deliberation would be in this case?  Or would you

3    prefer to have that discussion tomorrow?

4         **MR. WALDINGER:**  Maybe tomorrow.  I mean I know that

5    in the -- the last bank fraud case we had in the office, the

6    jury deliberated longer than the trial took.

7         **THE COURT:**  Hmm.

8         **MR. WALDINGER:**  A number of days -- that was the

9    *Makras* trial in front of Judge Seeborg -- and did reach a

10   verdict in that case.

11        **THE COURT:**  Oh, that's fine.  I'm not in a rush to

12   have that discussion.  This jury is going to deliberate

13   tomorrow if they need to.  So I don't -- I'm certainly not

14   going to entertain a mistrial today.

15        **MR. WALDINGER:**  I think the government has no

16   objection with telling the jury that -- that they can

17   certainly deliberate through tomorrow.  Without having done

18   any research outside of my own memory and looking at the

19   pattern instruction here, I don't know that we have a

20   statement from the jury that they are deadlocked.

21        **THE COURT:**  Um-hmm.

22        **MR. WALDINGER:**  We have -- we have a statement that

23   they may be deadlocked.  And so I'm -- I'm just looking at the

24   notes or the comments to the model instruction from the Ninth

25   Circuit case *Hernandez-Guardado*.  This says the most critical

1    factor is the jury's own statement that it is unable to reach

2    a verdict.

3       Now obviously the jury has not reached a verdict.  But we

4    don't have a statement that they are deadlocked or that they

5    are unable to reach a verdict, only that they may be.  So I

6    think that would be a concern from the government's side with

7    respect to answering the first question.

8          **THE COURT:**  You make a good point.  Then I'll respond

9    to that after I've had a chance to hear from Mr. Fakhoury, but

10   I hear what you're saying.

11         **MR. WALDINGER:**  Okay.

12         **THE COURT:**  Mr. Fakhoury.

13         **MR. FAKHOURY:**  I actually agree with Mr. Waldinger on

14   the first point, that it's not clear that they're deadlocked.

15   So given that, I'm not in favor of a -- of an *Allen* charge or

16   I'd ask the Court not to give it, rather.

17      On the second point, I wonder if it just would make sense

18   to tell them -- the way I interpret the question is they're

19   sort of trying to figure out if they're able to come in

20   tomorrow.  Perhaps we could tell them they can deliberate as

21   long as they want in the court given the fact that they've

22   picked a schedule for Friday of 8:30 to 4:30, you know, Friday

23   is available for them to deliberate if they want to.  But

24   ultimately, the length of the deliberation is up to them,

25   there's not a set deadline, I suppose.

1    **THE COURT:**  I agree with telling them there's no set

2    deadline because even though they didn't ask that specific

3    question, they have asked it of Ms. Lee.  So we know it's on

4    their mind.

5    **MR. FAKHOURY:**  Sure.

6    **THE COURT:**  And I think regarding Friday, I would

7    just say if you haven't reached a verdict today, then

8    deliberations will resume tomorrow.  I mean, they said -- they

9    wondered if we're going to deliberate on Friday.  And it's

10   true that it was their -- that they had the right to make the

11   decision whether they were going to deliberate on Friday.  But

12   that decision has now been made.  So very good.

13       And on the first question, having listened to both of you,

14   there's a lot of wisdom in what you've said.  I think I would

15   say if you -- if you conclude -- if you get to the point where

16   you really think you're unable to make a unanimous decision,

17   then, yes, I would like to talk to you.  And leave it at that.

18       How's that sound?

19   **MR. WALDINGER:**  I think that's fine, Your Honor.

20   **MR. FAKHOURY:**  That's fine too.

21   **THE COURT:**  Okay.

22       (Pause in the proceedings.)

23   **THE COURT:**  Now, just anticipating one possibility.

24   Let us say that the jurors are in the courtroom.  I answer

25   their questions as we've just discussed.  And Mr. Hailey says,

1    "Well, okay, I'll tell you, we are really unable to make a

2    decision" -- or "I'll tell that you right now, we're unable to

3    make a decision.  We've been stuck -- I won't tell you what

4    the division is, but we've been stuck in the same place for

5    three hours."

6        I'm not sure the right move is to return the jury to the

7    jury room so he can write that down on a note and send it out.

8        So I think what I want to do is have the discussion now

9    that we would have if he had done that so that I'll be ready

10   to respond if he says it from the jury box.

11           **MR. WALDINGER:**  I don't know -- again having not

12   researched it -- whether it's relevant that they're deadlocked

13   on both counts or only one count.

14           **THE COURT:**  That's -- that's -- I'll jump in just to

15   say I have not been in this situation before.  So this is new

16   to me also with regard to the point you just made.

17       And all I've been able to learn in the few minutes that I

18   had before I took the bench is that when -- first of all, is

19   that sometimes it is the right move for the trial judge to ask

20   the jury:  Are you deadlocked on one count as opposed to all

21   or both counts?

22       If you do that, you can be starting the jury down a path

23   in which they are simply going to reach a verdict on one count

24   and not the other.  Something about -- my guess is that's

25   something about the power of suggestion.  Or maybe

1   normalization would be a better way of putting it.

2       And I don't -- I've just started thinking about this.  I

3   don't have a view as to whether I should ask that question or

4   not.

5       Do you?

6           MR. WALDINGER:  I hear what you're saying.  I mean

7   there could be -- the power of the Court's suggestion, there

8   could be some, you know, some error there or --

9           THE COURT:  I don't perceive error.

10          MR. WALDINGER:  Okay.

11          THE COURT:  And, frankly, I want the information.  I

12  don't --

13          MR. WALDINGER:  Well --

14          THE COURT:  All else being equal, I want to know as

15  much as I am permitted to know about where the deliberations

16  are so I can determine whether further deliberations are a

17  productive use of the jury's time, whether there are

18  additional instructions that the Court might give to assist

19  the jury, that sort of thing.

20      So I always want -- I think I would always want additional

21  information, but I don't want to err and I don't want to do

22  anything that -- well, mostly I just don't want to err.  I

23  want to do whatever a good judge would do in that

24  circumstance.

25      Mr. Fakhoury, further thoughts on this question of

1    deadlocked on one count and not the other?

2         **MR. FAKHOURY:**  I think it's -- I would request the

3    Court not ask about the count issue, whether it's one or the

4    other.  It strikes me -- and I apologize, I don't have the

5    actual jury instructions -- it strikes me as -- and maybe my

6    recollection is wrong, but I was under the assumption that the

7    instruction that talks about like communicating with the Court

8    says something to the -- you know, it mentions obviously don't

9    let the Court know what -- where people stand numerically.

10        **THE COURT:**  Right.

11        **MR. FAKHOURY:**  And it strikes me as being not exactly

12   like that, but sufficiently similar to that where the Court's

13   concerns about normalization or the power of suggestion really

14   do come into play.

15      So I hear what the Court is saying about if Mr. Hailey

16   comes in and says -- I agree with the Court, in other words,

17   that there's not much of -- there's not much value in telling

18   them go back into the room so you can write a note and say

19   you're deadlocked.  I agree perhaps we need to sort that out

20   or at least have an answer.

21        **THE COURT:**  Well, I'm not -- I'm not going to poke

22   the bear.  I'm not going to ask the question.

23        **MR. FAKHOURY:**  Sure.

24        **THE COURT:**  I'm just going to say if you get to the

25   point where you really think that you're unable to reach a

1  decision, then, yes, I'd like to have a further discussion

2  with you.

3      At that point, Mr. Hailey or another juror may say that

4  they've reached that point, and I just want to be ready to

5  respond.

6          **MR. WALDINGER:**  I think where the government is, Your

7  Honor, if Mr. Hailey or another juror responds that they are

8  deadlocked, then the government would be okay with the Court

9  giving the *Allen* charge at that point without determining any

10  more information.

11          **THE COURT:**  Now, the Ninth Circuit, as you know from

12  the model instructions, is of the view that you don't tell the

13  jurors that a transcript will be available to them.  That's

14  just federal trial culture, I suppose.  In the state court

15  where I also sat for many years, the culture is the opposite.

16      In the 2013 edition of the Manual on Jury Trial

17  Procedures -- and maybe I need to look and see if there's a

18  more recent version of this.  But anyway it says in

19  chapter 5 -- this is prepared by the Jury Instructions

20  Committee of the Ninth Circuit -- that the court may ask the

21  foreperson the following questions:  Is there anything else

22  the court can do to assist in the jury's deliberations?  Would

23  an additional instruction assist in your deliberations?  Would

24  the rereading of any testimony help the jury reach a

25  conclusion?

1    And frankly, I like state -- I've always liked state court

2    practice better anyway.  And I think very often there are

3    debates in the jury room about what people said in which one

4    side of the discussion is wrong.  And those disputes can be

5    cleared up definitively by hearing the testimony.

6        So I think I'm going to ask that question just to see if

7    there's some testimony they want to hear that would be helpful

8    to them.

9        **MR. WALDINGER:**  I've not dug deep into this, Your

10   Honor.  I know that the model instruction 6.28 from the Ninth

11   Circuit says that if during jury deliberations a request is

12   made by the jury or juror for a readback, the court can

13   exercise its discretion to do so.

14       **THE COURT:**  Yes.  The Ninth Circuit has always been

15   clear judges have discretion to do it.  It's expressed really

16   as a preference, you know, in the general instructions that

17   are given to the jury that you just tell them that there's not

18   a transcript and leave it at that.  But I know that I have the

19   discretion to permit readback.

20       Well, I think we have enough of a game plan that we can

21   bring the jurors back into the courtroom.

22       **MR. FAKHOURY:**  Your Honor, before we do that, can I

23   just -- I -- to the -- to the final point the Court was making

24   about asking them if there's anything the Court can do, I

25   would object to that.  I think -- I think we should let the

1    jury sort of tell us what they need on their own sort of

2    initiative rather than responding to inquiries from the Court.

3    I do worry about --

4         **THE COURT:**  What is the legal basis of that

5    objection?  I'm reading to you from the Ninth Circuit jury

6    trial manual.

7         **MR. FAKHOURY:**  The -- the *Allen* charge, which I would

8    also object to, and I could deal with that separately, but the

9    *Allen* charge doesn't have that kind of language in it.  In

10   fact, it encourages the jurors to go back and again use their

11   own -- you know, decide the case for yourself, consider the

12   evidence that you've heard.

13       And I just worry that we're -- we're sort of making

14   suggestions to them rather than allowing us to respond to the

15   things that they care about.

16       So that -- that's my concern, Your Honor.

17            **THE COURT:**  So noted.

18       **MR. FAKHOURY:**  And I apologize if I'm not

19   articulating it well but --

20            **THE COURT:**  No, I think you are.

21       **MR. FAKHOURY:**  In other words, we're sort of --

22   we're -- we're making an assumption, A, that they're

23   deadlocked -- which is a fair assumption based on the note.

24            **THE COURT:**  I'm not making that assumption.  I'm

25   going to ask them.

1      **MR. FAKHOURY:**  Okay.

2      **THE COURT:**  And if they tell me they're deadlocked, I

3  think the appropriate thing to do -- I think what judges

4  should do is they should consult statutes and cases, and if

5  the answers are not contained there or if they are contained

6  there but they're distilled in authoritative reference

7  materials prepared by the circuit in which the judge sits, the

8  judge should use those materials.  And that's what I propose

9  to do.

10      And that's why I asked you what the legal basis for the

11  objection is.  I don't want to make an error.  I certainly

12  don't want to prejudice Mr. Rothenberg's rights.  But a large

13  group of my colleagues selected for their interest in these

14  areas and their competence in writing directions to trial

15  judges like me have put these directives in the jury

16  instructions and the trial manual.

17      So unless someone points me to an authority that suggests

18  it would be error to rely on those materials, I think I

19  should.

20      **MR. FAKHOURY:**  Understood, Your Honor.  I just wanted

21  to make -- make the objection.

22      And then, again on the *Allen* charge, I would say if they

23  indicate they're deadlocked, I would object to the *Allen*

24  charge.  They've been at it for eight hours or nine hours.

25  And the case is -- it took a while to try, but I would ask for

```
1    a mistrial at that point.

2            THE COURT:  Well, we'll see when we get there.

3            MR. FAKHOURY:  Sure.

4            THE COURT:  Yeah.

5            MR. WALDINGER:  If I can --

6            THE COURT:  Now I have a preview of coming

7    attractions.

8        Yes, Mr. Waldinger.

9            MR. WALDINGER:  With respect to the Allen charge, if

10   they indicate -- if they volunteer to you, Your Honor -- I

11   think Your Honor's plan is to say something about, you know,

12   you're not deadlocked and if -- if the foreperson says no, no,

13   no, we are deadlocked, I -- the government has no objection at

14   that point to giving the Allen charge.

15       With respect to the readback, I -- there's --

16           THE COURT:  Here's what I currently propose to do.

17       I would like to ask these questions before I read the

18   Allen charge.  Because in some ways, picking up on

19   Mr. Fakhoury's point, I'd like to probe a little bit to see is

20   there something that they think that if they got that, it

21   would help them reach a verdict.

22       And here's some -- you know, the first question is very

23   open-ended.  Is there anything else the Court can do to assist

24   in the jury's deliberations?

25           MR. WALDINGER:  That seems fine.
```

1          **THE COURT:**  And I -- and then:  Would an additional

2   instruction help you?  And would the rereading of any

3   testimony help you?

4      And I would say I actually think the right path is to say

5   to the foreperson or to say to the jury:  If you want to

6   consider those questions as a group, and then let me know,

7   that's fine.

8      And if they say, no, we got the questions, we'll let you

9   know.  I say okay.

10         **MR. WALDINGER:**  One thing -- the advice that I have

11  gotten from our appellate chief is on the readback, if the

12  Court suggests that as a possibility, the advice that I've

13  gotten is to still say that there's no guarantee that such a

14  request will be granted based on -- and I don't know what that

15  case is -- what case that is based on.

16         **THE COURT:**  I could see why that -- I can foresee a

17  circumstance in which I wouldn't actually read something back,

18  and that's because in isolation, one or the other side might

19  successfully argue that there was a 403 problem because the

20  testimony in isolation was confusing.  Or, you know, that --

21  that of course we tell the jury to consider any evidence in

22  the light of all the evidence.  But I can foresee the rare

23  circumstance in which we might not grant the request.

24         **MR. WALDINGER:**  Okay.

25         **THE COURT:**  And then --

```
 1              (Pause in the proceedings.)

 2         THE COURT:  I think I want to ask these questions

 3    now.  These questions are contained -- these questions are set

 4    forth under the header "Procedure for determining if jury is

 5    deadlocked."  And then after these questions, it suggests that

 6    you ask the foreperson:  Is the jury hopelessly deadlocked?

 7    Which I would not do.

 8         I think what I would like to do is bring them in and say:

 9    If you get to the point were you really think you're unable to

10    reach a decision, yes, I want to talk to you.  In the

11    meantime, I want to ask you these three questions, and then

12    ask the questions.  Modified as Mr. Waldinger suggests.  Maybe

13    I wouldn't grant the rereading request.  Then send them back

14    to the deliberation room.

15         And they say, well, we're deadlocked.  I say, well, at

16    that point, I give the Allen charge.

17         Frankly, I don't know how much effect an Allen charge

18    would have after you went through all that.  You already asked

19    them is there anything else you want?  You gave them whatever

20    you could.  But I would do it just because I would like to do

21    every legally permissible thing not to have to try this case

22    all over again.

23         And I understand, Mr. Fakhoury, you've been very clear

24    that you object to the giving of an Allen charge.

25         I think that's my current game plan.
```

1    Anybody want to weigh in one last time before I bring in

2  the jurors?

3         **MR. WALSH:**  Your Honor, in the game plan you just

4  laid out, it doesn't ultimately address question number two.

5         **THE COURT:**  Oh, I'm going to tell them we haven't --

6  I think I told you I'm going to say:  You should plan to

7  deliberate tomorrow.  And no one has said anything further

8  about that so I haven't brought that back up again.

9         **MR. WALSH:**  I wasn't sure if --

10         **THE COURT:**  If you don't reach a verdict, you

11  should -- well, I don't know, "plan" is probably a little

12  strong.  If you don't reach a verdict, tomorrow is available,

13  that sort of thing.

14         **MR. WALDINGER:**  Nothing further from the government

15  then, Your Honor.  Thank you.

16         **MR. FAKHOURY:**  I have nothing further.  And my

17  objections are noted, so --

18         **THE COURT:**  Very good.

19         **MR. FAKHOURY:**  -- thank you.

20         **THE COURT:**  All right.  Thank you, gentlemen.

21      Well, let's bring in our jurors.

22         **THE CLERK:**  Please rise for jury.

23      (The following proceedings were heard in the presence of

24  the jury:)

25         **THE CLERK:**  You may be seated.

1          **THE COURT:**  All right.  Good morning.

2          **JURORS:**  Good morning.

3          **THE COURT:**  You're working hard.

4     We're -- all the jurors are in their assigned seats.  The

5     parties and counsel are at counsel table.

6     We do have a note from our jurors.  I've already read it

7     into the record.  I won't do that again.

8     Let me -- let me -- well, I might need to do it again just

9     so I can answer the questions.

10    Let me give you some brief answers, and then also let me

11    ask you some questions.  I'll direct my questions to

12    Mr. Hailey.  Hopefully that will work.  We'll see how that

13    goes.

14    The second question is -- well, I'll answer the questions

15    in the order you asked them.

16    The first question is:  If we are concerned we may be

17    locked, do you, the Judge, want to talk with us?

18    Yes, I do.

19    If you were to communicate to the Court that you believe

20    you are unable to reach a unanimous verdict, then I would want

21    to have a discussion with you.

22    Because you've asked that question, let me ask you some

23    questions about ways in which the Court might be helpful to

24    you.  And probably my guess is that you'll want to go back

25    into the jury room to think about these questions, but it may

1    be that Mr. Hailey or another of you will be able to answer

2    off the cuff.

3        The first is:  Is there anything else the Court can do to

4    assist in the jury's deliberations?

5        The second is:  Would an additional instruction assist in

6    your deliberations?

7        And the third is:  Would the rereading of any testimony

8    help the jury reach a conclusion?

9        Now, I told you at the beginning of the trial, there's not

10   a transcript, and it's true, there is not a transcript.  When

11   the court reporter takes down notes, she uses special

12   software, because as you can imagine, it's very difficult to

13   take down speech in real time.  And so the codes that she uses

14   have to be converted over.  But it is possible.  It can take

15   some time for us to identify it, but it is possible for us to

16   identify testimony that can be reread to you.

17       I might not grant the request.  There are reasons why I

18   might not be able to do it.  But if you were to say, for

19   example, we wanted to hear the testimony of such-and-such a

20   person about such-and-such a topic, then the lawyers and I and

21   Ms. Mercado could sit down and see if we couldn't identify

22   that and then have it read back to you.  So that's how that

23   works.

24       So think about whether any of those offers of help might

25   be of use to you.

1    And, yes, if you conclude that you're unable to reach a

2  unanimous verdict, then I would want to have a further

3  discussion.

4    The second question is what is the latest we should let

5  you know regarding a potential decision or locked status to

6  determine whether the court can convene this coming Friday,

7  November 18th.

8    There's not a set deadline for deliberations.  That's not

9  how it works.  I'm just inheriting the rule system that

10  everybody uses.  There's not a set deadline.  Obviously jurors

11  do not deliberate until the end of time.  That's also true.

12  But there's not a set deadline.  Friday is available to you to

13  deliberate.

14    So that's what I would say in answer to that question.

15    So let me send you back into the jury room, having made

16  those comments, and we'll just wait to hear from you further.

17  Thank you all very much.

18    **THE CLERK:**  Please rise for the jury.

19    (The following proceedings were heard out of the presence

20  of the jury:)

21    **THE COURT:**  Okay.

22    **MR. WALDINGER:**  We did it.

23    **THE COURT:**  There it is.

24    **MR. WALDINGER:**  Now we'll be around, Your Honor, in

25  case they come back with anything.

 1           **THE COURT:**  Yeah.  Court is in recess.  Thanks.

 2           **MR. WALDINGER:**  Thank you, Your Honor.

 3       (Court in recess while the jury deliberates at 10:19 a.m.)

 4               (Proceedings resumed at 1:12 P.M.)

 5       (The following proceedings were heard out of the presence

 6   of the jury:)

 7           **THE COURT:**  All right.  Let's go on the record.

 8   We're outside the presence of the jury.  The parties and

 9   counsel are at counsel table.

10       We have received a note from our jurors at 12:54 p.m. this

11   afternoon that says, "We are unable to reach a unanimous

12   verdict."

13       Mr. Hailey quoted back to me exactly the magic words that

14   were contained in my instruction to him.

15       Let me hear from counsel as to what next steps they

16   propose the Court take.

17       Mr. Waldinger.

18           **MR. WALDINGER:**  Your Honor, Kyle Waldinger for the

19   government.  It would be the government's suggestion that the

20   Court give the instruction 6.25 for a deadlocked jury.

21           **THE COURT:**  All right.  Mr. Fakhoury?

22           **MR. FAKHOURY:**  Your Honor, I'd ask the Court to grant

23   a mistrial at this point.  I think given the fact that the

24   Court, when we were here this morning, had informed the jury

25   that to let the Court know if there was any further assistance

1    the Court could offer, including readback of testimony,

2    further instruction, and that the Court -- and that the jury

3    did not take the Court up on that invitation.  I think they

4    have been at it for -- for quite a while.  And so I think at

5    this point a mistrial is appropriate.

6          **THE COURT:**  The request for mistrial is denied.

7        This Court is a steward of United States resources.  And I

8    don't mean the United States in the sense that we refer to the

9    prosecutor.  I mean I'm a steward of the resources of the

10   country the United States.  I'm certain that at least hundreds

11   of thousands of dollars and countless hours have been spent

12   getting to this point.

13       I agree the note is clear.  But I think there are two

14   additional steps that are recommended to me by the Ninth

15   Circuit pattern jury instructions and by the Ninth Circuit's

16   manual on jury trial procedures.

17       The first is to give this *Allen* instruction, which as

18   *Allen* instructions go is very mild, and ask the jurors to

19   deliberate further.  I'm going to do that.

20       I am considering whether to, and I am likely to ask

21   them -- well, let me back up.

22       If they once again say, "We're still deadlocked," I am

23   considering whether to, and I am likely to, ask them whether

24   there is any prospect of their reaching a partial verdict.

25       In the Ninth Circuit, the decision whether to question a

1    potentially deadlocked jury regarding the prospects for

2    reaching a partial verdict is committed to the sound

3    discretion of the trial judge.  That's *United States v.*

4    *Kanahele*, K-A-N-A-H-E-L-E, 951 F.Supp. 945, 947, District of

5    Hawaii, 1996.  It is a district court case, but it cites Ninth

6    Circuit authority and it is consistent with other Ninth

7    Circuit authority.  It's just that that sentence is the

8    clearest expression of the rule of law.

9        So I'm going to take those two steps.

10       I do have to say that if the jurors -- oh, I also want to

11   poll the individual jurors and just ask each of them:  What do

12   you think?  Is it your view -- this also is from the Ninth

13   Circuit manual, to ask them:  Do you feel there is a

14   reasonable probability that the jury can reach a unanimous

15   verdict if sent back to the jury room for further

16   deliberation?  So far we've heard only from Mr. Hailey.

17       Assuming that having done all these things, the jury

18   nonetheless says that they are unable to reach a unanimous

19   verdict, I don't think I'm going to order them to deliberate

20   past today.

21       If, as Mr. Fakhoury said, we've told them or we've invited

22   them to tell us if there's something that we need, I've given

23   an *Allen* instruction, I've polled the jury, and they say,

24   "Judge, we are not going to reach a verdict," then I think

25   we're done.  So that's where I am.

 1          **MR. WALDINGER:**  I don't -- I don't have anything to

 2    add other than a question.  So the polling would come only

 3    after giving the *Allen* charge and the jury coming back --

 4          **THE COURT:**  Right.

 5          **MR. WALDINGER:**  -- and saying we're still deadlocked.

 6          **THE COURT:**  Well, I think -- yeah, because if you

 7    poll the jury now and they say, yeah, we all agree we can't

 8    reach a verdict, I think the *Allen* instruction at that point

 9    is -- I would have some doubts on that timeline whether the

10    Court is listening to the jury.

11          **MR. WALDINGER:**  Correct.  I just wanted to make sure

12    that after the *Allen* charge, the jury will go back --

13          **THE COURT:**  Yes.

14          **MR. WALDINGER:**  -- before the -- before there's

15    polling?

16          **THE COURT:**  Correct.

17          **MR. WALDINGER:**  Correct.  That's fine with the

18    government.

19          **THE COURT:**  And, you know, these *Allen* charges must

20    work sometimes.  That's why they're appellate decisions.  And

21    I assume they work in both directions.  None of us knows what

22    the split of the jury is right now.

23       So I would be remiss, given all the effort that has been

24    made to get to this point, I would be remiss in not giving

25    this instruction which the Ninth Circuit has given me for

1   precisely this moment.

2       All right.  Anything further before we bring in our

3   jurors?

4           **MR. WALDINGER:**  The only thing I would add is -- and

5   we're not there yet -- but my -- I think I'm looking at the

6   same manual that Your Honor is looking at, but in terms of if

7   we get to the question about the partial verdict, the Court

8   will obviously not -- neither encourage nor discourage that

9   from happening?  It's just a question as to whether they think

10  a partial verdict is a possibility?

11          **THE COURT:**  Correct.

12          **MR. WALDINGER:**  Yep.

13          **THE COURT:**  I do not -- I very strongly do not want

14  to encourage or discourage any particular result from this

15  jury.

16          **MR. WALDINGER:**  It's just getting -- you'd just be

17  getting information, asking for information.

18          **THE COURT:**  I would be getting information from them

19  that the format of our communications thus far has not

20  facilitated.  So that's all.

21      And I literally would simply ask the question.  I mean

22  that -- obviously, it's extemporaneous.  I can't plan out

23  every word.  But I -- if -- well, I think I can predict to

24  some extent what would happen if I were to poll the jurors,

25  and I said:  Do you believe you could reach a partial verdict?

1    And the entirety of the group said no, that would be the end

2    of it.

3        If the entirety of the group said, Yes, we do actually

4    think that, I'd say, Well, then I'm going to ask you to return

5    to the jury deliberation room to continue your deliberations,

6    without saying anything further.

7        What will happen if exactly six of them say yes and six

8    say no?  I don't know how likely that is, but I also don't

9    know the answer to that question.

10            **MR. WALDINGER:**  I think that's it from the government

11   then, Your Honor.

12            **THE COURT:**  Mr. Fakhoury?

13            **MR. FAKHOURY:**  Nothing further.

14            **THE COURT:**  All right.  Let's bring in our jurors.

15            **THE CLERK:**  Please rise for the jury.

16       (The following proceedings were heard in the presence of

17   the jury:)

18            **THE CLERK:**  You may be seated.

19            **THE COURT:**  All right.  Let's go back on the record.

20       All of our jurors are in their assigned seats.  The

21   parties and counsel are at counsel table.

22       Members of the jury, thank you for your note.  You took my

23   prior admonition very seriously and you went back into the

24   jury room and deliberated for a few hours since the last time

25   we spoke.

1      In your last note, you asked if we are concerned we may be

2   locked, do you, the Judge, want to talk with us, and I said

3   yes.  If you get to that point, I do -- I will want to talk to

4   you.

5      So now you've sent out a note indicating that you believe

6   you're unable to reach a unanimous verdict and so I do want to

7   talk to you briefly.

8      There is an instruction -- instructions -- let me back up.

9      You saw the instructions have numbers and titles.  The

10   numbers and titles are meaningless for your purposes.  They

11   just help us organize them.  The instruction that's set out

12   there is the law.

13      The instructions are what's called pattern jury

14   instructions which means these are sets of jury instructions

15   that the Ninth Circuit puts out for trial judges like me to

16   use that can be modified to add the particular details of a

17   given case.  So we use the Ninth Circuit jury instructions in

18   our trials.

19      There is a jury instruction called "deadlocked jury."  And

20   it is designed precisely for situations like this.  And so I'm

21   going to read you that instruction, and I will say sometimes

22   it helps.

23      So I'll read you the instruction.  I'll ask you to --

24   after I have read it, I'll ask you to return to the

25   deliberation -- to your deliberations and then I'll wait to

1    see from you what happens after that.

2        Now reading the instruction, which is also

3    instruction 6.25.

4        Members of the jury, you have reported that you have been

5    unable to reach a unanimous verdict in this case.  I have

6    decided to suggest a few additional thoughts to you.

7        As jurors, you have a duty to discuss the case with one

8    another and to deliberate in an effort to reach a unanimous

9    verdict if each of you can do so without violating your

10   individual judgment and conscience.

11       Each of you must decide the case for yourself but only

12   after you consider the evidence impartially with your fellow

13   jurors.

14       During your deliberations, you should not hesitate to

15   reexamine your own views and change your opinion if you become

16   persuaded that it's wrong.  You should not, however, change an

17   honest belief as to the weight or effect of the evidence

18   solely because of the opinions of your fellow jurors or for

19   the mere purpose of returning a verdict.

20       I also remind you that in your deliberations, you're to

21   consider the instructions that I've given you as a whole.  You

22   should not single out any part of an instruction, including

23   this one, and ignore others.  They're all equally important.

24       What I've just said is not meant to rush you or pressure

25   you into agreeing on a verdict.  Take as much time as you need

1   to discuss things.  There's no hurry.

2       I ask that you now return to the jury room and continue

3   your deliberations with these additional comments in mind.

4       Thank you.

5           **THE CLERK:**  Please rise for the jury.

6       (The following proceedings were heard out of the presence

7   of the jury:)

8           **THE COURT:**  We're outside the presence of the jury.

9       Court is in recess.  Thank you.

10      (Court in recess while the jury deliberates at 1:25 P.M.)

11              (Proceedings resumed at 4:29 P.M.)

12      (The following proceedings were heard out of the presence

13  of the jury:)

14          **THE CLERK:**  You may be seated.

15          **THE COURT:**  Okay.  Let's go on the record.

16      We're outside the presence of the jury.  The parties and

17  counsel are at counsel table.

18      It's 4:30 in the afternoon.  We got a note from the jury

19  that says, and I quote:  We have deliberated based on your

20  instructions and we are even more convinced that we are

21  deadlocked.

22      Absent someone persuading me in the next couple of minutes

23  to do otherwise, I intend to bring in the jurors, seat them,

24  poll them individually as to two questions, and that is

25  whether they think there is a reasonable probability that the

1  jury could reach a unanimous verdict if sent back to the jury

2  room for further deliberation, and whether they think the jury

3  is capable of reaching a partial verdict.

4      I expect the answer to both of those questions to be no

5  from each of the jurors.  And if that's what happens, I'm

6  going to declare a mistrial.

7      Does anyone wish to be heard?

8          **MR. WALDINGER:**  No, Your Honor.

9          **MR. FAKHOURY:**  No, Your Honor.

10          **THE COURT:**  Okay.  Let's bring in the jurors.

11          **THE CLERK:**  Please rise for the jury.

12      (The following proceedings were heard in the presence of

13  the jury:)

14          **THE CLERK:**  You may be seated.

15          **THE COURT:**  All right.  Let's go on the record.

16      All the jurors are in their assigned seats.  The parties

17  and counsel are at counsel table.

18      Members of the jury, I appreciate your continuing to

19  deliberate for such a long period of time after my last

20  instruction.  It really shows a commitment on your part to try

21  to reach a verdict if you can.

22      And I do have your note.  It says:  We have deliberated

23  based on your instructions and we're even more convinced that

24  we're deadlocked.

25      What I'm going to do now, because this is just kind of

1    best practice in my job, is to ask you a couple questions.

2    I'm not going to repeat the question each time.  I'll tell you

3    in advance what the questions are.

4         The first question I'm going to ask you is:  Do you feel

5    there is a reasonable probability that the jury can reach a

6    unanimous verdict if sent back to the jury room for further

7    deliberation?  If you say no to that question, it means you're

8    convinced that the whole jury is deadlocked.

9         Okay.  This is so important.  Of course I trust your

10   foreperson.  But I need to know it's your personal opinion

11   that you're deadlocked.  If you say yes, it means you think

12   further deliberations might be helpful.

13        The second question is:  Do you believe the jury could

14   reach a partial verdict?  And that means that you think that

15   the jurors could reach a verdict as to one count but not the

16   other.

17        So we'll see what happens.

18        So -- and I'll just ask you by name based on this chart I

19   keep up here.  Hopefully I won't mispronounce your name.  I

20   apologize if I do.

21        So my first question is:  Do you feel there is a

22   reasonable probability that the jury can reach a unanimous

23   verdict if sent back to the jury room for further

24   deliberation?

25        Mr. Lee.

1          **JUROR:**  No.

2          **THE COURT:**  Mr. Manekar.

3          **JUROR:**  No.

4          **THE COURT:**  Mr. Yee.

5          **JUROR:**  No.

6          **THE COURT:**  Mr. Hailey.

7          **JUROR:**  No.

8          **THE COURT:**  Ms. Shak.

9          **JUROR:**  No.

10         **THE COURT:**  Ms. Yim.

11         **JUROR:**  No.

12         **THE COURT:**  Ms. Godhwani.

13         **JUROR:**  No.

14         **THE COURT:**  Ms. Chen.

15         **JUROR:**  No.

16         **THE COURT:**  Mr. Carson.

17         **JUROR:**  No.

18         **THE COURT:**  Ms. Perez.

19         **JUROR:**  No.

20         **THE COURT:**  Mr. Nyhan.

21         **JUROR:**  No.

22         **THE COURT:**  Mr. Cizmar.

23         **JUROR:**  No.

24         **THE COURT:**  The second question is:  Do you feel

25    there is a reasonable probability that the jury could reach a

1    partial verdict?

2        Mr. Lee.

3              **JUROR:**  No.

4              **THE COURT:**  Mr. Manekar.

5              **JUROR:**  No.

6              **THE COURT:**  Mr. Yee.

7              **JUROR:**  No.

8              **THE COURT:**  Mr. Hailey.

9              **JUROR:**  No.

10             **THE COURT:**  Ms. Shak.

11             **JUROR:**  No.

12             **THE COURT:**  Ms. Yim.

13             **JUROR:**  No.

14             **THE COURT:**  Ms. Godhwani.

15             **JUROR:**  No.

16             **THE COURT:**  Ms. Chen.

17             **JUROR:**  No.

18             **THE COURT:**  Mr. Carson?

19             **JUROR:**  No.

20             **THE COURT:**  Ms. Perez.

21             **JUROR:**  No.

22             **THE COURT:**  Mr. Nyhan.

23             **JUROR:**  No.

24             **THE COURT:**  Mr. Cizmar.

25             **JUROR:**  No.

1          **THE COURT:**  I'm declaring a mistrial in this case.

2          Members of the jury, now I'm going to thank you for just a

3     couple minutes.  I know you're anxious to go, but I just have

4     to do this because I need to explain to you with some emphasis

5     how thankful I am and how large the thing is that you just did

6     even though you didn't reach a verdict.

7          You're an incredibly diligent and attentive group of

8     jurors.  I've watched so many jurors from up high up here on

9     the bench.  You really paid close attention in this case.  And

10    I can say this now out loud.  Some of this stuff was boring.

11    And if you don't like the word "boring," you got to give me

12    "dry."  It was very dry.  And you didn't falter.

13         I love my country.  I love juries.  I think the right to a

14    jury trial is one of the things that makes our justice system

15    great.  I know from firsthand experience sometimes it can be

16    hard to make a decision.  I hope your experience as jurors was

17    meaningful to you.  I hope we honored your service in the way

18    we conducted this trial.  We tried to do that.

19         I did just declare a mistrial.  That doesn't mean that

20    your jury service wasn't a success.  Each of you listened

21    conscientiously to the evidence in this case.  You formed your

22    opinion about what the verdict should be.  You debated with

23    each other in the jury room.  Your opinion was different from

24    the opinion of some other jurors.  That doesn't mean the

25    system was a failure.  Everyone was trying their hardest.

1    I don't get many mistrials, but they happen.  It just

2    means that the evidence in this case was susceptible to more

3    than one interpretation.

4        But your service, each of your services in this case was

5    incredibly meaningful.

6        I'm going to tell you a story.  It always makes me choke

7    up.  So I know it's going to make me choke up this time.  But

8    it helps explain why I feel the way I do about jury service.

9        Before I was a federal judge, I was a judge on the Alameda

10   County Superior Court just down the road by Lake Merritt.

11       How many of you are Alameda County residents?

12                        (Hands raised.)

13       **THE COURT:**  Okay.  I've been working for you

14   20 years.  I did that job for about 11 years, tried a lot of

15   cases.  That's a busy trial court.

16       When I was on that court, I had a juror who served as an

17   alternate juror in a three-week trial.  Now as you know,

18   because we have alternates in our case, an alternate juror

19   hears all the testimony and the argument and the instruction

20   and is available to substitute in if one of the other jurors

21   gets sick or has a personal emergency, just like we had in

22   this case.

23       Now, if you're an alternate and you're not substituted in,

24   you do all the work and you give up all the days of your life,

25   but you don't get the satisfaction of deliberating.

 1          And this gentleman did that in a three-week trial before

 2     me.  And I knew from voir dire he had done the same thing

 3     before in another three-week trial.  He served as an

 4     alternate, he went the whole way, the whole three weeks, and

 5     then he didn't get to deliberate.  So he had in total given

 6     six weeks of his life to being an alternate in two different

 7     trials.

 8          And it got to be the time to enter the evidence in my case

 9     where I say to the alternate, let me have your cell phone

10     number, you're going to be on phone standby, you know.

11          And this guy was a veteran of United States Army.  And he

12     had served two tours of duty abroad.  And I thought, you know,

13     I really got to thank this guy for what he did, being an

14     alternate and not getting to deliberate, and he did it before.

15     So I told him that and I acknowledged that it might be

16     frustrating to have spent six weeks without the payoff of

17     deliberation.

18          And he said, "Your Honor, I put my life on the line twice

19     so you could do this.  Being an alternate was a walk in the

20     park."

21          So anyway, so I like juries a lot.  And I like jury

22     service.

23          And I acknowledge to you that there must have been some

24     frustrating moments in your deliberation, and I thank you for

25     plowing ahead anyway.  There's conflict sometimes in

 1    decision-making so....

 2         Now that the case has been concluded, some of you may have

 3    some questions about the confidentiality of the proceedings.

 4    I've been telling you all the time you can't talk about the

 5    case with anybody.  That admonition is over.  The case is

 6    over.  You're of course free to discuss it with anybody you

 7    like.  By the same token, you are not under any obligation to

 8    talk about the case with anybody.  That's totally your

 9    decision.

10         If you do decide to talk about it, I would suggest that

11    you treat it with a degree of solemnity.  So whatever you

12    decide to say should be something that you would be willing to

13    say in the presence of the other jurors or under oath here in

14    the courtroom.

15         Bear in mind, the other jurors knew the deliberations were

16    secret.  They fully and freely stated their opinions with the

17    understanding they were being expressed in confidence.  So you

18    should treat what they said in that way.  And please respect

19    the privacy of the views of the other jurors.

20         You're going to get a thank you letter from me.  It's

21    really not that much.  It's a fancy letterhead, you know, a

22    letter from a judge.  I mean it.

23         You may also want me to thank your family or your

24    employer.  Some people have told me it helps them if their

25    boss gets a letter from the judge saying, hey, thanks for

1    letting this person be on the jury.  Or someone's kids, they

2    say, you know, where was dad?  Where was mom?  They could get

3    a letter from the judge.

4        If you want me to write a letter to your employer or your

5    family acknowledging their sacrifice, their sacrifice, and

6    expressing my thanks, just take a piece of notepad paper, put

7    your name, the person that should get the letter, what their

8    relationship is, if they're at a company, what is their job

9    title, the mailing address, the company name if there is one.

10   If it's family member, what is their relationship to you.  And

11   I'll do my best to get a letter out to them thanking them

12   also.

13       If you think I could improve my trial management in any

14   way -- I don't want to know anything about the evidence, don't

15   write me any letters about the case.  But if you think I could

16   do a better job managing a trial, write me a letter, I'd love

17   to know about it.  My address is right there on the court's

18   website.  And you know what the address is because you're

19   here.  It's 1301 Clay Street.

20       Court security apparatus needs everybody out of the

21   building by 5:00.  I'm going to let you go in just a second.

22       I am going to say this.  If you'd like to speak with the

23   lawyers, I'm sure they'd like to talk to you because this was

24   a mistrial.

25       You're probably only going to have five minutes when all

1    is said and done so you get out of the building by

2    5:00 o'clock.

3        If you don't want to talk to the lawyers, just go in the

4    jury room, leave me a note if you need to leave me one about a

5    letter, and take off.  Okay?  Thank you very much.  You just

6    take off.

7        If you want to talk to the lawyers, like I said I'm sure

8    they'd like to talk to you, stay in the jury room.  And in a

9    few minutes, Ms. Lee or someone else from my staff will come

10   back and collect you, bring you back into the courtroom.

11   You'll be able to talk to the lawyers for a few minutes, and

12   everybody will be on their way.

13       I really can't thank you enough for your jury service.

14       You're now discharged and excused from service on this

15   jury.  Thank you very much.

16           **THE CLERK:**  Please rise for the jury.

17       (The following proceedings were heard out of the presence

18   of the jury:)

19           **THE COURT:**  All right.  We're outside the presence of

20   our jurors.

21       I will do as I indicated a moment ago, and I am going to

22   enforce that 5:00 o'clock limit because I'm not really sure

23   what happens if I don't.

24       But in light of the fact that -- and I don't actually

25   normally permit or bring the jurors back into the courtroom,

1    but in light of the fact that the United States has some

2    decisions to make about whether to retry the case, I thought

3    it might be helpful.

4        There's already an exclusion of time through the next

5    trial date so that we don't have that sort of Damocles over

6    our heads.

7        I do think it makes sense to have a case management

8    conference in the relatively near future so that the

9    United States can -- so that the government and the defendant

10   can meet and confer about what ought to happen next and we can

11   figure out whether to -- if there's going to be a retrial,

12   should that happen for these counts before the next trial,

13   should we hold these counts in abeyance and try the other

14   counts.  I would just love to hear the parties' views on that.

15       When -- hold on just a moment, please.

16                   (Pause in the proceedings.)

17            **THE COURT:**  Tomorrow seems a little early.

18            **MR. FAKHOURY:**  I agree.

19            **THE COURT:**  And the next Friday after that is the

20   Friday after Thanksgiving.

21       I could do -- and I don't need to have you on my Friday

22   calendar, although I think that would be the best.  But

23   honestly I could fit you in lots of other times.

24       Perhaps December the 16th in the morning?  How does that

25   sound?

```
 1              MR. WALDINGER:  I think that would work for the
 2    government, Your Honor.  And as you said, we have -- we've
 3    excluded time between now and July so we have time.  And that
 4    will give us time.  Unless Mr. Fakhoury's not available on the
 5    16th.
 6              MR. FAKHOURY:  No, I'm available.  I actually have
 7    another appearance before Your Honor that day anyway.
 8              THE COURT:  Okay.  Terrific.
 9        So we'll set this for the 16th of December at 9:30 in the
10    morning.  That is a Zoom hearing date.
11        I'm going to step out of the room.  I don't know if any of
12    the jurors will be interested in speaking with you.
13    Mr. DeGuglielmo and perhaps Ms. Rey also will stick around
14    just to act as the Court's observer.
15        Ms. Lee, has anyone indicated any interest in speaking to
16    the lawyers?
17              THE CLERK:  Yes, but I was going to give them a few
18    minutes.  I just told them, you know, to leave their -- what
19    to leave behind for me and said I'd get out of their way and
20    come back in a few seconds to bring them in.
21              THE COURT:  Okay.  Terrific.  Very good.
22              MR. WALDINGER:  Your Honor, thank you for all your
23    work on this trial.  It's been a pleasure even though it's not
24    the result we were looking for.
25              THE COURT:  Well, there's good lawyering here.  I
```

1    enjoyed it honestly.  And, you know, I'm lucky.  I don't have

2    to worry about who wins.

3         In fact I have a colleague.  He's on the California Court

4    of Appeal now, but he's been a friend of mine since 1980.  He

5    was a state court judge and then the Court of Appeal.

6         When he was on the trial court, he had a Post-it that just

7    said:  You don't care who wins.

8         And so it was an honor for me to preside over your trial.

9    And I look forward to talking to you on the 16th.

10             **MR. WALDINGER:**  Thank you, Your Honor.

11             **MR. FAKHOURY:**  Thank you, Your Honor.

12             **THE COURT:**  Thank you.

13             **MR. WALSH:**  Thank you, Your Honor.

14             (Proceedings were concluded at 4:48 P.M.)

15                         --o0o--

16             **CERTIFICATE OF REPORTER**

17         I certify that the foregoing is a correct transcript

18    from the record of proceedings in the above-entitled matter.

19    I further certify that I am neither counsel for, related to,

20    nor employed by any of the parties to the action in which this

21    hearing was taken, and further that I am not financially nor

22    otherwise interested in the outcome of the action.

23    _____

24         Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

25                Thursday, November 17, 2022