MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (510) 500-9994
Email: hanni@mlf-llp.com

Attorneys for Michael Rothenberg

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ROTHENBERG,<br><br>Defendant. | Case No.: 4:20-CR-00266-JST<br><br>**DEFENDANT'S RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS ONE AND TWO**<br><br>**Court:** Courtroom 6, 2nd Floor<br>**Hearing Date:** February 10, 2023<br>**Hearing Time:** 9:30 a.m. |

**TO: STEPHANIE M. HINDS, UNITED STATES ATTORNEY; KYLE F. WALDINGER, ASSISTANT UNITED STATES ATTORNEY; AND NICHOLAS J. WALSH, ASSISTANT UNITED STATES ATTORNEY.**

PLEASE TAKE NOTICE that Defendant Michael Rothenberg hereby moves this Court for a judgment of acquittal on Counts One and Two of the Superseding Indictment. This motion is based upon this memorandum of points and authorities and accompanying exhibits, Federal Rule of Criminal Procedure 29(c), and all other applicable constitutional, statutory, and case authority, and all evidence and argument that may be presented at the hearing of this motion, to be held on February 10, 2023, at 9:30 a.m. via Zoom webinar.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .............................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 3

    A.    Excusable neglect allows the late filing of this motion. ................................................. 3

    B.    There was insufficient evidence to convict Mr. Rothenberg of Counts One and Two. ..... 7

        1.    There was insufficient evidence Mr. Rothenberg knowingly made a false statement to SVB. ............................................................................................... 7

        2.    The government failed to prove the statements in the Form 1003 and financial status affidavit were material. ................................................................. 12

        3.    There was insufficient evidence of a scheme or intent to defraud. ................... 13

CONCLUSION ................................................................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*Eberhart v. United States*, 546 U.S. 12 (2005) .................................................................................. 3

*In re American Apparel, Inc. Shareholder Litigation*, 10-CV-06352-MMM, 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ............................................................................................................... 8

*In re Downey Securities Litigation*, 08-CV-03261-JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ................................................................................................................................................. 8

*Jackson v. Virginia*, 443 U.S. 307 (1979) ............................................................................................ 3

*Juan H. v. Allen*, 408 F.3d 1262 (9th Cir. 2005) ............................................................................... 3

*Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc) ....................................................... 4, 5

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) .. 4, 5

*United States v. Acosta*, 3:11-CR-00182-CRB, 2012 WL 273709 (N.D. Cal. Jan. 30, 2012) ............... 4

*United States v. Dreitzler*, 577 F.2d 539 (9th Cir. 1978) ................................................................ 13

*United States v. Hayat*, 05-CR-00240-GEB, 2006 WL 1686491 (E.D. Cal. Jun. 19, 2006) ............ 13

*United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (en banc) ................................................... 3

*United States v. Nukida*, 8 F.3d 665 (9th Cir. 1993) ........................................................................ 3

*United States v. Santacruz*, 08-CR-00124-OWW, 2010 WL 3491518 (E.D. Cal. Sept. 2, 2010) ..... 13

## Statutes

18 U.S.C. § 1014 .................................................................................................................................. 1

18 U.S.C. § 1344 .................................................................................................................................. 1

## Federal Rules of Criminal Procedure ("Fed. R. Crim. P.")

Fed. R. Crim. P. 29 ..................................................................................................................... *passim*

Fed. R. Crim. P. 33 .............................................................................................................................. 4

Fed. R. Crim. P. 35 .............................................................................................................................. 4

Fed. R. Crim. P. 45 ..................................................................................................................... 3, 4, 5

**INTRODUCTION**

Pursuant to Federal Rule of Criminal Procedure 29(c), Michael Rothenberg moves this Court to enter a judgment of acquittal on Counts One and Two of the superseding indictment. This motion follows the Court's declaration of a mistrial on November 17, 2022, after jurors deadlocked and could not reach a unanimous verdict following an eleven-day jury trial. Dkt. 205. Even though this motion is filed more than 14 days after the jury was discharged, this Court can still exercise its discretion to consider the motion.

As detailed below, no reasonable juror could have convicted Mr. Rothenberg of bank fraud under 18 U.S.C. § 1344 and false statements to a bank under 18 U.S.C. § 1014 based on the evidence presented by the government at trial. This Court should thus enter a judgment of acquittal on Counts One and Two.

**STATEMENT OF FACTS**

Mr. Rothenberg was charged in a 23-count superseding indictment, issued August 20, 2020, with a variety of fraud offenses. Dkt. 15. On October 25, 2021, this Court severed Count One, charging Mr. Rothenberg with bank fraud in violation of 18 U.S.C. § 1344, and Count Two, charging false statements to a bank in violation of 18 U.S.C. § 1014, from the remainder of the charges in the superseding indictment for trial. Dkt. 101.

Counts One and Two concerned a 2014 transaction with Silicon Valley Bank ("SVB") involving two loans: (1) a cash out mortgage refinance of Mr. Rothenberg's San Francisco condominium, and (2) a $300,000 personal loan for Mr. Rothenberg to make a capital contribution to his venture capital fund. In Count One, the government alleged that Mr. Rothenberg "engaged in a scheme to defraud SVB by misrepresenting his liabilities and assets… through the submission of an updated loan application; through an affidavit affirming that the financial status that Rothenberg had previously represented to SVB had not changed; and by virtue of Rothenberg's movement of funds between accounts to make it appear that he had more unrestricted assets and fewer liabilities than he actually had." Dkt. 143, United States' Motions *in Limine* at 2. Count Two concerned only the mortgage refinance. *Id.* There, the government alleged "Rothenberg knowingly and falsely represented to SVB that he had only $73,000 in non-real-estate-related liabilities. In fact, at that time,

1  Rothenberg had an additional undisclosed liability to Merrill Lynch in the amount of approximately
2  $350,000." *Id.* at 4.
3        Jury selection for trial began on October 31, 2022, and a jury was empaneled on November 1,
4  2022. Dkt. 175, 177. In its opening statement, the government explained that the evidence was going
5  to show "that the defendant told SVB and deceived SVB into believing that he had more cash on
6  hand than he actually did," Reporter's Transcript of Proceedings ("Tr.") Vol. 2 at 308:5-7, "that the
7  defendant falsely represented his debts to SVB," Tr. Vol. 2 at 308:12-13, and "that the defendant
8  engaged in a series of complex movements of money for the purpose of deceiving SVB regarding his
9  assets and regarding his liabilities, regarding his assets, his cash, and regarding his liabilities, his
10 debts, all in order to deceive SVB and for the purpose of getting those two loans from SVB and for
11 the purpose of influencing SVB's decisions on his loan applications." Tr. Vol. 2 at 308:18-25.
12       The government presented the testimony of ten witnesses over six days and admitted 96
13 exhibits. The government rested on November 14, 2022. Tr. Vol. 8 at 1410:2. Mr. Rothenberg raised
14 a Rule 29 motion at the close of the government's case, then rested without presenting any evidence
15 and renewed his Rule 29 motion. Tr. Vol. 8 at 1410:8-10. The Court denied the motion. Tr. Vol. 8 at
16 1412:25-1413:1. The jury heard closing arguments on November 15, 2022, and then began
17 deliberating. Tr. Vol. 9 at 1564. After two additional days of deliberations, jurors indicated they were
18 deadlocked on November 17, 2022. Tr. Vol. 11 at 1606. Hours after being given an *Allen* charge,
19 jurors again indicated they were deadlocked, and the Court declared a mistrial that same day. Tr. Vol.
20 11 at 1611-14, 1619. It set a status conference on December 16, 2022 for the parties to determine
21 what would happen next in the case. Tr. Vol. 11 at 1625.
22       After meeting and conferring by telephone on December 7 and 15, the parties appeared on
23 December 16, 2022 and Mr. Rothenberg requested the Court set a briefing schedule on a post-trial
24 Rule 29 motion. *See* Declaration of Hanni M. Fakhoury ("Fakhoury Dec.") at ¶¶ 9-10. The parties
25 also requested the Court not set a new trial date for Counts 1 and 2 and to have those two counts trail
26 the remaining counts in the superseding indictment which are set for trial in July 2023. The Court
27 directed the parties to meet and confer on a briefing schedule for a post-trial Rule 29 motion. Dkt.
28 213. This motion follows.

DEFENDANT'S RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

2

**ARGUMENT**

Federal Rule of Criminal Procedure 29(a) requires a trial court to enter a judgment of acquittal if "the evidence is insufficient to sustain the conviction." Fed. R. Crim. P. 29(a). A court must enter a judgment of acquittal if the evidence, viewed in the light most favorable to the government, would not permit any rational trier of fact to conclude that the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Under Rule 29(c), the Court may enter a judgment of acquittal "after a guilty verdict or after the court discharges the jury." Fed. R. Cim. P. 29(c)(1).

Rule 29 "is an important safeguard to the defendant" that "tests the sufficiency of the evidence against him, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt." *United States v. Nukida*, 8 F.3d 665, 670 (9th Cir. 1993) (quotations and citations omitted). "[E]vidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case." *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc). "A 'reasonable' inference is one that is supported by a chain of logic, rather than…mere speculation dressed up in the guise of evidence." *Juan H. v. Allen*, 408 F.3d 1262, 1277 (9th Cir. 2005).

Here, the evidence—even viewed in the light most favorable to the government—would not allow any rational trier of fact to find Mr. Rothenberg guilty.

A. **Excusable neglect allows the late filing of this motion.**

Federal Rule of Criminal Procedure 29(c)(1) requires a defendant to move for a judgment of acquittal "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." As the Court discharged the jury on November 17, 2022, the 14-day deadline was December 2, 2022. This motion is obviously being filed after that deadline.

But the Supreme Court has made clear that the timing requirements in Rule 29 are not jurisdictional. *See Eberhart v. United States*, 546 U.S. 12, 18 (2005) (noting prior Supreme Court cases "did not 'characterize [Rule 29] as 'jurisdictional.'") (brackets in original). As a result, under Federal Rule of Criminal Procedure 45, this Court can extend the time to file a motion "after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B); *see*

*United States v. Acosta*, 11-CR-00182-CRB, 2012 WL 273709, at *5 (N.D. Cal. Jan. 30, 2012) (noting while "motions under Rule 29 and under Rule 33 must both be made within 14 days of a verdict…Rule 45 provides that a court may extend the time for filing such motions if the defendant 'failed to act because of excusable neglect.'") (quoting Fed. R. Crim. P. 45(b)(1)(B)).[1] Thus, this Court can consider this motion even after the fourteen-day deadline if it finds the failure to file the motion earlier was due to "excusable neglect."

In determining whether "excusable neglect" exists, this Court must consider four factors: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc) (citing *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993)). Considering all these factors here, excusable neglect exists to permit consideration of this motion even after expiration of the fourteen-day deadline.

There is no prejudice to the government to allow the late filing of this motion. Counts One and Two are not currently set for retrial; the remaining counts in the superseding indictment are set for trial in July and nothing about this motion will delay preparations for that trial. In other words, there is no "disadvantage [to] the opposing party" with the late filing of this motion. *United States v. McGowan*, 07-CR-00113-MMM, 2012 WL 13109973, at *4 (C.D. Cal. Apr. 16, 2012). The "government is in the same position…to respond to a motion…as it would have been" if the motion was filed earlier. *United States v. Moses*, 05-CR-00061-BLW, 2006 WL 581191, at *4 (D. Idaho

---

[1] The one exception to this requirement is for requests to correct or reduce a sentence under Federal Rule of Criminal Procedure 35. *See* Fed. R. Crim. P. 45(b)(2). A prior version of Rule 45 also precluded extending motions under Rule 29, but a 2006 Amendment to Rule 45 eliminated that requirement in order to create "consisten[cy] with all of the other timing requirements in the rules, which do not force the court to rule on a motion to extend the time for filing, within a period of time or lose jurisdiction to do so." Fed. R. Crim. P. 45, Advisory Committee Notes, 2006 Amendments. As a result, the Advisory Committee explains "there is nothing to prevent the court from granting the defendant a significant extension of time" to file a post-trial Rule 29 motion if the request is made within the 14-day period, or for a court to "consider [an] untimely motion if the court determines that the failure to file it on time was the result of excusable neglect." Fed. R. Crim. P. 45, Advisory Committee Notes, 2006 Amendments.

Mar. 8, 2006). Thus this factor weighs in favor of excusable neglect.

Similarly, the length of delay and impact on judicial proceedings support a finding of excusable neglect. Under Rule 29(c), Mr. Rothenberg should have either filed this motion or sought leave of the Court to extend the deadline under Rule 45(b)(1)(A) by December 2, 2022. By the time the parties appeared for a status conference on December 16, 2022—the first appearance before the Court following the mistrial—Mr. Rothenberg had already informed the government of his intent to file a Rule 29 motion, and the Court directed the parties to propose a jointly agreed upon briefing schedule on the motion. Fakhoury Dec. ¶ 11; *see also* Dkt. 213. Ultimately, there was a two-week delay, partly during the Thanksgiving holiday, in extending the timing requirements for the motion which, given the complexity of this case, is not "lengthy." *See McGowan*, 2012 WL 13109973, at *4 (finding four-year delay "lengthy" in filing Rule 33 motion for new trial). Nor does it have an impact on judicial proceedings. As noted earlier, there is no currently set retrial date for Counts One and Two, and the remaining counts are still on pace to begin trial in July 2023. This factor too weighs in favor of a finding of excusable neglect.

The third factor—the reason for the delay—also warrants a finding of excusable neglect. "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect'…is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392. As the Ninth Circuit has noted, "the nature of the contextual analysis and the balancing of the factors adopted in *Pioneer* counsel against the creation of any rigid rule. *Pincay*, 389 F.3d at 859. So the decision to extend a deadline is "entrusted to the discretion of the district court because the district court is in a better position…to evaluate factors such as whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers…and the likelihood of injustice." *Id.* Indeed, the Supreme Court has "cautioned against 'erecting a rigid barrier against late filings attributable in any degree to the movant's negligence.'" *Pincay*, 389 F.3d at 860 (quoting *Pioneer*, 507 U.S. at 395 n. 14).

Here, the reason for the delay is—regrettably—attributed solely to defense counsel. Frankly, defense counsel did not contemplate the need to extend the deadline for filing a Rule 29 motion

DEFENDANT'S RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST
5

following a mistrial because in fifteen years of practice—including almost ten years as an Assistant Federal Public Defender in both the Southern and Northern Districts of California—he had never encountered this situation. Fakhoury Dec. at ¶¶ 4-7. Most written post-trial Rule 29 motions—in defense counsel's own experiences and in the reported cases on Westlaw—are filed after a jury returns a guilty verdict. To be sure, Rule 29 contemplates situations where the jury "is discharged without having returned a verdict." Fed. R. Crim. P. 29(b); *see also* Fed. R. Crim. P. 29(c)(2) (noting "if the jury has failed to return a verdict, the court may enter a judgment of acquittal"). But coming after a lengthy jury trial and just before the Thanksgiving holiday, defense counsel missed the need to extend the deadline to file post-trial motions even in the absence of a guilty verdict. Once he recognized his mistake, he informed the government he wished to file a Rule 29 motion on Mr. Rothenberg's behalf, raised the issue with the Court at the first available opportunity, and then agreed to file a motion quickly so as not to cause further delay. Counsel has tried to be as diligent as possible with other filings in this case, complying with the deadlines set by the Court and agreed to by the parties pursuant to stipulation, and generally attempted to zealously and ethically represent Mr. Rothenberg to the best of his abilities. But unfortunately, counsel made a mistake. There will be no injustice to the government if this Court excuses defense counsel's error to permit the late filing of this motion. Conversely, refusing to consider the motion because of a two-week delay in extending the deadline could be prejudicial to Mr. Rothenberg: if the motion would otherwise be successful but for being untimely, then Mr. Rothenberg would potentially have to sit in a second but unnecessary jury trial due to his attorney's mistake.

Finally, there is no bad faith here. Again, defense counsel found himself in a situation he had never dealt with and as soon as he realized the need to extend the deadline to file a post-trial motion, informed the government and raised the issue with the Court at the first possible opportunity. There is no gamesmanship here and no tactical benefit to Mr. Rothenberg in being two weeks late to extend the Rule 29 deadline. Preparation for trial on the remaining counts can continue and the retrial of Counts One and Two are not currently scheduled in any event.

Considering all these factors, excusable neglect exists to extend the deadline to file the post-trial Rule 29 motion. The government and this Court can rest assured this will be the last time defense

DEFENDANT'S RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

1  counsel seeks to rely on excusable neglect to file an untimely motion.

2  **B.    There was insufficient evidence to convict Mr. Rothenberg of Counts One and Two.**

3  Bank fraud contains five elements: (1) the defendant knowingly executed a scheme to defraud a bank; (2) the defendant knew statements or promises made to the bank were false; (3) the statements or promises made to the bank were material; (4) the defendant acted with the intent to defraud the bank; and (5) the bank was insured by the FDIC. Tr. Vol. 9 at 1432:9-1434:5; Dkt. 207 at 14.

Making a false statement to a bank has three elements: (1) the defendant made a false statement or report to bank; (2) the defendant knew the statement was false; and (3) the defendant did so for the purpose of influencing the bank. Tr. Vol. 9 at 1434:11-22; Dkt. 207 at 16.

The government failed to carry its burden of proof as to either crime as explained below.

### 1.    There was insufficient evidence Mr. Rothenberg knowingly made a false statement to SVB.

There was insufficient evidence that Mr. Rothenberg "knowingly" made any false statement to SVB as required for both bank fraud and making a false statement to a bank. The crux of the government's case hinges on statements purportedly made by Mr. Rothenberg on August 21, 2014, when he signed two forms within a larger closing packet: (1) a Uniform Residential Loan Application, called a "Form 1003," listing Mr. Rothenberg's assets and liabilities, Exh. 31-052; and (2) a financial status affidavit where Mr. Rothenberg purported to certify that his "financial status (such as Borrower's employment, income, assets, debts, expenses, credit obligations, etc.) has not changed significantly and accurately reflects Borrower's current financial status." Exh. 31-041.

These forms were presented to Mr. Rothenberg by notary Paulette Brunk. Tr. Vol. 5 at 922:31-924:7. Brunk testified she had no specific recollection of the signing session with Mr. Rothenberg. Tr. Vol. 5 at 925:3-4. The only evidence concerning Mr. Rothenberg's knowledge and involvement with these forms was that he signed both documents in Brunk's presence. There was no evidence through Brunk—or any other witness for that matter—that Mr. Rothenberg had read and understood the documents or were given the documents before the signing session. That evidence is insufficient for the government to carry its burden of proving knowledge of falsity beyond a reasonable doubt. In cases with a lesser standard of proof, courts have rejected the idea that "simply alleging" a defendant

signed a document "creates a strong inference of scienter." *In re Downey Securities Litigation*, 08-CV-03261-JFW, 2009 WL 2767670, at *9 (C.D. Cal. Aug. 21, 2009); *see also In re American Apparel, Inc. Shareholder Litigation*, 10-CV-06352-MMM, 2013 WL 10914316, at *16 (C.D. Cal. Aug. 8, 2013) ("merely alleging a defendant signed a false statement is insufficient" to satisfy scienter requirements).

The conclusion that the government failed to prove Mr. Rothenberg signed the Form 1003 and financial status affidavit knowing what they contained is reinforced by looking closely at the three specific statements the government focused on throughout the trial, and specifically relied on to satisfy its burden of proof with respect to Count Two. Tr. Vol. 9 at 1465:7-8, 16. It argued Mr. Rothenberg "represented on August 21st, 2014, that he had $370,000 of liquid assets in his Cash Management Account ["CMA"]. When in truth and in fact, on August 21st, 2014, they were encumbered because he had drawn down the full 350- on his Loan Management Account ["LMA"]." Tr. Vol. 9 at 1465:21-25. "Second, he represented that he only had $73,000 in liabilities on August 21st of 2014. When in truth and in fact, he had a Loan Management Account balance of $350,000 of liability debt." Tr. Vol. 9 at 1466:2-5. "Third, on August 21st of 2014, he represented and told Silicon Valley Bank that his financial condition had not significantly changed since his July 29th initial application and that the materials that Silicon Valley Bank was getting that day accurately reflected his current, current financial status. When in truth and in fact, his financial condition had changed since July 29th of 2014, deliberately, because he had concealed the fact that he took the $350,000 out. And indeed on August 21st of 2014, it was not accurate to say he did not have $350,000 of loan management debt." Tr. Vol. 9 at 1466:7-17.

On the first statement—that Mr. Rothenberg misrepresented he had $370,000 in liquid assets in the Merrill Lynch CMA account on August 21, 2014—there is no question the evidence at trial, specifically the testimony of Merrill Lynch banker Ryan Kelty, demonstrated that money in the CMA was unencumbered as long as the LMA account was not drawn down. *See* Tr. Vol. 3 at 531:6-10 ("Q. Let's just assume for a minute that he had not taken out the loan advance on or about June 20th. Under that hypothetical scenario, what would his unencumbered liquid assets at Merrill Lynch have been? A. 370,000."). The evidence demonstrated, as former SVB banker Michelle Jandu testified,

1    that the Merrill Lynch statement Mr. Rothenberg gave to SVB made clear that the CMA account was
2    pledged to the LMA. *See* Tr. Vol. 4 at 766:9-11 ("Q. Now [Exhibit 10] indicates that it is a CMA
3    pledged. What does that mean to you? A. That he likely has a –a line of credit on the account."); Vol.
4    5 at 859:5-10 ("Q. And you testified that the indication here, 'CMA pledged,' means that this
5    checking account is pledged as collateral to some other account, correct? A. Correct. Q. This form
6    indicates balances as of July 31st, 2014, right? A. Yes."). Thus, the only way for the government to
7    carry its burden in demonstrating that this statement was false was by proving beyond a reasonable
8    doubt that Mr. Rothenberg knew what information was contained in the forms he signed on August
9    21, 2014. As explained in detail below, the government failed to prove that fact beyond a reasonable
10   doubt.

11   That is clearly demonstrated by focusing on the second statement the government claimed was
12   false: that Mr. Rothenberg stated he only had $73,000 in liabilities. Tr. Vol. 9 at 1466:2-5. The Form
13   1003 signed by Mr. Rothenberg on August 21, 2014 (Exh. 31-054) was prepared by a SVB loan
14   processor, either witness Ingrid Robertson or another non-testifying loan processor. Tr. Vol. 5 at
15   996:3-5. The evidence demonstrated conclusively the only reason the final Form 1003 listed $73,000
16   in liabilities was because the pre-filled form did not have enough space for all the creditors on Mr.
17   Rothenberg's credit report and no one from SVB bothered to transfer the additional creditors onto the
18   form.[2] The first Form 1003 submitted by Mr. Rothenberg on July 29, 2014 said "see credit report"
19   under liabilities. Exh. 2-002. The asset and liability sheet submitted by Mr. Rothenberg to SVB on
20   July 29, 2014 listed $210,000 in student loan debt, which matched the amount of installment debt on
21   the credit report obtained by SVB in connection with the loan. Exh. 3-001, Exh. 16-001. Having
22   already told the bank he had significantly more than $73,000 in liabilities, it made no sense
23   whatsoever for Mr. Rothenberg to report to the bank three weeks later that he only had $73,000 in
24   liabilities.

---

[2] The same mistake was replicated on the Form 1003 sent to Mr. Rothenberg on August 6, 2014 by SVB as part of the initial disclosures. Exh. 19-003. There is no evidence Mr. Rothenberg ever received that Form 1003, let alone read it or was aware of the mistake.

DEFENDANT'S RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

9

1    Instead, it is simply the case that Mr. Rothenberg signed the August 21, 2014 Form 1003—
2 which stated he had $370,000 in liquid cash and $73,000 in liabilities—without reading it. The
3 evidence suggested that like most borrowers, as acknowledged by notary Brunk, Mr. Rothenberg was
4 in a hurry to sign the forms borrowers assume are filled out correctly by the bank. Tr. Vol. 5 at
5 929:20-22 ("Q….Is it safe to say that most people want to get their documents signed and be on their
6 way? A. Yes."). Tellingly, only pages one and three of the Form 1003 were signed by Mr.
7 Rothenberg; the section concerning his assets and liabilities was on page two of the form, which was
8 not signed by Mr. Rothenberg, and there was no testimony from Ms. Brunk that she ever saw Mr.
9 Rothenberg read any of the information on that page of the Form 1003. Exh. 31-053. Thus, Mr.
10 Rothenberg did not knowingly submit false information to SVB about his assets or liabilities.

11    The government's third claimed false statement—that Mr. Rothenberg declared on the financial
12 status affidavit that his financial situation had not changed when in fact it had on August 21, 2014
13 because the LMA account was drawn down—suffers from the same flaw. Tr. Vol. 9 at 1466:7-17.
14 Again, there is no evidence that Mr. Rothenberg read the contents of the financial status affidavit.
15 Nor was there any evidence, through testimony or exhibit, that the terms in the financial status
16 affidavit were ever explained to Mr. Rothenberg. That absence is telling because the evidence
17 presented by the government demonstrates that Mr. Rothenberg's financial situation had not changed
18 significantly.

19    The CMA statements showed an approximate $370,000 liquid cash balance at the end of every
20 month, including June 30, 2014 (Exh. 50-001), July 31, 2014 (Exh. 51-003), August 29, 2014 (Exh.
21 52-003) and September 30, 2014 (Exh. 53-003). Similarly, the statements from Mr. Rothenberg's
22 personal Bank of America ("BoA") checking account admitted into evidence showed a steady (and
23 ultimately increased) balance throughout the spring and summer of 2014. Exh. 72-031 (ending
24 balance of $10,395.06 on May 21, 2014); Exh. 72-041 (ending balance of $13,735.37 on June 20,
25 2014); Exh. 72-047 (ending balance of $13,474.02 on July 23, 2014); Exh. 72-053 (ending balance of
26 $86,594.42 on August 21, 2014). Mr. Rothenberg's employment had not changed and he valued his
27 stake in Rothenberg Ventures Management Company ("RVMC") as approximately $47 million. Exh.
28 3-001. Given all of that, there is no evidence that Mr. Rothenberg believed his financial situation had

1  "significantly" changed.

2  Moreover, there is no evidence that Mr. Rothenberg knew that *SVB* would perceive his
3  financial situation had changed "significantly." The bank increased the loan amount by $200,000
4  when the property appraisal came in higher than anticipated without changing a term of the loan or
5  asking for additional documentation. There was no evidence that SVB ever once asked for detailed,
6  line-item statements from Mr. Rothenberg. SVB's Senior Credit Officer Frederick Kreppel testified
7  he does not typically look at the ins and outs of individual bank statements when deciding whether to
8  approve a loan. Tr. Vol. 8 at 1362:2-14 ("Q. And when your – and your review of the loan is based
9  solely on the information in the approval sheet, right? A. Yes. Q. You're not looking at specific
10 statements. A. No. Q. You're looking at an individual's balance over time, right? A. Right. Q. You're
11 not looking at the ins and outs of the bank statements? A. No. Q. You don't look at the Form 1003
12 when you're reviewing the loan, right? A. No.").

13 Importantly, Kreppel testified that neither Mr. Rothenberg, or any borrower, saw or were
14 informed of the bank's underwriting analysis in what it called "the spread," knew the bank's credit
15 risk rating system, or were informed of, or understood, SVB's debt-to-income ratio thresholds. Tr.
16 Vol. 8 at 1398:11-16 ("Q. Okay. The bank doesn't give its underwriting criteria to borrowers, does it?
17 A. No. Q. Doesn't give the spread to borrowers, does it? A. No."). The bank's underwriting analysis
18 in the "the spread" contained three different calculated ratios: one using gross income, one using net
19 income, and one accounting for the capital call line of credit as an interest only loan. Exh. 23-009.
20 There was no evidence that Mr. Rothenberg was ever informed of or aware of these different ways to
21 calculate his debt-to-income ratio, knew what his specific ratio was, or knew what the bank's lending
22 thresholds were. Tr. Vol. 8 at 1398:16-19 (Q. These ratios, there's three different debt-to-income
23 ratios on this sheet. They're not given to the borrower, right? A. No."). In other words, there is no
24 proof that Mr. Rothenberg knew that a $350,000 change in net worth would be a significant change to
25 *his* financial situation or impact the mortgage under the bank's lending criteria.

26 Ultimately, the government failed to prove either that any false statement was made and, even
27 if false, that Mr. Rothenberg knowingly made a false statement. Thus, this Court should enter a
28 judgment of acquittal on Counts One and Two.

DEFENDANT'S RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST
11

2. **The government failed to prove the statements in the Form 1003 and financial status affidavit were material.**

For the bank fraud element of materiality, the government emphasized to the jury "that it would be considered a material change in the borrower's personal financial condition to have an additional $350,000 of debt." Tr. Vol. 9 at 1472:23-25. According to the government, "it could affect whether or not the loan was issued" or "the terms of the loan" and could have caused the bank to "re-underwrite" the loan. Tr. Vol. 9 at 1473:5-7, 19.

The government's argument ultimately rests on the premise that a Form 1003 and financial status affidavit in a closing packet are material to a bank's decision to issue a mortgage.[3] But no evidence supports that claim. On August 18, 2014, the bank informed Mr. Rothenberg by letter that the refinance loan had been approved. Exh. 24-001. That approval was unconditional: neither the approval letter itself, nor any of the documents signed on August 21, 2014 indicated the loan was *conditioned* on there being no change in Mr. Rothenberg's financial situation from when the initial loan application was submitted. That includes the financial status affidavit, which only stated a borrower "will be in default"—and could be criminally prosecuted—if the borrower gave false information to the lender. Exh. 31-041. By definition, a default can only happen when a loan is complete and funded, not when it is pending. Thus, the financial status affidavit had no bearing whatsoever on whether SVB would issue a loan to Mr. Rothenberg.

The same is true of the Form 1003. A bank's decision to grant a loan was not based on information inputted into the Form 1003. That is conclusively demonstrated by the fact the loan approval sheets and "the spreads" here did not repeat the incorrect financial information contained in the Form 1003. The loan approval sheets—which were reviewed by both Michelle Jandu and Frederick Kreppel—listed liabilities significantly greater than the $73,000 that the government fixated on throughout trial. Exh. 22-019, Exh. 23-009 (total liabilities of $1,603,067 or $736,509 when removing existing mortgage on condominium). Kreppel himself testified he did not look at any

---

[3] The capital call line of credit was funded on August 12, 2014 when SVB wired $297,000 into the bank account—also held by SVB—of Rothenberg Ventures Fund II. Exh. 85-034. Thus any statements made by Mr. Rothenberg when he signed the closing documents on August 21, 2014 were irrelevant to the bank's decision to fund the capital call line of credit.

1  Form 1003s when reviewing a loan generally, or when reviewing Mr. Rothenberg's loan specifically.
2  Tr. Vol. 8 at 1362:13-15 ("Q. You don't look at the Form 1003 when you're reviewing the loan,
3  right? A. No.").
4      Ultimately, the government failed to prove that the statements in the Form 1003 or financial
5  status affidavit were material to any bank or SVB's decision to issue a loan. Because the government
6  failed to prove materiality, there was insufficient evidence to convict Mr. Rothenberg of making a
7  false statement to a bank as charged in Count Two.

8      **3.    There was insufficient evidence of a scheme or intent to defraud.**

9      Finally, the government failed to prove either a scheme or intent to defraud through the
10 statements in the Form 1003 and financial status affidavit signed on August 21, 2014, as required to
11 convict Mr. Rothenberg of bank fraud as charged in Count One, or that Mr. Rothenberg's purpose
12 was to influence the bank as required to convict Mr. Rothenberg of making a false statement to a
13 bank as charged in Count Two.
14     No evidence or testimony presented at trial demonstrated that the movement of money between
15 various financial accounts belonging to Rothenberg Ventures Management Company ("RVMC"),
16 Rothenberg Ventures Fund II ("Fund II"), or Mr. Rothenberg's personal Bank of America account
17 were part of a plan to defraud SVB. In a Rule 29 motion, "the district court must determine whether
18 at the time of the motion there was relevant evidence" to support a conviction. *United States v.*
19 *Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978) (quotations and citation omitted). A "defendant's Rule
20 29 motion must be decided based on the state of the evidence as it existed." *United States v.*
21 *Santacruz*, 08-CR-00124-OWW, 2010 WL 3491518, at *2 (E.D. Cal. Sept. 2, 2010). A "Rule 29
22 motion for a judgment of acquittal does not ordinarily allow for consideration of post-trial evidence."
23 *United States v. Hayat*, 05-CR-00240-GEB, 2006 WL 1686491, at *3 (E.D. Cal. Jun. 19, 2006).
24     The voluminous bank statements admitted into evidence demonstrated money moved in and out
25 of these various accounts both before Mr. Rothenberg applied for a loan with SVB at the end of July
26 2014, and after the loans were closed in August 2014. *See, e.g.*, Exh. 72-43 (May 22, 2014 wire into
27 BoA for $53,413.03 from RVMC); Exh. 72-071 (Sept. 24, 2014 wire into BoA for $70,000 from
28 RVMC); Exh. 85-012 (March 7, 2014 $150,000 wire into Fund II from RVMC labelled "RV to F II

advance"); Exh. 85-014 (March 12, 2014 $38,800 wire out from Fund II to RVMC labelled "Mgmt Fee fr Fund II to Mgmt Co"); Exh. 85-44 (October 6, 2014 $300,000 wire out from Fund II to RVMC); Exh. 86-90 (April 9, 2014 $10,000 wire in from Rothenberg to RVMC); Exh. 86-140 (September 29, 2014 $70,000 wire out from RVMC to Rothenberg).

Moreover, there was no evidence that Mr. Rothenberg hid any of these transactions from any financial institution. In fact, the Merrill Lynch statement provided by Mr. Rothenberg to SVB indicated the CMA was a "pledged" account as Jandu herself acknowledged in her testimony. *See* Exh. 10; Tr. Vol. 4 at 766:9-11 ("Q. Now [Exhibit 10] indicates that it is a CMA pledged. What does that mean to you? A. That he likely has a –a line of credit on the account."); Tr. Vol. 5 at 859:5-10 ("Q. And you testified that the indication here, 'CMA pledged,' means that this checking account is pledged as collateral to some other account, correct? A. Correct. Q. This form indicates balances as of July 31st, 2014, right? A. Yes."). SVB was obviously aware of the movement of money in and out of RVMC and Fund II's accounts because it held those accounts and noted the account balances on the loan approval sheets directly. Exh. 22-002, Exh. 23-002.

But most importantly, no evidence supported the government's assertion that Mr. Rothenberg had any intent or purpose to cheat the bank. A borrower who knew a bank's lending criteria and structured payments in a way to obtain a loan they would otherwise not be entitled to would certainly have engaged in a scheme to defraud, have the intent to defraud, and the purpose of influencing the bank. But there was no evidence that Mr. Rothenberg was that kind of borrower. Critically, Kreppel testified that Mr. Rothenberg had enough reserves under the bank's lending criteria even if the cash in the CMA was considered a liability instead of an asset. Tr. Vol. 8 at 1383:13-19 ("Q. Okay. And again, building off that hypothetical, if we subtracted $350,000 off the contractual reserves amount and we were looking at the interest only – or if we were treating the capital call line of credit as an interest-only loan for three years, there would be more than 12 months of contractual reserves, right? A. Correct.").

There were only two reasons then why Mr. Rothenberg would not have qualified for the loan under SVB's lending criteria if the cash in the CMA was treated as a liability instead of an asset. First was the fact that the condo appraised higher than expected —and higher than the loan Mr.

Rothenberg was originally seeking—a fortuitous circumstance out of Mr. Rothenberg's control. Second was the fact that the bank's underwriting analysis treated the capital call line of credit like a five-year amortized loan instead of the three-year interest only loan Mr. Rothenberg understood it to be. Treating the loan like a five-year amortized loan pushed Mr. Rothenberg over the bank's permissible debt-to-income ratio. Had the bank treated the loan as it actually was—and as Mr. Rothenberg understood it to be—then he would have qualified for the loan even if the cash in the CMA was treated as a liability instead of an asset. Tr. Vol. 8 at 1403:7-10.

It is true, as the government argued in closing, that "borrowers don't get to choose their underwriting criteria." Tr. Vol. 9 at 1545:13-15. As Kreppel testified, "I chose what underwriting guidelines would apply." Tr. Vol. 8 at 1404:13. But that is beside the point. As explained earlier, there was no evidence that Mr. Rothenberg was aware of the bank's underwriting criteria, its credit risk analysis, the information in the "spreads," the myriad debt-to-income ratios, and the bank's decision to treat the three year interest only capital call line of credit like a five year amortized loan in in assessing whether to fund the loans. So the fact Mr. Rothenberg would have qualified for the loan under the circumstances *as he understood them* meant there was no incentive for him to misrepresent his financial situation, and thus—in the language of the elements of the crimes charged—no scheme to defraud, intent to defraud, or purpose to influence the bank. That point was further proven at trial by the fact that Mr. Rothenberg authorized SVB in writing to get whatever financial records it wanted (Exh. 4-001), responded to all the bank's requests and sought clarification as needed, and conducted all the financial transactions at issue in this case directly and openly, actions that are completely antithetical to fraud.

Ultimately, there was insufficient evidence that Mr. Rothenberg had any scheme or intent to defraud the bank or had the purpose of influencing the bank through deception when he signed the notarized Form 1003 and financial status affidavit on August 21, 2014. As a result, a judgment of acquittal must be entered on Counts One and Two.

# **CONCLUSION**

Mr. Rothenberg respectfully requests this Court grant him a judgment of acquittal on Counts One and Two.

Dated:   January 13, 2023

Respectfully submitted,

MOEEL LAH FAKHOURY LLP

Hanni M. Fakhoury
Attorneys for Michael Rothenberg