MOEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone:   (510) 500-9994
Email:       hanni@mlf-llp.com

Attorneys for Michael Rothenberg

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ROTHENBERG,<br><br>Defendant. | **Case No.:** 4:20-CR-00266-JST<br><br>**DEFENDANT'S REPLY TO UNITED STATES' OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS ONE AND TWO**<br><br>**Court:** Courtroom 6, 2nd Floor<br>**Hearing Date:** February 10, 2023<br>**Hearing Time:** 9:30 a.m. |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................1

    A.     "Good cause" and "excusable neglect" allows the late filing of the Rule 29 motion.......2

    B.     There was insufficient evidence to convict Mr. Rothenberg of Counts One and Two.....4

          1.     There was insufficient evidence Mr. Rothenberg knowingly made false statements.................................................................................................................5

          2.     The government failed to prove the statements were material. ...........................9

          3.     There was insufficient evidence of a scheme or intent to defraud.....................10

CONCLUSION ..................................................................................................................12

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

i

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3  *Bateman v. U.S. Postal Service*, 231 F.3d 1220 (9th Cir. 2000) .......................................................3, 4

4  *Jackson v. Virginia*, 443 U.S. 307 (1979) ...................................................................................1

5  *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc) ........................................................2, 3, 4

6  *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) ..2, 3

7  *United States v. Gomez-Gutierrez*, 140 F.3d 1287 (9th Cir. 1998)....................................................6, 7

8  *United States v. Jaensch*, 665 F.3d 83 (4th Cir. 2011)..............................................................2

9  *United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017) ..........................................................9

10  *United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (en banc)...............................................5

11  *United States v. Snider*, 180 F. Supp. 3d 780 (D. Or. 2016) ....................................................7

12  *United States v. Yates*, 16 F.4th 256 (9th Cir. 2021) .............................................................11

13  *United States v. Zhang*, 590 Fed. Appx. 663 (9th Cir. 2014)........................................................6, 7

14

### **Statutes**

15  18 U.S.C. § 1014 .....................................................................................................1

16  18 U.S.C. § 1344 .....................................................................................................1

17

### **Federal Rules**

18  Federal Rule of Civil Procedure 60 ...................................................................................3

19  Federal Rule of Criminal Procedure 20...........................................................................*passim*

20  Federal Rule of Criminal Procedure 45.................................................................................2

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

ii

1

**INTRODUCTION**

2        Pursuant to Federal Rule of Criminal Procedure 29(c), Michael Rothenberg moved this Court to

3  enter a judgment of acquittal on Counts One and Two of the superseding indictment. Dkt. 219,

4  Defendant's Rule 29(c) Motion for Judgment of Acquittal on Counts One and Two ("Def. Rule 29

5  Motion"). That motion followed the Court's declaration of a mistrial on November 17, 2022, after

6  jurors deadlocked and could not reach a unanimous verdict following an eleven-day jury trial. Dkt.

7  205. Jurors were hung in favor of acquittal.

8        The government opposes the motion, arguing it should not be considered as it is untimely, and

9  claiming that the evidence at trial was sufficient for a rational juror to find Mr. Rothenberg

10  committed bank fraud under 18 U.S.C. § 1344, and made false statements to a bank under 18 U.S.C.

11  § 1014. Dkt. 220, United States Opposition to Defendant's Rule 29(c) Motion for Judgment of

12  Acquittal on Counts One and Two ("Gov. Oppo."). Remarkably, after two and a half years of

13  litigation, the government belatedly acknowledges that one of the centerpieces of its case—that Mr.

14  Rothenberg represented "he had only $73,000 in non-real-estate-related liabilities"—was due to the

15  fact "the bank had made a mistake." Dkt. 15, Superseding Indictment at ¶ 30; Gov. Oppo. at 16.

16        Given that admission and the fact the majority of jurors rejected the government's theory, this

17  Court should enter a judgment of acquittal on Counts One and Two.

18

**ARGUMENT**

19        Federal Rule of Criminal Procedure 29(a) requires a trial court to enter a judgment of acquittal

20  if "the evidence is insufficient to sustain the conviction." Fed. R. Crim. P. 29(a). Under Rule 29(c),

21  the Court may enter a judgment of acquittal "after a guilty verdict or after the court discharges the

22  jury." Fed. R. Cim. P. 29(c)(1).

23        The government's first complaint is that Mr. Rothenberg "fails to follow the legal standard for

24  evaluating a motion for a judgment of acquittal." Gov. Oppo. at 5. It relies on the familiar standard

25  that the Court must "view[] the evidence in the light most favorable to the prosecution" and

26  determine whether "*any* rational trier of fact" could have found the defendant guilty. *Jackson v.*

27  *Virginia*, 443 U.S. 307, 319 (1979); *see* Gov. Oppo. at 4. While that is certainly the standard for a

28  Rule 29 motion following a guilty verdict, the Court should look at the government's case more

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

1

skeptically when a Rule 29 motion is made following a mistrial due to a hung jury, and particularly when the jury was hung in favor of acquittal. The Ninth Circuit has never addressed whether a different standard applies to a Rule 29 motion following a hung jury; the Fourth Circuit has found the standard is the same regardless of whether the motion is made following a guilty verdict or a hung jury. *See United States v. Jaensch*, 665 F.3d 83, 93 (4th Cir. 2011) ("we hold that the standard of review for a motion for judgment of acquittal following a mistrial is no different than it would be following a jury conviction, and the evidence should, therefore, be viewed in the light most favorable to the Government.")

Ultimately, under any standard, scrutinizing the evidence presented by the government at trial demonstrates it failed to prove Mr. Rothenberg guilty beyond a reasonable doubt of the crimes charged in Counts One and Two.

**A.   "Good cause" and "excusable neglect" allows the late filing of the Rule 29 motion.**

Mr. Rothenberg's opening brief acknowledged the Rule 29 motion was filed after the 14-day deadline in Rule 29(c)(1), a delay attributed to defense counsel's failure to extend the Rule 29 deadline following the Court's declaration of a mistrial. Def. Rule 29 Motion at 3-6; *see also* Dkt. 219-1, Declaration of Hanni M. Fakhoury ("Fakhoury Dec.") at ¶¶ 3-11. Under Federal Rule of Criminal Procedure 45, the Court can extend the time to file a motion "after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). There are four factors this Court must consider in deciding whether excusable neglect exists: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc) (citing *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993)).

The government concedes that the length of the delay "was not so great as to prejudice the government significantly," and acknowledges there is no evidence "that defense counsel is acting in bad faith, or that counsel purposefully ignored looking at Rule 29 in order to gain some tactical advantage." Gov. Oppo. at 6. Thus the only dispute between the parties is whether the "reason for the

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

2

1  delay" warrants a finding of excusable neglect.

2       The reason for the delay is—regrettably—attributed solely to defense counsel who did not

3  contemplate the need to extend the deadline for filing a Rule 29 motion following a mistrial because

4  he had never encountered this situation before in his practice. Fakhoury Dec. at ¶¶ 4-7. After a

5  lengthy jury trial and just before the Thanksgiving holiday, defense counsel missed the need to

6  extend the deadline to file post-trial motions even in the absence of a guilty verdict. Once he

7  recognized his mistake, he informed the government he wished to file a Rule 29 motion on Mr.

8  Rothenberg's behalf, raised the issue with the Court at the first available opportunity, and then agreed

9  to file a motion quickly so as not to cause further delay.

10      The government argues that "ignorance of the precise provisions of Rule 29—cannot establish

11  excusable neglect." Gov. Oppo. at 8. But the Ninth Circuit has made clear that prior cases applying a

12  "per se rule against the granting of relief when a party failed to comply with a deadline" were no

13  longer good law, and that "excusable neglect" could "cover[] cases of negligence, carelessness and

14  inadvertent mistake." *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1224 (9th Cir. 2000). Indeed,

15  the Supreme Court has "cautioned against 'erecting a rigid barrier against late filings attributable in

16  any degree to the movant's negligence.'" *Pincay*, 389 F.3d at 860 (quoting *Pioneer*, 507 U.S. at 395

17  n. 14).

18      In *Bateman*, the Ninth Circuit found excusable neglect even when the reason for the delay

19  was—in its own words—"weak." *Id.* at 1225. There, an attorney needed to leave the country for a

20  family emergency and had his legal assistant reach out to opposing counsel, an Assistant U.S.

21  Attorney ("AUSA"), and ask if he could delay filing for summary judgment. The AUSA declined and

22  informed the legal assistant the attorney should file a request with the Court to extend the deadline to

23  file an opposition to the motion. The AUSA proceeded to file a motion for summary judgment three

24  days before the attorney left the country, but the attorney did not file any request with the Court to

25  extend the opposition deadline. The attorney returned to the country but never contacted the Court or

26  opposing counsel, and a few days later the district court granted summary judgment to the

27  government. The attorney then asked the Court to "rescind" its order two weeks later, which was

28  denied by the district court because the letter was not a proper Federal Rule of Civil Procedure 60(b)

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

3

motion. The attorney ultimately filed a Rule 60(b) motion more than a month later which was denied by the district court. *Id.* at 1222-23. The Ninth Circuit found the attorney "should have responded more quickly" and "showed a lack of regard for his client's interests and the court's docket." *Id.* at 1225. But it also found there was "no evidence that he acted with anything less than good faith" and the "errors resulted from negligence and carelessness, not from deviousness or willfulness." *Id.* Thus, it found the "equities" weighed in favor of excusable neglect.

The equities are more favorable here. Again, the government has already conceded it is not prejudiced and there is no bad faith. Gov. Oppo. at 6. Unlike the attorney in *Bateman*, defense counsel here was unaware of the need to extend the deadline to file a Rule 29 motion. After recognizing the error, defense counsel moved as quickly as possible to show regard for Mr. Rothenberg's interests and the Court's docket.

The government's concerns about finding "excusable neglect" here leading to "no situation where excusable neglect could not be found where a defendant does not act in bad faith" is misplaced. Gov. Oppo. at 8. Again, the Court must consider all the excusable neglect factors and evaluate "whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers…and the likelihood of injustice." *Pincay*, 389 F.3d at 859. Given the analysis in this case—and this case alone—"excusable neglect" exists to extend the deadline to file the post-trial Rule 29 motion. The government and this Court can rest assured this will be the last time defense counsel seeks to rely on excusable neglect to file an untimely motion.

**B.** **There was insufficient evidence to convict Mr. Rothenberg of Counts One and Two.**

Mr. Rothenberg's motion noted three ways in which the government failed to carry its burden to convict on Counts One and Two, explaining there was insufficient evidence (1) Mr. Rothenberg knowingly made an alleged false statement; (2) that the statements in the Form 1003 and financial status affidavit were material; or (3) of a scheme or intent to defraud. Def. Rule 29 Motion at 7-15. The arguments raised by the government in its opposition are uncompelling and should be rejected by this Court.

1          **1.      There was insufficient evidence Mr. Rothenberg knowingly made false statements.**

2          There was insufficient evidence that Mr. Rothenberg "knowingly" made any allegedly false

3   statement to Silicon Valley Bank ("SVB") as required for both bank fraud and making a false

4   statement to a bank. The government's case hinged on statements purportedly made by Mr.

5   Rothenberg on August 21, 2014, when he signed two forms within a larger closing packet: (1) a Form

6   1003 that incorrectly listed Mr. Rothenberg's assets and liabilities, Exh. 31-052; and (2) a financial

7   status affidavit where Mr. Rothenberg purported to certify that his "financial status (such as

8   Borrower's employment, income, assets, debts, expenses, credit obligations, etc.) has not changed

9   significantly and accurately  reflects Borrower's current financial status." Exh. 31-041. As explained

10  in detail in the opening Rule 29 motion, the evidence clearly demonstrated that Mr. Rothenberg was

11  unaware of the content of the forms in the closing packet, and specifically unaware that the Form

12  1003 incorrectly listed his liabilities due to a bank error, or that the bank would perceive a $350,000

13  swing in his net worth—less than one-tenth of 1% of his estimated $47.5 million net worth—meant

14  that his financial status had "changed significantly." Def. Rule 29 Motion at 7-11; *see also* Exh. 3.[1]

15          Arguing otherwise, the government first complains that "a factfinder could rely on

16  Rothenberg's own signature on the documents to conclude that he in fact had 'read and understood'

17  those documents," and that a "a jury could conclude that Rothenberg was sophisticated and careful

18  enough to make himself aware of the substantive content of any documents he signed." Gov. Oppo. at

19  12.

20          But that is just speculation, which is insufficient for the government to carry its burden. *United*

21  *States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc) ("[E]vidence is insufficient to support

22  a verdict where mere speculation, rather than reasonable inference, supports the government's

23  case."). There is no actual proof that Mr. Rothenberg made "himself aware of the substantive

24  _____

25  [1] The $47.5 million figure came from Mr. Rothenberg's valuation of his stake in Rothenberg
26  Ventures Management Company ("RVMC") which was based, as explained in SVB's loan approval
    sheet, on the fact he "recently sold a .25% stake in the company for $125.0 which puts the valuation
27  at $50MM." Exh. 22-017. On "the spread," however, the bank valued Mr. Rothenberg's stake in
    RVMC as $66,800 due to "the limited history of the management company and respective funds."
28  Exh. 22-019. But there was no evidence that Mr. Rothenberg was informed by anyone that the bank
    was considering his stake in the management company as $66,800 instead of $47.5 million.

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

5

content" of the documents and knew that the bank had made an error on the Form 1003. No witness

testified they saw Mr. Rothenberg read the documents, or caught the bank's error, or that anyone

from SVB explained to Mr. Rothenberg what it meant to have his financial situation "change[]

significantly."

Without actual evidence, the government grasps at straws to prove that Mr. Rothenberg knew

the Form 1003 was incorrect but signed anyway, and thus knowingly submitted an allegedly false

statement to SVB. It incorrectly claims that Mr. Rothenberg had seen a Form 1003 "like the one in

Exhibit 25." Gov. Oppo. at 14. The first Form 1003 signed by Mr. Rothenberg (Exh. 2) did not list

his liabilities—the crucial information upon which this entire prosecution rests— in detail, and there

is no evidence that Mr. Rothenberg received the updated Form 1003 (Exh. 19-002) sent by SVB in

the mail with the initial disclosure packages. The government's reliance on notary Paulette Brunk's

"practice" in other signings is irrelevant as she testified she had no specific recollection of the signing

session with Mr. Rothenberg, and thus necessarily could not explain whether she followed her

custom and practice at this signing, or whether Mr. Rothenberg stopped to read every word and

caught the bank's error on the Form 1003 before signing. Tr. Vol. 5 at 925:3-4. Nor is the

government's reliance on Mr. Rothenberg's education and status as a venture capital fund founder a

substitute for actual evidence that Mr. Rothenberg knew the final Form 1003 was prepared

incorrectly, or understood what specifically the bank meant when it used the phrase "changed

significantly" in the financial status affidavit.

The cases cited by the government for the proposition that "signature-related evidence is

sufficient to conclude that a defendant acted 'knowingly'" are far afield from what happened here.

Gov. Oppo. at 13 (citing cases). In *United States v. Zhang*, 590 Fed. Appx. 663 (9th Cir. 2014), the

Ninth Circuit found evidence a defendant knowingly violated an NDA was supported by "substantial

circumstantial evidence," including the fact the defendant had signed a prior NDA, was repeatedly

reminded about the NDA, and was "evasive[] when questioned by the FBI." 590 Fed. Appx. at 665-

66. In *United States v. Gomez-Gutierrez*, 140 F.3d 1287 (9th Cir. 1998), the Ninth Circuit rejected an

argument that a defendant had not knowingly signed a form with an incorrect address because his

"signature appears *directly* above" the incorrect address. 140 F.3d at 1289 (emphasis in original).

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

6

And in *United States v. Snider*, 180 F. Supp. 3d 780 (D. Or. 2016), a defendant's written waiver of the ability to file a post-conviction 28 U.S.C. § 2255 motion in his plea agreement was deemed valid when "the minutes from the sentencing hearing show that the Court advised Snider that his plea agreement contains a waiver of the right to appeal." 180 F. Supp. 3d at 790. All of these cases make clear that something beyond the mere signature was needed for the government to demonstrate knowledge.

Here, in contrast, the government only has a signature, likely made in haste, as Brunk testified was common at signings. *See* Tr. Vol. 5 at 929:20-22 ("Q....Is it safe to say that most people want to get their documents signed and be on their way? A. Yes."). There is no evidence Mr. Rothenberg was evasive with anyone, like the defendant in *Zhang*, signed the relevant page listing his liabilities on the incorrect Form 1003, like the defendant in *Gomez-Gutierrez*, or was told personally what the Form 1003 contained, or the financial status affidavit meant, like the defendant in *Snider.* Indeed, the other circumstantial evidence in the case only reinforces the fact that Mr. Rothenberg was not aware of the mistake in the Form 1003, and was not informed of what the bank meant by the phrase "changed significantly."

Most compelling is the fact the asset and liability sheet submitted by Mr. Rothenberg to SVB on July 29, 2014 listed $210,000 in student loan debt, which matched the amount of installment debt on the credit report obtained by SVB in connection with the loan. Exh. 3-001, Exh. 16-001. Yet, the Form 1003 signed by Mr. Rothenberg listed his liabilities as only $73,000. That discrepancy is, as the government belatedly acknowledges after two and a half years of litigation, is "because the bank had made a mistake." Gov. Oppo. at 16. The government claims "a jury could rationally conclude that Rothenberg decided not to rock the boat by correcting the bank's mistake, which might call the bank's attention to Rothenberg's actual liabilities." Gov. Oppo. at 16. But in the absence of actual evidence, that is nothing more than a speculative theory. The only rational inference to draw from the fact that Mr. Rothenberg signed a Form 1003 that underreported the liabilities he himself reported to the bank three weeks earlier leads to the inescapable conclusion that he failed to catch the bank's mistake on the Form 1003 before signing it, and thus did not knowingly endorse its contents.

The government's efforts to prove Mr. Rothenberg's knowledge through his email

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

7

correspondence with Merrill Lynch banker Ryan Kelty are also unconvincing. Gov. Oppo. at 14-15. It claims the emails demonstrate "in detail the movement of funds that Rothenberg wanted to achieve, which included Rothenberg paying off his LMA on July 29, 2014, and then having Ryan Kelty draw down the LMA by $350,000 two days later" to demonstrate to SVB that the "LMA balance was $0 at the end of July 2014 and that the $370,000 in his CMA was unencumbered." Gov. Oppo. at 15. As a result, it claims a "rational factfinder could conclude that Rothenberg *knew* what liquid assets would be disclosed on his URLA in Exhibit 25 and what liabilities would *not* be listed." *Id.* (emphasis in original). More directly, the government argues "there was sufficient evidence for a factfinder to conclude that Rothenberg knew that a $350,000 swing in his assets and liabilities might affect his chances of getting the loans." Gov. Oppo. at 16.

However the testimony established that neither Mr. Rothenberg, or any borrower, saw or were informed of the bank's underwriting analysis in what it called "the spread," knew the bank's credit risk rating system, or were informed of, or understood, SVB's debt-to-income ratio thresholds. Tr. Vol. 8 at 1398:11-16. Without that insight, and without any evidence indicating that Mr. Rothenberg knew what "his chances of getting the loans" from SVB were in the first place, or that the bank considered him close to the eligibility thresholds, there was no way for Mr. Rothenberg to know— and no proof that he did in fact know—that a $350,000 swing in assets and liabilities would matter to the bank. Again, the other circumstantial evidence presented in this case reinforces the point. Mr. Rothenberg believed his stake in Rothenberg Ventures Management Company was worth $47 million, and did not know the bank was not considering that in its analysis of the loans. Exh. 3. SVB clearly wanted his business and access to his portfolio companies and employees Michelle Jandu and Jim Marshall wooed him personally. *See* Tr. 676:25-677:13; 835:12-836:13. Given those circumstances, there was insufficient evidence that Mr. Rothenberg knew that a $350,000 swing in assets and liabilities would be considered a "significant change" to SVB.

Ultimately, the government failed to prove that Mr. Rothenberg knowingly made any allegedly false statement. Thus, this Court should enter a judgment of acquittal on Counts One and Two.

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

8

**2.      The government failed to prove the statements were material.**

For the bank fraud element of materiality, the government emphasized to the jury "that it would be considered a material change in the borrower's personal financial condition to have an additional $350,000 of debt" which could affect whether or not the loan was issued" or "the terms of the loan" and could have caused the bank to "re-underwrite" the loan. Tr. Vol. 9 at 1472:23-25, 1473:5-7, 19. The government's argument ultimately rests on the premise that a Form 1003 and financial status affidavit in a closing packet are material to a bank's decision to issue a mortgage.[2] As explained in detail in Mr. Rothenberg's opening motion, no evidence support the government's claim that the statements in these forms were material. Def. Rule 29 Motion  at 12-13. Indeed, SVB banker Frederick Kreppel testified he did not look at *any* Form 1003s when reviewing a loan generally, or when reviewing Mr. Rothenberg's loan specifically. Tr. Vol. 8 at 1362:13-15 ("Q. You don't look at the Form 1003 when you're reviewing the loan, right? A. No.").

The government complains about Mr. Rothenberg's "narrow reading of the evidence as to when the decision to make the mortgage loan occurred and the effect of false statements in his final Form 1003 and Financial Status Affidavit." Gov. Oppo. at 16-17. But materiality cannot be untethered from the specific statements themselves. The question here is whether the specific statements relaying information about Mr. Rothenberg's assets and liabilities—and importantly, the circumstances of how and when those statements are made—are material to the bank's decision to issue a mortgage. Under the unique circumstances of this case, that answer is no.

"The element of materiality is evaluated under an objective test" that looks at "the intrinsic capabilities of the false statements itself." *United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (quotation and citation omitted). The Ninth Circuit in *Lindsey* explained that a defendant could "disprove materiality through evidence of the lending standards generally applied in the mortgage industry" such as "testimony about the types of information, such as household income or assets, that lenders typically consider, as well as evidence of how much weight the industry generally gives to

---

[2] The capital call line of credit was funded on August 12, 2014, when SVB wired $297,000 into the bank account—also held by SVB—of Rothenberg Ventures Fund II. Exh. 85-034. Thus any statements made by Mr. Rothenberg when he signed the closing documents on August 21, 2014 were irrelevant to the bank's decision to fund the capital call line of credit.

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

9

1     *statements about such information.*" *Id.* at 1016 (emphasis added). In other words, the context and

2     circumstances surrounding the statements matters in determining the "intrinsic capabilities of the

3     false statements."

4        Here, the evidence the government built its entire case upon were the specific alleged

5     "statements" in the Form 1003 and financial status affidavit signed by Mr. Rothenberg on August 21,

6     2014. But by then the mortgage had already been approved and any statements in those forms would

7     have made no difference to SVB—or any lender for that matter—in deciding to issue the mortgage.

8     That is why the financial status affidavit informed a barrower would be in "default" if the borrower

9     gave false information, not that the borrower would be rejected for a loan. As noted earlier, Kreppel

10    testified he did not look at any Form 1003s when reviewing a loan generally, or when reviewing Mr.

11    Rothenberg's loan specifically. Unsurprisingly, the final loan approval sheets—completed before the

12    August 21, 2014 signing—did not repeat any of the incorrect financial information contained in the

13    Form 1003. Exh. 22-019, Exh. 23-009 (total liabilities of $1,603,067 or $736,509 when removing

14    existing mortgage on condominium). In other words, there is no evidence that SVB—or any other

15    bank—would rely on the statements contained in a Form 1003 or financial status affidavit, made at

16    the closing of a loan, in determining whether to issue a mortgage.

17       Ultimately, the government failed to prove that the statements in the Form 1003 or financial

18    status affidavit were material to any bank's decision to issue a loan. Because the government failed to

19    prove materiality, there was insufficient evidence to convict Mr. Rothenberg of making a false

20    statement to a bank as charged in Count Two.

21       **3.**      **There was insufficient evidence of a scheme or intent to defraud.**

22       Finally, the government failed to prove either a scheme or intent to defraud through the

23    allegedly false statements as required to convict Mr. Rothenberg of bank fraud as charged in Count

24    One, or that Mr. Rothenberg's purpose was to influence the bank as required to convict Mr.

25    Rothenberg of making an allegedly false statement to a bank as charged in Count Two.

26       Mr. Rothenberg's opening motion noted the movement of money in and out of the various

27    financial accounts was routine both before and after the loan application process. Def. Rule 29

28    Motion at 13-14. All the financial transactions were transparent and available to SVB had it wanted

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

10

1   to dig deeper. *Id.* at 14. Because Mr. Rothenberg was unaware of the bank's lending criteria, and

2   could have qualified for the loan under the circumstances as he understood them, there was no

3   incentive to misrepresent his financial situation, and thus no scheme to defraud or purpose to

4   influence the bank. *Id.* at 15.

5       The government's opposition first argues that the movement of money "both before and after

6   July 2014, does not mean that a jury could not rationally conclude that he took those actions in July

7   2014 to defraud SVB (even though he may have taken those actions on other dates for other reasons,

8   benign or not)." Gov. Oppo. at 19-20. But a "scheme to defraud" requires "property

9   deprivation…play more than some bit part in a scheme" but instead be the "*object* of the fraud."

10  *United States v. Yates*, 16 F.4th 256, 264 (9th Cir. 2021) (citations and quotations omitted) (emphasis

11  added). Movement of money motivated "for other reasons" than purportedly defrauding SVB means

12  that obtaining the mortgage and personal loan were not the "object" (or in the language of Count

13  Two, the purpose) of Mr. Rothenberg's actions.

14      Next, the government argues Mr. Rothenberg "attempted to hide his misappropriation from

15  Fund II and his shuttling of money through the RVMC account to his Bank of America and Merrill

16  Lynch accounts." Gov. Oppo. at 20. It claims that "without being able to see his full Bank of America

17  and Merrill Lynch statements, SVB would have been unable to do the analysis that the government

18  presented at trial regarding how Rothenberg used Fund II investor money to pay off his LMA." *Id.*

19      But Mr. Rothenberg did not know that SVB was not going to obtain any other financial

20  information about RVMC and his other financial accounts. In fact, the evidence showed that Mr.

21  Rothenberg authorized SVB in writing to get whatever financial records it wanted. Exh. 4-001. Had

22  SVB requested statements from Merrill Lynch or Bank of America or, most importantly, itself it

23  would have seen every single financial transaction the government claims were part of Mr.

24  Rothenberg's alleged scheme to defraud. If Mr. Rothenberg could reasonably believe the bank would

25  dig deeper into his finances if it wanted, conducting every single financial transaction emphasized by

26  the government openly is the antithesis of fraudulent intent.

27      There was insufficient evidence that Mr. Rothenberg had any scheme or intent to defraud the

28  bank or had the purpose of influencing the bank through deception when he signed the Form 1003

and financial status affidavit on August 21, 2014. As a result, a judgment of acquittal must be entered

on Counts One and Two.

### **CONCLUSION**

Mr. Rothenberg respectfully requests this Court grant him a judgment of acquittal on Counts

One and Two.


Dated:    February 3, 2023                          Respectfully submitted,

                                                    MOEEL LAH FAKHOURY LLP


                                                    Hanni M. Fakhoury
                                                    Attorneys for Michael Rothenberg

DEFENDANT'S REPLY TO U.S. OPPOSITION TO RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

12