THOMAS A. COLTHURST (CABN 99493)
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515

KATHERINE L. WAWRZYNIAK (CABN 252751)
Acting Chief, Criminal Division

BENJAMIN K. KLEINMAN (NYBN 5358189)
KYLE F. WALDINGER (CABN 298752)
NICHOLAS J. WALSH (CABN 314290)
Assistant United States Attorneys

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     Fax: (415) 436-7234
     Email: benjamin.kleinman2@usdoj.gov
     Email: kyle.waldinger@usdoj.gov
     Email: nicholas.walsh@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 20-00266 JST |
|     Plaintiff, | **UNITED STATES' MOTIONS *IN LIMINE*** |
|    v. | |
| MICHAEL BRENT ROTHENBERG, | Trial Date:     October 2, 2023, 8:00 a.m. |
|     Defendant. | Pretrial Hearing:  September 15, 2023, 2:00 p.m.<br>Court:     Hon. Jon S. Tigar, Courtroom 6 |

# TABLE OF CONTENTS

INTRODUCTION................................................................................................................1

THE ALLEGATIONS OF THE INDICTMENT..............................................................2

THE UNITED STATES' MOTIONS *IN LIMINE* ...........................................................4

    I.    MOTION *IN LIMINE* NO. 1: The Court Should Exclude Defense Evidence and Argument Suggesting that the Alleged Victims were Negligent in Either Granting Rothenberg's Loan Applications (as to SVB), Investing in River Studios (as to Pilot Grove/Transcend), or Investing in Rothenberg's Funds and Co-Fund (as to Various Investors). ...................................................................4

        A.    The "Materiality" Inquiry Under the Federal Fraud Statutes is an Objective One that is Focused on the Defendant's Statements and State of Mind; Reliance and Damages are not Elements of the Offense. .......................5

        B.    Rothenberg Should Be Precluded from Putting Forth Evidence or Argument that Silicon Valley Bank was Negligent with Respect to Rothenberg's 2015 Line of Credit Request or that the Individual and Entity Investors were Negligent in Deciding to Give Money to the Defendant................................................................................................7

    II.    MOTION IN LIMINE NO. 2: All Fact Witnesses Should Be Excluded from the Courtroom During the Trial Except for the IRS-CI Case Agent and the Government's Expert Witness. ...................................................................10

        A.    Special Agent Anthony Ghio.............................................................10

        B.    Expert Witness Forensic Accountant Gerald T. Fujimoto ..................12

    III.    MOTION IN LIMINE NO. 3: The Defendant Should Not Be Allowed to Reference Punishment in Front of the Jury...........................................14

    IV.    MOTION IN LIMINE NO. 4: The Defendant's Statements Should Be Admitted as Party-Opponent Admissions If Offered by the United States....................15

    V.    MOTION IN LIMINE NO. 5: The Court Should Admit Into Evidence Self-Authenticating Records And Documents Under Rules 902 And 803, Or In The Alternative Rule 807 ...................................................................19

        A.    Certified Records of Regularly Conducted Activity are Admissible...................19

        B.    Certified Public Records are Admissible.............................................20

        C.    The Records are Also Admissible Under Rule 807............................20

CONCLUSION................................................................................................................21

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

*Carpenter v. United States*,
4
    484 U.S. 19 (1987)....................................................................................................... 5

5

*In re Mendez*,
6
    No 06-1111, 2008 WL 597280 (Bankr. E.D.C.A. Feb. 29, 2008) ............................. 21

7

*In re Younie*,
    211 B.R. 367 (B.A.P. 9th Cir. 1997)........................................................................ 18

8

*Karme v. Comm'r*,
9
    673 F.2d 1062 (9th Cir. 1982) .................................................................................. 21

10

*Lemon v. United States*,
    278 F.2d 369 (9th Cir. 1960) ...................................................................................... 8

11

*Link v. Wabash R. Co.*,
12
    370 U.S 626 (1962)................................................................................................... 17

13

*Neder v. United States*,
14
    527 U.S. 1 (1999) ............................................................................................ 5, 6, 7, 8

15

*NLRB v. Friendly Cab Co., Inc.*,
    512 F.3d 1090 (9th Cir. 2008) .................................................................................. 17

16

*Rogers v. United States*,
17
    422 U.S. 35 (1975).................................................................................................... 14

18

*United States v. Alvarado*,
19
    647 F.2d 537 (5th Cir. 1981) .................................................................................... 11

20

*United States v. Barnwell*,
    2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017) ......................................................... 13

21

*United States v. Blixt*,
22
    548 F.3d 882 (9th Cir. 2008)...................................................................................... 6

23

*United States v. Bonds*,
24
    608 F.3d 495 (9th Cir. 2010) .................................................................................... 17

25

*United States v. Brandon*,
    50 F.3d 464 (7th Cir. 1995)...................................................................................... 18

26

*United States v. Colton*,
27
    231 F.3d 890 (4th Cir. 2000) ...................................................................................... 9

28

*United States v. Coyle,*
  63 F.3d 1239 (3d Cir. 1995) ............................................................................. 9

*United States v. Dolleris,*
  408 F.2d 918 (6th Cir. 1969) ........................................................................... 18

*United States v. Ellison,*
  704 Fed. Appx. 616 (9th Cir. 2017) ................................................................. 9

*United States v. Flores,*
   679 F.2d 173 (9th Cir. 1982) .......................................................................... 18

*United States v. Frank,*
  956 F.2d 872 (9th Cir. 1992) ........................................................................... 14

*United States v. Friedman,*
  593 F.2d 109 (9th Cir. 1979) ........................................................................... 21

*United States v. Grenier,*
  2006 WL 8449061 n.1 (N.D. Ohio Sept. 5, 2006) ..................................... 17, 18

*United States v. Halbert,*
  640 F.2d 1000 (9th Cir. 1981) ........................................................................... 6

*United States v. Harmon,*
  2010 WL 11519181 (N.D. Cal. July 1, 2010) ................................................. 18

*United States v. Jenkins,*
  633 F.3d 788 (9th Cir. 2011) ............................................................................. 6

*United States v. Kuzmenko,*
  775 Fed. Appx. 272 (9th Cir. 2019) ................................................................. 9

*United States v. Lewis,*
  67 F.3d 225 (9th Cir. 1995) ............................................................................... 5

*United States v. Lindsey,*
  850 F.3d 1009 (9th Cir. 2017) ....................................................................... 6, 8

*United States v. Little,*
  753 F.2d 1420 (9th Cir. 1984) ......................................................................... 10

*United States v. Matlock,*
   415 U.S. 164 (1972) ....................................................................................... 16

*United States v. McMlellan,*
  868 F.2d 210 (7th Cir. 1989) ........................................................................... 18

*United States v. Miller,*
  953 F.3d 1095 (9th Cir. 2020) ........................................................................... 5

*United States v. Olano,*
    62 F.3d 1180 (9th Cir. 1995) ........................................................................... 14

*United States v. Palamarchuk,*
    791 Fed. Appx. 658 (9th Cir. 2019) .................................................................. 9

*United States v. Pelullo,*
    964 F.2d 193 (3d Cir 1992) ............................................................................. 21

*United States v. Peterson,*
    538 F.3d 1064 (9th Cir. 2008) .......................................................................... 5

*United States v. Ray,*
    589 F. Supp. 2d  (S.D.N.Y. 2022) .................................................................. 13

*United States v. Reed,*
    726 F.2d 570 (9th Cir. 1984) ........................................................................... 14

*United States v. Rhynes,*
    218 F.3d 310 (4th Cir. 2000) ........................................................................... 11

*United States v. Rodriguez-Rodriguez,*
    840 F.2d 697 (9th Cir. 1988) ............................................................................ 6

*United States v. Seschillie,*
    310 F.3d 1208 (9th Cir. 2002) ......................................................................... 13

*United States v. Svete,*
    556 F.3d 1157 (11th Cir. 2009) ..................................................................... 6, 9

*United States v. Valencia-Riascos,*
    696 F.3d 938 (9th Cir. 2012) ....................................................................... 10, 11

*Weil v. Citizens Telecom Servs. Co., LLC,*
    922 F.3d 993 (9th Cir. 2019) ........................................................................... 17

**Statutes**

12 U.S.C. § 1819(b)(2) ........................................................................................... 7

28 U.S.C. § 515 ..................................................................................................... 2

Pub. L. 93-595, 88 Stat. 1926 (Jan. 2, 1975) ...................................................... 11

**Rules**

Fed. R. Evid. 615 ............................................................................................. 10, 11

Fed. R. Evid. 801(d)(2) ..................................................................................... 15, 16

Fed. R. Evid. 801(d)(2)(A) ................................................................................... 15

Fed. R. Evid. 807 ................................................................................................... 21

**INTRODUCTION**

Trial in this case is scheduled for October 2, 2023. The trial, in the most basic formulation, will center on how the defendant Michael Rothenberg fraudulently ran a group of companies he founded, including most importantly a venture capital company called Rothenberg Ventures Management Company, LLC ("RVMC"), and the venture capital funds managed by RVMC, as well as a group of other companies designed to further his interests in various other arenas such as a business accelerator and virtual reality content production. These companies were named River Accelerator, River Studios, and similar, and therefore formed a group of entities known collectively as the "River Ecosystem."

Rothenberg's alleged scheme to defraud ran throughout the time he raised money from investors and managed those investments through RVMC. Rothenberg regularly obtained money from investors after making misrepresentations to them about how he would use the investments in particular RVMC-managed Funds. Rothenberg regularly misused these funds in various ways and for various purposes, including to fund his personal business ventures in the River Ecosystem and RVMC's substantial expenditures on employees and events. All the while, Rothenberg employed various deceptive acts and practices to hide his misappropriation and misuse of investor funds, including by commingling money and by moving money between various entities and bank accounts (including Rothenberg's personal accounts) whenever those funds were needed for particular purposes, all without regard to the true ownership of such money. The United States alleges that Rothenberg misappropriated more than $18 million through his scheme to defraud.

In October, the Court will try the offenses charged in Counts Three through Twenty-Three of the Indictment. Those charges encompass a broad range of allegedly criminal conduct by Rothenberg with respect to (1) his solicitation and acceptance of millions of dollars in 2015 and 2016 of investor funds into various venture capital funds and other proposed investments that he managed as a fiduciary through RVMC (Counts Twelve through Twenty-Three); (2) his solicitation and acceptance in 2015 and 2016 of a $2 million investment into a virtual reality production company (River Studios) that Rothenberg purported to own (Counts Five through Seven) and money laundering allegations that relate to that scheme (Counts Eight through Eleven); and (3) an application that Rothenberg made in December 2015 to Silicon Valley Bank ("SVB") for a loan for RVMC (Counts Three and Four). The

Indictment alleges that, in each of these instances, Rothenberg made material misrepresentations to the investors or to SVB in order to obtain the funds at issue, and that he did so with the intent to defraud.

The parties are set to appear on September 15, 2023, at 2:00 p.m., for the Pretrial Conference. In advance of that Pretrial Conference, and based on the schedule previously set by the Court, Dkt. 236, the government now files the United States' Motions *in Limine*.

## THE ALLEGATIONS OF THE INDICTMENT

*Counts Three and Four* of the Indictment allege that the defendant Michael Brent Rothenberg engaged in a scheme to defraud, and made false statements to, Silicon Valley Bank ("SVB"). Those charges relate to a revolving line of credit that Rothenberg applied for and received from SVB for Rothenberg's company RVMC in December 2015. That line of credit was secured by $4.25 million in cash that Rothenberg agreed to be placed in a collateral account. On December 30, 2015, RVMC and Rothenberg took an advance on that line of credit in the amount of $4 million. *See* Indict. (Dkt.15) ¶¶ 32 & 33. Count Three alleges that Rothenberg engaged in a scheme to defraud SVB in 2015 related to this line of credit. Among other things, the government expects the evidence at trial to show that Rothenberg made numerous misrepresentations to SVB, including (1) falsely leading SVB employees to believe that all of the funds in the $4.25 million collateral account represented the fees prepaid to RVMC by investors in the 2015 Fund managed by RVMC; (2) misrepresenting the amount of additional fees that RVMC was due to receive from the 2015 Fund; and (3) falsely leading SVB employees to believe that RVMC had not already taken all of the fees it was due from the fund. *See* Indict., ¶ 33. In truth, the government expects the evidence to show that RVMC had already taken all of the funds that it would ever be due from the 2015 Fund over the entire life of the Fund. Furthermore, it expects the evidence to show that the Rothenberg obtained the funds to put into the $4.25 million collateral account from various sources that did not constitute prepaid fees, including the venture capital funds then named Fund I and Fund II. The bank fraud charge in Count Three is accompanied by Count Four, which alleges that Rothenberg made false statements to SVB regarding his application for that line of credit.

*Counts Five through Seven* of the Indictment allege that Rothenberg engaged in a scheme to defraud an entity named Pilot Grove Management, LLC (identified in the Indictment as "P LLC"). Those charges allege that Rothenberg fraudulently induced Pilot Grove (through an LLC it created

called Transcend VR) to invest $2 million into a company controlled by, and allegedly owned and "self-funded" by, Rothenberg. That company was named Bend Reality, which did business as River Studios. Indict., ¶¶ 9-10 & 37. The United States will present evidence at trial to show that Rothenberg made material misrepresentations to Pilot Grove about the uses to which River Studios would put any capital raised and about how River Studios' operations had been funded in the past. *See id.* ¶¶ 38.a, 38.c & 38.d. The evidence will show that, in fact, much of River Studios' operations had not been "self-funded" by Rothenberg and that significant amounts of venture capital fund money – investors' money – had paid for its operations and expenses. Moreover, the evidence will show that Rothenberg never intended to use Pilot Grove's investments for the purposes he had represented. Indeed, the evidence will show that, on the day that Pilot Grove's $2 million investment was deposited into River Studios' bank account, Rothenberg sent approximately $1.7 million of these funds to his personal bank account and that, from there, he transferred most of those funds through RVMC's account to Fund I and Fund II, as repayment for the money that had been taken from those funds to help create the collateral account discussed above. The interstate wire transmissions alleged in the Indictment consist of two emails sent by Rothenberg to Pilot Grove and the wire transfer of funds sent to River Studios by Transcend.

**Counts Twelve through Fifteen** of the Indictment allege that Rothenberg engaged in a scheme to defraud potential investors in a "Co-Fund," the intended purpose of which was to purchase pre-IPO shares of the software company Unity Software, Inc., doing business as Unity Technologies (identified in the Indictment as "Software Company"). The Indictment alleges that Rothenberg fraudulently obtained about $1.3 million of investor money based on false representations that the investors' money would be used to purchase Unity Technologies shares. *See* Indict. ¶ 43. The Indictment goes on to allege that, instead of using the funds as had been represented, Rothenberg used those funds for other purposes. *Id.* The interstate wire transmissions alleged in the Indictment consist of transfers of funds from four alleged victims to a Rothenberg Ventures Co-Fund bank account. Similar to the Pilot Grove transaction, the evidence will show that, shortly after Rothenberg received many of these funds, he transferred them out of the Co-Fund bank account to the bank accounts of other entities that he controlled.

**Counts Sixteen through Twenty-Three** allege a scheme to defraud two of the venture capital

funds managed by RVMC, as well as certain investors in those funds.  In short, Rothenberg is alleged to have defrauded the 2015 Fund, the 2016 Fund, and investors into those two funds by making misrepresentations about the uses to which he would put capital invested in the funds.  *See* Indict. ¶ 48.a. The interstate and/or foreign wire communications at issue in Counts Sixteen through Twenty-Three all are transfers of funds from investors to a Rothenberg Ventures Fund bank account.

## THE UNITED STATES' MOTIONS *IN LIMINE*

I.   **MOTION *IN LIMINE* NO. 1: The Court Should Exclude Defense Evidence and Argument Suggesting that the Alleged Victims were Negligent in Either Granting Rothenberg's Loan Applications (as to SVB), Investing in River Studios (as to Pilot Grove/Transcend), or Investing in Rothenberg's Funds and Co-Fund (as to Various Investors).**

The evidence at trial will establish that, in December 2015, Rothenberg made materially false and/or fraudulent representations to SVB, or otherwise misled SVB regarding certain material matters, all as part of his application for a revolving line of credit for Rothenberg's company RVMC.  Similarly, the evidence will show that Rothenberg made numerous material misrepresentations to individuals and entities through 2015 to mid-2016 who were considering making investments into either a company that Rothenberg purported to own (River Studios) or various venture capital funds managed by RVMC, *i.e.*, the 2015 Fund, the 2016 Fund, and the Unity Co-Fund.

The United States moves the Court to preclude Rothenberg from arguing, or introducing evidence suggesting, the following:

> Silicon Valley Bank (and its employees) and the various individual and entity investors (and their employees or agents) should have been more diligent in their dealings with the defendant, or the defendant's scheme to defraud or false statements could only have deceived a negligent, gullible, or incompetent lender or investor.

Rothenberg should be precluded from advancing such a defense because, as set forth in detail below, it is clearly not recognized at law.  Evidence and argument that SVB or any of the investors were negligent rests on the faulty premise that Rothenberg's false statements could not have been "material" because SVB would have extended the line of credit – and that the investors would have made the investments – even if they had been aware of Rothenberg's false statements and misleading misrepresentations. However, evidence that a lender or investor may have been negligent in making a loan or investment decision is irrelevant because the Ninth Circuit's test for materiality focuses on the *defendant's* – not the

lender's or investor's – mental state and does not require proof that the lender or investor actually relied on the defendant's false statements.  As a matter of law, a lender's or an investor's negligence is not a defense to a fraud charge.  Indeed, it is well-settled that the common-law fraud concepts of "reliance" and "damages" are not subsumed in the federal fraud statutes, and it is no defense to a fraud charge that the victim did not rely on the defendant's misrepresentations or did not suffer any damages.

These points are set out in more detail below.

The United States notes that it brought a similar motion *in limine* prior to the trial held in October and November 2022.  *See* Dkt. 143.  The Court granted that motion.  *See* Dkt. 157; *see also* Dkt. 168, at 18-19 (transcript of pretrial conference).

A.    **The "Materiality" Inquiry Under the Federal Fraud Statutes is an Objective One that is Focused on the Defendant's Statements and State of Mind; Reliance and Damages are not Elements of the Offense.**

To prove the fraud charges in the Indictment, the United States must show (among other elements) that Rothenberg's statements were "material."  Materiality is objectively measured as whether the statements "had a natural tendency to influence, or were capable of influencing, a person to part with money or property."  9th Cir. Model Crim. Jury Instr. 15.35; *see also* 9th Cir. Model Crim. Jury Instr. 15.39 ("had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property"); *Neder v. United States*, 527 U.S. 1, 16 (1999) (statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed") (citations omitted).[1]  Because "capable of influencing" is an objective inquiry, the test looks at the false statement's "intrinsic capabilities" and not to "the possibility of the actual attainment" of the false statement's intended ends.  *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (citation omitted).  In the context of a bank fraud case, for a statement to be "material," it "need only have the propensity or capacity to influence or affect [a lender's] decision."

---

[1]  Because the mail, wire, and bank fraud statutes contain "highly similar language," courts apply the reasoning in cases interpreting one of those statutes to cases involving any other of those statutes. *See United States v. Miller*, 953 F.3d 1095, 1102 n.7 (9th Cir. 2020); *see also United States v. Lewis*, 67 F.3d 225, 233 n.12 (9th Cir. 1995) ("Cases interpreting the mail fraud statute are relevant in construing the wire and bank fraud statutes."); *accord Neder*, 527 U.S. at 20-21 (explaining that "scheme or artifice to defraud" is interpreted analogously in wire, mail, and bank fraud statutes); *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here.").

*United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (quoting *United States v. Rodriguez-Rodriguez*, 840 F.2d 697, 700 (9th Cir. 1988) (bracketed text added by *Lindsey*). Thus, the materiality inquiry in this case turns on Rothenberg's statements and state of mind and not on those of the bank that extended Rothenberg a line of credit or of the investors that gave him money.

As the Ninth Circuit noted in *Lindsey*, this objective focus of the materiality inquiry also means that "the government does not have to prove actual reliance upon the defendant's misrepresentations" in order to establish that those misrepresentations were material. *Lindsey*, 850 F.3d at 1014 (quoting *Neder*, 527 U.S. at 25); *see also United States v. Jenkins*, 633 F.3d 788, 802 n.3 (9th Cir. 2011) ("There is no requirement that the statements actually influence those to whom they are addressed."); *United States v. Blixt*, 548 F.3d 882, 889 (9th Cir. 2008) ("The Supreme Court has confirmed that the government need not prove reliance to establish materiality."). The relevant question is the objective tendency or capability of a false statement to influence a decision, not the subjective or actual reliance on that statement by the victim. That is because the focus of fraud statutes "like any criminal statute, is on the violator, [and] the purpose of the element of materiality is to ensure that a defendant actually intended to create a scheme to defraud." *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009); *see also Blixt*, 548 F.3d at 889 ("'A misrepresentation may be material without inducing any actual reliance. What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose.'") (quoting *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981)).

As noted above, the Ninth Circuit in *Lindsey* relied on the Supreme Court's decision in *Neder*. In *Neder*, the Court held that materiality was an essential element of the federal fraud statutes. In so holding, however, the Court noted that "the government does not have to prove actual reliance upon the defendant's misrepresentations." *Neder*, 527 U.S. at 24-25 (quotations omitted). The Court explained that the federal criminal fraud statutes "did not incorporate *all* the elements of common law fraud. The common-law requirements of 'justifiable reliance' and 'damages,' for example, plainly have no place in the federal fraud statutes. . . . By prohibiting the 'scheme to defraud,' rather than the completed fraud, the elements of reliance and damage would clearly be inconsistent with the statutes Congress enacted." *Id.* In this regard, the proof required to establish criminal fraud under the mail fraud and wire fraud statutes is entirely different than proving fraud in a civil case. *See id.*

As set forth below, courts have routinely affirmed district court rulings precluding testimony relating to the question of whether the defendant's fraudulent statements actually misled the intended victim, as well as whether the alleged victim was negligent or careless with respect to the defendant.

**B.** **Rothenberg Should Be Precluded from Putting Forth Evidence or Argument that Silicon Valley Bank was Negligent with Respect to Rothenberg's 2015 Line of Credit Request or that the Individual and Entity Investors were Negligent in Deciding to Give Money to the Defendant.**

The government anticipates that Rothenberg may attempt to argue and introduce evidence suggesting that SVB engaged in careless lending practices, or that SVB or the individual and entity investors into River Studios or various funds could have prevented the fraud had they exercised more care. (The government also anticipates that Rothenberg may attempt to argue and introduce evidence that SVB's actions with respect to the loan at issue had a deleterious effect on him, which he will argue is somehow relevant to the question of whether he schemed to defraud SVB in the first place.)

Although Rothenberg has not disclosed the theory of his defense, the government anticipates that Rothenberg may seek to argue that, at least with respect to SVB, SVB did not properly underwrite his line of credit, titled the collateral account in the wrong name, moved funds without permission, or otherwise made mistakes that later caused negative consequences for Rothenberg. The government believes this because, with respect to the very loan transaction at issue in Counts Three and Four, Rothenberg has made just such allegations in the past. Specifically, in a state court civil complaint that he filed against SVB in 2018, Rothenberg pointed to "Silicon Valley Bank's circumvention of internal controls to engage in an unauthorized financial transaction" with him, alleging that the bank's actions caused damages in excess of $100 million. Ex. 1, ¶ 1. Rothenberg then went on to allege two causes of action grounded in negligence. *See id.*, ¶¶ 34-38 & ¶¶ 49-53.[2] Similarly, in the SEC litigation before

---

[2] After SVB's failure in March 2023, the FDIC as receiver removed Rothenberg's civil case against SVB (and SVB's cross action against Rothenberg) from state court in Santa Clara County to federal court, pursuant to 12 U.S.C. § 1819(b)(2). This Court found both civil actions related to this case, and they are now pending before the Court. *See Rothenberg v. FDIC*, CV 23-01603 JST, Dkt. 14 (related case order); *FDIC v. Rothenberg*, CV 23-01606 JST, Dkt. 15 (same).

The government does not intend to present any evidence or argument that Rothenberg's alleged fraud contributed to SVB's failure in March 2023. In line with this motion, the government also assumes that the defendant will not argue or present evidence suggesting that SVB's failure earlier this year serves as a defense to the fraud and false statement offenses alleged to have occurred in late 2015.

this Court, Rothenberg contended that the "root cause of the SEC's investigation" into him (which ultimately led to the SEC's case against him and his removal from the helm of RVMC) was "based on SVB's fraud." Ex. 2 (Rothenberg Opp. to Mtn. for Disgorgement), at 16; *see also id.* at 18-19 ("SVB's fraud sowed the seeds of mistrust and panic among the ranks of the firm and ultimately snowball[ed] into a misguided regulatory inquiry of an exempt investment advisor that would inevitably result in the SEC claiming at least some sort of technical infraction in order to procure or force a settlement."). Accordingly, Rothenberg has developed a track record of alleging negligence, fraud, or other wrongdoing on the part of SVB with respect to the very loan transaction at issue here.  It is not a leap to conclude that he may argue in this criminal trial that SVB was negligent with respect to that transaction.

The Court should exclude any such argument and evidence regarding SVB's alleged negligence. Because SVB's failure to detect the fraud does not tend to prove or disprove any element of the charged offenses, whether it acted negligently is irrelevant to whether Rothenberg committed fraud.

Moreover, similar argument and evidence should be excluded regarding the investors into River Studios (Counts Five through Seven), the proposed Unity Co-Fund investment (Counts Twelve through Fifteen), and the 2015 Fund and 2016 Fund (Counts Sixteen through Twenty-Three).

*As an initial matter*, the Ninth Circuit has squarely held that "a victim's negligence is not a defense to wire fraud." *Lindsey*, 850 F.3d at 1015; *id.* ("Evidence of lender negligence is thus not admissible as a defense to mortgage fraud."); *see also Lemon v. United States*, 278 F.2d 369, 373 (9th Cir. 1960) ("It is immaterial whether only the most gullible would have been deceived by this technique. Section 1341 [the mail fraud statute] protects the naive as well as the wor[l]dly-wise, and the former are more in need of protection than the latter.  As a matter of fact, '* * * the lack of guile on the part of those solicited may itself point with persuasion to the fraudulent character of the artifice.'") (citations omitted).  Because of the objective nature of the materiality inquiry, the *Lindsey* court held that, while "evidence of the general lending standards applied in the mortgage industry is admissible to disprove materiality," "evidence of individual lender behavior is not admissible for that purpose." *Id.* at 1012.[3] The Ninth Circuit has since reaffirmed this holding regarding the irrelevance of evidence of negligence.

---

[3]  Indeed, in *Lindsey*, the court held that even a lender's "*intentional* disregard of relevant information is not a defense" and that evidence of such intentionality was inadmissible. *See, e.g., id.* at 1016 (emphasis added).

*See, e.g.*, *United States v. Palamarchuk*, 791 Fed. Appx. 658, 660 (9th Cir. 2019) ("neither individual victim lender negligence nor an individual victim lender's intentional disregard of relevant information is a defense to mail fraud") (citing *Lindsey*); *United States v. Kuzmenko*, 775 Fed. Appx. 272, 274 (9th Cir. 2019) ("neither individual victim lender negligence [n]or an individual victim lender's intentional disregard of relevant information are defenses to wire fraud") (citing *Lindsey*); *United States v. Ellison*, 704 Fed. Appx. 616, 620 (9th Cir. 2017) ("[B]ecause materiality is determined objectively, . . . a victim's negligence is not a defense.") (citing *Lindsey*).  The Ninth Circuit is not alone in so holding. *See, e.g.*, *Svete*, 556 F.3d at 1165 ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."); *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("The susceptibility of the victim of the fraud, in this case a financial institution, is irrelevant to the analysis . . . ."); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct.").

*Second*, the Court could not admit evidence or allow argument regarding what SVB or the investors should have done in the face of Rothenberg's statements (as opposed to evidence of whether those statements had the capability of influencing decisions) without accepting the faulty premise that the materiality element requires proof of actual reliance.  Applying the cases discussed above, whether SVB or the investors should have given Rothenberg money or should have known of Rothenberg's false statements in light of his behavior towards them or his reputation as a "party animal," *see* Ex. 3, is irrelevant because the materiality element does not require proof of actual reliance on their part.  And because the materiality element focuses on the intent of the individual who made the false statements – and not the party to which the statements were addressed – the law does not permit Rothenberg to shift the jury's focus away from himself and to the lender or investors.

*In sum*, the Court should exclude evidence or argument that SVB or the investors were negligent and that Rothenberg's false statements were immaterial either because SVB and the investors would have given Rothenberg the funds even if they had been aware of his false statements, or because SVB and the investors negligently failed to root out the defendant's misrepresentations.  Even if SVB or the investors were at fault for not identifying the defendant's false statements – which they were not – such evidence would still be irrelevant and immaterial, and it could not provide any defense to the charged

fraud schemes in Count Three, Counts Five through Seven, and Counts Twelve through Twenty-Three.

## II.   MOTION IN LIMINE NO. 2: All Fact Witnesses Should Be Excluded from the Courtroom During the Trial Except for the IRS-CI Case Agent and the Government's Expert Witness.

Pursuant to Federal Rule of Evidence 615, witnesses are generally excluded from trial, except when testifying, "so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. Pursuant to Rule 615, the government moves the Court for an order excluding all fact witnesses from the trial, except when testifying, with two exceptions. Specifically, two of the exceptions set out in subsections (a) through (d) of Rule 615 apply to individuals the United States may call as witnesses at trial.

### A.   Special Agent Anthony Ghio

The government requests that its witness Internal Revenue Service – Criminal Investigation ("IRS-CI") Special Agent Anthony Ghio be allowed to be present in the courtroom prior to his testimony. Agent Ghio has been assigned by IRS-CI as a case agent in this matter. In addition, Special Agent Jennifer Barnard and Special Agent Charles Wescott have been assigned by the Federal Bureau of Investigation ("FBI") as the FBI case agents. Agent Barnard and Agent Wescott are not expected to testify at trial, but Agent Ghio may testify as to business records, bank records, and/or other records obtained by the government during the course of its investigation, as well as regarding certain transactions set out in those records. Agent Ghio should be allowed to be in the courtroom prior to his testimony because one or more of the exceptions provided for in Rule 615 apply here.

Under Federal Rule of Evidence 615(b), an "employee of a party that is not a natural person, after being designated as the party's representative by its attorney" is excepted from Rule 615's exclusion provisions. Here, IRS-CI is one of the law enforcement agencies participating in this case in support of the government's prosecution, and Agent Ghio is the assigned IRS-CI case agent. The United States designates Agent Ghio as its representative for purposes of the upcoming trial and requests permission for him to be present in the courtroom during the testimony of other witnesses, and before his own testimony, pursuant to Rule 615(b). *See United States v. Valencia-Riascos*, 696 F.3d 938, 941 (9th Cir. 2012) ("The advisory committee's notes . . . make clear that subsection (b) applies to investigative officers or 'case agents' designated on behalf of the prosecution in criminal cases."); *see also United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1984) (finding that "case agent was exempt

from sequestration" under Rule 615(2) and (3)); *see also* Pub. L. 93-595, § 1, Jan. 2, 1975, 88 Stat.

1926, 1935 (showing that Rule 615 employed numbered – as opposed to lettered – subsections at time of

*Little*); *accord United States v. Rhynes*, 218 F.3d 310, 318 n.8 (4th Cir. 2000) ("In criminal cases the[]

exceptions [to Rule 615's sequestration requirement] are applied to allow the prosecution's case agent to

remain at counsel table with the prosecutor, hear the other witnesses testify, and nevertheless testify on

behalf of the prosecution.  In this very case, moreover, the district court's sequestration order

specifically exempted the Government's FBI case agent as well as its summary witness.").[4]

Furthermore, Rule 615(c) provides that "a person whose presence a party shows to be essential to

presenting the party's claim" should not be ordered excluded from the court during trial.  In this case,

Agent Ghio has been assigned to this matter since approximately August 2021, has participated and will

participate in the interviews of numerous witnesses, and is otherwise extensively familiar with the facts

of this case, the expected testimony of witnesses, and the expected documentary evidence.  The

upcoming trial will consist of hundreds of exhibits and many witnesses.  Given the complexity of the

case and volume of the courtroom evidence, it is extremely important for Agent Ghio to be able to be

present in the courtroom so that he may observe the proceedings, participate effectively in witness

preparation sessions, conduct additional investigation and research while the trial is ongoing based on

the testimony in the courtroom, and otherwise assist the prosecutors in preparing their summation.  He

is also therefore essential to the presentation of the government's case.  In any event, Agent Ghio is

already deeply familiar with the expected testimony of witnesses and the expected documentary

evidence, and he will have to learn about the testimony of witnesses during the course of the trial in

order to serve as a case agent to effectively support the prosecution.  Because of his role in the case and

the trial, excluding Agent Ghio so that he "cannot hear other witnesses' testimony," Fed. R. Evid. 615, is

---

[4] Although the *Valencia-Riascos* court "observe[d] that it may be a good practice to require case agent witnesses to testify first," the court "decline[d] to adopt a presumption that would deprive the prosecution of the opportunity to present its own case without interference."  696 F.3d at 943.

The government also notes that at least one Court of Appeals has suggested that the government may designate *more* than one case agent as a representative.  *See United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir. 1981) ("The appellants have misconstrued the rule by stating that it allows only one agent to be excused from its purview.  We find that the decision as to how many will be excused from sequestration is just as discretionary with the trial judge as who will be excused.").  Accordingly, it is arguable that Agent Wescott and Agent Barnard could also be designated under Rule 615(b), but the United States is not requesting that ruling from the Court.

somewhat of a meaningless gesture.

Because Agent Ghio has been designated as the United States' representative, he should be excluded from the sequestration order under Rule 615(b). A separate and additional basis for excluding Agent Ghio from the sequestration order is that his presence is essential to presenting the government's case under Rule 615(c).

### B. Expert Witness Forensic Accountant Gerald T. Fujimoto

The government also requests that the Court's sequestration order exclude forensic accountant Gerald T. Fujimoto, who has been retained and noticed by the United States as an expert witness in this matter. As the Court may recall, Mr. Fujimoto was also retained by the SEC in the parallel civil action brought by the Commission against Rothenberg. Mr. Fujimoto's prior expert report in that case was submitted to the Court. *See SEC v. Rothenberg*, CV 18-05080 JST, Dkt. 84 (Fujimoto Declaration attaching prior Fujimoto Expert Report.) Although it is unlikely that Mr. Fujimoto will observe the entirety of the trial in this case, he may wish to observe the testimony of some of the witnesses in order to, for example, confirm certain facts upon which he relied in forming the opinions expressed in his expert report. The United States expects that Mr. Fujimoto will testify regarding various matters, including (1) his analysis of the amount of money taken by RVMC from the various funds over and above what it was due in management and administrative fees; (2) the source of the money Rothenberg used to fund the collateral account securing the SVB line of credit; (3) the funding sources for River Studios (which Rothenberg represented to Pilot Grove had been "self-funded"); (4) the disposition and use of funds obtained from investors in the various Funds and River Studios; and (5) the source of the money Rothenberg used to repay certain investors, among other topics. Mr. Fujimoto's testimony will rely in large part on the banking, financial, and accounting records admitted at trial, in addition to correspondence and other business records evidence.

As noted above, Rule 615(c) provides that "a person whose presence a party shows to be essential to presenting the party's claim" should not be ordered excluded from the court during trial. In this case, Mr. Fujimoto has been retained by the government to serve as a testifying expert witness at trial. Toward this end, the government provided the Indictment to Mr. Fujimoto and made voluminous bank, accounting, and other business records and correspondence available to him for his analysis and

review.  Based on his review of all of these materials, Mr. Fujimoto produced an expert report to the U.S. Attorney's Office that addresses facts surrounding the bank fraud and wire fraud charges that will be the subject of the upcoming trial.  Based on his review, Mr. Fujimoto is already familiar with much of the financial records, Fund documents, and email correspondence that will be presented at trial.

The Ninth Circuit has recognized that, "[i]n many circumstances, a potential expert witness will be an 'essential party' within the meaning of Rule 615(3) [now Rule 615(c)].  The Advisory Committee Notes to Rule 615(3) contemplate as much, stating that the exception includes 'an expert needed to advise counsel in the management of litigation.'"  *United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002).  *But see id.* (declining to conclude "that an expert witness will *always* meet the criteria of Rule 615(3)" and noting that some expert witnesses may give "factual testimony").  Here, it is essential that Mr. Fujimoto be acquainted with the trial testimony and evidence because his opinions presented at trial will rely on the testimony and evidence admitted.  *See United States v. Ray*, 589 F. Supp. 2d 298 (S.D.N.Y. 2022) (Liman, J.) (permitting IRS agent to be present for trial testimony).  Moreover, as other courts have "cogently noted," "the presence of the summary witness at trial can only make her testimony more accurate for the jury and all participants at trial by 'ensur[ing] she only comments on evidence properly admitted at trial.'"  *Ray*, 589 F. Supp. 2d at 301-02 (citing *United States v. Barnwell*, 2017 WL 1063457, at *3 (S.D.N.Y. Mar. 20, 2017) (Román, J.)).

Accordingly, pursuant to Rule 615(c), the government requests that Mr. Fujimoto be allowed to be present in the courtroom prior to any testimony that he may give because he is essential to presenting the government's case.

\*     \*     \*

For the reasons set forth above, the United States respectfully requests an order excluding all fact witnesses from the trial, except when testifying, with the exception of IRS-CI Special Agent Anthony Ghio and Forensic Accountant Gerald T. Fujimoto.  Agent Ghio and Mr. Fujimoto should be excluded from the sequestration order and should be allowed to observe all portions of the trial.[5]

---

[5]  As noted above, FBI Special Agent Jennifer Barnard and FBI Special Agent Charles Wescott also are case agents working on the case.  Although the government anticipates that only one or two case agents will sit at counsel table at any one time during the trial proceedings, it is likely that all three agents will be in the courtroom during and throughout the trial.

1  **III.     MOTION IN LIMINE NO. 3: The Defendant Should Not Be Allowed to Reference
2           Punishment in Front of the Jury.**

3         The United States respectfully moves to preclude as irrelevant and prejudicial any reference by

4  the defense to the defendant's potential sentence or punishment during all phases of the trial (including

5  jury selection; opening statements; examination of witnesses, including of the defendant if he elects to

6  testify; and summation).

7         References to penalties could be as overt as "You understand the defendant will spend at least

8  several years in prison if convicted," or as subtle as "the defendant is facing a lot of time," "this case has

9  serious consequences for the defendant," "your decision will have consequences for a long time to

10 come," or "the defendant's liberty is at stake in this trial."  Once the jury hears anything about

11 punishment, the "bell" cannot be un-rung or the damage neutralized by a curative instruction.

12        "It has long been the law that it is inappropriate for a jury to consider or be informed of the

13 consequences of their verdict."  *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992); *see also*

14 *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no

15 sentencing function and should reach its verdict without regard to what sentence might be imposed");

16 *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (trial judge properly instructed jury that the

17 "punishment provided by law for the offenses charged in the indictment are matters exclusively within

18 the province of the court. It should never be considered by the jury in any way in arriving at an impartial

19 verdict as to the guilt or innocence of the accused").

20        Information about penalties draws the attention of the jury away from its chief function as the

21 trier-of-fact.  *See United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995).  Argument and evidence

22 about punishment opens the door to compromise verdicts and confuses the issues to be decided.  *Id.*

23 Simply put, "it is inappropriate for a jury to consider or be informed of the consequences of their

24 verdict."  *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991).  The Ninth Circuit Rule Committee

25 has recognized this principle by prohibiting the jury from considering punishment in deciding whether

26 the government has proved its case against the defendant beyond a reasonable doubt.  9th Cir. Model

27 Crim. Jury Instr. § 7.4 (2010) ("The punishment provided by law for this crime is for the court to decide.

28 You may not consider punishment in deciding whether the government has proved its case against the

1  defendant beyond a reasonable doubt.").

2       There is only one reason why the defendant would want the jury to hear information about the

3  sentence that he might face if convicted: to hope that at least one juror will think that the potential

4  sentence that he faces is too long, and that because of that potential penalty, at least one juror will acquit

5  him even though he is guilty.  The Court should therefore prohibit the defense from making reference to

6  punishment in the presence of the jury at any point in these proceedings.

7  **IV.    MOTION IN LIMINE NO. 4: The Defendant's Statements Should Be Admitted as Party-Opponent Admissions If Offered by the United States.**

8

9       The United States respectfully moves the Court, pursuant to Fed. R. Evid. 801(d)(2), for an

10 Order that the prior statements of Rothenberg are admissible if offered against him by the United States.

11      **A.    Rothenberg's Statements are not Hearsay.**

12      The United States intends to offer numerous statements made by Rothenberg in its case-in-chief.

13 His statements may include the following categories:

14            1.    Written statements made or adopted by Rothenberg in emails and their attachments, text messages or other direct messages, letters, and other correspondence;

15

16            2.    Oral statements made by Rothenberg to other individuals, including audio-recorded statements;

17

18            3.    Statements made by Rothenberg in third-party records, such as business registration, contracts, bank records and loan documents, and other business account documents;

19

20            4.    Statements made by or on behalf of Rothenberg in depositions in civil cases, in case filings made by Rothenberg on his own behalf, and in submissions to the SEC, including statements made by the defendant regarding warrant sales to the 2015 and 2016 Funds in his court filings, his SEC deposition, and in his *Wells* submission presented to the SEC.

21

22

23 A statement is not hearsay if the statement "is offered against an opposing party and . . . was made by

24 the party in an individual or representative capacity."  Fed. R. Evid. 801(d)(2)(A).  Furthermore, Rule

25 801(d)(2) provides that statements "the party manifested that it adopted or believed to be true,"

26 statements made by a person whom the party authorized to make a statement on the subject," and

27 statements "made by the party's agent or employee on a matter within the scope of that relationship and

28 while it existed" are not hearsay.  *See* Fed. R. Evid. 801(d)(2)(B)-(D).  Under these principles, the

statements listed above that were made by or on behalf of Rothenberg are not hearsay and are admissible pursuant to Fed. R. Evid. 801(d)(2).  *See, e.g.*, *United States v. Matlock*, 415 U.S. 164, 172 (1972). Accordingly, if relevant, the statements are admissible if offered by the United States against Rothenberg under Rule 801(d)(2).

### B.    Rothenberg's Statements in his *Wells* Submission to the SEC are Admissible.

One of the categories of statements listed above is the *Wells* submission made to the SEC on behalf of the defendant.  Specifically, Rothenberg, through counsel, made a *Wells* submission to the SEC on April 27, 2018, and a revised *Wells* submission on June 1, 2018.  In addition to statements made directly in the *Wells* memoranda, those submissions also included numerous documents which were submitted as exhibits to the *Wells* memoranda to the SEC.  These documents included (1) Warrants Agreements that RVMC had acquired in companies that participated in the River Accelerator program and (2) Warrant Purchase and Sales Agreements documenting RVMC's exercise of the warrants and sale of the warrants to the 2015 Fund on December 31, 2016.  Rothenberg's attorneys provided this information and materials to the SEC in order to show the SEC that Rothenberg and RVMC had, among other things, provided value to the 2015 Fund by exercising the warrants that RVMC had in the portfolio companies and providing ownership of those investments to the 2015 Fund, and that that value corresponded to at least some of the excess fees that RVMC had taken from the 2015 Fund.  The United States may seek to introduce at trial the portion of the *Wells* memorandum that contains representations regarding the Warrant Agreements and Warrant Purchase and Sales Agreements, and the associated Warrant Agreements and Warrant Purchase and Sales Agreements, all as a statement of a party-opponent.

### 1.    The *Wells* Process

A *Wells* submission is part of a formalized SEC process through which targets of investigations may provide information to the SEC.[6]  As one court explained,

> [a]fter a prospective defendant is given notice of the [SEC's] positions regarding SEC enforcement actions, a *Wells* letter gives the potential defendant an opportunity to respond to the staff allegations with a written statement to the Commission.  Under the *Wells* procedure, targets "may, on their own initiative, submit a written statement to the Commission

---

[6] The *Wells* notice is named after the Wells Committee, which reviewed the enforcement practices of the SEC.  *See* www.sechistorical.org/museum/galleries/enf/enf03a_wells-commission.php.

setting forth their interests and position in regard to the subject matter of
the investigation."

*United States v. Grenier*, 2006 WL 8449061, at *1 n.1 (N.D. Ohio Sept. 5, 2006) (citing 17 C.F.R.
§ 202.5(c)).  Additional information about the *Wells* process is found in the SEC's Enforcement Manual.
*See* www.sec.gov/divisions/enforce/enforcementmanual.pdf.

### 2. The *Wells* Submission Pertaining to the Warrants is Admissible under Rule 801(d)(2)(D) as a Statement Made by Rothenberg's Agent.

The Ninth Circuit has explained that, "[u]nder Federal Rule of Evidence 801(d)(2)(D), a
statement is not hearsay and may be admitted against an opposing party if the statement 'was made by
the party's agent or employee on a matter within the scope of that relationship and while it existed.'"
*Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019).  The Ninth Circuit goes on
to explain that:

> The Rule sets forth three elements necessary for admitting a statement that
> would otherwise be excluded as hearsay: (1) the statement must be made
> by an agent or employee of the party against whom the statement is being
> offered; (2) the statement must concern a matter within the scope of that
> employment relationship; and (3) the statement must be made while the
> declarant is yet employed by the party.

*Id.*  The Ninth Circuit approach "[t]o determine whether . . . statements are admissible under Rule
801(d)(2)(D)" is to "'undertake a fact-based inquiry applying common law principles of agency.'"
*United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (quoting *NLRB v. Friendly Cab Co., Inc.*, 512
F.3d 1090, 1096 (9th Cir. 2008)); *cf. also id.* at 502-08 (finding that independent contractor's statements
were not admissible under Rule 801(d)(2)(D)).  Here, (1) Rothenberg hired lawyers to make a statement
on his behalf to the SEC, and those statements may be offered by the United States against Rothenberg,
(2) those statements fell within the scope of Rothenberg's lawyer's agency representing him before the
SEC, and (3) the statements were made while the lawyers were employed by Rothenberg.  Thus, the
statements are admissible against Rothenberg should the United States choose to offer them.

The United States Supreme Court has held that an attorney is generally their client's agent, and
the client is not immune to the consequences of decisions made by their attorneys or by statements their
attorney makes.  *See Link v. Wabash R. Co.*, 370 U.S 626, 633-34 (1962) ("Petitioner voluntarily chose

1   [his] attorney as his representative in the action, and he cannot now avoid the consequences of . . . this

2   freely selected agent.  Any other notion would be wholly inconsistent with our system of representative

3   litigation, in which each party is deemed bound by the acts of his lawyer-agent….").

4        The Ninth Circuit and several other Circuits have allowed statements made by attorneys to be

5   entered under Rule 801(d)(2)(D).  For example, in *United States v. Flores*, the Ninth Circuit held that an

6   agency relationship exists between a defendant and his attorney in regards to the attorney's submission

7   of an administrative claims letter sent on behalf of his client to recover damages due to the alleged

8   violation of his Fourth Amendment rights.  679 F.2d 173, 177-78 (9th Cir. 1982).  The Ninth Circuit

9   further held that the letter, which admitted the defendant owned guns, was an authorized admission of

10  the defendant under Rule 801(d)(2)(C) and (D) and admissible in evidence at the defendant's trial for

11  being a felon in possession of firearms. *See id.; In re Younie*, 211 B.R. 367, 376 (B.A.P. 9th Cir. 1997)

12  (citing *United States v. Brandon*, 50 F.3d 464, 468 (7th Cir. 1995) (no error in the admission of

13  statements of a party's attorney under Rule 801(d)(2)(D)); *United States v. McMlellan*, 868 F.2d 210,

14  215, 216 n.9 (7th Cir. 1989) (statements made by defendant's attorney in bankruptcy filings on

15  defendant's behalf are admissible pursuant to Rule 801(d)(2)(C) and (D)); *United States v. Dolleris*, 408

16  F.2d 918, 921 (6th Cir. 1969) (admissions by defendant's authorized attorney in a meeting with IRS

17  agents were admissible even though defendant was not present at the meeting).

18       Federal district courts have done the same.  *See, e.g.*, *United States v. Harmon*, 2010 WL

19  11519181, at *2-3 (N.D. Cal. July 1, 2010).  In *Harmon*, the court admitted a "letter from Defendant's

20  attorney" written in connection with State Bar proceedings.  *Id.*  The Court found that "the author of the

21  . . . letter . . . was Defendant's attorney, and wrote the letter in connection with her representation of

22  Defendant," and that the attorney's statements in that letter were "attributable to Defendant."  *Id.* at *3.

23  The letter contained "Defendant's version of the events that were the subject of the State Bar

24  proceedings."  *Id.*

25       The letter in *Harmon* is facially similar to the *Wells* submission at issue here.  Both are

26  statements written by attorneys on behalf of their clients, and both purport to lay out the client's version

27  of the events leading up to the proceedings in question.  And because the SEC represents and warns that

28  a *Wells* submission "may be used by the Commission in any action or proceeding that it brings and may

be discoverable by third parties in accordance with applicable law,"

https://www.sec.gov/divisions/enforce/enforcementmanual.pdf, at 31, Rothenberg was on notice of the

possibility of the use of the statements made in the document, making truthfulness and accuracy in the

document critical.

For all of these reasons, the Court should grant the United States' Motion *in Limine* to admit the

defendant's statements, including those made in his *Wells* submission.

## V.  MOTION IN LIMINE NO. 5: The Court Should Admit Into Evidence Self-Authenticating Records And Documents Under Rules 902 And 803, Or In The Alternative Rule 807.

### A.  Certified Records of Regularly Conducted Activity are Admissible.

The United States moves the Court for an order pursuant to Federal Rule of Evidence 104 that

certain documents obtained by the United States in the course of its investigation are (a) authentic

because they have been certified pursuant to Federal Rule of Evidence 902(11) and (b) admissible as

business records pursuant to Federal Rule of Evidence 803(6).[7]  Specifically, the records at issue were

provided to the United States a number of financial institutions and businesses.

The United States previously has filed a two Rule 902(11) Notices regarding such business

records.  *See* Dkts. 142 & 246.  The records, along with any currently available records custodian

declarations, have been produced in discovery to the defendant.  A pretrial ruling that business records

accompanied by an appropriate records certification will be admissible (assuming they clear the other

evidentiary hurdles, such as relevance) will permit the trial to proceed more efficiently and

expeditiously, and will prevent inconvenience to witnesses who would have to testify for the sole

purpose of authenticating business records.  As it did during the previous trial before the Court, the

United States intends to address the issue of self-authenticating business records with the Court outside

the presence of the jury.  Assuming that the Court finds the records to be self-authenticating, the United

States will then move for their admission and publish them to the jury at the appropriate time.

Based on discussions that government counsel has had with counsel for the defendant, it is the

government's understanding that the defense likely (1) will acknowledge that the government has

---

[7] This motion *in limine* assumes that the records are relevant under Rule 402 and not excludable under Rule 403.  The United States is not seeking a pretrial ruling on Rule 402 and Rule 403 issues, and acknowledges that, even if the Court grants the instant motion, the defendant could still raise objections to the admissibility of the records at issue on other grounds.

complied with Rule 902(11)'s notice provisions where there is an appropriate certification and (2) will not object to the admission of the records at issue on the ground that the certifications do not comply with the requirements of the Rule 902(11).  It is also the government's understanding, however, that the defense will likely not stipulate to the authenticity or admissibility of the documents.  Accordingly, to avoid calling custodians of records, the United States seeks a pretrial ruling from the Court on whether such business records will be deemed self-authenticating and admissible.

### B.  Certified Public Records are Admissible.

The government also moves *in limine* for an order admitting certain exhibits as public records under Federal Rule of Evidence 902(4) and 803(8), specifically the following:

> 1.  Certified California Secretary of State records regarding various business entities controlled by or associated with the defendant, including Rothenberg Ventures Management Company (n/k/a Rothenberg Ventures) and the various Rothenberg Ventures funds.

Rule 902(4) provides that certified copies of official records, or copies of documents that were recorded or filed in a public office as authorized by law, are self-authenticating.  Rule 803(8) applies to records or statements that set out (i) the office's activities, (ii) a matter observed while under a legal duty to report (not including a matter observed by law enforcement personnel in a criminal case), or (iii) factual findings from a legally authorized investigation, so long as the opponent does not show the source of information or other circumstances indicate a lack of trustworthiness.

The records described above from the California Secretary of State consist of company filings made with the Secretary of State regarding RVMC and four of the Funds managed by RVMC.  The United States has produced the relevant records in discovery and will offer only certified copies of those records. As with the business records referenced above, the United States will address the issue of the self-authentication of the public records outside of the presence of the jury and, assuming the Court finds the records to be self-authenticating, will then move for their admission and publish them to the jury at the appropriate time.

### C.  The Records are Also Admissible Under Rule 807.

Even if the above-listed documents were found to be, or contain, hearsay (which they should not, for the reasons above), they should nevertheless be admissible under Federal Rule of Evidence 807.

Rule 807 allows a statement not covered by the hearsay exceptions enumerated in Rules 803 and 804 to be admitted "if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules [of evidence] and the interests of justice will best be served by admission of the statement into evidence." Fed. R. Evid. 807.

Here, the bank records, business records, and government records at issue are precisely the types of documents that Rule 807 was designed to reach. Courts "have long recognized that bank statements may be admitted under the residual exception to hearsay because 'bank documents, like other business records, provide circumstantial guarantees of trustworthiness because the banks and their customers rely on their accuracy in the course of their business.'" *In re Mendez*, No 06-1111, 2008 WL 597280, *9 (Bankr. E.D.C.A. Feb. 29, 2008) (quoting *United States v. Pelullo*, 964 F.2d 193, 202 (3d Cir 1992)). Indeed, courts have upheld admission of such statements "[g]iven the circumstantial guarantees of trustworthiness which were present . . . the distant location of the bank, and the lack of any evidence in the record to suggest that the bank records are anything other than what they purport to be." *Karme v. Comm'r*, 673 F.2d 1062, 1065 (9th Cir. 1982) (citing *United States v. Friedman*, 593 F.2d 109, 118-119 (9th Cir. 1979)). Accordingly, in the alternative to Rules 902 and 803, the Court should conclude that the bank and other similar records at issue are also admissible under Rule 807.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant each of its Motions *in Limine*.

DATED: August 31, 2023

Respectfully submitted,

THOMAS A. COLTHURST
Attorney for the United States


_____
/s/
BENJAMIN KLEINMAN
KYLE F. WALDINGER
NICHOLAS J. WALSH
Assistant United States Attorneys