# Exhibit 1

ORIGINAL

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
        John M. Potter (Bar No. 165843)
2       johnpotter@quinnemanuel.com
        Jeffrey W. Nardinelli (Bar No. 295932)
3       jeffnardinelli@quinnemanuel.com
        Mari Saigal (Bar No. 318556)
4       marisaigal@quinnemanuel.com
        50 California Street, 22nd Floor
5   San Francisco, California 94111-4788
    Telephone:    (415) 875-6600
6   Facsimile:    (415) 875-6700

**F I L E D**
San Francisco County Superior Court

AUG 2 0 2018

CLERK OF THE COURT
BY_____
                    Deputy Clerk

SEP 0 9 2019
Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____ H. TIEN _____ DEPUTY

7   Attorneys for Plaintiffs

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SAN FRANCISCO

                                                    **19CV355568**

10
                                                    **CGC-18-569041**
11  MICHAEL B. ROTHENBERG, AN            CASE NO.
    INDIVIDUAL, ROTHENBERG VENTURES,     *Unlimited Jurisdiction*
12  LLC, ROTHENBERG VENTURES 2015
    FUND, LLC, AND ROTHENBERG            **COMPLAINT FOR:**
13  VENTURES 2016 ACCREDITED FUND LP,
                                         **1. NEGLIGENCE**
14
                                         **2. DECEIT**
15              Plaintiffs,
                                         **3. FRAUD AND DECEIT BASED ON A**
16          vs.                          **CONCEALMENT**

17  SILICON VALLEY BANK, A               **4. NEGLIGENT INTERFERENCE WITH**
    CORPORATION,                         **PROSPECTIVE ECONOMIC**
18                                       **ADVANTAGE**
                Defendant.
19                                       **5. UNFAIR AND FRAUDULENT**
                                         **BUSINESS PRACTICE**
20

21                                       **DEMAND FOR JURY TRIAL**

22

23

24

25

26

27

28

                                                    **COMPLAINT**

Plaintiffs Michael B. Rothenberg, Rothenberg Ventures, LLC (formerly Rothenberg Ventures Management Company, LLC, both hereinafter, the "Management Company"), Rothenberg Ventures 2015 Fund, LLC (hereinafter, the "2015 Fund"), and Rothenberg Ventures 2016 Accredited Fund LP (hereinafter, the "2016 Fund," with the 2015 Fund, "the Funds," and collectively with other Plaintiffs, "Plaintiffs") complain against Defendant Silicon Valley Bank (the "Bank" or "SVB") as follows:

## INTRODUCTION

1.     This action concerns Silicon Valley Bank's circumvention of internal controls to engage in an unauthorized financial transaction that resulted in damages to Mr. Rothenberg, the Management Company, and the Funds in excess of one hundred million dollars.  Through this unauthorized transfer, SVB transferred millions of dollars into the wrong account, thereby creating the false appearance that Mr. Rothenberg and/or the Management Company had embezzled money from the 2015 Fund.

2.     The underlying transaction was supposed to be simple and straightforward.  In December 2015, the Bank was supposed to set up a line of credit for the Management Company. This line of credit was to be secured by $4.25 million in collateral in the form of pre-paid management fees owed to the Management Company by the 2015 Fund (the "Prepaid Fees").  To achieve that transaction, Mr. Rothenberg instructed the Bank to create a new fund account to hold the collateral (the "2015 Fund Collateral Account").

3.     Notwithstanding these clear instructions, owing to time pressures that put the Bank "in uncharted territory" and dealing with a blown internal bank deadline, SVB went ahead and transferred the 2015 Fund's $4.25 million into an account maintained by the Management Company (the "Unauthorized Transfer").  SVB made this Unauthorized Transfer without disclosure to Mr. Rothenberg or the Management Company.

4.     By moving the Prepaid Fees into an account controlled by the Management Company, the Bank created the false appearance that the Management Company and Mr. Rothenberg had wrongfully misappropriated millions in investor funds.  In the world of venture capital, no transgression is more egregious.  Having been effectively branded as an embezzler by

-1-

the Bank's Unauthorized Transfer, the Management Company collapsed, costing fund investors tens of millions in would-be investment gains and destroying Mr. Rothenberg's career.

## PARTIES

5.      Mr. Rothenberg is an individual residing in the State of California, County of San Francisco.

6.      Rothenberg Ventures, LLC is a Delaware LLC with its principal place of business at 1062 Folsom Street, San Francisco, California 94103.

7.      Rothenberg Ventures 2015 Fund, LLC is a Delaware LLC with its principal place of business at 1062 Folsom Street, San Francisco, California 94103.

8.      Rothenberg Ventures 2016 Accredited Fund LP is a Delaware limited partnership with its principal place of business at 1062 Folsom Street, San Francisco, California 94103.

9.      Silicon Valley Bank is a California corporation with its principal place of business at 3003 Tasman Drive, Santa Clara, California 95054.

## JURISDICTION AND VENUE

10.      Jurisdiction is appropriate because Defendant Silicon Valley Bank is, on information and belief, a California corporation which does business in California.

11.      Venue is appropriate in San Francisco County because, on information and belief, Defendant Silicon Valley Bank does business in San Francisco County, and because a substantial part of the alleged events giving rise to Plaintiffs' claims occurred in this county. Plaintiffs have also suffered injury in large part in this county.

12.      Subject matter jurisdiction is appropriate in this Court because the amount in controversy exceeds this Court's jurisdictional minimum.

## FACTS

A.      **Michael Rothenberg Establishes And Grows The Management Company**

13.      Michael Rothenberg founded Rothenberg Ventures Management Company—a venture capital firm that raises funds from investors to invest in high-tech startup companies— while attending Harvard Business School. The Management Company closed an initial investment fund in September 2013 and raised increasingly larger funds in 2014, 2015, and 2016.

14.   Mr. Rothenberg invested exceptionally well, generating outsized returns for his investors. Mr. Rothenberg's notable early investments included Elon Musk's SpaceX in 2012 and investment app Robinhood in 2013, the latter having experienced 500-times growth since Mr. Rothenberg helped fund the company. Additional portfolio companies with successful exits or up-rounds include, to name only a few of many, Patreon, Chubbies, Revel Systems, and Payable.

15.   Mr. Rothenberg developed relationships with high-profile individuals, companies, and institutional investors. Forbes labeled the Management Company as the "VC For The Millennial Set."[1] A lavish profile on Mr. Rothenberg was entitled: "Meet Mike Rothenberg, The 28-Year Old Whose Seed Fund Could Be The Best Bang For Your Cap Table Buck."[2]

16.   Mr. Rothenberg's status as an up-and-coming venture capitalist was not lost on Silicon Valley Bank. The Bank had "carv[ed] a niche at the heart of the tech sector," catering to needs of tech companies and venture capitalists by offering new and innovative banking services.[3] As American Banker noted, the Bank was notorious for "its aggressive growth in business lines that would make other bankers, who are more risk-averse and unaccustomed to volatility, feel queasy."[4]

17.   As the market for banking services in Silicon Valley became increasingly competitive,[5] Silicon Valley Bank aggressively cultivated a relationship for Mr. Rothenberg's business. After convincing Mr. Rothenberg to hold accounts for the Management Company and the Funds with the Bank, SVB incessantly pitched Mr. Rothenberg for still more business. The Bank wooed him with VIP invitations to high-profile events. The Bank sponsored Mr. Rothenberg's annual "Founder Field Day" – an event in AT&T Park celebrating the Funds'

---

[1]   https://www.forbes.com/sites/alexkonrad/2014/07/09/vc-millennials-rothenberg-ventures/

[2]   https://techcrunch.com/2013/01/06/meet-mike-rothenberg-the-27-year-old-whose-seed-fund-could-be-the-best-bang-for-your-cap-table-buck/

[3]   https://www.americanbanker.com/news/svb-is-riding-the-tech-wave-to-record-profits-can-it-last; http://www.latimes.com/business/la-fi-silicon-valley-bank-20150807-story.html.

[4]   https://www.americanbanker.com/news/svb-is-riding-the-tech-wave-to-record-profits-can-it-last.

[5]   https://www.cnbc.com/2014/10/14/-as-banks-chase-boom.html.

COMPLAINT

portfolio companies and investors.  As part of its efforts to gain additional business from the Management Company, SVB offered to open a line of credit for the Management Company.

**B.      The Management Company Seeks A Line of Credit From The Bank, But The Bank Radically Alters The Transaction Without Permission**

18.      At the end of 2015, Mr. Rothenberg took up the Bank's offer to open a line of credit for the Management Company.  On December 23, 2015, acting personally and on behalf of the Management Company and the Funds, Mr. Rothenberg directed the Bank to create the 2015 Fund Collateral Account, which would hold collateral to support the line of credit.  The same day, the Bank set up the 2015 Fund Collateral Account and so informed Mr. Rothenberg -- the first in a series of assurances that it was faithfully carrying out his instructions.[6]  These assurances proved to be short-lived.

19.      Mr. Rothenberg's directives in setting up a fund account could not have been more clear.  Mr. Rothenberg instructed the Bank on multiple occasions that the Prepaid Fees would be held by the 2015 Fund, not the Management Company:

- On December 24, 2015, in response to an email from the Bank concerning the 2015 Fund Collateral Account, Mr. Rothenberg explained in an email to the Bank: "We'd like to set up a LoC against cash that is funded there."

- The same day, in another email, Mr. Rothenberg explained that the Prepaid Fees would fund the 2015 Fund Collateral Account:  "The members have pre-paid somewhere between $1.7-5m of expenses, which we have in cash and will fund the recently opened account.  The management company would like to access a LoC for opex secured by these funds that are ultimately owed to the management company."

- On December 24, 2015, Bank representative Judy Lee emailed Mr. Rothenberg confirming that the collateral account for the line of credit would be "Rothenberg

---

[6]   In its correspondence with Mr. Rothenberg, the Bank referred to the 2015 Fund Collateral Account as the "2015 Fund Escrow Account" or the "2015 Fund Sub Account."

**COMPLAINT**

1  Ventures 2015 Fund, LLC – [xxxxxxx]8782" -- the 2015 Fund Collateral Account

2  that the Bank had just opened.

3  20.  In setting up this line of credit collateralized by the Prepaid Fees, however, the

4  Bank faced a serious time constraint.  While the Bank typically needed three weeks of internal

5  quality assurance to set up a line of credit through its loan processing group, this transaction was

6  supposed to be completed by year's end, leaving the Bank less than one week to complete it.

7  Confronted by this time constraint, the Bank took a shortcut -- without Mr. Rothenberg's

8  approval and to his everlasting detriment.

9  21.  Contemporaneous emails memorialize that in its zeal to close the transaction with

10  Mr. Rothenberg, the Bank abandoned its own internal controls and structured a transaction that

11  would have left other banks "queasy."  Senior banker Frank Amoroso admitted that the Bank was

12  "operating under duress" due to end-of-year volume, staffing levels, and imminent deadlines.

13  This senior banker admitted that the Bank had abandoned its quality-control measures in

14  structuring the line of credit transaction:  "The deadline for our internal QA & loan processing

15  group to process and fund new loans for year-end has already passed, so, we are in uncharted

16  territory / working on an exception / special dispensation basis at this point."

17  22.  To set up the line of credit before the end of the year, the Bank upended the

18  structure of the transaction.  Instead of transferring the $4.25 million in Prepaid Fees into the

19  2015 Fund Collateral Account as Mr. Rothenberg directed, the Bank transferred the money into a

20  new Management Company account (the "Management Company Collateral Account").

21  Moreover, the structure that Mr. Rothenberg proposed would have put the Bank in the position of

22  holding collateral in the name of a party not signatory to the line of credit agreement.  By altering

23  the structure and instead holding the collateral in the name of the Management Company, the

24  Bank advanced its own interests by creating a more easily-enforceable collateral obligation.

25  23.  Despite sending no fewer than *twenty-three* emails to Mr. Rothenberg between

26  December 23-30, the Bank *never once* emailed Mr. Rothenberg informing him that, under the

27  altered structure, the collateral would be held in an account owned by the Management Company.

28

**COMPLAINT**

24.     To illustrate, Mr. Rothenberg directed the Bank to perform a straightforward transaction, depicted by the following diagram:

**TRANSACTION ORDERED BY MR. ROTHENBERG**



25.     The Bank – without Mr. Rothenberg's knowledge or consent – executed a radically different and convoluted transaction depicted by the following diagram:

**TRANSACTION EXECUTED BY THE BANK**



26.     The Bank's transaction, which was effectuated solely for its own benefit, resulted in the transfer of title of $4.25 million from the 2015 Fund to the Management Company. The Unauthorized Transfer had an inescapable and devastating effect: it created the false appearance that Mr. Rothenberg had embezzled millions in investor funds.

**C.    The False Appearance Of Misappropriation Ruins Rothenberg Ventures**

27.    When banking records indicate that a fund manager has misappropriated investor money, the results are inevitable and catastrophic.

28.    Shortly after the Bank wrongfully executed the Unauthorized Transfer, high-level employees within the Management Company (but at that point, not Mr. Rothenberg) noticed, reviewed, and discussed the misapplication of investor funds into the Management Company's account.  Unaware of the Bank's complicity in structuring the Unauthorized Transfer without Mr. Rothenberg's knowledge or approval, the employees began to view Mr. Rothenberg's and the Management Company's otherwise legitimate transactions through a deep prism of suspicion. Resignations from the Management Company swept through lower-level ranks and the C-level suite.

29.    By August 2016, less than eight months after the Unauthorized Transfer, the "Millennial Venture Firm" had collapsed.  Silicon Valley tech journalists seized upon the story. The Bank's Unauthorized Transfer gave rise to the following incendiary headline:  "Mike Rothenberg allegedly wired $5.2 million from Silicon Valley Bank without investor permission."[7]

**D.    The Bank's Wrongdoing Causes Massive Financial And Reputational Damage**

30.    Prior to the events just described, those who had entrusted their money to Mr. Rothenberg had been amply rewarded.  Many existing investments enjoyed favorable exits, while others saw their valuations soar in up-rounds.  The 2016 Fund was attracting investment on the order of a million dollars per week as it accelerated toward its goal of raising $50 million.  The Bank's Unauthorized Transfer, and the consequences flowing from it, brought this momentum to a crushing halt.

---

[7]  https://techcrunch.com/2016/09/20/mike-rothenberg-allegedly-wired-5-2-million-from-silicon-valley-bank-without-investor-permission/

31.     The Bank's unauthorized actions destroyed Mr. Rothenberg and the Management Company.  Effectively branded an embezzler due to the Unauthorized Transfer, Mr. Rothenberg could no longer raise capital and continue his business.

32.     Investors in the 2015 and 2016 Funds were damaged due to the inability of the Mr. Rothenberg to make additional successful investments on behalf of existing and future funds.  For example, these investors lost out on millions from would-be deals with companies such as Unity, Robinhood, Cobalt Robotics, and Vicarious Surgical.

**E.      Mr. Rothenberg Links The Improper Money Transfer To The Firm's Destruction**

33.     On August 21, 2017, Mr. Rothenberg conducted a comprehensive review of relevant records which led to his realization that the Bank's Unauthorized Transfer was responsible for the catastrophic harm referenced in this Complaint.  Mr. Rothenberg immediately informed the Bank that its wrongdoing had "played a significant role in the confusion that led to the harm."  The Bank admitted in an email that "it is factually accurate to attribute the original structure of the transaction as a mistake by SVB."

**FIRST CAUSE OF ACTION:**

**Negligence, brought by all Plaintiffs**

34.     Plaintiffs hereby re-allege, as if set forth fully herein, each of the foregoing allegations.

35.     The Bank had a duty to act with reasonable care in its transactions with its customers, including faithfully carrying out its customer's wishes and informing customer of any deliberate deviation from the orders it was given.

36.     On information and belief, the Bank negligently, grossly, and/or willfully breached that duty when it transferred investor funds into an account owned by the Management Company without authorization.

37.     This breach created a false appearance of misappropriation, which spread perniciously both inside and outside the Management Company, leading to the decimation of the Management Company, the destruction of Mr. Rothenberg's good will and reputation, and losses to the Funds including losses in existing and future investments.

**SECOND CAUSE OF ACTION:**

**Deceit, brought by all Plaintiffs**

38.     Plaintiffs hereby re-allege, as if set forth fully herein, each of the foregoing allegations.

39.     The Bank misrepresented the owner of the account into which the Bank transferred $4.25 million of fees prepaid by the 2015 Fund.

40.     On information and belief, the Bank deliberately concealed from Mr. Rothenberg that it would place the Prepaid Fees into an account controlled by the Management Company in order to induce Mr. Rothenberg, on behalf of himself, the Management Company, and the Funds, to approve the transaction, so that the Bank could grow its relationship with an up-and-coming venture capitalist.

41.     Mr. Rothenberg justifiably relied on the Bank's statements to him that the 2015 Fund Collateral Account would hold the collateral backing the line of credit.  Based upon the Bank's representations, Mr. Rothenberg justifiably believed that the Bank had placed the $4.25 million in Prepaid Fees into the 2015 Fund Collateral Account that Mr. Rothenberg had opened days earlier expressly for that purpose.

42.     Plaintiffs were damaged as a result, based on the false appearance of misappropriation created by the Bank's actions, which spread perniciously both inside and outside the Management Company, leading to the decimation of the Management Company, the destruction of Mr. Rothenberg's good will and reputation, and losses to the Funds including losses in existing and future investments.

**THIRD CAUSE OF ACTION:**

**Fraud and Deceit Based On A Concealment, brought by all Plaintiffs**

43.     Plaintiffs hereby re-allege, as if set forth fully herein, each of the foregoing allegations.

44.     The Bank had a business relationship with Plaintiffs with a duty to faithfully perform the requested transaction, but intentionally concealed and suppressed the material fact

1  that the Prepaid Fees were placed in the Management Company Collateral Account, not the 2015

2  Fund Collateral Account, as Plaintiffs had instructed.

3      45.    Having been directed to place the Prepaid Fees into the 2015 Fund Collateral

4  Account to facilitate a line of credit, the Bank had a duty to carry out these instructions and to

5  inform its customer of its deliberate deviation.

6      46.    The Bank disclosed that it was placing funds into a collateral account but, with

7  intent to deceive, intentionally did not disclose that it was placing funds into an account

8  controlled by the Management Company.

9      47.    Mr. Rothenberg, on behalf of himself, the Management Company, and the Funds,

10  was unaware that the Prepaid Fees had been placed into the Management Company Collateral

11  Account.  He justifiably relied on his communications with the Bank to believe that the Prepaid

12  Fees would be placed in the 2015 Fund Collateral Account, and would not have proceeded with

13  the transaction had he known otherwise.

14      48.    Plaintiffs were damaged as a result, based on the false appearance of

15  misappropriation created by the Bank's actions, which spread perniciously both inside and

16  outside the Management Company, leading to the decimation of the Management Company, the

17  destruction of Mr. Rothenberg's good will and reputation, and losses to the Funds including

18  losses in existing and future investments.

19  **FOURTH CAUSE OF ACTION:**

20  **Negligent Interference With Prospective Economic Advantage, brought by all Plaintiffs**

21      49.    Plaintiffs hereby re-allege, as if set forth fully herein, each of the foregoing

22  allegations.

23      50.    Plaintiffs were in beneficial economic relationships including the relationships

24  between the Management Company and the Funds, with the limited partners who invested money

25  into the Funds, and with the portfolio companies into which the Funds had invested.  These

26  economic relationships probably would have resulted in economic benefits for all Plaintiffs.  The

27  Bank knew or should have known of these relationships, including through its sponsorship of

28

1  multiple events involving the Funds, the companies, and the investors, and knew or should have

2  known that the Bank's failure to act with reasonable care would disrupt these relationships.

3      51.    The Bank failed to act with reasonable care and engaged in wrongful conduct by

4  dramatically altering the terms of the deal ordered by Mr. Rothenberg and by concealing and

5  suppressing that it was placing the Prepaid Fees into an account owned by the Management

6  Company.  The concealment allowed the Bank to execute the Unauthorized Transfer, thereby

7  growing its relationship with an up-and-coming venture capitalist.  The Bank's wrongful conduct

8  was driven by improper motives, improper means in concealing the nature of the transaction, and

9  breach of duty and the established standard of dealing between a bank and its customers.  The

10  Bank knew or should have known that its wrongful conduct would disrupt Plaintiffs' beneficial

11  economic relationships.

12      52.    This wrongful conduct created the false appearance of misappropriation that spread

13  perniciously both inside and outside Rothenberg Ventures, disrupting all economic relationships

14  between the Funds, the limited partner investors, and the Management Company.  This disruption

15  was caused by the wrongful conduct.

16      53.    Plaintiffs were damaged as a result of this disruption, through the decimation of the

17  Management Company, the destruction of Mr. Rothenberg's good will and reputation, and losses

18  to the Funds including losses in existing and future investments.

19                     **FIFTH CAUSE OF ACTION:**

20         **Unfair and Fraudulent Business Practice (Cal. B&P 17200 *et seq.*)**

21      54.    Plaintiffs hereby re-allege, as if set forth fully herein, each of the foregoing

22  allegations.

23      55.    Defendant Silicon Valley Bank is a business.

24      56.    The Bank performed an unfair and fraudulent act by deliberately concealing and

25  suppressing the structure of the Unauthorized Transfer, in an attempt to defraud Mr. Rothenberg,

26  a member of the public acting on behalf of himself, the Management Company, and the Funds,

27  into unknowingly accepting the terms of the altered deal so that the Bank could execute the deal

28  before the end of 2015, thereby growing its relationship with an up-and-coming venture

-11-

capitalist. This unconscionable loan modification was immoral, unethical, oppressive, unscrupulous, and substantially injurious, and had an impact on Plaintiffs that outweighs the Bank's reasons, justifications, and motives for the act.

57.     The Bank's unfair and fraudulent act created the false appearance of misappropriation, which spread perniciously both inside and outside the Management Company, leading to the decimation of the Management Company, the destruction of Mr. Rothenberg's good will and reputation, and losses to the Funds including losses in existing and future investments.

## PRAYER FOR RELIEF

BASED ON THE FOREGOING, Plaintiff requests the following relief:

1.     Judgment in favor of Plaintiffs and against Defendant Silicon Valley Bank on Plaintiffs' First through Fifth Causes of Action;

2.     That the Court order Defendant to reimburse Plaintiffs for all costs and losses incurred by Plaintiffs as a result of Defendant's wrongful and unlawful conduct described herein;

3.     That the Court grant Plaintiffs an award of damages in an amount according to proof in excess of $25,000, subject to proof at trial;

4.     That the Court grant Plaintiffs pre-judgment interest on all such damages, monetary or otherwise;

5.     That the Court order Defendant to pay Plaintiffs punitive damages according to proof in an amount sufficient to deter Defendant from engaging in similar malicious and offensive conduct in the future; and

6.     That the Court award Plaintiffs such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request trial by jury.

COMPLAINT

1  DATED:  August 20, 2018                QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
2

3

4                                         By
                                              John W. Potter
5                                             QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
6                                             Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        -13-
                                                                    COMPLAINT