MOEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone:   (510) 500-9994
Email:       hanni@mlf-llp.com

LAW OFFICE OF NATHANIEL J. TORRES (State Bar No. 253968)
338 Fillmore Street, #4
San Francisco, CA 94117
Telephone:   (415) 290-6290
Email:       nathanieltorres3131@gmail.com

Attorneys for Michael Rothenberg

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ROTHENBERG,<br><br>Defendant. | **Case No.:** 4:20-CR-00266-JST<br><br>**DEFENDANT'S MOTIONS IN LIMINE FOR TRIAL ON COUNTS 3-23**<br><br>**Court:**          Courtroom 6, 2nd Floor<br>**Hearing Date:** September 15, 2023<br>**Hearing Time:** 2:00 p.m. |

**TO:  THOMAS A. COLTHURST, ACTING UNITED STATES ATTORNEY; KYLE F. WALDINGER, ASSISTANT UNITED STATES ATTORNEY; NICHOLAS J. WALSH, ASSISTANT UNITED STATES ATTORNEY; AND BENJAMIN K. KLEINMAN, ASSISTANT UNITED STATES ATTORNEY**

PLEASE TAKE NOTICE that Defendant Michael Rothenberg hereby moves this Court *in limine* for various orders excluding evidence. These motions are based upon this memorandum of points and authorities and accompanying exhibits, the Federal Rules of Evidence, all other applicable constitutional, statutory, and case authority, and all evidence and argument that may be presented at the hearing of these motions, to be held on September 15, 2023 at 2:00 p.m. in Courtroom 6 on the 2nd floor of the Oakland courthouse.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................................................................................................ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................1

    A.     Motion *in Limine* #1: Financial statements post-dating the alleged conduct should be excluded. ........................................................................................................................1

    B.     Motion *in Limine* #2: The Court should exclude press articles. ......................................3

    C.     Motion *in Limine* #3: Exhibit 116 and any other evidence concerning Counts 1 and 2 of the superseding indictment should be excluded...............................................................6

    D.     Motion *in Limine* #4: References to civil litigation involving Mr. Rothenberg should be excluded. ........................................................................................................................7

         1.     SEC v. Rothenberg.............................................................................................8

         2.     Transcend VR v. Rothenberg.........................................................................12

         3.     Haase v. RVMC, et al. .....................................................................................12

         4.     Fanelli v. RVMC ..............................................................................................13

    E.     Motion *in Limine* #5: Expert testimony by Gerald Fujimoto must be limited to the topic of "forensic accounting." .............................................................................................13

    F.     Motion *in Limine* #6: Witnesses should be excluded. ....................................................15

    G.     Motion *in Limine* #7: The superseding indictment should not be sent to the jury room.16

CONCLUSION ...................................................................................................................16

1

## TABLE OF AUTHORITIES

2

### Cases

3   *Carter v. Johnson & Johnson*, 2022 WL 5046117 (D. Nev. Sept. 30, 2022) ..................................... 15

4   *Doyle v. Ohio*, 426 U.S. 610 (1976) ............................................................................................... 9

5   *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828 (8th Cir. 1988) ................................ 15

6   *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) ........................................................... 3

7   *Lust By and Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594 (9th Cir. 1996) ...................... 14

8   *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008) .............................. 15

9   *S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998) ....................................................... 11

10   *S.E.C. v. Sands*, 902 F. Supp. 1149 (C.D. Cal. 1995) ................................................................. 11

11   *Stillwell v. Smith & Nephew, Inc.*, 482 F.3d 1187 (9th Cir. 2007) ............................................... 14

12   *United States v. Alonso*, 48 F.3d 1536 (9th Cir. 1995) ............................................................... 15

13   *United States v. Ell*, 718 F.2d 291 (9th Cir. 1983) ..................................................................... 15

14   *United States v. Holmes*, 2021 WL 2044470 (N.D. Cal. May 22, 2021) .......................................... 3

15   *United States v. Kallin*, 50 F.3d 689 (9th Cir. 1995) ..................................................................... 9

16   *United States v. Mitchell*, 172 F.3d 1104 (9th Cir. 1999) ........................................................... 10

17   *United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974) ................................................................ 16

18   *United States v. Romero-Avila*, 210 F.3d 1017 (9th Cir. 2000) .................................................. 10

19   *United States v. Unruh*, 855 F.2d 1363 (9th Cir. 1987) .............................................................. 10

20

### Federal Rules of Evidence

21   Rule 402 ................................................................................................................................ 3, 7

22   Rule 403 ......................................................................................................................... 7, 9, 11, 13

23   Rule 404 ............................................................................................................................ 7, 13

24   Rule 408 ........................................................................................................................ 8, 10, 11

25   Rule 615 ................................................................................................................................. 15

26   Rule 702 ................................................................................................................................. 14

27

### Other Authorities

28   17 C.F.R. § 202.5(c)

SEC Enforcement Manual (Nov. 28, 2017) ........................................................................ 11

Jury Instructions Committee of the Ninth Circuit, A Manual on Jury Trial Procedures (2013).......... 16

**INTRODUCTION**

Michael Rothenberg is charged in a 23-count superseding indictment with a variety of fraud offenses. Dkt. 15. Counts One and Two of that indictment were severed by this Court for trial, which occurred in the fall of 2022, and resulted in a mistrial after jurors were deadlocked and could not reach a unanimous verdict. Dkt. 205. Jury trial on the remaining counts of the superseding indictment is set to begin on October 2, 2023. The following motions *in limine* pertain to the 21 counts set for jury trial. These motions *in limine* are being filed after the government has produced its exhibit list, but before the government has filed its witness list. Thus, Mr. Rothenberg may file additional motions *in limine* to raise objections pertaining to specific witnesses the government intends to call at trial.

**ARGUMENT**

A.   **Motion *in Limine* #1: Financial statements post-dating the alleged conduct should be excluded.**

The government's allegations in the Counts at trial concern conduct occurring between December 2015 and August 2016. More specifically, the indictment alleges the following:

| Counts | Crimes charges | Allegation | Timeframe |
|--------|----------------|------------|-----------|
| 3-4 | Bank fraud – 18 U.S.C. § 1344<br>False statements - 18 U.S.C. § 1014 | Scheme to defraud SVB in connection w/ line of credit | Dec. 2015 |
| 5-7 | Wire fraud - 18 U.S.C. § 1343 | Scheme to defraud P-LLC re investment in River Studios | Oct. 2015-Aug. 2016 |
| 8-11 | Transactions w/ property from illegal activity - 18 U.S.C. § 1957 | Transfer of money from various bank accounts | Feb. 25-26, 2016 |
| 12-15 | Wire fraud - 18 U.S.C. § 1343 | Scheme to defraud potential investors of "Software Company" | Jul. 2016-Sept. 2016 |
| 16-23 | Wire fraud - 18 U.S.C. § 1343 | Scheme to defraud investors of 2015 and 2016 Funds | Apr. 2015-Aug. 2016 |

Nonetheless, the government's exhibit list reveals it intends to admit financial records going far beyond August 2016, including financial statements going through September 2018. Specific exhibits

1  include:

2  • Exh. 63: Silicon Valley Bank ("SVB") statements through April 2018

3  • Exh. 67: SVB statements through February 2018

4  • Exh. 69: SVB statements through September 2018

5  • Exh. 75: SVB statements through December 2018

6  • Exh. 78: SVB statements through December 2018

7  • Exh. 90: SVB statements through February 2018

8  • Exh. 95: SVB statements through September 2018

9  • Exh. 99: Bank of America ("BOA") statements through December 2017

10  • Exh. 103: BOA statements through November 2017

11  • Exh. 104: BOA statements through September 2018

12  • Exh. 105: BOA statements through September 2018

13  • Exh. 106: BOA statements through September 2018

14  • Exh. 107: BOA statements through September 2018

15  • Exh. 108: BOA statements through September 2018

16  • Exh. 110: BOA statements through August 2018

17  • Exh. 111: BOA statements through August 2018

18  • Exh. 130: American Express statements through March 2017

19  Financial statements postdating the alleged criminal conduct should be excluded as irrelevant

20  under Federal Rule of Evidence 402. The government's primary allegation is that Mr. Rothenberg

21  made misrepresentations or omitted material facts while soliciting investments, and used investments

22  in ways not authorized by investors. Financial activity occurring well after the alleged

23  misrepresentations and investments are irrelevant and do not help the government prove its case.

24  Alternatively, records post-dating the alleged criminal conduct should be excluded under

25  Federal Rule of Evidence 403 as any probative value is outweighed by the danger of unfair prejudice,

26  confusing the issues, undue delay, wasting time and needlessly presenting cumulative evidence.

27  Thousands of pages of financial records, some of which involve transactions taking place two years

28  after the alleged criminal conduct charged in the case, will just lead to a mini-trial on the propriety of

the transactions with little insight or context as to why the records are necessary for its determination of whether Mr. Rothenberg committed the crimes alleged by the government. These financial records should be excluded.

**B.**   **Motion *in Limine* #2: The Court should exclude press articles.**

The government seeks to admit three press articles about Mr. Rothenberg in its case in chief:

- Exh. 374: May 28, 2015 *Bloomberg* article "The Valley's Party Animal"
- Exh. 512: August 18, 2016 *TechCrunch* article "At Rothenberg Ventures, the rise and fall of a virtual Gatsby"
- Exh. 513: September 13, 2016 *Wired* article "Trouble in the House of Rothenberg"

*See* Declaration of Hanni M. Fakhoury ("Fakhoury Dec."), Exhibits A-C. These articles should be excluded.

First, the articles contain multiple layers of hearsay. The *Bloomberg* and *Wired* articles contain a few direct quotes purporting to be statements made by Mr. Rothenberg; both also contain statements without quotations by the authors purporting to represent statements made by Mr. Rothenberg. The *TechCrunch* article contains no purported statements from Mr. Rothenberg. All three articles contain statements from other speakers, both in the form of direct quotations and more general purported statements.

The Ninth Circuit has explained, "newspaper articles have been held inadmissible hearsay as to their content." *Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991). As Judge Davila has noted, "articles that feature quotations from people other than their authors constitute hearsay within hearsay when the article and the quotations within are offered to prove the truth of the matter asserted." *United States v. Holmes*, 2021 WL 2044470, *25 (N.D. Cal. May 22, 2021). The Ninth Circuit elaborated in *Larez* that a "reporters' transcription[] were out-of-court-statements" and by attributing the statement to a specific person, "the reporters necessarily made the implicit statement, '[the speaker] said this!'" which in turn means the statements "were offered for the truth of the matter asserted: that [the speaker] did in fact make the quoted statement." *Larez*, 946 F.2d at 642. Such hearsay within hearsay is inadmissible and should be excluded.

Second, all three articles are irrelevant under Federal Rule of Evidence 402. The *Bloomberg*

1    article was published months before the events at issue in the charged counts. The *TechCrunch* and

2    *Wired* articles were published after the events at issue in the case, and primarily deal with the fallout

3    from the government's own investigation into Rothenberg Ventures Management Company

4    ("RVMC"). Given that timing, the articles do not have any bearing on the issues at trial. The

5    government has never alleged that the articles were part of any purported fraud committed by Mr.

6    Rothenberg, and there is no indication that any investor saw or relied on the articles when deciding to

7    invest or not.

8          Third, the articles should be excluded under Federal Rule of Evidence 403 because their

9    probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues,

10   and misleading the jury. The articles—particularly the *TechCrunch* and *Wired* articles—are

11   effectively gossip from unnamed sources about purported turmoil in RVMC, filled with innuendo and

12   opinion. For example, from the *TechCrunch* article marked as Exhibit 512:

13        • "According to one source, Rothenberg Ventures founder Mike Rothenberg has told those

14            remaining that 'very few people will be left.' In what appears to be a related development,

15            the firm's site has been down since last night. Why the mass exodus? According to one

16            source, Rothenberg Ventures is answering questions from the SEC after a lower-level

17            employee alerted the agency to what this person reported as wire fraud and breach of

18            fiduciary duty. This same source says the employee was subsequently fired and is now

19            suing the firm for retaliation."

20        • "Says one source, 'Mike wants to be famous.' They say he began to live as if he were, too,

21            with many other examples of seemingly out-of-control spending. Among them, says one

22            source, Rothenberg had hired up to three executive assistants at one point. He also

23            employed a personal assistant for himself and a private driver. Further, employees say he

24            refused to fly coach and instead maintained a $2,000-per-month membership with the

25            young, subscription-only airline service Surf Air."

26        • "All the while, Rothenberg was hiring, employing up to 60 people across Rothenberg

27            Ventures at one point. For a firm that manages hundreds of millions of dollars, that

28            wouldn't be a startling amount of overhead. But Rothenberg Ventures has raised $47

million across four funds dating back to 2013, according to SEC filings. Given that firms typically collect 2 percent of what they raise in management fees, that would leave just $940,000 per year for Rothenberg's entire operation. In fact, most funds of a similar size are run by two or three people."

Fakhoury Dec., Exh. B. The *Wired* article, Exhibit 513, fares no better, including the following:

- "A critical component of this model, it turned out, was swagger. That summer, he invited his early staffers to have an office 'Mad Men Day.' Members of his staff donned their '60s finest, and gathered to reenact a cast picture from the show, one of Rothenberg's favorites. In the resulting photo, Rothenberg was no longer the unnamed dude to the side of Mark Zuckerberg. He'd moved to the center of the frame, posing, naturally, as Don Draper."

- "The $5 million that went into launching River Studios came from Rothenberg Ventures' second and third funds. It was a significant figure for a firm that on average invested $100,000 per company. (The combined total of Rothenberg Ventures' second and third funds was $36.32 million according to SEC filings, so $5 million represented 14 percent of the total capital raised.) Yet no mention of the investment was made in the 2014 or 2015 annual reports shared with investors that listed the firm's portfolio companies. One LP says that in a phone call with investors in August after Rothenberg had told them about the River Studios investment in an email, one grilled him on why River Studios wasn't in the annual reports, and says Rothenberg responded that he was still getting around to the disclosures."

- "It was Rothenberg's turn as neophyte producer, with his new access to celebrities and the world of show business, that caused him to lose his way, according to many people who worked or invested with him. 'The turning point,' one former staffer says, 'was him getting hooked up with the fucking Hollywood people.'"

Fakhoury Dec., Exh. C.

These are just small excerpts from the articles that will only invite the jury to speculate about what was happening at RVMC rather than focusing on witness testimony and evidence. The articles

reference other prior articles written about Mr. Rothenberg and RVMC, which will invite the jury to

look online for those articles too, or speculate as to why those articles are not, and why these three

specific articles are, evidence. The articles also assume as true the ultimate issue before the jury:

whether Mr. Rothenberg engaged in fraudulent behavior. Finally, the bulk of the articles contain

statements and opinions from anonymous sources, which Mr. Rothenberg has no way of refuting

through cross-examination unless the government is going to call either the reporter who wrote the

article (forcing the reporter to reveal their source), or have a witness acknowledge at trial that they

were the source of information for the article.

The government's improper efforts to introduce this inflammatory material should be rejected

and the articles excluded.

**C.**   **Motion _in Limine_ #3: Exhibit 116 and any other evidence concerning Counts 1 and 2 of the superseding indictment should be excluded.**

Mr. Rothenberg previously stood trial on Counts One and Two of the indictment in the fall of

2022, which resulted in a mistrial. Those counts concerned a transaction with SVB in 2014 involving

a refinance of Mr. Rothenberg's home, and a personal loan. No retrial date has been set for those two

counts.

This second trial also involves a transaction with SVB, sixteen months after the refinance

transaction. Specifically, Counts Three and Four allege that in December 2015, Mr. Rothenberg

defrauded SVB in connection with an application for a line of credit. Exhibit 116 on the

government's exhibit list are Merrill Lynch statements from the account ending in 6052 for the period

of May 31, 2014 to December 31, 2014. These statements are for the Merrill Lynch Cash

Management Account ("CMA") at issue in the first trial, and portions of Exhibit 116 in this second

trial were admitted as Exhibits 50-53 (spanning May 31, 2014 to September 30, 2014) in that first

trial. _See_ Dkt. 147.

To the extent there are government witnesses from SVB that had any involvement with or

knowledge of the earlier 2014 transaction involving Mr. Rothenberg, they should be precluded from

referencing or discussing the earlier loan transaction. Both the government and its witnesses should

also be precluded from referencing the fact that (1) Mr. Rothenberg was charged with crimes, and

1    went to trial, in connection with the 2014 loans, and (2) SVB ultimately foreclosed on Mr.

2    Rothenberg's property and evicted him from his home.

3         First, such evidence is irrelevant under Rule 402. This Court severed the first two counts from

4    the remainder of the charges because they were significantly different than the allegations in the

5    remainder of the case. This Court noted "the bank fraud described in counts 1 and 2 does not involve

6    the misuse or misappropriation of investor funds," "the events in counts 1 and 2 ended more than a

7    year before any of the other counts in the indictment," does not involve the "same modus operandi"

8    as the other alleged schemes, and "there is no reason to think that there would be substantial

9    evidentiary overlap for both schemes." Dkt. 101, Order Granting in Part and Denying in Part

10   Defendant's Motion to Sever Counts 1-4 at 4-6. Evidence about the facts and events involved in

11   Counts One and Two would thus be irrelevant to the issues implicated in this second trial.

12        Second, even if deemed relevant, the evidence should still be excluded under Rule 403 as any

13   probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues,

14   and misleading the jury. Such evidence would certainly confuse and mislead the jury, as jurors would

15   be perplexed as to why other charges discussed by witnesses or mentioned by prosecutors were not

16   before them. It would also be unfairly prejudicial to Mr. Rothenberg, who would have the cloud of

17   other charges hanging over him without the ability to defend against the charges. The jury would

18   likely speculate and draw negative inferences from the absence of the charges, believing that Mr.

19   Rothenberg "must be a bad person" or "must have committed this crime" because of the presence of

20   other criminal allegations not before it. It would also invite jurors to convict Mr. Rothenberg in this

21   case because it cannot convict him of the other conduct not before it. Given that the government has

22   not provided any notice under Rule 404(b) of its intent to admit other act evidence, this evidence

23   should be excluded. *See* Fed. R. Evid. 404(b)(3) ("prosecutor must provide reasonable notice" of

24   other act evidence "in writing before trial" and "articulate in the notice the permitted purpose for

25   which the prosecutor intends to offer the evidence and the reasoning that supports the purpose").

26   **D.   Motion *in Limine* #4: References to civil litigation involving Mr. Rothenberg should be
     excluded.**

27

28        There have been several civil cases filed against Mr. Rothenberg, and the government has

marked several exhibits from these cases. All this evidence should be excluded. Each case is addressed separately below.

### 1. SEC v. Rothenberg

As the Court is aware, the SEC filed a civil suit against Mr. Rothenberg that this Court presided over. *See S.E.C. v. Rothenberg*, 3:18-CV-05080-JST. In that case, Mr. Rothenberg entered a consent judgment approved by the Court, which did not require him to "admit[] or deny[] the allegations of the complaint," but nonetheless stated that solely for purposes of disgorgement and civil penalties, "the allegations of the complaint shall be accepted as and deemed true." *S.E.C. v. Rothenberg*, 3:18-CV-05080-JST, Dkt. 5, ¶¶ 2, 5.

As an initial matter, the government should be prohibited from referencing or discussing the SEC consent judgment, including any allegations made by the SEC, or admissions made by Mr. Rothenberg. Federal Rule of Evidence 408 prohibits the admission of offers to compromise a "disputed claim" as well as statements "made during compromise negotiations about the claim." The consent judgment falls squarely within Rule 408 and should therefore be excluded.

While the government has not placed the consent judgment on its exhibit list, it has marked several other documents from the civil SEC case as exhibits, including:

- Exh. 506: Mr. Rothenberg's deposition, where he was represented by an attorney and repeatedly invoked his Fifth Amendment privilege as to specific questions
- Exh. 507: Mr. Rothenberg's pro se opposition to the SEC's motion for disgorgement and penalties, which includes hundreds of pages of exhibits
- Exh. 508: Mr. Rothenberg's pro se responses to the SEC's first set of interrogatories
- Exh. 509: Mr. Rothenberg's pro se responses to the SEC's first set of requests for production
- Exh. 519: a Wells submission, submitted before the filing of the SEC suit, prepared by Mr. Rothenberg's attorneys at Gibson, Dunn & Crutcher LLP
- Exh. 520: a revised Wells submission, also prepared before the filing of the SEC suit, prepared by Mr. Rothenberg's attorneys at Gibson, Dunn & Crutcher LLP
- Exh. 521: 825 pages of exhibits submitted with the Wells submission

Fakhoury Dec., Exh. E-J.

All these exhibits should be excluded because any evidence about the civil SEC lawsuit is irrelevant in this criminal case. Even if relevant, any probative value drawn from informing the jury there was a parallel SEC civil lawsuit is substantially outweighed by the danger of unfair prejudice. The jury may assume that Mr. Rothenberg must be guilty in this criminal case because he was sued by the SEC over the same conduct.

Turning to the specific exhibits, there are myriad problems with admitting them. First, the deposition transcript, Exhibit 506, consists almost entirely of Mr. Rothenberg invoking his Fifth Amendment right to remain silent, and declining to answer specific questions. Mr. Rothenberg invoked his right to silence so many times during the deposition, the parties agreed that Exhibit 5 to the deposition would be a handwritten note stating "on the advice of my attorney, I respectfully decline to answer that question on the grounds of my Fifth Amendment privilege" and permitted Mr. Rothenberg to invoke by merely referencing back to "Exhibit 5," which he did over 100 times. *See* Fakhoury Dec., Exh. D at US-001629.

Admitting this transcript is thus nothing more than the government commenting on Mr. Rothenberg's silence, which is prohibited by the Fifth Amendment. "[I]t does not comport with due process to permit the prosecution during trial to call attention to [the defendant's] silence." *United States v. Kallin*, 50 F.3d 689, 693 (9th Cir. 1995) (citing *Doyle v. Ohio*, 426 U.S. 610, 619 (1976)) (quotations omitted). Because Mr. Rothenberg invoked his right to remain silent for almost the entirety of the deposition, the transcript is irrelevant and its admission unduly prejudicial under Rule 403 because it does nothing more than invite the jury to speculate that the answers would be incriminating, and thus Mr. Rothenberg must have committed the crime.

Second, Mr. Rothenberg's pro se pleadings in the civil case is irrelevant and, even if this Court disagrees, any probative value is substantially outweighed by the danger of unfair prejudice. Exhibit 507, Mr. Rothenberg's pro se opposition to the SEC's motion for disgorgement and penalties, necessarily references the SEC's allegations against Mr. Rothenberg, the fact that there was a settlement with the SEC, and the SEC's request for a $9 million fine, which implicitly tells the jury there was some finding that Mr. Rothenberg had violated securities law. But as noted earlier, any

evidence about a settlement is inadmissible under Rule 408. *See e.g.,* Fakhoury Dec., Exh. E at US-000798 ("Mr. Rothenberg settled with the SEC in August 2018, without admitting or denying the allegations set forth in the SEC's complaint, and submitted to personal and subject matter jurisdiction of this court for purposes of determining the appropriate amounts of disgorgement and penalties, if any."). And evidence that the SEC sought a civil fine—under a lesser standard of proof than necessary for a jury to convict Mr. Rothenberg in a criminal case—might mislead the jury into thinking it should convict Mr. Rothenberg in the criminal case because the SEC already determined he had to pay a fine. That is particularly problematic given that the settlement with the SEC did not require Mr. Rothenberg to admit (or deny) the allegations in the complaint.

Exhibit 508, Mr. Rothenberg's pro se response to the SEC's first set of interrogatories, primarily contains information about Mr. Rothenberg's personal finances, including a list of creditors that includes the IRS in an amount of approximately $2.7 million. *See* Fakhoury Dec., Exh. F at 4. That is because the only thing litigated in the SEC suit was the amount of any disgorgement, and so the SEC's requests were necessarily focused on Mr. Rothenberg's financial situation. But none of that information is relevant to the criminal charges in this case and is akin to inadmissible "poverty evidence" which the government attempted to introduce at the first trial for the purpose of proving that Mr. Rothenberg had "large cash requirements." *See* Dkt. 144 at 1-2. The Ninth Circuit has made clear that "evidence of poverty or poor financial condition is inadmissible to prove motive where it is offered to show 'the mere fact that the defendant is poor.'" *United States v. Romero-Avila*, 210 F.3d 1017, 1022 (9th Cir. 2000). Since "it is in anyone's interest to be richer rather than poorer," evidence of "mere financial interest" unconnected with "inclination, desperation, or other evidence that the person was likely to commit the crime does not add much, in most cases, to the probability that the defendant committed a crime." *United States v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir. 1999); *see also United States v. Unruh*, 855 F.2d 1363, 1377 (9th Cir. 1987) (admonishing that evidence of a defendant's wealth "should not be offered unless clearly connected" to the specific charges or conduct at issue). The interrogatories listing Mr. Rothenberg's financial situation was signed and filed on April 26, 2019, years after the events in question in the indictment and thus are unconnected to the charges heading to trial. *See* Fakhoury Dec., Exh. F at 7.

1    Exhibit 509, Mr. Rothenberg's pro se response to the SEC's request for production consists

2    primarily of objections to requests because of the attorney client privilege and breadth. *See* Fakhoury

3    Dec., Exh. G at 2-11. None of these responses are relevant to any of the issues before the jury in this

4    case. The response also makes repeated reference to the settlement agreement, which again is

5    inadmissible under Rule 408 as noted earlier.

6    Finally, Exhibits 519, 520 and 521, two Wells responses and corresponding exhibits prepared

7    by Mr. Rothenberg's attorneys, are inadmissible. *See* Fakhoury Dec., Exh. H-J. "A Wells submission

8    is a document filed with the SEC in which a defendant presents the evidence and legal theories he

9    believes the SEC should consider in deciding whether to file an enforcement action." *S.E.C. v. Sands*,

10   902 F. Supp. 1149, 1167 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d

11   1186 (9th Cir. 1998).[1] A Wells response is thus a statement made during negotiations, and

12   inadmissible under Rule 408. Even if admissible, however, the exhibits should still be excluded under

13   Rule 403 because any probative value to the evidence is substantially outweighed by the danger of

14   unfair prejudice, confusion of issues, undue delay, and the needless presentation of cumulative

15   evidence.

16   Even if there was a need to present a Wells submission to the jury, the government has failed to

17   articulate why it needs to present both the original and revised Wells submission. Moreover, many of

18   the documents in Exhibit 521—which is 825 pages of exhibits provided to the SEC with the Wells

19   submission—are duplicative of exhibits already marked by the government in its exhibit list. For

20   example, the first document in Exhibit 521 is a 2015 Fund Summary of Principal Terms, which is

21   also Exhibit 23 on the government's exhibit list. *See* Fakhoury Dec., Exh. J at WELLS-000001.

22   Another document in Exhibit 521 is Confidential Private Offering Memorandum for the 2015 Fund,

23   which is also contained in Exhibit 23. *See* Fakhoury Dec., Exh. J at WELLS-000018. There are

24   numerous other examples of such duplication.

25   In sum, all exhibits or evidence concerning the SEC suit should be excluded from this criminal

26

27   _____

28   [1] The procedure gets its name from John A. Wells, who chaired a 1972 SEC advisory committee that
     recommended the practice and is codified at 17 C.F.R. § 202.5(c). *See* SEC Enforcement Manual §
     2.4 (Nov. 28, 2017), https://www.sec.gov/divisions/enforce/enforcementmanual.pdf.

1    trial.

2          **2.      Transcend VR v. Rothenberg**

3          Exhibit 243 is a civil complaint in *Transcend VR, LLC v. Rothenberg*, CGC-17-557005, which

4    was filed in San Francisco Superior Court in 2017. *See* Fakhoury Dec., Exh. K. That civil case

5    concerns the investment into River Studios charged in Counts 5-7 of the superseding indictment.

6    Exhibit 245 is a settlement agreement signed by the parties, disposing of the lawsuit. *See* Fakhoury

7    Dec., Exh. L. Both exhibits and any other evidence the government intends to elicit about this lawsuit

8    should be excluded.

9          First, the civil complaint in Exhibit 243 is hearsay within hearsay, as it is an out of court

10   statement made by the owners of Transcend VR, LLC, through its attorneys, being offered for the

11   truth of the matter asserted. The same is true of Exhibit 245, the settlement agreement, which should

12   not only be excluded as hearsay, but also should be excluded under Federal Rule of Evidence 408 as

13   an inadmissible compromise offer.

14         Second, both exhibits should be excluded under Federal Rule of Evidence 403, as any probative

15   value of the exhibits is substantially outweighed by the danger of unfair prejudice, undue delay, and

16   the needless presentation of cumulative evidence. Presumably, the government will call some witness

17   to the transaction to explain the events that occurred, obviating the need to introduce the civil

18   complaint and settlement agreement.

19         **3.      Haase v. RVMC, et al.**

20         Exhibit 365 is a civil complaint filed in San Francisco Superior Court in *Haase v. RVMC, et al.*,

21   CGC-16-553970. *See* Fakhoury Dec., Exh. M. That lawsuit was filed by David Haase, the former

22   Chief Financial Officer of RVMC, who alleged that RVMC and Mr. Rothenberg breached its contract

23   with Mr. Haase by failing to repay him business expenses incurred while working at RVMC. The

24   exhibit and any other evidence the government intends to elicit about this lawsuit and the events at

25   issue in the lawsuit should be excluded.

26         First, the civil complaint in Exhibit 365 is hearsay within hearsay, as it is an out of court

27   statement by Mr. Haase, through his attorney, being offered for the truth of the matters asserted in the

28   complaint. Second, the matters detailed in the complaint are irrelevant to the issues in this case, none

of which involve Mr. Haase at all, or RVMC's failure to reimburse him for business expenses. Third, the evidence should be excluded under Rule 403 as any probative value of this evidence—and to be clear, there is none—is substantially outweighed by the danger of unfair prejudice, confusing the issues, undue delay and wasting time. At its core, the allegations in the complaint are just bad character evidence, prohibited under Rule 404(a), intended to paint Mr. Rothenberg in a bad light. The evidence would also require a mini-trial to determine whether Mr. Haase was in fact supposed to be reimbursed for these expenses, which will require an inquiry into the events leading up to the expenses. None of this will help the jury resolve the issues ultimately before it and will just unnecessarily prolong a case that is already lengthy and complex.

This evidence should be excluded.

### 4.     Fanelli v. RVMC

Exhibit 367 is a civil complaint filed in San Francisco Superior Court in *Fanelli v. RVMC*, CGC-16-554609, a purported class action lawsuit filed by Kate Fanelli, a former RVMC employee, alleging she and other RVMC employees were not paid wages. *See* Fakhoury Dec., Exh. N. Like the other exhibits concerning the civil suits filed against Mr. Rothenberg, this evidence should be excluded.

First, Exhibit 367 is hearsay within hearsay, an out of court statement by Ms. Fanelli, through her attorney, being offered for the truth of the matters asserted in the complaint. Second, like evidence concerning Mr. Haase's complaint, evidence about Ms. Fanelli's complaint is irrelevant to the issues at trial and is nothing more than inadmissible bad character evidence. Finally, any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, undue delay and wasting time. Again, like Mr. Haase's complaint, this evidence will just lead to a mini-trial on whether Ms. Fanelli and other unnamed employees were owed wages, which will distract from the myriad issues the jury is required to determine in this complex criminal case.

Thus, this evidence should be excluded.

### E.     Motion *in Limine* #5: Expert testimony by Gerald Fujimoto must be limited to the topic of "forensic accounting."

On June 29, 2023, the government gave Mr. Rothenberg written notice that it intended to call

forensic accountant Gerald Fujimoto as an expert witness. *See* Fakhoury Dec., Exh. O. Mr. Fujimoto had previously written a 46-page expert report, dated May 23, 2019, in the SEC civil suit. *See S.E.C. v. Rothenberg*, 4:18-CV-05080-JST, Dkt. 84. In connection with the criminal case, Mr. Fujimoto prepared a 169-page expert report, dated June 28, 2023, that is listed as Exhibit 511 in the government's exhibit list. *See* Fakhoury Dec., Exh. P. In its letter, the government explained "the May 23, 2019 Export Report and the June 28, 2023 Expert Report constitute a complete statement of all opinions that the United States will elicit from Mr. Fujimoto and the bases and reasons for them." *See* Fakhoury Dec., Exh. O at 1. The expert report, in turn, notes the "scope of assignment" was to "perform a forensic accounting analysis" based on Mr. Fujimoto's "38 years of experience in conducting audits, forensic accounting investigations and litigation consulting." *See* Fakhoury Dec., Exh. O at US-GTF-000002, 000008. On August 29, 2023, counsel for the government emailed defense counsel and stated the government did not intend to admit Mr. Fujimoto's report into evidence. *See* Fakhoury Dec., ¶ 18.

Any expert testimony from Mr. Fujimoto must meet the four requirements set forth in Federal Rule of Evidence 702, which are (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The rule "embodies the twin concerns of reliability . . . and helpfulness." *Stillwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (internal quotation marks omitted). "A court may exclude testimony that falls short of achieving either end." *Id.* The proponent of the expert "has the burden of proving admissibility." *Lust By and Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Mr. Fujimoto's report contains several claims that are far beyond "forensic accounting analysis," the only "specialized knowledge" he possesses, and are thus inadmissible under Rule 702. Examples include Mr. Fujimoto (1) opining that a statement by Mr. Rothenberg that a particular investment is "our most popular co-investment" was not true because only one other investor had made an investment at that point, Fakhoury Dec., Exh. O at US-GTF-000051; (2) believing that a particular "sale does not make business sense," Fakhoury Dec., Exh. O at US-GTF-000079, and (3)

1   claiming that emails meant "Mr. Rothenberg knew" a particular fact, or "demonstrate knowledge"

2   about particular facts. Fakhoury Dec., Exh. O at US-GTF-000029, 000091.

3         These opinions are nothing more than Mr. Fujimoto expressing his opinion about Mr.

4   Rothenberg's guilt, something he specifically cannot do. *United States v. Alonso*, 48 F.3d 1536, 1540

5   (9th Cir. 1995) ("It is well established that an expert may not state his opinion about the defendant's

6   guilt."). "[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the

7   trier of fact to be admissible." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060

8   (9th Cir. 2008) (quoting *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir.

9   1988) (quotations omitted)).

10        Any testimony by Mr. Fujimoto that strays beyond the sources and flow of money between

11  various financial accounts and business entities, and instead purports to express an opinion about the

12  veracity of statements or whether a certain person had knowledge of a particular fact is improper

13  expert testimony and thus inadmissible. *See Carter v. Johnson & Johnson*, 2022 WL 5046117, at *3

14  (D. Nev. Sept. 30, 2022) (limiting expert opinion because the "expert report implies that he could

15  cross over into [defnedant's] state of mind, and the Court finds he will be precluded from speculating

16  on what [defendant] knew or intended" and finding that "expert testimony that is simply narrating

17  what has been said in internal…documents is…not be helpful to a jury.").

18  **F.    Motion *in Limine* #6: Witnesses should be excluded.**

19        Federal Rule of Evidence 615 provides that "[a]t the request of a party the court shall order

20  witnesses excluded so that they cannot hear the testimony of other witnesses." Rule 615 makes the

21  exclusion of witnesses mandatory upon request and the Ninth Circuit has referred to witness

22  exclusion as a "right." *United States v. Ell*, 718 F.2d 291, 292 (9th Cir. 1983) ("The rule makes the

23  exclusion of witnesses a matter of right and the decision is no longer committed to the court's

24  discretion as it once was.").

25        Mr. Rothenberg requests this Court exclude witnesses from all stages of the trial, both before

26  and after their testimony, and direct witnesses to not read transcripts of testimony or discuss their

27  testimony with anyone other than counsel. The government did not object to the exclusion of

28  witnesses at the first trial. *See* Dkt. 145 at 8.

DEFENDANT'S MOTIONS IN LIMINE FOR TRIAL ON COUNTS 3-23
*United States v. Rothenberg*, 4:20-CR-00266-JST

15

**G.    Motion *in Limine* #7: The superseding indictment should not be sent to the jury room.**

While the Court maintains discretion as to whether to submit the Indictment to the jury, *United States v. Polizzi*, 500 F.2d 856, 876 (9th Cir. 1974), the Ninth Circuit's Jury Procedure Manual cautions against it. *See* Jury Instructions Committee of the Ninth Circuit, A Manual on Jury Trial Procedures § 4.6 (2013) ("the Committee believes that great caution should be exercised in providing a jury with the indictment since it is frequently cast in highly prejudicial language.").[2]

Mr. Rothenberg requests this Court not send the superseding indictment into the jury room, particularly given the fact that the superseding indictment contains allegations in Counts One and Two that are not before this jury. The government did not object to a similar request at the first trial. *See* Dkt. 145 at 11.

**CONCLUSION**

For the foregoing reasons, Mr. Rothenberg respectfully requests that the Court grant his motions *in limine*. He also requests the opportunity to file additional motions *in limine* once the government has filed its witness list.

Dated:    August 31, 2023                              Respectfully submitted,


Hanni M. Fakhoury
Nathaniel J. Torres
Attorneys for Michael Rothenberg

---

[2] Available at https://cdn.ca9.uscourts.gov/datastore/district/MJTP.pdf.