

# ROTHENBERG VENTURES 2015 FUND, LLC

### SUMMARY OF PRINCIPAL TERMS
(January 15, 2015)

| | |
|---|---|
| **Fund:** | Rothenberg Ventures 2015 Fund, LLC, a Delaware limited liability company (the "Fund"). |
| **Purpose:** | The Fund will invest primarily in equity securities, including convertible debt securities, of privately held companies. The Fund is a Delaware limited liability company and has its headquarters in San Francisco, CA. |
| **Manager:** | The Fund's Manager is Rothenberg Ventures Management Company, LLC (the "Manager"), an entity managed by Mike Rothenberg. The Fund has entered into an agreement with the Manager for management and operating services. |
| **Members:** | Private, high net-worth individuals (or their estate planning vehicles), institutions, and corporations that qualify as "accredited investors" within the meaning of the United States Securities Act of 1933 (the "Members"). |
| **Fund Size:** | The target size of the Fund is $25 million to $50 million. |
| **Minimum Capital Commitment Per Member:** | $250,000 per Member subject to waiver in the Manager's sole discretion, for example founders of technology companies may commit as little $100,000.<br><br>Members not needing a waiver will receive co-investment notification rights. |
| **Manager's Capital Commitment:** | Manager and its designated partners will contribute 5% of the fund size or at least $500,000. |
| **Closing Date:** | The Fund's initial closing will occur on January 15, 2015, with a final closing October 30, 2015, subject to extension at the Manager's sole discretion until December 31, 2015. |
| **Term:** | The Term of the Fund will be ten years from the formation of the Fund, with the Manager having the sole discretion to extend the term for up to two periods of one year each, and thereafter with the consent of a majority in interest of the Members. |

WELLS-000001

| | | | | | |
|---|---|---|---|---|---|
| **Units:** | The Units will be issued at a price of $1.00 per Unit except as specified in this table: | | | | |

| Month | $1,000,000 or more committed | Less than $1,000,000 committed | Month | $1,000,000 or more committed | Less than $1,000,000 committed |
|---|---|---|---|---|---|
| **January** | $0.80/unit | $0.80/unit | **July** | $0.88/unit | $0.90/unit |
| **February** | $0.80/unit | $0.82/unit | **August** | $0.89/unit | $0.92/unit |
| **March** | $0.80/unit | $0.84/unit | **September** | $0.90/unit | $0.94/unit |
| **April** | $0.82/unit | $0.86/unit | **October** | $0.92/unit | $0.96/unit |
| **May** | $0.84/unit | $0.88/unit | **November** | $0.94/unit | $0.98/unit |
| **June** | $0.86/unit | $0.89/unit | **December** | $0.96/unit | $1.00/unit |

The first month in which a Member has signed all the required documents and wired the required funds (the initial Capital Contribution in 2015) will determine the month for the unit price, with the Manager having sole discretion to allow for a grace period of 3 business days.

The total amount of Capital Committed by the Member and all immediately family members before the end of 2015, including any unpaid fees, will determine the amount contributed for the unit price.

**Distribution of Profits:** The Manager may make annual distributions of profits to the Members. All such distributions will be made as follows: after returning to the Members their total Cash Contributions to date, eighty percent (80%) will go to the Members in a pro rata proportion to the number of Units held by each at the time of the distribution and twenty percent (20%) ("Carried Interest") will go to the Manager. If the Fund returns a total of more than three times the Fund Size, the Carried Interest will be thirty percent (30%).

**Management Fee:** For Members making Capital Contributions equal to their Capital Commitment up front, there will be no need to contribute additional capital in the future and the Fund will pay upfront the cumulative management fee of 2% each year over 10 years.

Alternatively, Members making Capital Commitments of at least $500,000 may defer a portion of their Capital Commitment as follows. The Initial Capital Contribution made in 2015 will be distributed to cover the 80% of the Capital Commitment due to the Fund for investment, 2% of the Capital Commitment due to the management company for fees in 2015 and 2% of the Capital Commitment due to the management company for fees in 2016. At the beginning of the year 2017 and at the beginning of each following year through 2024, a total of eight years, the Member will make additional Capital Contribution Calls equal to 2% of the Capital Commitment. At the Manager's sole discretion, any distributions of profits or capital to Members who are subject to these Capital Contribution Calls may be applied first to the account of those Members as payment of current and future scheduled Capital Contribution Calls obligations of the Member, applied first to the earliest obligations of the Members.

WELLS-000002

| | |
|---|---|
| **Management:** | The Manager has the exclusive authority to manage and operate the Fund, with Members not being eligible to participate in the management of the Fund, to act for the Fund, or to vote on Fund matters except as specifically provided under applicable law or in the Fund's operating agreement. |
| **Expenses:** | The Manager will pay all of its own normal operating expenses, including employee salaries, rent, communications expenses, those related to administrative, clerical and related support services, office space and facilities, and utilities and telephones of the Management Company.  The Fund will pay all other expenses. |
| **Allocations of Profit and Loss:** | Generally, the Manager will allocate all profits and losses (and items thereof) of the Fund to the Members so as to, as nearly as possible, increase or decrease, as the case may be, each Member's Capital Account to the extent necessary such that each Member's Capital Account is equal to the amount that such Member would receive if the Fund were dissolved, its assets sold for their book value, its liabilities satisfied in accordance with their terms, and all remaining amounts distributed to the Members in accordance with the terms regarding the Distribution of Profits, as above. |
| **Liability of Members:** | Except as required by law, no Member will be personally liable for any debt, obligation, or liability of the Fund, whether that liability or obligation arises in contract, tort, or otherwise. |
| **Tax Distributions:** | The Manager will use its commercially reasonable effort, for each taxable year, to cause the Fund to distribute to each Member, on an annual and timely basis, taking into consideration the due dates for estimated tax payments, an amount equal to such Member's (or any Person whose tax liability is determined by reference to the income of a Member) estimated federal, state and local income tax liability (and applicable self employment taxes) resulting from such Member's income taxable to such Member for such taxable year (or applicable period), as determined by the Manager (taking into consideration any information provided in writing by such Member to the Fund). |
| **Clawback:** | The Manager will be subject to an after-tax clawback to the extent the Manager has received Carried Interest distributions in excess of the portion of cumulative net profits of the Fund due as per the Distribution of Profits term. |
| **Limited Recycling Right:** | The proceeds of any investment in a Portfolio Company that is the subject of an acquisition or other liquidation event prior to the end of the Fund's Term will be retained by the Fund and available for re-investment in other Portfolio Companies, up to 110% of a Member's Management Fee during the Term, with Manager seeking to limit the amount to 100% as reasonably practicable.  Any amount greater than that will require specific permission from the Member in question. |

WELLS-000003

| | |
|---|---|
| **Reports and Audits:** | The Fund will file all reports and documents required to be filed, by the Act or otherwise, with any governmental agency. At least annually, the Fund will compile information concerning the Fund's operations necessary for the completion of the Members' federal and state income tax returns but will not be required to undertake any audits until the fund size is at least $25 million. |
| **Information on Related Entities:** | ***Funds I and II.*** The Manager manages Rothenberg Ventures Fund I, LLC, a fund formed in September 2012 ("Fund I") and Rothenberg Ventures Fund II, LLC, a fund formed in September 2013 ("Fund II"). As of January 15, 2015, the funds and their affiliated co-investment funds have approximately $2 million remaining to invest of the approximately $20 million raised. |
| | ***Co-Investment Funds.*** Investment allocations in Portfolio Companies received by the Fund that exceed the Fund's desired investment goals may be offered to Members selected and in amounts determined in the sole discretion of the Manager. Members contributing $250,000 or more will be automatically eligible for consideration. |
| | ***Rothenberg Investments.*** Mike Rothenberg manages Rothenberg Investments MG Inc., a Texas corporation with real estate holdings in Texas. |
| | ***Rothenberg Ventures LLC.*** Mike Rothenberg manages Rothenberg Ventures LLC, a Delaware corporation involved in real estate transactions in California. Rothenberg Ventures LLC intends to purchase, optimize, and keep renting the Manager's current offices, thereby benefiting both the Manager and Members by allowing for expense reduction, enhanced event hosting, and the leasing of space to startups. |
| | ***Bend Reality.*** The Manager manages Bend Reality LLC, a Delaware corporation formed for the purpose of enhancing the Manager's branding and positioning in the virtual reality sector. |
| | ***General.*** The Members, the Manager, and their respective affiliates may make investments on behalf of themselves or other funds which they manage. Some of these investments could be suitable for the Fund; however, the Fund will derive no economic benefit from such investments made by other parties except to the extent the Fund invests in such investments. |
| **Fiscal Year:** | Calendar year (except as otherwise required by law). |
| **Amendments:** | In general, the Fund's operating agreement may be amended only with the consent of the Manager and a majority-in-interest of the Members. |

WELLS-000004

CONFIDENTIAL PRIVATE OFFERING MEMORANDUM

JANUARY 15, 2015

# ROTHENBERG VENTURES 2015 FUND, LLC,

### a Delaware limited liability company

# ROTHENBERG VENTURES MANAGEMENT COMPANY, LLC
### Manager

*This Confidential Private Offering Memorandum of Rothenberg Ventures 2015 Fund, LLC is dated as of January 15, 2015 (the "Memorandum"). All references herein to "the Memorandum" or "this Memorandum" shall refer to this Confidential Private Offering Memorandum.*

OHSUSA:760506733.2
28277-1

WELLS-000018

# ROTHENBERG VENTURES 2015 FUND, LLC,

## a Delaware limited liability company

## INVESTOR SUITABILITY STANDARDS

INVESTOR WITH SUBSTANTIAL MEANS; ILLIQUIDITY OF INVESTMENT. INVESTMENT IN ROTHENBERG VENTURES 2015 FUND, LLC (THE "*FUND*") IS SUITABLE ONLY FOR SOPHISTICATED, WELL-INFORMED INVESTORS WHO HAVE NO NEED FOR LIQUIDITY IN THIS INVESTMENT AND WHO HAVE ADEQUATE MEANS OF PROVIDING FOR THEIR ANNUAL NEEDS AND CONTINGENCIES. THE INVESTOR MUST HAVE KNOWLEDGE OF FINANCE, SECURITIES AND INVESTMENTS GENERALLY, AND THE INVESTOR'S PROPOSED INVESTMENT IN THE FUND MUST NOT BE MATERIAL WHEN COMPARED TO THE INVESTOR'S TOTAL FINANCIAL CAPACITY. ALL PROSPECTIVE INVESTORS MUST BE "ACCREDITED INVESTORS," AS THAT TERM IS DEFINED UNDER RULE 501 OF REGULATION D AS PROMULGATED BY THE SECURITIES & EXCHANGE COMMISSION (THE "*SEC*") UNDER THE SECURITIES ACT OF 1933 (THE "*SECURITIES ACT*").

INVESTOR REPRESENTATIONS; MANAGER'S DISCRETION TO ACCEPT OR REJECT SUBSCRIPTIONS. BY INVESTING IN THE FUND, EACH INVESTOR REPRESENTS TO THE FUND'S MANAGER (THE "*MANAGER*") AND THE FUND THAT SUCH INVESTOR MEETS THESE STANDARDS. THE MANAGER WILL NOT ACCEPT SUBSCRIPTIONS FROM ANY PERSON OR ENTITY WHICH DOES NOT REPRESENT THAT SUCH STANDARDS ARE MET. THE MANAGER IN ITS SOLE DISCRETION MAY REJECT SUBSCRIPTIONS, IN WHOLE OR IN PART. IF THE OFFERING IS OVERSUBSCRIBED, THE MANAGER, IN ITS SOLE DISCRETION, WILL DETERMINE WHICH SUBSCRIPTIONS SHALL BE ACCEPTED.

ABILITY AND WILLINGNESS TO ACCEPT RISKS. THE ECONOMIC BENEFIT FROM AN INVESTMENT IN THE FUND DEPENDS UPON MANY FACTORS BEYOND THE CONTROL OF THE MANAGER AND ITS AFFILIATES OR THE FUND. INVESTMENTS IN PRIVATE START-UP VENTURES INVOLVE A HIGH DEGREE OF BUSINESS AND FINANCIAL RISK THAT CAN RESULT IN SUBSTANTIAL LOSSES. (SEE "CERTAIN RISK FACTORS.") ACCORDINGLY, THE SUITABILITY OF INVESTING IN THE FUND FOR ANY PARTICULAR INVESTOR WILL DEPEND UPON, AMONG OTHER THINGS, SUCH INVESTOR'S INVESTMENT OBJECTIVES AND SUCH INVESTOR'S ABILITY TO ACCEPT SPECULATIVE RISKS. INVESTMENT IN THE FUND IS NOT SUITABLE FOR INVESTORS SEEKING CURRENT INCOME.

ABILITY TO ACCEPT LIMITATIONS ON TRANSFERABILITY. INVESTORS MAY NOT BE ABLE TO LIQUIDATE THEIR INVESTMENT IN THE EVENT OF AN EMERGENCY OR FOR ANY OTHER REASON BECAUSE THERE IS NOT NOW ANY PUBLIC MARKET FOR THE INVESTMENT AND IT IS NOT ANTICIPATED THAT ONE WILL DEVELOP. IN ADDITION, INVESTORS HAVE NO RIGHT TO WITHDRAW FUNDS FROM THE

WELLS-000019

FUND.  MOREOVER, THE TRANSFERABILITY OF THE INVESTMENT IS SUBJECT TO CERTAIN RESTRICTIONS IN THE FUND AGREEMENT.

MINIMUM STANDARDS ONLY.    THESE  SUITABILITY  STANDARDS  REPRESENT MINIMUM  STANDARDS  FOR  PROSPECTIVE  INVESTORS.    THE  SATISFACTION  OF SUCH STANDARDS BY A PROSPECTIVE INVESTOR DOES NOT NECESSARILY MEAN THAT  INVESTMENT  IN  THE  FUND  IS  A  SUITABLE  INVESTMENT  FOR  THAT INVESTOR.    EACH  PROSPECTIVE  INVESTOR  SHOULD  DETERMINE  INDEPEND-ENTLY  WHETHER  AN  INVESTMENT  IN  THE  FUND  IS  SUITABLE  FOR  THAT INVESTOR IN LIGHT OF THE INVESTOR'S OWN PERSONAL CIRCUMSTANCES.

NO PUBLIC OFFERING.  NO ACTION HAS BEEN TAKEN THAT WOULD PERMIT A PUBLIC OFFERING OF THE INTERESTS IN ANY JURISDICTION WHERE ACTION FOR THAT PURPOSE WOULD BE REQUIRED.  THE FUND WILL NOT BE REGISTERED AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT OF 1940. THE INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SEC OR THE SECURITIES COMMISSIONER OR REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION (INCLUDING ANY NON-U.S. JURISDICTION), NOR HAS THE  SEC  OR  ANY  REGULATORY  AUTHORITY  OF  ANY  STATE  OR  OTHER JURISDICTION (INCLUDING ANY NON-U.S. JURISDICTION) PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM.  ANY REPRESENTATION TO THE  CONTRARY  IS  A  CRIMINAL  OFFENSE.    THIS  MEMORANDUM  DOES  NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH THE OFFER OR SOLICITATION IS REQUIRED TO BE QUALIFIED OR TO ANY PERSON TO WHOM SUCH AN OFFER OR SOLICITATION IS UNLAWFUL.

NO REGISTRATION OF INTERESTS.  THE INTERESTS HAVE NOT BEEN REGISTERED UNDER  THE  SECURITIES  ACT,  AND  MAY  NOT  BE  TRANSFERRED  WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR PURSUANT TO AN EXEMPTION THEREFROM.    VARIOUS  STATE  LAWS  OR  LAWS  OF  NON-U.S.  JURISDICTIONS RELATING  TO  THE  SALE  OF  SECURITIES  MAY  ALSO  REQUIRE  COMPLIANCE BEFORE ANY TRANSFER OF THE INTERESTS IS EFFECTED.  NO INTEREST MAY BE TRANSFERRED WITHOUT THE WRITTEN CONSENT TO SUCH TRANSFER BY THE MANAGER, WHICH MAY REQUIRE INVESTOR(S) TO SUPPLY TO THE FUND WITH AN  OPINION  OF  COUNSEL  SATISFACTORY  TO  THE  FUND  STATING  THAT  A PROPOSED TRANSFER OF INTERESTS BY SUCH INVESTORS WILL NOT VIOLATE APPLICABLE    FEDERAL    AND    STATE    SECURITIES    LAWS    OR    REQUIRE REGISTRATION UNDER ANY SUCH LAWS.

THIS  MEMORANDUM  MAY  INCLUDE  "FORWARD-LOOKING  STATEMENTS"  AS THAT TERM IS USED IN SECURITIES LAWS.  IN SOME CASES, YOU CAN IDENTIFY FORWARD-LOOKING STATEMENTS BY TERMINOLOGY SUCH AS "ANTICIPATES," "BELIEVES,"  "ESTIMATES,"  "SEEKS,"  "EXPECTS,"  "PLANS,"  "WILL,"  "INTENDS" AND SIMILAR EXPRESSIONS.  ALTHOUGH THE MANAGER BELIEVES THAT THE EXPECTATIONS REFLECTED IN THOSE FORWARD-LOOKING STATEMENTS ARE REASONABLE,  SUCH  EXPECTATIONS  MAY  PROVE  TO  BE  INCORRECT.      FOR INFORMATION ABOUT FACTORS THAT COULD CAUSE THE FUND'S ACTUAL

WELLS-000020

RESULTS TO DIFFER FROM THE EXPECTATIONS STATED IN THE FORWARD-LOOKING STATEMENTS, SEE THE TEXT IN SECTION ENTITLED "CERTAIN RISK FACTORS." THE MANAGER URGES YOU TO CONSIDER THOSE FACTORS CAREFULLY IN EVALUATING THE FORWARD-LOOKING STATEMENTS CONTAINED IN THIS MEMORANDUM. ALL SUBSEQUENT WRITTEN OR ORAL FORWARD-LOOKING STATEMENTS ATTRIBUTABLE TO THE MANAGER OR THE FUND OR ANY PERSONS ACTING ON BEHALF OF THE MANAGER OR THE FUND ARE EXPRESSLY QUALIFIED IN THEIR ENTIRETY BY THESE CAUTIONARY STATEMENTS. THE FORWARD-LOOKING STATEMENTS INCLUDED IN THIS MEMORANDUM ARE MADE ONLY AS OF THE DATE OF THIS MEMORANDUM. THE MANAGER, THE FUND AND ITS MANAGEMENT DO NOT INTEND, AND UNDERTAKE NO OBLIGATION, TO UPDATE THESE FORWARD-LOOKING STATEMENTS.

WELLS-000021

## CONFIDENTIALITY AND RESTRICTIONS ON
## USE AND DISTRIBUTION

This Memorandum is submitted in connection with an offering of interests ("*Interests*") in the Fund and may not be reproduced or used, in whole or in part, for any other purpose. The Interest will be denominated in Units in the Fund.

This Memorandum and all matters contained herein are confidential and proprietary. Each person receiving a copy hereof, by accepting such delivery, shall be deemed to have agreed not to disclose or use any of the information contained herein except for the purpose of evaluating an investment in the Fund, and shall further agree not to distribute this Memorandum, or any reproduction of it, to any other person or entity.

Statements in this Memorandum are made as of the date hereof and do not include information relating to events occurring subsequent to its date. Unless stated otherwise herein, neither the delivery of this Memorandum at any time, nor any sale hereunder, shall under any circumstances create an implication that the information contained herein is correct as of any time subsequent to the date of this Memorandum.

Prospective investors must not construe the contents of this Memorandum as legal, tax, or investment advice. Each prospective investor should consult its own counsel, accountant, tax, business, or investment advisor as to the legal, tax, and related consequences of an investment in the Interests described by this Memorandum. Neither the Manager nor its affiliates or principals makes any representation regarding the legality of an investment in the Interests described herein under any law or regulation of any jurisdiction.

Any questions regarding this Memorandum should be addressed to the Manager.

WELLS-000022