1  Richard A. Lapping (SBN: 107496)
       Rich@TrodellaLapping.com
2  Robert A. Trodella (SBN: 184081)
       Rob@TrodellaLapping.com
3  TRODELLA & LAPPING LLP
   540 Pacific Avenue
4  San Francisco, CA 94133
   Telephone: (415) 399-1015
5
6  Attorneys for Plaintiff Transcend VR, LLC
7
8
9
10

**FILED**
San Francisco County Superior Court

FEB 08 2017

CLERK OF THE COURT
BY: _Chalene Johnson_
                    Deputy Clerk

11

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| 11  TRANSCEND VR, LLC, a Nevada limited liability company, <br><br> 12 <br> 13         Plaintiff, <br> 14    v. <br> 15  MICHAEL B. ROTHENBERG, an individual, and BEND REALITY LLC, d/b/a RIVER STUDIOS, a California limited liability company, and DOES 1 through 20, <br> 16 <br> 17         Defendants. | CASE NO. **CGC-17-557005** <br><br> **COMPLAINT FOR BREACH OF CONTRACT, BREACH OF WARRANTIES, AND INTENTIONAL MISREPRESENTATION, FRAUD AND DECEIT** |

18
19
20        Plaintiff Transcend VR, LLC ("Plaintiff"), alleges and states as follows:

21                              **THE PARTIES**

22        1.    Plaintiff is a Nevada limited liability company with its principal place of business in

23  the State of Nevada.

24        2.    Defendant Michael B. Rothenberg, also known as Mike Rothenberg ("Rothenberg"),

25  is a citizen of the United States domiciled in San Francisco, California.

26        3.    Defendant Bend Reality LLC ("River Studios") is a California limited liability

27  company doing business as "River Studios" with its principal place of business in San Francisco,

28  California. Plaintiff is informed and believes, and thereon alleges, that River Studios was

                                        1
                                    Complaint

1  formerly organized as a limited liability company under the laws of the state of Delaware by the

2  name "River Studios, LLC," and was re-formed as a limited liability company in and under the

3  laws of the state of California under the name set forth in the caption to this Complaint.

4      4.    The true names and capacities, whether individual, corporate, associate or otherwise,

5  of defendants Does 1 through 20, inclusive, are unknown to Plaintiff who, therefore, sues said

6  defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that

7  each defendant designated herein as a fictitiously named defendant is, in some manner,

8  responsible for the events and happenings referred to in this Complaint, either or both

9  contractually or tortiously, and caused the damages to Plaintiff as alleged in this Complaint.

10  When Plaintiff ascertains the true names and capacities of Does 1 through 20, it will ask leave of

11  this Court to amend this Complaint by setting forth the same.

12      5.    Plaintiff is informed and believes and thereon alleges that, at all times herein

13  mentioned, each defendant named in the caption of this Complaint, which is incorporated herein

14  by this reference, was and is the agent, servant or employee of one or more of the other

15  defendants, and all of the things alleged to have been done by said defendants were done in that

16  capacity.

17                                    **VENUE**

18      6.    Each defendant resides or has its principal place of business in the City and County

19  of San Francisco. Thus, pursuant to California Code of Civil Procedure section 395.5, venue is

20  proper in this Court.

21                            **FACTUAL BACKGROUND**

22  **A.    Summary of Claims**

23      7.    Plaintiff's claims involve a combination of contract breaches and fraud. Plaintiff

24  was falsely led to believe that it was the first non-founder investor in River Studios, a virtual-

25  reality company formed by Rothenberg. In fact, Plaintiff is informed and believes, and thereon

26  alleges, that Rothenberg had already diverted funds from another investment vehicle managed by

27  him to capitalize River Studios. Rothenberg knew that if he disclosed this fact to Plaintiff,

28  Plaintiff would not have invested.

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

US-FBI-007364

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

8.     Plaintiff's investment occurred in February 2016 and took the form of a $2 million convertible promissory note. It agreed to advance the loan to River Studios based on representations that, aside from the company's founder, Rothenberg, no one other than Plaintiff then held a right to River Studios' equity interests. This fact was important because of the debt's equity-conversion feature. That feature provides a formula by which the unpaid amount of the loan would convert into equity should River Studios later obtain further financing, measured at a minimum of $5 million in new proceeds. The fewer the shares (or rights to them) by the time of the next qualified financing, the more shares would be issued to Plaintiff.

9.     The debt component of Plaintiff's financing was of at least equal importance to Plaintiff. It therefore bargained for the right to be repaid in cash, and with interest, within three years of the loan's funding, or immediately should insolvency-type events occur. The importance placed on its right to repayment is underscored by the fact that Plaintiff required, and obtained, a personal guaranty from Rothenberg.

10.     Just months after having funded on the loan, a blizzard of media reports depicted a type of shell game perpetrated by Rothenberg across his various business interests, widespread employee departures, and that litigation had ensued. To quell alarm from investors in the various limited partnerships that Rothenberg managed—one of which Plaintiff has invested in—Rothenberg admitted that the capitalization representation provided to Plaintiff was false, that River Studios was not only in "serious jeopardy," its value had been "reduced to cost," and that equity holdings in that company could "disappear."

11.     Plaintiff has therefore brought this action to enforce its contractual rights under the note and guaranty, and its rights as party that was intentionally and fraudulently misled to its detriment.

**B.     The Note**

12.     On February 24, 2016, Plaintiff and River Studios, made, executed and entered into that certain Convertible Promissory Note (the "Note"), whereby Plaintiff agreed to loan the principal amount $2 million to River Studios (the "Loan"). In exchange, and subject to the Note's equity-conversion feature, River Studios promised to repay the Loan on the third anniversary of

US-FBI-007365

1   the Loan's funding, together with interest at the rate of 5% per annum from February 26, 2016. A

2   true and correct copy of the Note is attached hereto as **Exhibit A** and is incorporated herein by this

3   reference.

4        13.    Pursuant to the terms of the Note, River Studios agreed that if it committed "any act

5   of bankruptcy"—separate and aside from the actual filing of a voluntary or involuntary petition—

6   the Loan and unpaid interest would become "immediately due and payable." As used in the Note,

7   an "act of bankruptcy" includes acts beyond that of "the filing by or against the Company [River

8   Studios] of a petition in bankruptcy," or the making of a "general assignment for the benefit of

9   creditors" (which are separate grounds for acceleration). [Note § 2(b).]

10        14.    In the Note, Rothenberg, in his capacity as the manager and on behalf of River

11   Studios, made a series of representations to Plaintiff to induce Plaintiff to make the Loan,

12   including that Rothenberg:

> holds One Hundred Percent (100%) of equity interests of the Company [River
> Studios]. There are no outstanding options, warrants, other securities or rights to
> acquire equity securities of the Company or which are convertible into or
> exchangeable for equity securities of the Company.

16   [Note § 5(g).]

17        15.    River Studios further represented that:

> No actions (including, without limitation, derivative actions), suits, proceedings or
> investigations are pending or, to the knowledge of the Company, threatened in
> writing against the Company at law or in equity in any court or before any other
> governmental authority that (i) if adversely determined might reasonably be
> expected to (alone or in the aggregate) result in a material liability . . .

22   [Note §5(f).]

23        16.    River Studios provided Plaintiff with a "warranty" in support of each of

24   these representations. [Note at § 5.]

25        17.    These representations and warranties were critical to Plaintiff and formed the bases

26   for Plaintiff's agreement to advance funds to River Studios. Plaintiff intended to and bargained

27   for the right to be the sole initial non-founder investor in River Studios given the economic benefit

28   this would have in connection with the equity-conversion feature of the Note, and knew that the

Trulella & Lappling LLP
540 Pacific Avenue
San Francisco, CA 94133

US-FBI-007366

)

1   value of its interest in River Studios would be diminished by the existence of other claimants or

2   parties in interest with respect to the equity and assets of River Studios, and that company's ability

3   and willingness to perform its obligations under the Note.

4         18.   Relying on these representations and their supporting warranties, on February 26,

5   2016, Plaintiff advanced the entirety of the $2 million principal amount of the Loan to River

6   Studios.

7   **C.   The Guaranty**

8         19.   In support of the Loan, Rothenberg made, executed and delivered that certain

9   Guaranty dated February __, 2016,[1] in favor of Plaintiff (the "<u>Guaranty</u>").  A true and correct copy

10  of the Guaranty is attached here as **Exhibit B** and is incorporated herein by this reference.

11        20.   Pursuant to the Guaranty, Rothenberg unconditionally and irrevocably guaranteed

12  and promised to pay the outstanding principal and unpaid interest under the Note to Plaintiff "if

13  the Company [River Studios] has insufficient assets to perform and discharge" such obligations

14  "promptly when due." Rothenberg also agreed to pay the "reasonable legal fees and expenses"

15  incurred by Plaintiff to enforce the Guaranty, and waived any requirement that Plaintiff "exhaust

16  any remedy before proceeding against Guarantor [Rothenberg]." [Guaranty ¶ 2.]

17  **D.   Plaintiff Learns of Defendants' Breach and of Acts of Bankruptcy**

18        (1)   Misrepresentation – Rothenberg did not hold 100% of the Equity Interests

19        21.   Contrary to the representation made in the Note, the beneficial interests in River

20  Studios was not 100% owned by Rothenberg.  Plaintiff learned of this fact after having made the

21  Loan.

22        22.   By way of example, on August 21, 2016, and again on August 23, 2016, in emails

23  addressed to limited partners in Rothenberg's venture funds (including to Plaintiff, an investor in

24  one such fund), Rothenberg disclosed that over a two-year period—*i.e.*, as far back as 2014—

25  Rothenberg's venture funds had invested $5 million in River Studios, which the venture funds had

26  the "economic rights to," *i.e.*, the beneficial ownership.

27        23.   Plaintiff is informed and believes, and thereon alleges, that an entity by the name of

28

[1] The day in "February __, 2016" in the Guaranty was left blank when signed by Rothenberg.

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

US-FBI-007367

1   Frontier Technology Venture (or Frontier Technology Venture Capital, LLC) closed on a note that

2   is convertible to equity on or before the date that Plaintiff funded the Loan.

3                    (2)    Acts of Bankruptcy and "Alter Ego"

4          24.    In these and other emails from Rothenberg to his investors, Rothenberg admitted

5   that widespread employee departures had occurred, and that going forward River Studios would

6   be forced to rely on independent contractors should projects come in. Rothenberg described the

7   fact that employee attrition and working capital needs had put River Studios in "jeopardy," and

8   that he now valued River Studios "at cost," and that equity investments in the company could very

9   well "disappear."

10         25.    Plaintiff is informed and believes, and thereon alleges, that River Studios and the

11  various entities managed by Rothenberg or affiliated with River Studios, failed to pay back wages

12  to employees, resulting in claims filed with the California Division of Labor Standards and

13  Enforcement, as well as litigation in the San Francisco Superior Court.

14         26.    For example, an action seeking class certification for at least fifty employees is

15  pending against parties affiliated with the defendants, which Plaintiff on information and belief

16  understands directly or indirectly employed the personnel for River Studios (the "Fanelli

17  Complaint"). [San Francisco Superior Court, Case No. 16-554609.] The Fanelli Complaint

18  alleges that from at least 2012, the defendants in that action failed and refused to pay employees

19  for their earned wages and benefits, and that such failure was part of a scheme to obtain work

20  without having to issue payment.

21         27.    In fact, Plaintiff is informed and believes, and thereon alleges, that River Studios

22  quitclaimed valuable intellectual property to at least one employee to avoid suit for failure to pay

23  amounts owing.

24         28.    Plaintiff is informed and believes, and thereon alleges that another former employee

25  of Rothenberg's various enterprises is David Haase, Rothenberg's former CFO. Mr. Haase sued

26  Rothenberg and, among others, a company by the name of "River Studios LLC," which is

27  apparently a Delaware limited liability company, for their failure and inability to repay

28  $109,352.20 in credit card charges (the "Haase Complaint"). [San Francisco Superior Court, Case

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

6
Complaint

US-FBI-007368

No. 16-553970.] The Haase Complaint alleges that Rothenberg and River Studios were aware that they did not have the funds to repay the credit card obligation, but nonetheless authorized expenditures that could not be repaid, and that they "fraudulently diverted funds," leaving River Studios unable to pay its credit card debt.

29.    Plaintiff is unaware whether the River Studios entity named in the Haase Complaint is the same River Studios entity named in this action (the d/b/a under which Bend Reality, LLC operates under), and in fact has now learned that there are at least two entities formed under the same or similar name, River Studios LLC, a Delaware limited liability company, and River Studios Corporation, a California corporation. What's more, Bend Reality, LLC, a Delaware limited liability company, the maker under the Note, is no longer registered in Delaware, but Bend Reality LLC, a California limited liability, was apparently formed in California two months after Plaintiff funded the Loan. Each appears to operate out of the same 1602 Fulsom Street, San Francisco address, and all appear to be managed or owned by Rothenberg.

30.    On information and belief, Plaintiff alleges that at all times relevant to this Complaint, Rothenberg treated these and other of his entities as one and the same, with complete disregard for their respective separate legal status. Indeed Mr. Haase, Rothenberg's former CFO, alleges as much in his complaint:

> Defendants RVM, Rothenberg Ventures LLC and River Studios LLC were controlled by Defendant Michael Rothenberg, that Michael Rothenberg commingled the accounts of said Defendants, and with those of other Doe Defendants, and treated such accounts as personal accounts, to such an extent that such business entities were in fact his alter ego.

[Haase Complaint, ¶ 24.]

31.    Similar to the allegations in the Haase Complaint, as noted above, Rothenberg has admitted to diverting to River Studios, at least $5 million from the funds of limited partnerships that he manages. Plaintiff is informed and believes, and thereon alleges, that Rothenberg diverted those funds without the knowledge or consent of the funds' limited partners.

32.    Plaintiff is informed and believes, and thereon alleges, that River Studios was at all times relevant to this Complaint, the alter ego of Rothenberg, that there was such unity of interest and ownership that the separate personalities of River Studios and Rothenberg no longer exist, that

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

7
Complaint

US-FBI-007369

1   adherence to the fiction of separate existence would, under the circumstances, promote fraud or

2   injustice, and that the bases for these allegations include that:

3          (a)     Rothenberg dominated, influenced and controlled River Studios, including

4   that of its employees, officers, affairs, business and properties.

5          (b)     Rothenberg commingled the bank accounts of his various entities, River

6   Studios, and those of his own, and treated such accounts as his personal accounts.

7          (c)     Rothenberg diverted loan proceeds intended for one or more of the entities

8   that he controls, without the knowledge or consent of his investors or lenders, to pay or otherwise

9   benefit himself.

10          (d)     Rothenberg, his various funds, and River Studios, purport to operate out of

11   the same office and with the same personnel.

12          (e)     Income of River Studios was diverted by Rothenberg to himself,

13   individually, or to other of his interests.

14          (f)     River Studios was engaged in business with capitalization totally inadequate

15   for the requirements of its business.

16          (g)     River Studios is insolvent.

17          In short, Plaintiff appears to have engaged in a scheme whereby he has created multiple

18   entities under his common control, while treating them and their assets as one and the same, for

19   his personal benefit, and to the detriment of others, including Plaintiff.

20                          **FIRST CAUSE OF ACTION**
                       **Breach of Contract – Promissory Note**
21                        **(Against Defendant River Studios)**

22          33.     Plaintiff realleges and incorporates herein by reference, each allegation set forth in

23   paragraphs 1 through 32, inclusive, as if fully set forth herein.

24          34.     Under the provisions of the Note, the entire unpaid principal sum of the Note

25   together with accrued and unpaid interest, became immediately due and payable upon the

26   commission of any "act of bankruptcy" by River Studios.

27          35.     Plaintiff is informed and believes, and thereon alleges, that River Studios has

28   committed acts of bankruptcy in that it is insolvent and that, while insolvent, River Studios has

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

8
Complaint

US-FBI-007370

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

1   terminated all or substantially all of its employees, has failed to pay statutorily required wages,

2   abandoned or terminated all or substantially all of its incomplete projects, transferred valuable

3   assets to third parties, including intellectual property rights, without receiving fair or adequate

4   consideration, and is generally not paying its undisputed debts as such debts become due.  In

5   addition, by transferring the funds of unrelated limited partnership funds to and for the benefit of

6   River Studios, Rothenberg and River Studios have subjected River Studios to the prospect of

7   fraudulent conveyance and other related actions.

8   36.   As a result of the foregoing commission by River Studios of one or more acts of

9   bankruptcy, the entire unpaid principal sum of the Note, together with accrued and unpaid interest,

10  is now due and payable.

11  37.   Plaintiff has duly performed all of the conditions precedent on its part required to be

12  performed under the terms of the Note.

13  38.   The equity conversion feature of the Note failed to occur.

14  39.   River Studios has made no payments to Plaintiff under the Note.

15  40.   Prior to the commencement of this action, Plaintiff made demand on River Studios

16  for payment of the obligations sued upon herein based upon the Note.  River Studios has failed,

17  refused and neglected to pay said sum or any sum.

18  **SECOND CAUSE OF ACTION**
19  **Breach of Representation – Promissory Note**
    **(Against All Defendants)**

20  41.   Plaintiff realleges and incorporates herein by reference, each allegation set forth in

21  paragraphs 1 through 40, inclusive, as if fully set forth herein.

22  42.   In the Note, Rothenberg, in his capacity as the manager and on behalf of River

23  Studios, represented to Plaintiff that Rothenberg:

24  holds One Hundred Percent (100%) of equity interests of the Company [River
25  Studios].  There are no outstanding options, warrants, other securities or rights to
    acquire equity securities of the Company or which are convertible into or
26  exchangeable for equity securities of the Company.

27  43.   This representation (the "capitalization representation") concerned facts and

28  information that were material to Plaintiff's decision to make the Loan in that a characteristic of

9
Complaint

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

1  the Note was that Plaintiff had the right to convert the Loan into the equity securities of River

2  Studios under a formula that benefited early investors, and the value of its interest in River Studios

3  would be diminished by the existence of other claimants or parties in interest with respect to the

4  equity and assets of River Studios, and its ability and willingness to perform its obligations to

5  Plaintiff under the Note. Indeed, Plaintiff relied upon the capitalization representation in agreeing

6  to extend the Loan to River Studios. Had Plaintiff known that others had rights to the equity in

7  River Studios, Plaintiff would not have made the Loan.

8      44.    In fact, the capitalization representation was false when made and continues to be

9  false.

10     45.    Because the capitalization representation was false, River Studios is in material

11  breach of the Note and Plaintiff has incurred damages in that but for the capitalization

12  representation, it would not have made the Loan, and the equity conversion rights are worth

13  significantly less than what Plaintiff paid.

14     46.    Plaintiff is informed and believes, and thereon alleges, that Rothenberg is the alter ego

15  of River Studios, that there was such unity of interest and ownership that the separate personalities

16  of River Studios and Rothenberg no longer exist, that adherence to the fiction of separate existence

17  would, under the circumstances, promote fraud or injustice, and Rothenberg is therefore personally

18  liable for the acts of River Studios. Rothenberg's domination and control of River Studios, and the

19  actions taken by him affecting the viability of the company, were wrongful and resulted in harm to

20  Plaintiff.

21                    **THIRD CAUSE OF ACTION**
                **Breach of Representation – Promissory Note**
22                      **(Against All Defendants)**

23     47.    Plaintiff realleges and incorporates herein by reference, each allegation set forth in

24  paragraphs 1 through 46, inclusive, as if fully set forth herein.

25     48.    In the Note, Rothenberg, in his capacity as the manager and on behalf of River

26  Studios, represented to Plaintiff that:

27      No actions (including, without limitation, derivative actions), suits, proceedings or
       investigations are pending or, to the knowledge of the Company, threatened in
28      writing against the Company at law or in equity in any court or before any other

US-FBI-007372

governmental authority that (i) if adversely determined might reasonably be
expected to (alone or in the aggregate) result in a material liability . . .

[Note § 5(f).]

49.    Plaintiff is informed and believes, and thereon alleges, that this representation (the
"litigation representation") was false when made and continues to be false. By way of example,
Plaintiff is informed and believes, and thereon alleges, that before entering into the Note, River
Studios was engaged in a scheme whereby it systematically and deliberately failed to pay common
law and statutorily required wages to employees that it directly or indirectly hired. River Studios
necessarily would possess the full information concerning the facts alleged. The time-period
alleged in the Fanelli Complaint, however, suggests that River Studios and Rothenberg knew or
should have known that the litigation representation was false when made, or omitted material
facts so as not to make that representation misleading.

50.    Information regarding allegations of widespread failure to pay employee wages
would have been material to Plaintiff's decision to enter into the Note and make the Loan, and
otherwise invest in River Studios. Had River Studios or Rothenberg disclosed such facts to
Plaintiff, Plaintiff would not have entered into the Note or made the Loan.

51.    Because the litigation representation was false, or omitted material facts necessary to
make that representation not misleading, River Studios is in material breach of the Note, and
Plaintiff has incurred damages in that but for the litigation representation, it would not have made
the Loan.

52.    Plaintiff is informed and believes and thereon alleges that Rothenberg is the alter
ego of River Studios, that there was such unity of interest and ownership that the separate
personalities of River Studios and Rothenberg no longer exist, that adherence to the fiction of
separate existence would, under the circumstances, promote fraud or injustice, and Rothenberg is
therefore personally liable for the acts of River Studios. Rothenberg's domination and control of
River Studios, and the actions taken by him affecting the viability of the company, were wrongful
and resulted in harm to Plaintiff.

///

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

US-FBI-007373

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

## FOURTH CAUSE OF ACTION
### Breach of Warranty – Promissory Note
### (Against All Defendants)

53.  Plaintiff realleges and incorporates herein by reference, each allegation set forth in paragraphs 1 through 52, inclusive, as if fully set forth herein.

54.  In the Note, River Studios warranted to Plaintiff that Rothenberg:

holds One Hundred Percent (100%) of equity interests of the Company [River Studios]. There are no outstanding options, warrants, other securities or rights to acquire equity securities of the Company or which are convertible into or exchangeable for equity securities of the Company.

55.  This capitalization representation was false when made and continues to be false. By providing a warranty as to the accuracy of this representation, River Studios agreed to indemnify Plaintiff should the capitalization representation prove false or misleading.

56.  Plaintiff is informed and believes and there alleges that Rothenberg is the alter ego of River Studios, that there was such unity of interest and ownership that the separate personalities of River Studios and Rothenberg no longer exist, that adherence to the fiction of separate existence would, under the circumstances, promote fraud or injustice and Rothenberg is therefore personally liable for the acts of River Studios. Rothenberg's domination and control of River Studios, and the actions taken by him affecting the viability of the company, were wrongful and resulted in harm to Plaintiff.

## FIFTH CAUSE OF ACTION
### Breach of Warranty – Promissory Note
### (Against All Defendants)

57.  Plaintiff realleges and incorporates herein by reference, each allegation set forth in paragraphs 1 through 56, inclusive, as if fully set forth herein.

58.  In the Note, River Studios warranted to Plaintiff that:

No actions (including, without limitation, derivative actions), suits, proceedings or investigations are pending or, to the knowledge of the Company, threatened in writing against the Company at law or in equity in any court or before any other governmental authority that (i) if adversely determined might reasonably be expected to (alone or in the aggregate) result in a material liability.

59.  Plaintiff is informed and believes, and thereon alleges, that this litigation

US-FBI-007374

representation was false when made and continues to be false. By providing a warranty as to the

accuracy of this representation, River Studios agreed to indemnify Plaintiff should the litigation

representation prove false or misleading.

60.     Plaintiff is informed and believes and thereon alleges that Rothenberg is the alter

ego of River Studios, that there was such unity of interest and ownership that the separate

personalities of River Studios and Rothenberg no longer exist, that adherence to the fiction of

separate existence would, under the circumstances, promote fraud or injustice and Rothenberg is

therefore personally liable for the acts of River Studios. Rothenberg's domination and control of

River Studios, and the actions taken by him affecting the viability of the company, were wrongful

and resulted in harm to Plaintiff.

**SIXTH CAUSE OF ACTION**
**Breach of Contract - Guaranty**
**(Against Rothenberg)**

61.     Plaintiff realleges and incorporates herein by reference, each allegation set forth in

paragraphs 1 through 60, inclusive, as if fully set forth herein.

62.     Pursuant to the terms of the Guaranty, Rothenberg unconditionally and irrevocably

guaranteed to Plaintiff that if River Studios did not have sufficient assets to promptly repay the

Loan's unpaid principal and interest when due, Rothenberg would pay those obligations to

Plaintiff upon demand.  Under the provisions of the Note, the entire unpaid principal sum of the

Note, together with accrued and unpaid interest, became immediately due and payable upon the

commission of an act of bankruptcy by River Studios.

63.     Plaintiff is informed and believes, and thereon alleges that River Studios has

committed one or more acts of bankruptcy in that it is insolvent and that, while insolvent, River

Studios terminated all or substantially all of its employees, abandoned or terminated its

uncompleted projects, transferred valuable assets, including intellectual property rights, to third

parties without receiving fair or adequate consideration, and is generally not paying its undisputed

debts as such debts become due.  In addition, by transferring the funds of unrelated limited

partnership funds to and for the benefit of River Studios, Rothenberg and River Studios have

subjected River Studios to the prospect of fraudulent conveyance and other related actions.

13
Complaint

Trudells & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

US-FBI-007375

64.     As a result of the commission by River Studios of one or more acts of bankruptcy, the entire unpaid principal sum of the Note together with accrued and unpaid interest is now due and payable.

65.     Plaintiff is informed and believes and thereon alleges that River Studios has insufficient assets to perform and discharge promptly when due the obligations of River Studios to Plaintiff under the Note.

66.     Plaintiff has duly performed all of the conditions precedent on its part required to be performed under the terms of the Note and the Guaranty.

67.     The equity conversion feature of the Note failed to occur.

68.     River Studios has made no payments to Plaintiff under the Note.

69.     Rothenberg has made no payments under the Guaranty.

70.     Prior to the commencement of this action, Plaintiff made demand on Rothenberg for payment of the obligations sued upon herein based upon the Guaranty.  Rothenberg has failed, refused and neglected to pay said sum or any sum.

71.     Pursuant to the terms of the Guaranty, Rothenberg agreed to pay Plaintiff the reasonable costs and expenses, including reasonable legal fees and expenses, incurred by Plaintiff following a demand upon Rothenberg in any proceeding brought by Plaintiff to enforce the Guaranty.  The sum of not less than $50,000 should be allowed as a reasonable fee to Plaintiff for its attorneys' fees herein.

## SEVENTH CAUSE OF ACTION
### Intentional Misrepresentation, Fraud and Deceit
### (Against All Defendants)

72.     Plaintiff realleges and incorporates herein by reference, each allegation set forth in paragraphs 1 through 71, inclusive, as if fully set forth herein.

73.     In the Note, River Studios and Rothenberg each represented to Plaintiff that Rothenberg personally held 100% of the equity interests of River Studios and that there were no outstanding options, warrants, other securities or rights to acquire equity securities of River Studios, or that were convertible into or exchangeable for equity securities of River Studios.

74.     That "capitalization representation" by River Studios and Rothenberg was false.  By

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

14
Complaint

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

1   way of example, on August 21, 2016, and again on August 23, 2016, in emails addressed to

2   limited partners in Rothenberg's venture funds, Rothenberg disclosed that over a two-year period,

3   one or more of Rothenberg's venture funds had invested $5 million in River Studios, such that one

4   or more of these funds held economic rights, *i.e.*, beneficial ownership, in and to the equity

5   interests of River Studios.

6       75.    Plaintiff is informed and believes, and thereon alleges, that some or all of the

7   investments by Rothenberg's funds occurred before either or both the date that River Studios

8   executed the Note on February 24, 2016, and the date that Plaintiff advanced the Loan to River

9   Studios on February 26, 2016.

10      76.    River Studios and Rothenberg knew that the capitalization representation was false

11  when it was made, or made the capitalization representation recklessly and without regard for the

12  truth.

13      77.    River Studios and Rothenberg intended that Plaintiff rely on the capitalization

14  representation to induce Plaintiff to enter into the Note and to advance the Loan to River Studios,

15  which Plaintiff would not have done if it knew the true facts.

16      78.    The capitalization representation concerned facts and information that were material

17  to Plaintiff's decision to make the Loan in that a characteristic of the Note was that Plaintiff had

18  the right to convert the Loan into the equity securities of River Studios under a formula that

19  benefited early investors, and the value of its interest in River Studios would be diminished by the

20  existence of other claimants or parties in interest with respect to the equity and assets of River

21  Studios, and its ability and willingness to perform its obligations to Plaintiff under the Note.

22      79.    Plaintiff had no knowledge or other information that the capitalization representation

23  was false and reasonably relied on River Studios' and Rothenberg's representation in agreeing to

24  enter into the Note and to make the Loan.

25      80.    In fact, the capitalization representation was false when made and continues to be

26  false.

27      81.    Because the capitalization representation was false, River Studios is in material

28  breach of the Note and Plaintiff has incurred damages in that but for the capitalization

15
Complaint

1    representation, it would not have made the Loan, and the equity conversion rights are worth

2    significantly less than what Plaintiff paid.

3         82.    Plaintiff was harmed as a result of the false representation by River Studios and

4    Rothenberg, in that a characteristic of the Note was that Plaintiff had the right to convert the Loan

5    into the equity securities of River Studios under a formula that benefited early investors, and the

6    value of its interest in River Studios through the Note was diminished by the existence and rights

7    of other claimants or parties in interest with respect to the equity interests and assets of River

8    Studios, its operations, and its ability and willingness to perform its obligations under the Note.

9         83.    Plaintiff's reliance on River Studios' and Rothenberg's representation was a

10    substantial factor in causing harm and damages to Plaintiff.

11                               **PRAYER FOR RELIEF**

12    WHEREFORE, Plaintiff prays for judgment as follows:

13    **On the First Cause of Action against defendant River Studios:**

14        1.    For the pincipal sum of $2,000,000.00, plus interest until paid in full or the date of

15    entry of judgment according to proof to be presented at the time of trial and/or entry of judgment;

16        2.    For costs of suit herein incurred; and

17        3.    For such other and further relief as this Court may deem just and proper.

18    **On the Second, Third, Fourth and Fifth Causes of Action against all defendants:**

19        1.    For the pincipal sum of $2,000,000.00, plus interest until paid in full or the date of

20    entry of judgment according to proof to be presented at the time of trial and/or entry of judgment;

21        2.    For costs of suit herein incurred; and

22        3.    For such other and further relief as this Court may deem just and proper.

23    **On the Sixth Cause of Action against defendant Rothenberg:**

24        1.    For the pincipal sum of $2,000,000.00, plus interest until paid in full or the date of

25    entry of judgment according to proof to be presented at the time of trial and/or entry of judgment;

26        2.    For reasonable attorneys' fees in the sum of not less than $50,000.00;

27        3.    For costs of suit herein incurred; and

28        4.    For such other and further relief as this Court may deem just and proper.

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

US-FBI-007378

**On the Seventh Cause of Action against all defendants:**

1.    For the pincipal sum of $2,000,000.00, plus interest until paid in full or the date of entry of judgment according to proof to be presented at the time of trial and/or entry of judgment;

2.    For puntive or exemplary damages;

3.    For costs of suit herein incurred; and

3.    For such other and further relief as this Court may deem just and proper.

Dated: February 8, 2017                              TRODELLA & LAPPING LLP

By:    _____
                Robert Trodella
                Attorneys for Plaintiff
                Transcend VR, LLC

US-FBI-007379

Exhibit A to Complaint

[Note]

Trodella & Lapping LLP
540 Pacific Avente
San Francisco, CA 94133

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

Exhibit A to Complaint [Note]

US-FBI-007380

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH SALE OR DISTRIBUTION MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933, AS AMENDED.

## CONVERTIBLE PROMISSORY NOTE

**$2,000,000**              San Francisco, California              February 24, 2016
                                                                   (the "Effective Date")

NOW, THEREFORE, in exchange for good and valuable consideration, Company and Holder agree to the following terms of this agreement in its entirety (this agreement, the "Note"):

1.     **Defined Terms.** The following capitalized terms will have the terms ascribed to them below.

(a)     **"Cap"** means an amount, in U.S. dollars, equal to $90,000,000.

(b)     **"Change of Control"** means any "person" or "group" (within the meaning of Section 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended), becomes the "beneficial owner" (as defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended), directly or indirectly, of more than 50% of the outstanding voting securities of the Company having the right to vote for the election of or to designate the Manager of the Company, except as a result of repurchases or redemptions of voting securities by the Company.

(c)     **"Company"** means Bend Reality, LLC, which is a limited liability company incorporated in the State of Delaware, doing business as River Studios.

(d)     **"Discount Rate"** means an amount equal to 20%.

(e)     **"Holder"** means Transcend VR, LLC, a Nevada limited liability company.

(f)     **"Manager"** means the manager of the Company, initially Mike Rothenberg.

(g)     **"Next Equity Financing"** means the Company's next sale of its equity securities that occurs in either a single transaction or a series of related transactions, yielding new proceeds to the Company of an amount, in U.S. dollars, equal to at least $5,000,000 in the aggregate, not including the conversion of any notes or this Note and any other indebtedness converted into or exchanged for equity securities of the Company in such single transaction or series of related transactions.

US-FBI-007381

(h)   "**Total Investment**" means the amount that Holder is investing in Company under this Note an amount in U.S. dollars equal to $2,000,000.

2.   **Investment Operation.**

(a)   **Interest.** Company promises to repay to Holder the Total Investment plus any accrued and unpaid interest. Interest shall accrue from the Funding Date (as defined below) on the unpaid principal amount at a rate equal to five percent (5%) per annum, on a non-compounding basis.

(b)   **Maturity.** Subject to Section 3, principal and any accrued but unpaid interest under this Note shall be due and payable upon demand by the Holder at any time after the three calendar year anniversary of the Funding Date (the "**Maturity Date**"); provided, however, that the Holder may extend the Maturity Date for this Note, in which case, references in this Note to "Maturity Date" shall be to the extended Maturity Date. Notwithstanding the foregoing, the entire unpaid principal sum of this Note, together with accrued and unpaid interest thereon, shall become immediately due and payable upon the commission of any act of bankruptcy by the Company, the execution by the Company of a general assignment for the benefit of creditors, the filing by or against the Company of a petition in bankruptcy or any petition for relief under the federal bankruptcy act or the continuation of such petition without dismissal for a period of 90 days or more, or the appointment of a receiver or trustee to take possession of the property or assets of the Company.

3.   **Conversion.**

(a)   **Methods of Conversion.**

(i)   **Next Equity Financing Conversion.** If any portion of the outstanding principal amount of and all accrued but unpaid interest on this Note (together, the "**Conversion Amount**") remains outstanding at the time of the Next Equity Financing prior to the Maturity Date, then the entire Conversion Amount shall be converted into fully paid and nonassessable shares of the Company's equity securities (the "**Equity Securities**") issued and sold at the close of the Company's Next Equity Financing that occurs prior to the Maturity Date. The number of shares of Equity Securities to be issued upon conversion of this Note shall be equal to the quotient obtained by dividing (1) the Conversion Amount by (2) the Conversion Price (as defined below). For purposes of this Note, the "**Conversion Price**" shall be equal to the lesser of (i) the price per share (or per unit) of the Equity Securities paid by the investors in such Next Equity Financing multiplied by the percentage obtained from subtracting the Discount Rate from one hundred percent (100%) and (ii) the price per share (or per unit) obtained by dividing (x) the remainder of the Cap reduced by an amount equal to twenty percent (20%) of the Cap by (y) the fully diluted capitalization of the Company immediately prior to the consummation of the Next Equity Financing (based on the sum of (A) all outstanding common equity securities of the Company, (B) the number of shares (or units) of common equity securities issuable assuming full exercise or conversion of all outstanding options, warrants, rights or other securities exercisable for or convertible into common equity securities of the Company (other than the Note and any other notes on other indebtedness exchanging or converting at the Next Equity Financing), and (C) all options, warrants or rights to purchase

US-FBI-007382

equity securities that remain unissued but reserved for issuance under a stock option plan, restricted stock plan, equity incentive plan or similar plan of the Company, excluding any stock option plan, restricted stock plan, equity incentive plan or similar plan created or increased in connection with the Next Equity Financing (if applicable), this price per share (or per unit), the price determined under this clause (y) being the "**Target Share Price**"). Upon such conversion of this Note, the Holder hereby agrees to execute and deliver to the Company all transaction documents related to the Next Equity Financing, including a purchase agreement and other ancillary agreements ("**Next Equity Financing Documents**"), with customary representations and warranties and transfer restrictions (including a lock-up agreement in connection with an initial public offering not in excess of the lesser of 180 days and the number of days directors of the Company and its senior management are required to be locked up), and Company warrants that such Equity Securities and Next Equity Financing Documents shall have the same terms, rights, privileges and conditions as the securities received, and agreements entered into, by the other purchasers of the Equity Securities. If the Equity Securities are preferred stock of the Company ("**New Preferred Stock**") then the New Preferred Stock issued upon conversion of this Note shall be of the same class of New Preferred Stock purchased by investors in the Next Equity Financing but shall be designated as a separate series of New Preferred Stock that shall have the same rights and preferences of the New Preferred Stock purchased by new purchasers in the Next Equity Financing, except that the "**Original Issue Price**" of the series New Preferred Stock issued to the Holder, as set forth in the Company's then-current Operating Agreement (or Certificate of Incorporation if the Company shall have reorganized as a corporation) for the purposes of calculating liquidation preferences, conversion ratios, anti-dilution adjustments, dividends and the like, will be the Conversion Price.

(ii)     **No Next Equity Financing.** If the Next Equity Financing does not occur on or before the Maturity Date, then the Conversion Amount as of the Maturity Date shall be converted as of the Maturity Date into fully paid and nonassessable shares (or units) of the Company's common equity securities at a price per share (or per unit) equal to the Target Share Price. Notwithstanding the foregoing, upon mutual consent of the Company and Holder, all or a portion of the Conversion Amount then outstanding may be repaid on the Maturity Date and, if less than the entire Conversion Amount then outstanding is repaid by the Company, then the remaining balance shall be converted at a price per share (or per unit) determined in accordance with this Section 3(a)(ii).

(iii)    **Change of Control Conversion.** Company must provide Holder at least fifteen (15) business days' written notice in advance of any Liquidation Transaction (as defined below) specifying the date on which any such Liquidation Transaction is expected to become effective. If a Liquidation Transaction is consummated prior to later of the Maturity Date and the consummation of the Next Equity Financing, then this Note shall, at the option of the Holder, convert into fully paid and nonassessable shares (or units) of the Company's common equity securities (or directly into merger proceeds paid to the holders of the Company's common equity securities) immediately prior to such Liquidation Transaction, at a price per share (or per unit) equal to the lesser of the current price per share (or per unit) of the Company's common equity securities as determined by the Liquidation Transaction and the Target Share Price.

US-FBI-007383

(1)    If the Holder does not elect to convert this Note in connection with such a Liquidation Transaction, then Holder shall be entitled to receive, prior to and in preference to any distribution to the holders of the common equity securities of the Company, an amount equal to one times (1x) the outstanding portion of the Total Investment, plus any accrued and unpaid interest (or, if greater, the cash amount that the Holder would have received had the Holder converted the Note pursuant to Section 3(a)(ii) immediately prior to the Liquidation Transaction and sold the shares received on such conversion at the price per share determined by the Liquidation Transaction).

**"Liquidation Transaction"** means a Change of Control or a liquidation, dissolution, change of control, or winding up of the Company, which shall be deemed to occur if (a) the Company shall sell, convey, exclusively license or otherwise dispose of all or substantially all of its property or business or reorganize, merge with or into or consolidate with any other corporation, limited liability company or other entity (other than a wholly-owned subsidiary of the Company), or (b) the shareholders of the Company sell the Company's stock in a transaction or series of transactions that has the effect of transferring the Company's business, provided that none of the following shall be considered a Liquidation Transaction: (i) a merger effected exclusively for the purpose of changing the domicile of the Corporation, (ii) an equity financing in which the Company is the surviving corporation, (iii) a transaction in which the shareholders of the Company immediately prior to the transaction own 50% or more of the voting power of the surviving entity following the transaction.

(b)    **Mechanics and Effect of Conversion**. No fractional shares (or units) of the Company's equity securities will be issued upon conversion of this Note. In lieu of any fractional share (or unit) to which the Holder would otherwise be entitled, the Company will pay to the Holder in cash the amount of the unconverted principal and interest balance of this Note that would otherwise be converted into such fractional share (or unit). Upon conversion of this Note pursuant to this Section 3, the Holder shall surrender this Note, duly endorsed, at the principal offices of the Company or any transfer agent of the Company (or a notice to the effect that the original Note has been lost, stolen or destroyed and an agreement acceptable to the Company whereby Holder agrees to indemnify the Company from any loss incurred by it in connection with this Note). At its expense, the Company will, as soon as practicable thereafter, issue and deliver to the Holder, at such principal office, a certificate or certificates for the number of shares (or units) to which the Holder is entitled upon such conversion, together with any other securities and property to which the Holder is entitled upon such conversion under the terms of this Note, including a check payable to the Holder for any cash amounts payable as described herein. Upon conversion of this Note, the Company will be forever released from only its financial obligations and liabilities described in this Note with regard to that portion of the principal amount and accrued interest being converted; including without limitation the obligation to pay such portion of the principal amount and accrued interest. Nothing in the previous sentence is to be interpreted to release the Company from any other financial obligations, nor other continuing obligations, warrants, or covenants contained in this Note or any other agreement, express or implied.

(c)    **Payment of Interest**. Upon conversion of the principal amount of this Note into the Company's equity securities, any interest accrued on this Note that is not by reason

316320360. 5                                    4

US-FBI-007384

of Section 3(a) hereof simultaneously converted into equity securities shall be immediately paid to the Holder.

4. **Payments Between Parties**. All payments shall be made in the lawful money of the United States of America in such methods as the Holder hereof may, from time to time, designate in writing to the Company.

(a) **Payments from Company**. Any payment from Company to Holder shall be credited first to the accrued interest then due and payable and the remainder applied to principal. This Note may not be prepaid without the written consent of the Holder.

(b) **Total Investment Payment**. Payment from Holder to Company in satisfaction of the amount of Total Investment shall be sent no later than February 26, 2016 (the **"Funding Date"**).

5. **Representations, Warranties and Covenants of the Company**. The Company hereby represents and warrants to the Holder that:

(a) **Organization, Good Standing and Qualification**. The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite power and authority to carry on its business as now conducted and as proposed to be conducted. The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure so to qualify could reasonably be expected to have a material adverse effect on its business or properties.

(b) **Authorization**. The execution, delivery and performance by the Company of the Note and the consummation of the transactions contemplated thereby are within the power of the Company. The equity securities issuable upon conversion of the Note, have been and will have been duly authorized by the Manager of the Company and all requisite action of members of the Company. The Company has not obtained the necessary corporate approvals for the authorization of any shares (or units) of its equity securities, and a sufficient number of shares (or units) of equity securities has not been authorized under the Company's Operating Agreement to provide for the issuance of such shares (or units) upon conversion of the Notes. The Note, when executed and delivered by the Company, shall constitute valid and legally binding obligations of the Company, enforceable against the Company in accordance with their respective terms except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and other laws of general application affecting enforcement of creditors' rights generally, and as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

(c) **Maintenance**. The representations and warranties contained herein shall be true on and as of the Effective Date with the same effect as though such representations and warranties were made on and as of that same date.

(d) **Qualifications**. All authorizations, approvals or permits, if any, of any governmental authority or regulatory body of the United States or of any state or any other person that are required in connection with the lawful issuance and sale of the Securities pursuant to this Note shall be obtained and effective as of the Effective Date.

316320360. 5                                     5

US-FBI-007385

(e)      **Non-Contravention.** The execution and delivery by the Company of this Note and the performance and consummation of the transactions contemplated hereby do not and will not (i) violate the Company's governing documents or any material judgment, order, writ, decree, statute, rule or regulation applicable to the Company; or (ii) result in the creation or imposition of any lien upon any property, asset or revenue of the Company or the suspension, revocation, impairment, forfeiture, or nonrenewal of any material permit, license, authorization or approval applicable to the Company, its business or operations, or any of its assets or properties.

(f)      **Litigation.** No actions (including, without limitation, derivative actions), suits, proceedings or investigations are pending or, to the knowledge of the Company, threatened in writing against the Company at law or in equity in any court or before any other governmental authority that (i) if adversely determined might reasonably be expected to (alone or in the aggregate) result in a material liability or (ii) seeks to enjoin, either directly or indirectly, the execution, delivery or performance by the Company of this Note or the transactions contemplated hereby.

(g)      **Capitalization.** Mike Rothenberg holds One Hundred Percent (100%) of equity interests of the Company. There are no outstanding options, warrants, other securities or rights to acquire equity securities of the Company or which are convertible into or exchangeable for equity securities of the Company.

6.      **Representations, Warranties and Covenants of the Holder.** The Holder hereby represents, warrants and covenants to the Company, which representations and warranties are made as of the Effective Date, that:

(a)      **Authorization.** The Holder has full power and authority to enter into this Note. This Note, when executed and delivered by the Holder, will constitute valid and legally binding obligations of the Holder, enforceable in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance and other laws of general application affecting enforcement of creditors' rights generally and as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

(b)      **Purchase Entirely for Own Account.** This Note is made with the Holder in reliance upon the Holder's representation to the Company, which by the Holder's execution of this Note, the Holder hereby confirms, that the equity securities into which this Note converts (the "**Note Securities**") to be acquired by the Holder will be acquired for investment for the Holder's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that the Holder has no present intention of selling, granting any participation in, or otherwise distributing the same. By executing this Note, the Holder further represents that the Holder does not presently have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participation to such person or to any third person, with respect to any of the Note Securities.

(c)      **Disclosure of Information.** The Holder has had an opportunity to discuss the Company's business, management, financial affairs and the terms and conditions of the

US-FBI-007386

offering of the Note Securities with the Company's management. The Holder acknowledges it has not requested that the Company deliver a private placement or similar memorandum that typically contains disclosures about the Company and its business as required under federal and state securities laws applicable to certain public and private offerings including, but not limited to, disclosures about material risks faced by the Company and its business that would customarily come under the heading "Risk Factors" or detailed and comparative financial disclosures summarizing the Company's results of operations, financial and accounting policies and liquidity that would customarily come under the heading "Management's Discussion and Analysis of Financial Condition and Results of Operations." The foregoing, however, does not limit or modify the representations or warranties of the Company in Section 5 of this Note or the right of the Holder to rely thereon.

(d)     **Restricted Securities**. The Holder understands that the Note Securities have not been, and will not be, registered under the Securities Act, by reason of a specific exemption from the registration provisions of the Securities Act which depends upon, among other things, the bona fide nature of the investment intent and the accuracy of the Holder's representations as expressed herein. The Holder understands that the Note Securities are "restricted securities" under applicable U.S. federal and state securities laws and that, pursuant to these laws, the Holder must hold the Note Securities indefinitely unless they are registered with the Securities and Exchange Commission and qualified by state authorities, or an exemption from such registration and qualification requirements is available. The Holder acknowledges that the Company has no obligation to register or qualify the Note Securities for resale. The Holder further acknowledges that if an exemption from registration or qualification is available, it may be conditioned on various requirements including, but not limited to, the time and manner of sale, the holding period for the Note Securities, and on requirements relating to the Company which are outside of the Holder's control, and which the Company is under no obligation and may not be able to satisfy.

(e)     **No Public Market**. The Holder understands that no public market now exists for any of the securities issued by the Company, and that the Company has made no assurances that a public market will ever exist for the Note Securities.

(f)     **Legends**. The Holder understands that the Note Securities, and any securities issued in respect thereof or exchange therefor, may bear one or all of the following legends:

"THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH SALE OR DISTRIBUTION MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933."

Any legend required by the Blue Sky laws of any state to the extent such laws are applicable to the shares (or units) represented by the certificate so legended.

316320360. 5                    7

US-FBI-007387

(g)     **Accredited Investor**. The Holder is an accredited investor as defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

(h)     **Foreign Purchasers**. If the Holder is not a United States person (as defined by Section 7701(a)(30) of the Internal Revenue Code of 1986, as amended), such Holder hereby represents that it has satisfied itself as to the full observance of the laws of its jurisdiction in connection with this investment or any use of this Note, including (i) the legal requirements within its jurisdiction for entering into this investment, (ii) any foreign exchange restrictions applicable to such investment, (iii) any governmental or other consents that may need to be obtained, and (iv) the income tax and other tax consequences, if any, that may be relevant to the investment. Such Holder's investment will not violate any applicable securities or other laws of the Holder's jurisdiction.

(i)     **Investment Experience**. The Holder understands that the purchase of the Note Securities involves substantial risk. The Holder (a) has experience as an investor in securities of companies in the development stage and acknowledges that the Holder is able to fend for itself, can bear the economic risk of the Holder's investment in the Note Securities and has such knowledge and experience in financial or business matters that the Holder is capable of evaluating the merits and risks of this investment in the Note Securities and protecting its own interests in connection with this investment, and/or (b) has a pre-existing personal or business relationship with the Company and certain of its officers, directors or controlling persons of a nature and duration that enables the Holder to be aware of the character, business acumen and financial circumstances of such persons.

(j)     **No General Solicitation**. Neither the Holder, nor any of its officers, employees, agents, directors, stockholders or partners, has engaged the services of a broker, investment banker or finder to contact any potential investor nor has the Holder or any of the Holder's officers, employees, agents, directors, stockholders or partners, agreed to pay any commission, fee or other remuneration to any third party to solicit or contact any potential investor. The Holder acknowledges that it is not acquiring the Note Securities pursuant to any general solicitation and that the Holder did not (i) receive or review any advertisement, article, notice or other communication published in a newspaper or magazine or similar media or broadcast over television or radio, whether closed circuit, or generally available, with respect to the Note Securities; or (ii) attend any seminar, meeting or industry investor conference whose attendees were invited by any general solicitation or general advertising regarding the Note Securities.

7.     **Transfer; Successors and Assigns**.

(a)     Holder is defined to include each fund or entity managed by Pilot Grove Management, LLC ("**Pilot Grove**"); any general partners, managing members, or affiliates of Pilot Grove, including each entity managed by Pilot Grove or managed by the same manager or managing member or general partner or management company as Pilot Grove or by an entity controlling, controlled by, or under common control with Pilot Grove; such manager or managing member or general partner or management company; and beneficiaries of any trusts established by Pilot Grove; provided, however, that for purposes of any elections or notices

316320360. 5                                    8

pursuant to this Note, the Company shall be entitled to rely on any elections by or notices delivered by or to Pilot Grove or any proper transferees under Section 7(b).

(b)     The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Notwithstanding the foregoing, the Holder may not assign, pledge, or otherwise transfer this Note without the prior written consent of the Company, except for transfers to affiliates or any of the persons described in 7(a) above that agree in writing to be bound by the terms of this Note, including, but not limited to, any lock-up agreement entered into by the Holder in connection therewith. Subject to the preceding sentence, this Note may be transferred only upon surrender of the original Note for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Company. Thereupon, a new note for the same principal amount and interest will be issued to, and registered in the name of, the transferee. Interest and principal are payable only to the registered holder of this Note.

8.     **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law.

9.     **Notices.** Any notice required or permitted by this Note shall be in writing and shall be deemed sufficient upon receipt, when delivered personally or by courier, overnight delivery service or confirmed facsimile, or 48 hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, if such notice is addressed to the party to be notified at such party's address or facsimile number as set forth below or as subsequently modified by written notice.

10.     **Option for Additional Investment.** For the three-month period following the Effective Date, Holder shall have the option to purchase one or more additional convertible promissory notes in the aggregate principal amount of up to $3,000,000 on the same terms as those set forth in this Note (each, a "**Subsequent Note**").

11.     ***Pari Passu* Notes.** Holder and Company acknowledge and agree that the payment of all or any portion of the outstanding principal amount of this Note and all interest hereon shall be *pari passu* in right of payment and in all other respects to the other notes issued substantially contemporaneously with this Note (including any Subsequent Notes) and the aggregate amount of all such notes, this Note and the Subsequent Notes shall be capped at $20,000,000. In the event that the holder of this Note receives payments in excess of its pro rata share of the Company's payments to the holders of this Note and any such other *pari passu* notes (including any Subsequent Notes), then Holder shall hold in trust all such excess payments for the benefit of the holders of the other notes (including any Subsequent Notes) and shall pay such amounts held in trust to such other holders upon demand by such holders.

12.     **Usury.** In the event any interest is paid on this Note which is deemed to be in excess of the then legal maximum rate, then that portion of the interest payment representing an amount in excess of the then legal maximum rate shall be deemed a payment of principal and applied against the principal of this Note.

US-FBI-007389

13. **Amendments and Waivers**. Any term of this Note may be amended only with the written consent of the Company and the Holder. Any amendment or waiver effected in accordance with this Section 13 shall be binding upon the Company, each Holder and each transferee of the Note.

14. **Stockholders, Members, Officers and Directors Not Liable**. Except as otherwise may have been agreed with Holder in a separate agreement, in no event shall any stockholder, member, officer or director of the Company be liable for any amounts due or payable pursuant to this Note.

15. **Financial Statements**. The Company shall provide annual financial statements to Holder no later than 90 days after the end of each fiscal year commencing with the fiscal year in respect of which no guarantee of repayment of this Note is in effect for the benefit of the Holder.

16. **Titles and Subtitles**. The titles and subtitles used in this Note are used for convenience only and are not to be considered in construing or interpreting this Note.

17. **Counterparts**. This Note may be executed in any number of counterparts, each of which will be deemed to be an original and all of which together will constitute a single agreement.

18. **Severability**. If one or more provisions of this Note are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith, in order to maintain the economic position enjoyed by each party as close as possible to that under the provision rendered unenforceable. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Note, (ii) the balance of the Note shall be interpreted as if such provision were so excluded and (iii) the balance of the Note shall be enforceable in accordance with its terms.

19. **Waivers**. The Company hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this Note.

20. **Entire Agreement**. This Note, and the documents referred to herein constitute the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all other written or oral agreements existing between the parties hereto are expressly canceled.

*[Signature Page Follows. Remainder of this Page Left Intentionally Blank]*

US-FBI-007390

IN WITNESS WHEREOF, Holder and Company have executed this Agreement as of the Effective Date, as set forth below.

**COMPANY:**      **BEND REALITY, LLC AKA RIVER STUDIOS**

**By (sign here):**

**Name:**      **Mike Rothenberg**

**Title:**      **Manager**

**HOLDER:**      **TRANSCEND VR, LLC**

**By:**      **Pilot Grove Management, LLC**

**By (sign here):**

**Name:**

**Title:**

316320360. 5            11

US-FBI-007391

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit B to Complaint

[Guaranty]

EXHIBIT "B"

Exhibit B to Complaint [Guaranty]

US-FBI-007392

# GUARANTY

Reference is made to that certain convertible promissory note issued on the date hereof (as may be amended from time to time, the "Note") by Bend Reality, LLC, a Delaware limited liability company doing business as River Studios (the "Company") and Transcend VR, LLC a Nevada limited liability company (the "Investor").

Mike Rothenberg (the "Guarantor") hereby unconditionally and irrevocably guarantees to the Investor that if the Company has insufficient assets to perform and discharge, promptly when due, the Company's payment obligations to the Investor under Section 2(b) of the Note (the "Obligations"), then the Guarantor shall forthwith, upon demand (which demand shall be for the sole purpose of providing notice to the Guarantor and shall not require the Investor to exhaust any remedy before proceeding against the Guarantor), pay and perform and discharge the Obligations. The Guarantor shall be liable to the Investor for the reasonable costs and expenses (including, without limitation, reasonable legal fees and expenses) incurred by the Investor (following a demand upon the Guarantor) in any proceeding brought by or on behalf of the Investor to enforce this Guaranty.

The Guarantor hereby waives notice of acceptance of this Guaranty, notice of any obligations, notice of protest, notice of dishonor or nonpayment of any obligation, and any other notice to the Guarantor (other than the demand referred to above). The Guarantor hereby waives and agrees not to assert or take advantage of any rights or defenses based on any rights or defenses of the Company to the Obligations including, without limitation, any failure of consideration, any statute of limitations, any insolvency or bankruptcy of the Company or any other defense, offset or counterclaim to any liability hereunder. No invalidity, irregularity, or unenforceability of all or any part of the Obligations shall affect, impair or be a defense to this Guaranty, nor shall any other circumstance which might otherwise constitute a defense available to, or legal or equitable discharge of, the Company in respect of any of the Obligations affect, impair, or be a defense to this Guaranty. If any claim or action, or action on any judgment, based on this Guaranty is brought against the Guarantor, the Guarantor agrees not to deduct, set off or seek to counterclaim for or recoup any amounts which are or may be owed to the Guarantor by the Company.

To the maximum extent permitted by applicable law, the obligations of the Guarantor under this Guaranty shall not be affected by (i) any merger or consolidation of the Company of any affiliate thereof, (ii) the effect of any foreign or domestic laws, rules, regulation or actions of a court or governmental body other than actions taken specifically in respect of the Obligations or this Guaranty, (iii) any failure by the Company or any affiliate thereof to mitigate its damages with respect to the Obligations, or (iv) any other condition, event or circumstance which might otherwise constitute a legal or equitable discharge, release, or defense of a surety or guarantor, or which might otherwise limit recourse against the Guarantor, it being understood that this Guaranty shall not be discharged except by the full payment and performance of the Obligations.

This Guaranty shall be governed by, and construed in accordance with, the laws of the State of California. This Guaranty is entered into for the sole and exclusive benefit of the Investor and its successors and assigns permitted under the Note, and no other Person shall have

316332793.4                                              1

US-FBI-007393

any rights with respect thereto.  This Guaranty shall be binding on the Guarantor's successors, including his heirs, executors, administrators, and personal representatives.

This Guaranty shall automatically terminate and be of no further force or effect upon the earlier to occur of (i) the Company raising an aggregate investment amount (in the form of debt or equity) equal to three times (3x) the aggregate Noteholder Investment (as defined below) (such product, the "Trigger Investment Amount"), in one or more financings following the date hereof and (ii) the Company realizing at least $10 million in gross revenue in any twenty-four (24) month period following the date hereof.   For purposes of this Guaranty, the term "Noteholder Investment" means the aggregate amount invested by the Investor under the Note, which as of February 26, 2016 shall be $2 million (in which case, the Trigger Investment Amount shall be $6 million) and, pursuant to the terms of the Note, may be up to $5 million (in which case, the Trigger Investment Amount shall be $15 million).  For the avoidance of doubt, the Trigger Investment Amount shall not include all or any portion of the Noteholder Investment.

This Guaranty shall be effective as of February ____, 2016.

Mike Rothenberg

2

US-FBI-007394