<b>SETTLEMENT AGREEMENT AND RELEASE</b>

This Settlement Agreement and Release (this "Agreement") is dated October 30, 2017 (the "Effective Date"), and is entered into by and among the following parties (collectively, the "Parties" and individually, a "Party"): (1) Transcend VR, LLC, a Nevada limited liability company ("Transcend VR" or "Plaintiff"); on the one hand, and (2) River Studios LLC, a Delaware limited liability company, formerly known as Bend Reality, LLC ("River Studios"), Bend Reality, LLC, a California limited liability company ("Bend Reality") and Michael B. Rothenberg ("Rothenberg"; and together with River Studios and Bend Reality, "Defendants"), on the other hand.

<b>RECITALS</b>

**WHEREAS**, disputes have arisen between Plaintiff and Defendants as reflected in the claims and defenses asserted in that certain civil action filed in the Superior Court of the State of California, County of San Francisco (the "Court"), having the caption *Transcend VR, LLC v. Michael B. Rothenberg and Bend Reality LLC, d/b/a/ River Studios*, and a case number of CGC-17-557005 (the "Litigation").

**WHEREAS**, recognizing the uncertainty and cost of litigation, the Parties have agreed to resolve and settle the Litigation and other matters identified herein on the terms and conditions set forth in this Agreement.

**WHEREAS,** The Bend Reality, LLC (the "California LLC") named in the Litigation, which is a California limited liability company, is a different entity than the entity formerly named Bend Reality, LLC (the "Delaware LLC"), which is a Delaware entity and in which Plaintiff made a convertible note investment which is the subject of the Litigation. The California LLC has no connection to the Delaware LLC other than being a party to this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing recitals and of the conditions, covenants and agreements set forth below, the amount and sufficiency of which are hereby acknowledged, the Parties agree as follows:

<b>AGREEMENT</b>

1.  <u>Transfer of Carry Equity Units</u>.  In consideration of the release and the covenant not to sue set forth herein, River Studios will transfer and convey carry equity units with a par value carry equity unit amount of $1,200,000 (the "CEUs") to Transcend VR. The transfer of the CEUs to Transcend VR is evidenced by that certain Assignment of Carry Equity Units dated as of the Effective Date, by and among River Studios and Transcend VR, as joined by Rothenberg Ventures LLC, a Delaware limited liability company, attached hereto as <u>Exhibit A</u> (the "CEU Transfer Agreement").

2.  <u>Release by Plaintiff</u>.  Effective upon the Effective Date, Plaintiff, on behalf of themselves, and all persons or entities claiming by, through or under it, and their respective heirs, successors, assigns and affiliates (collectively, the "Plaintiff Releasing Parties"), hereby fully, completely and finally waive, release, remise, acquit, and forever discharge Defendants, as well as each of their respective managers, officers, directors, equityholders, employees, representatives,

TVR-0000031

agents and affiliates (collectively, the "Defendant Released Parties") with respect to any and all claims, demands, suits, manner of obligation, debt, liability, tort, covenant, contract, or causes of action of any kind whatsoever, at law or in equity, including without limitation, all claims and causes of action arising out of or in any way relating to the Litigation.  Plaintiff, on behalf of itself and the other Plaintiff Releasing Parties, warrants and represents that it has not assigned or otherwise transferred any claim or cause of action released by this Agreement.  The Plaintiff Releasing Parties hereby covenant and agree never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of the Defendant Released Parties, by reason of or in connection with any of the foregoing matters, claims, or causes of action, whether known or unknown, and whether direct or in contribution.

3. Release by Defendants.  Effective upon the Effective Date, Defendants, on behalf of themselves, and all persons or entities claiming by, through or under them, and each of their respective heirs, successors, assigns and affiliates (collectively, the "Defendant Releasing Parties"), hereby fully, completely and finally waive, release, remise, acquit, and forever discharge Plaintiff , as well as each of its managers, officers, directors, equityholders, employees, representatives, agents and affiliates (collectively, the "Plaintiff Released Parties"), with respect to any and all claims, demands, suits, manner of obligation, debt, liability, tort, covenant, contract, or causes of action of any kind whatsoever, at law or in equity, including without limitation, all claims and causes of action arising out of or in any way relating to the Litigation.  Defendants, on behalf of themselves and the other Defendant Releasing Parties, warrant and represent that they have not assigned or otherwise transferred any claim or cause of action released by this Agreement.  The Defendant Releasing Parties hereby covenant and agree never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of the Plaintiff Released Parties, by reason of or in connection with any of the foregoing matters, claims, or causes of action, whether known or unknown, and whether direct or in contribution.

4. California Civil Code Section 1542.  The Parties acknowledge and agree that the releases contained in this Agreement are each a general release.  Each of the Parties expressly waives and assumes the risk of any and all claims for damages that exist as of the Effective Date, but which each such Party does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and that, if known, would materially affect such Party's decision to enter into this Agreement.  The Parties expressly waive the provisions of Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

5. Excluded Claims.  Notwithstanding anything herein to the contrary, the releases and covenants not to sue described in Sections 2 and 3 above shall specifically exclude the rights, duties and obligations created by this Agreement and those created by the CEU Transfer Agreement and the Capital Commitment Waiver Agreement.

TVR-0000032

6. <u>Cross Complaint Against Third Parties</u>. To avoid the risk of certain claims being ruled as compulsory within the Litigation, Defendants have represented to Plaintiff that they may file a cross-complaint in the Litigation (the "<u>Cross Complaint</u>") against certain third parties (unrelated to Plaintiff or any of the Plaintiff Released Parties), and request that the Court extend the trial date and discovery cut-off as same would pertain to the Cross Complaint. If Defendants file the Cross Complaint and move for such other relief within thirty business days of the Effective Date, and such actions do not affect Plaintiff's rights under this Agreement or otherwise, Plaintiff will not contest such filings or requests by Defendants. For sake of clarity, Defendants may elect to pursue their claims against third parties in a lawsuit to be filed separately from this Litigation rather than filing a Cross Complaint. None of Defendants rights under this Agreement or otherwise shall be adversely effected in the event Defendants elect to file a separate lawsuit instead of a Cross Complaint.

7. <u>Dismissal of Complaint.</u> Plaintiff will file with the Court a Request for Dismissal of its complaint in the Litigation, which dismissal will not be filed before the sooner to occur of eleven business days after the Effective Date and Defendants' filing of the Cross Complaint, but in no event shall the dismissal be filed after December 1, 2017.

8. <u>No Admission of Liability</u>. Neither the payment of any sums nor the execution of this Agreement or the agreements set forth in the exhibits shall be construed as an admission of liability or fault by any Party. All liability is expressly denied by all Parties.

9. <u>Confidentiality</u>. Except for matters of public record as of the Effective Date, and to the extent necessary to advise the Court in connection with the dismissal of Plaintiff's complaint, or to otherwise enforce the terms hereof (or the terms of the agreements identified in the exhibits hereto), the Parties will keep the terms and contents of this Agreement confidential, and will not disclose the terms of this Agreement to other persons except as compelled by applicable law or to individuals who have a need to know about this Agreement and its contents, such as the Parties' respective legal counsel, tax advisors, or other retained professional representatives, all of whom shall be informed and bound by this confidentiality clause. In no event will any Party make or cause to be made any comment, written statement, or press release to any member of the media concerning the fact of this settlement or the substance or terms of this settlement.

10. <u>Joint Press Release</u>. The Parties agree to the publication of a joint press release in substantially the form as that which is attached hereto as Exhibit B.

11. <u>Authority</u>. The Parties, on behalf of themselves, represent and warrant that they possess full authority to enter into this Agreement and to lawfully and effectively release the released parties as set forth above, free of any rights of settlement, approval, subrogation, or other condition or impediment. This undertaking includes specifically, without limitation, the representation and warranty that no third party has now acquired or will acquire rights to present or pursue any claims arising from or based upon the claims that have been released herein.

12. <u>Entire Agreement</u>. The Parties represent and agree that no promise, inducement, or agreement other than as expressed herein, or as set forth in the CEU Transfer Agreement, or the Capital Commitment Waiver Agreement, have been made to them or otherwise and that this Agreement, together with such other identified agreements, is fully integrated, supersedes all prior

TVR-0000033

agreements and understandings, including without limitation, any agreements between or among the Parties, and contains the entire agreement between and among the Parties.

13. <u>Voluntary and Informed Assent</u>. Each Party represents that it has read and fully understands this Agreement, that it is competent and has the authority to enter into and sign this Agreement, and that it is executing this Agreement voluntarily, free of any duress or coercion.

14. <u>Costs, Expenses and Attorneys' Fees.</u> Each Party will bear its own costs, expenses, and attorneys' fees incurred relating to this Agreement and the agreements referenced by the exhibits hereto.

15. <u>Governing Law and Jurisdiction</u>. The laws of the State of California shall apply to and control any interpretation, construction, performance or enforcement of this Agreement. The Parties agree that the exclusive jurisdiction for any legal proceeding arising out of or relating to this Agreement shall be the San Francisco County Superior Court and all Parties hereby waive any challenge to personal jurisdiction or venue in that court. The Parties further agree that the Court currently having jurisdiction over case number CGC-17-557005 shall retain jurisdiction to enforce this Agreement pursuant to California Code of Civil Procedure §664.6 et al.

16. <u>Attorneys' Fees and Costs for Breach.</u> The prevailing Party in any action or proceeding to enforce or interpret this Agreement or the agreements referenced in the exhibits, is entitled to recover from the other Party (and, as applicable, such parties to such other agreements) its reasonable attorneys' fees.

17. <u>Construction</u>. This Agreement shall be construed as if the Parties jointly prepared it, and any uncertainty or ambiguity shall not be interpreted against any one Party.

18. <u>Modification</u>. No oral agreement, statement, promise, undertaking, understanding, arrangement, act or omission of any Party, occurring subsequent to the date hereof may be deemed an amendment or modification of this Agreement unless reduced to writing and signed by the Parties hereto or their respective successors or assigns.

19. <u>Severability</u>. The Parties agree that if, for any reason, a provision of this Agreement is held unenforceable by any court of competent jurisdiction, this Agreement shall be automatically conformed to the law, and otherwise this Agreement shall continue in full force and effect.

20. <u>Number</u>. Whenever applicable within this Agreement, the singular shall include the plural and the plural shall include the singular.

21. <u>Headings</u>. The headings of paragraphs herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

22. <u>Counterparts</u>. This Agreement may be executed in several counterparts and all counterparts so executed shall constitute one agreement binding on all the Parties, notwithstanding that all the Parties are not signatories to the original or the same counterpart. Facsimile or emailed .pdf original copies of signatures shall be accepted the same as an original signature. A photocopy of a true and correct copy of this Agreement may be used in any action brought to enforce or construe this Agreement.

23. <u>No Waiver</u>.  No failure to exercise and no delay in exercising any right, power or remedy under this Agreement shall impair any right, power or remedy that any Party may have, nor shall any such delay be construed to be a waiver of any such rights, powers or remedies or an acquiescence in any breach or default under this Agreement, nor shall any waiver of any breach or default of any Party be deemed a waiver of any default or breach subsequently arising.

[Signature page follows]

TVR-0000035

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the Effective Date.

TRANSCEND VR, LLC, a Nevada limited liability company:

_____
by: Dominic Polizzotto, its managing member



RIVER STUDIOS LLC, a Delaware limited liability company:

_____
by: Mike Rothenberg, its manager



BEND REALITY, LLC, a California limited liability company:

_____
by: Mike Rothenberg, its manager



MICHAEL B. ROTHENBERG, an individual

_____

6

TVR-0000036

**EXHIBIT A**

[CEU TRANSFER AGREEMENT]

TVR-0000037

## ASSIGNMENT OF CARRY EQUITY UNITS

THIS ASSIGNMENT OF CARRY EQUITY UNITS (this "**Assignment**") is made effective as of October 30, 2017 (the "**Effective Date**"), by and between River Studios LLC, a Delaware limited liability company ("**Transferor**") and Transcend VR, LLC, a Nevada limited liability company ("**Transferee**").  The party identified in Section 7 hereto has joined those sections of this Assignment as denoted in Section 7.

### RECITALS

A. Transferor acquired certain carry equity units with respect to Rothenberg Ventures 2015 Fund, LLC (the "**Fund**") with a par value carry equity unit amount of $1,700,000 pursuant to that certain Carry Equity Unit Purchase Agreement dated February 25, 2016, by and between Rothenberg Ventures LLC, a Delaware limited liability company (the "**Management Company**"), as seller, and Transferor (formerly known as Bend Reality, LLC), as buyer (the "**Purchase Agreement**").  Initial capitalized terms that are not defined in this Assignment have the meanings given to those terms in the Purchase Agreement.

B. Pursuant to the Purchase Agreement, Transferor is entitled to receive, subject to the terms thereof, payments from the Management Company in amounts that are derived, in part, from distributions made by the Fund to its Members.

C. Transferor desires to transfer and convey to Transferee, approximately 70% of the Carry Equity Unit Amount, or $1,200,000 of the $1,700,000 original par value Carry Equity Unit Amount (the "**Assigned CEUs**").

D. Transferor and Transferee entered into that certain Settlement Agreement and Release dated as of the Effective Date (the "**Settlement Agreement**"), which, among other things, contemplates the assignment of the Assigned CEUs to Transferee under the terms of this Assignment.

NOW, THEREFORE, in consideration of the premises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### AGREEMENT

1. <u>Assignment of the Assigned CEUs</u>.  Transferor hereby assigns, transfers, conveys and delivers to Transferee, free and clear of any liens or claims, all of Transferor's right, title and interest, in, to and under the Assigned CEUs.  Transferee hereby accepts such assignment.

2. <u>Representations, Warranties and Covenants of Transferor and Management Company</u>.  Transferor and Management Company, for themselves, each represent, warrant, covenant and agree that:

1

a. <u>Purchase Agreement</u>. Attached hereto as <u>Exhibit A</u> is a true and complete copy of the Purchase Agreement, which agreement is in full force and effect, has not been amended or modified, and constitutes the entire agreement between Transferor and Management Company with respect to the rights and obligations contemplated thereby.

b. <u>Prior Name</u>. Transferor was formerly known as Bend Reality, LLC, a Delaware limited liability company.

c. <u>No Assignment</u>. Neither Management Company nor Transferor has assigned, transferred or hypothecated its respective interest under the Purchase Agreement other than Transferor with respect to that portion of the carry equity units originally acquired by Transferor under the Purchase Agreement that do not constitute Assigned CEUs hereunder (i.e., $500,000 of the Carry Equity Unit Amount originally acquired).

d. <u>No Defaults</u>. All obligations of Transferor under the Purchase Agreement have been fully performed and neither Transferor nor Management Company are in default under the Purchase Agreement.

e. <u>Vesting</u>. All rights under the Purchase Agreement with respect to the Total Carry Payout Amount attributable to the Assigned CEUs are fully vested.

f. <u>No Payments</u>. No payment on account of the Carry Equity Unit Amount has been made under the Purchase Agreement as of the Effective Date.

g. <u>Diligence Documents</u>. Transferor has provided true and complete copies of each material contract and agreement, including the organizational documents of the Fund (other than redactions made to preserve confidentiality, the redacted text of which does not affect the rights or obligations evidenced by the Purchase Agreement), and each such contract and agreement is valid and in full force and effect.

h. <u>No Conflicts</u>. Neither the Purchase Agreement, this Assignment, nor the consummation of the transactions contemplated thereby or hereby (i) conflict with or will result in a material breach of the terms of any contract or agreement to which either Transferor or Management Company are subject or bound, violate; (ii) conflict with or will result in a breach of or default under any of the terms, conditions or provisions of the organizational documents of Transferor, Management Company, or the Fund; or (iii) violate or conflict with any term or provision of any order, ruling or judgment of any governmental authority applicable to Transferor, Management Company, or the Fund, or their respective assets.

i. <u>Entire Interest</u>. The Assigned CEUs constitute all of the carried equity interests granted by Management Company with respect to the Fund that are currently held by Transferor.

j. <u>Good Title</u>. The Assigned CEUs will, upon transfer, be duly authorized and issued, fully paid and nonassessable, and free and clear of all liens, equities, claims, charges, encumbrances and liabilities.

2

k. <u>Authorization</u>. Transferor and Management Company have full power and authority to enter into this Assignment. The execution and delivery of this Assignment constitutes a valid and binding obligation of each of them and is enforceable in accordance with its terms.

l. <u>Finders</u>. No broker or finder has acted for Transferor in connection with the transactions contemplated by this Assignment, and no broker or finder is entitled to any broker's or finder's fee or other commission in respect thereof based in any way on agreements, understandings, or arrangements with Transferor or Management Company.

m. <u>Consideration</u>. On or around February 25, 2016, Transferor paid the Total Purchase Price in good funds to Management Company. Following the assignment of the Assigned CEUs contemplated hereby, Management Company shall not be entitled to any other amounts from Transferor with respect to the Assigned CEUs.

3. <u>Representations, Warranties and Covenants of Management Company</u>. Management Company represents, warrants, covenants and agrees that:

a. <u>No Defenses</u>. Management Company has no defenses, off-sets or claims that would defeat or diminish in any respect, Transferor's rights to the Assigned CEUs under the Purchase Agreement.

b. <u>Fund's Remaining Term</u>. Management Company's payment obligations under the Purchase Agreement are coterminous with the term of the Fund, and the remaining term of the Fund is no less than seven years from the Effective Date.

c. <u>Members of the Fund</u>. There is at least one non-manager Member of the Fund.

d. <u>Independent Obligations</u>. Management Company's payment obligations under the Purchase Agreement are independent of the Fund's obligations to its Members. Other than the condition that the Fund make such distributions, there are no conditions to Management Company's payment obligations under the Purchase Agreement, including, for example, that Management Company first receive payment from the Fund.

e. <u>Manager</u>. Management Company is the Manager of the Fund and has not received notice of any action, proceeding or intention to remove it from that position.

f. <u>No Distributions</u>. As of the Effective Date, no distributions have been made by the Fund to its Members that would adversely effect the Transferee's right to the CEUs pursuant to this Agreement.

g. <u>Authority</u>. Management Company has full authority to perform its obligations under the Purchase Agreement.

3

4.      <u>Consent</u>.  Management Company hereby consents to the transfer of the Assigned CEUs, as set forth in in this Assignment, to Transferee, or its designee.  Written consent from the Management Company is required to any further transfer of all or any portion of the Assigned CEUs to any affiliate of Transferee as Transferee or its designee may determine, and will not be unreasonably withheld, provided that such subsequent transfer complies with applicable securities laws.

5.      <u>Entire Agreement</u>.  This Assignment, together with the Purchase Agreement and the Settlement Agreement, sets forth the entire agreement and understanding of the parties.

6.      <u>Exhibits</u>.  The exhibit attached hereto is hereby incorporated herein by this reference, with the same effect as if fully set forth herein.

7.      <u>Joinder</u>.  Management Company hereby joins and is a party to Sections 2, 3 and 4 of this Assignment.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have duly executed this Assignment as of the Effective Date.

"Transferor"

**River Studios LLC**, a Delaware limited liability company

By: *[signature]*
Name: Michael Rothenberg
Title: Manager

"Transferee"

**Transcend VR, LLC**, a Nevada limited liability company

By: *[signature]*
Name: Dominic Polizzotto
Title: Managing Member

For purposes of Section 7 only:

"Management Company"

**Rothenberg Ventures LLC**, a Delaware limited liability company

By: *[signature]*
Name: Michael Rothenberg
Title: Manager

5

**EXHIBIT A1**
[Purchase Agreement]

6

TVR-0000043

# CARRY EQUITY UNIT PURCHASE AGREEMENT

This Carry Equity Unit Purchase Agreement (this "<u>Agreement</u>") is made as of February 25, 2016, by and between Rothenberg Ventures Management Company, LLC, a Delaware limited liability company (the "<u>Company</u>"), and Bend Reality, LLC (the "Buyer").

1.  **Specific Definitions.**

    | | |
    |---|---|
    | The "Buyer": | Bend Reality, LLC |
    | "Date of Purchase": | February 25, 2016 |
    | "Carry Equity Unit Amount": | $1,700,000 |
    | "Total Purchase Price": | $1,700,000 |
    | "Fund": | Rothenberg Ventures 2015 Fund LLC |

2.  **Carry Equity Units.** As consideration for the Total Purchase Price to be provided by Buyer, the Company hereby agrees to pay to the Total Carry Payout Amount according to the terms of this Agreement, including but not limited to the vesting terms set forth herein. The "Total Carry Payout Amount" shall mean an amount equal to the Carry Equity Unit Amount multiplied by the Rate of Return, as determined by the Manager at the relevant times on an aggregate basis and taking into account prior payments made to Buyer pursuant to this Agreement. The "Rate of Return" shall mean an amount expressed as a percentage equal to the quotient obtained by dividing (i) the sum of (but not below zero) the aggregate amount of distributions made by the Fund to its Members (other than the Company) with respect to their Interests in the Fund, minus the aggregate amount of capital contributions made by such Members to the Fund, by (ii) the aggregate amount of capital contributions made by such Members to the Fund. By way of example, if the Fund returns $90,000,000 to its Members (other than the Company) and such Members had made aggregate capital contributions of $10,000,000 to such fund, then the Rate of Return shall be 800%, i.e. ($90,000,000 - $10,000,000)/$10,000,000.

3.  **Vesting and Payouts.** The Total Carry Payout Amount shall be fully vested upon purchase. The vested portion of the Total Carry Payout Amount will be paid to Buyer on an annual basis in a lump sum each year or on such more frequent schedule the Company may adopt in its sole discretion or applies to similarly situated buyers and senior executives. The Buyer may transfer this purchase or portions of this purchase to employees or contractors with notice of such transfers provided to the Company.

4.  **No Authority to Bind Company.** Buyer acknowledges and agrees that Buyer has no authority to enter into contracts that bind the Company or create obligations on the part of the Company without the prior written authorization of the Company.

5.  **No Employment Rights.** By Buyer's signature and the signature of the Company's representative below, Buyer and the Company agree that the purchase hereunder is not as consideration for services Buyer rendered to the Company and that nothing in this Agreement or the attached documents confers upon Buyer any right to employment or a consulting relationship with the Company for any period of time.

6.      **Code Section 409A.** It is the intent of this Agreement that all payments hereunder be exempt from, or comply with, the requirements of Internal Revenue Code Section 409A, the regulations and other guidance there under and any state law of similar effect (collectively "Section 409A") so that none of the payments to be provided under this Agreement will be subject to the adverse tax penalties imposed under Section 409A, and any ambiguities or ambiguous terms herein will be interpreted to be exempt or so comply. The Company and Buyer will work together in good faith to consider amendments to the Agreement with respect to the payment of any Total Carry Payout Amount, which are necessary or appropriate to avoid imposition of any additional tax or income recognition prior to the actual payment to Buyer under Section 409A. In no event will the Company reimburse Buyer for any taxes or other penalties that may be imposed on Buyer as a result of Section 409A.

7.      **Conflicts with this Agreement.** Buyer represents and warrants that he/she is not under any pre-existing obligation in conflict or in any way inconsistent with the provisions of this Agreement. Buyer represents and warrants that his/her performance of all the terms of this Agreement and the provision of the services to be rendered in connection with this Agreement will not breach any agreement to keep in confidence proprietary information acquired by Buyer in confidence or in trust prior to commencement of this Agreement.

8.      **Miscellaneous.**

(a)     **Governing Law.** The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the state of California, without giving effect to principles of conflicts of law.

(b)     **Entire Agreement.** This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between them relating to the subject matter hereof.

(c)     **Amendments and Waivers.** No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the parties to this Agreement. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.

(d)     **Successors and Assigns.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives. The Company may assign any of its rights and obligations under this Agreement. No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company.

(e)     **Notices.** Any notice, demand or request required or permitted to be given under this Agreement shall be in writing and shall be deemed sufficient when delivered personally or by overnight courier or sent by email, or 48 hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address as set forth on the signature page, as subsequently modified by written notice, or if no address is specified on the signature page, at the most recent address set forth in the Company's books and records.

(f)     **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the

event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of the Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of the Agreement shall be enforceable in accordance with its terms.

(g)     **Remedies**. Buyer acknowledges and agrees that violation of this Agreement by Buyer may cause the Company irreparable harm, and therefore agree that the Company will be entitled to seek extraordinary relief in court, including, but not limited to, temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security (or, where such a bond or security is required, Buyer agrees that a $1,000 bond will be adequate), in addition to and without prejudice to any other rights or remedies that the Company may have for a breach of this Agreement.

(h)     **Advice of Counsel.** BUYER ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, BUYER HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND BUYER HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

(i)     **Construction.** This Agreement is the result of negotiations between and has been reviewed by each of the parties hereto and their respective counsel, if any; accordingly, this Agreement shall be deemed to be the product of all of the parties hereto, and no ambiguity shall be construed in favor of or against any one of the parties hereto.

(j)     **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement.

*[Signature Page Follows]*

**Rothenberg Ventures Carry Equity Unit Purchase Agreement - Page 3**

The parties have executed this Agreement as of the date first written above.

THE COMPANY:

ROTHENBERG VENTURES MANAGEMENT COMPANY, LLC

_/s/ Mike Rothenberg_
Mike Rothenberg, CEO and Manager

1062 Folsom St, Suite 200
San Francisco, CA 94103

ACCEPTED AND AGREED:

BUYER: BEND REALITY, LLC

_/s/ Mike Rothenberg_
(Signature)

Mike Rothenberg
(Name)

February 25, 2016
(Date)