THOMAS A. COLTHURST (CABN 99493)
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515

KATHERINE L. WAWRZYNIAK (CABN 252751)
Acting Chief, Criminal Division

BENJAMIN K. KLEINMAN (NYBN 5358189)
KYLE F. WALDINGER (CABN 298752)
NICHOLAS J. WALSH (CABN 314290)
Assistant United States Attorneys

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     Fax: (415) 436-7234
     Email: benjamin.kleinman2@usdoj.gov
     Email: kyle.waldinger@usdoj.gov
     Email: nicholas.walsh@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br> v.<br><br>MICHAEL BRENT ROTHENBERG,<br><br>     Defendant. | NO. CR 20-00266 JST<br><br>**UNITED STATES' OPPOSITIONS AND RESPONSES TO DEFENDANT'S MOTIONS *IN LIMINE*** |

Trial Date:     October 3, 2023, 8:30 a.m.
Pretrial Hearing:  September 15, 2023, 2:00 p.m.
Court:       Hon. Jon S. Tigar, Courtroom 6

1

## TABLE OF CONTENTS

2    INTRODUCTION.............................................................................................................1

3    ARGUMENT ...................................................................................................................3

4
         I.      DEFENDANT'S MOTION *IN LIMINE* #1: The Court Should Deny this
5                Motion and Allow the Introduction of Financial Books and Records Dating to
                 September 2018. .......................................................................................................3
6
         II.     DEFENDANT'S MOTION *IN LIMINE* #2: The Court Should Deny this
7                Motion and Allow the Introduction of the Press Articles, Not for the Truth of
                 the Matter Asserted, But to Provide Context to Statements Made by the
8                Defendant to Investors. ...........................................................................................7

9        III.    DEFENDANT'S MOTION *IN LIMINE* #3: The Government Does Not Intend
                 to Introduce Evidence of the Defendant's Alleged Mortgage Fraud Offenses.................10
10
         IV.     DEFENDANT'S MOTION *IN LIMINE* #4: The Government Primarily Seeks
11               to Admit Select Statements Made by the Defendant in his SEC Deposition and
                 in his *Wells* Submission to the SEC, as well as the Method by Which the
12               Defendant Settled the Transcend VR Lawsuit...........................................................12

13       V.      DEFENDANT'S MOTION *IN LIMINE* #5: The Government's Expert
                 Witness Gerald T. Fujimoto Will Testify Regarding his Forensic Accounting
14               Analysis and his Opinions Will Relate to Forensic Accounting........................................14

15       VI.     DEFENDANT'S MOTION *IN LIMINE* #6:  The Government Agrees that
                 Witnesses Should be Excluded, Except for IRS-CI Special Agent Anthony
16               Ghio and Forensic Account Gerald T. Fujimoto. .............................................................17

17       VII.    DEFENDANT'S MOTION *IN LIMINE* #7: The Government Agrees that the
                 Indictment Should Not be Sent to the Jury Room. ...........................................................18
18
         CONCLUSION ...............................................................................................................18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' OPPOSITIONS AND RESPONSES
TO DEF.'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                        i

1

## <u>TABLE OF AUTHORITIES</u>

2

CASES

3

*Huddleston v. United States*,
  485 U.S. 681 (1988) ................................................................................. 7

4

*United States v. Briguet*,
  2020 WL 6945929 (E.D.N.Y. Nov. 25, 2020) ....................................... 8

5

6

*United States v. Cole*,
  2022 WL 266615 (N.D. Ohio Jan. 28, 2022) ......................................... 8

7

*United States v. Lo*,
  839 F.3d 777 (9th Cir. 2016)) .............................................................4, 5

8

9

*United States v. Loftis*,
  843 F.3d 1173 (9th Cir. 2016) ............................................................ 4, 5

10

*United States v. Mundi*,
  892 F.2d 817, 818 (9th Cir. 1989) ......................................................... 5

11

12

*United States v. Potter*,
  463 F.3d 9 (1st Cir. 2006) ....................................................................... 8

13

*United States v. Salemme*,
  2018 WL 2470739 .................................................................................. 10

14

15

*United States v. Sayakhom*,
  186 F.3d 928 (9th Cir. 1999) .................................................................. 5

16

*United States v. Thompson*,
  606 F. Supp. 3d 1066 (W.D. Wash. 2022) ............................................ 4

17

18

*United States v. Trujillo*,
  561 Fed. Appx. 840 (11th Cir. 2014) .................................................... 8

19

*United States v. Vizcarra-Martinez*,
  66 F.3d 1006 (9th Cir. 1995) .................................................................. 5

20

21

STATUTES

22

Crime Victims Rights Act, 18 U.S.C. § 3771 ................................................ 18

23

RULES

24

Federal Rule of Evidence 402 ............................................................... 3, 4, 6

25

Federal Rule of Evidence 403 ............................................................... 3, 4, 6

26

Federal Rule of Evidence 404 .......................................................... 4, 5, 6, 7

27

Federal Rule of Evidence 615 .................................................................... 17

28

Federal Rule of Evidence 702 .................................................................... 15

**INTRODUCTION**

Trial in this case will center on how the defendant Michael Rothenberg fraudulently ran a group of companies he founded, including most importantly a venture capital company called Rothenberg Ventures Management Company, LLC ("RVMC"), and the venture capital funds managed by RVMC, as well as a group of other companies designed to further his interests in various other arenas such as a business accelerator and virtual reality content production. These companies were named River Accelerator, River Studios, and similar, and therefore formed a group of entities known collectively as the "River Ecosystem."

Rothenberg's alleged scheme to defraud ran throughout the time he raised money from investors and managed those investments through RVMC. Rothenberg regularly obtained money from investors after making misrepresentations to them about how he would use the investments in particular RVMC-managed Funds. Rothenberg regularly misused these funds in various ways and for various purposes, including to fund his personal business ventures in the River Ecosystem and RVMC's substantial expenditures on employees and events. All the while, Rothenberg employed various deceptive acts and practices to hide his misappropriation and misuse of investor funds, including by commingling money and by moving money between various entities and bank accounts (including Rothenberg's personal accounts) whenever those funds were needed for particular purposes, all without regard to the true ownership of such money. The United States alleges that Rothenberg misappropriated more than $18 million through his scheme to defraud by September 2018.

Rothenberg filed seven motions *in limine* in this matter on August 31, 2023. Dkt. 248. In his first motion *in limine*, Rothenberg moves to "exclude financial statements post-dating the alleged conduct." *Id*. at 1. Second, Rothenberg moves to exclude press articles. *Id* at 3. Third, Rothenberg moves to exclude Trial Exhibit 116 and any other evidence concerning Counts One and Two of the Indictment. *Id*. at 6. Fourth, Rothenberg moves to exclude references to civil ligation. *Id*. at 7. Fifth, Rothenberg moves to limit the scope of expert testimony by Gerald T. Fujimoto to "forensic accounting." *Id*. at 13. Sixth, Rothenberg moves to exclude certain witnesses from the courtroom. *Id*. at 15. Seventh, Rothenberg requests that the Indictment not be sent to the jury room.

The parties are set to appear on September 15, 2023, at 2:00 p.m., for the Pretrial Conference. In

advance of that Pretrial Conference and based on the schedule previously set by the Court, Dkt. 236, the government now files the United States' Oppositions and Responses to the Defendant's Motions *in Limine*.  As set forth in more detail herein, the United States takes the following positions with regard to the defendant's motions *in limine*:

1)    the Court should deny Rothenberg's Motion *in Limine* #1 because the records the government seeks to introduce are within the dates pleaded in the Indictment and the government is entitled to use that evidence to prove the defendant's scheme to defraud and other elements of the offenses;

2)    the Court should deny Rothenberg's Motion *in Limine* #2 because the government will not seek to admit the press articles for the truth of the matters asserted in the articles but instead for permissible reasons that account for, among of things, the defendant's actions;

3)    the Court should grant in part Rothenberg's Motion *in Limine* #3 because the government will not introduce evidence of the prior mortgage fraud counts or trial, although the motion should be denied in part because there may be testimony that the defendant had multiple loans from Silicon Valley Bank ("SVB") and Trial Exhibit 116 may become relevant during the trial;

4)    the Court should grant in part Rothenberg's Motion *in Limine* #4 because the government will not introduce evidence of Rothenberg's prior civil litigation (and in particular, not the complaints themselves), although the motion should be denied in part because the United States does intend to offer evidence of the defendant's statements to the SEC in sanitized form and the method by which he settled the *Transcend VR v. Rothenberg* lawsuit into evidence;

5)    the Court should grant in part Rothenberg's Motion *in Limine* #5 because the government's expert witness will testify as a forensic accountant, but should deny the motion in part to the extent that the defendant's motion attempts to prevent the United States from using evidence admitted in the trial during the expert witness' testimony;

6)    the Court should grant in part Rothenberg's Motion *in Limine* #6, but allow the government witnesses IRS-CI Special Agent Anthony Ghio and expert witness Forensic

1    Accountant Gerald T. Fujimoto to be present in the courtroom to observe proceedings

2    prior to their testimony and allow witnesses to observe proceedings after their testimony;

3    and,

4    7)    the Court should grant as unopposed Rothenberg's Motion *in Limine* #7 because the

5    government does not seek to have the Indictment be sent back with the jury for

6    deliberations.

7    The United States respectfully requests that the Court issue an order in accordance with the

8    above positions.

9

10                                    **ARGUMENT**

11   **I.    DEFENDANT'S MOTION *IN LIMINE* #1: The Court Should Deny this Motion and Allow
        the Introduction of Financial Books and Records Dating to September 2018.**

12

13   The defendant first moves to exclude financial statements created after the date of the substantive

14   offenses.  Dkt. 248, at 1-3.  The defendant then lists a number of Silicon Valley Bank ("SVB"), Bank of

15   America, and American Express account statements.  *Id.* at 2.  He moves to exclude these financial

16   account statements under Federal Rules of Evidence 402 and 403.  As to the former rule, the defendant

17   argues that "[f]inancial activity occurring well after the alleged misrepresentations and investments are

18   irrelevant."  Dkt. 248, at 2:22-23.  The defendant also argues that, under Rule 403, any probative value

19   of the financial records "is outweighed by the danger of unfair prejudice, confusing the issues, undue

20   delay, wasting time and needlessly presenting cumulative evidence."  Dkt. 248, at 2:24-26; *id.* at 2:25-

21   3:3 (arguing that financial records will result in a "mini-trial").[1]

22   In short, evidence of the entire course of Rothenberg's fraudulent and financial conduct –

23

24        [1] The defendant's motion *in limine* addresses only SVB, Bank of America, and American
     Express account statements.  In addition to the statements regarding these accounts dating to the fall of
25   2018, the government also anticipates admitting QuickBooks records maintained by the current
     incarnation of Rothenberg Ventures into that same period.  (As noted elsewhere, September 2018 is
26   when Rothenberg ceded control of Rothenberg Ventures to a new manager, Burke Robinson.  *See* Ex. A,
     (9/11/2018 letter from Rothenberg to Robinson).  J.R. Eppler became co-manager with Robinson shortly
27   thereafter.)  Because the defendant's motion is unclear as to whether he seeks the exclusion of the
     QuickBooks records, the government's response addresses these records, as well.
28

including the specific evidence to which the defendant objects in his motion *in limine* – is admissible either because it goes to establish the existence of a scheme to defraud or other element of the charged offenses or because it is inextricably intertwined with the charged offenses.  Accordingly, Rules 402 and 403 (and Rule 404(b), for that matter) do not prohibit the admission of this evidence, as explained in more detail below.  Moreover, the Indictment expressly references the timeframe of September 2012 through September 2018.  *See* Dkt. 15 (Indictment), ¶ 8.

In fraud prosecutions, which involve the need to prove the existence of the scheme to defraud, the Ninth Circuit has held that evidence that is used "to demonstrate the existence of the fraudulent scheme" is admissible.  *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016).  Given that the elements of the federal fraud offenses include the existence of a scheme to defraud and a specific intent to defraud, the court has explained that the commission of a specific fraud offense "'necessarily includes a fraudulent scheme as a whole.'"  *Id.* (quoting *United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016)).  Under this line of authority, the government may introduce evidence regarding uncharged transactions, including transactions occurring after the dates outlined in the Indictment, that are part of the defendant's overall scheme to defraud in order to establish the elements of the charged fraud offense. *Id.* at 1176 ("We hold the evidence of *uncharged transactions* is not evidence of 'other' crimes or acts under rule 404(b), because it is evidence of part of the *crime charged* in the indictment – the overall scheme to defraud.") (emphases in original); *see also United States v. Thompson*, 606 F. Supp. 3d 1066, 1069 (W.D. Wash. 2022) (holding that evidence that "purports to show that defendant carried out the same course of conduct towards other, uncharged, victims, and refined her techniques as she did so . . . . goes to the existence of the scheme to defraud").  In *Thompson*, the defendant argued that "the offered evidence cannot be 'part of the same transaction' because it is more expansive than the indictment" and noted that the uncharged event spanned "February 2019 to August 2019, while the cryptomining allegations in the indictment span March 2019 to July 2019."  606 F. Supp. 3d 1066, 1070 (W.D. Wash. 2022).  The District Court roundly rejected the defendant's argument, stating "Defendant's arguments do not prevail.  The Ninth Circuit has rejected the conclusion that 'part of the same transaction' evidence must directly parallel the indictment."  *Id.* (quoting *Loftis*, 843 F.3d at 1178).

Moreover, the Ninth Circuit also has held that, even where evidence may not go directly to proof of the scheme to defraud or other element of the offense, it still may be admissible if it is "inextricably intertwined." There are two categories of evidence that the Ninth Circuit has long considered "'inextricably intertwined' with a charged offense and therefore admitted without regard to Rule 404(b)." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Specifically, evidence is inextricably intertwined if (1) that evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or (2) admission of the evidence was necessary "in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* at 1012-13. Accordingly, the Ninth Circuit has held that "uncharged transactions that are part of an overall scheme are 'part of the same transaction' as the charged transactions" and are therefore "inextricably intertwined." *Loftis*, 843 F.3d at 1178 (citing *United States v. Mundi*, 892 F.2d 817, 818 (9th Cir. 1989)). For example, in *United States v. Sayakhom*, 186 F.3d 928 (9th Cir. 1999), the defendant was charged with mail fraud based on her formation of the Asian Assistance Center ("AAC") to sell life insurance products to low-income members of various ethnic communities, despite the fact that she was not licensed to sell insurance products and despite the fact that AAC lacked sufficient financial reserves to pay claims. *Id.* at 933. On appeal, Sayakhom challenged the introduction of evidence regarding her operation of another company, Mutual Assistance Planning Services Program ("MAPS"), which she operated after AAC's operations were effectively shut down. *Id.* at 937. The Ninth Circuit dismissed this challenge, ruling that the MAPS evidence was "inextricably intertwined with the indicted crimes." *Id.* The court noted that evidence of actions in which Sayakhom engaged after the date of the charged mailings "tend[ed] to show that Sayakhom continued her fraudulent scheme," "establish[ed] that AAC and MAPS were part of an ongoing scheme to defraud," and showed that "MAPS was simply a disguise for Sayakhom's continued sale of unauthorized insurance products." *Id.* at 938. All of this evidence, the court found, "illuminate[d] Sayakhom's state of mind," among other conclusions that could be drawn. *Id.*; *see also Mundi*, 892 F.2d at 820 (holding that admission of evidence concern defrauded travel agencies not specifically mentioned in indictment was not error; rejecting claims that evidence was "irrelevant and prejudicial").

Under these principles, the entire scope of Rothenberg's fraudulent and financial conduct and his

1   management of his venture capital funds is admissible because it helps to prove his culpability of the

2   charged offenses.  Specifically, his actions in taking additional investments, recharacterizing earlier

3   entries in RVMC's and the Funds' books and records, and moving money between accounts and Funds

4   in order to repay defrauded investors and to meet expenses go to proving the existence of Rothenberg's

5   scheme to defraud, his intent to defraud, and his consciousness of guilt.  In any event, that conduct is

6   inextricably intertwined with the charged offenses.  Therefore, neither Rule 402 nor Rule 403 (let alone

7   Rule 404(b)) prohibits the admission of this evidence.

8          For instance, each of the substantive charges incorporates the Indictment's allegations that,

9   between "September 2012 and September 2018, ROTHENBERG raised a net amount of approximately

10  $45.9 million from approximately 200 investors and received another approximately $13.0 million from

11  the sale of investment positions and advances from investors."  Dkt. 15 (Indictment), ¶ 8; *see also id.*

12  (alleging shortfall of "more than $18 million, which amount ROTHENBERG misappropriated and spent

13  on various business expenses, personal expenses, and legal fees").[2]

14         Similarly, each of the substantive charges incorporates the Indictment's allegations that

15  Rothenberg "regularly obtained money from investors after making representations to them about how

16  he would use the investments," but that he then "regularly misused these funds in various ways and for

17  various purposes, including to fund his personal business ventures (such as River Studios) and RVMC's

18  substantial business expenditures."  Dkt. 15 (Indictment), ¶ 25.  The Indictment further alleges that

19  Rothenberg hid "his misappropriation and misuse of investors funds . . . by commingling money and by

20  moving money between various entities and bank accounts . . . whenever those funds were needed for

21  particular purposes, without regard to the true ownership of such money."  *Id.*

22         The charges to be tried in October 2023 are related to each other, to the allegations in Paragraphs

23  8 and 25, and to the entire course of the defendant's conduct vis-à-vis investors, investors' funds, and

24  the venture capital funds that he managed and their books and records.  The allegations in Paragraphs 8

25  and 25 and the concomitant evidence about the entire course of the defendant's fraudulent and financial

26

27          [2]  These allegations will be supported by the testimony of the government's expert witness
    Gerald T. Fujimoto.  Mr. Fujimoto is expected to testify in line with the opinions set forth in his expert
28  reports regarding the issue of Rothenberg's and RVMC's use of investor funds.  *See, e.g.*, Dkt. 248-17,
    at US-GTF-000012 through US-GTF-000015.

conduct (1) put the specific charges into the context of the defendant's overall management of investor funds, (2) help explain why the defendant was motivated to – and needed to – obtain the SVB line of credit and to raise funds from investors at particular times, (3) show his use of the funds that he obtained as a result of the alleged offenses, and, in some instances, (4) show how he paid some of the defrauded investors back by taking money from other sources.  In addition, the financial and accounting records post-dating August 2016 show how the defendant attempted to account for excess management and administrative fees that he had taken from the 2015 Fund and 2016 Fund.

All of this evidence is part of the charged offenses or is otherwise inextricably intertwined with the charged offenses.

Alternatively, even if this evidence were not part of the charged offenses and were not otherwise inextricably intertwined with those offenses, it is nevertheless probative of the defendant's motive, intent, plan, preparation, and lack of mistake in committing the charged offenses under Rule 404(b).  *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct").  Accordingly, even if the Court finds that the evidence of the entire course of the defendant's financial conduct regarding RVMC, his venture capital funds, and River Studios and the related "River" entities is not admissible because it is not actually part of, and not inextricably intertwined with, the offense conduct, the Court should still allow the admission of this evidence under Rule 404(b).

## II. DEFENDANT'S MOTION *IN LIMINE* #2: The Court Should Deny this Motion and Allow the Introduction of the Press Articles, Not for the Truth of the Matter Asserted, But to Provide Context to Statements Made by the Defendant to Investors.

The defendant has moved to exclude press articles written about him in May 2015, August 2016, and September 2016.  These articles are or may be usable or admissible on a number of grounds.

*As an initial matter*, in some instances, the government may use these articles only to refresh witnesses' recollections.

*Second*, the United States does not intend to admit these articles for the truth of the matter asserted.  Other courts have admitted newspaper articles on this ground, where those articles are

UNITED STATES' OPPOSITIONS AND RESPONSES
TO DEF.'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                    7

1  admissible for a purpose other than the truth.  *See, e.g.*, *United States v. Trujillo*, 561 Fed. Appx. 840,

2  842 (11th Cir. 2014) (affirming district court's decision to admit newspaper articles for their effect on

3  defendant and to instruct jury not to consider articles for their truth); *United States v. Potter*, 463 F.3d 9,

4  21-22 (1st Cir. 2006) (holding that there was no error in admission of newspaper article because it was

5  not admitted to prove truth of matter asserted, but to show defendants' beliefs); *United States v. Cole*,

6  2022 WL 266615, at *3 (N.D. Ohio Jan. 28, 2022) (ordering that newspaper article and related

7  conversation were admissible, not for the truth of the matter asserted therein, but to "question of whether

8  Defendant Cole knew she was making misstatements"); *United States v. Briguet*, 2020 WL 6945929, at

9  *1 (E.D.N.Y. Nov. 25, 2020) ("The newspaper articles are not inadmissible hearsay.  The Government

10  seeks to admit them as evidence supporting Defendant's awareness of the FBAR filing requirement and

11  not 'to prove the truth of the matter asserted in the[m].'") (quoting Fed. R. Evid. 801(c)(2)).

12         *Third*, in line with the cases cited above, these articles may be admissible for a number of other

13  reasons, including to show their effect on the defendant and to explain his other statements to investors

14  and to put those statements in context.  For example, the 2015 *Bloomberg* article discusses the

15  defendant's spending habits.  *See* Tr. Ex. 374 at 2 (attached hereto as Exhibit B). There will be

16  testimony from numerous witnesses that the defendant spent large sums of money on various

17  expenditures, including a Warriors box, a racing car endorsement, "Puppy" happy hours, and an event

18  christened "Founder Field Day," which involved renting out the San Francisco Giants ballpark for the

19  day.  In response to the *Bloomberg* article, the defendant sent an email to investors and to the portfolio

20  companies to address concerns that investors and the portfolio companies might have about

21  Rothenberg's reported spending habits.  *See* Tr. Ex. 375 (attached hereto as Exhibit C).  That email

22  represented that "ALL the costs of every event we host" were covered by "partners" and "were NOT

23  funded with money our LPs [*i.e.*, "limited partners" a/k/a investors] entrusted with us."  But the

24  government expects that the evidence will show this largely was not true.  In short, the *Bloomberg*

25  article and Rothenberg's response to it help demonstrate the existence of his scheme to defraud investors

26  and his intent to defraud.  For these reasons, the Court should allow the admission of the *Bloomberg*

27  article marked as Trial Exhibit 374.  Of course, the article should not be admitted for the truth of the

28  matter asserted, and the government agrees that the Court should give a limiting instruction as to how

the jury should consider this and other such exhibits.

Similarly, the *Techcrunch* and *Wired* articles (marked as Trial Exhibits 512 and 513) were published shortly after or around the time (1) the SEC and FBI began their investigations of Rothenberg, (2) there was a mass exodus of employees from RVMC and Rothenberg's related companies, and (3) Rothenberg's investors (or "LPs") began asking questions of him about what was going on at RVMC and how he had managed their money. Because of these articles and because of the above-listed turn of events, Rothenberg made numerous statements to his investors to quell their fears and anxieties and to answer their questions. This included an August 21, 2016, email to investors. *See* Tr. Ex. 428 (attached hereto as Exhibit D). In that email, the defendant indicated that he had received a number of questions from investors, including "How accurate is the Techcrunch article?" *See also id.* (noting that an answer to that question would not be given at that time). In a subsequent email to investors on August 23, 2016, Rothenberg stated that the "[t]he Techcrunch article missed the point or the facts on almost everything," but admitted that "I was not focused enough on lean spending" and admitted that he had spent funds on a "Warriors box" and a "Superbowl Suite." Tr. Ex. 429 (attached hereto as Exhibit E). Again, these admissions go directly to proving the existence of a scheme to defraud and the need for Rothenberg to divert funds from investors because of his focus on only the second half of the concept of "lean spending." The *Techcrunch* article puts these statements by Rothenberg into context.

Moreover, in addition to the *admissions* that Rothenberg made in his emails to investors regarding the *Techcrunch* article, his references to the article demonstrates that he was aware of that article and its allegations. What Rothenberg chose to tell investors – and what he chose not to tell investors – in light of the article and in light of the facts of which Rothenberg was aware illuminates his state of mind, his intent to defraud investors, and his consciousness of guilt.[3]

The United States also has marked the *Wired* article as Trial Exhibit 513. *See* Ex. G (*Wired* article). That article was published on the same date (September 13, 2016) as Rothenberg's next email to his investors. *See* Tr. Ex. 242 (attached hereto as Exhibit H). Unlike his previous communications to

---

[3] Rothenberg also discussed the *Techcrunch* article in an August 25, 2016, conference call with investors. *See* Tr. Ex. 239 (transcript attached hereto as Exhibit F).

UNITED STATES' OPPOSITIONS AND RESPONSES
TO DEF.'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                           9

investors, Rothenberg acknowledged but declined to address the "unfortunate press coverage." Again, the *Wired* article is necessary to put these statements by Rothenberg to his investors in context. The fact that Rothenberg was aware of the "unfortunate press coverage" and declined to address it is evidence that arguably goes to his intent to defraud and consciousness of guilt.

In the alternative, the government requests that the Court at least rule now that it will allow the government to elicit limited testimony *about* these three articles, and defer for trial the extent to which the content of the articles may be *admitted into evidence*. This alternative approach was the one taken by the district court in *United States v. Salemme*, 2018 WL 2470739, *2 (D. Mass. Apr. 25, 2018) (allowing government to "elicit testimony identifying the date, headline, and newspaper of each publication, and, to a limited extent, each article's references to the [defendants]" and deferring for "trial the extent to which the substantive content of each article may be admitted into evidence").

For all of the reasons set forth above, the Court should allow the admission of the *Bloomberg*, *Techcrunch*, and *Wired* articles in order to give context to the statements made by the defendant to his investors. The Court can address any potential unfair prejudice posed by these articles by giving the jury appropriate limiting instructions. In the alternative, the government requests that the Court rule now that it will allow the government to elicit testimony from the witnesses about the fact of the publication of the articles and their references to the defendant, but defer for trial the question of whether the actual articles come into evidence.

## III.  DEFENDANT'S MOTION *IN LIMINE* #3: The Government Does Not Intend to Introduce Evidence of the Defendant's Alleged Mortgage Fraud Offenses.

In his third motion *in limine*, the defendant moves to exclude "Exhibit 116 and any other evidence concerning Counts 1 and 2." Dkt. 248, at 6:11-12. In short, the government does not intend to put on any evidence of the defendant's alleged bank fraud and false statements offenses that were alleged in Counts One and Two of the Indictment. Nor does the government intend to have witnesses testify that "(1) Mr. Rothenberg was charged with crimes, and went to trial, in connection with the 2014 loans, and (2) SVB ultimately foreclosed on Mr. Rothenberg's property and evicted him." *Id.* at 6-7. Nevertheless, United States' Trial Exhibit 116 and the fact that Rothenberg had multiple loans from

SVB may become relevant at trial.

Trial Exhibit 116 consists of statements from Rothenberg's Merrill Lynch cash management account for the 2014 calendar year. The government recognizes that these statements pre-date the date of the substantive offenses in this case. As noted above, the Indictment and the charges and scheme to defraud embodied in Counts Three through Twenty-Three relate to the defendant's entire course of conduct and use of investor funds. Depending on how the evidence comes in and on the defendant's cross-examination of witnesses, these Merrill Lynch statements may become relevant, *e.g.*, to show the defendant's intent to defraud investors by depositing some of their funds in his Merrill Lynch account.

In addition, setting aside Trial Exhibit 116, the government notes that one of the witnesses on its witness list is Brian Bell, an SVB employee who dealt with the defendant starting in late 2016 regarding repayment of the line of credit at issue in Counts Three and Four of the Indictment. Mr. Bell also dealt with Rothenberg regarding the repayment of other loans that Rothenberg had taken out from SVB, including the mortgage loan and capital call line of credit that were at issue in the last trial, as well as additional capital call lines of credit taken out by Rothenberg from SVB. During the course of his testimony, Mr. Bell may refer to the fact that he was negotiating with Rothenberg about repayment of multiple loans, including the line of credit at issue here. The government does not intend to elicit any testimony from Mr. Bell that would suggest that the defendant committed any offenses with response to the 2014 mortgage loan and line of credit that are the subject of Counts One and Two, but the fact that such loans happened may come into evidence as part of telling a coherent story.

For the reasons set forth above, the government has no objection to the defendant's Motion *in Limine* #3 to the extent it seeks to exclude evidence of the bank fraud and false statement offenses set forth in Counts One and Two. As discussed above, however, financial transactions that the defendant engaged in during 2014 (as reflected in Exhibit 116) and the fact that he took out multiple loans from SVB may be relevant during the course of the trial.

UNITED STATES' OPPOSITIONS AND RESPONSES
TO DEF.'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                           11

1

2

3

**IV.     DEFENDANT'S MOTION *IN LIMINE* #4: The Government Primarily Seeks to Admit Select Statements Made by the Defendant in his SEC Deposition and in his *Wells* Submission to the SEC, as well as the Method by Which the Defendant Settled the Transcend VR Lawsuit.**

4

5

6

7

8

The defendant has moved to exclude "references to civil litigation involving Mr. Rothenberg." Dkt. 248, at 7:26.  There are four civil complaints filed against the defendant that the defendant lists in his motion: (1) an SEC complaint; (2) a complaint filed by Transcend VR (the alleged victim in Counts Five through Seven); (3) a complaint filed by a former employee, David Haase; and (4) a complaint filed by another former employee, Katherine Fanelli.[4]

9

10

11

12

13

14

As an initial matter, the government does not intend to introduce any of these complaints in its case-in-chief.  They have been placed on the United States' Exhibit List out of an abundance of caution and because some of those exhibits may be used to refresh witnesses' recollections or may be used in re-direct examination depending on questions asked of witnesses by the defense on cross-examination. The materials may also be used if the defendant chooses to testify and if they become relevant during the course of his cross-examination.

15

16

17

18

19

20

However, the United States may seek to introduce statements and admissions that the defendant made (or that were made on his behalf) in the deposition taken during the course of the SEC case, in filings made by Rothenberg on his own behalf in that case, and in his *Wells* submission.  (The *Wells* submission statements are discussed in more detail in the United States' Motion *in Limine* No. 4.  Dkt. 247, at 16-19.)  The government will also seek to introduce some details about the defendant's settlement of the *Transcend VR v. Rothenberg* litigation.

21

22

23

24

25

26

With respect to the SEC-related statements, although the defendant asserted his Fifth Amendment privilege to a number of questions during the course of the SEC deposition taken on May 7, 2019, he did answer a number of the questions posed to him.  Many of the defendant's responses to those questions and the admissions he made during the course of the deposition may be relevant to the criminal charges pending against him.  For example, when the defendant was asked how expenditures

27

28

---

[4] In addition to the four complaints listed in the defendant's Motion *in Limine* #4, the government has also placed Rothenberg's civil complaint against SVB on its Exhibit List.  *See* Tr. Ex. 183.  At this time, the United States does not intend to introduce that complaint as substantive evidence.

1    for RVMC-hosted events were approved, he gave a lengthy explanation, which included an admission

2    that he was the person who would initially sign off on proposals for events. *See* Ex. I, at 88:1-2 ("And

3    Tommy would have – you know, would propose budgets, and I would sign off on them."); *id.* at 88:20-

4    21 ("But at a high level I would, you know, always be involved.").

5          Furthermore, Rothenberg's answers to questions posed to him during his SEC deposition about

6    fees taken from the 2015 Fund are probative to the charges in this case.  As will be demonstrated at trial,

7    Rothenberg needed to obtain the $4 million line of credit at issue in Counts Three and Four in order to

8    "right the ship" and put money back into the 2015 Fund to repay the 2015 Fund for excess fees that

9    RVMC had taken from it.  There will be abundant evidence that Rothenberg was warned by his finance

10   staff that he needed to pay the 2015 Fund back before the end of 2015.  When asked about this issue

11   during this SEC deposition, Rothenberg gave various evasive answers, by, for example, answering with

12   respect to the 2018 time period and answering as if the question related to the filing of the 2015 Fund's

13   tax filings. *See id.* at 103:8-25 & 104:19-105:9. (Rothenberg ultimately did give a response to the

14   question that denied anything untoward.  *Id.* at 106:12-109:1.)

15         In addition to these statements, Rothenberg made several statements in his deposition about the

16   warrants and warrant purchase and sales agreements that the government also seeks to admit through his

17   *Wells* submission. *See id.* at 133:14-134:14, 135:6-136:18, 138:10-142:1, 142:8-143:1.  The evidence at

18   trial will show that Rothenberg's statements about the warrants and warrant purchase and sales

19   agreements were post-hoc justifications made by the defendant to account for excess funds he had taken

20   from the Funds.

21         With respect to the passages from the SEC deposition that the United States seeks to admit, it

22   will redact any portions in which the defendant asserted his Fifth Amendment privilege (or any

23   references to that privilege by the questioner).  In addition to taking these precautions, the government

24   agrees that care should be taken not to advise the jury that Rothenberg was the defendant in a civil

25   enforcement action brought by the SEC, that he consented to judgment without admitting the truth or

26   falsity of the allegations in that case, and that the Court entered an order requiring Rothenberg to pay

27   disgorgement of more than $18 million (with interest) and a penalty of $9 million.

28         As noted above, the United States does not intend to introduce the SEC, *Transcend VR*, *Fanelli*

UNITED STATES' OPPOSITIONS AND RESPONSES
TO DEF.'S MOTIONS *IN LIMINE*
CR 20-00266 JST                                    13

or *Haase* complaints. However, with respect to the *Transcend VR* complaint, the method by which Rothenberg settled that lawsuit is relevant to the charges in this case. The United States seeks to admit the fact that, as part of settling a dispute with Transcend VR regarding its February 2016 investment in River Studios, the defendant entered into a settlement agreement with Transcend VR in which he provided Transcend VR with "Carry Equity Units" ("CEUs") in one of the Funds. Those CEUs were purported to have been purchased by River Studios from RVMC on or about the date in February 2016 that Transcend VR invested $2 million into River Studios. In truth, the evidence will show that this CEU sale likely did not occur on the date that the defendant represented in the documents that he provided to Transcend VR as part of his settlement with Transcend VR. All of this evidence will go to show (1) that the defendant did not use Transcend VR's investment for the purposes he purported the investment would be used for and (2) the efforts made by the defendant to falsely explain why he sent about $1.7 million of Transcend VR's investment through his personal bank account to RVMC's bank account.

For all of these reasons, the United States believes that the Court should grant in part and deny in part the defendant's motion *in limine* to exclude evidence regarding civil litigation with which the defendant was involved. As set forth above, the United States does not intend to introduce any of the civil complaints into evidence against the defendant, but it does intend to submit evidence regarding various statements the defendant made to the SEC and the method by which he settled one of the victim's lawsuits against him.

## V.   DEFENDANT'S MOTION *IN LIMINE* #5: The Government's Expert Witness Gerald T. Fujimoto Will Testify Regarding his Forensic Accounting Analysis and his Opinions Will Relate to Forensic Accounting.

The defendant's Motion *in Limine* #5 seek a ruling to limit the government's expert witness Gerald T. Fujimoto's testimony to the topic of "forensic accounting."

As the defendant notes, on June 29, 2023, the government gave notice that it intended to present the expert testimony of forensic accountant Gerald T. Fujimoto. *See* Dkt. 248, at 13-14. The defendant has provided the Court with the most recent expert report written by Mr. Fujimoto. *Id.*, Dkt. 248-16, Ex. P. It has also provided the defendant with Mr. Fujimoto's prior expert report related to the SEC

litigation.  Mr. Fujimoto's latest expert report is 98 pages long, and it is accompanied by 71 pages of

appendices, which include his *curriculum vitae*.

As set forth in Mr. Fujimoto's latest expert report, the government anticipates that he will

provide testimony on the following broad areas:

1.  The difference between the actual cash balance in September 2018[5] of all of the venture capital funds managed by the defendant Rothenberg and the expected cash balance in September 2018 of those venture capital funds, *see* Dkt. 248-16, ¶¶ 21 & 58-69;

2.  The actual amount of fees/money taken from the 2015 Fund by Rothenberg Ventures Management Company as of late 2015 compared to the amount of fees provided for by the 2015 Fund operating agreement, *id.*, ¶¶ 22-28 & 108-32;

3.  The sources of the $4.25 million used by RVMC to fund the account used to collateralize the line of credit RVMC obtained from Silicon Valley Bank (which line of credit is the subject of Counts Three and Four), *id.*, ¶¶ 29, 135-36 & 146-47;

4.  The disposition of various investors' investments, *id.*, ¶¶ 30-35, 38-39, 40-43, 45-56, 137-45, 148-70, 189-226 & 234-75;

5.  The sources of funds used to make repayments to various investors, *id.*, ¶¶ 36, 44, 171-74 & 227-33;

6.  The sources of funding for River Studios, *id.*, ¶¶ 37 & 176-88; and

7.  Actions taken with respect to RVMC's and the Funds' accounting entries and records after the beginning of the SEC's investigation, *id.*, ¶¶ 276-394.

In his Motion *in Limine* #5, the defendant complains that "Mr. Fujimoto's report contains several

claims that are far beyond 'forensic accounting analysis,' the only 'specialized knowledge' [Mr.

Fujimoto] possesses, and are thus inadmissible under Rule 702."  Dkt. 248, at 14:23-24; *see also id.* at

14:25-15:2 (providing examples of objectionable opinions).

To be clear, the United States intends only to have Mr. Fujimoto render opinions and give expert

testimony regarding his forensic accounting analysis.  But it is also entirely appropriate to have Mr.

Fujimoto render those opinions and give that testimony in light of the evidence already before the jury.

It is also permissible to juxtapose the documentary evidence already admitted with Mr. Fujimoto's

---

[5]  This was the month when Rothenberg ceded control of RVMC and the Funds.  *See* Ex. A (9/11/2018 letter from Rothenberg to Robinson).

forensic analysis and opinions.

For example, as to the first of Mr. Fujimoto's statements to which the defendant objects, it is useful to actually look at what Mr. Fujimoto's said in his latest report. In truth, in Paragraph 218 of his expert report, Mr. Fujimoto ***does not*** "opin[e] that a statement by Mr. Rothenberg that a particular investment [*i.e.*, in Unity] 'is our most popular co-investment' was not true," as Rothenberg asserts. Dkt. 248, at 14:25-27. Rather, Mr. Fujimoto simply quoted from an email sent by the defendant to one of the alleged victims (an email that the United States expects will be in evidence when Mr. Fujimoto testifies), and then went on to note the results of his forensic analysis, which was that only $50,000 had been received with respect to the Unity investment at issue in Counts Twelve through Fifteen at the time of the email. Dkt. 248-16, ¶ 218. Although this evidence obviously supports the conclusion that Rothenberg lied to the investor (or least engaged in some old-fashioned puffery and hyperbole), Mr. Fujimoto's report contains no "opinion" about the truth or falsity of Rothenberg's email. And the United States does not intend to have him render such an opinion. Nevertheless, it is permissible for the government to use the email at issue during Mr. Fujimoto's testimony (assuming that it is already in evidence) and to ask him how much money RVMC actually had received for the proposed Unity investment at that time, without eliciting his opinion regarding the apparent truth or falsity of Rothenberg's statements.

With respect to the other statements in Mr. Fujimoto's report as to which the defendant complains, the government does not intend to have Mr. Fujimoto render any opinions regarding the "business sense" of the purported sale of warrants to the 2015 Fund by RVMC, *id.*, ¶ 338,[6] and does not intend to have Mr. Fujimoto opine as to whether the defendant "knew" certain things or that certain things were "clear" to him, *see, e.g.*, *id.* ¶¶ 128, 395-97, 411, or to have opine about Rothenberg's state of mind. Although the government does not intend to elicit these specific opinions from Mr. Fujimoto at trial, as with the example set forth above, it is entirely permissible for the government to juxtapose its forensic accounting questions to Mr. Fujimoto with evidence already in the record.

Accordingly, to take the issue of the amount of fees that RVMC was entitled to receive from the

---

[6] This purported of sale of warrants was presented to the SEC in Rothenberg's *Wells* submission, which is the topic of the United States' Motion *in Limine* No. 4.

2015 Fund versus the amount of fees that it actually had taken from the 2015 Fund at the end of 2015 (*i.e.*, at the time that Rothenberg was making his alleged misrepresentations about those facts to SVB), the government intends to show Mr. Fujimoto (1) the email communications from Rothenberg's finance staff telling him one thing with respect to the fee issue and (2) Rothenberg's emails telling SVB another thing. The government will then have Mr. Fujimoto testify about his analysis regarding the actual amount of fees taken by the 2015 Fund at that time in light of the amounts provided for in the Fund documents. The government expects this testimony to be extremely damning to the defendant. But the fact that Mr. Fujimoto's testimony will support the conclusion that the figures provided to Rothenberg by his finance staff were generally correct and that the figures provided by Rothenberg to SVB were generally not correct does not convert Mr. Fujimoto's testimony into an opinion about Rothenberg's knowledge.

For the foregoing reasons, the government generally has no objection to defendant's Motion *in Limine* #5, because it does not intend to have Mr. Fujimoto render any opinions or give any expert testimony that cannot be described as "forensic accounting." Nevertheless, to put the questions to Mr. Fujimoto in context and to give meaning and substance to his testimony, the government may use or refer to, or may have Mr. Fujimoto use or refer to, other items of evidence that have already been admitted and to have him render his own forensic accounting opinions regarding the same topics discussed in the other items of evidence.

## VI.    DEFENDANT'S MOTION *IN LIMINE* #6:  The Government Agrees that Witnesses Should be Excluded, Except for IRS-CI Special Agent Anthony Ghio and Forensic Account Gerald T. Fujimoto.

The defendant has moved for a sequestration order under Federal Rule of Evidence 615. The government has filed a similar motion. *See* Dkt. 247, at 10-13 (USA's Motion *in Limine* No. 2). The government agrees that the Court should exclude witnesses from the courtroom prior to their testimony.

As set forth in the United States Motion *in Limine* No. 2, however, it requests that, pursuant to Rule 615(a) and Rule 615(c), its witnesses IRS-CI Special Agent Anthony Ghio and expert witness Forensic Account Gerald T. Fujimoto be allowed to be present in the courtroom to observe proceedings prior to their testimony.

In addition, although the defendant seeks to exclude witnesses from the courtroom after they have testified, the government believes that this specific issue should be taken up on a case-by-case basis. Some witnesses, including victim-witnesses, may wish to be present in the courtroom after they have testified. Under the Crime Victims Rights Act ("CVRA"), victims have "[t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." 18 U.S.C. § 3771(a)(3); *see also* 18 U.S.C. § 3771(b)(1) ("Before making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding."). Here, the government acknowledges that the Court can likely conclude by clear and convincing evidence that the testimony of victims may be materially altered if the victims heard other testimony before they testified. But, once a victim has testified, it is hard to see how the Court could make such a finding. Accordingly, the government has no objection to an order excluding fact witnesses prior to their testimony, but the Court should not enter an order excluding witnesses after they have testified in order to comply with the CVRA.

**VII.     DEFENDANT'S MOTION *IN LIMINE* #7: The Government Agrees that the Indictment Should Not be Sent to the Jury Room.**

Rothenberg's seventh motion *in limine* seeks to bar the Indictment from going back to the jury room.[7] The government has no objection to this motion in this case.

**CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court:

1)     deny Rothenberg's Motion *in Limine* #1 because the records the government seeks to introduce are within the dates pleaded in the Indictment and the government is entitled to use that evidence to prove the defendant's scheme to defraud and other elements of the offenses;

---

[7] The defendant refers to the operative charging document in this case as a "Superseding Indictment." To be clear, the operative charging document is simply named "Indictment." *See* Dkt. 15.

UNITED STATES' OPPOSITIONS AND RESPONSES
TO DEF.'S MOTIONS *IN LIMINE*
CR 20-00266 JST                              18

2)      deny Rothenberg's Motion *in Limine* #2 because the government will not seek to admit the press articles for the truth of the matters asserted in the articles but instead for permissible reasons that account for, among of things, the defendant's actions;

3)      grant in part Rothenberg's Motion *in Limine* #3 because the government will not introduce evidence of the prior mortgage fraud counts or trial, although the motion should be denied in part because there may be testimony that the defendant had multiple loans from Silicon Valley Bank ("SVB") and Trial Exhibit 116 may become relevant during the trial;

4)      grant in part Rothenberg's Motion *in Limine* #4 because the government will not introduce evidence of Rothenberg's prior civil litigation (and in particular, not the complaints themselves), although the motion should be denied in part because the United States does intend to offer evidence of the defendant's statements to the SEC in sanitized form and the method by which he settled the *Transcend VR v. Rothenberg* lawsuit into evidence;

5)      grant in part Rothenberg's Motion *in Limine* #5 because the government's expert witness will testify as a forensic accountant, but should deny the motion in part to the extent that the defendant's motion attempts to prevent the United States from using evidence admitted in the trial during the expert witness' testimony;

6)      grant in part Rothenberg's Motion *in Limine* #6, but allow the government witnesses IRS-CI Special Agent Anthony Ghio and expert witness Forensic Accountant Gerald T. Fujimoto to be present in the courtroom to observe proceedings prior to their testimony and allow witnesses to observe proceedings after their testimony; and,

7)      grant as unopposed Rothenberg's Motion *in Limine* #7 because the government does not seek to have the Indictment be sent back with the jury for deliberations.

DATED:  September 8, 2023

Respectfully submitted,

THOMAS A. COLTHURST
Attorney for the United States

_____/s/_____
BENJAMIN K. KLEINMAN
KYLE F. WALDINGER
NICHOLAS J. WALSH
Assistant United States Attorneys