1  THOMAS A. COLTHURST (CABN 99493)
   Attorney for the United States
2  Acting under Authority Conferred by 28 U.S.C. § 515

3  BENJAMIN K. KLEINMAN (NYBN 5358189)
   KYLE F. WALDINGER (CABN 298752)
4  NICHOLAS J. WALSH (CABN 314290)
   Assistant United States Attorneys
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
7       Fax: (415) 436-7234
        Email: benjamin.kleinman2@usdoj.gov
8       Email: kyle.waldinger@usdoj.gov
        Email: nicholas.walsh@usdoj.gov
9
   Attorneys for the United States of America
10
                    UNITED STATES DISTRICT COURT
11
                 NORTHERN DISTRICT OF CALIFORNIA
12
                           OAKLAND DIVISION
13
   UNITED STATES OF AMERICA,            )   CASE NO. 20-CR-00266 JST
14                                       )
            Plaintiff,                   )   PARTIES' NOTICE REGARDING TABLE OF
15                                       )   DEFENDANT'S STATEMENTS
         v.                              )
16                                       )
   MICHAEL BRENT ROTHENBERG,             )
17       a/k/a MIKE ROTHENBERG,          )
                                         )
18          Defendant.                   )
                                         )
19
20
21
22
23
24
25
26
27
28

NOTICE RE: DEF'S STATEMENTS          1
20-CR-00266 JST

1      On September 15, 2023, the Court conducted the Pretrial Conference in this case.  At that time,

2 the Court deferred ruling on the United States' Motion *in Limine* No. 4 regarding the defendant's

3 statements.  The Court ordered the United States to identify for the defense the specific statements of the

4 defendant from the SEC investigation and case filings that the United States wishes to introduce at trial.

5 The Court ordered the parties to then summarize those statements in table format indicating the areas of

6 disagreement and the basis of the defendant's objection and submit that annotated table to the Court by

7 September 22, 2023.  *See* Dkt. 266, at 4.

8      Pursuant to the Court's Order, the parties attach hereto as Exhibit 1 five (5) statements of the

9 defendant that the United States seek to admit at trial, along with the defendant's objections.

10

11 DATED:  September 22, 2023                  Respectfully submitted,

12                                THOMAS A. COLTHURST
                               Attorney for the United States

13                                pursuant to 28 U.S.C. § 515

14

15                                  /s/

16                                BENJAMIN K. KLEINMAN
                               KYLE F. WALDINGER

17                                NICHOLAS J. WALSH
                               Assistant United States Attorneys

18

19

20                                  /s/

21                                HANNI M. FAKHOURY
                               NATHANIEL J. TORRES

22                                Attorneys for Defendant Michael Rothenberg

23

24

25

26

27

28

NOTICE RE: DEF'S STATEMENTS        2
20-CR-00266 JST

# Exhibit 1

| STATEMENT ONE |
|---|
| Question:  If you yourself used that American Express credit card to charge a business expense, whose decision would it be at Rothenberg Ventures to reimburse you for that expense?<br><br>THE WITNESS:  It would be my decision. |
| |
| **Source**:  Deposition of Michael B. Rothenberg, 05/07/2019, at 85:9-85:14 |
| |
| **United States' Asserted Basis for Admission**:  Statement of a party-opponent relevant to defendant's decision-making authority at Rothenberg Ventures Management Company with respect to reimbursements to him personally for business expenditures he made on an American Express card.  The defendant's proposed additions go to issues beyond the narrow issue of American Express expense reimbursements.<br><br>The government does not request that the Court identify the specific venue in which this statement was made.  Rather, the government requests that the jury simply be told that this was a statement made by the defendant in another proceeding or venue. |
| |
| **Objection**:  Per the objections made in Mr. Rothenberg's motions in limine, statements made by Mr. Rothenberg in the SEC deposition are irrelevant and unduly prejudicial under Rule 403. *See* Dkt. 248, Defendant's Motions in Limine at 8-9.<br><br>Moreover, the portion highlighted by the government is misleading without additional context, because immediately after the answer excerpted above by the government, Mr. Rothenberg clarified that "I didn't necessarily approve every expense that happened across the whole organization at all times." Exh. 506, Deposition of Michael B. Rothenberg, 05/07/2019, at 85:18-20. The entire exchange immediately after the excerpt cited by the government is reprinted below:<br><br>    Q: And did you make those decisions while you were employed at Rothenberg Ventures Management Company?<br><br>    A: Yes. So I didn't necessarily approve every expense that happened across the whole organization at all times; but for when I was using the American Express that was also in my name, that would be me.<br>    And then if other people had them, there were policies in place that would dictate how they could use those. So it wasn't the case that I was involved in every transaction, but the policies in place would be there for them to follow.<br><br>    Q: If an expense was above a certain threshold, an expense incurred by another employee, gossiping be the person to authorize the payment of that expense?<br><br>    A: Not a hundred percent of the time. |

| STATEMENT ONE |
| --- |

Q: Were there, like, guidelines or procedures in place?

A: Yes.

Q: Okay. Could you tell us what those were?

A: To the extent I, you know, can recall, yes. So it depended on—so there could be budgets that would be preapproved if things operate in a certain—so Tommy Leep, for example, might have a budget that could use for an event. And if he stayed within that budget he would approve all of the sub-expenses. So he was the –you know to the best of my recollection, he was the head of the SF office. He was also the—you know, as part of that role there was some HR and some kind of events— events responsibilities, and so he would approve the—once there was an overall budget, he would approve a lot of the sub-expenses, for example."

85:16-86:22. Thus, if the Court overrules Mr. Rothenberg's objections and allows the excerpt to be admitted, it should under the rule of completeness in Federal Rule of Evidence 106 admit additional portions of Mr. Rothenberg's deposition "that in fairness out to be considered at the same time." Fed. R. Evid. 106.

| STATEMENT TWO |
|---|
| Q.  Mr. Rothenberg, I'll represent to you that Exhibit 26 is a compilation of a number of agreements that are titled "Warrant Purchase and Sale Agreement by and between Frontier Technology Venture Capital LLC and Rothenberg Ventures 2015 Fund LLC."  And I believe they are all dated December 31st, 2016.  As we've previously discussed, you understand Frontier Technology Venture Capital LLC to be RVMC; is that correct?<br><br>A.  Yes, in December of 2016 it was.<br>      . . .<br>Q.  Let's turn to the next page of Exhibit 26.  It ends in Bates Number 290.  Under section 1(a), which is titled "Sale of Warrant," there's a purchase price of \$130,000.  Mr. Rothenberg, are you aware of how that purchase price came to be?<br><br>A.  It refers to Schedule 1 for that.<br><br>Q.  Okay.  Let's turn to Schedule 1. I believe that is on the page ending in Bates Number 298.<br><br>A.  Well, this one is not.  There isn't a Schedule 1 in mine.  It just has the heading.<br><br>Q.  Right, it has the heading of Schedule 1, and what does it say underneath that?<br><br>A.  This copy you have says "To Be Completed."<br>. . .<br>Q.  Do you have any recollection whether or not such evaluation was completed by December 31st, 2016, which is the date of this agreement?<br><br>A.  I don't think there was any time at RV where we didn't have somewhat up-to-date valuations for all holdings.  So I have no reason to believe that that would be any different if this – you know, if this is valid.<br><br>Q.  Okay.  In December of 2016, who would have been the RVMC employees responsible for conducting this valuation methodology and calculation reference in Schedule 1?<br><br>A.  I mean, ultimately the manager's always responsible for, you know, determining the valuation.  I was the manager at this time. |
| |
| **Source**:  Deposition of Michael B. Rothenberg, 05/07/2019, at 132:20-136:18 & Ex. 26 |
| |

| STATEMENT TWO |
|---|
| **United States' Asserted Basis for Admission**:  Statement of a party opponent relevant to transactions between venture capital fund and RVMC.  These statements are relevant because they relate to accounting entries made by the defendant to justify payments in excess of management and administrative expenses from the venture capital fund to RVMC.<br><br>The government does not request that the Court identify the specific venue in which this statement was made.  Rather, the government requests that the jury simply be told that this was a statement made by the defendant in another proceeding or venue. |
| |
| **Objection**:  Per the objections made in Mr. Rothenberg's motions in limine, statements made by Mr. Rothenberg in the SEC deposition are irrelevant and unduly prejudicial under Rule 403. *See* Dkt. 248, Defendant's Motions in Limine at 8-9. |

| STATEMENT THREE |
| --- |
| **A. Genesis of Rothenberg Ventures.** <br><br> Mr. Rothenberg's highest academic achievement in high school was to become U.S. Math Olympian team in 2001, by earning his position in the 2001 Math Olympiad in Washington D.C.  After high school, he earned B.S. and M.S. degrees from the Stanford School of Engineering.  After working several years for major U.S. management consulting and private equity firms, he attended Harvard Business School ("HBS") where he earned an M.B.A. |
| |
| **Source**:  Rothenberg's Opp. to SEC's Mtn. for Disgorgement, CV 18-05080 JST, Dkt. 90, at 3:5-10 |
| |
| **United States' Asserted Basis for Admission**:  Statement of a party-opponent relevant to defendant's education and background. <br><br> This statement does not refer to the SEC proceeding.  The government does not request that the Court identify the specific filing in which this statement was made.  Rather, the government requests that the jury simply be told that this was a statement made by the defendant in a document he wrote in another proceeding or venue. <br><br> Rule 408 does not prohibit the introduction of this statement because this was a statement made in litigation and was not part of a compromise offer or negotiation.  Moreover, this evidence is not being used "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408. |
| |
| **Objection**: Per the objections made in Mr. Rothenberg's motions in limine, statements made by Mr. Rothenberg in his pro se opposition to the SEC's motion for disgorgement necessarily reference the SEC's allegations against Mr. Rothenberg, the fact there was a settlement with the SEC and the SEC's request for a $9 million fine, which implicitly tells the jury that there was some finding that Mr. Rothenberg had violated securities law. *See* Dkt. 248, Defendant's Motions in Limine at 9-10. Thus any evidence concerning Mr. Rothenberg's settlement with the SEC is inadmissible under Federal Rule of Evidence 408. Additionally, while the statements about Mr. Rothenberg's background are not prejudicial, the fact that these statements come from the opposition to the motion for disgorgement raises concerns about unfair prejudice and should be excluded under Rule 403. The government has other items of evidence where it can highlight this information, or could elicit this background from one of its witnesses. |

5

| STATEMENT FOUR |
|---|
| **(1) $1.3 Million Advanced and Returned for Unity, with Interest**<br>. . . The Rothenberg Ventures team had been negotiating with senior management of Unity for several months (prior to receiving a letter from the SEC) with a view toward getting an allocation in Unity's next private investment round, which was highly exclusive and only accepting the most elite venture firms at the time.  Eventually, Unity communicated an opening for Rothenberg Ventures to join their upcoming investment round with a $14 million allocation and the Rothenberg team relayed this opportunity to several investors who advanced a total of $1.3 million with the understanding that there was no guarantee that the investment would be consummated if they could not procure the balance of the funds needed to join the round. |
| |
| **Source**:  Rothenberg's Opp. to SEC's Mtn. for Disgorgement, CV 18-05080 JST, Dkt. 90, at 19:9-18 |
| |
| **United States' Asserted Basis for Admission**:  Statement of a party-opponent regarding one of the charged schemes to defraud.<br><br>The government does not request that the Court identify the specific filing in which this statement was made.  Rather, the government requests that the jury simply be told that this was a statement made by the defendant in a document he wrote in another proceeding or venue.<br><br>Although this statement relates to "receiving a letter from the SEC," the fact that the defendant received an inquiry from the SEC in July or August 2016 is going to be a fact that the jury will otherwise hear.  Accordingly, the reference to the SEC letter does not create unfair prejudice.<br><br>Rule 408 does not prohibit the introduction of this statement because this was a statement made in litigation and was not part of a compromise offer or negotiation.  Moreover, this evidence is not being used "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408. |
| |
| **Objection**:  Per the objections made in Mr. Rothenberg's motions in limine, statements made by Mr. Rothenberg in his pro se opposition to the SEC's motion for disgorgement necessarily reference the SEC's allegations against Mr. Rothenberg, the fact there was a settlement with the SEC and the SEC's request for a $9 million fine, which implicitly tells the jury that there was some finding that Mr. Rothenberg had violated securities law. *See* Dkt. 248, Defendant's Motions in Limine at 9-10. Thus any evidence concerning Mr. Rothenberg's settlement with the SEC is inadmissible under Federal Rule of Evidence 408. Additionally, the fact that these statements come from the opposition to the motion for disgorgement raises concerns about unfair prejudice and should be excluded under Rule 403. |

6

| STATEMENT FIVE |
|---|

With respect to the *Transcend VR, LLC v. Rothenberg & Bend Reality d/b/a River Studios* litigation, the United States wishes to introduce the Settlement Agreement and Release dated October 30, 2017 and marked as Trial Exhibit 245 (with attachments).  Trial Exhibit 245 is attached hereto.  In that Agreement, River Studios and the defendant agreed to transfer $1,200,000 in "carry equity units" in the Rothenberg Ventures 2015 Fund to settle the lawsuit.  The Settlement Agreement and Release was signed by the defendant three times (on behalf of River Studios, Bend Reality, and himself).  Exhibit A to the Settlement Agreement and Release was a document titled "Assignment of Carry Equity Units."  This document was signed by the defendant twice (as the manager of River Studios and as the manager of Rothenberg Ventures).  In that Assignment of Carry Equity Units document, the defendant represented the following and made the following statements:

> A. Transferor [River Studios] acquired certain carry equity units with respect to Rothenberg Ventures 2015 Fund, LLC (the "Fund") with a par value carry equity unit amount of $1,700,000 pursuant to that certain Carry Equity Unit Purchase Agreement dated February 25, 2016, by and between Rothenberg Ventures LLC, a Delaware limited liability company (the "Management Company"), as seller, and Transferor (formerly known as Bend Reality, LLC), as buyer (the "Purchase Agreement").  Initial capitalized terms that are not defined in this Assignment have the meanings given to those terms in the Purchase Agreement.

> B. Pursuant to the Purchase Agreement, Transferor is entitled to receive, subject to the terms thereof, payments from the Management Company in amounts that are derived, in part, from distributions made by the Fund to its Members.

> C. Transferor desires to transfer and convey to Transferee, approximately 70% of the Carry Equity Unit Amount, or $1,200,000 of the $1,700,000 original par value Carry Equity Unit Amount (the "Assigned CEUs").

These representations and statements were accompanied by an Exhibit A1, which was a Carry Equity Unit Purchase Agreement "made as of February 25, 2016," between Rothenberg Ventures Management Company and Bend Reality (*i.e.*, River Studios) purportedly documenting the purchase of $1,700,000 of carry equity units in the Rothenberg Ventures 2015 Fund by Bend Reality/River Studios on February 25, 2016 from Rothenberg Ventures Management Company.

Other evidence presented at trial will demonstrate that, also on February 25, 2016, Transcend VR wired $2 million to Bend Reality pursuant to a convertible promissory note investment that Transcend VR was making in Bend Reality/River Studios.  At the time, Bend Reality/River Studios had less than $9,000 in its bank account.  The same day, Bend Reality transferred $1,750,000 to the defendant's personal bank account at Bank of America, which then had a balance of less than $10,000.  The evidence will show

| STATEMENT FIVE |
|---|
| that, still on February 25, 2016, the defendant then transferred $1,700,000 to the bank account of Rothenberg Ventures Management Company.<br><br>Accordingly, taking these pieces of evidence together (*i.e.*, the Settlement Agreement and Release, the exhibits attached to that document, the representations and statements made therein, and the movements of money after Transcend VR's investment) supports the conclusion that the defendant admitted and represented as part of the Settlement Agreement and Release that nearly $1,700,000 of the funds Bend Reality/River Studios received from Transcend VR were used for a purpose (*i.e.*, the purchase of carry equity units) that was different than what the defendant had represented to Transcend VR its investment would be used for.<br><br>In truth, forensic analysis shows that much of Transcend VR's $2 million investment was used to replace money totaling more than $1.3 million that the defendant had taken from Rothenberg Ventures Fund I and Rothenberg Ventures Fund II in December 2015. |
| |
| **Source**:  Settlement Agreement and Release, Trial Exhibit 245 (attached) |
| |
| **United States' Asserted Basis for Admission**:  Statement of a party-opponent relevant to defendant's admissions regarding the disposition of funds received from the investor at issue in Counts Five through Seven (Transcend VR).<br><br>Rule 408 does not prohibit the introduction of this statement because it is not being used "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408.  Rather, as noted above, the government intends to introduce the Settlement Agreement and Release and associated exhibits to provide the jury with statements made by the defendant regarding transactions intertwined with Counts Five through Seven.  The government recognizes that the statements in these documents must be taken together with other evidence that the government will introduce in order to support certain assertions that the government will make.<br><br>The United States has no objection to the Court giving a limiting instruction to the jury that it may not consider the Settlement Agreement and Release and associated exhibits as proof of civil liability or criminal guilt. |
| |
| **Objection**: Per the objections made in Mr. Rothenberg's motions in limine, statements made in a settlement agreement are inadmissible hearsay. The statements are also inadmissible under Rule 408 as a compromise offer. *See* Dkt. 248, Defendant's Motions in Limine at 12. Moreover, the evidence is irrelevant. The statements made in October 2017 in connection with the settlement of the lawsuit are an after the fact attempt by the parties to negotiate a resolution to the pending civil lawsuit; the statement specifically states that "In consideration of the release and the covenant not to sue set forth herein, River Studios will transfer and convey carry equity units with a par value carry equity unit amount of $1,200,000." Gov. Exh. 245-0001. Thus, the settlement agreement does not purport to represent a statement about the use of the investment at the time it was made; in other |

| STATEMENT FIVE |
|---|
| words, the settlement agreement says nothing about what Mr. Rothenberg represented to Transcend VR in *February 2016*, at the time the investment was made, and which is the crucial issue for counts 5-7 (and in turn counts 8-11) of the superseding indictment. Even if relevant, the probative value of the settlement agreement is outweighed by the danger of unfair prejudice under Rule 403, as the existence of a civil suit concerning the issue before the jury will lead to confusion of issues and the mistaken assumption that if there was a settlement, then Mr. Rothenberg must have necessarily admitted he did something wrong. |