1  THOMAS A. COLTHURST (CABN 99493)
   Attorney for the United States
2  Acting under Authority Conferred by 28 U.S.C. § 515

3  MATTHEW M. YELOVICH (NYBN 4897013)
   Acting Deputy Chief, Criminal Division
4
   BENJAMIN K. KLEINMAN (NYBN 5358189)
5  KYLE F. WALDINGER (CABN 298752)
   NICHOLAS J. WALSH (CABN 314290)
6  Assistant United States Attorneys

7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Telephone: (415) 436-7200
        Fax: (415) 436-7234
9       Email: benjamin.kleinman2@usdoj.gov
        Email: kyle.waldinger@usdoj.gov
10      Email: nicholas.walsh@usdoj.gov

11 Attorneys for the United States of America

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                           OAKLAND DIVISION

16 UNITED STATES OF AMERICA,           ) NO. 20-CR-00266 JST
                                       )
17       Plaintiff,                    ) **UNITED STATES' OPPOSITION TO**
                                       ) **DEFENDANT'S MOTION *IN LIMINE* TO**
18   v.                                ) **EXCLUDE REFERENCES TO TRIP TO**
                                       ) **MEXICO**
19 MICHAEL BRENT ROTHENBERG,           )
                                       )
20       Defendant.                    )
                                       )

21

22

23         On October 8, 2023, the defendant filed his Motion *in Limine* to Exclude References to Trip to

24 Mexico. Dkt. 283. That trip had been mentioned during the United States' opening statement as an

25 example of how the defendant's spending fit into the alleged schemes to defraud. On October 12, 2023,

26 the government informed the Court that it would file its response on October 15, 2023. Accordingly, the

27 United States now files it Opposition to the defendant's latest *in limine* motion.

28         In short, the evidence at trial will show that the trip in question was paid for with money

USA'S OPPOSITION TO MTN. *IN LIMINE*
20-CR-00266 JST                                    1

originating from investors, including with funds obtained from GHF, Inc., the victim at issue in Counts Twelve and Seventeen of the Indictment. Furthermore, there has already been abundant testimony, and there will be additional testimony, of the defendant's spending habits and how those spending habits created the need to misappropriate investor funds. The July 2016 trip to Mexico – which cost more than $30,000 – is emblematic of those spending habits. For these reasons, and for the additional reasons set forth in more detail herein, the Court should deny the defendant's motion in its entirety.

## FACTUAL BACKGROUND

One of the defendant's several executive assistants at RVMC, Savannah Leggett, is expected to testify that the defendant paid for her and approximately nine (9) of her friends to fly to Cabo San Lucas with the defendant and his girlfriend.[1] The party of twelve stayed at a resort there. The trip occurred in early July 2016, shortly before the defendant's "lavish[]" and "unsparing[]" spending became one of the subjects of an August 18, 2016 *TechCrunch* article. That article has been marked as Trial Exhibit 512, but the article itself cannot be admitted into evidence at this time, per the Court's pretrial order. Notably, the defendant himself acknowledged his lack of focus on "lean spending" and his "expensive marketing expenditures" in a subsequent August 23, 2016 email to investors already admitted in evidence. *See* Tr. Ex. 429, at 3. Yet, in that email and in stark contrast to his behavior, the defendant declaimed to his investors that he was "not trying . . . to act like a billionaire." *Id.*

The Cabo San Lucas trip was paid for through charges on two American Express cards. Statements for those accounts have been marked as Trial Exhibit 127 and Trial Exhibit 131, which the United States intends to move to admit based on a records certification from American Express.[2]

As set forth on Exhibit 131-0425 through -0431, the defendant made purchases in late June 2016 for flights to Cabo San Lucas for eight women on the Amex account numbered ending -6004. In addition to those flights, the Amex records for the -6004 account show One & Only resort charges

---

[1] The United States turned over to the defendant a summary memorandum of Ms. Leggett's testimony on October 10, 2023, between the filing of the defendant's motion *in limine* and the filing of this Opposition. This production was in accordance with the Court's order on discovery because the United States turned over the memorandum within 48 hours of its completion.

[2] The United States turned over to the defendant the American Express records containing these charges nearly three years ago, on or about December 8, 2020.

USA'S OPPOSITION TO MTN. *IN LIMINE*
20-CR-00266 JST                               2

amounting to about $24,000. Tr. Ex. 131-421 to -431. The expenses charged to this account and related to the Cabo San Lucas trip easily exceeded $30,000.

Additional charges related to the trip were charged to another American Express account. Records from that account show that the main account was in the defendant's name and was numbered ending -4001. *See* Tr. Ex. 127. The records also show that the account had several sub-accounts, including one numbered ending -1155 in the name of Ms. Leggett, the defendant's executive assistant. *See* Tr. Ex. 127-0155. This sub-account in Ms. Leggett's name was used to pay for the defendant's flights to and from Cabo San Lucas, as well as for flight legs for Ms. Leggett and two other women (one of which was also on the other card as well). Charges related to the Cabo San Lucas trip on this account amount to about $3,000.

The United States expects the evidence to show that the defendant got the money to pay the American Express charges related to the Cabo San Lucas trip through two $200,000 transfers from RVMC's bank account (*see* Trial Exhibit 63-0424 & -0435) to his personal Bank of America account (*see* Trial Exhibit 97-0107). Those transfers occurred on June 27, 2016, and July 21, 2016. The United States expects its forensic expert Gerald Fujimoto to testify that some of the American Express charges were paid for with a portion of the $1,000,000 invested by GHF, Inc. The government expects that GHF, Inc. witnesses will testify in this trial that its investment was for the purpose of purchasing pre-IPO shares of the software company Unity and was not to be used for other purposes. *See, e.g.,* Tr. Ex. 511-0052 & -0146 to -0149.

## ARGUMENT

The defendant has moved to exclude the evidence regarding the trip to Cabo San Lucas, citing Federal Rules of Evidence 402, 403, and 404. None of those rules prohibits the admission of the evidence.

*As an initial matter*, the fact that the defendant used investor funds (including those invested by GHF, Inc.) to pay for the trip makes the trip unquestionably relevant. *See United States v. Hutcheson*, 603 Fed. App'x 613, 614 (9th Cir. May 15, 2015) (holding that defendant's "personal use of investors' funds" was part of "abundant evidence" that jury could rely upon); *United States v. Groves*, 594 Fed.

App'x 332, 333 (9th Cir. Nov. 14, 2014) (holding that defendant's withdrawal of investor funds from his company's bank account for his personal use was part of "sufficient evidence to support the jury's conclusion that [defendant] had the specific intent to defraud"); *United States v. Boone*, 951 F.2d 1526, 1537 (9th Cir. 1991) (holding that defendant's "use of the funds raised for the venture for his personal benefit is probative of his fraudulent intent"); *accord United States v. Stitsky*, 536 Fed. App'x 98, 108 (2d Cir. 2013) (unpublished) ("easily conclud[ing] that a rational jury could have found Shapiro's fraudulent intent established" by his misappropriation of investor funds for personal use).  Indeed, the defendant himself appears to concede that the trip *would be* relevant if the government could show that "misappropriated money was used to pay for the trip." Dkt. 283, at 2. Accordingly, the defendant's Rule 402 irrelevance argument fails.

*Second*, because the evidence relates to the misappropriation of investor funds, because it relates to the defendant's spending of investor funds, and because that spending rebuts the declamations made by the defendant in his August 2016 message to investors, it is inextricably intertwined with, and indeed part of, the charged offense conduct. Furthermore, the fact that the defendant took this trip and then needed to find a way to pay for at least part of it helps to show that the representations he began making to the "Unity" investors in mid-July 2016 were false and that the defendant knew he would have to use some of their funds to pay for at least part of his junket. Simply put, this is *not* "other bad acts" evidence that is arguably excludable under Rule 404. Rather, it is evidence that is part and parcel of the offense conduct and that goes to show the defendant's use of misappropriated investor money, his motive to use that money, and his intent to defraud. *See United States v. Weygandt*, 681 F. App'x 630, 633 (9th Cir. 2017) (evidence of a defendant's financial condition "may be admissible if it proves motive, knowledge, or intent"); *United States v. Reyes*, 660 F.3d 454, 464 (9th Cir. 2011) (permitting the introduction of relevant and not unfairly prejudicial evidence related to motive). Here, rather than using investor funds for the purposes for which they were intended, the defendant instead transferred investor funds to RVMC's operating account and then on to his own personal Bank of America account so that the Mexico trip and other expenditures could be paid for. Accordingly, the defendant's personal expenditures are inextricably intertwined with the fraudulent scheme that the defendant is alleged to have perpetrated.

1   *Finally*, the evidence, although certainly prejudicial, is not unfairly prejudicial and should not be excluded under Rule 403.  As set forth above, the trip to Cabo San Lucas was paid for in part with investor funds and was made at a time when the defendant was on notice that his spending was out of control and that his use of investor funds was inappropriate.  For example, the testimony of Lynne McMillan supports the conclusion that Ms. McMillan left the company in part because of the defendant's profligate spending, such as by purchasing a suite at Super Bowl 50, and because he inappropriately transferred investor money.  That the defendant only a few short months later used investor funds to engage in additional profligate spending is absolutely prejudicial to the defendant, but not unfairly so.  *See, e.g., United States v. Gal*, 606 Fed. App'x 868, 874 (9th Cir. 2015) (rejecting argument that photographs of defendant's family vacations in Hawaii, the Virgin Islands, and elsewhere were irrelevant and unfairly prejudicial, where "the photographs tended to show that purported investments in the oil and gas scheme were not spent on oil and gas development"); *United States v. Scott*, 637 Fed. App'x 10, 14 (2d Cir. 2015) (holding that district court did not abuse discretion in admitting evidence of extravagant purchase of Porsche and finding that the court "appropriately concluded that the purchase was relevant under Federal Rule of Evidence 401 because of its temporal proximity to the receipt of investor funds").  Moreover, it is not unfairly prejudicial to show that the money spent on the Cabo San Lucas trip was not available to the defendant from a source other than investor funds.

The defendant's citation to *United States v. Holmes*, rather than supporting his position, in fact undermines it.  In that case, as the defendant points out, the government was allowed to admit evidence of a lifestyle "comparable to those of other tech company CEOs.  This includes salary, *travel*, celebrity, and other perks and benefits commensurate with the position." *Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 2044470, at *5 (N.D. Cal. May 22, 2021) (emphasis added).  While Judge Davila then limited the government from pointing out "details of branding of clothing, hotels, or other personal items," *id.*, in this case the United States did not do so in the opening statement and intends to elicit only limited testimony in general terms about the trip.  The only reference to the resort, which was called "the One & Only," would be on the American Express records themselves.  *See* Tr. Ex. 131.

Case 4:20-cr-00266-JST Document 291 Filed 10/15/23 Page 6 of 6

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny the defendant's Motion *in Limine* to Exclude References to Trip to Mexico.

DATED: October 15, 2023

Respectfully submitted,

THOMAS A. COLTHURST
Attorney for the United States
Acting under Authority Conferred by
28 U.S.C. § 515

/s/
BENJAMIN K. KLEINMAN
KYLE F. WALDINGER
NICHOLAS J. WALSH
Assistant United States Attorneys