MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
Telephone: (510) 500-9994
Email: hanni@mlf-llp.com

LAW OFFICE OF NATHANIEL J. TORRES (State Bar No. 253968)
338 Fillmore Street, #4
San Francisco, CA 94117
Telephone: (415) 290-6290
Email: nathanieltorres3131@gmail.com

Attorneys for Michael Rothenberg

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 4:20-CR-00266-JST |
| Plaintiff, | **DEFENDANT'S RULE 33 MOTION FOR NEW TRIAL** |
| v. | |
| MICHAEL ROTHENBERG, | **Court:** Courtroom 6, 2nd Floor |
| Defendant. | **Hearing Date:** March 1, 2024 |
| | **Hearing Time:** 9:30 a.m. |

TO: MATTHEW M. YELOVICH, UNITED STATES ATTORNEY UNDER 28 U.S.C. § 515; KYLE F. WALDINGER, ASSISTANT UNITED STATES ATTORNEY; NICHOLAS J. WALSH, ASSISTANT UNITED STATES ATTORNEY; AND BENJAMIN K. KLEINMAN, ASSISTANT UNITED STATES ATTORNEY.

PLEASE TAKE NOTICE that Defendant Michael Rothenberg hereby moves this Court for a new trial on Counts Three through Twenty-Three of the Superseding Indictment. This motion is based upon this memorandum of points and authorities and accompanying exhibits, the Sixth Amendment to the U.S. Constitution, Federal Rule of Criminal Procedure 33, and all other applicable constitutional, statutory, and case authority, and all evidence and argument that may be presented at the hearing of this motion, to be held on March 1, 2024, at 9:30 a.m.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................................ii

INTRODUCTION................................................................................................................................1

STATEMENT OF FACTS....................................................................................................................1

ARGUMENT .......................................................................................................................................5

    A.    The mask requirements at trial violated the Sixth Amendment.........................................5

    B.    A new trial is warranted because a juror slept through testimony....................................7

CONCLUSION ....................................................................................................................................8

**TABLE OF AUTHORITIES**

**Cases**

*California v. Green*, 399 U.S. 149 (1970) .......................................................................................... 5

*Coy v. Iowa*, 487 U.S. 1012 (1988) ................................................................................................... 5

*Maryland v. Craig*, 497 U.S. 836 (1990) ........................................................................................... 6

*Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) ..................................................................................... 5

*United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992) ................................ 5

*United States v. Allen*, 34 F.4th 789 (9th Cir. 2022) .......................................................................... 7

*United States v. Barrett*, 703 F.2d 1076 (9th Cir. 1983) ................................................................. 7, 8

*United States v. Brewer*, 776 Fed. Appx. 442 (9th Cir. 2019) ........................................................... 7

*United States v. Brugnara*, 856 F.3d 1198 (9th Cir. 2017) ................................................................ 7

*United States v. Clemons*, 2020 WL 6485087 (D. Md. Nov. 4, 2020) ............................................... 6

*United States v. Crittenden*, 2020 WL 4917733 (M.D. Ga. Aug. 21, 2020) ...................................... 6

*United States v. Holder*, 2021 WL 4427254 (D. Colo. Sept. 27, 2021) ............................................. 6

*United States v. James*, 2020 WL 6081501 (D. Ariz. Oct. 15, 2020) ................................................. 6

*United States v. Maynard*, 2021 WL 5139514 (S.D.W.V. Nov. 3, 2021) .......................................... 6

*United States v. Morgenstern*, 725 Fed. Appx. 546 (9th Cir. 2018) .................................................. 8

*United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995) ....................................................................... 8

*United States v. Tagliaferro*, 531 F.Supp.3d 844 (S.D.N.Y. 2021) ................................................... 6

**Constitutional Provisions**

U.S. CONST. AMEND. VI .............................................................................................................. 1, 5, 7

**Rules**

Federal Rule of Criminal Procedure 33 ........................................................................................... 1, 5

**Other Authorities**

Centers for Disease and Control and Prevention, "End of the Federal COVID-19 Public Health
    Emergency (PHE) Declaration," updated Sep. 12, 2023 .............................................................. 2

Luke Winkie, "A Little Sketched Out," *Slate*, Oct. 13, 2023 .............................................................. 7

National Public Radio ("NPR"), "Biden ends COVID national emergency after Congress acts," Apr.

11, 2023 .................................................................................................................................. 2

Northern District of California, "Update on Court Proceedings, Operations, and Safety Protocols (February 3, 2023)" .............................................................................................................. 1

## INTRODUCTION

Pursuant to Federal Rule of Criminal Procedure 33, Michael Rothenberg moves this Court for a new trial on Counts Three through Twenty-Three of the superseding indictment. This motion follows the guilty verdict returned by the jury on these counts on November 16, 2023. Dkt. 337, 339.

Mr. Rothenberg asserts two grounds for a new trial: (1) the masking requirements violated his Sixth Amendment right to Confrontation; and (2) a sleeping juror violated his right to a fair and impartial jury.

## STATEMENT OF FACTS

Mr. Rothenberg was charged in a 23-count superseding indictment, issued August 20, 2020, with a variety of fraud offenses. Dkt. 15. On October 25, 2021, this Court severed Count One, charging Mr. Rothenberg with bank fraud and false statements to a bank, from the remainder of the charges in the superseding indictment for trial. Dkt. 101. Counts One and Two proceeded to trial in November 2022, resulting in a mistrial after jurors were deadlocked and could not reach a unanimous decision. Dkt. 205. Counts Three through Twenty-Three proceeded to a seven-week jury trial held from October 3, 2023 to November 16, 2023.

At Mr. Rothenberg's first trial on Counts 1-2, held in November 2022, the Court inquired of potential juror's vaccination status in the questionnaire sent to them before jury selection, and contemplated excluding unvaccinated jurors altogether. *See* Dkt. 160, 162. Ultimately, although the Court inquired about vaccination status, it did not exclude unvaccinated jurors, or jurors who declined to state their vaccination status categorically from serving on the jury.

Three months after the first jury trial ended, in February 2023, the Northern District of California eliminated the requirement that individuals appearing in court had to be masked, instead indicating that "mask requirements for individual courtrooms continue to be determined by the assigned judge."[1] In the spring of 2023, President Joe Biden signed a congressional resolution officially ending the public health emergency measures enacted as a result of COVID-19 on May 11,

---

[1] *See* Northern District of California, "Update on Court Proceedings, Operations, and Safety Protocols (February 3, 2023)", *available at* https://www.cand.uscourts.gov/update-on-court-proceedings-operations-and-safety-protocols-july-28-2021/.

2023.[2] Before the start of Mr. Rothenberg's second jury trial, a questionnaire was sent to prospective jurors which did not inquire into vaccination status. *See* Dkt. 244 (joint request by parties not to inquire into vaccination status in questionnaire). Masks were not worn or required when the parties appeared for the pretrial conference on September 15, 2023.

On October 2, 2023, before the start of jury selection, the Court explained that "we're in the middle of a COVID surge right now" so "everyone's going to be masked all the time, court staff, you, jurors, person in the courtroom," except for witnesses while testifying, and lawyers while questioning witnesses and delivering opening statements and closing arguments. Tr. Vol. 1 at 6:24-7:6.

The government presented the testimony of 32 witnesses over twenty trial days, admitted 306 exhibits, and rested on November 9, 2023. Reporter's Transcript of Proceedings ("Tr.") Vol. 22 at 4085:1-2. From the earliest days of the trial, the Court invited the jury to stand up and stretch, in part, when it noticed jurors were "drowsy," informing the parties on October 25, 2023 that it assumed a request "to take a stretch break…was that we had a drowsy juror. I myself have done that a couple times already in this trial, as you've probably figured out." Tr. Vol. 13 at 2542:3-6; *see also* Tr. Vol. 6 at 1167:11-13 ("Members of the jury, one of you had the good sense in between direct and cross-examination to stand up and stretch. Let's all do that."); Tr. Vol. 8 at 1618:4-5 ("Members of the jury, let's stand up and stretch for a second."); Tr. Vol. 9 at 1814:21-22 ("Members of the jury, it might be one of those stretch break-type situations."); Tr. Vol. 10 at 1874:13-15 ("Members of the jury, it could be a stretch break. I'm just saying. I know it's early, but nothing's happening right now.").

On October 25, 2023, it appeared one juror had fallen asleep during the direct examination of 2015 Fund investor Michael Antonov:

Q. What is the date of that email?

A. April 29, 2015.

THE COURT: Hold on a second. Mr. Waldinger, the Court cannot help but notice that

---

[2] *See* Centers for Disease and Control and Prevention, "End of the Federal COVID-19 Public Health Emergency (PHE) Declaration," updated Sep. 12, 2023, *available at* https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html; *see also* National Public Radio ("NPR"), "Biden ends COVID national emergency after Congress acts," Apr. 11, 2023, *available at* https://www.npr.org/2023/04/11/1169191865/biden-ends-covid-national-emergency.

|   |   |
|---|---|
| 1 | you're on your feet. |
| 2 | MR. WALDINGER: Yes, Your Honor. I would suggest it may be a good time for the jurors to take a stretch break right now. |
| 3 | |
| 4 | THE COURT: All right. I'm always going to take that suggestion, members of the jury, always. |

Tr. Vol. 13 at 2522:17-25. During a break in Mr. Antonov's cross-examination, and outside the presence of the jury, Mr. Rothenberg expressed concerns about a juror falling asleep in court.

> MR. FAKHOURY: I think we should put on the record, Mr. Waldinger asked for a stretch break. And I believe the reason he did is we had a juror who was very much asleep. And I saw it and I think Mr.— I suspect Mr. Waldinger saw it when I saw it. And so I just think we should put that on the record. Mask down. Very much asleep.
>
> MR. WALDINGER: Yes.
>
> MR. FAKHOURY: I have a concern about that.
>
> MR. WALDINGER: I don't—I would say what Mr. Kleinman and I observed was that the juror's eyes were closed. One conclusion would be that he was sleeping. As soon as Mr. Kleinman and I saw it, that's when I stood up. And I don't know, I will continue to do that if I notice that with any jurors. I think as soon as we notice it, we should stop the proceedings. And I – I suspect that Mr. Fakhoury didn't see it before we saw it. So...
>
> THE COURT: All right. Mr. Fakhoury, anything further for the record?
>
> MR. FAKHOURY: No, Your Honor.
>
> THE COURT: It's incumbent upon any lawyer that sees that a juror is sleeping to immediately bring it to the Court's attention. And I think the Court is entitled to assume that if a lawyer sees a juror sleeping, that they will tell the Court right away.

Tr. Vol. 13 at 2541:1-25. The Court explained it "will observe our jurors more closely on a going-forward basis so that I can address this immediately when I see it." Tr. Vol. 13 at 2542:7-9. Over the remainder of trial, the Court periodically invited the jury to take stretch breaks. *See* Tr. Vol. 16 at 3042:11-13 ("Members of the jury, it's been about 45 minutes. As the person who gave you some pastries, I'm going to suggest a stand up and stretch break."); 3104:21-22 ("Members of the jury, why don't we take another stretch break.").

On November 7, 2023, the Court interrupted the cross-examination of Brandon Farwell—a former employee of Rothenberg Ventures Management Company ("RVMC") and one of the most important government witnesses at trial—to invite the jury to take a stretch break.

> Q. Well, let me ask it this way. There was a symbiotic relationship between River Accelerator and Rothenberg Ventures, right?

DEFENDANT'S RULE 33 MOTION FOR NEW TRIAL
*United States v. Rothenberg*, 4:20-CR-00266-JST

3

A. Yes.

THE COURT: Mr. Fakhoury, would you excuse me. Members of the jury, let's go ahead and take a stretch break.

(Stretch break.)

THE COURT: All right. Thanks. Apologize for the interruption.

MR. FAKHOURY: No problem.

Tr. Vol. 20 at 3819:12-22. At a break, and outside the presence of the jury, the Court elaborated on the reason for the break.

> [Juror 40] started to nod off, and that's why I interrupted Mr. Fakhoury's examination so that everybody could take a stretch break. I think [Juror 40's] colleagues know what's going on. I can see it in their faces and their body language. So I think everybody was fine with the stretch break, but I wanted to put it on the record.

Tr. Vol. 20 at 3824:23-3825:3.

There were additional stretch breaks taken during important witness testimony, including government expert witness Gerald Fujimoto. *See* Tr. Vol. 21 at 3926:19-25 ("Q. That's a month after it took all that it could take for just 2015? A. That's correct, yes. MR. WALSH: Your Honor, I wonder if we might just start occasionally doing a stretch break. THE COURT: Stretch break has arrived. We're going to do it."); Tr. Vol. 21 at 3975:17-21 ("THE COURT: Members of the jury, I'm going to take advantage of the shift in topics—MR. WALSH: Let's do it. THE COURT: —and call for a stretch break. That KQED thing got me really fired up."); Tr. Vol. 21 at 3989:9-10 ("MR. WALSH: Should we do another stretch break? THE COURT: I think we should, honestly.").

Several breaks were also taken during Mr. Rothenberg's testimony. Tr. Vol. 22 at 4104:23-4105:1 ("THE COURT: Everything is okay. But members of the jury, we're going to do as we've been doing. I was waiting for Mr. Rothenberg to finish. We're going to take a stretch break."); Tr. Vol. 22 at 4127:2-5 ("THE COURT: Mr. Fakhoury, it's been about another half an hour. Ladies and gentlemen, let's take another quick stretch break."); Tr. Vol. 22 at 4160:5-8 ("Can I have a moment, Your Honor? THE COURT: Yes. You know what I'm going to say, don't you? (Stretch break.)"); Tr. Vol. 22 at 4224:2-4 ("MR. FAKHOURY: May I have a moment, Your Honor? THE COURT: Yes. Stretch break."); Tr. Vol. 23 at 4301:5-7 ("MR. WALDINGER: Ms. Margen, let's pull up Exhibit 63. THE COURT: Mr. Waldinger, I think we're going to take a mid-session stretch break.").

At the close of testimony, as the Court began to instruct the jury, it commented "These stretch breaks have been very helpful, I think, during the trial. I've had more stretch breaks in this trial probably than any other trial I've had by a lot. Because the information can be a little dry sometimes. It just helps everybody pay attention." Tr. Vol. 23 at 4331:18-22.

After three days of deliberations, the jury returned a guilty verdict on November 16, 2023. Tr. Vol. 26 at 4569:8-4574:13; Dkt. 337, 339.

## ARGUMENT

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal," and the "district court need not view the evidence in the light most favorable to the verdict;" if it concludes "that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211–12 (9th Cir. 1992) (quotations and citations omitted).

Two Sixth Amendment violations require this Court grant Mr. Rothenberg a new trial.

**A.    The mask requirements at trial violated the Sixth Amendment.**

Requiring Mr. Rothenberg wear a mask while witnesses were testifying against him violated his Sixth Amendment right to Confrontation.

The Sixth Amendment gives a criminal defendant the right 'to be confronted with the witnesses against him.'" *Coy v. Iowa*, 487 U.S. 1012, 1015 (1988). The "Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Id.* at 1016. As the Supreme Court elaborated in *Coy*, that requires "witnesses who confront [the defendant] at the trial, upon whom he can look while being tried," and guarantees the "literal right to 'confront'" and the "'right physically to face those who testify against him.'" *Id.* at 1017 (quoting *California v. Green*, 399 U.S. 149, 157 (1970) and *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)). A physical confrontation is necessary because a "witness may feel quite differently when he has to repeat his

story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." *Coy*, 487 U.S. at 1019 (quotations and citations omitted). That "ensures the integrity of the fact finding process" as "the trier of fact will draw its own conclusions" when a witness declines "to fix his eyes upon the defendant" and instead "studiously look elsewhere." *Id.* at 1019-20. In *Coy*, the Supreme Court found a Confrontation Clause violation when a witness was separated from the defendant with a screen "specifically designed to enable the complaining witness to avoid viewing" the defendant "as they gave their testimony." *Id.* at 1020.

The Confrontation Clause "may be satisfied absent a physical, face-to-face confrontation at trial" when it is "necessary to further an important public policy" and "the reliability of testimony is otherwise assured." *Maryland v. Craig*, 497 U.S. 836, 850 (1990). This exception is "narrow" and may not "easily be dispensed with." *Id.* at 849, 850.

There is no doubt there is an important public policy in preventing the transmission of COVID-19. Numerous courts have rejected constitutional challenges to mask requirements stemming from the COVID-19 pandemic in 2020 and 2021, at the height of the pandemic and before the widespread availability of a vaccine. *See, e.g., United States v. Tagliaferro*, 531 F.Supp.3d 844, 849-51 (S.D.N.Y. 2021); *see also United States v. Maynard*, 2021 WL 5139514 (S.D.W.V. Nov. 3, 2021); *United States v. Holder*, 2021 WL 4427254, at *8-9 (D. Colo. Sept. 27, 2021); *United States v. Clemons*, 2020 WL 6485087, at *2-4 (D. Md. Nov. 4, 2020); *United States v. James*, 2020 WL 6081501, at *2-3 (D. Ariz. Oct. 15, 2020); *United States v. Crittenden*, 2020 WL 4917733, at *5-8 (M.D. Ga. Aug. 21, 2020).

However, those policy concerns were diminished by the time the second trial started here on October 2, 2023. The federal government had ended the public health emergency close to six months earlier, and the Northern District had eliminated its masking requirements in February 2023. Other courtrooms in the Northern District—including courtrooms holding jury trials—were not requiring participants to wear masks. Unlike the first trial in November 2022, this Court did not inquire into potential jurors' vaccination status.[3]

---

[3] Images from other jury trials happening across the country at the same time, such as the criminal jury trial for Sam Bankman-Fried in the Southern District of New York, showed participants—

The Ninth Circuit has already struck down COVID-19 protocols enacted by the Northern District during criminal jury trials which, while well meaning, were not narrowly tailored and thus violated a defendant's Sixth Amendment rights. *See United States v. Allen*, 34 F.4th 789, 800 (9th Cir. 2022) (finding total courtroom closure with audio, instead of video, access violated defendant's Sixth Amendment right to a public trial). The same is true here, particularly when there were other less restrictive alternatives. *See Allen*, 34 F.4th at 799 (assessing "whether the district court erred in not adopting less restrictive alternatives"). The Court could have ordered masking when testimony was not currently taking place, such as during breaks, or other parts of the trial not implicating Mr. Rothenberg's Sixth Amendment right to confrontation.

Because Mr. Rothenberg's Sixth Amendment right of confrontation was violated, this Court should order a new trial.

**B.     A new trial is warranted because a juror slept through testimony.**

"The Sixth Amendment guarantees a criminal defendant the right to a trial by impartial jurors." *United States v. Brugnara*, 856 F.3d 1198, 1211 (9th Cir. 2017). The Ninth Circuit has explained "this right is violated where a sleeping juror misses essential portions of the trial or is otherwise unable to fairly deliberate on the defendant's guilt." *United States v. Brewer*, 776 Fed. Appx. 442, 443 (9th Cir. 2019) (citing *United States v. Barrett*, 703 F.2d 1076, 1083 n.13 (9th Cir. 1983)).

Here, there is ample evidence that at least one juror was asleep during essential portions of the trial, including during crucial witness testimony from investor Michael Antonov, former RVMC employee Brandon Farwell, expert witness Gerald Fujimoto and Mr. Rothenberg himself. As the Court noted when explaining why it interrupted cross-examination for a stretch break, "[Juror 40] started to nod off, and that's why I interrupted Mr. Fakhoury's examination so that everybody could take a stretch break. I think [Juror 40's] colleagues know what's going on. I can see it in their faces and their body language." Tr. Vol. 20 at 3824:23-3825:3. Both before this exchange and afterwards, the Court invited the jury to take numerous stretch breaks to prevent the juror (and potentially other

---

including court staff, lawyers, defendants—not wearing masks in court. *See* Luke Winkie, "A Little Sketched Out," *Slate*, Oct. 13, 2023, *available at* https://slate.com/culture/2023/10/sam-bankman-fried-trial-crypto-ftx-courtroom-sketch-jane-rosenberg.html.

jurors) from falling asleep during a long trial that featured what all agreed was "information [that] can be a little dry sometimes." Tr. Vol. 23 at 4331:18-22.

The "presence of a sleeping juror during trial does not, *per se*, deprive a defendant of a fair trial." *United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995). Instead, the Court must determine whether the error prejudiced the defendant. *Barrett*, 703 F.3d at 1083 n. 13; *see also United States v. Morgenstern*, 725 Fed. Appx. 546, 550 (9th Cir. 2018) ("a defendant asserting that a sleeping or absent juror deprived him of a fair trial must demonstrate actual prejudice.").

Here, Mr. Rothenberg was prejudiced by a juror sleeping and not paying attention during crucial testimony at trial, resulting in the juror missing "essential portions of the trial." *Barrett*, 703 F.3d at 1083 n. 13. Such a juror would be unable to scrutinize evidence and fully engage in deliberations. That is compounded by the fact that other jurors were aware a juror was sleeping. *See* Tr. Vol. 20 at 3824:23-3825: ("I think [Juror 40's] colleagues know what's going on. I can see it in their faces and their body language."). Other jurors could have discounted that juror's opinions or impressions in the deliberation room, frustrated that he was sleeping in court and perhaps paying less attention at trial. Because Mr. Rothenberg suffered prejudice, this Court should order a new trial.

The Ninth Circuit has explained that a district court abuses its discretion "in failing to conduct a hearing or make any investigation into the 'sleeping'-juror question." *Barrett*, 703 F.2d at 1083. Thus, at a minimum, this Court should hold an evidentiary hearing and make an investigation into whether the sleeping juror "miss[ed] essential portions of the trial and was able fairly to consider the case." *Id.* at n. 13.

## CONCLUSION

Mr. Rothenberg respectfully requests this Court grant him a new trial on Counts 3-23. At a minimum, the Court should hold a hearing on the issue of whether a sleeping juror was able to fairly consider the case.

| | |
|---|---|
| Dated: January 12, 2024 | Respectfully submitted, |
| | MOEEL LAH FAKHOURY LLP |
| | *[signature]* |
| | Hanni M. Fakhoury |
| | Nathaniel J. Torres |
| | Attorneys for Michael Rothenberg |