UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL BRENT ROTHENBERG,<br><br>    Defendant. | Case No. 20-cr-00266-JST-1<br><br>**ORDER DENYING MOTION FOR A NEW TRIAL**<br><br>Re: ECF No. 365 |

Following a seven-week jury trial, Defendant Michael Brent Rothenberg moves for a new trial based on two alleged violations of his Sixth Amendment rights—that requiring him to wear a mask while in the courtroom violated his confrontation rights and that a sleeping juror violated his right to a fair and impartial jury. The Court will deny the motion.

**I.    BACKGROUND**

On August 20, 2020, Rothenberg was charged in a 23-count indictment. ECF No. 15. On October 25, 2021, the Court severed counts one and two from the remaining counts. ECF No. 101. Those two counts went to trial in November 2022, but the Court granted a mistrial after the jury could not reach a verdict. ECF No. 205. Trial on counts three to twenty-three began on October 3, 2023.

In the Northern District of California, at the time the trial took place, "mask requirements for individual courtrooms [were] determined by the assigned judge."[1] The Court noted that the trial was taking place in "the middle of a COVID surge." ECF No. 281 at 6:24. In light of the

---

[1] N.D. Cal., *Update on Court Proceedings, Operations, and Safety Protocols (February 3, 2023)* available at https://www.cand.uscourts.gov/update-on-court-proceedings-operations-and-safety-protocols-july-28-2021/ (last visited February 23, 2024).

1    COVID-19 pandemic, the expected eight-week length of trial, and the limited number of alternate
2    jurors, the Court required itself, court staff, the jurors, the lawyers, the Defendant, the
3    government's special agent at counsel table, and the public to wear masks covering their nose and
4    mouth.  However, witnesses and questioning lawyers were not required to mask.  Ultimately, 32
5    witnesses and Rothenberg himself testified, and none of them wore a mask during their testimony.
6    Every witness was subject to cross-examination.

7    The Court also took frequent stretch breaks to promote close attention by the jury.  On the
8    first day of witness testimony, the Court told jurors, "Members of the jury, most of us are not used
9    to sitting for 90 minutes at a time and listening to someone talk.  We're just going to stand up and
10   stretch for ten seconds and get our blood moving."  ECF No. 289 at 162:17–20.  The Court then
11   continued to take prophylactic stretch breaks throughout the course of trial to maintain juror
12   attentiveness to testimony.

13   On October 25, 2023, during the uncontested testimony of witness Michael Antonov,
14   government counsel rose to his feet and stated to the Court that "I would suggest it may be a good
15   time for the jurors to take a stretch break right now."  ECF No. 307 at 98:21–23.  Later, outside
16   the presence of the jury, both parties' counsel discussed the fact that one juror had appeared to
17   have his eyes closed.  *Id.* at 117–118.  Notably, although defense counsel then said that "we had a
18   juror who was very much asleep," *id.* at 117:1–7, defense counsel had said nothing prior to the
19   Government alerting the Court.  The Court had not seen the juror's behavior directly and made no
20   factual finding regarding his state of alertness.  *Id.* at 118:1–9.  The Court instructed the attorneys
21   that "[i]t's incumbent upon any lawyer that sees that a juror is sleeping to immediately bring it to
22   the Court's attention," and that the Court will "observe [the] jurors more closely on a going-
23   forward basis."  *Id.* at 117:21–118:9.

24   The parties rested on November 16, 2023, after seven weeks of trial.  The jury deliberated
25   for three days before returning a guilty verdict on all 21 counts.  ECF No. 365 at 9; ECF No. 339.
26   Rothenberg now moves for a new trial.

2

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[A] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses . . . If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (internal citations and quotation marks omitted).

A motion for a new trial is typically only granted in "exceptional circumstances," *United States v. Chen*, 754 F.2d 817, 821 (9th Cir. 1985), where "a serious miscarriage of justice may have occurred," *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). A decision to grant a new trial is "within the sound discretion of the district court." *Id.* at 1212 (quotation omitted).

## III. DISCUSSION

Rothenberg moves for a new trial on two alleged Sixth Amendment violations: (1) that the Court's in-court masking requirements violated his right to confrontation, and (2) that an allegedly sleeping juror deprived him of a fair trial. The Court takes each in turn.

### 1. Masking Requirements

Rothenberg contends that requiring him to "wear a mask while witnesses were testifying against him violated his Sixth Amendment right to Confrontation." ECF No. 365 at 9.

"The Sixth Amendment gives a criminal defendant the right 'to be confronted with the witnesses against him.'" *Coy v. Iowa*, 487 U.S. 1012, 1015 (1988). Confrontation gives the "accused [] an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–243 (1895).

1    Accordingly, "[t]he Confrontation Clause guarantees the defendant a face-to-face meeting with
2    witnesses appearing before the trier of fact." *Coy*, 487 U.S. at 1016.  The Supreme Court has
3    described "the operation of the Clause as follows: '[a] fact which can be primarily established only
4    by witnesses cannot be proved against an accused . . . except by witnesses who confront him at the
5    trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose
6    testimony he may impeach in every mode authorized by the established rules governing the trial or
7    conduct of criminal cases.'" *Id.* at 1017 (quoting *Kirby v. United States*, 174 U.S. 47 (1899)).
8    Two years later in *Maryland v. Craig*, the Supreme Court reaffirmed this reading, finding that the
9    confrontation clause's "central concern . . . is to ensure the reliability of the evidence against a
10   criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding
11   before the trier of fact.  The word 'confront,' after all, also means a clashing of forces or ideas,
12   thus carrying with it the notion of adversariness." 497 U.S. 836, 845 (1990).  In *Craig*, the court
13   held that the reliability of the evidence against a defendant is served by the "combined effects of
14   the elements of confrontation: physical presence, oath, cross-examination, and observation of
15   demeanor by the trier of fact." *Id.* at 846.  The Supreme Court further held that the right to
16   confrontation is not an "absolute right to a face-to-face meeting with witnesses against them at
17   trial," and that the Clause must be interpreted "in a manner sensitive to its purposes and sensitive
18   to the necessities of trial and the adversary process." *Id.* at 844, 849.  "The Confrontation Clause
19   reflects a *preference* for face-to-face confrontation at trial . . . a preference that "must occasionally
20   give way" "to further an important public policy and only where the reliability of the testimony is
21   otherwise assured." *Id.* at 849–850 (emphasis in original).

22   Rothenberg argues that requiring him to mask while in the courtroom limited the jury's
23   ability to assess witness credibility.  ECF No. 373 at 5.  That is, "[a] defendant's facial reactions to
24   live witness testimony—and critically here, the witness' reaction to the defendant's reaction—are
25   another part of a witness' demeanor the jury must assess in deciding whether it believes the
26   witness is credible or not." *Id.* at 5–6.  While Rothenberg agrees that "physical, face-to-face
27   confrontation" is excused when "necessary to further an important public policy," ECF No. 365 at
28   10, Rothenberg argues that the public policy concerns in preventing the transmission of COVID-

4

19 had diminished by the time the trial started on October 2, 2023. *Id.* He contends therefore, that the restrictions imposed during his trial were not narrowly tailored and infringed on his Sixth Amendment rights.

The Government responds that Rothenberg's interpretation of his right to confrontation is too literal. ECF No. 369 at 9. The Government argues that although precedent uses the term "face to face," the key elements of the Confrontation Clause were satisfied here: "the witnesses were physically present, testified under oath, were subject to rigorous cross-examination by defense counsel, and were fully observable by the jury. The jury was able to see each witness' demeanor during both direct examination and cross-examination, allowing each juror a fair opportunity to judge their credibility." *Id.* at 8. They further contend that "the witnesses . . . could look at (and be looked at by) the defendant during their testimony." *Id.* at 9.

Ultimately, the question before this Court is whether requiring Rothenberg to mask while he was in the courtroom violated his rights under the Sixth Amendment by precluding "physical presence" and "observation of demeanor by the trier of fact." *Craig*, 497 U.S. at 846. The answer is that it did not.

With regards to the defendant's physical presence, in both *Coy* and *Craig*, the witnesses could not see the defendant, but the defendant was able to see the witness (either because of a physical screen or because of a one-way closed-circuit camera). These cases reasoned that:

> [a] witness may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts . . . It is always more difficult to tell a lie about a person 'to his face' than 'behind his back' . . . The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions.

*Coy*, 487 U.S. at 1019 (internal quotations and citations omitted); *see also Craig*, 497 U.S. at 845–847. By contrast, in this case, Rothenberg was physically present in the courtroom for the testimony of all the witnesses. The witnesses testified in Rothenberg's actual presence and could see his full person except for his nose and mouth. His eyes, demeanor, and body language remained visible to witnesses. *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 849 (S.D.N.Y. 2021) (rejecting defendant's argument that requiring him to be masked while in the courtroom

5

violated his right to confrontation. The Court explained that witnesses testified in the defendant's "actual presence and within his scope of vision . . . [and could] see his full person," which would "impress upon them the gravity of the proceedings"); *see also United States v. Trimarco*, No. 17-CR-583 (JMA), 2020 WL 5211051, at *6 (E.D.N.Y. Sept. 1, 2020) (rejecting a Sixth Amendment claim where defendant argued his entire face must be fully visible to the jury during trial.) Furthermore, all witnesses were unmasked while testifying, allowing Rothenberg, his counsel, and the jury to look at them while they testified. *Coy*, 487 U.S. at 1017.

        With regards to the jury's observation of demeanor, Rothenberg cites to no authority in support of his claim that the jury must assess the witness' reaction to the *defendant's* reaction in determining the witness' credibility. ECF No. 373 at 5–6. Furthermore, "[t]he Supreme Court has never held that a defendant's Sixth Amendment right to confront the witnesses against him encompasses a right to convey to the jury his reaction to their testimony through his facial expressions." *Lopez v. Gamboa*, No. 22-cv-4281-JEM, 2022 WL 17721577, at *6 (C.D. Cal. Dec. 15, 2022). The "observation of demeanor by the trier of fact" focuses on the demeanor of the *witness testifying before the defendant*, not the defendant while he is present in the courtroom. *Mattox*, 156 U.S. at 242–43 (the "primary object" of the [C]onfrontation [C]lause is to ensure that the "accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief"); *Craig*, 497 U.S. at 846 (confrontation "permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility."). In this case, as the Government points out, "[t]he jury was able to see each witness's demeanor during both direct examination and cross-examination, allowing each juror a fair opportunity to judge their credibility." ECF No. 369 at 8. That is all the Confrontation Clause law requires.

        Finally, even if requiring Rothenberg to wear a mask at trial did raise confrontation concerns—and this Court does not reach that conclusion—the right to confrontation may give way where "it is necessary to further an important public policy and . . . where the reliability of the

1    testimony is otherwise assured." *Craig*, 497 U.S. at 850.  The policies underlying the Court's

2    mask requirement were to combat the viral spread of COVID-19; to maintain the health and safety

3    of the jurors, the Defendant, counsel, court staff, witnesses, and the public; and to maximize the

4    likelihood that the trial could be completed without substantial interruption.  As the Centers for

5    Disease Control and Prevention recognizes, "[a]lthough COVID-19 no longer poses the societal

6    emergency that it did when it first emerged in late 2019, COVID-19 remains an ongoing public

7    health challenge."[2]  Rothenberg himself acknowledges that combatting the spread of COVID-19 is

8    "an important public policy."  ECF No. 365 at 10.  The trial was expected to continue for eight

9    weeks, and Federal Rule of Criminal Procedure 24 allowed the Court to seat only six alternate

10   jurors.  Considering the ease of transmissibility of COVID-19, the Court was concerned about the

11   health of the jurors and the efficient adjudication of a criminal trial.

12        The Defendant relies upon *United States v. Allen* to argue that the Court could have

13   adopted less restrictive measures.[3]  34 F.4th 789 (9th Cir. 2022).  In *Allen*, the district court closed

14   the courtroom to the public to prevent the spread of COVID but allowed audio streaming.  *Id.*  The

15   defendant argued that such a restrictive closure violated his Sixth Amendment right to a public

16   trial.  *Id.*  The Ninth Circuit found that the right to a public trial requires a court to ensure that any

17   closure is "narrowly tailored to serve" the substantial interest at issue.  *Id.* at 797.  "The court must

18   consider reasonable alternatives to closing the courtroom."  *Id.*  In *Allen*, the Ninth Circuit held

19   that the district court had violated the defendant's Sixth Amendment right to a public trial by

20   closing the courtroom and failing to provide a less restrictive alternative.  *Id.* at 799–800.  By

21   contrast, the trial in this case was open to the public as long as the public remained masked.

22        *Allen* also does not support Rothenberg's position with respect to the Confrontation

---

[2] Centers for Disease Control and Prevention, *COVID-19 Surveillance After Expiration of the Public Health Emergency Declaration―United States, May 11, 2023: Morbidity and Mortality Weekly Report (May 12, 2023)*, https://www.cdc.gov/mmwr/volumes/72/wr/mm7219e1.htm?s_mm7219e1_w (last accessed Feb. 28, 2024).

[3] Rothenberg's argument that another trial in the same courthouse had "no masking requirements at all," ECF No. 373 at 8, is of no consequence (especially since that was a shorter trial (two and half weeks) with the same number of alternate jurors.)

Clause. The Court *did* narrowly tailor its procedures and select a less restrictive alternative, given that it could have—and, in prior cases, has—required lawyers to wear masks even while questioning and requiring witnesses to wear clear masks while testifying. Instead, the Court adopted a procedure that allowed both the Defendant and the jury to see the witness' and the questioning lawyer's faces completely. Defendant's proffered alternative that the Court "could have ordered masking when testimony was not currently taking place, such as during breaks, or other parts of the trial not implicating Mr. Rothenberg's Sixth Amendment right to confrontation," ECF No. 365 at 11, would have resulted in a lack of masking during the vast majority of the trial, undermining the other important objectives outlined above.

### 2. Drowsy Juror

Rothenberg requests a new trial on the grounds that a sleeping juror violated his right to a fair and impartial jury under the Sixth Amendment. ECF No. 365 at 11–12. If the Court will not grant a new trial based on the motion, he requests the Court hold an evidentiary hearing "and make an investigation into whether the sleeping juror 'miss[ed] essential portions of the trial and was able fairly to consider the case.'" ECF No. 365 at 12 (citing *United States v. Barrett*, 703 F.2d 1076, 1083 n.13 (9th Cir. 1983)).

The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to an "impartial jury." U.S. Const. amend. VI. The Ninth Circuit has explained "this right is violated where a sleeping juror misses essential portions of the trial or is otherwise unable to fairly deliberate on the defendant's guilt." *United States v. Brewer*, 776 Fed. App'x. 442, 443 (9th Cir. 2019) (citing *Barrett*, 703 F.2d at 1083 n.13).

However, the "presence of a sleeping juror during trial does not, *per se*, deprive a defendant of a fair trial." *United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995) (internal citation omitted). Instead, the Court must determine whether the error prejudiced the defendant. *Barrett*, 703 F.3d at 1083 n.13; *see also United States v. Morgenstern*, 725 Fed. App'x. 546, 550 (9th Cir. 2018). Furthermore, a defendant is not automatically entitled to a hearing on sleeping-juror allegations. *Barrett*, 703 F.2d at 1083. Rather, "[t]he trial judge has considerable discretion in determining whether to hold an investigative hearing on [such] allegations." *Id.* Because

8

district courts are given wide latitude in holding investigatory hearings regarding a sleeping juror, the Ninth Circuit reviews such cases for abuse of discretion. *United States v. Springfield*, 829 F.2d 860, 864 (9th Cir. 1987), *abrogated on other grounds by United States v. Draper*, 84 F.4th 797, 807 (9th Cir. 2023).

Rothenberg argues that "at least one juror was asleep during essential portions of the trial, including during crucial witness testimony from investor Michael Antonov, former RVMC employee Brandon Farwell, expert witness Gerald Fujimoto and Mr. Rothenberg himself." ECF No. 365 at 11. He bases this argument on the Court's "numerous stretch breaks to prevent the juror (and potentially other jurors) from falling asleep during a long trial." *Id.* at 11–12. He contends that he was prejudiced because the juror missed "essential portions of the trial." *Id.* at 12. The Government responds that Rothenberg has failed to establish that the juror was in fact asleep, and even assuming that the juror was asleep, that he has failed to establish that the juror missed "essential portions of the trial." ECF No. 369 at 14–18.

Because Rothenberg bases his sleeping juror claim entirely on the court ordered stretch breaks, the Court has reviewed the trial transcripts to determine whether there is evidence to show that the Court ordered a particular stretch break as a prophylactic measure to ensure juror attentiveness or whether it reflected an instance of a sleeping juror.

On the first day of trial, before any jurors were allegedly drowsy or sleepy, the Court told the jurors that "most of us are not used to sitting for 90 minutes at a time and listening to someone talk. We're just going to stand up and stretch for ten seconds and get our blood moving." ECF No. 289 at 162. As the court explained later, "[i]t's very hard for jurors to listen to business organization or financial testimony for a lengthy period of time. I found that by taking those stretch breaks periodically, I can *stop the drowsies*." *Id.* at 185:11–17 (emphasis added). Thus, the Court provided periodic stretch breaks, not to respond to instances of jurors sleeping, but to prevent jurors from falling asleep in the first place.

The first alleged instance of a juror sleeping occurred during Michael Antonov's examination on October 25, 2023. ECF No. 365 at 6; ECF No. 307 at 98–99. Although the Court did not witness the conduct of the juror in question, the attorneys explained that the juror's eyes

9

were closed. ECF No. 307 at 117–118. The Court told the attorneys that "it's incumbent upon any lawyer that sees that a juror is sleeping to immediately bring it to the Court's attention. And I think the Court is entitled to assume that if a lawyer sees a juror sleeping, that they will tell the Court right away." *Id.* at 117. The Court also began observing the jurors more carefully. *Id.* at 118. Although the parties dispute whether the juror was in fact sleeping, the questioning prior to the stretch break was about an email:

> MR. WALSH: . . . If we could go to Exhibit 459 in evidence, page 1. And if we could highlight that top paragraph or email . . .
> Q. Did you receive another email from Michael Rothenberg, this time several weeks later now on April 29th of 2015?
> A. Yes, I did.
> Q. And is that the email before us here?
> A. Yes.
> Q. From whom and to whom is it sent?
> A. From Mike Rothenberg to me.
> Q. And it cc's a Neil Devani?
> A. Yes.
> Q. What is the date of that email?
> A. April 29, 2015.

*Id.* 98–99. Exhibit 459, the topic of the discussion, was also entered into evidence and published to the jury. *Id.* at 74. As the Government notes, "the to/from/cc/date aspects of an email and the management and administrative expenses charged by RVMC—were uncontested at trial." ECF No. 369 at 16. Furthermore, "the prosecutor resumed questioning regarding Trial Exhibit 459 and the exhibit was on the jurors' screens." *Id.* at 17. Even assuming the juror had been sleeping during this portion of trial, the Court finds that the missed testimony was not "essential" and did not prejudice Rothenberg. *Brewer*, 776 Fed. App'x. at 443; *Barrett*, 703 F.3d at 1083 n.13.

The second alleged instance of a juror sleeping occurred during Brandon Farwell's cross-examination on November 7, 2023. ECF No. 365 at 7; ECF No. 328 at 114:16–18 ("Mr. Fakhoury, would you excuse me. Members of the jury, let's go ahead and take a stretch break.")[4] The Court later explained outside the hearing of the jury that that the juror "*started to* nod off." *Id.* at 119:21–25 (emphasis added). Thus, the record indicates that the stretch break was meant to

---

[4] During Mr. Farwell's cross-examination, the Court took another stretch break. However, this was related to a lull in the proceedings. ECF No. 328 at 135–136 ("MR. FAKHOURY: Can I have a moment, Your Honor? THE COURT: Yes. THE COURT: Members of the jury, let's take one of those stretch breaks.")

10

prevent the juror from falling asleep, and to keep the jury paying close attention to Mr. Farwell's testimony, not that a juror had in fact been sleeping. Moreover, at the time of the stretch break, Mr. Farwell was testifying about the relationship between River Accelerator and Rothenberg Ventures, a topic that had been discussed multiple times throughout trial and as to which there was no dispute. *Id.* at 114; *see also* ECF No. 289 at 153–156 (Leep). Even assuming that the juror had been sleeping, the missed testimony did not prejudice the Defendant.

Rothenberg next alleges that a juror slept during portions of Gerald Fujimoto's testimony. He bases this claim on the fact that the Court invited the jury to take stretch breaks during that testimony. ECF No. 365 at 8. But nothing in the record indicates any concern about a sleeping juror. Rather, the Court opened the day with an explanation of how stretch breaks help "with fatigue, alertness, and also [helped] people [feel] more productive." ECF No. 329 at 4. The Court took advantage of changes in topics or lulls in testimony to ensure that jurors remained attentive. *See id.* at 36, 85, 99, 150, 179. These preventive measures are not evidence of a sleeping juror.

Lastly, Rothenberg alleges that a juror was sleeping during a portion of the Defendant's testimony. ECF No. 365 at 8. As with Mr. Fujimoto's testimony, nothing in the record indicates that a juror was sleeping. The Court took stretch breaks when attorneys requested a moment to confer or at other times to ensure that jurors remained attentive. *See e.g.,* ECF No. 333 at 27, 50, 83, 147.

In sum, there is little to no evidence that a juror was actually sleeping during the testimony. Nor, with a couple of exceptions, is there a correlation between the Court ordering a stretch break and a concern that a juror might be drowsy. Finally, there is no evidence of prejudice. In light of these conclusions, the Court denies Rothenberg's motion for a new trial and denies his request for an evidentiary hearing.

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the Court denies Rothenberg's motion for a new trial.

**IT IS SO ORDERED.**

Dated: March 6, 2024



JON S. TIGAR
United States District Judge