1  MOEEL LAH FAKHOURY LLP
   Hanni M. Fakhoury (State Bar No. 252629)
2  2006 Kala Bagai Way, Suite 16
   Berkeley, CA 94704
3  Telephone:   (510) 500-9994
   Email:       hanni@mlf-llp.com
4

5  Attorneys for Michael Rothenberg

6

7               IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                        OAKLAND DIVISION

10

11  UNITED STATES OF AMERICA,              **Case No.:** 4:20-CR-00266-JST

12            Plaintiff,                   **DECLARATION OF HANNI M.**
                                           **FAKHOURY IN SUPPORT OF EX**
13        v.                               **PARTE APPLICATION FOR ISSUANCE**
                                           **OF RULE 17(C) SUBPOENA DUCES**
14  MICHAEL ROTHENBERG,                    **TECUM**

15            Defendant.

16

17       I, Hanni M. Fakhoury, hereby declare as follows:

18  1.  I am an attorney licensed in the state of California. I was assigned to represent Mr.

19      Rothenberg in this case on January 21, 2021, after the Federal Public Defender's Office had

20      previously been appointed to represent him on November 16, 2020. When I left the Federal

21      Public Defender's Office to go into private practice, I continued to represent Mr.

22      Rothenberg under the Criminal Justice Act ("CJA") and have represented him continually

23      for approximately three and a half years, including through two jury trials.

24  2.  On November 16, 2023, a jury found Mr. Rothenberg guilty on counts 3-23 of the

25      indictment which charged him with a variety of financial crimes. Sentencing is currently set

26      for September 13, 2024.

27  3.  Based upon the information known to me and my work in Mr. Rothenberg's case over the

28      last three and a half years, it is my professional judgment and opinion that the production of

DECLARATION OF HANNI FAKHOURY IN SUPPORT OF APPLICATION FOR ISSUANCE OF RULE 17(C) SUBPOENA DUCES TECUM
*United States v. Rothenberg*, 4:20-CR-00266-JST

1

records by Rothenberg Ventures ("RV") is necessary for a full and fair sentencing (and later, a restitution) hearing for Mr. Rothenberg. Generally, I seek records concerning distributions made to RV investors to date, the present value of the investments held by RV, and internal RV records concerning a financial audit of the funds that calculated different "loss" amounts than that calculated by government expert Gerald Fujimoto at trial. A more detailed description of the records I am requesting are included as Attachment A to the proposed subpoena duces tecum.

4. The standard for a subpoena duces tecum is set forth in *United States v. Nixon*, 418 U.S. 683 (1974), which explains a subpoena is appropriate if (1) the documents are "evidentiary and relevant;" (2) the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the party seeking the documents "cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial;" and (4) the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700.

5. Although *Nixon* was concerned with subpoenas in advance of trial, the Ninth Circuit has held that "a 'pretrial' criminal subpoena can be issued for a sentencing proceeding" and when "a pre-sentencing subpoena is sought, the trial court must apply the *Nixon* factors in the specific context of sentencing." *United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010).

6. I believe this subpoena request meets the *Nixon* and *Krane* standards.

7. <u>The requested documents are evidentiary and relevant.</u>

   a. A major issue at the sentencing hearing will be the "loss" amount, which will significantly impact the U.S. Sentencing Guidelines ("U.S.S.G.") calculation.

      i. Under the Sentencing Guidelines, "'actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 app. n. 3(A)(i).

DECLARATION OF HANNI FAKHOURY IN SUPPORT OF APPLICATION FOR ISSUANCE OF RULE 17(C) SUBPOENA DUCES TECUM
*United States v. Rothenberg*, 4:20-CR-00266-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     b.  The Guidelines also explain that a defendant is entitled to "credits against loss." U.S.S.G. § 2B1.1 app. n. 3(E). As a general matter, the "Sentencing Guidelines 'call for the court to determine the net detriment to the victim, rather than the gross amount of money that changes hands.'" *United States v. Brownell*, 495 F.3d 459, 463 (7th Cir. 2007) (quoting *United States v. Hausmann*, 345 F.3d 952, 960 (7th Cir. 2003)). Thus, it is "the rule that the victim's loss should be offset by the victim's benefit." *United States v. West Coast Aluminum Heat Treating Co.*, 265 F.3d 986, 992 (9th Cir. 2001).

        i.  Application Note 3(E)(i) explains "loss *shall* be reduced" by "The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." U.S.S.G. § 2B1.1 app. n. 3(E)(i) (emphasis added).

       ii.  Application note 3(E)(ii) explains "in a case involving collateral pledged or otherwise provided by the defendant," loss "shall be reduced" by "the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing."

       iii.  In Ponzi and other investment fraud schemes, the commentary states "loss shall not be reduced by the money or the value of the property transferred to any individual investor in the scheme in excess of that investor's principal investment (*i.e.*, the gain to an individual investor in the scheme shall not be used to offset the loss to another individual investor in the scheme)." U.S.S.G. § 2B1.1 app. n. 3(F)(iv). While, at first blush, it may appear no offset is warranted in those kinds of cases, the Sixth Circuit has explained "the language of this note implies that courts are expected to reduce loss figures by the sums returned to investor victims," and "the fact that the Application Notes limit deductions from loss figures to no more than the sums originally invested implies, quite strongly,

DECLARATION OF HANNI FAKHOURY IN SUPPORT OF APPLICATION FOR ISSUANCE OF RULE 17(C) SUBPOENA DUCES TECUM
*United States v. Rothenberg*, 4:20-CR-00266-JST

3

1    that the loss figures are to be reduced in the first place." *United States v.*

2    *Snelling*, 768 F.3d 509, 513 (6th Cir. 2014); *see also United States v. Laurienti*,

3    611 F.3d 530, 557 (9th Cir. 2010) (particular victim's "gains should not be used

4    to offset the losses to other victims" because "it is the [particular victim's] net

5    loss that matters").

6    iv.   Finally, in securities fraud cases, the Ninth Circuit has made clear it is error for a

7    district court to calculate "the actual loss as the amount that the victims paid to

8    buy the stock, with no offset for the present-day value of the stock" when "the

9    underlying company has intrinsic value." *Laurienti*, 611 F.3d at 558; *see also*

10   *United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007) ("because the stock

11   continues to have residual value after the fraudulent scheme is revealed, the

12   court may not assume that the loss inflicted equals the pre-disclosure value of the

13   stock; rather, the court must disentangle the underlying value of the stock,

14   inflation of that value due to the fraud, and either inflation or deflation of that

15   value due to unrelated causes"); *United States v. Holmes*, 5:18-CR-00258-EJD,

16   2023 WL 149108, at *5 (N.D. Cal. Jan. 10, 2023) (holding "total investment

17   amount was subject to a reduction based on the inherent value of Theranos

18   stock").

19   c.   Turning to the facts here, at the trial many investors testified they received *more*

20   than their original RV investment amount through distributions.

21   i.   Michael Antonov initially testified that of his $1.25 million investment, he

22   "probably [received] around 2 million total;" Reporter's Transcript ("RT") Vol.

23   13, 2557:17-19; he later elaborated in an email sent to Assistant U.S. Attorney

24   Nicholas Walsh that he "received back $2.78M, and there is potentially ~$600K

25   residual value left." US-002818; *see also* RT Vol. 14, 2599:6-11.

26   ii.   Praveen Gupta testified that HTC made "somewhere between 1.5 to 2X" of its

27   $2 million investment. RT Vol. 11, 2162:4-5.

28

iii. Theo Melas-Kyriazi testified concerning GHF's investment in the 2015 Fund, "so far we've seen $1.1 million for the $1 million that we invested over the last eight years." RT Vol. 12, 2278:2-3.

iv. Sangwoo Lee (KIP), David Chu (CY Capital) and Natala Menezes all testified they received distributions from their investments but could not recall the exact amounts. RT Vol. 13, 2482:13-17; RT Vol. 15, 2944:5-9; RT Vol. 16, 2983:7-13.

v. Amy Huang testified she could not recall ARCHina receiving any distributions from the 2016 Fund and did not know the current value of ARCHina's investment in the 2016 Fund. RT Vol. 14, 2691:23-2692:3. Nonetheless, government expert witness Gerald Fujimoto's report indicates a significant portion of ARCHina's investment was returned. Demonstrative at Slide 173.

d. The amount of money investors have received to date from their RV investments, as well as the current value of their RV holdings, offsets any claimed "loss" amount under the U.S. Sentencing Guidelines, thus making these records evidentiary and relevant.

e. In addition, after the trial concluded, the government produced to me correspondence and an FBI 302 Report of Investigation detailing an FBI interview with Mr. Eppler on May 29, 2024 that presented different loss amounts and different theories of loss on the basis of an internal RV audit prepared by an outside forensic accounting firm. Critically, the internal audit referenced in the correspondence calculated a different "loss" amount than that calculated by government expert Gerald Fujimoto for trial. These records are thus also evidentiary and relevant to determining the "loss" amount for purposes of the Sentencing Guidelines and restitution.

8. The requested documents cannot be procured reasonably in advance of sentencing by the exercise of due diligence.

DECLARATION OF HANNI FAKHOURY IN SUPPORT OF APPLICATION FOR ISSUANCE OF RULE 17(C) SUBPOENA DUCES TECUM
*United States v. Rothenberg*, 4:20-CR-00266-JST

5

a.  In 2018, Mr. Rothenberg resigned from RV and the firm is now managed by Jefferson R. Eppler. Mr. Rothenberg does not have access to any RV financial records since 2018, including the records sought in this subpoena.

b.  On July 9, 2024, I sent a letter to the government asking it to produce the financial records described above in connection with the sentencing hearing.

  i.  The government indicated to me it was not in possession of much of the material I requested but that it would seek to obtain that information from Mr. Eppler.

  ii.  The government did direct me to some records it previously produced and marked as trial exhibits, that it believed were responsive to my request. All of that material, however, predates 2018, the year Mr. Rothenberg surrendered control of RV to Mr. Eppler.

c.  Because the records are not currently in the possession of the government, but instead are in the possession of a third party, they cannot be produced without a subpoena.

9.  Mr. Rothenberg cannot reasonably prepare for sentencing without production.

a.  As explained above, I believe these records are relevant to the loss amount in Mr. Rothenberg's sentencing (and eventually, restitution) hearing, a figure that will play an outsized role in determining the advisory Guidelines range in this case. The failure to obtain these records prior to sentencing may unreasonably delay the sentencing and prejudice Mr. Rothenberg.

10.  This application is made in good faith and is not intended to be a general fishing expedition.

a.  I have described as specifically as I can, based on the information available to me, the nature of the documents sought by this subpoena and why I believe the records are relevant.

b.  I have also tried to work with the government to obtain these records without resorting to requesting a subpoena. While the government has indicated it will try and obtain the records, to date I have not received any of the requested records.

DECLARATION OF HANNI FAKHOURY IN SUPPORT OF APPLICATION FOR ISSUANCE OF RULE 17(C) SUBPOENA DUCES TECUM
*United States v. Rothenberg*, 4:20-CR-00266-JST

6

1    Because time is of the essence, and in an abundance of caution, I am therefore

2    seeking a subpoena for the records.

3    11. I therefore request the Court issue a subpoena duces tecum compelling Rothenberg

4    Ventures to produce the documents requested in the subpoena and attachment.

5    12. Because Mr. Rothenberg is indigent and represented by Court appointed CJA counsel, I

6    also request the Court order the costs of process, fees, and expenses paid as if the records

7    were subpoenaed by the government. *See* Fed. R. Crim. P. 17(b).

8

9    I declare under penalty of perjury that the foregoing is true and correct to the best of my

10    knowledge.

11    Executed on July 22, 2024, in Clayton California.

13    Hanni M. Fakhoury

DECLARATION OF HANNI FAKHOURY IN SUPPORT OF APPLICATION FOR ISSUANCE OF RULE 17(C) SUBPOENA DUCES TECUM
*United States v. Rothenberg*, 4:20-CR-00266-JST

7