<pre>
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        OAKLAND DIVISION

 4
     UNITED STATES OF AMERICA,      )  CR-20-00266-JST-1
 5                                   )
                   PLAINTIFF,        )  SAN JOSE, CALIFORNIA
 6                                   )
              VS.                    )  MAY 17, 2024
 7                                   )
     ROTHENBERG,                     )  PAGES 1-26
 8                                   )
                   DEFENDANT.        )  *SEALED*
 9                                   )
     _____ )
10
                   TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE JON S. TIGAR
                 UNITED STATES DISTRICT JUDGE
12

13   A P P E A R A N C E S:

14   FOR THE GOVERNMENT:    BY:  KYLE F. WALDINGER
                                 NICHOLAS WALSH
15                          OFFICE OF THE UNITED STATES ATTORNEY
                            CRIMINAL DIVISION
16                          450 GOLDEN GATE AVENUE, 11TH FLOOR
                            SAN FRANCISCO, CA 94102
17

18   FOR THE DEFENDANT:     BY:  HANNI M. FAKHOURY
                            MOEEL LAH FAKHOURY LLP
19                          2006 KALA BAGAI WAY, SUITE 16
                            BERKELEY, CA 94704
20

21             APPEARANCES CONTINUED ON NEXT PAGE

22

23   OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
</pre>

```
 1    APPEARANCES CONTINUED:

 2    FOR THE GOVERNMENT:     BY:  BENJAMIN KURTIS KLEINMAN
                              OFFICE OF THE UNITED STATES ATTORNEY
 3                            CRIMINAL DIVISION
                              1301 CLAY STREET, SUITE 340S
 4                            OAKLAND, CA 94612

 5

 6    FOR THE DEFENDANT:      BY:  JAMES SCOTT THOMSON
                              LAW OFFICES OF JAMES S. THOMSON
 7                            732 ADDISON STREET, SUITE A
                              BERKELEY, CA 94710

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          SAN JOSE, CALIFORNIA              MAY 17, 2024
 2                    P R O C E E D I N G S
 3          (COURT CONVENED AT 11:17 A.M.)
 4              THE CLERK:  CALLING CRIMINAL CASE 20-266-JST-1.
 5      UNITED STATES OF AMERICA VERSUS MICHAEL BRENT ROTHENBERG.
 6              PARTIES, PLEASE STEP FORWARD AND STATE YOUR APPEARANCES.
 7              MR. WALDINGER:  GOOD MORNING, YOUR HONOR.
 8              KYLE WALDINGER, NICHOLAS WALSH AND BEN KLEINMAN FOR THE
 9      UNITED STATES.
10              MR. FAKHOURY:  GOOD MORNING, YOUR HONOR.
11              HANNI FAKHOURY AND NATE TORRES ON BEHALF OF
12      MR. ROTHENBERG.  JIM THOMSON IS ALSO HERE.
13              MR. THOMSON:  YOUR HONOR, I WOULD LIKE THE COURT TO
14      BE AWARE THE COURT APPOINTED ME AS ADVISORY COUNSEL TO
15      MR. ROTHENBERG.
16              THE COURT:  I WAS AWARE ADVISORY COUNSEL HAD BEEN
17      REQUESTED BUT I HAD NOT KNOWN OF YOUR APPOINTMENT.  WELCOME.  I
18      REMEMBER THE REASON FOR THE APPOINTMENT, THAT'S FINE.
19      THANK YOU.
20          THE MATTER IS BEFORE THE COURT ON MR. ROTHENBERG'S, I
21      WOULD SAY RENEWED, BUT IT'S REALLY A DIFFERENT MOTION, MOTION
22      FOR NEW TRIAL OR JUDGMENT OR ACQUITTAL BASED ON A RECENT
23      NINTH CIRCUIT CASE CALLED MILHEISER.
24          THE COURT HAS THOROUGHLY READ THE PAPERS.  MR. FAKHOURY,
25      YOU CAN GO FIRST.
```

1          MR. FAKHOURY:  THANK YOU, YOUR HONOR.

2          THERE'S BASICALLY TWO POINTS I WANT TO MAKE, AND I'M GOING

3     TO SORT OF START WITH THE RULE 33 PIECE OF IT FIRST BEFORE

4     SHIFTING TO THE RULE 29 PIECE OF IT.

5          THE COURT:  YEAH.  I SHOULD SAY I DON'T HAVE A FIXED

6      AMOUNT OF TIME IN MIND.

7          MR. FAKHOURY:  I WILL BE BRIEF, YOUR HONOR.

8          ON THE RULE 33 PIECE OF IT, ONE OF THE POINTS I MADE IN

9     THE BRIEFS IS THE WAY I THINK A LOGICAL CONCLUSION TO DRAW FROM

10    THE NINTH CIRCUIT'S DECISION IN MILHEISER IS THAT THE

11    NINTH CIRCUIT'S MODEL JURY INSTRUCTION FOR WIRE FRAUD AND OTHER

12    FRAUD RELATED CRIMES IS LIKELY GOING TO HAVE TO BE REVISED, IN

13    PARTICULAR BECAUSE --

14         THE COURT:  I AGREE WITH THAT CONCLUSION, JUST SO YOU

15     KNOW.  I THINK THAT THE NINTH CIRCUIT JURY INSTRUCTION

16     COMMITTEE, OF WHICH I USED TO BE A MEMBER, IS GOING TO HAVE TO

17     REVISIT ITS INSTRUCTIONS.  SO YOU PROBABLY WIN THAT POINT.

18         BUT THEN, YOU KNOW, THIS IS UNDER PLAIN ERROR, AND THE

19     QUESTION IS WHETHER YOU CAN SHOW PREJUDICE.  I THINK THAT'S THE

20     HARDER FIGHT FOR YOU.

21         MR. FAKHOURY:  UNDERSTOOD, YOUR HONOR.

22         SO LET ME THEN ADDRESS THAT POINT WHICH ACTUALLY ALSO I

23    THINK GOES TO THE RULE 29 POINT I WANTED TO MAKE.

24         AND IN MY BRIEF, WHAT I TRIED TO DO IS SORT OF DISTINGUISH

25    THE SILICON VALLEY BANK REPORTED CHARGES FROM THE OTHER CHARGES

```
 1    BECAUSE I THINK THERE IS A CLEAR DIVIDING LINE IN MY ARGUMENT

 2    BASED ON THAT DICHOTOMY.  AND THEN WITHIN THE NONBANK CHARGES,

 3    SO MEANING CHARGES RELATED TO PILOT GROVE, UNITY, AND THE 15

 4    AND 16 FUND INVESTORS, THERE CAN BE SOME MAYBE MINOR VARIATIONS

 5    BETWEEN THE ARGUMENTS AS IT PERTAINS TO THOSE THREE.

 6         SO JUST STARTING WITH THAT INITIAL DICHOTOMY, WHICH IS THE

 7    BANK, I DO THINK THAT IN THE CONTEXT OF THIS THE SPECIFIC CASE,

 8    THE STATE OF AFFAIRS AND THE CONVERSATIONS BETWEEN SILICON

 9    VALLEY BANK AND MR. ROTHENBERG AND OTHER REPRESENTATIVES OF

10    ROTHENBERG VENTURES, AS DEMONSTRATED BY THE TESTIMONY AT TRIAL,

11    ANY MISREPRESENTATIONS THERE DID NOT SPEAK TO THE BENEFIT OF

12    THE BARGAIN.

13         ONE OF THE THINGS THE GOVERNMENT --

14              THE COURT:  YOU ARE REFERRING TO SILICON VALLEY BANK?

15              MR. FAKHOURY:  CORRECT, YOUR HONOR.

16              THE COURT:  WEREN'T THE MISREPRESENTATIONS IN

17    CONTRAVENTION OF THE WRITTEN TERMS OF THE BANK'S LOAN

18    AGREEMENT?  THIS RAISES ACTUALLY AN INTERESTING AND FUNDAMENTAL

19    QUESTION UNDER -- SORT OF IN THE WAY THE CONTRACT LAW

20    INTERSECTS WITH THESE QUESTIONS OF MATERIALITY.

21         IF I AM IN A CONTRACT WITH YOU AND YOU SAY OKAY, TERM 7,

22    TERM 7 IS THAT YOU CAN ONLY PAY ME ON A WEDNESDAY.  OKAY,

23    THAT'S SOMETHING THAT YOU PUT IN THERE, YOU BARGAINED FOR THAT,

24    I AGREE TO IT, AND THEN WE SIGN A CONTRACT.  AND I AGREE TO PAY

25    YOU ON A THURSDAY.  YOU ARE FREE TO REJECT THE PAYMENT, AND IT
```

1    DOESN'T LIE IN MY MOUTH TO SAY THAT'S NOT MATERIAL, IT IS

2    MATERIAL BECAUSE HANNI FAKHOURY DECIDED THAT HE WAS ONLY

3    WILLING TO ENGAGE IN A TRANSACTION WITH ME IF THAT TERM WAS

4    INCLUDED.  WE KNOW IT'S IMPORTANT BECAUSE HE INSISTED ON IT.

5         SO IF THE BANK SAYS YOU HAVE TO HAVE CLEAR TITLE TO THIS

6    COLLATERAL, FOR EXAMPLE, IF THEY PUT THAT IN THE AGREEMENT, HOW

7    DOES IT LIE IN THE MOUTH OF THE COURT TO SAY OH, THAT DOESN'T

8    REALLY GO TO THE NATURE OF THE BARGAIN.  THAT'S WHAT I HAVE

9    TROUBLE WITH.

10         MR. FAKHOURY:  WELL I HAVE A GENERAL RESPONSE AND A

11    SPECIFIC RESPONSE.

12         AS A GENERAL RESPONSE, PERHAPS THERE IS A BREACH OF

13    CONTRACT LAWSUIT THERE, AND THAT'S TOTALLY FINE.  THERE'S LOTS

14    OF BREACH OF CONTRACT LAWSUITS THAT GET FILED IN THE COURTS,

15    FEDERAL AND STATE, EVERY DAY, BUT NOT EVERY BREACH OF A

16    CONTRACT NECESSARILY MEANS A FEDERAL WIRE FRAUD HAS OCCURRED.

17         AND I THINK THAT'S THE IMPORT OF MILHEISER.  IN OTHER

18    WORDS, MILHEISER RECOGNIZES THAT FOR BETTER OR FOR WORSE,

19    PERHAPS FOR WORSE, PEOPLE MAKE ALL SORTS OF MISREPRESENTATIONS

20    IN THE COURSE OF NEGOTIATING TRANSACTIONS WITH EACH OTHER, BUT

21    THE FEDERAL WIRE FRAUD STATUTES ARE FOCUSED ON A NARROW SUBSET

22    OF THAT.  AND IN FACT, MILHEISER BUILDS UPON A WHOLE LINE OF

23    CASES.

24         THE COURT:  DO YOU DISAGREE THAT IN THE CONTEXT OF A

25    WRITTEN AGREEMENT, AND THESE JURY INSTRUCTIONS ARE NOT IN ANY

```
 1   WAY CONFINED TO WRITTEN AGREEMENT, SO WE ARE TALKING ABOUT A
 2   SUBSET OF CASES IN THE WORLD, DO YOU DISAGREE THAT THE FACT
 3   THAT THE PARTIES HAVE REDUCED THE TERM TO WRITING AS SOME
 4   INDICATION THAT IT GOES TO THE NATURE OF THE BARGAIN?
 5            MR. FAKHOURY:  I WOULD SAY IT'S SOME INDICATION.
 6        SO IT IS A FACTOR TO BE CONSIDERED, I WOULD SAY, I DON'T
 7   THINK IT'S DISPOSITIVE, BECAUSE NUMBER ONE, NOW WE ARE REALLY
 8   GETTING INTO A LOT OF CONTRACT LAW, OFTEN TIMES --
 9            THE COURT:  THIS IS NOT CONTRACT LAW.
10            MR. FAKHOURY:  UNDERSTOOD, YOUR HONOR.
11        BUT FOR EXAMPLE, THIS SPECIFIC CONTRACT, IT'S ENTIRELY
12   WRITTEN BY SILICON VALLEY BANK.  IT IS AN ADHESION CONTRACT,
13   I'M NOT TRYING TO BUILD UP MY --
14            THE COURT:  GIVEN YOUR CLIENT'S EMPLOYMENT AND
15   EDUCATION HISTORY, YOU WOULD HAVE DIFFICULTY MAKING AN ADHESION
16   ARGUMENT IN A COURT OF LAW.
17            MR. FAKHOURY:  WELL, YOU CAN SEE I DON'T DO A LOT OF
18   CONTRACT LAW, YOUR HONOR.  BUT THE FACT REMAINS -- I THINK WHAT
19   THE COURT HAS IDENTIFIED IS THAT IS ULTIMATELY A FACTUAL
20   QUESTION, NOT NECESSARILY A LEGAL ONE.
21        AND THE GOVERNMENT, IN THEIR BRIEF, THEY SORT OF SEEM TO
22   SUGGEST THAT, WELL ANY CONTRACT TERM IN A CONTRACT WITH A BANK
23   WOULD BE MATERIAL TO THE BANK.  AND PERHAPS THERE'S SOME
24   ABSTRACT LOGIC TO THAT, BUT I THINK YOU HAVE TO UNDERSTAND THAT
25   IN THE CONTEXT OF MILHEISER, THAT THAT IS ACTUALLY NOT
```

1    NECESSARILY THE CASE.

2         AND ANOTHER POINT ON THAT, YOUR HONOR, IS ONE OF THE

3    THINGS THE GOVERNMENT SAID IN THEIR BRIEF, AND I TALKED ABOUT

4    THIS IN MY REPLY, IS THEY INDICATED THAT IT WAS MR. AMOROSO WHO

5    WAS THE MAIN WITNESS, THE ONLY WITNESS FOR THE BANK, AND HE

6    TESTIFIED ABOUT AND THE GOVERNMENT IN THEIR BRIEF DISCUSSED

7    PART -- THAT THERE WAS SORT OF AN IDEA OF WELL, IN THE COURSE

8    OF DISCUSSING A TRANSACTION WITH THE BANK, THE BANK IS ALSO

9    ASSESSING ARE WE GOING TO DO BUSINESS WITH THIS PERSON IN THE

10   LONG-TERM, YOU KNOW, WHAT IS THE CREDIBILITY OF THE

11   REPRESENTATIONS THAT ARE BEING MADE, SORT OF SUGGESTING THAT

12   IT'S BEYOND JUST THE MERE TERMS OF THE CONTRACT, BUT MORE

13   ABOUT -- MAYBE NOT MORE ABOUT, BUT ALSO ABOUT DEVELOPING A

14   RELATIONSHIP AND UNDERSTANDING WHO MR. ROTHENBERG OR ANY

15   BORROWER IS FOR THAT MATTER.

16        AND I THINK IN THE CONTEXT OF THIS SPECIFIC CASE, I'M NOT

17   TALKING ABOUT ANYTHING ELSE BUT OTHER THAN THIS CASE, I DON'T

18   THINK FACTUALLY THAT THAT'S CORRECT, BECAUSE IN THIS SPECIFIC

19   CASE THERE WAS A LONG STANDING RELATIONSHIP BEFORE THE LINE OF

20   CREDIT BETWEEN MR. ROTHENBERG AND SILICON VALLEY BANK, AND

21   BETWEEN ROTHENBERG VENTURES AND SILICON VALLEY BANK.  AND

22   WHILE -- THAT'S WHAT MR. AMOROSO SUGGESTED AT.  I'M NOT SURE

23   THAT THAT FITS WITHIN THE PARAMETERS OF THIS CASE WHERE THERE

24   HAD ALREADY BEEN A LOT OF BUSINESS DONE.

25        THE COURT:  BUT ISN'T THAT WHAT HE SAID?  YOU SAID

```
 1        SUGGESTED, BUT DIDN'T HE TESTIFY THAT IF HE HAD KNOWN THE TRUE

 2        FACTS, THAT HE WOULD HAVE NOT ALLOWED SILICON VALLEY BANK TO

 3        MAKE THE LOAN?

 4             MR. FAKHOURY:  THAT'S CERTAINLY WHAT HE TESTIFIED

 5        ABOUT.

 6             THE COURT:  OKAY.  SO THAT'S A YES.

 7        SO THEN THE QUESTION IS -- ISN'T THE QUESTION WHETHER ANY

 8        REASONABLE JURY -- YEAH, WHETHER ANY REASONABLE JURY COULD

 9        FIND, BASED ON THAT TESTIMONY, COULD ACCEPT THAT TESTIMONY AND

10        DETERMINE THEREFORE THAT THE ALLEGED MISREPRESENTATION WENT TO

11        THE NATURE OF THE BARGAIN; ISN'T THAT THE LEGAL TEST?

12             MR. FAKHOURY:  THAT IS THE LEGAL TEST.  I THINK IF

13        THE JURY HAD, AND THIS WAS THE PROBLEM IN MILL /HAOEUZER, IF

14        THE JURY HAD BEEN INSTRUCTED THAT THEY NEEDED TO CONTEMPLATE

15        THE NATURE OF THE BARGAIN, I PROBABLY WOULDN'T BE STANDING

16        HERE.  AND THAT'S THROUGH NO FAULT OF ANYONE, WE FOLLOWED THE

17        MODEL JURY INSTRUCTIONS AND THEY SAID WHAT THEY SAID, AND NOW

18        AS THE COURT HAS ALREADY RECOGNIZED, IT PROBABLY NEEDS TO BE

19        CHANGED.

20        BUT WHERE THIS JURY WAS NOT GIVEN THAT CAVEAT OR

21        LIMITATION, HOWEVER YOU WANT TO PHRASE IT, I DON'T THINK THAT'S

22        A FAIR SORT OF ASSUMPTION TO MAKE.  AND I THINK THAT THAT'S WHY

23        THERE'S, IN OUR VIEW, A PROBLEM WITH THE WAY THAT WAS PRESENTED

24        TO THIS JURY BECAUSE THE JURY INSTRUCTION DIDN'T EXPLAIN THAT.

25             AND THAT'S EXACTLY THE SAME PROBLEM THE NINTH CIRCUIT
```

1    IDENTIFIED IN MILHEISER, THEY SAID THE JURY INSTRUCTION,

2    BECAUSE IT DIDN'T INCLUDE THAT LANGUAGE, DIDN'T SORT OF FIX THE

3    PROBLEM, AND I WOULD IMAGINE AT SOME POINT IN THE FUTURE, THE

4    NEXT WIRE FRAUD TRIAL THAT HAPPENS IN THE COURTHOUSE, MIGHT

5    HAVE THAT LANGUAGE IN THERE AND MAYBE A JURY WILL UNDERSTAND

6    THAT KIND OF NUANCE A LITTLE MORE CAREFULLY AND DELICATELY.

7        BUT AT LEAST IN THIS CASE, WITH THESE FACTS, WITH THESE

8    INSTRUCTIONS, AGAIN BASED ON THE MODEL INSTRUCTIONS, THIS JURY

9    COULDN'T DO THAT.

10       AND AGAIN, NO FAULT OF THE JURY, NO FAULT OF THE COURT OR

11   THE PARTIES, BUT THE LAW IS -- I DON'T KNOW IF THE LAW HAS

12   CHANGED OR HAS BEEN CLARIFIED NOW WITH MILHEISER, BUT THAT'S

13   BASICALLY THE BASIS OF THE ARGUMENT AS TO THE BANK.

14       I THINK TO JUST BRIEFLY TALK ABOUT THE OTHER COUNTS

15   INVOLVING THE NON BANK INVESTORS, I THINK OUR POSITION IS THE

16   GOVERNMENT EFFECTIVELY PRESENTED TWO THEORIES AS TO

17   MISREPRESENTATION.

18       ONE WAS IN REGARDS TO THE OWNERSHIP OF PILOT GROVE, I

19   AGREE THAT THAT DOESN'T NECESSARILY APPLY TO THE UNITY SCHEME

20   BECAUSE THAT REALLY WASN'T ABOUT PILOT GROVE, BUT PUTTING THAT

21   TO THE SIDE -- OBVIOUSLY -- I'M SORRY, THE OWNERSHIP OF RIVER

22   STUDIOS, EXCUSE ME.  THERE WAS MISREPRESENTATIONS ABOUT THE

23   OWNERSHIP STRUCTURE OF RIVER STUDIOS, AND THEN THERE WAS

24   REPRESENTATION ABOUT HOW FUNDS WOULD BE INVESTED AND USED ONCE

25   PROVIDED TO ROTHENBERG VENTURES.

1        AND I THINK AS WE LAID OUT IN THE BRIEF, I THINK THE

2   CONCERN WE HAVE IS I CAN -- I THINK THE SECOND THEORY ABOUT THE

3   USE OF FUNDS PROBABLY IS CLOSER TO SPEAKING TO THE NATURE OF

4   THE BARGAIN, I ACKNOWLEDGE THAT, BUT THE WAY THE GOVERNMENT

5   PRESENTED IT, IN OUR VIEW, IS THOSE THEORIES WERE SORT OF

6   COMBINED WITH ONE ANOTHER.  AGAIN, I WILL TAKE UNITY OUT OF THE

7   EQUATION FOR A MOMENT, BUT FOR THE REMAINING INVESTORS, THOSE

8   TWO THEORIES WERE SORT OF IN MESH WITH ONE ANOTHER.  AND

9   BECAUSE OF THAT --

10       THE COURT:  WHAT WAS THE GENTLEMAN'S NAME?  IT WAS

11   MR. POLIZZOTTO, AND WHAT WAS THE OTHER ONE FROM LAS VEGAS?

12       MR. FAKHOURY:  MR. WEISMAN.

13       THE COURT:  MR. WEISMAN.  THANK YOU.

14       MR. FAKHOURY:  SURE.

15       AND SO IN OUR VIEW, WHERE THERE'S SORT OF A CONFLATION OF

16   THE THEORIES, RELIANCE ON ONE THAT MAY BE -- AND IN OUR VIEW,

17   THE OWNERSHIP STRUCTURE OF RIVER STUDIOS, WHILE IT MIGHT HAVE

18   BEEN IMPORTANT FOR PILOT GROVE, I DON'T THINK WAS AS MATERIAL

19   AS IT WAS FOR THE OTHER INVESTORS, I THINK THE BASIS OF THE

20   GOVERNMENT'S CASE FOR THE OTHER INVESTORS WAS THEY WERE TOLD

21   MONEY WOULD BE INVESTED IN PORTFOLIO COMPANIES AND IT WASN'T.

22       SO OUR VIEW IS WHERE THESE TWO THEORIES HAVE SORT OF BEEN

23   COMBINED WITH ONE ANOTHER TO SOME DEGREE, SINCE ONE --

24       THE COURT:  THEY ARE JUST ADDITIVE TO EACH OTHER,

25   AREN'T THEY?  IN OTHER WORDS, COULDN'T -- EITHER ONE FORMS THE

```
1        BASIS FOR A CONVICTION, TRUE?
2              MR. FAKHOURY:  OUR POSITION IS GOING TO BE THAT THE
3        OWNERSHIP STRUCTURE OF RIVER STUDIOS WAS NOT -- DOES NOT SPEAK
4        TO THE BENEFIT OF THE BARGAIN AS IT PERTAINS TO THE 15 AND 16
5        FUND INVESTORS.
6              THE COURT:  YES.  NO, MY QUESTION WAS ASKED
7        INARTFULLY.
8          WHAT I MEANT WAS IF THE JURY IS TOLD THAT MR. ROTHENBERG
9        MADE TWO DIFFERENT SETS OF MISREPRESENTATIONS TO POTENTIAL
10       INVESTORS AND ONE OF THEM -- LET'S SAY THE COURT WERE TO
11       CONCLUDE THAT ONE OF THEM DID GO TO THE NATURE OF THE BARGAIN
12       AND THE OTHER DID NOT -- I THINK I GET YOUR ARGUMENT THEN.
13             ALL RIGHT.  NEVERMIND.
14             MR. FAKHOURY:  SO ACTUALLY, TO BUILD ON THAT LAST
15       COMMENT, THAT'S EXACTLY THE ARGUMENT.  IF WE ARE ARGUING ONE
16       COULD BE THE NATURE OF THE BARGAIN AND ONE COULD NOT, BUT
17       BECAUSE THEY WEREN'T DISTINGUISHED AT TRIAL WHERE A VERDICT
18       POTENTIALLY RESTS ON A PARTIALLY INVALID THEORY, THE WHOLE
19       VERDICT IS NO GOOD.  THAT WAS THE POINT I WANTED TO MAKE.
20             SO UNLESS THE COURT HAS OTHER QUESTIONS ON MILHEISER,
21       THAT'S ALL I HAVE TO SAY ABOUT THAT.
22             THANK YOU.
23             MR. WALDINGER:  YOUR HONOR --
24             THE COURT:  SORRY.  I JUST RECOGNIZED YOU BELATEDLY,
25       MR. WALDINGER, GO AHEAD.
```

1      MR. WALDINGER:  YOUR HONOR, IN MILHEISER, THE JURY

2  INSTRUCTIONS NEEDED TO DO MORE, BECAUSE THE GOVERNMENT'S THEORY

3  OF FRAUD, AS THE NINTH CIRCUIT SAID IN MILHEISER, WAS

4  OVERBROAD.  AND I THINK THAT'S THE ESSENTIAL QUESTION FOR THE

5  COURT.

6      AND WHAT MR. FAKHOURY HAS HAD TO TRY TO DO IN THE MOTION

7  IS TO CAST THE GOVERNMENT'S ARGUMENTS TO THE JURY AS BEING

8  OVERBROAD.  AND IF YOU LOOK AT THE RECORD, IT DOESN'T FOLLOW.

9      WITH RESPECT TO SVB, AS YOUR HONOR JUST NOTED, MR. AMOROSO

10  SAID IF IT HAD NOT BEEN A $23.6 MILLION FUND, WE WOULD NOT HAVE

11  LOANED THAT MONEY.

12      THERE ARE OTHER POINTS ABOUT THE SVB LOAN THAT WE PUT

13  FORWARD IN OUR BRIEF.

14      I ALSO THINK WITH RESPECT TO THE REST OF THE CASE, PILOT

15  GROVE, UNITY AND THE FUND INVESTORS, MR. FAKHOURY, HIS

16  ARGUMENTS I THINK MISCASTS WHAT THE GOVERNMENT ACTUALLY SAID TO

17  THE JURY.  AND I WAS READING MR. KLEINMAN'S CLOSING ARGUMENT

18  LAST NIGHT AND THIS MORNING, STARTING AT THE TRANSCRIPT AT

19  4405, HE'S VERY CLEAR, THE GOVERNMENT IS VERY CLEAR ABOUT WHAT

20  THE THEORY IS WITH RESPECT TO UNITY, PILOT GROVE, AND THE

21  INVESTORS.

22      WITH RESPECT TO PILOT GROVE, IT IS THAT TWO THEORIES, AND

23  MR. POLIZZOTTO AND MR. WEISMAN TESTIFIED IN CHAPTER AND VERSE

24  WHY IT WAS IMPORTANT TO THEM TO KNOW THAT MR. ROTHENBERG HAD

25  INDEED SELF-FUNDED RIVER STUDIOS AND THAT HE OWNED IT.

```
 1                THE COURT:  YES.

 2                MR. WALDINGER:  IT WAS SO IMPORTANT THAT HE ADDED

 3       THAT IN.

 4                THE COURT:  BOTH OF THOSE WITNESSES, I WOULD SAY,

 5       BROUGHT THEIR FULL SELVES TO THE EXPERIENCE OF TESTIFYING IN

 6       OPEN COURT, AND THAT WAS SOME OF THE MOST ENJOYABLE TESTIMONY I

 7       HAVE RECEIVED IN MY 22 YEARS AS A JUDGE.

 8                MR. WALDINGER:  IT WAS FUN TO PUT THEM ON,

 9       YOUR HONOR.

10            SO YOU KNOW, LET'S SET THAT ASIDE.

11            AND THEN THE USES, OKAY.  MR. FAKHOURY SAYS THAT COMES

12       CLOSE TO BEING THE NATURE OF THE BARGAIN.  THAT'S THE NATURE OF

13       THE BARGAIN IN THE INVESTMENT, WHAT ARE YOU GOING TO DO WITH

14       THE MONEY.  THAT'S WHAT EVERY INVESTMENT FRAUD CASE I'VE EVER

15       DONE HAS BEEN, A MISUSE OF MONEY, THAT'S WHAT INVESTMENT FRAUD

16       CASES ARE.

17            SO WE COVERED IT WITH PILOT GROVE.

18            UNITY, MR. KLEINMAN'S CLOSING ARGUMENT DID NOT TOUCH AT

19       ALL ON THE OWNERSHIP OF RIVER STUDIOS, IT WAS ALL ABOUT, AND

20       THE WITNESSES TESTIFIED, ABOUT WHAT THEIR MONEY WOULD BE USED

21       FOR.  WE COVERED IT.  THERE WAS NO OVERBROAD THEORY OF FRAUD

22       WITH RESPECT TO THE UNITY INVESTORS.

23            AND SO THEN WITH THE 2015 AND 2016 FUND INVESTORS, AGAIN

24       THERE IS NO -- THERE ARE NO TWO THEORIES OF FRAUD.  AND AGAIN,

25       YOU CAN LOOK AT MR. KLEINMAN'S CLOSING ARGUMENT.  WHEN HE TALKS
```

1    ABOUT THOSE INVESTORS, IT'S MISREPRESENTATIONS ABOUT WHAT THEIR

2    MONEY WOULD BE USED FOR.  AND WE GO THROUGH IN THE CLOSING,

3    WHAT PERCENTAGE OF THIS INVESTOR'S MONEY WAS USED, WAS INVESTED

4    IN PORTFOLIO COMPANIES.

5        OF COURSE THE FACT THAT SOME OF THAT MONEY AND A LARGE

6    AMOUNT OF THAT MONEY WENT INTO RIVER STUDIOS, THAT'S HOW YOU

7    PROVE THAT MR. ROTHENBERG DIDN'T COMPLY WITH THE

8    REPRESENTATIONS HE MADE, IT'S JUST THE OTHER SIDE OF THE COIN.

9        AND SO IN ORDER TO WIN EITHER OF HIS MOTIONS, THE DEFENSE

10   HAS TO WIN ON THIS OVERBROAD THEORY OF FRAUD.  AND I THINK THAT

11   THAT'S THE BASIC WRONG ASSUMPTION, WRONG -- THE WHOLE MOTION

12   RESTS ON THAT, AND IT'S JUST NOT THERE WHEN YOU LOOK AT THE

13   RECORD.

14       SO I WILL SUBMIT ON THAT, IN CASE YOUR HONOR -- I WILL

15   ANSWER MORE QUESTIONS IF YOUR HONOR HAS ANY MORE QUESTIONS.

16           THE COURT:  I DON'T.  THANK YOU.

17       MR. FAKHOURY, LAST WORDS?

18           MR. FAKHOURY:  I HAVE NOTHING MORE TO ADD,

19    YOUR HONOR.

20           THE COURT:  ALL RIGHT.  THANK YOU.

21       I HAVE A TENTATIVE RULING, BUT I THINK IN A MATTER OF THIS

22   SIGNIFICANCE, IT'S BEST NOT TO SHARE IT.  I THINK I NEED TO GET

23   A WRITTEN ORDER OUT AND FINALLY DECIDE IT, AND MY GOAL WILL BE

24   TO DO THAT AS SOON AS POSSIBLE.

25       I JUST -- WILL SOMEONE REMIND ME OF THE SENTENCING DATE IN

```
1    THE CASE?

2              MR. FAKHOURY:  YOUR HONOR, IT IS JUNE 28TH.

3         I DO WANT TO RAISE ONE ISSUE ABOUT THAT, AND I DID NOT

4    GIVE NOTICE TO THE GOVERNMENT ABOUT THIS BEFORE COURT, I DO NOT

5    BELIEVE I WILL BE READY TO PROCEED WITH SENTENCING ON

6    JUNE 28TH, AND I HAVE A COUPLE REASONS FOR THAT.

7              THE COURT:  I DON'T WANT TO HEAR THEM.

8              MR. FAKHOURY:  OKAY.

9              THE COURT:  THIS IS VERY IMPORTANT THAT MATTERS LIKE

10   THIS NOT BE RAISED FOR THE FIRST TIME IN OPEN COURT.  EVEN IF

11   YOU KNOW THE COURT IS NOT GOING TO DO ANYTHING ABOUT IT, YOUR

12   OPPONENT HAS THE RIGHT TO KNOW ABOUT THE REQUEST IN ADVANCE AND

13   NOT TO WATCH THE COURT BEING APPRISED OF SOMETHING FOR THE

14   FIRST TIME.

15        SO YOU CAN TAKE THAT UP WITH MR. WALDINGER, AND IF YOU

16   NEED RELIEF FROM THE COURT AND IT'S NOT FORTHCOMING FROM THE

17   GOVERNMENT, YOU CAN FILE A MOTION.

18             MR. FAKHOURY:  WILL DO, YOUR HONOR.  THANK YOU.

19             THE COURT:  ALL RIGHT.  THANK YOU.

20             MR. THOMSON:  YOUR HONOR, I DON'T KNOW IF THE COURT

21   WANTS OR HAS ANY QUESTIONS WITH RESPECT TO THE PROCESS THAT I

22   EMBARKED UPON, OR I INTENDED TO, WITH RESPECT TO THE

23   APPOINTMENT AS ADVISORY COUNSEL.

24             THE COURT:  YOU HAVE A VERY IMPORTANT JOB, AND I

25   DON'T KNOW THAT THE COURT HAS ANY ROLE IN THAT JOB, UNLESS AND
```

```
 1    UNTIL YOU DECIDE THAT YOU WANT TO SEEK RELIEF OF SOME KIND FROM

 2    THE COURT.

 3         I FELT IT WAS APPROPRIATE TO APPOINT SOMEONE TO REVIEW THE

 4    ISSUE THAT YOU WERE APPOINTED TO REVIEW.

 5              MR. THOMSON:  AND AGAIN, I GUESS --

 6              THE COURT:  I DON'T THINK WE NEED A STATUS THOUGH.

 7              MR. THOMSON:  THEN PERHAPS I HAVE A QUESTION OF THE

 8    COURT.

 9              THE COURT:  SURE.

10              MR. THOMSON:  THE APPOINTMENT IS FOR ME TO REVIEW THE

11    FACTUAL BASIS OF THE CASE, SO TO SPEAK, AND ADVISE

12    MR. ROTHENBERG OF WHATEVER I LEARN.

13              THE COURT:  YES.

14              MR. THOMSON:  I DON'T KNOW WHETHER THAT APPOINTMENT

15    GOES TO THE NEXT STAGE IF THERE WAS SOMETHING THAT I LEARNED

16    THAT MIGHT TURN INTO SOMETHING THAT NEEDED TO BE FILED OR

17    WHETHER THE COURT IS EXPECTING A STATUS REPORT FROM ME

18    INDICATING WHAT IT IS THAT NEEDS TO BE DONE.

19         I DO WANT THE COURT TO UNDERSTAND THOUGH THAT I HAVE

20    WORKED WITH BOTH THE PROSECUTOR, MR. FAKHOURY, ON BEHALF OF

21    MR. ROTHENBERG, AND I'VE HAD MULTIPLE CONFERENCES WITH

22    MR. ROTHENBERG, AND I AM GETTING A HUGE AMOUNT OF MATERIAL THAT

23    I HAVE BEEN DILIGENT IN REVIEWING, BUT THERE IS MUCH MORE STILL

24    TO REVIEW.

25              THE COURT:  YES.
```

```
1          MY RECOLLECTION IS THAT ASPECTS OF MR. THOMSON'S

2    APPOINTMENT WERE CONDUCTED UNDER SEAL, AND UNLESS THE

3    GOVERNMENT HAS ANY OBJECTION, I WOULD LIKE TO HAVE A BRIEF

4    HEARING JUST WITH THE PRESENCE OF DEFENSE COUNSEL AND

5    MR. ROTHENBERG.

6          IS THERE ANY OBJECTIONS, MR. WALDINGER?

7               MR. WALDINGER:  NO OBJECTIONS, YOUR HONOR.

8               THE COURT:  ALL RIGHT.  THE COURT WILL DO THAT NOW.

9          LADIES AND GENTLEMEN, I'M GOING TO SEAL THE COURTROOM

10   WHICH MEANS THAT IF YOU ARE NOT AN EMPLOYEE OF -- EXCUSE ME, IF

11   YOU ARE NOT COURT STAFF FOR PURPOSES OF THIS HEARING, AND YOU

12   ARE NOT THE DEFENDANT AND YOU ARE NOT DEFENSE COUNSEL, I'M

13   GOING TO ASK YOU TO LEAVE THE ROOM.

14          (THE FOLLOWING PORTION WAS CONDUCTED UNDER SEAL.)
```







22





1   ████████████████████████████████████████

2   ██████████

3       █████████████████████████████████████

4   █████████████████████████████████████████

5   ████████████████████████████████

6   ███████████████████████████████

7       █████████████████████████████████████

8   █████████████████████████████████

9         ███████████████████████████

10        ████████████████████████████████

11  ████████████████████

12          (THE FOLLOWING PORTION WAS UNSEALED AND HELD IN OPEN

13  COURT.)

14          THE COURT:  THE TRANSCRIPT FROM THE TIME THEY CLEARED

15  THE COURTROOM UNTIL NOW SHALL BE SEALED AND SHALL REMAIN SEALED

16  UNDER FURTHER ORDER OF THE COURT, SAVE AND EXCEPT THAT COURT

17  STAFF, THE DEFENDANT PROCEEDING IN PRO PER, OR DEFENSE COUNSEL

18  CAN RECEIVE A COPY OF THE TRANSCRIPT WITHOUT FURTHER COURT

19  ORDER.

20          PAUL, WOULD YOU OPEN THE BACK DOOR, PLEASE.

21          WE ARE BACK ON THE RECORD.  I THANK THE GOVERNMENT FOR ITS

22  COURTESY.  NOTHING ABOUT THE CONFERENCE I CONDUCTED IN CLOSED

23  SESSION NEEDS TO BE PLACED ON THE RECORD OR AFFECTS THE

24  GOVERNMENT IN ANY WAY.

25          ALL RIGHT.  WELL I THINK WE CONCLUDED ARGUMENT ON THE

1    MOTION AND I HAD TAKEN IT UNDER SUBMISSION.  AND MR. FAKHOURY

2    HAS SOMETHING HE NEEDS TO RAISE WITH THE GOVERNMENT OFFLINE,

3    AND I THINK WE ARE CONCLUDED.

4         ANYTHING FURTHER FOR THE RECORD?

5              MR. WALDINGER:  I THINK THAT'S IT, YOUR HONOR.

6              MR. FAKHOURY:  NO, YOUR HONOR.  THANK YOU.

7              THE COURT:  ALL RIGHT.  THANK YOU.

8         (THE PROCEEDINGS WERE CONCLUDED AT 11:49 A.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

**CERTIFICATE OF REPORTER**

5

6

7

8         I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13         THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM

15   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

16   MATTER.

17

18

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185        DATED: 8/1/24