UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA     **ORIGINAL**

Before The Honorable JON S. TIGAR, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 20-00266JST |
| | ) | |
| MICHAEL BRENT ROTHENBERG, | ) | **Pages 1 - 15** |
| a/k/a MIKE ROTHENBERG, | ) | |
| | ) | |
| Defendant. | ) | Oakland, California |
| _____ | ) | Friday, March 1, 2024 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

For Plaintiff:     MATTHEW M. YELOVICH,
                   Attorney for the United States
                   Acting under Authority conferred by
                   28 USC §515
                   1301 Clay Street, Suite 340S
                   Oakland, California  94612
             BY:   BENJAMIN K. KLEINMAN,
                   KYLE F. WALDINGER,
                   NICHOLAS J. WALSH,
                   ASSISTANT UNITED STATES ATTORNEYS

For Defendant:     MOEEL LAH FAKHOURY LLP
                   1300 Clay Street, Suite 600
                   Oakland, California  94612
             BY:   HANNI M. FAKHOURY, ATTORNEY AT LAW

                   Law Office of Nathaniel J. Torres
                   1456 Hayes Street
                   San Francisco, California  94117
             BY:   NATHANIEL J. TORRES, ATTORNEY AT LAW

Reported By:       Raynee H. Mercado
                   CSR. No. 8258

   Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1   Friday, March 1, 2024                                9:44 A.M.
 2                         P R O C E E D I N G S
 3                   (Remotely reported via Zoom Webinar)
 4                                --o0o--
 5
 6          THE CLERK:  And, Your Honor, now calling criminal
 7   matter 20-266, United States v. Michael Brent Rothenberg.
 8      If counsel could please come forward and state their
 9   appearances for the record, starting with counsel -- I mean --
10   sorry -- starting with the government.
11          MR. WALDINGER:  Good morning, Your Honor, Kyle
12   Waldinger on behalf of the United States.  I'm joined by my
13   co-counsel Nicholas Walsh and Benjamin Kleinman.
14          MR. FAKHOURY:  And good morning, Your Honor.  Hanni
15   Fakhoury and Nate Torres on behalf of Mr. Rothenberg, who's
16   present, Your Honor.
17          THE COURT:  Good morning.  We have lots of things to
18   deal with today.  There is a motion to -- there's a motion for
19   a new trial.  There's a motion for a judgment of acquittal.
20   There is a motion for appointment of advisory counsel or, in
21   the alternative, a motion to withdraw.
22      We should -- I don't -- I'm not going to be ruling from
23   the bench on most of these motions.  Nonetheless I think it's
24   time to set a sentencing date.  And I would -- obviously if I
25   grant these motions, then I would vacate that date, but I
```

```
 1   think it's time to set the date.
 2             MR. WALDINGER:  I think we have.
 3                  (Simultaneous colloquy.)
 4             THE COURT:  Oh, do you?  What is that date?
 5             MR. FAKHOURY:  It's May 17th.
 6             MR. WALDINGER:  Yeah.
 7             THE COURT:  I see.  Okay.  Well, I don't see any
 8   reason to alter that or move that.
 9       Let me start by addressing the motion for appointment of
10   advisory counsel or, in the alternative, a motion to withdraw.
11   The declaration in support of that motion was filed under
12   seal.
13       And so my question for you, Mr. Fakhoury, is it's the
14   Court's indicated ruling to grant the motion for appointment
15   of advisory counsel and deny the motion to withdraw as moot.
16   And but I -- I would like to say something in a written order
17   about the basis for the Court's ruling, and I'm just wondering
18   if that order should also be filed under seal.
19             MR. FAKHOURY:  I -- I don't believe it needs to be.
20             THE COURT:  Okay.  Yeah.  Independently I don't have
21   that feeling either so I'll just -- I'll file it and you can
22   expect that order in the next day or two.
23             MR. FAKHOURY:  Thank you, Your Honor.
24             THE COURT:  So that will be the Court's ruling on
25   that motion.
```

1       Let's take argument on the other motions.  Perhaps we
2  could start first with the motion for new trial, which was
3  less -- less of a -- dense and voluminous in the facts it
4  calls upon the Court to consider.
5       Mr. Fakhoury, I'll start with you.
6           **MR. FAKHOURY:**  Thank you, Your Honor.  And I'll be
7  brief.
8       We've raised two claims and the written motion and -- and
9  I don't have much more to add to what's in the writings or
10 what's in the written briefs.
11      I do want to emphasize on the second basis in particular,
12 that's the issue around the juror, that I -- I think at a
13 minimum there needs to be a further inquiry.  And the Ninth
14 Circuit cases have sort of suggested that an inquiry is needed
15 to determine what, if anything, the impact of a juror -- my --
16 and my feeling and my opinion was asleep at least momentarily.
17 I know the government doesn't necessarily agree with that
18 characterization.
19      I think we can all recall that there were multiple
20 instances of -- of at least one juror sort of dozing off at
21 times.  The testimony could be a little dry at times.  But I
22 think at a minimum, there should be at least a further inquiry
23 either by -- I've requested evidentiary hearing, but there
24 could be other ways we could make that sort of inquiry.
25      I didn't attach any juror declarations.  Those aren't

```
 1   admissible anyway.  But I think at a minimum a further inquiry
 2   to resolve that issue is appropriate.  Because obviously if
 3   there's a juror who's missing parts of the trial even
 4   momentarily -- momentary parts of trial in a long lengthy
 5   trial with numerous witnesses and complicated issues, I think
 6   it would obviously be prejudicial and would necessitate a new
 7   trial if that juror was unable to understand what was
 8   occurring or follow testimony and whatnot.
 9       So that would be at least my minimal request.  And I'm
10   happy to answer whatever questions the Court has on that
11   point.
12             THE COURT:  Thanks.  I don't.
13       I should say that using a variety of search terms, I've
14   been through all the transcripts of the trial and looked at
15   the instances in which the Court invited the jurors to take a
16   stretch break and what was the context for those.
17       And I actually prepared a table that sets that out.  And
18   then I thought that's a little bit of overkill.  So I don't
19   think the table is going to find its way into the order that
20   the Court issues, but I just wanted the parties to know that I
21   did it.
22       And it appears to the Court that -- that a couple of times
23   there were expressions of concern by the Court or counsel that
24   a juror was getting drowsy.  There's no question.  But the
25   vast preponderance of these stretch breaks were just part of
```

1  the Court's regular pattern of inviting the jurors to take the
2  breaks.  And no question, one of the benefits of the breaks is
3  to ward off potential drowsiness.  But anyway I just wanted
4  the parties to know that I have done that work.
5      Mr. Waldinger, is there anything you'd like to add to what
6  the government has said in its brief?
7          **MR. WALDINGER:**  Just briefly, Your Honor, on the
8  masking issue which counsel didn't address.  I'd just say
9  stepping back on it, the question here is whether the Court
10 should have sua sponte stepped in and told the defendant to
11 take his mask off with -- without any objection being
12 presented by the defendant.
13     And I don't think that there's any precedent that requires
14 the Court to have done that in these circumstances.  And I
15 don't think there's any reason to think that the confrontation
16 clause required the Court to have done that.  And although,
17 you know, setting aside the waiver issue, if this is an issue
18 on appeal, it's going to be a plain error issue given the
19 defendant did not raise any objection at the time.
20     With respect to the sleeping juror, we had the initial
21 instance that the government has described as being momentary.
22 I -- what the record shows is that that juror's eyes were
23 closed.  At that time, the defense counsel said that -- opined
24 that the juror was sleeping.  That's the only instance in the
25 entire record that counsel made any record of any juror

1  sleeping.  And I don't -- whether jurors are drowsy,
2  there's -- there are no cases that say there were -- there
3  were drowsy jurors, there were people who were tired affects
4  the impartiality of a jury.
5      And so we're really talking about one instance.  And the
6  Court can determine that -- the case law is voluminous.
7  There's a Supreme Court case that we didn't cite called
8  *Tanner*, United States -- *Tanner*, from I think 1987.  It's a
9  Justice O'Connor opinion.  The facts in that case, the jurors
10 were having pitchers of beer at lunch and nodding off and
11 there was no reversal in that case.
12     This case we had one instance.  And the Court can look at
13 the transcript of what was going at the time and see that it's
14 not an essential part of the trial.  The Ninth Circuit is
15 clear that not all parts of a trial are essential.
16     There's -- there's another case that we did not cite from
17 the Ninth Circuit.  It is unpublished, but it's from 2018
18 called *Morgenstern*.  And the citation for that is
19 725 Fed.Appx. 549.
20     And I think that that case is important in terms of
21 helping the Court determine what was essential.  And in that
22 case, the Ninth Circuit looked at what was happening.  Again
23 it was a momentary instance of sleeping.  And the court looked
24 to the overwhelming evidence of the defendant's guilt and the
25 fact that the evidence that was being presented while the

1  juror was sleeping was not beneficial to the defense.  And
2  that's the case here with respect to the evidence that was
3  being presented at the time that that instance happened.
4      So I think all of these things are relevant to the Court's
5  consideration.  I don't think that an evidentiary hearing is
6  warranted.  As the government's argument, it was a momentary
7  incident during nonessential testimony that was not helpful to
8  the defense and that was covered in exhibits and in other
9  testimony.
10      So unless the Court has any further questions, I'll stop
11  talking.
12          **THE COURT:**  Would you like the last word,
13  Mr. Fakhoury?
14          **MR. FAKHOURY:**  Sure, Your Honor.  Thank you.
15      It's hard to respond to cases in -- sort of in real time
16  that I haven't had a chance to read.
17          **THE COURT:**  The Court -- the Court will not consider
18  those cases in arriving --
19          **MR. FAKHOURY:**  Thank you.
20          **THE COURT:**  -- at its conclusion.
21          **MR. FAKHOURY:**  Thank you, Your Honor.
22      I guess on the sleeping juror issue, though, I would just
23  say that I think some of the points made by Mr. Waldinger
24  actually, in my mind, support the request for an evidentiary
25  hearing.

1            In other words, Mr. Waldinger's characterization was that
2    the testimony's not helpful.  And the real issue is how any
3    particular juror would perceive of evidence is sort of an
4    unknown.  And that's why one juror has to pay attention
5    throughout the entire trial, and we don't generally ask them
6    how they reached their result because we don't really know.
7        So presented with a scenario where there was one instance
8    where the juror was very obviously -- that's my
9    characterization -- obviously asleep, and there were other
10   instances where there were indicators that jurors were drowsy
11   and dozing off -- and again that's based on the eyewitness --
12   the eyewitnesses of the attorneys and of the Court who were
13   also doing other things like directing witnesses, examining
14   witnesses, preparing cross-examination, thinking about the
15   rules of evidence, all these other factors, it's sort of an
16   incomplete picture.
17       So I think that supports at least the minimum request for
18   an evidentiary hearing to inquire further and see whether it
19   did in fact make an impact.
20       On the mask issue, very briefly, the government in its
21   brief expressly stated it was waiving the waiver argument and
22   so I have not addressed that issue.
23       I would note that the request for -- that could be
24   addressed in the request for the advisory counsel that the
25   Court granted, so I'll just leave it at that.  But I recognize

1    it's a creative argument, and that was the government's
2    phrasing of it and I'll take the compliment.  And -- and I
3    just wanted to make a record on it.
4        But I think if the Court wants to hear more about waiver
5    or plain error or any of that, I think that would need to be
6    addressed by the advisory counsel.  So I have nothing further
7    to add on that.  Thank you.
8            **THE COURT:**  Thank you, gentlemen.
9        I'm not going to rule from the bench.  I'll issue a
10   written order.  I'll just say a couple things.
11       The first is I disagree with the defendant's
12   characterization of what the evidentiary record shows as to
13   the degree of drowsiness or inattention on the part of the
14   jury.  I just don't think the language that Mr. Fakhoury just
15   used accurately represents the totality of the trial.  I'll
16   leave it at that.
17       On the issue of masking, I'm not going to say anything
18   about waiver.  If there was a waiver, there was a waiver, and
19   I'll let the Ninth Circuit figure that out.
20       The thing I'd like to say that I've said more than once in
21   open court in the many trials that I have conducted since the
22   onset of the COVID-19 pandemic is, gosh, it's hard, and I'm
23   trying my best.  And I have a duty to the public, to my staff,
24   to you, to your clients, to the jurors, to spectators to
25   prevent the spread of a disease that is still killing people.

1    And the risk of transmission has diminished over time.
2 The risk of -- to persons who get the disease once they get it
3 has also declined because there have been medical advances
4 including vaccines and because we are starting to attain a
5 level of herd immunity.
6    But the problem of COVID is still very much with us.  I
7 think the record should reflect that there are many persons in
8 the courtroom today, both in the gallery and at counsel table,
9 who are wearing masks.
10   And at the same time, I have tried so hard to jealously
11 guard the rights of parties including defendants in criminal
12 cases.
13   When I started with my very first trial after the break
14 that the court imposed due to the onset of the COVID pandemic,
15 in that trial, I wouldn't even allow anyone to come into the
16 trial as a prospective juror who had not stated under penalty
17 of perjury that they were vaccinated.  I had clear masks for
18 the witnesses, as we did in your trial.  But lawyers who were
19 asking questions were fully masked and not with clear masks
20 either, they were fully masked.  And there were some
21 objections made, but I said then and I will say now, I welcome
22 the guidance of the Ninth Circuit.
23   If I have not been striking the appropriate balance,
24 please reverse this court and tell us clearly what the rules
25 are.  We didn't go to medical school, most of us.  We don't

1  have training in public health, most of us.  We have this
2  awesome responsibility to give everyone who appears in front
3  of us a fair trial.  And now on top of that we have the
4  obligation to protect everyone in the courtroom and everyone
5  with whom they might come in contact.
6      So if there's a better way of doing it than the way I've
7  been doing it, please tell me, I'll do it that way.  But up
8  until this time, there's been no such guidance and I'm just
9  doing my best.
10     That motion is now under submission.
11     Okay.  Let's talk about the motion for acquittal as a
12  matter of law.
13     Mr. Fakhoury, you have the floor.
14         **MR. FAKHOURY:**  I think much ink has been spilt or
15  text typed on this, Your Honor.  And, again, much like the
16  Rule 33 motion, I think everything I've wanted to say has been
17  laid out in the brief.
18     I would just point out that I guess I quibble a little bit
19  with the government's characterization of Rule 29.  I
20  recognize it is a tough standard for defendants.  It is not,
21  however, this extremely easy, watered-down standard.  It is --
22  it exists for a reason.  I think at this -- in this trial --
23         **THE COURT:**  This law can easily accommodate both your
24  characterization of Rule 29 and the government's, and it has
25  done so.

**MR. FAKHOURY:** I'll take that, Your Honor. And I guess I would add as to the -- as to this case in front of us, I think that the record reflected and what we've primarily argued is a lack of an intent to defraud based on the facts that we have focused on in our brief.

And so that's just effectively the basis of my argument as I've laid out in the briefs. I don't, again, have much more to add beyond what's in the briefs unless the Court has a specific question.

**THE COURT:** I don't. Thank you.

Mr. Waldinger.

**MR. WALDINGER:** The simple answer, Your Honor, is the jury was entitled to disbelieve the evidence that the defense threw out, entitled to disbelieve the arguments.

There was sufficient evidence for the jury to find that Mr. Rothenberg had the intent to defraud. He sat on the stand, and some of the first questions that counsel asked him was: Did you intend to defraud? A series of questions. He said, "No, I did not." This jury did not believe him. And they had good reason to not believe him. And under the Rule 29, this Court should give deference to the jury.

So I'll stop talking again.

**MR. FAKHOURY:** I have nothing further to add, Your Honor. Thank you.

**THE COURT:** Gentlemen, thank you very much for your

1  briefs and for your arguments this morning.
2       These motions are now under submission.
3       Further matters for the Court to address today?
4       Hold on just one moment.
5                     (Brief pause.)
6       **MR. WALDINGER:**  I just wanted to correct one thing.  I think the Court referred to clear masks.  We did that in the first trial.  I think in this trial, we didn't even do the clear masks.  There was one witness who tried to put one on and it was weird and uncomfortable.  We didn't even have -- they were completely unmasked.
12      **THE COURT:**  Thank you for that clarification.  I think you're refreshing my recollection correctly.
14      **MR. WALDINGER:**  That's -- that was my recollection.  I confirmed with Mr. Kleinman.  And I'm seeing Mr. Walsh nod his head in agreement.
17      **THE COURT:**  Thank you.  Well, the facts, I'm sure, are accurately reflected in the record even if I don't remember them correctly.  But I'm glad that the record of today's proceeding also is now correct so that an appellate court who is asked to make a decision about this can easily know what the true facts were.  Thank you.
23      All right.  Thank you all.
24      **MR. WALDINGER:**  Thank you, Your Honor.
25      **THE COURT:**  That concludes this proceeding.

1    **MR. WALDINGER:** Thank you, Your Honor.

2    **MR. FAKHOURY:** Thank you, Your Honor.

3    (Proceedings were concluded at 10:03 A.M.)

4    --o0o--

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Thursday, August 1, 2024