RAVI T. NARAYAN (CABN 331858)
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515

BENJAMIN K. KLEINMAN (NYBN 5358189)
NICHOLAS J. WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Email: benjamin.kleinman2@usdoj.gov
    Email: nicholas.walsh@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL BRENT ROTHENBERG,<br>    a/k/a MIKE ROTHENBERG,<br><br>    Defendant. | Case No. 20-CR-00266 JST<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Hearing Date: November 8, 2024<br>Time: 9:30 a.m. |

## INTRODUCTION

The United States respectfully submits this sentencing memorandum regarding defendant Michael Brent Rothenberg who, after being convicted of 21 counts at trial, is before the Court for sentencing. For the reasons set forth below, the United States requests that the Court impose the following sentence: (1) 97 months incarceration; (2) five years of supervised release, with special conditions as set out by the United States Probation Office in the Presentence Investigation Report ("PSR"); (3) an order of restitution in the amount of $ $20,771,158, payable to the entities listed in the PSR; and, (4) a special assessment of $2,100.00.

**BRIEF FACTUAL BACKGROUND**

The Court presided over the seven-week trial that led to Rothenberg's convictions and read and ruled on voluminous post-trial motions. Therefore, the United States will not restate the facts in detail here. *See generally* Dkt. 371 (United States' Opp. to Def.'s Rule 29(c) Mot. for Judgment of Acquittal on Counts 3-23) at 1-25 (detailed recitation of facts).

However, it is worth pointing out the Rothenberg deceived Silicon Valley Bank into issuing a $4 million line of credit in order to make the 2015 Fund's books look better for end-of-year financial statements and tax documents (Counts Three and Four); deceived Pilot Grove Management LLC ("Pilot Grove") into investing in River Studios so that Rothenberg could use Pilot Grove's money for other purposes (Counts Five to Eleven); schemed to defraud investors regarding the purchase of shares of Unity Technologies, Inc. ("Unity"), and used those investors' funds for other purposes (Counts Twelve through Fifteen); and defrauded investors in the 2015 Fund and the 2016 Fund (Counts Sixteen through Twenty-Three). His conduct spanned several years. It had dozens of victims, including friends, former professors, and family. He has shown no recognition of his criminal conduct. He has shown no contrition.

**BRIEF PROCEDURAL BACKGROUND**

Rothenberg was charged in a 23-count Indictment on August 20, 2020. Dkt. 15. On October 25, 2021, the Court severed Counts One and Two from the remaining counts. Dkt. 101. Those two counts went to trial in November 2022, but the trial ended in a mistrial after the jury could not reach a verdict. Dkt. 205. Trial on Counts Three to Twenty-Three began on October 3, 2023. At trial, 32 witnesses testified, plus the defendant himself. On November 16, 2023, seven weeks later, the jury returned a guilty verdict on all 21 counts. RT 4569:7 to 4574:13; Dkt. 339.

Since the verdict, sentencing has been set and moved several times.

Sentencing is now set for November 8, 2024, at 9:30 a.m.

The United States' Sentencing Memorandum is therefore filed in compliance with Local Rule 32-5(b).

# ARGUMENT

## I. The Presentence Investigation Report Contains the Correct Sentencing Guidelines Calculations

### A. The Total Offense Level for Rothenberg's Crimes is 28

#### 1. Most of the Guidelines Calculation is Incontrovertible

Sentencing for fraud convictions is guided by United States Sentencing Guidelines Section 2B1.1. There cannot be any real dispute of the various special offense characteristics that apply to Rothenberg. Rothenberg plainly intentionally engaged in or caused the conduct constituting sophisticated means. *See* U.S.S.G. § 2B1.1(b)(10)(C). He used multiple shell companies in the "River ecosystem" to hide his behavior and transferred money in numerous and confusing fashions to conceal his behavior. Rothenberg clearly, through Counts 3 and 4, derived more than $1,000,000 in gross receipts from Silicon Valley Bank, financial institution. *See* U.S.S.G. § 2B1.1(b)(17)(A). The money he obtained was a loan directly from Silicon Valley Bank, not a pass through from others. Rothenberg was convicted of money laundering in violation of 18 U.S.C. § 1957 in Counts 8, 9, 10, and 11. *See* U.S.S.G. § 2S1.1(b)(2)(A). Finally, Rothenberg unquestionably abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense. *See* U.S.S.G. § 3B1.3. That leaves the Guidelines loss calculation.

#### 2. The Loss Amount is $2 Million, or No Less Than $1,686,000

While Section 2B1.1 contains many specific offense characteristics that can change the eventual total offense level, the guideline calculation of loss is the single greatest driver of the eventual total offense level. *See* U.S.S.G. § 2B1.1(b)(1). Determining the Guidelines loss amount, which on its face might seem to be a simple mathematical computation, turns out to be a complicated concept full of choices made by the United States Sentencing Commission. An important choice relevant to this case are the interrelated concepts of "actual loss" and credits against loss. Defendants, in the view of the United States Sentencing Commission, are entitled to reduce the actual losses they inflicted on their victims by the money that is returned to the victims, though usually only the money returned before the crimes were discovered. *See* U.S.S.G. § 2B1.1(b)(1) cmts. 3(A) and 3(E).

For the loss to Silicon Valley Bank found in Counts Three and Four, the Guidelines are clear that

Rothenberg should get the value of the collateral at the time of sentencing, and since Silicon Valley Bank foreclosed on the $4.25 million collateral pledged against its $4 million loan, the loss is zero for those counts. *See* U.S.S.G. § 2B1.1(b)(1) cmt. 3(E)(ii).

For the loss to the Unity investors in Counts Twelve to Fifteen, the loss is zero because they were all eventually paid back, and thus suffered no actual loss.

And even though Rothenberg effectively stole roughly $18 million from his Fund investors, because his other investments have, over the past eight years since his criminality was uncovered, made enough money to recoup the original investments, Rothenberg is entitled to a finding, for a Guidelines calculation, of a zero loss as to the Fund investors in Counts 16 to 23. *See United States v. Geringer*, 672 Fed. Appx. 651, 652-53 (9th Cir. 2016) (unpublished) (finding that district court improperly refused to consider the value of the investment fund's remaining assets for the purpose of calculating loss to the victims under Section 2B1.1).

What remains is the actual loss Rothenberg inflicted on Pilot Grove in Counts Five to Eleven. It is undisputed that Pilot Grove invested $2 million into River Studios based on false representations made by Rothenberg regarding how that company's operations had been funded and the use to which Rothenberg intended to put Pilot Grove's investment. Although Rothenberg provided Pilot Grove with "carry equity units" ("CEUs") denominated at $1.2 million in order to settle Pilot Grove's civil lawsuit against him, *no repayments have been made to Pilot Grove* regarding these derivative instruments, nor has Rothenberg Ventures even made any commitment to honoring them. Thus, the actual loss to Pilot Grove is $2 million.

REDACTED

Since $1,686,000 is above $1,500,000, the 16-level enhancement is warranted, even ignoring the fact that *no repayments have been made to Pilot Grove*. *See* U.S.S.G. § 2B1.1(b)(1)(I).

UNITED STATES' SENTENCING MEMORANDUM
Case No. 20-CR-00266 JST

4

Accordingly, the United States agrees that the offense level calculations in the PSR reflect the normal operation of the Guidelines provisions, which result in a Total Offense Level of 28.[1] PSR ¶¶ 102-15.

### B. Rothenberg's Criminal History Category is I

Rothenberg has no prior criminal convictions, and the United States agrees with the criminal history calculation in the PSR, which results in a Criminal History Category of I. PSR ¶¶ 116-22.

### C. Rothenberg's Sentencing Guidelines Range is 78 to 97 Months

As a result, the Guidelines imprisonment range for a Total Offense Level of 28 and a Criminal History Category of I is 78 to 97 months. PSR ¶ 148; U.S.S.G. Sentencing Table.

## II. The Sentencing Guidelines Calculation Does Not Adequately Represent the Gravity of the Crimes Rothenberg Committed

In crafting Section 2B1.1, the United States Sentencing Commission left open an important factor: *when* to calculate credits against loss. *See* HAINES, ET AL., FEDERAL SENTENCING GUIDELINES HANDBOOK, 440 (2023) ("the current guideline contains no general time of measurement rule, and no rule about when to value credits other than [those received before detection] and collateral."). Here Rothenberg derives an incredible benefit from this absence. Rather than suffer a full accounting for his crimes against the Fund investors by adding into the loss calculation the roughly $18 million proven at trial that he effectively stole from his Fund investors, he skates away as if he never took a dime, simply because in the intervening eight years since his crimes were uncovered, his other investments gained sufficient value to reduce the loss to zero. Section 2B1.1 therefore does not capture the gravity of the crimes Rothenberg committed.

The United States therefore urges the Court to consider a Guidelines range that more properly accounts for Rothenberg's crimes: by adding in the $18 million theft to the loss calculation and by adding in a special offense characteristic that Rothenberg's crimes involved 10 or more victims. *See* U.S.S.G. §§ 2B1.1(b)(1)(K) (increasing the Base Offense Level by 20 points) and 2B1.1(b)(2)(A)[2]

---

[1] The United States' objections to the Preliminary PSR have been incorporated into the PSR.

[2] To count as victims in the Guidelines, investors must have had an actual loss. *See* U.S.S.G. § 2B1.1(b)(1) cmt. 1 ("'Victim' means (A) any person who sustained any part of the actual loss determined… or (B) any individual who sustained bodily injury…."). Therefore, this enhancement

(increasing the Base Offense Level by 2 points). Thus calculated, the weight of Rothenberg's criminal conduct is better measured. As one of the victims in this matter pointed out:

> If the police catch a bank robber and recover all of the money he stole, does he receive a more lenient punishment than if only 75 percent had been recovered? If the answer is no, why in the world should a convicted white-collar criminal be seen differently? Are you essentially allowed to commit a crime if everything happens to work out in the end?

Victim Impact Statement #1 at 1. As Senior United States District Judge Lewis A. Kaplan sitting in the Southern District of New York succinctly put it when sentencing Samuel Bankman-Fried for fraud, conspiracy, and money laundering:

> a thief who takes his loot to Las Vegas and successfully bets the stolen money is not entitled to a discount on the sentence by using his Las Vegas winnings to pay back all or part of what he stole if and when he gets caught.

*United States v. Bankman-Freed*, 22-CR-00673 LAK, Dkt. 426 (Sentencing Transcript) at 5:18-22 (March 28, 2024). There, as here, the defendant attempted to benefit from changes in the value of residual holdings by the victims to reduce or eliminate the Guidelines loss calculation. Here, as there, Rothenberg should not be allowed to do so.

If calculated in that manner, Rothenberg's Total Offense Level would be 34:

| | |
|---|---:|
| The Offense Level begins, § 2B1.1(a)(1), at: | 7 |
| Add Loss, § 2B1.1(b)(1)(K) (between $9.5 and $25 million): | +20 |
| Add Special Offense Characteristics: | |
| • More than ten victims, § 2B1.1(b)(2)(A)(i): | +2 |
| • Use of sophisticated means, § 2B1.1(b)(10)(C): | +2 |
| • Deriving more than $1 million from financial institution, § 2B1.1(b)(17)(A): | +2 |
| • Abuse of position of trust, § 3B1.3: | +2 |
| • Money Laundering, § 2S1.1(b)(2)(A) | +1 |
| • Zero-Point Offender, § 4C1.1(a) and (b) | -2 |

Total Offense Level: 34

Accordingly, a more appropriate Sentencing Guidelines range for Rothenberg would be 151 to 188 months.

---

cannot be added in calculation set out in the PSR.

### III. Synthesizing the Statutory Factors to Consider Compels the Conclusion that a 97-Month Sentence is Sufficient but Not Greater than Necessary, to Achieve the Goals of Sentencing

The United States avers that a 97-month sentence, which falls at the top of the actual Guidelines sentencing range, is appropriate because it takes into account the various considerations set out in Section 3553(a) of Title 18 of the United States Code. A short sentence is not appropriate, particularly in light of the fact that a more appropriate Guidelines range is far higher.

As an initial matter, although general deterrence is one of the goals of every sentencing, *United States v. Pugh*, 515 F.3d 1179,1194 (11th Cir. 2008) and 18 U.S.C. § 3553(a)(2)(B), it occupies an especially important role in sentencing for white collar offenses, because white collar prosecutions are difficult to investigate, difficult to prosecute, and costly. The Guidelines point out this fact in the context of criminal tax prosecutions, noting that because of the limited number of such prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration in determining a sentence. *See* U.S.S.G. §2T1, Introductory Comment. That principle applies equally to white collar crimes.

Accordingly, a long term of imprisonment should be imposed on Rothenberg to deter others from committing fraud and to promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A) and (B). A long sentence sends a clear message to those with fiduciary duties investing the hard-earned funds of others that they are not to lie and steal. News of imprisonment carries a strong message of deterrence to others interested in embarking on the same path believing that enforcement is rare and incarceration even rarer.

The nature and circumstances of Rothenberg's crimes was serious and wide-ranging. *See* 18 U.S.C. § 3553(a)(1). Rothenberg had many opportunities to admit to his investors, including his friends and family, that he had mismanaged the Funds and failed to act as a proper fiduciary. Instead, Rothenberg chose a different path. Rothenberg chose to engage in a Ponzi-type scheme wherein he continued to lie to investors because of his narcissism and ego. As one victim recounted:

> I was taken advantage of. My investment helped pay for Mike Rothenberg to party in a skybox at the Super Bowl. It helped him rent-out an entire baseball stadium. Three times. It helped pay for fast cars and trips to Cabo and God knows what else. I've heard Mike Rothenberg say that this was his business model. I've heard him say that it takes that kind of flash to get people to fork over their cash. To which I say: That's a load of crap.

UNITED STATES' SENTENCING MEMORANDUM
Case No. 20-CR-00266 JST

> There's always an easier path—and that's the path Mike Rothenberg deliberately chose to take. In his quest to impress prospective clients and secure investments, were there options to renting a skybox at the Super Bowl? Seems like there might have been. Maybe sit down, do the work, and write an incredibly compelling proposal which you can share with a prospective investor over a $400 dinner. Or a $600 dinner. There is, however, a lot of distance between a $600 dinner and a $250,000 party-in-a-sky-box. And it's the difference between the easy path and the hard path.

Victim Impact Statement #1 at 1. Rothenberg's conduct deserves serious punishment.

Importantly, there is not a single thing in Rothenberg's history or characteristics that is mitigating. *See* 18 U.S.C. § 3553(a)(1). As the Court knows well, often defendants have had a traumatic childhood. Not Rothenberg. PSR ¶¶ 124-26. His parents are still together, and he has to this day a good relationship with them. *Id.* ¶ 125. So too his siblings. *Id.* He was not physically or sexually abused. *Id.* As his father summarized, Rothenberg "grew up in a caring environment." *Id.* ¶ 131. Often defendants have mental illnesses. Not Rothenberg. PSR ¶¶ 136-37. Often defendants have drug or alcohol additions. Not Rothenberg. PSR ¶ 139. Often defendants have little or no education. Not Rothenberg. PSR ¶ 140. He graduated from Stanford University and Harvard Business School, two of the finest institutions of learning in the entire world. *Id.* Often defendants are impoverished at the time of their offense. Not Rothenberg. PSR ¶¶ 142-43. It is therefore no surprise that Rothenberg has an Adverse Childhood Experiences ("ACEs") score of zero. PSR ¶ 138. In short, Rothenberg had every advantage.

In aggregate, Rothenberg committed serious crimes without any reasonable justification other than greed and the desire to be a mover-and-shaker in Silicon Valley, and thus, a long sentence of imprisonment will provide just punishment for the offenses and protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(A) and (C). Rothenberg is a young man. No matter what sentence he receives, Rothenberg will serve it and return the community with decades left in his life. To this day, Rothenberg has refused to even acknowledge the fact that he stole the money. Many of Rothenberg's investors were people with whom he had a close personal relationship. There is no evidence before this Court that shows that Rothenberg acknowledges his repeated and blatant lies to so many people. There is no indication that he would not attempt this scheme again. Specific deterrence is therefore appropriate here for to protect the public.

UNITED STATES' SENTENCING MEMORANDUM
Case No. 20-CR-00266 JST

8

The Probation Office's proposed sentence of 54-month incarceration fails to account for the fact that the computed Sentencing Guidelines range does not adequately represent the gravity of the crimes Rothenberg committed. Since a better estimate of the Guidelines range is 151 to 188 months, 54 months is simply too lenient. Rothenberg's conduct was brazen and reprehensible, and thus deserves a sanction that punishes his behavior. He has, however, never been incarcerated, and therefore it is the position of the United States that a 97-month sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons set forth above, the United States respectfully request that the Court sentence defendant Michael Brent Rothenberg to: (1) 97 months incarceration; (2) five years of supervised release, with special conditions as set out by the United States Probation Office in the Presentence Investigation Report ("PSR"); (3) an order of restitution in the amount of $ $20,771,158, payable to the entities listed in the PSR; and, (4) a special assessment of $2,100.00.

DATED: November 1, 2024

Respectfully submitted,

RAVI T. NARAYAN
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515

    /s/
BENJAMIN K. KLEINMAN
NICHOLAS J. WALSH
Assistant United States Attorneys