UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL BRENT ROTHENBERG,<br><br>　　　　Defendant. | Case No. 20-cr-00266-JST-1<br><br>**ORDER RE SENTENCING HEARING** |

Sentencing in this matter is set for November 8, 2024.

At the hearing, the parties shall address whether HTC suffered a loss of $2,000,000, as stated in the letter from Vincent Lam dated February 28, 2024.

The parties shall also address the testimony of Defendant Michael Rothenberg given on November 9, 2023. On that date, Mr. Rothenberg testified that a book transfer from the Rothenberg Ventures Fund II, LLC account to account number \*\*\*\*\*\*7429 in the amount of $350,000 represented the payment of a "member fee":

> Q. This is for October of 2015, correct?
> A. That's what it says.
> Q. And do you see a transaction there for 350,000?
> A. I do.
> Q. Where did that money go?
> A. There's a—I think you're referring to a transfer on October 28th to account ending in 7429, the real estate company.
> Q. And you made a point in the last exhibit of noting that money came back from a different account a couple of days later. You can't do it on this account, can you?
> A. I don't know. You're not showing me the next month or the previous month.
> Q. Okay. Let's—let's page down.
> Oh, before we go, this 528,000 (indicating), that was the HelloGiggles exit?
> A. Let's see. Continental stock transfer. Um—
> Q. Or is that Sweet—or is that a different one?

A. I can't tell from—from this document.
Q. If this is an exit, who does that money belong to?
A. I think—I think you're referring to an exit from a portfolio company to a fund. And in that—in that instance, the—the fund—the money belongs to the fund.
Q. And I'm referring to an October 19th transaction for 528,000 and change, correct?
A. I see that.
Q. The money doesn't belong to you?
A. Correct.
Q. It doesn't belong to the real estate company?
A. At the time it comes in, no, but I do believe that the transaction next is justified. It's a separate transaction.
Q. What's—what do you think the next transaction is?
A. The 2013 Fund and 2014 Funds had specific clauses in their agreements that they were negotiated with the investors for something called member payments.
And member payments are payments owed to Rothenberg Ventures, whether that's the management co. or the real estate co. And those had not been collected as of this date.
I deferred those collections until this date. And then at the—and in October, I recall that it was—that we collected the member payments.
Q. If this is a member payment, why is it not going to the Management Company?
A. I said it could go to Rothenberg Ventures entity. I mean I owned Rothenberg Ventures and the real estate company. There was not much of a distinction.
Q. So is it your testimony that Fund II owed the Management Company $350,000 at this point?
A. It did, for member payments. I also would do it differently if I had another chance.
Q. So when you say member payments, that's different than management fees and administrative expenses?
A. Yes, sir. It's a separate clause in the contract.
Q. How much—and what would those member payments have been for on top of the—at this point, you're taking—you've taken 2 percent per quarter for the first two years in this fund, correct? For Fund II?
A. Let's see. At this point in October.
THE COURT: You said per quarter, Mr. Waldinger; is that right?
BY MR. WALDINGER:
Q. It's 2 percent—you took 2 percent—the management agreement provided for 2 percent per quarter for two years, correct?
A. I think that's right. All of the agreements were different, but I think that's right.
Q. What other member payments—why would Fund II owe any money to the Management Company at this point in time, October 28th of 2015?
A. Because I deferred the payments. So there were many clauses about the kinds of money that could and should go back and forth between the 2014 Fund and the 2013 Fund and the Management Company. And management and admin expenses is only one of the clauses.
And the member payments I deferred so that the fund could make

2

> more investments earlier. And then in my judgment at a later date when the fund was able to, it made those payments, as you're seeing here. Those are allowed, those are negotiated, and they're in the contracts.

R.T. 4250:9–4253:12; *see also* Tr. Ex. 65 at 78.  Thereafter, Mr. Rothenberg gave additional testimony regarding the transfer of other "member payments."  *See* R.T. 4253:23–4260:7.

The Court has reviewed the Private Offering Memorandum for the Rothenberg Ventures 2013 Fund (Fund I), Tr. Ex. 394, and the Private Offering Memorandum for the Rothenberg Ventures 2014 Fund (Fund II), and finds no provision for the payment of member fees.  At the sentencing hearing, the parties shall address whether there was any factual basis for Mr. Rothenberg's testimony on this subject.

**IT IS SO ORDERED.**

Dated: November 5, 2024



JON S. TIGAR
United States District Judge