MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
Telephone:   (510) 500-9994
Email:       hanni@mlf-llp.com

Attorneys for Michael Rothenberg

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | Case No.: 4:20-CR-00266-JST |
|---|---|
| Plaintiff, | **DEFENDANT'S RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| MICHAEL ROTHENBERG, | **Court:** Courtroom 6, 2nd Floor |
| Defendant. | **Hearing Date:** November 8, 2024 |
| | **Hearing time:** 9:30 a.m. |

Pursuant to Northern District Criminal Local Rule 32-5(c), Mr. Rothenberg files this response to the government's sentencing memorandum. *See* Dkt. 414, United States' Sentencing Memorandum ("Gov. Sent. Memo.").

**A.   The Court should not use the heightened Guideline range proposed by the Government.**

The government complains that the U.S. Sentencing Guidelines ("U.S.S.G.") requires the Court to reduce the Guidelines range to give Mr. Rothenberg "credits against loss," which has the effect of reducing the Guidelines range loss amount. Gov. Sent. Memo. at 5; *see also* Dkt. 411, Defendant's Sentencing Memorandum, Motion for Downward Variance and Objections to the Presentence Investigation Report ("Def. Sent. Memo.") at 12. It asserts that the operation of the Guidelines means Mr. Rothenberg "skates away" and "does not capture the gravity" of the situation. Gov. Sent. Memo. at 5. This argument is meritless.

As an initial matter, there is nothing about this situation that suggests Mr. Rothenberg has

managed to "skate[] away." He is a convicted felon and bankrupt, with an irreparably damaged reputation who is facing the possibility of multiple years in federal prison—even under the probation office's Guideline range and sentencing recommendation that gives Mr. Rothenberg the benefit of these credits—after spending more than four years of his life in criminal litigation and enduring the stress of two multi-week jury trials. When all is said and done, no rational observer looking at this case will conclude Mr. Rothenberg "skate[d] away" with anything.

More generally, the government's complaint that the Sentencing Guidelines seem to "reward" Mr. Rothenberg for the fact that investors—including the investor quoted in the government's sentencing memorandum—suffered no Guideline loss betrays a complete misunderstanding of the fraud Guideline, U.S.S.G. § 2B1.1. For better or for worse, the Sentencing Guidelines for fraud and other financial crimes have been driven by the amount of "loss" from the very beginning of the Sentencing Guidelines system. For defendants, that focus on loss has certainly been for the worse.

The Sentencing Commission "developed Guidelines sentences using an empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports." *Kimbrough v. United States*, 552 U.S. 85, 96 (2007). But when it came to the fraud Guideline, the Sentencing Commission did something different:

> after reviewing the empirical data, the Commission deviated from its standard practice of anchoring the recommended sentencing ranges in the empirical data. First, the Commission chose to exclude from its analysis fifty percent of the total data—every sentence in which a judge had issued a sentence of probation. In addition, even after excluding half of the relevant data, it chose to recommend more severe sentences than the mean sentences of incarceration reflected in the remaining 50 percent of empirical data it considered.

Barry Boss & Kara Kapp, *How the Economic Loss Guideline Lost Its Way, and How to Save It*, 18 Ohio St. J. Crim. L. 605, 608–09 (2021) (citing Mark W. Bennett et al., *Judging Federal White-Collar Fraud Sentencing: An Empirical Study Revealing the Need for Further Reform*, 102 Iowa L. Rev. 939, 950 n.48 (2017)). The Commission did so "to encourage judges to issue sentences of incarceration for fraud offenders." Boss & Kapp, *How the Economic Loss Guideline Lost Its Way, and How to Save It*, 18 Ohio St. J. Crim. L. at 609. Over the years, the Sentencing Commission has "dramatically increased the severity of the loss table" in U.S.S.G. § 2B1.1, resulting "in a loss table today that recommends sentences for economic crimes that are *orders of magnitude* greater than the

same sentence for the same crime back in the 1980s." Boss & Kapp, *How the Economic Loss Guideline Lost Its Way, and How to Save It*, 18 Ohio St. J. Crim. L. at 613 (emphasis in original). As Judge Rakoff of the Southern District of New York has noted,

> The Guidelines' calculations for [white collar offenses] are no longer tied to the mean of what federal judges had previously imposed for such crimes, but instead reflect an ever more draconian approach to white collar crime, unsupported by any empirical data. Take the hypothetical but typical case…involving a typical securities fraud defendant who pled guilty to inflating the financial figures of a public company, thereby causing at least 250 shareholders to collectively suffer a reduction of more than $12.5 million in the value of their shares. In 1987, such a defendant would have faced a Guidelines sentence of 30–37 months; but by 2003, the same defendant would have faced a Guidelines sentence of 151–188 months, a more than 500% increase. Was such a crime really 500% worse in 2003 than it was in 1987? Had any of the factors that underlie rational sentencing so radically changed as to warrant such a huge increase?

*United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014) (citing Kate Stith, *Federal Sentencing: The One–Way Ratchet*, New York City Bar Association First Annual Conference on White Collar Crime (May 2012)). And as the Supreme Court has explained, when the "Commission[] depart[s] from its empirical approach in formulating" Sentencing Guidelines, it is not "an abuse of discretion for a district court to conclude when sentencing a particular defendant" that the Guideline yields a "'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 552 U.S. at 89.

Given that the Guidelines' focus on loss generally benefits the government rather than criminal defendants, there is nothing unfair about Guidelines loss being offset by credits. The rationale for that common sense proposition is that the "Sentencing Guidelines 'call for the court to determine the net detriment to the victim, rather than the gross amount of money that changes hands.'" *United States v. Brownell*, 495 F.3d 459, 463 (7th Cir. 2007) (quoting *United States v. Hausmann*, 345 F.3d 952, 960 (7th Cir. 2003)).

Conversely, the government's suggestion that the Court consider the guideline range loss to be approximately $18 million and the corresponding Guideline range to be 151-188 months is not only unsupported by the facts—as conceded by the government—but would also be arbitrary. It would be based on the flawed sentencing loss table that is unsupported by empirical evidence as explained earlier. And more fundamentally, the government should not be free to pick and choose which Guidelines to apply, and when to apply them, based on its sense of rough justice because it turned out

1   the "value" the government ascribed to a particular case was wrong.

2   Also problematic is the government's comparison to the Sam Bankman-Fried sentencing hearing. Gov. Sent. Memo. at 6. The government claims the defendant there "attempted to benefit from changes in the value of residual holding by the victims to reduce or eliminate the Guidelines loss calculation" and that since the district court there rejected that argument for Bankman-Fried, this Court should do the same. *Id.*

7   But that is not at all what happened as evidenced by the transcript of the hearing. There, as the district court itself stated, the "defendant's argument hinges on what amounts to an *assumption* that customers of FTX are *going to be made whole in the bankruptcy*." Dkt. 414, Exh. A at 4:11-13 (emphasis added). In other words, unlike the investors here who have already been repaid, FTX customers had yet to be repaid and it was unclear whether in fact they would ever be. In other words, Bankman-Fried had no tangible credits to offset the loss, a situation completely different than the one here involving Mr. Rothenberg.[1]

14  Finally, as to Pilot Grove, in its opposition to Mr. Rothenberg's now denied motion for a continuance of the sentencing hearing, the government asserted that "no payments have been made to Pilot Grove" concerning the $1.2 million in carry equity units it secured as part of the settlement of the Pilot Grove civil lawsuit. Dkt. 413, United States' Opposition to Motion to Continue Sentencing at 2. But the Ninth Circuit has made clear it is error for a district court to calculate "the actual loss as the amount that the victims paid to buy the stock, with no offset for the present-day value of the stock" when "the underlying company has intrinsic value." *United States v. Laurienti*, 611 F.3d 530, 558 (9th Cir. 2010); *see also United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007) ("because the stock continues to have residual value after the fraudulent scheme is revealed, the court may not assume that the loss inflicted equals the pre-disclosure value of the stock; rather, the court must disentangle the underlying value of the stock, inflation of that value due to the fraud, and either

---

[1] Interestingly, Judge Kaplan also noted the "loss table" in § 2B1.1 is "a debatable proposition" and "Any number of my colleagues have criticized it on various grounds. As I understand its genesis, there's really no empirical basis for the brackets assigned or for the assignment of different losses to different brackets. I share many of those criticisms and concerns with my colleagues." Dkt. 414, Exh. A at 6:17-22. Judge Kaplan ultimately imposed a 20 year prison sentence on Bankman-Fried, half as long as the 40 year prison sentence recommended by the government. *Id.* at 57:6, 58:6.

inflation or deflation of that value due to unrelated causes"); *United States v. Holmes*, 5:18-CR-00258-EJD, 2023 WL 149108, at *5 (N.D. Cal. Jan. 10, 2023) (holding "total investment amount was subject to a reduction based on the inherent value of Theranos stock"). That principle applies equally here to mean that Pilot Grove's loss must be offset by the "present-day value of" the CEUs. *Laurienti*, 611 F.3d at 558. And that again distinguishes this case from that of Sam Bankman-Fried, as a creditor's future bankruptcy claim is not the same thing as an investment that has current value.

Thus, this Court should reject not only the government's complaints about offsetting the Guideline loss amount with credits, but also its suggestion this Court disregard the facts and the Guidelines themselves and arbitrarily adopt a heightened Guideline range.

**B.    The government's proposed 97 month sentence would lead to sentencing disparity.**

The government ultimately recommends a 97 month sentence—the high end of the Guideline range as calculated in the PSR—a significant sentence for a defendant like Mr. Rothenberg with no prior criminal history or convictions of any kind.

Imposing such a sentence would lead to significant sentencing disparity, precisely what a sentencing court must avoid. *See* 18 U.S.C. § 3553(a)(6). A 97 month sentence would lead to unwarranted sentencing similarity with defendants who are not similarly situated. *See United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009). Indeed, the government's sentencing recommendation is closer to the 135 month sentence imposed on Elizabeth Holmes—despite the significant difference that the loss amount in her case was more than $380 million and the aggravated fact that, unlike this case, the fraud at Theranos involved a significant risk of death or serious injury to patients—than the 54 month sentence recommended by the probation office. *See Holmes*, 2023 WL 149108, at *3. Or in another example, the government's sentencing recommendation is closer to the 120 month sentence imposed on a Ponzi scheme defendant convicted of defrauding investors out of more than $63 million. *See United States v. Chung*, 3:19-CR-00302-JSW (N.D. Cal.).

The government's proposed sentence would also result in a sentence that is higher than those imposed for defendants in the Northern District convicted of fraud with significantly higher Guidelines loss. For example:

- *United States v. Jordanov*, 3:21-CR-00227-WHA-1: Defendant convicted of defrauding

company investor of $100 million through fraudulent statements concerning ownership of intellectual property. Government recommended 18 month sentence on 87-108 month Guideline range. The Court imposed a 12 month and 1 day sentence.

- *United States v. Lin*, 3:21-CR-00227-WHA-2: Defendant convicted of defrauding company investor of $100 million through fraudulent statements concerning ownership of intellectual property. Government recommended, and defendant received 12 month and 1 day sentence on 70-87 month Guideline range.

- *United States v. Ichioka*, 3:23-CR-00190-VC: Defendant defrauded investors of $25 million in Ponzi scheme. Government recommended 78 month sentence on 78-97 month Guidelines; district court imposed 48 month sentence.

It is not just anecdote that suggest the government's sentencing recommendation would lead to unwarranted sentencing disparity. The PSR notes that according to the Sentencing Commission's Judiciary Sentencing INformation (JSIN) database, the average sentence imposed on a defendant whose primary Guideline was § 2B1.1 and who had the same final offense level and criminal history category as calculated in the PSR for Mr. Rothenberg was 62 months, and the median sentence was 60 months. PSR ¶ 166.[2] So the government's proposal of a 97 month sentence is 44% higher than the average sentence imposed on a similarly situated defendant.

The government has presented no evidence that suggests such a disproportionate sentence is warranted here. This Court should reject the government's 97 month sentencing recommendation.

Dated:   November 5, 2024                                Respectfully submitted,

                                                         MOEEL LAH FAKHOURY LLP

                                                         Hanni M. Fakhoury
                                                         Attorneys for Michael Rothenberg

---

[2] Mr. Rothenberg is not waiving his previously filed objections to the Guideline range calculated in the PSR. *See* Def. Sent. Memo. at 11-17.

DEFENDANT'S RESPONSE TO U.S. SENTENCING MEMORANDUM
*United States v. Rothenberg*, 4:20-CR-00266-JST