RAVI T. NARAYAN (CABN 331858)
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515

BENJAMIN K. KLEINMAN (NYBN 5358189)
NICHOLAS J. WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Email: benjamin.kleinman2@usdoj.gov
    Email: nicholas.walsh@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-00266 JST |
| Plaintiff, | UNITED STATES' RESPONSE TO THE DEFENDANT'S SENTENCING MEMORANDUM |
| v. | |
| MICHAEL BRENT ROTHENBERG, a/k/a MIKE ROTHENBERG, | Hearing Date: November 8, 2024<br>Time: 9:30 a.m. |
| Defendant. | |

**INTRODUCTION**

The United States respectfully submits this Response to the Defendant's Sentencing Memorandum regarding defendant Michael Brent Rothenberg who, after being convicted of 21 counts at trial, is before the Court for sentencing. *See* Crim. L.R. 32-5(c).

The chief takeaway from Rothenberg's Sentencing Memorandum, Dkt. 411, is that he wishes the Court to pretend that the seven-week trial in this matter never occurred, and he attempts to rely on the passage of time between the guilty verdicts in November 2023 and the sentencing hearing in November 2024 to bury the facts proven at trial.

# ARGUMENT

## I. Rothenberg Miscalculates the Sentencing Guidelines

### A. Rothenberg Unquestionably Used Sophisticated Means to Commit His Many Crimes

One sign of Rothenberg's wish to ignore the seven-week trial in this matter is his contention that he did not use sophisticated means to perpetrate his many crimes and therefore does not warrant the two-point enhance under Section 2B1.1(b)(10(C) of the Sentencing Guidelines. The Probation Office correctly notes that Rothenberg's conduct was sophisticated because "he exerted control over the various Rothenberg Ventures and River entities in such a way as to deceive investors," Rothenberg furthered his deceit by "running money through various bank accounts attributed to various entities that in many instances could be considered shell entities," and Rothenberg took "'coordinated and repetitive steps' to conceal his crimes." Presentence Investigation Report ("PSR") ¶ 11. From the trial, the Court is well familiar with the many steps Rothenberg took to hide information from his employees by compartmentalizing information and access. So too is the Court aware of how Rothenberg made countless transfers of money between bank accounts to muddy the waters of what he was doing with his duped investors' money. The enhancement applies.

### B. Rothenberg Derived More than $1 Million from a Financial Institution

Rothenberg objects to the PSR's conclusion that a two-level increase under U.S.S.G. § 2B1.1(b)(17)(A) is warranted for deriving more than $1 million in gross receipts from a financial institution applies. Rothenberg contends that, for this enhancement to apply, courts have explained the financial institution must "suffer some type of loss or liability." *United States v. Huggins*, 844 F.3d 118, 122 (2d Cir. 2016) (citing former U.S.S.G. § 2B1.1(b)(16)(A), which mirrors current version of the enhancement found in U.S.S.G. § 2B1.1(b)(17)(A)).

*Huggins* does not stand for the proposition Rothenberg asserts. In *Huggins*, the crime was committed by the defendant taking money from individual victims using their bank accounts. Thus, the defendant received money entirely from the individual victims, and only employed a financial institution as a conduit. Here, in sharp contrast, Rothenberg obtained a $4 million loan directly from Silicon Valley Bank, a financial institution, and thus, Rothenberg did in fact derive more than $1 million in gross

receipts from a financial institution. To suggest that Silicon Valley Bank did not "suffer some type of loss or liability" ignores the fact that Silicon Valley Bank had to go through the process of foreclosing on the collateral and all of the attendant losses associated with such a process. Indeed, *Huggins* itself cites *United States v. Khedr,* 343 F.3d 96, 101 (2d Cir. 2003), which concerns a man obtaining fraudulent car loans. *Kehdr* held, "That the companies did not claim a loss does not mean that the loans are not 'property ... obtained' by [the defendant] as a result of the offense." 343 F.3d at 101. The enhancement applies.

## II. Sentencing Data Supports the United States' Sentencing Recommendation, Not Rothenberg's

Rothenberg claims that a "noncustodial sentence would not lead to unwarranted sentencing disparity." Dkt. 411. But Rothenberg does not explain how stealing over $20 million warrants a downward variance based on sentencing data. Rothenberg argues in generalities, providing the Court with quotes about variance rates for while collar criminals without ever addressing the facts proven at trial. *See id.* Rothenberg essentially notes that sometimes criminals convicted of fraud, theft, and embezzlement crimes receive a downward variance. The argument is too shallow to be thoroughly analyzed except to further note that Rothenberg wholly refused to analyze the facts proven at trial and provided no evidence that similarly situated defendants to his specific crime receive a probationary sentence. Instead, the sentencing data from the Judiciary Sentencing INformation ("JSIN") platform makes one point exceedingly clear: defendants sentenced under the Guidelines set out in the PSR are incarcerated 98 percent of the time. PSR ¶ 166. Rothenberg has made no showing that he should fall into the remaining two percent.

## III. The Restitution Sought by the United States Has Been Proven, Despite Rothenberg's Attempts to Pretend Otherwise

The United States proved at trial that the defendant stole over $20 million. Rothenberg correctly acknowledges that "loss" for purposes of restitution is calculated differently than "loss" under the Sentencing Guidelines, and that a court shall award restitution for losses incurred as "a direct and foreseeable result" of a defendant's wrongful conduct. *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004). But with regard to the investors in the Funds, if Rothenberg had merely left the money in the

bank, without ever investing it, his victims would have $18 million more than they do today. This loss is direct result of Rothenberg's lying and stealing. Restitution is appropriate as set out in the PSR.

## IV. Probation's Proposed Terms of Supervised Release are Justified

### A. The No Contact Term

Rothenberg makes much out of nothing with this objection to the proposed condition that, "You must have no contact with the identified victims, unless otherwise directed by the probation officer." Pursuant to 18 U.S.C. § 3563(b)(6), the Court may order that Rothenberg "refrain from associating unnecessarily with specified persons." It is an easy task to provide a list of those individuals to the Probation Office and to Rothenberg, and the list need not contain his family members.

### B. The Financial Conditions

First, the Probation Office proposes the condition, "You must not maintain a position of fiduciary capacity without the prior permission of the probation officer." There is nothing unreasonable about this term; in fact, given the nature and extent of the crimes Rothenberg committed, it is entirely reasonable. Second, the Probation Office proposes two conditions designed to enable the Probation Office to police Rothenberg's conduct and encourage payment of restitution. Those are, "You must not open any new lines of credit and/or incur new debt without the prior permission of the probation officer," and "You must provide the probation officer with access to any financial information, including tax returns, and must authorize the probation officer to conduct credit checks and obtain copies of income tax returns." It was proved at trial that Rothenberg is adept at and frequently engages in complex financial machinations that conceal their purposes. It is therefore entirely reasonable to give the Probation Office authority to look at and approve Rothenberg's financial affairs. The Probation Office no doubt will approve various lines of credit as the needs arise, but given the crimes for which Rothenberg was convicted, Rothenberg should be required to run everything by the Probation Office.

### C. The Search Condition

The Probation Office proposes a reasonable suspicion – not "suspicionless" – search condition be imposed on Rothenberg. That search condition is eminently reasonable under the circumstances. First, it is not the "suspicionless" search condition often imposed in cases of violent crime. Second, for

1 | the same reasons the financial conditions are appropriate, so too is the search condition: to police
2 | Rothenberg's conduct and encourage payment of restitution.
3 | In short, the Probation Office's proposed conditions of supervised release should be adopted.
4 | **V.    Rothenberg Should Not be Granted Bail Pending Appeal**
5 | When Congress enacted the Bail Reform Act, it "shifted the burden of proof from the
6 | government to the defendant" with respect to demonstrating the propriety of remaining free on bail,
7 | pending appeal. *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). Thus, it is the
8 | defendant's burden to overcome the presumption that he should be detained while his appeal is pending.
9 | *See United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990). Rothenberg does not meet that
10 | burden.
11 | Rothenberg must be detained pending appeal unless he can demonstrate that his appeal "is not
12 | for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal; (ii)
13 | an order for a new trial; (iii) a sentence that does not include a term of imprisonment; or (iv) a reduced
14 | sentence to a term of imprisonment less than the total of the time already served plus the expected
15 | duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B).
16 | The "substantial question" requirement defines the level of merit required of the question
17 | presented. *Handy*, 761 F.2d at 1280. A "substantial question" is one that may be "fairly debatable" or
18 | "fairly doubtful," and must present "something more than the absence of frivolity" or issues "debatable
19 | among jurists of reason." *Id.* at 1281-83.
20 | The other requirement, the "likelihood of reversal or new trial," defines the "type of question that
21 | must be presented" for appeal. *Id.* at 1281. The analysis "does not involve assessing the likelihood that
22 | a reversal will occur in the particular case," *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir.
23 | 2003), but instead if the question presented is "so integral to the merits of the conviction on which
24 | defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the
25 | conviction or a new trial." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).
26 | Rothenberg purports to raise several qualifying questions, but none are substantial of likely to
27 | prevail. First, the questions Rothenberg raises fail to address the bank fraud and false statements to a
28 |

UNITED STATES' REPSONSE TO DEF.'S SENTENCING MEMO.
Case No. 20-CR-00266 JST

5

financial institution convictions (Counts Three and Four), and therefore the motion should be denied. Second, Rothenberg mostly reiterates his position that the wire fraud instruction was erroneous following *United States v. Milheiser*, 98 F.4th 935 (9th Cir. 2024), but Rothenberg also admits that this issue was fully briefed and ultimately denied. Dkt. 395. The important point as to this argument is that even if the instruction was wrong, the evidence at trial was overwhelming that Rothenberg's many lies and misrepresentations went to the nature of the bargain in the context of this investment fraud scheme. Thus, even if the instructions are found to be in error, that error was harmless or did not constitute plain error. Third, the Court made considered decisions throughout the case that are unlikely to be overturned, and Rothenberg's other potential appellate questions are not substantial or likely to lead to reversal. Simply put, Rothenberg has not met his burden and his request should be denied.

The government notes that it does not oppose a self-surrender date in early January 2025.

## CONCLUSION

For the reasons set forth above, the United States respectfully request that the Court sentence defendant Michael Brent Rothenberg to: (1) 97 months incarceration; (2) five years of supervised release, with special conditions as set out by the United States Probation Office in the Presentence Investigation Report ("PSR"); (3) an order of restitution in the amount of $20,771,158, payable to the entities listed in the PSR; and, (4) a special assessment of $2,100.00.

DATED: November 5, 2024

Respectfully submitted,

RAVI T. NARAYAN
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515

_____/s/_____
BENJAMIN K. KLEINMAN
NICHOLAS J. WALSH
Assistant United States Attorneys

UNITED STATES' REPSONSE TO DEF.'S SENTENCING MEMO.
Case No. 20-CR-00266 JST

6